

Ryan Watstein
Ryan@wtlaw.com
404-782-0695

October 28, 2024

**MEMO ENDORSED**

> Plaintiffs are directed to respond to Defendants' letter motion by November 1, 2024.
>
> SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: October 29, 2024
> New York, New York

<u>VIA ECF</u>

Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

    Re:   *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Defendants' Letter Motion For Protective Order as to Marketing Topics in 30(b)(6) Deposition

Dear Judge Ramos:

    We represent Defendants in this dispute and write to request a protective order regarding Topics 10, 14, 15, and 18 in Plaintiffs' Rule 30(b)(6) Deposition Notice. Defendants seek a protective order because it has become clear that Plaintiffs' marketing claims,[1] and the discovery Plaintiffs seek concerning those claims, are based on provably false testimony given by Plaintiff Michelle Schuster.

    Plaintiffs have consistently sought discovery of marketing materials Eligo allegedly sent to the putative class members over the entirety of the seven-year class period, on the theory that Ms. Schuster received and relied upon a "mailer" about Eligo's rates for electricity. Plaintiffs emphasized this point in one of their recent letters, arguing that "Plaintiff Schuster testified during her October 22, 2024 deposition that she received a marketing mailer from Eligo which contained representations regarding Eligo's rates." *See* Doc. 83 (October 23, 2024 letter from Greg Blankenship). Plaintiffs have pressed that argument even though it is facially inconsistent with their own Complaint, where Plaintiffs alleged that Ms. Schuster had been "solicited" by an "Eligo representative" and made no mention of any mailer. *See* Doc. 1 ¶ 52.

---

[1] Plaintiffs have two buckets of claims: (a) their "marketing" claims that contend Defendants' written marketing materials were deceptive, and (b) their contract claims that Defendants did not calculate variable rates according to the contract. Both are baseless but this motion only concerns the former.

**Atlanta**
1055 Howell Mill Road, 8th Floor
Atlanta, GA 30318

**Los Angeles**
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071

**Miami**
218 NW 24th Street, 3rd Floor
Miami, FL 33127

 www.wtlaw.com      Ryan@wtlaw.com      404-782-0695

After Ms. Schuster's deposition, Eligo was able to obtain a recording of her call with Eligo's outbound telemarketer, CEP.  *See* Ex. A, LaPointe Decl. ¶¶ 4–9.  On that call, Ms. Schuster said she was calling CEP because she had "*received a message on [her] answering machine*"—not because she received a marketing mailer.  *Id.*, Ex. 1, Schuster Oct 6, 2016 Call Recording Transcript at 0:02.

The degree to which the call recording contradicts Ms. Schuster's testimony cannot be overstated.  This is not a case of confusion or faded memories.  At her deposition, Ms. Schuster was adamant that she had received a mailer from Eligo in 2016, and even described what the mailer looked like.  These false assertions are displayed by the following comparison between Ms. Schuster's testimony and what she said on the call she placed to Eligo in 2016:

| Deposition | Call Recording |
|---|---|
| Q. And there it says in the first sentence [of paragraph 52 of the Complaint], in the fall of 2016, a representative from Eligo solicited Plaintiff Schuster and she agreed to switch her electricity supplier to Eligo; is that a true statement?<br>A. **Well, it was actually like a market mailer**. Like some kind of a marketing mailer that came in the mail. Like it wasn't a person at my door. It was -- so I received something in the mail, like a marketing flyer, marketing mailer . . . And **it gave like a phone number to call and . . . then I called the phone number**." Ex. B, Schuster Dep. 58:23-59:19 (emphasis added).<br><br>Q. Well, help me reconcile, because what 50 -- Paragraph 52 says is that, 'In the fall of 2016, a representative from Eligo solicited Plaintiff Schuster.' **Which makes it sound like someone called you?**<br>A. **Correct.**<br>Q. **But that's not the case.** . . .<br>A. **I was solicited by mail**." *Id.* at 60:14-24 (emphasis added).<br><br>"Q. You were solicited by mail and not by a representative; is that correct? . . .<br>A. **I was solicited by mail**." *Id.* at 60:25-61:4 (emphasis added). | "**I received a <u>message on my answering machine</u> and I'm not really sure if it applies to me at all but I can give you a reference number that was left**." LaPointe Decl., Ex. 1 at 0:03-0:14. |

That Ms. Schuster chose to lie about such a critical issue exposes this case for what it is: a baseless, lawyer-driven class action where Plaintiffs are trying to leverage discovery involving millions of documents (and a dozen letter motions to date) to impose crushing costs

2

on Eligo and force it to settle baseless claims. To this end, Plaintiffs' counsel doubled down on this deposition testimony, stating as recently as Friday, October 25 that Eligo falsely said "that Ms. Schuster did not receive marketing materials," a contention Eligo "now know[s] is not true" given Ms. Schuster's testimony. Ex. C. They further stated: "Candidly we expect Eligo will withdraw the opposition to producing marketing discovery on this basis alone." *Id.* They even threatened to seek sanctions if Defendants did not do so. *Id.*

Defendants will further address Ms. Schuster's perjury and her counsel's attempt to rely on it in their forthcoming motion to limit discovery in this case. But in the interim, the Court should not allow Plaintiffs to conduct a fishing expedition into seven-plus years of marketing materials based on Ms. Schuster's false testimony. Plaintiffs' effort to gain virtually unrestricted discovery into Eligo's marketing materials relies heavily, if not exclusively, on Ms. Schuster's perjured testimony about having received a mailer from Eligo. *See* ECF No. 83 at 2. Stripped of this inaccurate factual predicate, Plaintiffs' requested discovery—including the marketing-related Topics in the 30(b)(6) notice—is purely a fishing expedition, which the Federal Rules do not allow. *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'") (citation omitted)).

In addition to the fraudulent nature of Plaintiffs' inquest into Eligo's marketing materials, the disputed deposition topics are so overbroad that no corporate representative could possibly prepare to fully address them. For example, Topic 14 would require Defendants' representative to testify about all "personnel involved in marketing and selling electricity and natural gas in New York State" without any time limitation, "including the identification and description of all departments, divisions, teams, or groups within which such personnel work" and "the job titles and responsibilities of such personnel." Ex. D, Plaintiffs' 30(b)(6) Deposition Notice. Likewise, Topic 15 requires Defendants' representative to testify as to "[a]ll policies, procedures, and practices concerning Eligo's marketing and sales of electricity and natural gas in New York State." *Id.* It is practically impossible for any witness to identify every marketing-related person, team, policy, and practice used by Eligo over a period of more than seven years. To the extent Plaintiffs intend a more targeted examination of Eligo on these issues, they could have narrowed their topics to reflect that. They refused to do so and decided instead to rest on these facially overbroad Topics. That alone justifies the issuance of a protective order in Eligo's favor as to these Topics.

This motion is timely because Defendants were expecting Plaintiffs to issue an amended 30(b)(6) notice in light of the Court's ruling that discovery is not permitted as to fixed rates and ongoing disputes regarding the scope of discovery. Sep 10 Minute Entry (denying "Plaintiffs' application for Eligo to produce discovery regarding fixed rates"). Hearing nothing from Plaintiffs, Defendants raised this issue on Friday, met and conferred earlier today, and raised this issue as soon as possible.

3

Respectfully,

*/s/ Ryan Watstein*

Ryan Watstein