

**MEMO ENDORSED**

Ryan Watstein
Ryan@wtlaw.com
404-782-0695

November 6, 2024

**VIA ECF**
Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

> Plaintiffs are directed to respond to Defedants' request to bifurcate and limit discovery by November 12, 2024.
>
> SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: November 8, 2024
> New York, New York

Re: *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Defendants' Letter Motion to Bifurcate and Limit Discovery

Dear Judge Ramos:

This case began as a straightforward dispute over whether Eligo Energy New York LLC (Eligo)[1] charged variable rates for electricity in compliance with its customer contract. It did, under binding Second Circuit authority. Perhaps because the discovery to date has already established this, the case has since become a war of attrition in which Plaintiffs seek to impose crushing costs on Eligo. We thus write to request an order placing reasonable and proportional limitations on discovery. Specifically, Eligo requests an order: (a) limiting discovery for 90 days to Plaintiffs' individual claims, (b) permitting Eligo to then file a motion for summary judgment, and (c) limiting Eligo's review of ESI to 50,000 documents during that period, unless Plaintiffs agree to bear the cost of additional review. If the Court denies Eligo's motion for summary judgment, further discovery can proceed.[2]

Eligo is a small New York Energy Supply Company (or ESCO) that supplies green electricity to consumers in New York. Eligo has fewer than 50 employees. The named plaintiffs entered into contracts with Eligo providing that Eligo would set variable electricity rates according to "market factors," including but not limited to "market pricing," "market conditions," "market and wholesale factors," and their "pricing strategies." The contract does not expressly define any of those terms, and thus granted Eligo discretion to set prices, bound only by the obligation to consider "market factors" such as those specifically mentioned.

---

[1] Eligo Energy LLC, Eligo's parent, is also a named party. But Plaintiffs contracted with and obtained their energy from Eligo, and thus Plaintiffs' claims are properly directed only to it. This motion thus refers to Eligo only.

[2] An ESI search for terms concerning Michelle Schuster, her utility account number (which would be included on rate-setting documents pertaining to her), or Defendants' Groove pricing algorithm returned roughly 8,000 hits. Defendants are nevertheless willing to review an additional 42,000 documents to satisfy any other targeted searches that Plaintiffs may wish to run regarding the claims of the named Plaintiffs.

---

**Atlanta**
1055 Howell Mill Road, 8th Floor
Atlanta, GA 30318

**Los Angeles**
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071

**Miami**
218 NW 24th Street, 3rd Floor
Miami, FL 33127

 www.wtlaw.com      Ryan@wtlaw.com      404-782-0695

To prevail, Plaintiffs must prove that Eligo ignored "market factors" in setting its variable rates. *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 412 (2d Cir. 2023) (affirming grant of summary judgment to an ESCO whose customer contract tied variable rates to "market-related factors"). Like the unsuccessful plaintiffs in *Martinez*, Plaintiffs will not be able to do that, and Eligo thus intends to move for summary judgment as soon as practicable to efficiently dispose of Plaintiffs' lawyer-driven claims.

In the interim, Plaintiffs are entitled to reasonable and proportional discovery on the core issue of Eligo's rate-setting as to the named Plaintiffs' claims. But Plaintiffs have no legitimate need, and are not permitted by the Federal Rules, to insist that Eligo search and produce enormous quantities of ESI at a cost of millions to resolve the straightforward legal issues addressed in *Martinez*, which also control Plaintiffs' claims here. *Royal Park Invs. SA/NV v. Bank of New York Mellon*, 2019 WL 6117533, at *6 (S.D.N.Y. Nov. 18, 2019) ("The Court cannot conclude—under the proportionality analysis required under Rule 26—that the parties [] should expend hundreds of thousands of dollars on expert discovery when the probative value of that discovery hinges upon a factual theory that Royal Park has yet to demonstrate is viable.").

Perhaps in recognition (or even because) of the stringent burden they face, Plaintiffs' strategy has been to abuse discovery to impose crushing litigation costs on Eligo as a means to force an unmerited settlement. That is evidenced not only by the **thirteen** discovery motions Plaintiffs have thus far filed in this case, but also by Plaintiffs' demand that Eligo collect and review **millions** of documents with no date limitations applied, all conducted under a proposed 21-page ESI protocol that would, if adopted, authorize Plaintiffs to micro-manage every aspect of the ESI discovery process.

