# FBFG | Finkelstein, Blankinship, Frei-Pearson & Garber, LLP

One North Broadway, Suite 900
WHITE PLAINS, NY 10601
Phone: (914) 298-3281
Fax: (845) 562-3492
www.fbfglaw.com

**Via ECF**
Honorable Edgardo Ramos
United States District Court
40 Foley Square, Courtroom 619
New York, NY 10007

# MEMO ENDORSED

at page 4

**Re:    _Brous, et al. v. Eligo Energy, LLC, et al._, No. 1:24-cv-1260 (ER)**

Dear Judge Ramos,

Pursuant to the Court's Individual Rule 2.A, Plaintiffs write to request a pre-motion conference on their renewed motion to compel Defendants Eligo Energy, LLC and Eligo Energy NY, LLC (collectively, "Eligo") to produce discovery regarding their fixed New York electricity rates. The Parties conferred on December 30, 2024, regarding this matter but were unable to reach agreement.

Plaintiffs allege that Eligo significantly overcharged tens of thousands of variable rate customers on their utility bills. _See_ Am. Compl., ECF No. 120. Eligo's variable energy rates are governed by its form customer contract, which requires that variable rates "shall be calculated on a monthly basis in response to" Eligo's supply costs plus applicable taxes. _See id._ ¶¶ 4 5, 35, 63 72. In addition to variable rates, Eligo also offers fixed rate plans, but those rates are much lower. _Id._ ¶¶ 83 85. Because of the substantial overlap between Eligo's fixed and variable rate supply costs, Plaintiffs intend to use fixed rate discovery to show that Eligo's variable rates are not set in compliance with the contract's rate-setting formula. _Id._ ¶¶ 83 85. This discovery will also show that Eligo's variable rates can only be explained by price gouging in violation the duty of good faith and fair dealing. _Id._ ¶ 85. As detailed below, fixed rate discovery is common in energy pricing litigation in this Circuit. As one court recently held, the "fixed-rate margin is evidence that can help the jury assess whether [the ESCO] charged a reasonable [variable rate] margin." _Mirkin v. XOOM Energy_, LLC, 2024 WL 3063833, at *6 (E.D.N.Y. June 20, 2024).

In September 2024, Plaintiffs sought fixed rate discovery, _see_ ECF No. 46 at 2, which the Court denied without prejudice pending further factual development. Sept. 10 Conf. Tr. at 13:8-11, ECF No. 64. Plaintiffs renew their request because the record now shows that Eligo considers fixed rates when it sets variable rates, and that the costs for serving fixed rate customers are similar to the costs for serving variable rate customers, and ██████████████████████████ ███████████████████████████████████████████████████████████ Further, Eligo's 30(b)(6) witness testified that ████████████████████████████████████████████████████

Fixed rate discovery is not disproportionate to the needs of this case. The parties have agreed on ESI search terms and the number of documents Defendants will review, and Plaintiffs will not ask that additional fixed rate search terms be added. Data regarding Eligo's fixed rates, which Plaintiffs may seek in the future, can be produced via a simple data extract. For context, Eligo's 2023 revenue was more than $75M for its electricity business alone. Class damages in this case are likely

1

between $75M and $100M, in line with similar ESCO cases. Any minimal burden imposed on Eligo by such discovery is *de minimis* in comparison, and certainly not disproportionate.

Plaintiffs tried to avoid involving the Court on this issue by offering a reasonable compromise. Plaintiffs asked that Eligo commit to not redacting fixed rate information from otherwise responsive discovery (Plaintiffs are confident that would result in ample fixed rate discovery, as fixed and variable rate information is intermingled in Eligo's ESI). Eligo rejected this compromise, stating that while it does not currently intend to redact fixed rate material, it reserves the right to do so. In doing so, Eligo tries to suggest there is no ripe dispute when it in fact plans on redacting any damaging fixed rate discovery.

Notably, Eligo has already produced discovery that includes intermingled fixed and variable rate information. Redacting such documents to eliminate fixed rate information is far more burdensome than simply producing them unredacted.

## A.    Fixed Rate Discovery Is Proper Under Rule 26.

Plaintiff's complaint uses Eligo's fixed rates as a benchmark to demonstrate the improper pricing practices that harmed Eligo's customers. *See Am. Compl.* ¶¶ 83  85. By comparing Eligo's fixed and variable rates, and noting their similar underlying costs, Plaintiffs allege that there is no good faith justification or contractual basis for Eligo's exorbitant variable rates. *Id.*

Parties are entitled to discovery germane to their theories of the case. As the court in *XChange Telecom Corp. v. Sprint Spectrum L.P.,* 2015 WL 773752, at *3 (N.D.N.Y. Feb. 24, 2015) held:

> No party possess[es] the unilateral ability to dictate the scope of discovery based on [its] own view of the parties' respective theories of the case. Instead, the Federal Rules specify that any information not exempted by privilege or court order may be discoverable to the extent that it "may [be] use[d] to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Thus, it matters not for the purpose of discovery which side's theory of the case might ultimately be proven correct. What matters is that each side is entitled to pursue intelligible theories of the case and [neither party can] . . . by their sole insistence, declare evidence undiscoverable or irrelevant merely because it does not fit into their own theory of the case.

(quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)) (cleaned up). A party's discovery is thus not limited by its opponent's theory of the case. *See Lifeguard Licensing Corp. v.* Kozak, 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2015) ("[T]he pleadings in this case define the scope of discovery."). Plaintiffs should be allowed to pursue proof of their straightforward theory of their case.

## B.    Fixed Rates Are Relevant To Plaintiffs' Claims.

Plaintiffs allege that the fact that "Eligo's variable rates were so much higher than its fixed rates demonstrates that Eligo's rates did not comply with the contract's rate-setting formula." Am. Compl. ¶ 84.  Plaintiffs also allege that the difference in these rates betrays a violation of the duty

of good faith and fair dealing. *Id.* ¶ 85. This is because, given the similarity in costs of the two rate products, "[t]here is no good faith justification for charging variable rate customers a rate that is outrageously higher than the rates Eligo charges its fixed rate customers." *Id.*

Other ESCO cases in this Circuit agree that fixed rate discovery is germane. In *Stanley v. Direct Energy Servs., LLC*, the court recognized that an ESCO's low fixed rates supported the theory that that ESCO's variable rates were untethered to market factors. 466 F. Supp. 3d 415, 427 (S.D.N.Y. 2020). Importantly, the *Stanley* court stated that the claim around fixed rates could be proven *only* through "the use of discovery tools, such as document production, expert reports, and testimony." *Id.* In a similar ESCO variable rate price gouging case, another court approved as "entirely consistent with plaintiff's theory" a class-wide damages model that "incorporate[d] the margin charged on [the ESCO]'s fixed rate product." *Mirkin*, 2023 WL 5622099, at *5, 7 (E.D.N.Y. Aug. 31, 2023); *see also Mirkin*, 2024 WL 3063833, at *6 (June 20, 2024) ("Indeed, the fixed-rate margin is evidence that can help the jury assess whether [the ESCO] charged a reasonable margin."); *Mirkin*, 2025 WL 16333, at *6 (Jan. 2, 2025) (excluding defense rebuttal report that sought to use Dow Jones margins to rebut consumer's use of ESCO's own fixed rate margins as benchmark for reasonableness because analysis of public companies "bears no practical relevance to the question of whether [the ESCO's] margins were reasonable."). Eligo's fixed rate data will be helpful in showing its variable rate profiteering.

## C.    The Record Now Confirms That Fixed Rate Discovery Should Be Allowed.

Post-September 2024 discovery amply demonstrates the need for fixed rate discovery. First, documents produced in discovery reveal that ███████████████████████████████ ████████████████████████████████████████ Second, in Eligo's second supplemental response to Interrogatory No. 8, it admitted that margin is one of the factors it considers in determining rates. *See* Exhibit A, Defs.' Second Supp. Resp. to Pl.'s Interrog. No. 8. ████████████████████████████████████████████████ ████████████████████████████████████████████████

Third, Eligo's Rule 30(b)(6) witness confirmed that the "same categories of data" were used in setting variable and fixed electricity rates. Sandler Dep. 1 at 155:20-23. The witness also confirmed that ████ Sandler Dep. 2 at 99:15-19. ████ *Id.* at 131:17-22 ████ ; 133:3-6 ████ Eligo even stated that ████ *Id.* at 131:17-132:9. Per Eligo's counsel, that makes fixed rate data discoverable. *See* Sept. 10 Conf. Tr. at 9:1 19 (Eligo conceding that "[i]f fixed rates were used to calculate variable rates, then they would be discoverable.").

These recent record developments show that despite its binding customer contract, ████ ████████████████████████████████████████ On this record, fixed rate information is discoverable.

Thank you for the Court's attention to this matter.

Dated: January 8, 2025                    Respectfully submitted,

                              By:    /s/ D. Greg Blankinship
                                     D. Greg Blankinship
                                     FINKELSTEIN, BLANKINSHIP,
                                     FREI-PEARSON & GARBER, LLP
                                     One North Broadway, Suite 900
                                     White Plains, New York 10601
                                     Tel: (914) 298-3281
                                     Fax: (914) 824-1561
                                     gblankinship@fbfglaw.com

                                     J. Burkett McInturff
                                     **WITTELS MCINTURFF PALIKOVIC**
                                     305 Broadway, 7th Floor
                                     New York, New York 10007
                                     Tel: (917) 775-8862
                                     Fax: (914) 775-8862
                                     jbm@wittelslaw.com

Plaintiffs' request is denied.

SO ORDERED.

_____
Edgardo Ramos, U.S.D.J.
Dated: January 15, 2024
New York, New York

4