

**MEMO ENDORSED**

Ryan Watstein
Ryan@wtlaw.com
404-782-0695

January 24, 2024

**VIA ECF**
Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

Plaintiffs are directed to respond to this letter by January 30, 2025.

SO ORDERED.

Edgardo Ramos, U.S.D.J.
Dated: January 27, 2025
New York, New York

Re: *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Defendants' Motion to Re-Open Plaintiff Schuster's Deposition and Compel Written Discovery

Dear Judge Ramos:

We represent Defendants. We write to seek leave of court to briefly re-open the deposition of Plaintiff Michelle Schuster to address evidence that was not available prior to her first deposition and to compel production of documents Ms. Schuster testified about during that deposition. Re-opening Ms. Schuster's deposition is particularly important because the new information contradicts Ms. Schuster's deposition testimony, indicating that she perjured herself on the core issue of how and why she chose Eligo as her electricity supplier. That, of course, is directly relevant to her adequacy under Rule 23 and the accuracy of allegations made in her complaint.

Because we merely seek to re-open Ms. Schuster's deposition for two hours, we had hoped to accomplish that on consent and avoid burdening the Court with another discovery motion. Plaintiffs, however, would not consent to even that limited relief. This is yet another example of their one-sided approach to discovery, in which they have required Eligo to incur more than a million dollars in defense costs to review 200,000+ documents, defend multiple Rule 30(b)(6) depositions, and make witnesses available for numerous other depositions. Yet Plaintiffs refuse to make Ms. Schuster available for a mere two hours, refuse to produce a handful of highly relevant documents, and fight to prevent Anne Brous, who seeks to join this action as a named plaintiff, from being deposed at all.

Defendants deposed Ms. Schuster late last year. During that deposition, Ms. Schuster testified unequivocally and emphatically that she signed up with Eligo after receiving a "flyer" in the mail that allegedly made specific representations about Eligo's variable rates. Schuster Dep., excerpts of which are Ex. A hereto, 59:3–9, 61:4. She testified that she called Eligo to enroll in reliance on representations made in this claimed "flyer." *Id*. Here is a video showing how unequivocal that testimony was. She then immediately tried to use that unequivocal testimony to obtain written marketing materials from Eligo.

**Atlanta**
1055 Howell Mill Road, 8th Floor
Atlanta, GA 30318

**Los Angeles**
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071

**Miami**
218 NW 24th Street, 3rd Floor
Miami, FL 33127

 www.wtlaw.com     Ryan@wtlaw.com     404-782-0695

Ms. Schuster's testimony was contrary to the allegations in her own complaint, which alleged that Ms. Schuster had been solicited by a representative of Eligo via telephone and made no mention of any flyer or other mailing. *See* ECF No. 1 ¶ 52. It was also contrary to Eligo's marketing practices. So it caused Defendants to further investigate Ms. Schuster's enrollment. As a result, Eligo was able to obtain a recording of Ms. Schuster's enrollment call, which had been handled by a third-party vendor called CEP. *See* LaPointe Decl., Ex. B hereto, ¶ 5. At Eligo's insistence, CEP uncovered archived call recordings that it had overlooked in Eligo's previous attempts to retrieve call recordings from CEP. *Id.* ¶ 8.

The recording of Ms. Schuster's call with CEP thoroughly contradicts her testimony. In that call, Ms. Schuster said she chose to call to enroll with Eligo after "receiv[ing] a message on my answering machine," not because she received a "mailer" or "flyer." *See* Transcript of Ms. Schuster's call, Ex. C hereto. She also testified that she had been an RG&E electric customer for six years before enrolling with Eligo in 2016. Schuster Dep. 64:3–4. But during her call with CEP in 2016, Ms. Schuster told the CEP representative she was then paying $0.1139 per kwh for electricity. That does not add up, because RG&E's prices at the time were just $0.08 per kwh. Yet one of Ms. Schuster's core allegations is that Eligo overcharged her because its variable rates were higher than RG&E's. It is thus important for Defendants to discover whether Ms. Schuster was already paying more than RG&E charged, and why.

These material inconsistencies in Ms. Schuster's testimony must be explored via brief re-opening of her deposition. *Sentry Ins. v. Brand Mgmt. Inc.*, 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012) (citing Fed. R. Civ. P. 30(a)(2)(A)(ii)). "Leave should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2), such as whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit." *Id.* at *8 (cleaned up, collecting cases). Above all, "[c]ourts will typically re-open a deposition where there is new information on which a witness should be questioned." *Id.* (quotation omitted). That is especially so where the newly discovered information conflicts with the witnesses' prior testimony. *Vincent v. Mortman*, 2006 WL 726680, at *1–2 (D. Conn. Mar. 17, 2006) (allowing plaintiff to re-open deposition when one witness' deposition contradicted defendants' deposition and medical records); *Keck v. Union Bank of Switzerland*, 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (deposition re-opened where affidavit provided evidence conflicting with witness testimony).

