

MEMO ENDORSED

Ryan Watstein
Ryan@wtlaw.com
404-782-0695

April 23, 2025

**VIA ECF**

Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

    Re:    *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Response to Plaintiffs' April 14, 2025 Letter Motion (Doc. 185)

Dear Judge Ramos:

    Plaintiffs' sixteenth discovery motion asks the Court to compel Eligo to reproduce data that it already produced months ago, to shorten Eligo's deadline to respond to interrogatories served two weeks ago, and to compel Eligo to testify at a *third* Rule 30(b)(6) deposition, all within the last few weeks of the discovery period. As with Plaintiffs' previous letter motion, which this Court denied in its entirety, Plaintiffs have not established that they are entitled to any of the "relief" they seek.

### I. Eligo Has Already Produced the Estimated Cost and Margin Data Plaintiffs Seek, Along with Thousands of Other Documents Revealing Its Costs

    Plaintiffs first ask the Court to compel Eligo to produce data establishing its costs and profit margins on a per-customer level for the entire seven-year class period. The Court should deny this request because Eligo has already produced the cost and margin data in its possession and control, including data showing its estimated costs and margins at the lowest level at which Eligo maintains those records.

    As background, Eligo's contracts with the named Plaintiffs provided that Eligo would set variable prices for electricity according to "market pricing," "other market price factors," "pricing strategies," and "market conditions." Doc. 1, Exs. A-B. Plaintiffs have consistently misread that language, as they do here, to mean that Eligo's variable rates would be based solely on "the costs it incurs to purchase energy on the wholesale market." *See* Doc. 185 at 1. Contrary to Plaintiffs' false interpretation, however, the contracts plainly give Eligo discretion to set rates and to consider many different "market price factors," including but not limited to the wholesale cost of energy, in doing so. So, Plaintiffs' motion is based on the false premise that Eligo's costs are or should be *the* sole determinant of its variable prices, when in fact that customer contract provides that Eligo's energy acquisition costs are but a small piece of a multi-factor pricing equation that vests Eligo with discretion to set a "market" based price.

    Because costs are a component of Eligo's rate setting, Eligo has produced reams of data relating to

---

**Atlanta**
1055 Howell Mill Road, 8th Floor
Atlanta, GA 30318

**Los Angeles**
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071

**Miami**
218 NW 24th Street, 3rd Floor
Miami, FL 33127

 www.wtlaw.com      Ryan@wtlaw.com      404-782-0695

its costs, including the cost to acquire energy. These include spreadsheets with detailed breakdowns of Eligo's costs and other financials; invoices related to Eligo's acquisition of energy and REC purchases; spreadsheets and other documents Eligo's data scientists used in determining the variable rates; daily costing-model spreadsheets from POWRR that Eligo used to forecast its costs to determine variable rates; monthly spreadsheets containing the actual, historical data ███████████████████████████████████████████████████████ used to calculate customized variable rates for each customer; and spreadsheets containing ███████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Eligo has therefore produced more than "data sufficient to show" Eligo's costs, which is what Plaintiffs requested in their document requests. *See* Doc. 185 at 1 (acknowledging that Plaintiffs requested "documents sufficient to show . . . each factor Eligo used to calculate the variable rate for gas or electricity"). Eligo has also produced all cost documents used to set variable rates for customers in New York that Eligo could locate with both manual and ESI searches. And as the Court knows after last week's discovery hearing, those ESI searches were heavily negotiated with, and ultimately agreed to by, Plaintiffs' counsel.

Yet just as the Court saw in that prior hearing, Plaintiffs' counsel is once again trying to alter a discovery-related agreement it reached with Eligo's counsel long before filing Plaintiffs' most recent letter motion. Plaintiffs now seek data establishing Eligo's costs and margins on a per-customer level, even though *Eligo does not track actual costs or margins on a customer-level basis*. As Eligo's counsel has repeatedly stated to Plaintiffs' counsel, Eligo merely estimates cost and margin data at the customer level. That's because the billing and remittance that Eligo receives for electricity from NYISO, utilities, and other supply sources do not break down costs on a customer basis. Suppliers get billed an amount for the total electricity purchased during each month. This is not unique to Eligo; all suppliers face the same issue, as Plaintiffs' counsel are well aware from their numerous previous suits against other energy suppliers. Because of that, Eligo also informed Plaintiffs' counsel that Eligo could not calculate its *actual* costs and margins at an account level; the most Eligo could do would be to produce that data at the grid level, or what Plaintiffs call in their letter motion, the "NYISO" level.

