

Ryan Watstein<br>
Ryan@wtlaw.com<br>
404-782-0695

May 9, 2025

*VIA ECF*
Hon. Edgardo Ramos
United States District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

    Re:    *Brous v. Eligo Energy, LLC*, 24 Civ. 1260
            Letter Motion for Protective Order

Dear Judge Ramos:

    We represent Defendants in this dispute and write to request that the Court issue a protective order with respect to the depositions of Eligo's co-founders and executive board members, Alex Goldstein and Mark Friedgan. Messrs. Goldstein and Friedgan have no unique, relevant knowledge that cannot be obtained from the at least six other depositions Plaintiffs are taking this month, including Eligo's former CEO. The Apex Doctrine exists to protect high-ranking corporate officials from harassing and unnecessary depositions, and the Court should employ it here to protect Messrs. Goldstein and Friedgan.

## I. Messrs. Goldstein and Friedgan's Depositions Should be Quashed Under the Apex Doctrine

    Alex Goldstein and Mark Friedgan founded Eligo LLC in 2012. Mr. Goldstein served as Eligo's CEO between May 2012 and October 2017. Since stepping down as Eligo's CEO, Mr. Goldstein has served as the Executive Chairman of Eligo's board of directors. Mr. Friedgan has served on Eligo's executive board of directors since Eligo's founding. Eligo has filed this letter motion because Plaintiffs insist on deposing both Mr. Goldstein and Mr. Friedgan, in addition to the six other depositions they are scheduled to take this month and next plus the two Rule 30(b)(6) they have already taken. Because neither Mr. Goldstein nor Mr. Friedgan has any unique knowledge relevant to this case, they should be protected from unnecessary and harassing depositions under the Apex Doctrine.

    The Apex Doctrine was designed to protect high-ranking executives, like Messrs. Goldstein and Friedgan, from the "needless harassment" of unnecessary depositions. *Harapeti v. CBS Television Stations Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021); see also *Shiber v. Centerview Partners LLC*, 2023 WL 3071554, at *2-3 (S.D.N.Y. Apr. 25, 2023). Courts have regularly held that the Apex Doctrine extends to former executives and directors. *See Harapeti*, 2021 WL 3932424, at *2; *Reed v. Beko Techs. Corp.*, 2023 WL 11963637 (N.D. Ga. Dec. 6, 2023) (applying the Apex Doctrine to members of defendant's board

---

**Atlanta**
75 14th Street NE, Ste. 2600
Atlanta, GA 30309

**Los Angeles**
515 S. Flower Street, 19th Floor
Los Angeles, CA 90071

**Miami**
2- NW 24th Street, 3rd Floor
Miami, FL 33127

 www.wtlaw.com      omuraina@wtlaw.com      404-905-8999

of directors); *Keatley v. Union Pac. R.R. Co.*, 2024 WL 4906135, at *1 (D. Neb. Nov. 27, 2024) (collecting cases).

Here, Plaintiffs seek to depose Mr. Goldstein and Mr. Friedgan merely because they are Eligo's founders and were or are members of Eligo's board of directors. As such, Plaintiffs bear the burden to demonstrate that Messrs. Goldstein and Friedgan: (1) have unique, non-repetitive, first-hand knowledge of the facts at issue; **and** (2) "other witnesses are incapable of providing testimony about the conduct alleged." *Harapeti*, 2021 WL 3932424, at *2; *Burns v. Bank of Am.*, 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007) ("Unless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case, it may be appropriate to preclude a deposition of a highly-placed executive while allowing other witnesses with the same knowledge to be questioned.") (cleaned up). That is a burden Plaintiffs cannot carry.

This is a case challenging Eligo's setting of variable rates for electricity in New York. Eligo's rate setting process occurred in the regular course of business and, like most ordinary-course corporate functions, was conducted and supervised by employees well below the level of the Board of Directors. Indeed, during a Rule 30(b)(6) deposition, Eligo identified ten individuals across its risk and pricing, data analytics, and executive teams who participated in setting variable rates for New York customers. *See* Second Sander Dep. 46:05-50:13 (identifying Scott Glotz, Ian Scott, Yanni Moraites, Brian Feely, Ken Pedotto, Michael Sandler, Mandy Peterson, Brandon Carr, and Yuri Ashuev as persons involved in setting variable rates for New York customers). Plaintiffs are scheduled to depose at least six of those individuals, in addition to the two 30(b)(6) depositions they have already taken. These deponents include: (1) Ken Pedotto, former CEO (2017-2023); (2) Yuri Ashuev, Financial Planning & Analytics Director; (3) Brian Feely, former Vice President of Finance, Risk and Analytics (2017-2021); (4) Brandon Carr, former Director of Analytics and Data Science (2017-2022); (5) Scott Glotzbach, Vice President of Risk and Trading; and (6) Michael Sandler, Chief Information Officer.

Before taking any of those six depositions, Plaintiffs have preemptively insisted on deposing Messrs. Goldstein and Freidgan. That is so even though neither Messrs. Goldstein nor Friedgan have any unique personal knowledge regarding the claims in this case. Whatever knowledge of the rate-setting process they do have, in their capacities as members of Eligo's board, would be entirely duplicative of (and far less specific than) the testimony of other witnesses Plaintiffs are scheduled to depose. *See Shiber*, 2023 WL 3071554, at *3 (denying motion to compel under Fed. R. Civ. P. 26(b)(2) and the Apex Doctrine because CEO's knowledge of the claim at issue was cumulative).

The depositions would be especially duplicative and unnecessary because Eligo has already agreed to produce for deposition its former CEO, Mr. Pedotto, who was far more involved in Eligo's day-to-day operations during the alleged relevant period than Messrs. Goldstein or Friedgan and whose tenure as Eligo's CEO was longer than Mr. Goldstein's.[1] There is simply no reason why Plaintiffs need to depose two of Eligo's former CEOs or two Board members, in addition to Mr. Pedotto and the other Eligo employees who were directly involved in the rate setting process. And of course, Plaintiffs have not and cannot prove that Mr. Goldstein or Mr. Friedgan has any unique knowledge because Plaintiffs are insisting

---

[1] Plaintiffs allege that the "Relevant Period" extends from February 20, 2014, to the present. Defendants do not concede that this period is, in fact, relevant and object to the extent this period far exceeds the statute of limitations for Plaintiffs' claims.

on deposing them before deposing any of the six other Eligo witnesses who actually set the variable rates. *Cf.* Fed. R. Civ. P. 26(b)(2)(C) (requiring courts to limit the "frequency or extent of discovery otherwise allowed" where "the discovery sought is unreasonably cumulative or duplicative").

Because "[i]t is clear that the information … can be obtained from some other source that is more convenient [and] less burdensome," the Court should grant Defendants' request for a pre-motion conference to quash Plaintiffs' notices of depositions of Messrs. Goldstein and Friedgan. *Shiber*, 2023 WL 3071554, at *3; *see also Guzman v. News Corp.*, 2012 WL 2511436, at *2 (S.D.N.Y. June 29, 2012) (finding an individual's role as a "direct supervisor, does not immediately confer unique knowledge) (cleaned up).

For these reasons, the Court should quash the depositions for Messrs. Goldstein and Friedgan.

Respectfully,

*/s/ Ryan Watstein*
Ryan Watstein