Exhibit H

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  IRA BROUS,

 4              Plaintiff,

 5         v.                              24 Civ. 1260 (ER)

 6  ELIGO ENERGY LLC,
                                           Conference
 7
                Defendant.
 8
    ------------------------------x
 9                                         New York, N.Y.
                                           May 9, 2024
10                                         3:30 p.m.

11  Before:

12                    HON. EDGARDO RAMOS,

13                                         District Judge

14                        APPEARANCES

15  FINKELSTEIN BLANKINSHIP FREI-PEARSON & GARBER LLP
         Attorney for Plaintiff
16  BY:  DOUGLAS G. BLANKINSHIP

17  WITTELS MCINTURFF PALIKOVIC
         Attorney for Plaintiff
18  BY:  J. BURKETT McINTURFF

19  WATSTEIN TEREPKA LLP
         Attorneys for Defendant
20  BY:  RYAND D. WATSTEIN
         LEO P. O'TOOLE
21       ABIGAIL HOWD

22

23

24

25
```

1           (The Court and all parties appearing remotely)

2           THE COURT:  Good afternoon, everyone.

3           This is Judge Ramos.  Jazmin, please call the case.

4           (Case called)

5           DEPUTY CLERK:  Counsel, please state your name for the
6  record starting with counsel for plaintiff.

7           MR. McINTURFF:  Good afternoon, your Honor.

8           This is Burkett McInturff from Wittels McInturff
9  Palikovic on behalf of plaintiff and the proposed class.  I
10 also have here with me my colleague, Gregory Blankinship, from
11 the law firm of Finkelstein Blankinship Frei-Pearson & Garber,
12 also on behalf of plaintiffs and the proposed class.

13          DEPUTY CLERK:  Counsel for defendant.

14          MR. WATSTEIN:  Your Honor, good afternoon.

15          Your Honor, this is Ryan Watstein from Watstein
16 Terepka for the defendant.  With me in the room, I have my
17 colleagues, Leo O'Toole and Abigail Howd.

18          THE COURT:  Good afternoon to you all.  This matter is
19 on for a conference.  I note for the record that it is being
20 conducted by telephone.  We are here at the request of the
21 defendant.  However, this is the first time that the parties
22 have appeared before me, so, Mr. McInturff, let me begin with
23 you.  Why don't you tell me a little bit about what this case
24 is about.

25          MR. McINTURFF:  Yes.  Thank you, your Honor.

1              This is Burkett McInturff.  Eligo, the defendant, is a
2     supplier of energy, so gas and electricity in deregulated
3     utility markets across the country.  Eligo is what's called an
4     energy services company or an ESCO, especially in New York,
5     ESCO is the term.
6              Now, Eligo buys and sells energy on deregulated
7     markets.  And the background here is that the idea behind
8     deregulation is that if states opened up their wholesale energy
9     markets, companies like Eligo could buy from that wholesale
10    market and then resell it at retail to customers and compete
11    with the utility.  The idea was that competition would drive
12    down consumers' monthly bills.
13             So Eligo buys its gas and electricity on the same
14    market as the utility.  So as a customer in New York and other
15    states, you've got a choice.  You could either buy your energy
16    from companies like Eligo or you can go with the traditional
17    utility.
18             Well, Eligo's customer contract says that it's rates
19    are calculated from those very market prices, but the complaint
20    shows that Eligo charges three times on average that wholesale
21    market price.  Now that's a breach of contract.  It's also a
22    violation of New York and other states' consumer protection
23    statutes.  A company can't promise a large group of consumers
24    that they're going to price their service in a certain way and
25    then violate that promise.

1          Now, important context here is that in 2021, the State
2   of New York through its regulator, the New York Public Service
3   Commission, banned the very variable rates, the rates that
4   Eligo charged New Yorkers.  Those were banned in 2021.  Yet,
5   Eligo continued to charge and sell that exact variable rate
6   product.
7          I will also add that today, today on May 9, Maryland's
8   governor just signed that state's legislation banning the same
9   variable rates that were charged to class members here.
10         So we brought a case on behalf of consumers in the
11  nine markets where Eligo does -- sells energy of deregulated
12  gas and electricity, and we brought claims for breach of
13  contract, breach of that very customer contract that promises a
14  rate calculated from the wholesale market prices, and we
15  brought consumer protection claims under those states laws.
16         Now, Eligo's letter, as we said in our response, is a
17  partial -- you know, asserts a partial dismissal argument.
18  They want to move to partially dismiss the case.  Aside from
19  being inefficient, the vast majority of Eligo's arguments go to
20  the scope of the class.  And it is very well settled that
21  arguments there to be settled at the Rule 23 class
22  certification stage should be settled at that stage with the
23  benefit of discovery.
