# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TINA BODKIN,** *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>**ELIGO ENERGY, LLC,** *et al.*<br><br>Defendants. | Civil Case No.: 2:25-cv-00094-CB<br><br>Judge Cathy Bissoon |

### **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Tina Bodkin and Thomas Bodkin, through their undersigned attorneys, request that Defendants Eligo Energy, LLC and Eligo Energy PA, LLC (collectively as "Eligo" or "Defendants") produce the following documents and things within thirty (30) days for inspection and copying at Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, 1 North Broadway, Suite 900, White Plains, New York 10601.

### **DEFINITIONS & INSTRUCTIONS**

The following definitions and instructions apply to these requests for production:

1. All Excel spreadsheets and PowerPoint presentations must be produced in unaltered native format.

2. Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

3. Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule

34(a) of the Federal Rules of Civil Procedure, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

4. Parties. The term "Plaintiffs" refers to both Plaintiffs Tina Bodkin and Thomas Bodkin. The terms "Eligo," "Defendants," "you," and "your" mean both Eligo Energy, LLC and Eligo Energy PA, LLC, their officers, directors, employees, partners, contractors, corporate parent, subsidiaries, affiliates, or predecessors. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

5. Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business, governmental entity, or association.

6. Concerning. The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

7. And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8. Number. The use of the singular form of any word includes the plural and vice versa.

9. All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

10. Local Utility. The term "local utility" is defined as the regulated companies that engage in the generation, transmission, or distribution of energy, such as PECO Energy Company ("PECO").

11. ESCO. The term "ESCO" is defined as a retail energy supplier, such as Defendants, that is eligible to sell energy services to end-use customers using the transmission or distribution system of a local utility.

12. Disclosure Statement. The term "Disclosure Statement" means Eligo's Fixed and Variable Rate Disclosure Statement or any other label or disclosure statement pertaining to an agreement for service between Eligo and an Eligo customer.

13. Costs Plus Adder Term. The term "Costs Plus Adder Term" means a term in an Eligo terms of service, Disclosure Statement, or other form document representing that variable rates will be based on wholesale market conditions plus a per kWh or therm or CCF adder. For example, Eligo's Disclosure Statement for Plaintiffs contains the Cost Plus Adder Term that "[y]our variable rate will be based upon PJM wholesale market conditions and an adder of $0.01 per kWh will be applied."

14. Unless otherwise specified, these requests seek documents and other things concerning, created, or modified during the period January 21, 2015, to the present (the "Relevant Period").

15. These requests shall be interpreted as requesting discovery that pertains to customers that are encompassed by the preliminary Class defined in the operative complaint. That class definition presently states that the proposed Class encompasses "all residential and commercial customers in the United States who were charged a variable rate for electricity or natural gas services by Eligo from the earliest allowable date through the date of judgment (the 'Class') and who had a contract with Eligo that specified that the variable rate would be based on prices in a specific wholesale market like PJM." ECF No. 1, Class Action Compl. ¶ 125. The requested discovery may be specific to the encompassed customers or may be directed at practices

3

or conduct that affected encompassed customers, including practices or conduct that affected customers in states where Eligo's contract did not specify that customers' variable rate would be based on prices in a specific wholesale market like PJM.

16. These requests are continuing in nature. If at any time prior to trial of this action you obtain or identify additional documents or other things responsive to any of these requests, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you shall seasonably serve upon the undersigned such documents or other things as required by that Rule.

17. Unless otherwise specified in a particular document request, you shall produce all documents requested that are available to you, including, without limitation, all documents in your possession of any of your agents, attorneys, or other representatives or otherwise subject to your custody or control.

18. If any document or communication called for by these requests is withheld on the basis of a claim of attorney-client privilege, work product immunity, or any other grounds, for each such document or communication, identify:

    a. the nature of the privilege which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked;

    b. for documents: (a) the type of document, i.e., letter or memorandum; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a subpoena duces tecum, including the author of the document, the addressees of the document, and any other recipients shown in the document, and the relationship of the author, addressees, and recipients to each other;

c. for oral communications: (a) the names of the person making the communication and the person(s) present while the communication was made and the relationship of the person making the communication to the person(s) present; (b) the date and place of communication; and (c) its general subject matter.

