**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IRA BROUS and MICHELLE SCHUSTER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ELIGO ENERGY, LLC and ELIGO ENERGY NY, LLC,<br><br>        Defendants. | Case No. 1:24-cv-01260-ER |

## DEFENDANTS ELIGO ENERGY, LLC AND ELIGO ENERGY NY, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................... 1

II.  BACKGROUND ................................................................................................................. 2

III.  LEGAL STANDARD ......................................................................................................... 4

IV.  ARGUMENT ....................................................................................................................... 5

    A.  Plaintiffs Cannot Satisfy Rule 16(b)'s "Good Cause" Standard ............................ 5

    B.  Plaintiffs' Motion Also Fails Under Rule 15(a) .................................................... 6

    C.  There is a Substantive Difference Between Granting Leave and Granting the
    Motion to Strike ..................................................................................................... 9

V.  CONCLUSION .................................................................................................................. 10

## I.    INTRODUCTION

More than a year ago, Plaintiffs filed a national class action in this Court on behalf of "a class of all residential and commercial customers in the United States who were charged a variable rate for electricity or natural gas services by Eligo." Despite being New York residents who contracted with a New York entity for the supply of electricity solely within the State of New York, they asserted claims on behalf of putative class members in nine other states.

When the Defendants Eligo Energy, LLC and Eligo Energy NY, LLC (collectively, "Eligo") moved to dismiss Plaintiffs' non-New York claims for lack of class standing, Plaintiffs opposed and argued that it was entirely appropriate for them to assert a national class action here. They then doubled down, amending their complaint to bolster their allegations and claims on behalf of Eligo customers outside New York. And when Eligo moved to dismiss the amended complaint, Plaintiffs opposed that motion too, again arguing that this Court was the proper forum to resolve *all* of Plaintiffs' claims brought on behalf of individuals throughout the nation. That motion remains pending.

Now, months after the Court-ordered deadline for amendments has passed, Plaintiffs seek leave of the Court to amend their complaint a second time. They say the late amendment is to "moot" Eligo's motion to dismiss by removing the non-New York claims they vigorously defended for more than a year. Plaintiffs claim to have reversed themselves on the issue of whether non-New York claims should proceed here based on a "directive" by the Court. Pls.' Br. at 2. But that is not true. The Court never "directed" Plaintiffs to amend their complaint or to jettison their non-New York claims.

The timing and circumstances reveal their true motivation: forum shopping. Having lost the vast majority of their 15-plus motions to compel, Plaintiffs want to start over before a new

judge who they hope will be a more receptive audience to their serial abuses of the discovery process. For that very reason, earlier this year, Plaintiffs' counsel filed a nearly identical class action against Eligo in the Western District of Pennsylvania, where they immediately sought the same broad, nationwide discovery this Court denied. *See Bodkin et al. v. Eligo Energy, et al.*, No. 2:25 Civ. 94 (W.D.P.A.) (Bissoon, J.). Only after Judge Bissoon indicated that she would stay *Bodkin* in deference to this case, did Plaintiffs suddenly move to amend again here.

Accordingly, their belated motion to amend should be denied.

## II. BACKGROUND

Plaintiffs filed this putative class action against Eligo almost a year and a half ago, alleging breach of contract and violations of various consumer protection statutes. *See* ECF No. 1 ("Compl."). Despite being New York residents who contracted with a New York entity for electricity solely within the State of New York, Plaintiffs brought a national class action that asserted claims brought on behalf of putative class members in nine other states. Since then, Plaintiffs have repeatedly and strenuously argued that they not only have standing to pursue all those claims, but also that this Court, which of course is the forum of Plaintiffs' choosing, is the proper place to do that.

