

Ryan Watstein<br>
Ryan@wtlaw.com<br>
404-782-0695

July 24, 2025

**VIA ECF**
Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

Re:  *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Response to Plaintiffs' Letter Motion for Pre-2018 Customer-Level Invoice Data (Doc. 257)

Dear Judge Ramos:

The Court should deny Plaintiffs' request to produce pre-2018 customer-level invoice data for three simple reasons. First, the requested data is irrelevant—even under Plaintiffs' limitations theory, they cannot recover damages for pre-2018 conduct, so this data has no bearing on the case. Second, the Court's November 7 order does not require Eligo to produce pre-2018 data. It only concerns the temporal scope of email collection. Finally, the production of pre-2018 customer invoice data would be burdensome in a case that Plaintiffs have made extraordinarily expensive with excessive discovery motion practice. It is not a matter of simply pushing a button, as Plaintiffs baselessly claim.

*Background: Eligo Has Already Produced Multiple Sets of Customer-Level Data to Plaintiffs.*

Despite being under no obligation to process and produce customer-level invoice data, Eligo has engaged with Plaintiffs over the past six months and produced multiple iterations of this data. Eligo has even gone back and added in certain columns, such as the contract date, that Plaintiffs only belatedly requested. These datasets contain almost a million rows, more than Plaintiffs could possibly need to prove their case. Generating and producing each dataset requires significant technical effort, including validating the entries, applying individual specific anonymizers, and quality-checking nearly one million rows of structured data. Eligo produced the most recent permutation of the customer-level data just last week. Consistent with Plaintiffs' approach to the rest of discovery, the most recent version of the invoice data has been met only with more motion practice.

*The Court Should Deny Plaintiffs' Request for Facially Irrelevant Data.*

The Court should deny Plaintiffs' request for pre-2018 customer-level data because it seeks data irrelevant to Plaintiffs' claims. Plaintiffs claim they have a right to pre-2018 data because they have a "live claim encompassing all charges incurred throughout their time as a customer with Eligo." That is simply not the law in New York. Even if their claim is not time-barred because of the continuing violations doctrine, "damages are recoverable only to the extent that they were sustained during the [limitations period.]" *Sova*

| Atlanta | Los Angeles | Miami |
|---|---|---|
| 75 14th Street NE, Ste. 2600 | 515 S. Flower Street, 19th Floor | 218 NW 24th Street, 3rd Floor |
| Atlanta, GA 30309 | Los Angeles, CA 90071 | Miami, FL 33127 |

 www.wtlaw.com    Ryan@wtlaw.com    404-782-0695

*v. Glasier*, 192 A.D.2d 1069, 1070 (4th Dep't 1993); *see also Jensen v. Gen. Elec.*, 82 N.Y.2d 77, 87 (1993) (noting that under the common law the "portion of damages for injuries sustained [prior to the statute of limitations period] also became continuously barred each day"). In other words, the continuing violations doctrine operates to save the claim itself from being time-barred, but it does not permit a plaintiff to recover damages outside the limitations period. A customer who enrolled in 2015 cannot recover charges incurred between 2015 and 2018 as damages in this litigation. Even assuming *arguendo* that the continuing violations doctrine applies,[1] this data is irrelevant because it will have no bearing on any recovery that Plaintiffs or the class could achieve.

Neither of Plaintiffs' cited cases is on point. *Stanley* says nothing about the relevance of pre-limitations customer-level data. It simply decided whether the statute of limitations barred the claims entirely. Likewise, in *Manhattan Beer Distributors*, the court noted that the defendant, unlike here, never meaningfully contested the relevance of this data.

Finally, the data sought here is not only irrelevant but also categorically different from the pre-2018 emails that the Court required Defendants to produce. Plaintiffs justified their request for pre-2018 emails by arguing that these emails were needed "to provide context" and were "relevant" because "internal communication[s] from when Eligo first began selling electricity in New York will reveal Defendants' plans for setting rates and the extent to which they intended to comply with the pricing provisions in customer agreements or instead engage in price gouging." ECF No. 74 at 3. In contrast, this data cannot possibly show "context" or the internal thought process of the company. It is simply inert, irrelevant data.

***Eligo's Position is Consistent with the Court's November 7 Ruling, which Plaintiffs Mischaracterize.***

Plaintiffs accuse Eligo of defying the Court's November 7 order, but Eligo's position is entirely consistent with that order. Instead of citing or even attaching the hearing transcript, Plaintiffs mischaracterize the Court's November 7 ruling to suggest that the Court established October 2016 as the beginning of all relevant discovery. But the transcript (attached as Ex. A) makes clear that the Court and the parties were focused on the narrow issue of email collection for the ESI process. From pages 4 to 10, the parties said the word "e-mail" 23 times, and the Court's order on this point makes clear that it was focused on email:

> THE COURT: So what's your counterproposal, Mr. Meadows[?]
>
> MR. MEADOWS: On this discreet issue, your Honor, it would be that the e-mail collection be limited to the class period, which is almost seven years in length, and that also, the overall number of e-mails that Eligo is obligated to search and produce be strictly limited in number, given the massive number that we have already collected.
>
> THE COURT: I am going to restrict the time period from October of 2016 to the date of the filing of this complaint, which is February 20. I am not going to impose any limit on the

---

[1] For the avoidance of doubt, Eligo hereby preserves its right to challenge the timeliness of Plaintiffs' claims at a later stage. *See, e.g.*, *New York Seven-Up Bottling v. Dow Chem.*, 96 A.D.2d 1051, 1052 (2nd Dep't 1983) (finding misleading marketing claims concerning defective roof time-barred because "subsequent cracks in the roof membrane did not give rise to new causes of action" and "the accrual date d[id] not change as a result of continuing consequential damages").

number, unless, Mr. Meadows, you come back and say, you know, there's, you know, 50 million e-mails and it's going to be too expensive for us to produce them.

That context matters, and Plaintiffs' accusation that Eligo is defying a Court order by not producing pre-2018 customer-level invoice data is false.

***The Court Should Deny Plaintiffs' Request Because It Is Unduly Burdensome.***

The Court should also reject Plaintiffs' ungrounded speculation that production of the pre-2018 data is not burdensome. As a starting matter, Plaintiffs' representations about the burden involved with this data pull is conjecture. Plaintiffs have had plenty of opportunity to inquire on this point—the parties have worked on this issue for more than six months, exchanged dozens of emails, and met and conferred multiple times—but Plaintiffs never did so.

In reality, pulling ten of thousands of rows of data is not a simple matter of pressing a button as Plaintiffs suggest. The pre-2018 customer-level invoice data is more than seven years old, and therefore the data quality of that set is poor. That data is also largely stored in a different billing system. To produce such data, Eligo's data team would have to conduct even more rigorous quality assurance of the data set. This burden is especially untenable in light of the irrelevance of this data.

The only case that Plaintiffs cite for this proposition, *Manhattan Beer Distributors*, did not rule that the burden of collecting pre-limitations was minimal, as Plaintiffs' quote suggests. In reality, the court said that the parties had not briefed the issue of burden and asked the parties to meet and confer and report back regarding the same.

* * * * *

Despite receiving multiple iterations of the customer-level data, Plaintiffs still request pre-2018 data, which is irrelevant as a matter of law and burdensome to produce. This request is as baseless as Plaintiffs' accusation that Eligo is defying the Court's November 7 order, and the Court should deny Plaintiffs' most recent request in its entirety.

Respectfully,

*/s/ Ryan Watstein*
Ryan Watstein