**FBFG** | Finkelstein, Blankinship, Frei-Pearson & Garber, LLP

One North Broadway, Suite 900
WHITE PLAINS, NY 10601
Phone: (914) 298-3281
Fax: (845) 562-3492
www.fbfglaw.com

<u>Via ECF</u>                                                                    September 5, 2025

Honorable Edgardo Ramos
United States District Court
40 Foley Square, Courtroom 619
New York, NY 10007

Re:   <u>Brous et al. v. Eligo Energy, LLC, et al.</u>, No. 1:24-cv-1260 (ER)

Dear Judge Ramos,

We represent the Plaintiffs and the proposed Class. Pursuant to Rule 2.A of the Court's Individual Rules, we write to request a pre-motion conference on Defendants Eligo Energy, LLC and Eligo Energy NY, LLC's (collectively "Eligo") improper withholding of targeted discovery related to Eligo's hedging costs. Eligo does not dispute the relevance of these materials, nor does it claim that they would be unduly burdensome to produce. *See* email from defense counsel David Meadows, attached hereto as Exhibit 1 at 1. Nonetheless, Eligo refuses to produce them. *See id.* The Court should either order Eligo to produce the discovery described below or order that Eligo may not rely on the absence of evidence related to hedging costs as a defense (either to class certification or on the merits) in this litigation. The Parties have conferred extensively about these issues and have unfortunately reached impasse.

**A.  Reports Or Data Regarding Hedging Costs Are Relevant And Can Be Easily Produced.**

One of the central issues in this case is whether Eligo sets its variable electricity in accordance with the rate-setting formula written in its contracts with Plaintiffs and the proposed Class. That rate-setting formula identifies how "[v]ariable price is determined" and states that "all" variable rates "shall be calculated on a monthly basis in response to market pricing, transportation costs, and other market price factors." *See* ECF Nos. 120-1 at 4, 120-2 at 3 (rates-setting formula in Plaintiffs' Eligo contracts). The criteria Eligo claims are used to set variable rates are therefore undeniably relevant. In particular, Eligo claims that its "hedging" costs constitute permissible "market price factors," under the contract's rate-setting formula. *See* Eligo's 2d Suppl. Resp. to Plaintiffs' 1st Interrogs., No. 8. Per Eligo's ███████████████████████████
████████████████████████. *See* Glotzbach Dep. at 96:15–100:07 ██████████████
██████████████████; *id.* at 62:21–63:17 ████████████████████████████████
█████████; *id.* at 70:03–73:13 █████████████████████████████████████████
██████; *see also* Sandler Dep. at 121:08–122:15, 128:14–129:13, 146:15–148:09 (same).

Although all of Eligo's hedging records are both relevant and responsive to Plaintiffs' discovery requests, as a compromise, Plaintiffs proposed limiting their requests on this issue to the monthly reports summarizing Eligo's hedging costs. These monthly reports were prepared for Eligo's Risk Management Policy Committee ("RMPC").[1] Eligo rejected Plaintiffs' offer. *See* Ex. 1.

---

[1] An example of the RMPC reports is attached hereto as Exhibit 3. The limited data sought by Plaintiffs appears on the table in the second page.

1

Testimony from Eligo witnesses and documents produced in discovery demonstrate that Eligo ███████. Eligo cannot in good faith dispute that it possesses these reports. Eligo's Vice President of Risk & Trading testified that ███████ Glotzbach Dep. at 120:16–121:14, attached hereto as Exhibit 2; *see also id.* at 85:19–95:13, 104:07–12 ███████; *id.* at 11:17–23, 21:03–13, 58:20–59:02 ███████; LaPointe Dep. at 63:07–19 ███████; Sandler Dep. at 52:19–55:23 (same). ███████ Glotzbach Dep. at 120:16–121:14. Further, documents produced by Eligo demonstrate that ███████.

The RMPC reports are clearly responsive to Plaintiffs' discovery requests. For example, Plaintiffs requested: "All documents concerning Defendants' purchasing or hedging strategy or strategies for electricity or natural gas to be sold to Defendants' New York customers." Eligo's Resp. to Plaintiffs' 1st Reqs. For Produc., No. 15. Eligo responded that it would "produce documents sufficient to identify how variable rates were calculated in the relevant time period." *Id.* Yet now Eligo is refusing to produce data regarding hedging costs for the entire "relevant time period" of February 2018 to February 2024.

Eligo has only produced RMPC reports for 19 of the 72 months at issue in this litigation. Notably, it has produced none of the RMPC reports that Mr. Glotzbach prepared, ███████. Glotzbach Dep. at 120:16–121:14. These documents are responsive and can be retrieved with minimal burden—the Court should order Eligo to produce them.

