# Exhibit B

Case 1:24-cv-01260-ER   Document 284-2   Filed 10/03/25   Page 2 of 6

Joseph Ramsey Brous                                            August 15, 2025
Brous, Et Al. Vs. Eligo Energy, LLC, Et Al.

Page 1

1            IN THE UNITED STATES DISTRICT COURT
2            FOR THE SOUTHERN DISTRICT OF NEW YORK
3    IRA BROUS, AND MICHELLE SCHUSTER,
4    ON BEHALF OF THEMSELVES AND ALL
5    OTHERS SIMILARLY SITUATED,
6
7         Plaintiffs,
8    V                              Case No.:  1:24-CV-01260
9    ELIGO ENERGY, LLC AND ELIGO
10   ENERGY NY, LLC
11        Defendants,
12   _____X
13            DEPOSITION OF: JOSEPH RAMSEY BROUS
14            DATE:          August 15, 2025
15            TIME:          10:10 a.m. to 11:40 a.m.
16            VENUE:         Regus
17                           125 East State Street
18                           Ithaca, New York 14850
19
20
21   Reported by Cari Roraback
22
23
24

Case 1:24-cv-01260-ER   Document 284-2   Filed 10/03/25   Page 3 of 6

Joseph Ramsey Brous                                        August 15, 2025
Brous, Et Al. Vs. Eligo Energy, LLC, Et Al.

Page 30
1  A. I suppose you could call it
2  impersonating.
3  Q. Okay. How many times did you do
4  that?
5  A. Once or twice, probably twice.
6  Q. And you didn't have any sort of
7  Power of Attorney for your father, did you?
8  A. Not at that time.
9  Q. Did you later?
10 A. I did.
11 Q. When did that come about?
12 A. Power of Attorney?
13 Q. Yes.
14 A. I can't give you the exact date, but
15 sometime between that and when he died.
16 Q. So, was it before the lawsuit was
17 filed?
18 A. No.
19 Q. After that?
20 A. Correct.
21 Q. Okay. Are you represented here
22 today?
23 A. Yes.
24 Q. By whom?

Page 31
1  A. The same law firm that filed the
2  lawsuit, I believe.
3  Q. Okay. When did they start
4  representing you?
5  A. I -- I can't remember the exact
6  date. Sometime within the last year.
7  Q. Okay. Did they start repre -- what
8  -- what caused them to start representing you? Was it
9  our desire to take your deposition?
10 A. I believe that's the case.
11 Q. Okay. So they would have started
12 representing you in response to our request to take your
13 deposition?
14 A. I believe that's correct.
15 Q. Do you have an engagement letter
16 with them?
17 A. On me?
18 Q. No, not on you. Do you -- do you --
19 does one exist?
20 A. I believe so.
21 Q. Did you -- so your -- you said, I
22 believe so. Have you signed an engagement letter with
23 the law firm?
24 A. I believe I did.

Page 32
1  Q. Okay. Do you know when you did
2  that?
3  A. No.
4  Q. Was it within the last month?
5  A. I don't believe so.
6  Q. The last two months?
7  A. I don't recall.
8  Q. Do you remember if it was after your
9  mother's deposition?
10 A. I don't recall.
11 Q. Would that have been presumably
12 transmitted to you by email?
13 A. I believe so.
14 Q. So if you needed to find the date,
15 you would look at your email?
16 A. If it was transmitted to me by
17 email, then yes.
18 Q. And what is the engagement that you
19 have with your lawyers related to this deposition or
20 something else?
21 MR. MARTIN: Objection again. Please
22 don't reveal the substance of communications or what
23 legal advice you were seeking, the purpose of legal
24 advice.

Page 33
1  Q. Yeah, to be clear, I'll ask the
2  question again. What I'm trying to determine is, what
3  is the subject matter of -- of the legal representation
4  that you have with your counsel?
5  A. I believe it's the class action suit
6  against Eligo.
7  Q. Okay. So it's your testimony that
8  they represent you with respect to the class action that
9  you're not a party to?
10 A. That's my understanding.
11 Q. Okay. How many times have you --
12 how many times have you met with counsel in this case,
13 approximately, over the phone or in person?
14 A. Two or three.
15 Q. Is that two to three times in
16 person?
17 A. No.
18 Q. How many times have you met with
19 them in person?
20 A. In total. In person? Once.
21 Q. When was that?
22 A. Yesterday.
23 Q. So, I believe -- okay. So what
24 you're saying is you only had two phone calls with them?

Case 1:24-cv-01260-ER    Document 284-2    Filed 10/03/25    Page 4 of 6

Joseph Ramsey Brous                                      August 15, 2025
Brous, Et Al. Vs. Eligo Energy, LLC, Et Al.

