

Ryan Watstein<br>
Ryan@wtlaw.com<br>
404-782-0695

October 13, 2025

**VIA ECF**

Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

      Re:     *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Eligo's Supplemental Response Concerning Plaintiffs' Response Re: Ramsey Brous Communications [ECF No. 284].

Dear Judge Ramos:

      Plaintiffs' October 3 letter opposing Defendants' motion to compel production of communications involving non-party Ramsey Brous misrepresents the record and relies on a new privilege log that Plaintiffs withheld until a few hours before they filed their opposition letter. Eligo therefore offers this response to rebut Plaintiffs' misstatements and last-minute submission of new evidence. Because Ramsey brought about the filing of this lawsuit based on his misunderstanding of fact—rooted in his own, unrelated cost-plus contract with a different ESCO—the communications at issue are highly relevant and probative.

<u>*Plaintiffs Distort Ramsey's Testimony to Falsely Suggest He Retained Plaintiffs' Counsel in Late 2023*</u>

      Plaintiffs first distort the record to argue that Ramsey "unambiguously" testified that he retained Plaintiffs' counsel "on his own behalf" in December 2023. In fact, the opposite is true. When questioned by Eligo's counsel, Ramsey testified that he retained Plaintiffs' counsel "sometime within the last year," meaning August 2024 at the very earliest. R. Brous Dep. at 31. Ramsey then twice said that he believed he retained Plaintiffs' counsel in connection with Eligo's request to take his deposition, which occurred in 2025. *Id*. That makes sense, given Ramsey is a non-party who admits he has no claims against Eligo and thus could not have sought legal advice from Plaintiffs' counsel about anything but his deposition. *Id.* at 53:8–54:13.

      Towards the end of his deposition, and on re-direct by Plaintiffs' counsel, Ramsey suddenly tried to change that testimony. After conferring with Plaintiffs' counsel during a 14-minute break, Ramsey testified that he retained Plaintiffs' counsel, not "within the last year" in connection with his deposition, but in December 2023, before this litigation was filed. Ramsey tried to explain this wholesale revision of his testimony by claiming his "memory" had been "jogged"—not by a document, but by what Plaintiffs' counsel told him to say at break, and so "I guess I needed to correct what I said earlier." *Id*. at 52.

| Atlanta | Los Angeles | Miami |
|---|---|---|
| 75 14th Street NE, Ste. 2600 | 515 S. Flower Street, 19th Floor | 218 NW 24th Street, 3rd Floor |
| Atlanta, GA 30309 | Los Angeles, CA 90071 | Miami, FL 33127 |

 www.wtlaw.com      Ryan@wtlaw.com      404-782-0695

Plaintiffs now attempt to argue that Ramsey merely sought to "clarify" his earlier testimony, and not change it, due to "confusion." But Ramsey never claimed to be confused during his deposition, and the video of his testimony, which Eligo submits with this letter for the Court's review, belies Plaintiffs' contentions. As the video shows, Ramsey admitted that he *changed* his testimony, and did not merely "clarify" it, based on an off-the-record conferral with Plaintiffs' counsel. Ramsey's visible discomfort offering that explanation, which is readily observable in the video, is more than telling. The 3-minute video link is available here: https://www.dropbox.com/scl/fi/2jhflh2l5r8itka0w5tky/Ramsey-Brous-Deposition-Excerpts.mp4?rlkey=8kma8oopn34cerpm9qqe7bjbm&st=3xzqawhn&dl=0. Most tellingly, Ramsey pauses for 14 seconds in response to the simple question "What did you engage [Wittels McInturff Palikovic] about?"

The record supports only one credible conclusion: Ramsey did not retain Plaintiffs' counsel to provide him legal advice until very recently, and his many emails and other communications with Plaintiffs' counsel about *other people's claims* against Eligo are therefore fully discoverable. Instead, he encouraged other people, based on analogizing an ESCO contract he'd never seen to his own cost-plus ESCO contract with a different ESCO, to sue Eligo. He then vigorously communicated with *those persons'* counsel about their claims, which he did not possess

*Plaintiffs' Late-Disclosed Privilege Log Underscores Eligo's Need to Discovery Ramsey's Communications*

Plaintiffs' counsel hasn't just misrepresented the record about how and why Ramsey changed his testimony. They also did an eleventh-hour document dump in the form of lengthy privilege log that could and should have been disclosed at least five months ago, if not earlier.

