

Ryan Watstein<br>
Ryan@wtlaw.com<br>
404-782-0695

October 22, 2025

**VIA ECF**

Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

    Re:    *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Response to Plaintiffs' Letter Motion Regarding Defendants' Privilege Log (Doc. 285)

Dear Judge Ramos:

    Just over a week ago, this Court refused to compel the production of any documents from Plaintiffs' privilege log listing communications with third party Ramsey Brous. At the end of last week's hearing, and after hearing a preview of the parties' arguments concerning Plaintiffs' pending motion challenging Eligo's privilege log, the Court counseled the parties to take reasonable positions and reach compromises rather than take up the Court's time with more discovery disputes. While Eligo respectfully disagrees with the Court's ruling on the Ramsey Brous documents, it takes the Court's comments seriously and wishes to be responsive to them. To that end, Eligo has declined to re-file its motion seeking Ramsey Brous' communications in another court. Plaintiffs, by contrast, believe the Court's admonitions do not apply to them. They have insisted on pressing their motion challenging Eligo's privilege log, rationalizing that when "the Court encouraged the parties to take reasonable positions," it was talking only to Eligo and not the Plaintiffs. *See* Ex. A (email from Plaintiffs' counsel insisting on pressing their letter motion regardless of the Court's admonitions). This despite the fact that **Plaintiffs have filed twenty-three letter motions to compel, nearly three times the number filed by Eligo.**

    Predictably, Plaintiffs' current letter motion stakes out precisely the sort of unreasonable position this Court warned the parties to avoid. Plaintiffs ask this Court to hold that, because Eligo's privilege log is allegedly "incomplete" in certain respects, Eligo has waived the attorney-client privilege as to the approximately 1,500 documents listed on the privilege log. As explained below, that over-reaching and unreasonable request should be denied, along with Plaintiffs' alternative request to compel the production of 24 specific documents on Eligo's log.

    As an initial matter, Eligo's privilege log should be evaluated in light of the extensive discovery that Eligo has already produced at great effort and expense. Months ago, the parties agreed to an ESI protocol that resulted in Eligo reviewing roughly 214,000 documents. Of those, Eligo produced over 30,000 to the Plaintiffs. That production included voluminous, detailed information about the core issue in this case:

| **Atlanta** | **Los Angeles** | **Miami** |
| :---: | :---: | :---: |
| 75 14th Street NE, Ste. 2600 | 515 S. Flower Street, 19th Floor | 218 NW 24th Street, 3rd Floor |
| Atlanta, GA 30309 | Los Angeles, CA 90071 | Miami, FL 33127 |

 www.wtlaw.com      Ryan@wtlaw.com      404-782-0695

namely, how Eligo set variable rates for electricity. Eligo's detailed production made it possible for Plaintiffs to depose seven different Eligo witnesses, and more recently, to produce three lengthy expert reports in support of their claims.

Eligo produced its first privilege log on April 4, 2025. That log listed just under 2,000 documents, which is ***less than 1% of the total number of documents Eligo reviewed***. By way of further comparison, Eligo produced ***more than 20 times the number of documents it withheld on the basis of privilege***.  That stands in stark contrast to the Plaintiffs, who have produced just 56 documents in total while withholding 158 documents under three different privilege logs. So, while Eligo's production was large and forthcoming, Plaintiffs withheld almost three times as many documents as they produced.

Eligo's privilege log also complied with LR 26.2, which requires only that a log disclose, where available, 1) the type of document, 2) the general subject matter of the document, 3) the date of the document, and 4) the author/addressees of the document. As the Rule allows, Eligo produced a log generated primarily from document metadata. *See* LR 26.2(c)(2) ("[W]here," as here, "numerous documents are withheld and the party is using review software, preparation of a metadata log may suffice to provide the information required to support the claim of privilege.") And given the number of documents listed, Eligo's log was necessarily categorical, rather than strictly document-by-document, which this Court's rules also allow. *See Rekor Sys. v. Loughlin*, 2021 WL 5450366, at *1 (S.D.N.Y. Nov. 22, 2021) (categorical log adequate where it identifies participants, date ranges, document types, and basis of privilege); *In re Actos Antitrust Litig.*, 340 F.R.D. 549, 553 (S.D.N.Y. 2022) (endorsing categorical privilege log and noting that "[w]ith the advent of electronic discovery and the proliferation of e-mails and e-mail chains, traditional document-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court."); *Assured Guar. Mun. Corp.*, 2013 WL 1195545, at *10 (denying request for document-by-document log and permitting categorical log).

