

Ryan Watstein<br>
Ryan@wtlaw.com<br>
404-782-0695

December 5, 2025

**VIA ECF**
Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

      Re:    *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Response to Plaintiffs' Letter Motion to Exclude Dr. Aron (Doc. 305)

Dear Judge Ramos:

      Plaintiffs' request to file a motion to exclude the opinions of Defendants' expert Debra Aron suffers from at least two fatal flaws. The first is that it baselessly attacks Dr. Aron's credentials and supposed lack of relevant expertise, even though **Dr. Aron's opinions have been accepted and relied upon in at least one other class action against an ESCO**. *See Martinez v. Agway Energy Servs.*, 2022 WL 306437, at *11 (N.D.N.Y. Feb. 2, 2022) (granting summary judgment to an ESCO and stating that "Defendant has met its initial burden of establishing that there is no genuine issue of material fact" based on "the report of its expert, Dr. Aron, comparing Defendant's rates to the rates charged by other New York ESCO participants in the market"). There, using the same methodologies and framework as she has employed in this case, Dr. Aron showed that Agway's rates were in line with those prevailing in the relevant market, and hence Agway had not overcharged its customers. The Second Circuit affirmed the grant of summary judgment to Agway, again relying (in part) on Dr. Aron's analysis. *Martinez v. Agway Energy Servs.*, 88 F.4th 401 (2d Cir. 2023).

      Plaintiffs attack Dr. Aron's credentials without mentioning that her opinions were relied upon by both the district court and Second Circuit in *Agway*. That omission is all the more telling because Plaintiffs' counsel were also counsel of record in *Agway*, where they didn't challenge Dr. Aron's qualifications at all. That they suddenly attempt to label Dr. Aron as unqualified here, after conceding her expert qualifications in *Agway*, only demonstrates the "Hail Mary" nature of Plaintiffs' motion.

      More fundamentally, Plaintiffs' letter motion both misconstrues the nature of their own claims and fundamentally misreads Eligo's customer contract. Plaintiffs' core claim is that Eligo's contract—which expressly permitted Eligo to set variable rates in response to "market pricing . . . and other market price factors"—is a cost-plus contract. It simply isn't, and Dr. Aron's report shows that Eligo's rates were in line with those of its competitors and thus represented the very sort of market-based prices the contract expressly permitted Eligo to charge. As in *Agway*, Dr. Aron's experience as a professional economist is perfectly

---

| **Atlanta** | **Los Angeles** | **Miami** |
|---|---|---|
| 75 14th Street NE, Ste. 2600 | 515 S. Flower Street, 19th Floor | 218 NW 24th Street, 3rd Floor |
| Atlanta, GA 30309 | Los Angeles, CA 90071 | Miami, FL 33127 |

        

www.wtlaw.com      Ryan@wtlaw.com      404-782-0695

suited to help the Court understand the relevant "markets" and "market prices" in which Eligo competed. Unable to dispute Dr. Aron's data or conclusions, Plaintiffs misstate and misconstrue the NYPSC's regulations and orders to insinuate that Dr. Aron has misunderstood them. But Plaintiffs' claims find no support in the actual regulations and orders of the NYPSC, and their attempt to dress these up as their experts' opinions fails. But this is beside the point because their claims center on Eligo's customer contract as opposed to some unalleged and non-existent regulatory violation. Again, the issue presented here is whether Eligo used its discretion to price variable rates according to "market factors" and "market pricing factors"—not whether Eligo complied with a non-existent cost-plus contract.

Given all of this, Plaintiffs' proposed motion to exclude Dr. Aron's opinions is doomed to fail and thus a waste of time. The Court would be well within its discretion to preclude such a motion. Nevertheless, Eligo does not object to formal briefing on the *Daubert* issue, as is customary in most, if not all, class action cases, provided that Eligo receives adequate time to brief its response and is afforded the opportunity to challenge Plaintiffs' experts who, in contrast to Dr. Aron, come nowhere close to meeting *Daubert's* requirements for admissibility.

**The Court Should Strike Plaintiffs' Experts Because They Distort Eligo's Customer Contract and Lack Requisite Expertise or Any Reliable Methodology**

In contrast to Dr. Aron, Plaintiffs' three experts should be excluded under *Daubert* because none of them has any training in economics or markets more broadly. Consistent with their efforts throughout this litigation, Plaintiffs use these consultants, who are scientists by training, to contort the contract's market pricing language into a cost-plus contract. There is no recognizable methodology or expertise that explains or justifies this inversion, and they offer no explanation for this quantum leap, especially when they never analyze the pricing of the relevant market, Eligo's ESCO competitors in New York. Not content with this distortion, Plaintiffs' experts then opine that Eligo breached its contract with its variable rate customers by not charging a "commercially reasonable" margin based on a re-engineered calculation of Eligo's supply costs. There is no methodological basis for this audacious contortion—it is pure *ipse dixit*. Nor is there any basis for their even more audacious claim that Eligo owes tens of millions of dollars in damages.

Fundamentally, none of them has any training in economics or markets; based on their disclosures, none of them has any experience as a testifying expert in a litigation within the past four years, much less any relevant litigation. The limited experience they have testifying in ESCO cases has been uniformly unsuccessful. The *Agway* court excluded Dr. Felder because his "conclusions [we]re not the product of reliable principles or grounded in sufficient data" and in "direct conflict with 'the entire point of electricity deregulation.'" *Agway*, 2022 WL 306437, at *14. The Second Circuit affirmed his exclusion and found that his proffered comparisons between the ESCO's prices and the utility's were "legally insufficient" and affirmed summary judgment in favor of the defendant ESCO. *Martinez v. Agway Energy Servs.*, 88 F.4th 401, 414 (2d Cir. 2023). In the same vein, the court in *Richards* rejected Mr. Macan's contention that the ESCO breached its market factors contract by not charging a certain, specific margin:

> While there may be genuine issues about how the "general populace" would precisely define the phrase "business and market conditions," no reasonable fact-finder could conclude that the phrase required [Defendant ESCO] to have a specific profit margin, or to have the same profit margin for each product the company sold. [The ESCO's] pricing

2

practices may be troubling, but they are not outside of the broad definition of "business and market conditions." No reasonable jury would conclude that [the ESCO's] pursuit of a desirable profit margin was not a "business and market condition."

*Richards v. Direct Energy Servs.*, 246 F. Supp. 3d 538, 552 (D. Conn. 2017). The Second Circuit also rejected Mr. Macan's analysis and found that factors like "minimizing customer losses" and "reaching a target profit margin[] are ordinary business considerations." *Richards v. Direct Energy Servs.*, 915 F.3d 88, 99 (2d Cir. 2019).

In light of their manifest lack of qualification and their failure to employ a recognized or reliable methodology, Eligo asks the Court to permit formal briefing on *Daubert* motions for Plaintiffs' experts, with a briefing schedule that permits three weeks for responses and two weeks for replies.

Respectfully,

*/s/ Ryan Watstein*
Ryan Watstein