# Exhibit 5



**Watch Live**

Bill No.: A01558  [Search]

☑ Summary  ☐ Actions  ☐ Votes  ☑ Memo  ☐ Text  *(Printer friendly text)*

Back

Bill Search & Legislative Information Home

Assembly Home

Bill / Floor Vote Search

New York State Laws

Legislative Calendar

Public Hearing Schedules

Assembly Calendars

Assembly Committee Agenda

**A01558 Summary:**

```
BILL NO    A01558C

SAME AS    SAME AS S02361-C

SPONSOR    Gianaris (MS)

COSPNSR    Pheffer, Robinson, Dinowitz, Gabryszak, Rosenthal, Schimel, Clark,
           Schroeder, Colton

MLTSPNSR   Alfano, Boyland, Brennan, Crouch, Errigo, Fields, Galef, Giglio,
           Glick, Gottfried, Gunther, Hyer-Spencer, Kellner, Koon, Latimer,
           Lopez V, Magee, Maisel, McDonough, McKevitt, Millman, Reilly, Rivera
           J, Saladino, Sweeney, Weisenberg, Wright

Add S349-d, Gen Bus L

Requires energy services companies to provide customers with a consumer bill of
rights; establishes civil cause of action and civil penalties for violations of
such provisions.
```

Go to top

**A01558 Memo:**

```
BILL NUMBER:A1558C

TITLE OF BILL:  An act to amend the general business law, in relation to
establishing an energy service company consumers bill of rights

PURPOSE OR GENERAL IDEA OF BILL:  This bill establishes important
consumer safeguards in the marketing and offering of contracts for ener-
gy services to residential and small business customers.

SUMMARY OF SPECIFIC PROVISIONS:  Bill S1 adds a new S349-d to the Gener-
al Business Law to set forth an energy services company consumers bill
of rights. Subdivision 1 defines the terms "energy services" (electric-
ity and/or natural gas), "energy services company" or "ESCO" (an entity
eligible to sell energy services to end-use customers using the trans-
mission or distribution system of a utility), "customer" (any person
sold or offered an energy services contract by an ESCO for residential
utility service or through door-to-door sales), and "door to door
sales."

Pursuant to subdivision 2, any person who sells or offers for sale any
energy services for or on behalf of an ESCO shall (a) properly identify
himself or herself and the energy services company or companies which he
or she represents; (b) explain that he or she does not represent a
distribution utility; (c) explain the purpose of the solicitation; (d)
provide each prospective customer with a statement of an "ESCO consumers
bill of rights" developed by the Public Service Commission (PSC), in
consultation with the Long Island Power Authority (LIPA), the Consumer
Protection Board (CPB) and the Department of Law; and (e) provide
contracts and other written materials in the language used to solicit
the prospective customer.

Subdivision 3 provides that no person selling or offering energy
services for or on behalf of an ESCO shall engage in any deceptive acts
or practices in such marketing.
```

Subdivisions 4-7 set forth the following ESCO contract requirements:

> no required prepayment for energy services - an ESCO may offer a customer an option of prepayment which can be cancelled without penalty within 90 calendar days.

> no fee for termination or early cancellation of the contract in excess of $100 if less than 12 months remain in the contract term, $200 if the remaining term is twelve months or more, or twice the estimated bill for energy services for an average month (to charge this fee, an ESCO must provide the customer, when the contract is offered, with that customer's estimated average monthly bill for energy services and the fee that would be charged thereon).

> no material changes in the terms or duration of any contract for energy services without the express consent of the customer, provided that the automatic renewal of contracts is allowed only if the ESCO follows

explicit statutory requirements, including clear advance notice and a period for opting out without any termination fee, and any additional regulatory protections adopted by the PSC or LIPA.

> all variable charges shall be clearly and conspicuously identified.

Per subdivision 8, any contract for energy services which does not comply with the applicable provisions of this section shall be void and unenforceable as contrary to public policy and any waivers by a buyer shall be deemed void and unenforceable by the ESCO.