The Federal Rules do not give Plaintiffs *carte blanche* to demand ESI production without any reasonable limits, or to use the expense of discovery to force Eligo into a settlement. On the contrary, the Rules are to be "construed, administered and employed by the court and the parties to secure the ***just, speedy and inexpensive determination of every action***." Fed. R. Civ. P. 1 (emphasis added). To that end, Rule 26 limits the scope of discovery to matters "proportional to the needs of the case," considering factors including "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1). Rule 26's proportionality requirement was implemented to "deal with the problem of over discovery"—that is, to "guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Fed. R. Civ. P. 26 Adv. Comm. Note to 2015 amendments. The Advisory Committee "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." *Id*. To that end, a court "***must*** limit the frequency or extent of discovery" where materials sought are "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26 (emphasis added.)

For this reason, Courts routinely phase discovery in putative class actions to allow discovery on the individual claims, followed by ruling on an early motion for summary judgment to ensure consistency with Rule 1's promise of a "just, speedy, and *inexpensive* determination of every action." Fed. R. Civ. P. 1 (emphasis added); *see also Cunningham v. Big Think Cap., Inc.*, 2021 WL 4407749, at *2 (E.D.N.Y. Sept. 27, 2021) (phasing discovery noting there's good cause to do so where the resolution of a single issue may resolve the case and "render trial on the other issue[s] unnecessary"). Tellingly, ***in all but one*** of the dozens of class actions where the undersigned has been counsel for Defendant and the respective courts have

2

ordered phased discovery, those cases never progressed to a point where class certification briefing or expert discovery was *ever required*. *See*, *e.g.*, *Jenkins v. MCC Brokerage*, Civ. A. No. 1:23-558 (S.D. Ohio 2024), ECF Nos. 13, 16 (ordering same type of bifurcation Eligo seeks here in putative class action on the basis of Rule 26(f) report gathering more than a dozen cases ordering bifurcation); *Burzawa, et al. v. Yardi Systems, Inc.*, No. 24-cv-07698, ECF No. 14 (N.D. Ill. Oct. 16, 2024) (same, and ordering a 120 day period of discovery followed by defendant's motion for summary judgment). This speaks to the efficiency of phased discovery, and it strongly counsels in favor of entering a similar schedule here.

The Court should employ the same solution here, since this case has become a paradigmatic example of the sort of "discovery overuse" that Rule 26 seeks to prevent. Plaintiffs' demand for ESI from all sources, with no time or date limitations whatsoever, far exceeds what is reasonably needed to determine the core issue in this case: whether Eligo charged its customers a rate entirely untethered to the broad rate-setting criteria in the customer contract. They have also filed 13 discovery motions seeking a variety of advisory opinions, mostly targeting class data and information unrelated to whether Plaintiffs have viable claims.

Moreover, Defendants have collected many of the data sources that Plaintiffs have requested, though not all of them. The ones Defendants have collected to date house literally **millions** of documents. Eligo's emails alone consist of more than 4 million documents. The cost of storing that data on Eligo's litigation platform, standing alone, is $10,000 per month. In addition, documents from other databases, including Slack, are not readily accessible to Eligo and will cost more than $18,000 simply to collect. Search terms could narrow the scope of Eligo's review, but only if carefully and narrowly drawn. That's because reviewing even a fraction of these documents would cost over a million dollars and take many months (e.g., reviewing 500,000 documents would take approximately 10,000 hours at a cost of well over a million). Those costs are simply unaffordable for a small company like Eligo, which as recently as 2022 was suffering a multi-million-dollar loss from operations. The costs here are effectively equivalent to Amazon spending hundreds of billion dollars on e-discovery.[3]

More importantly, the production of this vast degree of information is simply not necessary to resolve the straightforward question at the core of this case, much less is it proportional. That is particularly true given Defendants have already provided Plaintiffs with the most relevant information that they requested, including the Groove inputs and outputs and other rate-setting documents. As such, any further ESI discovery should be limited to targeted searching concerning the named Plaintiffs' claims. To maintain proportionality, Defendants propose that search terms be crafted not to exceed 50,000 hits in the aggregate. If Plaintiffs seek discovery beyond those reasonable limitations, the Court should shift all costs of that discovery to Plaintiffs. *See Lawson v. Spirit AeroSystems*, 2020 WL 3288058, at *9 (D. Kan. June 18, 2020).

For these reasons, the Court should (a) limit discovery for 90 days to Plaintiffs' individual claims, (b) permit Eligo to then file a motion for summary judgment, and (c) limit Eligo's review of ESI to 50,000 documents during that period, unless Plaintiffs agree to bear the cost of additional review. If any claims remain following the Court's ruling on Eligo's pending motion to dismiss and forthcoming motion for summary judgment, then the parties can submit a revised proposed scheduling order within 14 days.

---

[3] Defendants recognize that the Court likely needs to receive evidence establishing these and other issues, and therefore suggest that the Court order further briefing of Eligo's request to limit discovery so that a full record can be presented to the Court.

Respectfully,

*/s/ Ryan Watstein*

Ryan Watstein