Mr. LaPointe's declaration establishes that Ms. Schuster's enrollment call with CEP was not available to Eligo prior to Ms. Schuster's deposition. Ex. B ¶ 6. Indeed, that recording was stored in archived records that even CEP did not know it had, until Eligo insisted it look again for information about Ms. Schuster's enrollment. Defendants therefore had no opportunity to question Ms. Schuster about that recording, and doing so in a re-opened deposition will not be unnecessarily cumulative. That's particularly true given Defendants deposed Ms. Schuster for less than 3 hours, a fraction of the time available to them.

The slight burden of a second deposition, which Defendants would limit to two hours, does not come close to outweighing its potential benefit. In that respect, Ms. Schuster's false testimony about having received a "flyer" containing representations about Eligo's rates could hardly be more material to her claims. The gist of Ms. Schuster's testimony is that she was somehow misled by mailers about what Eligo would charge for electricity and how Eligo would calculate its variable rates. But it now appears that her claims are based on false statements that conflict with undisputed evidence. Permitting Defendants to

2

confront Ms. Schuster with the recording will therefore serve the truth-seeking functions of discovery. These inconsistencies also go directly to Ms. Schuster's credibility, which is especially important in this putative class action, where Ms. Schuster seeks to serve as a lead plaintiff and must show she is adequate to do so. And if that were not enough, Plaintiffs have affirmatively relied on Ms. Schuster's false testimony in seeking discovery of written marketing materials from Eligo—materials it turns out she never saw. *See* ECF No. 99 at 2–3. Basic fairness dictates that Defendants be permitted to cross-examine Ms. Schuster about false testimony on which she has affirmatively relied.

Relatedly, the Court should also compel Ms. Schuster to produce several categories of relevant documents she is refusing to disclose. These are:

1. *Ms. Schuster's utility bills*. Ms. Schuster testified that she keeps a "utilities folder" that contains "all my utility bills, my statements" and "information I would have received" from utility providers. Schuster Dep. 93:19–94:5. Yet she has produced virtually none of those records. Her prior bills are directly relevant to whether she was a RG&E electric customer before switching to Eligo, as she claims. *Compare id.* at 63:18–22 *with* Ex. B, Ex. 1. In addition, she testified that after switching to Eligo, she could have compared Eligo bills to her old RG&E bills to determine whether Eligo was charging more than she paid RG&E. Schuster Dep. 109:14–110:5. Because Plaintiffs have put the RG&E rates at issue, Defendants must be allowed to discover exactly what Ms. Schuster was paying and when.

2. *Documents relating to Ms. Schuster's alleged damages*. Ms. Schuster testified repeatedly that she decided to bring this case because she wanted to be "made whole" by recovering amounts she was allegedly "overcharged" by Eligo. Schuster Dep. 35:2, 7. She admitted during her deposition, however, that she did not pay Eligo's bills by herself. Her domestic partner Howard Behrns reimbursed her for portions, in amounts that Ms. Schuster claimed she could not recall. *Id.* at 11:8–18, 12:1–13:3, 107:1–19. Because Ms. Schuster can't recover for losses she did not incur, Defendants are entitled to financial records showing Mr. Behrns' reimbursement of Eligo bills, along with their communications related to that issue. Such communications certainly exist because Ms. Schuster admitted that Eligo bills had been a particular point of contention between the couple. *Id.* at 134:6–14.

3. *Expert reports*. Ms. Schuster testified that experts supplied information included in the complaint (*Id.* at 49:6–11), including that "I've seen . . . what the expert has completed for us there," referencing a chart contained in the complaint. *Id.* at 111:25–112:1, 113:13–16. This information is relevant, previously requested, and yet Plaintiffs are still refusing to produce it.

4. *Engagement letter*. Ms. Schuster's engagement letter is the subject of a pending letter motion. ECF No. 100. Her engagement letter with counsel is relevant because she refused to testify about the scope of representation, incorrectly asserting a privilege objection even though engagement letters are not privileged, and was also unable to recall details about the arrangement.

For the above reasons, Defendants ask this Court to re-open Ms. Schuster's deposition for a limited two-hour period and to order production of the documents described above. Defendants have brought this letter motion only after all their efforts to confer with Plaintiffs on these issues have failed. Plaintiffs' short-sided perspective clutters the Court's docket with straightforward discovery issues that will take much more effort to brief and argue than just agreeing to allow Eligo to uncover the truth.

Respectfully,

*/s/ Ryan D. Watstein*
Ryan D. Watstein