Plaintiffs now attempt to argue that NYISO-level data is inadequate and have submitted numerous exhibits (a practice for which this Court has previously admonished Plaintiffs) in an attempt to prove that Eligo previously agreed to provide customer-level cost and margin data. That is not true. In an email exchange from early March, Eligo plainly told Plaintiffs that it would provide a "breakdown of the costs and margins at the ISO level, which Eligo confirmed is the lowest level at which they can calculate actual costs and margins." *See* Doc. 185-6 (email from Plaintiffs' counsel summarizing conferral and stating "you said Eligo would be able to produce that actual customer-level data within 2-3 weeks (*with the caveat that certain data may only be available at the utility zone level*[1])) (emphasis added). So, there was never any agreement to provide Plaintiffs with customer-level costs or margins, because Eligo simply doesn't have that data available to it, and it told Plaintiffs as much last month.

Plaintiffs now appear to ask for *estimated* customer-level data, but to the extent that data exists at all, Eligo has already produced it as part of ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

---

[1] During the parties' March 14, 2025 conferral, Eligo's counsel misspoke and stated that the lowest level at which Eligo could calculate its costs and margins was at the utility zone.

████████████████████████████████████ All that means that Eligo has already given Plaintiffs the cost and margin data that it actually has, as opposed to data that Plaintiffs might like to have or data that Plaintiffs might like to force Eligo to try unsuccessfully to re-create, at great effort and cost. The Court should not order Eligo to do something it cannot, especially when Eligo already provided the cost and margin data it actually used to set rates months ago.

Nor should the Court indulge Plaintiffs in scheduling an in-person conference to hear evidence on this issue. *See* Doc. 115 (requesting same). Nothing in the spreadsheets that Plaintiffs want to present to the Court can change the fact that Eligo simply doesn't have the customer-level cost and margin data Plaintiffs seek. There is no reason to turn this discovery issue into an in-person mini-trial, at great cost. Like Plaintiffs' other serial discovery motions and previous requests for in-person hearings that this Court correctly denied, this is yet another tactic to drive up Eligo's expenses as its counsel are not local.

## II.   Plaintiffs Are Not Entitled to a Third 30(b)(6) Deposition or to Accelerate Eligo's Deadline to Respond to Plaintiffs' New Interrogatories.

Plaintiffs also ask the Court to compel Eligo to supply information via an expedited interrogatory response or additional 30(b)(6) deposition, which, if granted, would be the third 30(b)(6) deposition taken in this case. Plaintiffs have no right to either.

Plaintiffs claim that they initially sought customer-level cost and margin data via interrogatories served "over five months" ago. Doc. 185 at 3. But Plaintiffs never moved to compel responses to those interrogatories because, as they admit, Eligo provided information responsive to the requests. In addition, Eligo's corporate representative testified about the various costs Eligo has considered in setting rates and Eligo already produced a detailed, itemized breakdown of the costs it considers in setting rates at the grid-level. Following all of that, as noted above, Plaintiffs ask for customer-level cost and margin data, which Eligo determined that it simply did not have.

On April 9, 2025, Plaintiffs served a new set of interrogatories regarding Eligo's cost data, demanding that Eligo respond within 15 days. Under Rule 33, Eligo has until May 9, 2025 to respond. Plaintiffs ask the Court to shorten that deadline by half, and to order Eligo to respond by April 24, 2025. But they cite no exigent circumstances that would justify shortening Eligo's deadline, nor do they cite any authority supporting that request. The request should be denied for that reason alone. And in any event, to the extent Plaintiffs have additional questions about customer-level expenses or margins, they will be able to ask the several current and former Eligo employees Plaintiffs intend to depose in May.

Plaintiffs' alternative request—to force Eligo to "prepare and present a corporate representative for deposition on May 1, 2025"—is patently unreasonable and unjustified. Eligo has already been deposed twice under Rule 30(b)(6). Another such deposition would be duplicative and disproportionate, especially on the unreasonable accelerated timeline Plaintiffs seek to impose. Nor do Plaintiffs offer any reason why they cannot obtain any discoverable cost-based data from the eight witnesses they plan to depose in May, which include Eligo's former Director of Analytics and Data Science (Brandon Carr); the former VP of Finance, Risk and Analytics (Brian Feely); the VP of Risk and Trading (Scott Glotzbach); and the Financial Planning & Analytics Director (Yuri Ashuev), who all have personal knowledge about Eligo's variable rate setting and/or costs.

For these reasons, the Court should deny Plaintiff's latest letter motion (Doc. 185) in its entirety.

Respectfully,

*/s/ Ryan Watstein*
Ryan Watstein

---

A telephonic pre-motion conference will be held on May 1, 2025, at 10:30 a.m. The parties are instructed to call (855) 244-8681; enter access code 2301 087 7354#; and enter # again when asked to enter the attendee ID number. The parties are further instructed to join the call five (5) minutes prior to the conference's start time.

SO ORDERED.

Edgardo Ramos, U.S.D.J.
Dated: 4/24/2025
New York, New York

4