24         So Eligo argues, for example, there are contracts that
25  have different choice of law provisions that would mean that

1  customers who were subject to those contracts can't litigate in
2  this case in New York.  Well, those contracts aren't in the
3  record.  And it's a paradigmatic example as to why these issues
4  under Second Circuit authority and a legion of cases, some of
5  which we cite in our letter, make it clear that issues like
6  that are decided at class certification.
7  	So that takes out the overwhelming majority of the
8  defendant's arguments proffered in its letter.  The remaining
9  argument --
10  	THE COURT:  Can I just stop you for a second,
11  Mr. McInturff?
12  	I mean, it's not in the record, but is it true?
13  	MR. McINTURFF:  We have no indication that that is the
14  case, so it's -- and we don't know, and it is not in the
15  record.  And, in addition, whether or not those venue clauses
16  railroad enforceable is an issue, and then whether or not those
17  claims, if they were brought in other states, wouldn't be
18  consolidated back into New York anyway.
19  	So there are a number of issues there raised by this
20  idea that there are these other venue clauses out there.  But
21  it's not ripe, your Honor.
22  	THE COURT:  How many states is your class?
23  	MR. McINTURFF:  The proposed class encompasses -- it's
24  nine -- sorry -- it's eight states and Washington D.C..
25  	THE COURT:  Thank you.

1                Mr. Watstein, is it?

2                MR. WATSTEIN:  Yes, that's the correct pronunciation.
3      Thank you, your Honor.

4                THE COURT:  I'm sorry, you can go ahead, Mr. Watstein.

5                MR. WATSTEIN:  Sure.  Thank you.

6                I'll start by saying that we disagree entirely with
7      plaintiff's characterization of the facts, unsurprisingly.  We
8      are not geared to talk about the facts necessarily, but I'll
9      say a couple of things.  First of all, this is a case that's
10     brought by two individuals, one of whom, we understand, has
11     unfortunately since passed away, which is something that I
12     wanted to raise, maybe not something we need to discuss right
13     this moment, but my point is only that there are two, now maybe
14     only now one, hand selected individuals that had a contract
15     with an entity called Eligo New York, so one company.

16               Now they've also sued a parent company, but they
17     haven't sued the companies that offer energy and have contracts
18     with consumers in the eight other jurisdictions where they
19     purport to -- or the eight other jurisdictions pursuant to the
20     laws of which they purport to bring claims.  And of course so
21     we've got these two, maybe one, New York plaintiffs that have
22     only ever seen New York contracts with an entity that doesn't
23     offer services in those eight other states.  They haven't sued
24     the entities that do offer services in those other states, but
25     they're attempting to use this case as a vehicle to get

1  discovery as to a litany of other entities that have completely
2  different contracts under completely different regulatory
3  schemes on behalf of plaintiffs who all have binding forum
4  selection provisions and have contractually chosen to litigate
5  any claims that they might have in those other states.
6        And so, you know, your Honor asked is that true.  And
7  the answer is yes.  And, of course, we have those agreements
8  and we will put them in the record.  I understand that they are
9  not yet in the record and that is because, you know, the
10 Southern District of New York of course has a premotion
11 requirement, and that is why we're here today.  The only thing
12 that's been filed in the case is a complaint so far.  So, of
13 course, there is not that information in the record because,
14 like plaintiff's counsel said, they have no indication, and
15 they do not know quoting, you know, what those other contracts
16 say.
17       So, you know, plaintiff's characterization of the
18 facts are not accurate.  For example, you know, the contention
19 that Eligo was charging multiples of the rates that a utility
20 was charging is kind of a neither here nor there because there
21 is a separate contract at play here that we contend permits
22 exactly the type of billing that was engaged in in this case.
23 It's not tied to supply costs, as plaintiff claims that it is.
24 But that's not really relevant here because the only claim that
25 we're not moving or that we do not intend to move to dismiss is

1  the contract claim of the named plaintiffs and the reason for
2  that is that particular claim is going to require some degree
3  of discovery, right?  We've got to have discovery on how rates
4  are calculated and what the terms in that contract mean.  We
5  contend that Eligo's practices in New York were exactly as they
6  were supposed to be pursuant to the contract.
7           But one of the things that I wanted to clear up, the
8  product that Eligo is offering is totally different than the
9  product that utilities offer.  Many of the variable rate
10 contracts that Eligo offers are either very large part green
11 energy or in some instances all green energy in contrast of
12 utility.  So it makes sense that the price would be calculated