19. If any document called for by these requests is no longer in your possession, custody, or control, that document is to be identified by stating the following:

    d. the contents of the document;

    e. each person to whom the document was sent and each person who in fact received a copy of the document;

    f. the date of the document;

    g. the subject matter of the document; and

    h. the present custodian of the document, or the person otherwise responsible for the document's safekeeping, storage, or filing.

20. Any file folder or other container in which a document is kept in the regular course of business is to be treated as part of the document and produced as such.

21. If information stored in, or accessible through, computers or other data retrieval systems is produced, it must be accompanied with instructions and all other materials necessary to use or interpret such data, including any data dictionaries or other descriptive materials.

## REQUESTS FOR PRODUCTION

1. All documents concerning Plaintiffs, including, but not limited to, every document or any data containing either of their names, addresses, account numbers, or other identifying information.

2. All documents concerning Defendants' acquisition, retention, and termination of Plaintiffs as customers, including, but not limited to, solicitations, third-party verification call recordings and transcripts, welcome letters, contract summaries, terms and conditions, renewal notices, customer service call recordings, Disclosure Statements, and cancellation notices.

3. An example of each and every version of Eligo's form terms of service, welcome letter, Disclosure Statement, contract summary, renewal letter, or other form document, including all drafts of such documents, sent to customers who at any time received a terms of service or Disclosure Statement or other form document containing a Costs Plus Adder Term from Eligo. This request is not bounded by time. This request should not be construed to require production of individual communications with absent Class Members, but should be construed to encompass all form documents, including drafts.

4. An example of each and every policy or procedure Defendants had regarding Disclosure Statements and all documents regarding Defendants' compliance with such Disclosure Statements, including compliance with the representations made on such statements.

5. An example of each and every policy or procedure Defendants had regarding any Cost Plus Adder Term and all documents regarding Defendants' compliance with such Cost Plus Adder Terms.

6. All documents concerning verifications for customers that were or would be given terms of service, a Disclosure Statement, or other form document with a Costs Plus Adder Term, either conducted by Defendants or by a third-party, of electricity and natural gas customer enrollments, including, but not limited to, contracts or agreements with third party verifiers, and all versions of training materials, outlines, and scripts.

7. For each current and former customer who was charged a variable rate after Eligo provided that customer with a terms of service, a Disclosure Statement, or other form document with a Costs Plus Adder Term, produce data sufficient to identify the following:

    a. Customer name;

    b. Account number;

    c. If the customer was acquired by Defendants from another ESCO, the identification of that ESCO;

    d. The period(s) during which that customer was on a variable rate;

    e. Service address, including, but not limited to, city and ZIP code;

    f. Billing address(es), if different from service address;

    g. Whether the customer is identified as a commercial or residential customer;

    h. For each billing period, the type of rate the customer was charged (i.e., whether fixed or variable rate);

    i. The customer's segmentation category for each billing period;

    j. The applicable local utility rate for each billing period;

    k. Meter reading dates for each billing period;

    l. The rate per kilowatt hour Defendants charged for each billing period;

    m. The total kilowatt hours used during each billing period;

    n. The rate per therm or CCF Defendants charged for each billing period;

    o. The total therms or CCFs used during each billing period;

    p. The amount and identification of any monthly fees assessed by Defendants for each billing period, including, but not limited to, monthly service fees,

|     | monthly administrative fees, monthly maintenance fees, and monthly adjustment fees; |
| --- | --- |
| q.  | Each date the customer enrolled to receive electricity and natural gas supply from Defendants; |
| r.  | The date(s) the customer received any communications from Defendants or any of its agents, and the form and content of such communications; |
| s.  | Whether the customer signed up or enrolled through a website, by telephone, by door-to-door solicitation, or by some other means (and if by some other means, data sufficient to identify that means); |
| t.  | Whether the customer was initially contacted or solicited by a mailing, on a website, by door-to-door contact, telemarketing, or by some other means (and if by some other means, data sufficient to identify that means); |
| u.  | The first billing period; |
| v.  | The date customer canceled or terminated Defendants' electricity or natural gas service or supply (if any); |
| w.  | The last billing period; |
| x.  | Whether the customer redeemed a gift card or other promotional offer, and if so, the type and amount of the promotion; |
| y.  | The total costs Eligo actually incurred to supply the customer with gas or electricity for each billing period, broken down by type of cost (i.e., commodity, ancillary, transportation, NYISO charges or fees, line losses, etc.); |