Specifically, Plaintiffs have twice opposed Eligo's motion to dismiss Plaintiffs' non-New York claims for lack of standing. They did so in 2024, in response to Eligo's initial motion to dismiss. ECF No. 34. Then, while that initial motion to dismiss was still pending, and on the last possible day for amendments under the then-operative scheduling order (ECF No. 24), Plaintiffs filed a First Amended Complaint. *See* ECF No. 120 ("Am. Compl."). But even with the benefit of Eligo's initial motion to dismiss and the Court's May 9, 2024 Order, limiting discovery to the New York claims (text-only entry), Plaintiffs failed to cure the initial complaint's deficiencies. Instead,

Plaintiffs added new allegations and reasserted non-New York claims. On January 6, 2025, Eligo once again moved to dismiss or strike Plaintiffs' out-of-state claims on numerous grounds, including lack of class and statutory standing, improper forum, and lack of personal jurisdiction. ECF No. 140. Eligo's Motion to Dismiss or Strike Plaintiffs' Amended Complaint was fully briefed on February 20, 2025. *See* ECF No. 169.

Throughout this period, Eligo has engaged in contentious and expensive discovery. Eligo began producing electronically stored information ("ESI") in August 2024. Eligo produced all its residential gas and electric contracts for the relevant states by September 18, 2024. And Eligo continued producing documents throughout a protracted nine-round search term negotiation that was only resolved in January 2025. Nearly a year after the Court's initial order limiting discovery, after Eligo had completed its document production, and after Eligo had fully briefed its second motion to dismiss, Plaintiff sought to expand discovery to Washington D.C., Illinois, Massachusetts, and Maryland, among others.[1] The Court denied Plaintiffs' request once more. *See* ECF No. 199 (unreleased), Apr. 16, 2025, Hr'g Tr. at 8:9. On May 7, 2025, Plaintiffs sought leave to file a Second Amended Complaint (ECF No. 206) and filed their Motion for Leave to Amend on June 27, 2025 (ECF No. 248).

In the intervening period, Plaintiffs' counsel has filed two overlapping class actions against Eligo in Pennsylvania, *Bodkin et al. v. Eligo Energy, et al.*, No. 2:25 Civ. 94 (W.D.P.A.) (Bissoon, J.), and in Ohio, *Orzolek v. Eligo Energy, LLC et al.*, No. 25 Civ. 00078 (E.D. Ohio) (Morrison, J.) (collectively, the "Overlapping Actions"). Eligo has moved to stay both actions. *Bodkin*, ECF

---

[1] In a stunning display of their gamesmanship, during the April 16, 2025, hearing on Plaintiffs' letter motion to expand discovery, Plaintiffs' counsel acknowledged that the fate of their Ohio class action (*Orzolek v. Eligo Energy, LLC et al.*, No. 25 Civ. 00078 (E.D. Ohio)) also depended on this Court's decisions on Eligo's Motion to Dismiss/Strike and class certification. Apr. 16, 2025, Tr. 5:12–16.

No. 43; *Orzolek*, ECF Nos. 11, 21. During a May 2, 2025 conference, Judge Bissoon indicated that she was prepared to stay the *Bodkin* action. To avoid this outcome, Plaintiffs promised to amend the operative complaints in *Brous* and *Bodkin* to remove the overlap between the putative classes. Plaintiffs' delayed amendment is attributable to neither newly discovered facts nor diligence. Nor is it attributable to this Court's reiteration of the scope of discovery. Rather, it is a strategic attempt to preempt an adverse ruling and relitigate discovery disputes in other forums.

## III.   LEGAL STANDARD

Leave to amend is governed by Federal Rule of Civil Procedure 15, which permits amendments whenever "justice so requires." Though permissive, Rule 15 is not without limits, and courts have discretion to deny amendment where there is "undue delay, bad faith[,] . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, [or] futility. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

When a plaintiff seeks leave to amend after a court-ordered deadline for amendments has passed, Rule 16(b) places an additional burden on the movant. That burden is to show "good cause" for the late amendment. *See O'Rear v. Diaz*, 2025 WL 835018, at *4 (S.D.N.Y. Mar. 14, 2025).[2] Good cause requires a showing that, despite exercising diligence, "the applicable deadline could not have been reasonably met by the plaintiff." *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (cleaned up). "[I]f the proposed amendment relies on information that the party knew or should have known prior to the deadline, leave to amend is properly denied." *Id.* The burden is on the party who wishes to amend to provide a satisfactory

---

[2] The original Scheduling Order in this case was filed May 17, 2024 and mandated that any amended pleadings be filed by November 13, 2024. ECF No. 24. No amended deadlines have altered this mandate.

explanation for the delay." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citation omitted).