If the Court chooses not to order the production of the RMPC reports, then the Court should require that Eligo produce the underlying data. ███████ *See, e.g.*, Glotzbach Dep. at 46:16–48:12 ███████; *id.* at 117:11–118:04 ███████; Feely Dep. at 69:22–71:01 ███████. Thus, even if the monthly RMPC reports are not all readily available, Eligo could easily generate a report with this information. *See Local 3621 v. City of N.Y.*, No. 18 Civ. 4476 (JW), 2024 WL 1856302, at *2 (S.D.N.Y. Apr. 26, 2024) ("Indeed, courts regularly require parties to produce reports from dynamic databases, holding that the technical burden of creating a new dataset for litigation does not excuse production.").

### B. Eligo's Discovery Obligations Are Not Limited By ESI Search Terms.

Plaintiffs alerted Eligo to the many missing RMPC reports and asked it to produce the remaining reports. *See* Ex. 1 at 2–3, 6–7. Eligo refused, claiming that it is not "reasonable for us to go back through the universe of documents we collected to ferret out a few Risk Committee reports that

either (a) didn't hit on the agreed-upon search terms or (b) hit on the terms but were deemed non-responsive in our review." Ex. 1 at 1. Eligo's position is contrary to the Parties' agreement. As Plaintiffs repeatedly made clear, the Parties developed mutually agreeable ESI search terms to cull a large volume of discovery to identify a more limited set of materials most likely to be relevant to the litigation and responsive to Plaintiffs' discovery requests. But just because an otherwise relevant document was collected as part of ESI but did not happen to have the search terms in close enough proximity does not mean that Eligo can withhold it. RMPC reports and hedging data are maintained in discrete locations, and they can be easily produced. Notably, Eligo has not previously protested when making other discrete productions that may or may not have also contained documents collected as part of the ESI process. For example, Eligo produced invoices from the New York Independent System Operator and some New York utilities independently of any keyword searches.

Plaintiffs have identified specific evidence proving that Eligo possesses additional responsive documents that can be easily located and produced. Eligo cannot now refuse to produce the evidence simply because it was not identified during a previous search. *See Lively v. Wayfarer Studios LLC*, No. 24 Civ.10049 (LJL), 2025 WL 2463633, at *2 (S.D.N.Y. Aug. 27, 2025) ("When the party requesting discovery makes such a showing, courts have the discretion to order the responding party to 'explain specifically what efforts were undertaken to find relevant documents.'" (quoting *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs.*, 318 F.R.D. 28, 43 (S.D.N.Y. 2016))).

### C. Eligo Should Not Be Allowed To Benefit From Its Refusal To Produce Documents Regarding Costs It Claims Were Used To Calculate Variable Rates.

If the Court does not order Eligo to produce the RMPC reports or the underlying data, Plaintiffs respectfully request that the Court order that Eligo may not rely on the absence of evidence related to hedging costs as a defense (either to class certification or on the merits). *See Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-CV-4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018) ("In this case, in order to protect Capstone from potential unfairness, the Court will preclude defendants from making any use, to their own advantage, of the accounting data and documents that they do not wish to show to plaintiffs in discovery.");[2] *see also* Fed. R. Civ. Pro. 37(c)(1) (party may not rely on improperly withheld discovery); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) (discussing exclusion of evidence under Fed. R. Civ. Pro. 37(c)(1)). Eligo's strategy is apparent; withhold evidence regarding what it contends is a cost input that should be used to calculate the variable rates Plaintiffs and the Class were charged, then claim that Plaintiffs' calculations of the variable rate Eligo should have charged had it honored the contract is deficient because Plaintiffs lack complete hedging cost data. This Court should not countenance such maneuvering.

---

[2] "[D]efendants cannot have it both ways. That is, they cannot withhold the requested information and documents from Capstone in discovery, only to rely on some or all of the same material (either directly or through their own damages expert) if and when they conclude that it would be helpful in challenging Capstone's damages analysis or performing their own." *Id.*

Dated: September 5, 2025  Respectfully submitted,

By: */s/ D. Greg Blankinship*
D. Greg Blankinship
Daniel J. Martin
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
dmartin@fbfglaw.com

J. Burkett McInturff
Tiasha Palikovic
Jessica L. Hunter
**WITTELS MCINTURFF PALIKOVIC**
305 Broadway, 7th Floor
New York, New York 10007
Tel: (917) 775-8862
Fax: (914) 775-8862
jbm@wittelslaw.com
tpalikovic@wittelslaw.com
jlh@wittelslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

CC: All Counsel of Record via ECF

4