Page 50

1  MR. MARTIN: Can we just take a brief --
2  MR. WATSTEIN: Yeah.
3  MR. MARTIN: -- break?
4  MR. WATSTEIN: Sure.
5  VIDEOGRAPHER: The time on the monitor is
6  eleven twenty. We are off the record.
7  (Off the record 11:20 a.m.)
8  (On the record 11:34 a.m.)
9  VIDEOGRAPHER: The time on the monitor is
10 eleven thirty-four. This begins media three. We're on
11 the record.
12 CROSS EXAMINATION
13 BY MR. MARTIN:
14 Q. Mr. Brous, just briefly, I want to
15 talk about when you engaged with Burkett's firm. I'm
16 just going to say W.M.P., if that works for you. Do you
17 recall whether you engaged W.M.P.'s services before the
18 complaint in this litigation was filed?
19 A. So, I was reminded about the timing
20 of my engaging that, in fact, yes, that I had engaged
21 prior to, I guess, my father engaging the firm.
22 Q. Okay. So what -- what I asked you
23 was a little different. Do you recall if you engaged
24 W.M.P. before the lawsuit was filed?

Page 51

1  A. Yes.
2  Q. All right. And you said that was --
3  you engaged W.M.P. before your father did? Is that what
4  you just said?
5  A. I -- I believe that's correct.
6  Q. Okay. That is all I have. Thank
7  you.
8  MR. WATSTEIN: I have a couple follow-up
9  questions.
10 REDIRECT EXAMINATION
11 BY MR. WATSTEIN:
12 Q. Can you tell me the amount of time
13 that we were off the record on the last break?
14 A. We were off the record for fourteen
15 minutes.
16 Q. Okay. So after I finished my
17 questioning, we went off the record for fourteen minutes
18 and your attorney left the room, right?
19 A. Yes.
20 Q. Okay. And then your attorney came
21 back in here and asked you to go out there with him,
22 right?
23 A. Yes.
24 Q. And then you spoke with him, right?

Page 52

1  A. Yes.
2  Q. Okay. And then he came back in here
3  and asked you that question, right?
4  A. Yes.
5  Q. And your question was influenced by
6  what you spoke with him about, wasn't it? Your answer
7  was influenced by what you spoke with him about, wasn't
8  it?
9  A. I -- my memory was -- I -- I -- my
10 memory was jogged, and so I guess I needed to correct
11 what I had said earlier.
12 Q. How was your memory jogged? Did you
13 look at something to refresh your recollection?
14 A. No, sir.
15 Q. Okay. So your memory was jogged by
16 something that your counsel told you?
17 A. It was something that he asked me.
18 Q. What did he ask you?
19 A. He asked me when I had engaged with
20 the firm.
21 Q. Okay. But I asked you that earlier,
22 didn't I?
23 A. Yes, you did.
24 Q. Okay. So why was your answer to him

Page 53

1  different than it was to me?
2  A. I apologize. My memory is
3  apparently not a hundred percent.
4  Q. Okay. So it's your testimony now
5  that you engaged W.M.P. prior to when your father, who
6  actually filed the lawsuit, engaged them?
7  A. I believe that's true.
8  Q. And what did you engage W.M.P.
9  about?
10 A. About Eligo and a class action suit.
11 Q. Okay. But you never had Eligo's
12 service, right?
13 A. That's correct.
14 Q. Okay. So I'm -- I'm trying to
15 understand how you would have engaged Eligo personally.
16 Are you -- are you saying that you engaged Eligo on your
17 parents' behalf, or that you engag -- you -- I'm sorry,
18 that you engaged W.M.P. on your parents' behalf, or that
19 you engaged them on your own behalf?
20 A. I believe I engaged them on my own
21 behalf.
22 Q. About Eligo, even though you were
23 never an Eligo customer?
24 A. Correct.

Case 1:24-cv-01260-ER    Document 284-2    Filed 10/03/25    Page 5 of 6

Joseph Ramsey Brous                                          August 15, 2025
Brous, Et Al. Vs. Eligo Energy, LLC, Et Al.

Page 54

1    Q. Okay. Why?
2    A. I -- I was advised at the time.
3    Q. By counsel?
4    A. Yes.
5    Q. Okay. And have -- has W.M.P. given
6  you legal advice about your experiences with Eligo?
7        MR. MARTIN: So you can answer yes or no,
8  but please don't get into the substance of
9  communications with counsel.
10    A. Can you repeat the question?
11    Q. Has W.M.P. given you legal advice
12  about your interactions with Eligo?
13    A. No, not that I recall.
14    Q. Okay. And did you sign an
15  engagement agreement at this time that you now claim to
16  have engaged W.M.P.?
17    A. I believe I did.
18    Q. Do you have a copy of that?
19    A. Not on me.
20    Q. I'm saying, do you have a copy of it
21  at all?
22    A. I don't know the answer. I would
23  have to look.
24    Q. Okay. Where would it be kept?