Hours before filing their October 3 letter, Plaintiffs' counsel produced a privilege log containing 123 documents and communications involving Ramsey Brous. **Previously, Plaintiffs' counsel had only disclosed 4 communications between them and Ira and Anne Brous**. Both the timing and the sheer scope of the privilege log—almost four times larger than the original privilege log for both Plaintiffs and 30 times larger than the privilege log for his parents—bespeak an intention to conceal the scope and extent of Plaintiffs' counsel's communications with Ramsey, who is not a plaintiff and has no legal interests at stake in this case. Plaintiffs failed to disclose Ramsey in their initial disclosures until one week before the fact deposition deadline and only after the deposition of Anne Brous who repeatedly testified that she lacked basic knowledge about the case. This practice is consistent with Plaintiffs' pattern of tactical non-disclosure. ECF 236.

As Eligo has long maintained, this privilege log makes it clear that Ramsey has been directing the litigation all along, despite Rule 23's unbendable requirement that the *named plaintiffs* control the litigation. *Griffin v. GK Intelligent Sys.*, 196 F.R.D. 298, 302 (S.D. Tex. 2000) (denying certification and finding plaintiff inadequate under Rule 23 where she was solicited by third-party, had little or no supervisory role over counsel, and where case was driven by counsel). Considering Ramsey's vital role, it is inconceivable that Plaintiffs' failure to disclose these communications up until now is an oversight. Defense counsel emailed Plaintiffs' counsel multiple times asking why they disclosed such a large privilege log at such a late juncture in this case, and Plaintiffs' counsel has provided no response other than attempting to delay "conferral" until the day before the October 15 hearing, rather than provide a straightforward explanation

for their last-second disclosures. The belated privilege log only underscores the need for Eligo to fully discover the extent to which Ramsey, and not his parents, has been directing this litigation from the outset, which is directly relevant to the adequacy of his mother as a putative class representative. *See id.*; *Bodner v. Oreck Direct*, 2007 WL 1223777, at *1 (N.D. Cal. Apr. 25, 2007) (denying certification for lack of adequacy where Plaintiff who met his attorney in person for the first time the day before his deposition and did not read the complaint was not "the driving force" behind the litigation).

*Ramsey's Communications are Not Privileged.*

The privilege log further shows that Ramsey Brous' communications are not privileged. The log's first entry states that Ramsey contacted attorney Burkett about "Eligo overcharges"—yet Ramsey was not an Eligo customer and was never "overcharged" by Eligo. The supposed overcharged related only to Ramsey's parents, and not to him, and Ramsey cannot create an attorney-client privilege by seeking advice as to someone else's claims . *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (attorney-client privilege "protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client").

\* \* \* \* \*

Ramsey Brous' deposition footage and Plaintiffs' belated supplemental privilege log confirm that Ramsey's communications are highly relevant and not privileged. At a deeper level, these communications should be produced because it is Ramsey—and his fundamental ignorance of the terms of his parents' contract—that is driving this case. Ramsey is an ESCO customer for both his home and business with a **cost-plus** contract. R. Brous Dep. at 28:19–29:22. Despite having no legal interest in this dispute, he urged his parents to sue because **their** rates did not correspond to his expectations **as a cost-plus** customer.

> **Q**: And do you know how Empire calculates your rates?
> **A**: I -- I would have to look. I believe it's like a [NYMEX] plus or a [NYMEX] minus kind of situation.
> **Q**: Okay. And that's for both home and work?
> **A**: Correct.
> **Q**: Okay. And -- and so -- okay. So then your understanding of how you thought that the Eligo rates would be calculated was based on your interaction primarily with Empire then?
> **A**: I suppose.

*Id.* at 29:10–22. Nor did Ramsey see his father's contract or listen to the third-party verification call before contacting Plaintiffs' counsel. *Id.* at 20:6–11; 44:3–8.

The Court should grant Defendants' motion to compel. In the alternative, the Court should order the production of the purported engagement letter with Ramsey Brous to permit Eligo to determine why Ramsey Brous, and not his parents, signed an engagement letter before the litigation began.

3

4

Respectfully,

*/s/ Ryan Watstein*
Ryan Watstein