None of that stopped Plaintiffs from using Eligo's privilege log as a license to bombard Eligo with accusations of wrongdoing and demands for more information. For months, Plaintiffs repeatedly sent lengthy emails challenging the vast majority (if not all) of the entries on Eligo's privilege log and demanding supplemental information on dozens of specific documents. Eligo has, at great effort and expense, answered these questions and spent hours on meet and confer calls with Plaintiffs' counsel. Indeed, as Plaintiffs admit, Eligo revised its log four separate times in response to Plaintiffs' demands, each time providing additional information and refining the log's accuracy and completeness. As just one example, in July, and at Plaintiffs' request, Eligo undertook a secondary, individualized review of hundreds of documents that, according to Plaintiffs, weren't privileged because they involved third parties. Eligo found that on a second review, many of the documents weren't responsive at all, and therefore reclassified them. In other cases, Eligo supplemented its production and removed documents from the log. And in other instances, Eligo informed Plaintiffs that log contains all the information Eligo has about the listed documents because, for example, certain documents either don't identify the author, are group communications with no single author, or lack other identifying information that might otherwise be disclosed on a privilege log.

Plaintiffs nevertheless argue that sporadic instances of "missing information" mean that Eligo has waived the attorney-client privilege as to every document on the log. That argument isn't just overreaching and wrong but based on distortion. ***Indeed, Plaintiffs haven't submitted Eligo's privilege log to the Court but rely instead on an altered version of the privilege log that is materially different from what Eligo***

*produced.* *Compare* ECF 285-1 (Plaintiffs' annotated and reordered version of Eligo's privilege log) *with* Ex. B (Eligo's actual privilege log). And Plaintiffs' alterations to the log are designed to obscure information that was actually disclosed by Eligo. Take for example DEF056245, an email marked privilege that has a calendar attachment (DEF056247) also marked as privileged. Plaintiffs complain in their altered log that the addressee information is missing, but in fact, Eligo's log includes this information in the entry immediately above. In their alteration, Plaintiffs separated these two entries by more than a thousand lines, even though they appear consecutively in Eligo's log, to create a misleading impression that Eligo's log is incomplete. *See* Ex. C (excerpts of Eligo's privilege log compared to Plaintiffs' reworked excel). And if that is not bad enough, Plaintiffs editorialize Eligo's privilege log with a comments section that is not only not in the original but contains argument that is simply untrue. For example, Plaintiffs characterize DEF066981–82 as the "[u]nlogged Child[ren] of DEF066972," when in fact Eligo logged the entire family in consecutive rows in its privilege log. *See id*.

In other words, Plaintiffs' letter motion isn't aimed at Eligo's *actual* privilege log at all. It is rather aimed at a strawman Plaintiffs created to manufacture "deficiencies" that don't actually exist. If this isn't the sort of "unreasonable position" the Court warned the parties not to take, then nothing is.

But even if Plaintiffs' alleged deficiencies in the log were real – and they aren't – they still would not justify the draconian "remedy" of deeming Eligo's attorney-client privilege to have been waived. Indeed, even Plaintiffs' cited cases reinforce that waiver is disfavored and only used as a last resort after numerous intermediate steps have been exhausted—and not where a party has ginned up disputes by aiming at a fake privilege log it created from whole cloth. For example, the court in *BlackRock Balanced Cap Portfolio (FI) v. Deutsche Bank Nat'l.Tr.* did not find a total waiver due to deficiencies with the privilege log. 2018 WL 3584020, at *5 (S.D.N.Y. July 23, 2018). In reality, the court set up numerous intermediate steps to provide the defendant with "multiple opportunities to provide" a sufficient privilege log, and even after the defendant repeatedly failed to provide a sufficient log, there was no total waiver—the court permitted the defendant to assert privilege over "documents listed on the privilege log with complete information." *Id.* Likewise, the Court in *AIA Holdings* again found no waiver because the document was adequately disclosed. *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002 WL 31385824, at *8 (S.D.N.Y. Oct. 21, 2002). Nor is it fair to argue, as Plaintiffs do, that Eligo has not engaged in a good faith attempt to resolve any purported deficiencies—indeed Eligo has spent dozens of hours addressing Plaintiffs' serial demands and objections, resulting in four amendments to the log.

That leaves Plaintiffs' alternative request to compel a small subset of documents allegedly shared with third parties, or where Eligo claimed a common interest privilege. As to the third-party documents, however, Plaintiffs never even conferred with Eligo before filing their letter motion. Virtually none of the "third-party" documents identified in Plaintiffs' Ex. B were identified to Eligo in Plaintiffs' previous request to re-review hundreds of documents associated with third parties. Plaintiffs' failure to confer on those documents requires the denial of their motion. FRCP 37(a)(1). And Plaintiffs' objection concerning the common interest privilege is a perfect example of their form over substance search for a dispute. Only four documents are coded this way, and none of those documents, nor any of their family members are associated with third parties. Instead of inquiring whether this was a simple coding error (it was—these documents are attorney-client privileged), Plaintiffs seek to generate a dispute where none exists.

3

Respectfully,

*/s/ Ryan Watstein*
Ryan Watstein

4