Subdivision 9 authorizes the Attorney General, upon his own motion or upon referral from the PSC, LIPA or CPB, to bring a civil action against any ESCO that violates any provision of this section and to recover (a) a civil penalty not to exceed $1000 per violation and (b) costs and reasonable attorney's fees. In any such proceeding the court may direct restitution.

Subdivision 10 authorizes a right of private action by any person who has been injured by reason of any violation of S349-d to enjoin such unlawful act or practice and/or recover actual damages or $500, whichever is greater. The court may, in its discretion, increase the award to an amount not to exceed three times the actual damages up to $10,000, if it finds a willful or knowing violation. The court may award reasonable attorney's fees to a prevailing plaintiff.

Subdivision 11 preserves the existing authority of the PSC and LIPA to limit, revoke or suspend an ESCO's eligibility for violation of requirements enforceable by the respective agency.

Subdivision 12 preserves such agencies' existing authority to adopt additional compliance requirements relating to the types of products offered by ESCOs and the manner in which they are marketed to residential and commercial customers.

Bill SS2 & 3 provide that the PSC and LIPA, respectively, shall amend their consumer protection regulations and related guidelines, practices and policies to incorporate the provisions of bill S1.

Bill S4 charges the PSC, in consultation with LIPA, CPB and the Attorney General to develop a short, plain-language statement of an "ESCO consumers bill of rights" which summarizes the protections afforded to consumers of energy services by this chapter and other applicable laws.

Bill S5 sets forth a severability clause for the provisions of the legislation.

SUMMARY OF SPECIFIC AMENDMENTS: New S349-d(1)(d) is amended to clarify that visits to a buyer's premises pursuant to a requested appointment are not considered "door-to-door sales."

Clarifications are made to new S349-d(2) as follows: requirements pertaining to ESCO marketer identification and provision of a copy of the ESCO consumers bill of rights are made applicable to residential

customers and door-to-door sales, while the ban against engaging in
deceptive acts and practices is relocated to a new subdivision 3 and
remains applicable to all marketing activities. (The ensuing subdivi-
sions are renumbered accordingly.)

Subdivision 4 of S349-d is amended to permit ESCOs to offer customers
contracts providing for prepayment on an optional basis only, with an
extended rescission period of 90 days. Subdivision 5 was amended to
provide that the $100 limit on early termination fees applies to all
contracts with less than a full year remaining in the contract.  Longer
contracts would be subject to a maximum fee of $200. ESCOs that offer
contracts with a termination fee based on the customer's average monthly
bill would have to provide the customer's estimated average bill and the
actual fee amount prior to execution of the contract.

Renumbered S349-d(6) is amended to permit renewal of contracts, with
additional consumer protections where the renewal is automatic (i.e.
without the customer's express consent).

Further amendments also exclude marketing to commercial accounts at
trade or business shows, conventions or expositions from the "door-to-
door sales" definition, incorporate recommendations to provide a greater
role for the Consumer Protection Board in safeguarding the interests of
customers, clarify an ESCO's responsibilities in soliciting new or
renewal business, and provide a more realistic level of maximum recover-
able damages. Finally, the bill is amended to ensure that the existing
authority of the PSC and LIPA to protect consumer's interests is
preserved.

EFFECTS OF PRESENT LAW WHICH THIS BILL WOULD ALTER:  Chapter 686 of 2002
extended the provisions of the Home Energy Fair Practices Act (HEFPA) to
cover ESCOs, but its protections only apply after a contract has been
executed. This bill would augment recently-adopted PSC guidelines for
ESCO marketing, protect consumers from excessive termination fees and
deceptive marketing of initial contracts and renewals, make fair market-
ing standards broadly enforceable on a statewide basis, and extend
protections to small business customers who are often targeted by
unscrupulous door-to-door marketers without being covered under any
current PSC protections.