13 differently than a utility.
14          The other thing, of course, Eligo is a small company
15 with only a few thousand customers in New York.  Of course
16 their pricing is completely different from utilities.  Again,
17 these issues are kind of beside the point for this current
18 premotion conference.  As our letter explained, this is not a
19 cookie-cutter motion to strike that attacks issues of
20 predominance without any evidence.  I've defended 400 class
21 actions across the country.  We never file those types of
22 motions.  So plaintiff's arguments that that is what we are
23 proposing is just wrong.  To the contrary, our motion to
24 dismiss/to strike will explain that there are only two
25 plaintiffs in the case, both New York residents with contracts

1  with Eligo New York, one entity.  So they cannot assert claims
2  under nine other states' laws and under contracts with other
3  entities, over a half dozen other entities in other states that
4  they don't have and that they've never seen.
5         And as we'll explain, that's so for a litany of
6  independent reasons.  For example, venue is improper for
7  out-of-state commercial claimants because they -- sorry --
8  consumer claimants because they have state specific forum
9  selection clauses, number one.  The Court lacks personal
10 jurisdiction over Eligo LLC as to all out-of-state claimants,
11 number two.  Plaintiffs don't state a claim as to Eligo New
12 York as to all out-of-state claimants, of course, because, as
13 you heard counsel say, they have no idea what those
14 out-of-state contracts entail.  They make no allegations that
15 any entity that provides electricity in those other states did
16 anything in breach of a contract or a statute, number three.
17        Number four, contrary to plaintiff's characterization
18 that we are challenging Article III standing, we are not.
19 Nothing in our letter said that we were.  We are challenging
20 statutory standing, plaintiff's statutory standing to assert
21 claims under consumer protection laws that don't protect them.
22 There is no question that these named plaintiffs, New York
23 residents who have contracts with a New York entity cannot sue
24 that entity or any other under, for example, the law of
25 Massachusetts, the law of Pennsylvania, particularly given that

1    some of those statutes have pre-suit notice requirements, which
2    of course haven't been satisfied.  That's the fourth reason.
3         And then as a fifth reason as to the commercial
4    contracts, plaintiffs can't assert claims under those contracts
5    because they don't have commercial contracts.  They are not
6    commercial customers.  They are consumers.  And there are more
7    granular points that I can get into, but I guess the big
8    picture point that I'm trying to get across is that our motion
9    is not some scattershot motion that challenges predominance
10   based on issues of fact prematurely.  It is a very targeted
11   motion that says, look, we've got two New York plaintiffs here.
12   They only have New York claims.  You can't use this as a
13   vehicle to assert claims on behalf of nonexistent people who
14   have chosen not to sue, who have forum selection provisions.
15   Those issues need to be decided at the outset:  Issues of
16   personal jurisdiction, venue, they need to be decided at the
17   outset.
18        So it's also our position that our forthcoming motion
19   to dismiss should be decided before discovery opens because,
20   again, contrary to plaintiff's contentions, our motion will
21   turn this case, if successful, into a case asserting
22   effectively dozens of claims against almost a dozen entities in
23   nine jurisdictions to a single defendant, single state breach
24   of contract claim.
25        THE COURT:  Thank you, Mr. Watstein.

1            Mr. McInturff, obviously none of this is going to be
2   decided today, but I will give you an opportunity to respond
3   briefly.
4            MR. McINTURFF:  Thank you, your Honor.
5            Let's just start from first principles here.  I'm
6   going to read from Second Circuit in *Langon v. Johnson &
7   Johnson*.  This is cited on page 3 of 4 of our premotion letter.
8   That's ECF document 17.
9            "Whether a plaintiff can bring a class action under
10  the laws of multiple states is a question of predominance under
11  Rule 23(b)(3), not a question of standing under Article III."
12           Now, while defense counsel has stated that his attacks
13  on the ability of New York consumers to sue on behalf of other
14  consumers served by the same company in other states, he's
15  asserted that that is not an Article III attack, we
16  respectfully disagree.  Defense counsel has attempted to argue
17  around the Second Circuit by re-packaging arguments that are
18  fundamentally Article III arguments as, for example, statutory
19  standing.
20           Well, the basis of the statutory standing argument
21  that my adversary advances is this notion that it's these
22  various state specific LLCs that are conducting all of the
23  challenged conduct in that case.  But the complaint makes very,
24  very clear that these state specific LLCs are all operated as a
25  single entity, Eligo Energy.  The documents that are attached