  z.  The costs Eligo incurred to purchase Renewable Energy Credits ("RECs") or other offsets in connection with its sale of electricity or natural gas to customers;

  aa.  The percentage of customer's electricity or gas usage, or the number of therms, CCFs, or kilowatt hours for which Eligo purchased corresponding RECs, ZECs, or other offsets; and

  bb.  The category and quantity of each factor Eligo used to calculate the variable rate for gas or electricity, including the inputs for "PJM wholesale market conditions," "wholesale market conditions" for other Independent System Operators, "market conditions" in the relevant market, "predicted weather patterns," "retail competition," "wholesale commodity energy costs," "fluctuations in energy supply and demand," "industry regulations," "pricing strategies," "costs to serve customers," and any other "factors" Eligo's rates were "based on" or "based upon."

Plaintiffs will accept production of this data without personal identifying information, so long as each customer's data is produced with a unique identifier permitting all data concerning an individual account to be associated with that individual's account.

  8.  All calculations used to determine or calculate each of Defendants' variable rates for electricity or natural gas sold to customers who were charged a variable rate after Eligo provided that customer with a terms of service, a Disclosure Statement, or other form document with a Costs Plus Adder Term, including all spreadsheets and data inputs for such calculations or determinations.

9

9. All documents concerning how Defendants set the variable rates for customers that were charged a variable rate after Eligo provided a terms of service, a Disclosure Statement, or other form document with a Costs Plus Adder Term. This request is not bounded by time.

10. All documents, including, but not limited to, all spreadsheets, concerning Defendants' costs to acquire electricity or natural gas for customers on a variable rate, fixed rate, introductory rate, promotional rate, or any other type of rate.

11. All documents, including, but not limited to, spreadsheets, concerning Defendants' anticipated or actual margins for customers on a variable rate, fixed rate, introductory rate, promotional rate, or any other type of rate. This request includes Defendants' margins on a per unit of electricity or natural gas (*i.e.*, per kilowatt hour or therm) basis, or any other basis.

12. All documents, including but not limited to spreadsheets, concerning the revenues and profitability of Defendants' sales of electricity or natural gas to customers on a variable rate, fixed rate, introductory rate, promotional rate, or any other type of rate.

13. Documents sufficient to show Defendants' hedging and purchasing strategies for electricity or natural gas to be sold to Defendants' customers.

14. All documents and data received from or sent to POWRR, ESCO Advisors, and/or Amperon.

15. All contracts between you and POWRR, ESCO Advisors, and/or Amperon.

16. Documents sufficient to identify Defendants' directors, officers, or employees involved in setting electricity or natural gas supply rates of any type for customers, including but not limited to organizational charts covering the Relevant Period.

17. All documents reflecting any reports, reviews, audits, studies, or other analyses prepared by Defendants' employees, agents, or any non-party relating to or analyzing the financial

impact or effect of setting Defendants' electricity or natural gas rates for customers. This request is not bounded by time.

18. All documents reflecting any reports, reviews, audits, studies, or other analyses prepared by Defendants' employees, agents, or any non-party relating to or analyzing Defendants' Disclosure Statements or compliance with the representations made on such statements. This request is not bounded by time.

19. All documents reflecting any reports, reviews, audits, studies, or other analyses prepared by Defendants' employees, agents, or any non-party relating to or analyzing Defendants' Disclosure Statements or compliance with the representations made on such statements. This request is not bounded by time.

20. All documents reflecting any reports, reviews, audits, studies, or other analyses prepared by Defendants' employees, agents, or any non-party relating to or analyzing Defendants' Cost Plus Adder Terms or compliance with such Cost Plus Adder Terms. This request is not bounded by time.

21. Data and/or documents sufficient to show local utilities' and other ESCOs' retail rates for electricity or natural gas supply to consumers each month from 2015 to present.

22. All documents concerning or relating to customer complaints or demands for refunds or compensation concerning the variable rates Defendants charge customers for electricity or natural gas supply. This request seeks all documents constituting, containing, or reflecting complaints concerning the variable rates Defendants charge for electricity or natural gas, whether received by phone, written correspondence, email or otherwise through the Internet, or by the Better Business Bureau, any recordings of such complaints, and all notes or other memoranda or documents created concerning customer complaints. This request is not bounded by time.