Plaintiffs cannot satisfy either the Rule 16(b) or Rule 15(a) standard here. *O'Rear*, 2025 WL 835018, at *4 (denying motion to amend complaint filed after the court's scheduling order deadline under both rules); *see also In re Int. Rate Swaps Antitrust Litig.*, 2018 WL 2332069, at *27 (S.D.N.Y. May 23, 2018) (same). Their motion should therefore be denied.

## IV.    ARGUMENT

### A.    Plaintiffs Cannot Satisfy Rule 16(b)'s "Good Cause" Standard

Plaintiffs' motion for leave was filed well after the applicable deadline in the Scheduling Order, which was November 13, 2024. *See* ECF No. 24. Therefore, they must show "good cause" for their late motion. *O'Rear*, 2025 WL 835018, at *4. "Whether good cause exists turns on the 'diligence of the moving party.'" *Id.* Where a proffered amendment relies on information that Plaintiffs "knew or should have known" before the deadline to amend, good cause does not exist, and the amendment should be disallowed. *Soroof*, 283 F.R.D. at 147; *see also Acosta v. Kennedy Children's Ctr.*, 2025 WL 70141, at *11 (S.D.N.Y. Jan. 10, 2025) (collecting cases).

Here, Plaintiffs' claim of diligence is unconvincing. While Plaintiffs assert (at 9) that they "have clearly established the requisite diligence" because they sought leave to amend three weeks after the Court's April 16, 2025 ruling declining to expand discovery beyond New York, the record shows that they had all the necessary information nine months earlier. Plaintiffs had full notice of Eligo's objections to their complaint and class scope issues in June 2024, when Eligo filed its first motion to dismiss and strike Plaintiffs' non-New York claims. *See* ECF No. 28. By August 9, 2024, Eligo had already provided Plaintiffs with the relevant customer contracts with its reply in support of the first motion to dismiss. Specifically, Eligo attached a complete set of residential

customer contracts from the relevant state-specific entities, including Washington, D.C., Illinois, Massachusetts, Maryland, Michigan, New Jersey, New York, Ohio, and Pennsylvania. *See* ECF Nos. 44-1–9. These materials laid bare the distinctions between the New York and non-New York contracts—information that could have, and should have, informed any narrowing of Plaintiffs' claims. Yet Plaintiffs chose not to amend at that time.

Instead, Plaintiffs doubled down and again included non-New York claims in their first amended complaint ("FAC"). *See* ECF No. 120. Eligo then undertook the time and expense of briefing a second motion to dismiss Plaintiffs' non-New York claims, which Plaintiffs opposed while lodging overlapping actions against Eligo in Pennsylvania and Ohio the very same month. *Compare Bodkin*, ECF No. 1 (filed January 21, 2025) *with* Pls. Opp. to Mot. to Dismiss, ECF No. 152 (filed January 27, 2025) *and Orzolek*, ECF No. 1 (filed January 30, 2025). Plaintiffs cannot credibly contend that they lacked the factual basis to amend until April 2025, when that very basis was in their possession by late summer 2024. Their new claim (at 10) that discovery only began in February 2025 is not just misleading—it is demonstrably false. As such, Plaintiffs cannot satisfy Rule 16(b)'s "good cause" standard.

## B.    Plaintiffs' Motion Also Fails Under Rule 15(a)

Plaintiffs' bid to amend also fails under the more lenient standard outlined in Rule 15(a)(2). While Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires," courts are to "deny such a motion if there is 'evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.'" *O'Rear*, 2025 WL 835018, at *4 (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)). Each of those grounds exists here.

For the reasons outlined in Section A. *supra*, permitting amendment at this late stage would upend the discovery schedule that the parties carefully negotiated and this Court approved.

Plaintiffs waited more than six months after the Court's amendment deadline before seeking leave—an inexcusable delay that underscores their lack of diligence and weighs heavily against amendment.