Page 55

1  Where would you keep something like that?
2    A. I suppose it would be in my
3  computer.
4    Q. Is there like a particular folder
5  that you would file something like that in?
6    A. No.
7    Q. Do you have a -- I know that I sort
8  my emails by matter. Of course, I'm a lawyer, so that
9  makes sense. How do you sort your emails?
10    A. Chronologically.
11    Q. Okay. Do you -- do you store emails
12  in folders or do you just leave them in your inbox?
13    A. I store them in folders by year.
14    Q. Okay. You store -- okay, you store
15  them by year? You don't break them down by subject
16  matter?
17    A. Correct.
18    Q. Okay. So you don't have an Eligo
19  Energy folder or something like that?
20    A. Correct.
21    Q. No folder about this lawsuit?
22    A. No.
23    Q. And again, other than talking with
24  your lawyer, is there anything else that you claim

Page 56

1  refreshed your recollection about your date of
2  engagement?
3    A. No.
4    Q. That's all I have.
5        MR. MARTIN: Is that it?
6        MR. WATSTEIN: That's it.
7        MR. MARTIN: Anybody online have any
8  questions?
9        MR. LAPOINTE: I do not.
10        MR. MOORE: No.
11        VIDEOGRAPHER: Anybody online going to
12  want a copy of the video?
13        MR. LAPOINTE: That won't be necessary.
14  We'll get a -- we'll get a copy from Mr. Watstein.
15  Thank you.
16        MR. MARTIN: We don't need a copy of the
17  video.
18        VIDEOGRAPHER: Okay. Just the ordering
19  attorney. The time on the monitor is eleven forty.
20  This includes today's testimony given by Ramsey Brous.
21  Total number of meeting units was three and will be
22  retained by Veritext.
23     (The deposition concluded at 11:40 a.m.)
24

Page 57

1
        I, JOSEPH RAMSEY BROUS, have read the foregoing
2  record of my testimony taken at the time and place noted in
   the heading hereof and do hereby acknowledge:
3  (Please check one)
        ( ) That it is a true and correct transcript of
4  same.
        ( ) With the exceptions noted in the attached
5  errata sheet, it is a true and correct transcript of same.
6
        X_____
7
        JOSEPH RAMSEY BROUS
8
9  Sworn to before me this
   _____day of _____, 2025.
10 X_____
   NOTARY PUBLIC
11 My Commission Expires:
   _____
12
13
14
15
16
17
18
19
20
21
22
23
24

Joseph Ramsey Brous  August 15, 2025
Brous, Et Al. Vs. Eligo Energy, LLC, Et Al.

Page 58

1  I, CARI RORABACK, do hereby certify that the foregoing
2  testimony of JOSEPH RAMSEY BROUS was taken by me, in the
3  cause, at the time and place, and in the presence of counsel,
4  as stated in the caption hereto, at Page 1 hereof; that
5  before giving testimony said witness was duly sworn to
6  testify the truth, the whole truth and nothing but the truth;
7  that the foregoing typewritten transcription, consisting of
8  pages number 1 to 56, inclusive, is a true record prepared by
9  Associated Reporters Int'l., Inc. from materials provided by
10 me.
11
12
13
14
15
16
17         *Cari Roraback*
           CARI RORABACK, Reporter
18
19
20
21
22
23
24

Page 59

1
             (800) 523-7887
2
   Job No. ATL7508532
3  Case Name:  Brous v Eligo Energy et al
   Case Number:  1:24-CV-01260
4  Deponent:  Joseph Ramsey Brous
   Deposition Date:  8-15-25
5  Examining Attorney:  Ryan Watstein, Esq.
6  Dear Mr. Brous:
7
   Please read and make any changes and/or corrections in your
   testimony and sign the transcript in the presence of a notary
8
   public.  Please do so within thirty (30) days.  If you fail
9  to sign the transcript within thirty (30) days, it will be
   delivered to the appropriate parties without signature.
10 Return the transcript with corrections, if any, to:
11
       WATSTEIN TEREPKA, LLP
12     BY:  RYAN WATSTEIN, ESQ.
       74 14th Street NE #2600
13     White Plains, New York 10601
14 CORRECTIONS:
15
       _____  Word or phrase: _____
       Corrected to: _____
16
       _____  Word or phrase: _____
17     Corrected to: _____
       _____  Word or phrase: _____
18     Corrected to: _____
       _____  Word or phrase: _____
19     Corrected to: _____
       _____  Word or phrase: _____
20     Corrected to: _____
       _____  Word or phrase: _____
21     Corrected to: _____
       _____  Word or phrase: _____
22     Corrected to: _____
       _____
23
   Date Signed    _____
24                JOSEPH RAMSEY BROUS

Page 60

1  DANIEL MARTIN, ESQ.
2  dmartin@fbfglaw.com
3          August 22, 2025
4  RE: Brous, Et Al. v. Eligo Energy, LLC, Et Al.
5  8/15/2025, Joseph Ramsey Brous (#7508532)
6     The above-referenced transcript is available for
7  review.
8     Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12    The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 cs-southeast@veritext.com
16    Return completed errata within 30 days from
17 receipt of testimony.
18   If the witness fails to do so within the time
19 allotted, the transcript may be used as if signed.
20
21
22        Yours,
23        Veritext Legal Solutions
24
25