JUSTIFICATION:  Over the past decade, New York has promoted a compet-
itive retail model for the provision of electricity and natural gas.
Consumers have been encouraged to switch service providers from tradi-
tional utilities to energy services companies. Unfortunately, consumer
protection appears to have taken a back seat in this process. The press-
ing need for consumer protections in dealing with ESCOs is highlighted
by recent news items from around the state:

> Stopped outside her home in Flushing by a uniformed salesman promising
her utility bills will be cut in half, a senior citizen signs a contract
with an energy services company (ESCO). When she finds out later that
the contract is for 5 years and her monthly bills are $200 higher, she
tries to cancel - only to be told that she must pay an $1800 "exit fee".

> A small business owner in Brooklyn is convinced to sign an energy
services contract by a sales agent's assurances that the price would be
fixed and he could save at least $200 a month. After a few months, his
monthly bill had doubled, and he learned that the contract had a vari-
able charge that fluctuated wildly -- and that canceling it would cost
him $7000.

> Complaints from various communities cite ESCO marketing reps masquer-
ading as utility employees, making misleading statements to induce
people to sign a contract, and even switching consumers' energy suppli-
ers without their knowledge or consent.

High-pressure and misleading sales tactics, onerous contracts with unfa-
thomable fine print, short-term "teaser" rates followed by skyrocketing
variable prices -- many of the problems recently seen with subprime
mortgages are being repeated in energy competition.  Although the PSC
has recently adopted a set of guidelines, its "Uniform Business Prac-
tices" are limited and omit important consumer protections in several

areas. The fact is, competition in supplying energy cannot succeed without a meaningful set of standards to weed out companies whose business model is based on taking unfair advantage of consumers.

This bill would build on the approach taken by the PSC by (1) extending consumer protections statewide, including to customers in LIPA's service territory; (2) protecting small businesses from being victimized by dishonest door-to-door marketing; (3) protecting customers from excessive termination fees, "bait-and-switch" contract changes and deceptive renewal practices; (4) allowing broader enforcement; and (5) providing clear, plain-language notices of an ESCO consumer's rights. The bill requires the PSC and LIPA to adopt regulations including the following mandatory consumer protections:

>requiring ESCO marketing reps to identify themselves as such and explain that they don't represent a utility;

>ensuring that any prepayments are at the customer's discretion and providing an adequate time period for the customer to assess the ESCO's performance before locking in a prepayment option;

>limiting cancellation fees to $100 ($200 for a multi-year contract) or an amount twice the initial estimated average monthly bill;

>all variable charges must be clearly and conspicuously identified;

>no contract terms could be changed without the consumer's affirmative consent, and any automatic renewals would have to follow strict guidelines to protect customers; and

> a short, plain language "ESCO consumer bill of rights (to be developed by the PSC, LIPA, CPB and Attorney General) will be given to prospective customers in writing or repeated in telephone sales pitches.

These safeguards would apply to "door-to-door sales" to small businesses as well as residential customers. The Attorney General could prosecute violations of marketing standards including those referred by the PSC, LIPA or CPB, or consumers could enforce the standards themselves through third-party actions.

These provisions will go a long way toward restoring an orderly marketplace where consumers can make informed decisions on their choices for gas and electric service with the confidence that state government will prevent fraudulent practices and ensure a level playing field.

PRIOR LEGISLATIVE HISTORY:  A.10180-B (2008) - passed Assembly, referred to Senate Rules Committee.

FISCAL IMPLICATIONS FOR STATE AND LOCAL GOVERNMENTS:  Minimal.

EFFECTIVE DATE:  150th day after becoming law and applicable to all energy services sold or offered for sale on or after such date; provided, however, that the PSC and LIPA are immediately authorized and directed to take any and all actions, including but not limited to the promulgation of any necessary rules, necessary to fully implement the provisions of this bill on such date.

*Go to top*