1  to the complaint that were sent to our clients say Eligo
2  Energy.  There are references to Eligo.energy New York LLC, but
3  there's also references to Eligo Energy.  The complaint makes
4  clear that the misrepresentations and omissions that give rise
5  to the consumer protection claims in this case came from a
6  unified course of conduct overseen by Eligo Energy.  So that
7  under Second Circuit precedent, those out-of-state consumer
8  protection claims are in the case.
9          When the defendant talks about there being a lack of
10 personal jurisdiction for out-of-state claims, we make clear in
11 our letter -- and now I'm reading from page 2 of 4 of ECF 17
12 that:  "Most courts do address the issue have concluded that
13 the holding in Bristol Myers does not apply to federal class
14 actions."  That's the basis of the defendant's claim that there
15 is no personal jurisdiction for out-of-state claims.
16         Defendant's claim about venue, as I mentioned in the
17 opening, it is based on a factual assertion about contracts
18 that are not in the record that can't be resolved on a motion
19 to dismiss.  The defendant would have to prove that other class
20 members actually contracted with these entities.  We would then
21 have to deal with the issues that I raised about whether these
22 venue clauses are enforceable.  It is simply not something that
23 can be resolved on a motion to dismiss.
24         Again, because the defendant only seeks a partial
25 motion to dismiss, and this is really just an effort to winnow

1    the scope of the class before discovery, we think that there is
2    no basis to stay discovery.  Discovery should proceed in the
3    ordinary course, like it does in many, many multistate class
4    actions, and that these issues can be worked out.
5               There is one other point that I forgot to mention.
6    Defendant contends that commercial customers, unlike
7    residential customers, can't be members of the class.  Well, we
8    just had a case certified last year in the Eastern District of
9    New York that made it very clear that commercial customers can
10   pursue the same type of claims as residential customers against
11   these energy companies because the pricing mechanisms are the
12   same.
13              So the question at the heart of this case is what are
14   the contractual promises that the defendant made to its
15   customers across the country, and then what are the
16   representations and material omissions that are challenged in
17   this case, and whether those representations and omissions were
18   made beyond New York.  And those are fundamentally factual
19   questions that cannot be resolved at the motion to dismiss.
20              So we think that the correct course of action here is
21   for the Court to schedule the initial case management
22   conference and allow us to proceed to discovery so that we can
23   get facts to resolve these issues and not have them take up
24   party resources while defendant files a bunch of papers and
25   then we have to discuss whether or not the motion should be

1  converted into a motion for summary judgment.  We are just
2  simply not there, your Honor.
3              THE COURT:  Well, I don't know that you need to
4  convert it to a motion for summary judgment if he's alleging
5  lack of jurisdiction, et cetera, but that is neither here nor
6  there.
7              I am going to allow defendant to make the motion.  It
8  will be done on the following schedule:
9              The motion will be due May 30.  The response will be
10 due on June 20.  And the reply will be due on June 27.
11             But I am not going to stay discovery.  And the parties
12 should put together a discovery schedule on the form that you
13 will find on my website and submit it on consent by no later
14 than end of day Monday.  Yes, who is speaking?
15             MR. WATSTEIN:  This is Ryan Watstein.
16             THE COURT:  Yes, sir.
17             MR. WATSTEIN:  If I may just ask as to the discovery
18 issue.  I understand your Honor's ruling, and I'm always -- I
19 will not try to change your mind.  I guess what I will seek is
20 a bit of clarification.  Since our motion attacks the
21 out-of-state claims, and we don't take issue with discovery
22 occurring as to the New York claims that are -- we're not
23 challenging that are in the case and that will be the subject
24 of discovery, may I ask if discovery -- well, before our motion
25 to dismiss is decided, may discovery be limited to the New York

1    claims?

2            THE COURT:  Yes.  Yes.  Discovery will be limited to
3    the New York claims.

4            MR. WATSTEIN:  Thank you, your Honor.

5            THE COURT:  Okay.

6            MR. McINTURFF:  Your Honor, this is Burkett McInturff.
7    If I could just briefly respond to clarify that that would be
8    related to the defendants in this action, their conduct in New
9    York as pled in the complaint, so that we are -- it's not
10   otherwise limited.  The only limitation being geographic but
11   not in any other substantive way.

12           THE COURT:  Correct.

13           And with that, gentlemen, we are adjourned.  Be well.

14           (Adjourned)

15

16

17

18

19

20

21

22

23

24

25