23. All documents concerning the policies and procedures by which Defendants' customer service representatives or personnel or employees respond to Defendants' customers' written, electronic, telephonic, or oral questions, inquiries, complaints, demands, or other communications regarding or requesting refunds or other compensation concerning the rates Defendants charges customers for electricity or natural gas supply, including, but not limited to, any scripts, training materials, or other documents reflecting statements or information customer service representatives or personnel or employees are instructed to give, or withhold from, customers. This request is not bounded by time.

24. All documents or communications regarding Defendants' variable rates with or concerning any government, regulatory, enforcement, or similar agency or official regarding Defendants' pricing policies or practices for electricity or natural gas, including, but not limited to, communications between Defendants and any municipal, state, federal or quasi-governmental entity. This request is not bounded by time.

25. All documents or communications relating to Defendants' pricing policies or practices with or concerning any consumer advocacy organization such as the Better Business Bureau regarding Defendants' pricing policies or practices for electricity and natural gas. This request is not bounded by time.

26. An example of each form document or communication disseminated, sent, or otherwise distributed by Defendants or any of their agents to prospective, current, or former customers, or to the public, concerning Defendants' electricity or natural gas supply. Please note that this request does not seek every communication Defendants disseminated, sent, or otherwise distributed. It seeks *examples* of each different form document or communication, as well as drafts of those documents or communications.

27. Data and/or documents sufficient to identify the mailing dates when form documents or communications were distributed, and which categories of customers those documents or communications were distributed to, for all material produced in response to the immediately preceding request.

28. All documents that identify or describe Defendants' policies, procedures, or strategies concerning marketing or advertising of Defendants' electricity or natural gas products to customers.

29. All print, television, radio, internet, and other advertisements relating to Defendants' electricity or natural gas supply, whether disseminated by Defendants or on their behalf.

30. All documents constituting, containing, reflecting, or otherwise concerning any analysis or study performed by Defendants or on behalf of Defendants regarding consumer perceptions of Eligo or Defendants' marketing or advertising. This request is not bounded by time.

31. All of Defendants' policies, procedures, standards, employee handbooks, or training materials that at any time set forth, governed, or otherwise concerned the duties and responsibilities of sales representatives or customer service representatives generally and/or with specific reference to acquiring new customers, communicating with existing customers, or winning back former customers. This request is not bounded by time.

32. Examples or screenshots of all landing pages or separate pages on Defendants' websites, including screenshots or examples sufficient to show all changes to such websites.

33. All versions of scripts, talking points, or other training or procedure materials used by Defendants or any of their agents to promote Defendants' electricity or natural gas supply to customers.

34. All versions of scripts, talking points, and/or other training materials used by Defendants or any of their agents concerning incoming calls from prospective customers.

35. All documents concerning Defendants' purchases of RECs or ZECs in connection with their sale of gas or electricity to customers that were charged a variable rate after Eligo provided a terms of service, a Disclosure Statement, or other form document with a Costs Plus Adder Term.

36. Documents sufficient to identify each of the RECs or ZECs or other offsets Defendants purchased in connection with their sale of gas or electricity to customers that were charged a variable rate after Eligo provided a terms of service, a Disclosure Statement, or other form document with a Costs Plus Adder Term, including when each REC or other offset was purchased, when it was retired (or if a portion was retired, what portion), the type of renewable energy associated with the REC or offset, and the city, county, and state in which that renewable energy was generated.

37. Documents sufficient to identify Defendants' policies and procedures regarding their purchases of RECs or ZECS or offsets in connection with their sale of gas or electricity to customers that were charged a variable rate after Eligo provided a terms of service, a Disclosure Statement, or other form document with a Costs Plus Adder Term and the accounting for the purchases, uses, and retirements of RECs or other offsets.

Dated:   April 18, 2025
         White Plains, New York

                                         **FINKELSTEIN, BLANKINSHIP,**
                                         **FREI-PEARSON & GARBER, LLP**

                          By:   /s/ D. Greg Blankinship
                                D. Greg Blankinship
                                1 North Broadway, Suite 900
                                White Plains, New York 10601

Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com

J. Burkett McInturff
Jessica L. Hunter
**WITTELS MCINTURFF PALIKOVIC**
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (914) 775-8862
jbm@wittelslaw.com
jlh@wittelslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on April 18, 2025, I caused a true copy of Plaintiffs' First Set of Requests For Production to be served by email upon all counsel of record.

/s/ D. Greg Blankinship
D. Greg Blankinship
1 North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com