Plaintiffs contend that "mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Pls. Br. at 11–12 (quoting *Pearlstein v. Blackberry Ltd.*, 2017 WL 4082306, at *2 (S.D.N.Y. Sept. 13, 2017)). But this is no case of mere delay. Plaintiffs' conduct is riddled with bad faith: after failing to expand discovery in this Court, they now seek to abandon their multi-state claims to relitigate them before different judges in the Overlapping Actions. Their belated motion is a transparent attempt to circumvent this Court's rulings and restart the litigation elsewhere.

This District Court's recent decision in *O'Rear v. Diaz* is particularly instructive here. There, the court denied the plaintiff's eleventh-hour motion to amend her complaint to drop the sole federal claim—an attempt she framed as a jurisdictional maneuver to force dismissal and relitigate in state court. 2025 WL 835018, at *1. With fact discovery nearly complete and after nearly a year of intensive federal litigation, the court held that the plaintiff acted with undue delay and bad faith under Rule 15. *Id.* at 2– 4. The plaintiff admitted that she sought to amend in response to prior adverse rulings—including the dismissal of state law claims and denial of discovery—and with the express purpose of forcing remand to state court. *Id.* The court rejected this justification and emphasized that granting leave would "reward brazen forum-shopping," "blow up the carefully designed case management plan," and impose unnecessary "disruption and delay." *Id.*

Similarly, only after Judge Bissoon indicated during the *Bodkin* Rule 16 conference on May 2 that she was prepared to stay the *Bodkin* action did Plaintiffs move to amend the FAC to drop their non-New York claims. They made no mention of amendment just weeks earlier, during

the April 16 hearing on their motion to expand discovery. *See generally* ECF No. 199 (unreleased) Apr. 16, 2025 Hr'g Tr. Plaintiffs' proposed amendment is not driven by compliance with this Court's directives, but rather by a transparent effort to avoid adverse rulings in the Overlapping Actions. Their SAC seeks to moot Eligo's motion to dismiss while preserving the same legal theories. This is further evidenced by Plaintiffs' reservation of the right to re-expand the class later. *See* ECF No. 206-1 ¶ 130. As *O'Rear* makes clear, granting leave to amend under such circumstances would "reward brazen forum shopping." 2025 WL 835018, at *4. Plaintiffs' motion is therefore "readily denied on the grounds, inter alia, of undue delay and bad faith." *Id.*

Plaintiffs' proposed amendment also prejudices Eligo, which has already expended over $1 million in legal fees defending this case, including briefing two motions to dismiss the non-New York claims and opposing over a dozen discovery motions. "[T]he prejudice to the opposing party resulting from a proposed amendment [i]s among the 'most important' reasons to deny leave to amend." *Oscar v. BMW of N. Am., LLC*, 2011 WL 6399505, at *4 (S.D.N.Y. Dec. 20, 2011) (quoting *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010)). "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Id.* If Plaintiffs' maneuver is allowed, Eligo would not only be forced to re-litigate many of the same issues in different forums, causing unnecessary duplication of efforts and delays, but also incur the added burden of fighting collateral estoppel disputes in parallel with the *Brous* litigation.[3]

---

[3] Plaintiffs cite *SAP Aktiengesellschaft v. i2 Techs., Inc.*, 250 F.R.D. 472, 474 (N.D. Cal. 2008) for the proposition that Eligo's discovery burden in the Overlapping Actions is irrelevant to the Court's prejudice analysis. But that misstates the court's holding. The court found that "***[p]rior discovery***, not conducted in response to the present case," was not relevant. *Id.* at 474 (emphasis added). That Eligo will be forced to expend hundreds of thousands of dollars relitigating discovery

Moreover, the proposed amendment would be futile because it neither adds new allegations nor causes of action; it merely removes multi-state consumer protection claims, the dismissal of which Plaintiffs are not opposing in this Court anyway. *See* ECF No. 233 (withdrawing opposition to Eligo's motion to dismiss or strike the non-New York claims from the FAC). As the proposed amendment is unnecessary, Plaintiffs' urgency to nevertheless move for one is highly suspect. That Plaintiffs "reserve the right, as might be necessary or appropriate, to modify or amend the definition of the Class and/or add Subclasses, when Plaintiffs file their motion for class certification" further underscores this. *See* ECF No. 206-1 ¶ 130. The Second Circuit has stated that where futility is raised as an objection to a motion to amend, and granting it is unlikely to be productive, district courts do not abuse their discretion by denying leave to amend. *See, e.g.*, *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) (stating that leave to amend should be denied where there is no merit to the proposed amendments) (citations omitted).

## C.    There is a Substantive Difference Between Granting Leave and Granting the Motion to Strike

The Court should deny Plaintiffs' Motion for Leave to Amend for the independent reason that doing so would deprive the Court—and the parties—of a substantive ruling on Eligo's pending motion to strike. "[T]he district court has broad discretion in deciding how and whether to certify a class, arising from its 'inherent power to manage and control pending litigation,'" particularly where, as here, overlapping class claims in other jurisdictions present the risk of conflicting

---

disputes this Court already considered is of course relevant. *Cf. O'Rear*, 2025 WL 835018, at *4 (quoting *AEP Energy*, 626 F.3d at 725–26 (emphasis added) ("Amendment may be prejudicial when, among other things, it would 'require the opponent to expend significant ***additional*** resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'")).

outcomes and forum manipulation. *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 37 (S.D.N.Y. 2020) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)).

Plaintiffs seek to avoid a ruling that would have a binding effect by offering a procedural amendment with no substantive concession. Unlike a grant of leave, a ruling in Eligo's favor would narrow the class to New York residents, eliminate claims that cannot proceed in this forum, and bring clarity to the scope of discovery, trial preparation, and appellate review. Such a determination would also support Eligo's arguments in related actions by clarifying which claims have been adjudicated and foreclosed in this proceeding.

By contrast, Plaintiffs' proposed SAC offers no comparable finality. Though styled as a narrowing of the class, the SAC includes language expressly reserving Plaintiffs' right to later re-expand the class. *See* ECF No. 206-1 ¶ 130. That reservation undermines the utility of the proposed amendment by signaling that Plaintiffs have no intention of abiding by the narrowed scope in the long term. Further, because the SAC would avoid resolution of Rule 12 or Rule 23 issues, it would leave open the exact questions that Eligo's motions seek to resolve. Far from reducing discovery or streamlining litigation, the proposed amendment merely relabels the procedural posture of the case while preserving Plaintiffs' ability to reverse course. It also offers Plaintiffs a tactical advantage in parallel litigation while conceding nothing in this forum.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied. Plaintiffs had the information necessary to amend long before the Court's scheduling deadline but chose instead to press ahead with nationwide claims, forcing Eligo to incur significant expense and fully brief two motions to dismiss. Their sudden reversal—filed months after the deadline and only after Judge Bissoon indicated she would stay the overlapping *Bodkin* action—reflects tactical forum shopping,

not diligence. Granting leave would reward that strategy, disrupt the orderly management of this litigation, and prejudice Eligo by undermining the substantial resources already expended. The Court should deny the motion and issue a substantive ruling on the pending motion to dismiss to finally narrow the scope of this case.

Dated: July 18, 2025                    Respectfully submitted,

                                        _/s/ Ryan D. Watstein_____
                                        Ryan D. Watstein (FL 93945)
                                        David E. Meadows (GA 500352)
                                        Abigail L. Howd (GA 693428)
                                        Leo P. O'Toole (NY 5571369)
                                        **WATSTEIN TEREPKA LLP**
                                        75 14th Street NE, Ste. 2600
                                        Atlanta, Georgia 30309
                                        Tel: (404) 782-0695
                                        ryan@wtlaw.com
                                        dmeadows@wtlaw.com
                                        ahowd@wtlaw.com
                                        lotoole@wtlaw.com

                                        *Counsel for Defendants Eligo Energy, LLC*
                                        *and Eligo Energy NY, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of July, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan D. Watstein*
Ryan D. Watstein
