# Exhibit 33

**BEFORE
THE PUBLIC UTILITIES COMMISSION OF OHIO**

| | ) | |
|---|---|---|
| In the Matter of Eligo Energy OH, LLC | ) | Case No. 25-0989-GE-UNC |
| | ) | |

**JOINT STIPULATION AND RECOMMENDATION**

**I.     Introduction**

Ohio Administrative Code (Adm.Code) 4901:1-23-04(A) and 4901:1:34-05(A) provide that if the Staff of the Public Utilities Commission of Ohio (Staff) and a competitive retail electric service (CRES) provider or a competitive retail natural gas supplier (CRNG) reach an agreement concerning an alleged violation of certain rules and statutes, a proposed corrective action, or the amount of a forfeiture or other payment, the agreement must be reduced to writing.  This Joint Stipulation and Recommendation (Stipulation) sets forth the understanding and agreement of Eligo Energy OH, LLC (Eligo), Staff, and the Office of the Ohio Consumers' Counsel (OCC), each of whom is a "Signatory Party" to the agreement and together constitute the "Signatory Parties."  The Signatory Parties recommend that the Public Utilities Commission of Ohio (Commission) approve and adopt this Stipulation, which sufficiently resolves the issues identified by the Staff in its Notice of Probable Noncompliance dated March 6, 2025 (PNC), attached as Exhibit A.

When considering proposed stipulations, the Commission reviews whether the agreement is reasonable and should be adopted.[1] This Stipulation is a mutually beneficial resolution of the

---

[1] *See, e.g. In re the Commission's Consideration of a Settlement Agreement Between Ambit Northeast LLC and the Commission's Staff,* Case No. 22-128-EL-UNC, Finding and Order at ¶ 7 (May 18, 2022); *In re the Commission's Consideration of a Settlement Agreement Between ENGIE Retail, LLC d/b/a Think Energy and the Commission's Staff,* Case No. 18-938-GE-UNC, Finding and Order at ¶ 6 (July 11, 2018).

PNC supported by adequate data and information, which seeks to avoid, to the extent possible, the potential for future violations. As part of the Stipulation, Eligo agrees to take numerous steps that address Staff's concerns and are intended to support Eligo in its response in the event any future issues occur. All these measures benefit the public interest and Ohio consumers. This Stipulation complies with and promotes the policies and requirements of Title 49 of the Ohio Revised Code and is a just and reasonable resolution of the alleged violations identified in the PNC.

**II.    History**

    A.    Eligo provides competitive retail electric service (CRES), as that term is defined in R.C. 4928.01, and is subject to the jurisdiction of this Commission pursuant to R.C. 4928.16.

    B.    Eligo provides competitive retail natural gas service (CRNGS), as that term is defined in R.C. 4929.01, and is subject to the jurisdiction of this Commission pursuant to R.C. 4929.24.

    C.    On March 6, 2025, Staff issued the PNC to Eligo, outlining alleged violations of the Adm.Code by Eligo. (Exhibit A).

    D.    Eligo, Staff, and OCC engaged in numerous discussions to address the allegations raised in Staff's PNC, and how Eligo had already implemented or was in the process of implementing all of the corrective actions agreed to in this Stipulation, which the Signatory Parties believe sufficiently resolves the concerns raised in the PNC.

    E.    The Signatory Parties agreed to the terms of this Stipulation in principle on September 25, 2025.

**III.    Recitals**

    A.    WHEREAS, the concerns raised in the PNC have been addressed in the substantive provisions of this Stipulation, and reflect, as a result of such discussions and compromises by the Signatory Parties, an overall reasonable resolution of all such issues;

2

B. WHEREAS, Eligo has fully cooperated with this proceeding and Staff's inquiry into the alleged violations identified in the PNC;

C. WHEREAS, this Stipulation is the product of the discussions and negotiations of the Signatory Parties and is not intended to reflect the views or proposals that any individual party may have advanced acting unilaterally;

D. WHEREAS, the Signatory Parties believe that the agreements herein represent a fair and reasonable resolution of the issues raised in this matter;

E. NOW, THEREFORE, the Signatory Parties stipulate, agree and recommend that the Commission make the following findings and issue its Opinion and Order in this proceeding approving and adopting this Stipulation in accordance with the following:

## IV. Joint Recommendation of Signatory Parties

In consideration of the terms and mutual promises set forth herein, the Signatory Parties hereby agree that Eligo will adhere to the following corrective actions:

A. Eligo agrees to continue its suspension of all residential outbound telemarketing and telephonic enrollments in Ohio for a period of thirty (30) months from when it ceased new enrollments in response to the notification from Staff, which was March 26, 2024.

   1) Eligo agrees to provide its telemarketing enrollment process and documents for the Ohio market to Staff and OCC for comment;

   2) Prior to resuming telemarketing and telephonic enrollments in Ohio, Eligo agrees to notify Staff of its intent to resume marketing, and what vendors/contractors Eligo will be using; and

   3) Eligo agrees to provide Staff and OCC sales scripts that will be used by Eligo's sale representatives and third-party sales representatives.

B. Upon approval of the Stipulation, Eligo agrees to coordinate with Staff and OCC

to draft and finalize a customer notification that will be distributed to customers. Eligo agrees to provide notice to residential consumers that were enrolled with Eligo through outbound telemarketing from May 1, 2023 to March 26, 2024, have not already been re-rated, and whose potential re-rate amounts are more than zero.

C. Upon approval of the Stipulation, Eligo agrees to coordinate with Staff and OCC to draft and finalize a customer notification that will be distributed to customers. Eligo agrees to provide notice to residential consumers that are included in the agreed-upon and identified subset of 80 consumers who contacted the Commission, Eligo, or any other entity disputing their enrollment with Eligo; have not already been re-rated; and whose potential re-rate amounts are more than zero.

D. Customers who are notified under Section IV.B. and IV.C. and are currently enrolled with Eligo will be given the option of staying with Eligo, canceling service with Eligo without penalty (no early termination fee (ETF)), and will be informed that they can either return to the Utility Standard Service Offer or choose another competitive supplier plan.

E. Any past residential customers who enrolled telephonically with Eligo from May 1, 2023 to March 26, 2024, cancelled or ended service with Eligo, and were charged an ETF, will be credited the ETF charged.

F. Eligo agrees to re-rate$^2$ customers who are notified under Section IV.B. and IV.C. above if they contact Eligo disputing their enrollment with Eligo within one year of receiving Eligo's notice. Eligo will re-rate these customers within thirty days (30) of the customer's contact to Eligo disputing their enrollment.

G. Eligo agrees to provide Staff and OCC, within 30 days after the re-rate window

---

[2] For purposes of this Stipulation, "re-rate" means Eligo will calculate the difference between the rate it charged the customer, including any fees, and the rate the customer would have paid to the applicable utility under the utility's standard service offer or default rate, and refund the difference to the customer if the amount is more than zero.

in Section IV(F) above, with a comprehensive list that includes the following:

      i. Final count of all customers who received the notice,

     ii. Final count of all customers who responded to the notice;

    iii. The results of the required actions (e.g. whether customers stayed with Eligo or chose to cancel);

    iv. Final count of all ETF refunds issued, and in what dollar amounts, and,

     v. Final count of all re-rates issued to customers, and in what dollar amounts.

H. Eligo has developed and implemented a program for auditing all third-party telemarketing companies that Eligo uses. Eligo agrees to provide all information and documentation on its auditing program to Staff and OCC.

I. Eligo agrees to amend its Ohio contract terms and conditions, enrollment documents, marketing materials, and telemarketing sales scripts to reflect that it does not charge ETFs to residential customers. Eligo agrees to provide Staff and OCC with these materials.

J. Eligo agrees to notify Staff and OCC of all companies retained by Eligo for third-party telemarketing purposes and will update Staff and OCC anytime Eligo changes its third-party telemarketing vendors for five years after the Company resumes telemarketing.

K. Eligo agrees to correct the issues identified in the PNC to ensure compliance. Within six months after the Commission approval of this Stipulation, Eligo will publicly file with the Commission a verified statement describing the measures it undertook to rectify the issues identified in the PNC.

L. In consideration of OCC's agreement with this Stipulation, Eligo agrees to make a one-time donation of $300,000.00 to the Dollar Energy Fund. To fund grants to be used for bill payment assistance programs for Ohio consumers, within ten (10) business days of a Commission Order approving this Stipulation. Eligo and OCC will make the details of the

5

assistance funding publicly available so the information may be shared with utility customers in need of assistance.

  M. Eligo agrees to pay a civil forfeiture of $14,600.00 to the State of Ohio. Payment should be made within 30 days of a Commission order approving this Stipulation by certified check or money order to the "Public Utilities Commission of Ohio," and mailed to:

> Public Utilities Commission of Ohio
> Attn: Fiscal Section
> 180 E. Broad Street, 4th Floor
> Columbus, Ohio 43215-3793

The check must note the docket number assigned to this matter. All forfeiture amounts collected will be credited to the general revenue fund.

**V. Procedural Matters**

  A. Except for purposes of enforcement of the terms of this Stipulation, neither this Stipulation, nor the information and data contained therein or attached, shall be cited as precedent in any future proceeding for or against any Signatory Party or the Commission itself.

  B. This Stipulation is to be used for settlement purposes only and is not intended for use by any third party in any other proceeding and is not intended, and should not be construed, as an admission of guilt of noncompliance or violation of law or the Commission's rules, and cannot be used against Eligo in the future as such. No action taken by the Signatory Parties in connection with this Stipulation shall be deemed or construed to be an admission of the truth or falsity of any fact, allegation, or legal conclusion asserted by Staff in PNC Letter, or otherwise in this proceeding with regard to Ohio Consumers. The Signatory Parties further agree that by entering into this Stipulation, neither the Stipulation nor any payment of money or other actions taken pursuant to this agreement shall constitute or be deemed an admission of liability or guilt on the part of any Signatory Party.

C. This Stipulation is a reasonable compromise involving a balancing of competing positions and it does not necessarily reflect the position that one or more of the Signatory Parties would have taken if these issues had been fully litigated.

D. This Stipulation is expressly conditioned upon its adoption by the Commission in its entirety and without material modification. Should the Commission reject or materially modify all or any part of this Stipulation, the Signatory Parties shall have the right, within thirty days (30) of issuance of the Commission's Order, to file an application for rehearing. Should the Commission, in issuing an entry on rehearing, not adopt the Stipulation in its entirety and without material modification, any Signatory Party may withdraw from the Stipulation. Such withdrawal shall be accomplished by filing a notice with the Commission, including service to all Signatory Parties, in the docket within thirty days (30) of the Commission's entry on rehearing.

Prior to the filing of such a notice, the Signatory Party wishing to withdraw agrees to work in good faith with the other Signatory Parties to achieve an outcome that substantially satisfies the intent of the Stipulation and, if a new agreement is reached that includes the Signatory Party wishing to withdraw, then the new agreement shall be filed for Commission review and approval. If the discussions to achieve an outcome that substantially satisfies the intent of the Stipulation are unsuccessful in reaching a new agreement that includes all Signatory Parties to the present Stipulation, and a Signatory Party files notice to withdraw from the Stipulation, then the Commission will convene an evidentiary hearing such that the withdrawing Signatory Party will be afforded the opportunity to contest the Stipulation by presenting evidence through witnesses and cross-examination, presenting rebuttal testimony, and briefing all issues that the Commission shall decide based upon the record and briefs.

E. The Signatory Parties will support the Stipulation, if the Stipulation is contested, and no Signatory Party will oppose an application for rehearing designed to defend the terms of this

Stipulation. If the Stipulation is adopted by the Commission, the Signatory Parties will support the Stipulation in any appeal of the decision.

**VI.    Conclusion**

The undersigned Signatory Parties hereby stipulate and agree and each represents that he or she is authorized to enter into this Stipulation on this 20th day of October, 2025.

| | |
|---|---|
| On behalf of the Staff of the Public Utilities Commission of Ohio: | On behalf of Eligo Energy OH, LLC: |
| _/s/ Janet Gregory_____<br>**Janet Gregory**<br>Assistant Attorneys General<br>Public Utilities Section<br>30 East Broad Street, 16th Floor<br>Columbus, Ohio 43215<br>(614) 644-8768<br>Janet.Gregory@OhioAGO.gov<br><br>*Counsel for Staff of the Commission* | _/s/Kimberly W. Bojko_____<br>**Kimberly W. Bojko**<br>Carpenter Lipps LLP<br>280 Plaza, Suite 1300<br>280 North High Street<br>Columbus, Ohio 43215<br>(614) 365-4100<br>bojko@carpenterlipps.com<br><br>*Counsel for Eligo Energy OH, LLC* |

_/s/ Thomas Brodbeck_____
**Thomas Brodbeck**
Office of the Ohio Consumers' Counsel
65 E. State St., Suite 700
Columbus, Ohio 43215
(614) 466-9565
thomas.brodbeck@occ.ohio.gov

*Counsel for Ohio Consumers' Counsel*



**Public Utilities Commission**

Mike DeWine, Governor



PUCO.Ohio.gov

Jenifer French, Chair

March 6, 2025

Mr. Andy LaPointe
Eligo Energy OH LLC
201 W. Lake St. Suite 151
Chicago, Illinois 60606

Dear Mr. LaPointe:

Pursuant to Ohio Administrative Code ("Adm.Code") 4901:1-23-02 and 4901:1-34-03, this letter is a notice of probable non-compliance to Eligo Energy OH LLC ("Eligo" or the "Company"). Based on our investigation of consumer complaints, Staff of the Public Utilities Commission of Ohio ("Staff") finds that Eligo is in probable non-compliance with certain sections of the Ohio Administrative Code.

On May 12, 2023, a Staff member received a solicitation telephone call from Eligo. The Staff member recorded that call for a personal record of the call. Although the Staff member felt like the call was misleading, the Staff member enrolled in the service to investigate Eligo's marketing practices. The Staff member then filed a complaint with the Commission in order to investigate the misleading call (PUCO Case No. 00813049). The PUCO call center investigated this issue, and it was determined that the information and recordings provided by the Company were not the same as the original call recorded by the Staff member. The sales agent's voice in the Staff member's recording of the call and the sales agent's voice in the call provided from the Company are clearly different voices. This raised serious concerns about the authenticity of information Eligo was providing to Staff in response to call center investigations. As a result, Staff began an investigation into the marketing and enrollment practices of Eligo. Staff reviewed PUCO call center contacts from May 2023 through April 2024, identifying additional suspected altered calls and Adm.Code violations.

The continued investigation resulted in additional suspected altered call recordings (E.g., PUCO Case Nos. 00812687) and numerous issues with Eligo's sales calls and enrollments. In one case, Eligo marketed to a 94-year-old consumer at least three different times. The elderly consumer required her son's help to intervene and stop future attempts of Eligo to enroll the account (PUCO Case No. 00832098.) Staff also identified issues with misleading solicitations and enrollment actions by an Eligo agent named Rene Parks in several calls over multiple months (E.g., PUCO Case Nos. 832098, 828707, 828927, and 832098). Eligo also failed to provide

---

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services



**Public Utilities Commission**

Mike DeWine, Governor

PUCO.Ohio.gov

Jenifer French, Chair

complete and accurate records to Staff in response to Staff's investigations (E.g., PUCO Case No. 813049).

On March 26, 2024, Staff requested additional information from Eligo, including documentation of enrollment practices and additional sales call recordings.  Staff reviewed the additional information Eligo provided and identified additional concerns.  Due to the egregious nature of suspected violations, Staff also requested that Eligo cease marketing and enrolling customers in Ohio.  Eligo's response to Staff included a list of third-party vendors, clarification on marketing activities, how the contact lists were obtained by the third-party vendors, lists of enrolled customers, and audio recordings associated with the enrollments. Eligo provided Staff with a steady grouping of calls in batches through July 24, 2024.

Additional instances of misleading and deceptive behavior identified in Staff's investigation include, but are not limited to:

- During sales calls, Eligo sales agents implied to consumers that they were with the local utility company or some other entity. (*E.g.,* 821326, 823491, Petty, Singletary).
- During sales calls, Eligo agents made misleading statements about customer choice, savings, and information on the current customer bill that the agent does not have access to review and comment on. (*E.g.,* Rittenhouse, Cosby, Brown, Salabak, Knowlton-Stanford, Criss, and Vrtis).
- Eligo sales agents misled consumers in government aggregation programs. (*E.g.,* Wilt and Vandyke).
- Eligo sales agents failed to disclose the early termination fee ("ETF") in the sales call (E.g., PUCO Case Nos. 829335, 849625, and 833517)
- Eligo sales agents referenced an initial call to the consumer or referenced previous contact with the consumer with a vague and misleading reference to a notice or information on their energy bill. These initial calls were not provided to Staff. (E.g., PUCO Case Nos. 813049, 823074, and 829335).
- Eligo sales agents provided unclear short-term rate explanations to consumers. (E.g., Farren, PUCO Case Nos. 833517, 814031, and 833097).
- Eligo sales agents spoke on behalf of the consumer during third-party verification calls, including providing the consumer's utility account number instead of the consumer stating the information themselves, as required by Adm.Code. (E.g., PUCO Case Nos. 823074, 839325, and Carlson).

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services

**Public Utilities Commission**

Mike DeWine, Governor

PUCO.Ohio.gov

Jenifer French, Chair

**Probable Non-Compliance Violations**

1. Adm.Code 4901:1-21-03(A) "Competitive retail electric service (CRES) providers shall not engage in unfair, misleading, deceptive, or unconscionable acts or practices related to, without limitation, the following activities: (1) Marketing, solicitation, or sale of a CRES. (2) Administration of contracts for CRES. (3) Provision of CRES, including interactions with consumers."

2. Adm.Code 4901:1-29-03(A) "A retail natural gas supplier or governmental aggregator shall not engage in unfair, misleading, deceptive, or unconscionable acts or practices related to, without limitation, the following activities: (1) Marketing, solicitation, or sale of a competitive retail natural gas service. (2) Administration of contracts for such service. (3) Provision of such service, including interactions with consumers."

3. Adm.Code 4901:1-21-04(A) "Each competitive retail electric service provider shall establish and maintain records and data sufficient to: (1) Verify its compliance with the requirements of any applicable commission rules. (2) Support any investigation of customer complaints."

4. Adm.Code 4901:1-29-04(A) "Each retail natural gas supplier and each governmental aggregator shall establish and maintain records and data sufficient to: (1) Verify its compliance with the requirements of any applicable commission rules. (2) Support any investigation of customer complaints."

5. Adm.Code 4901:1-21-04(C) "Unless otherwise prescribed by the commission or its authorized representatives, all such records shall be provided to the staff within three business days of its request."

6. Adm.Code 4901:1-29-04(C) "Unless otherwise prescribed by the commission or its authorized representatives, all records required by this chapter shall be provided to the staff within three business days of its request."

7. Adm.Code 4901:1-21-05(A)(3) "Each competitive retail electric service (CRES) provider that offers retail electric generation service to residential or small commercial customers shall provide, in marketing materials that include or accompany a service contract, sufficient information for customers to make intelligent cost comparisons against offers

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services



**Public Utilities Commission**

Mike DeWine, Governor

PUCO.Ohio.gov

Jenifer French, Chair

they receive from other CRES providers. Offers shall at a minimum include: (3) For variable rate offers, a clear and understandable explanation of the factors that will cause the price to vary, including any related indices, and how often the price can change."

8. Adm.Code 4901:1-29-05(A)(2)(a) "Each retail natural gas supplier and governmental aggregator that offers competitive retail natural gas service to customers shall provide, in marketing materials that include or accompany a service contract, sufficient information for customers to make informed cost comparisons. (2) For variable-rate offers, such information shall, at minimum, include: (a) A clear and understandable explanation of the factors that will cause the price to vary (including any related indices) and how often the price can change."

9. Adm.Code 4901:1-21-05(A)(5) "Offers shall at a minimum include: (5) The amount of any other recurring or nonrecurring CRES provider charges."

10. Adm.Code 4901:1-29-05(A)(2)(b) "For variable-rate offers, such information shall, at minimum, include: (b) The amount of any other recurring or retail natural gas supplier . . . charges."

11. Adm.Code 4901:1-21-05(B) "No CRES provider may engage in marketing, solicitation, or sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a CRES."

12. Adm.Code 4901:1-29-05(D) "No retail natural gas supplier or governmental aggregator may engage in marketing, solicitation, sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a competitive retail natural gas service."

13. Adm.Code 4901:1-21-05(B)(8)(a) "No CRES provider may engage in marketing, solicitation, or sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a CRES. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (8) Advertising or marketing offers that: (a) Claim that a specific price advantage, savings, or guarantee exists if it does not."

14. Adm.Code 4901:1-29-05(D)(8)(a) "No retail natural gas supplier or governmental aggregator may engage in marketing, solicitation, sales acts, or practices which are

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services



unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a competitive retail natural gas service. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (8) Advertising or marketing offers that: (a) Claim that a specific price advantage, savings, or guarantee exists if it does not."

15. Adm.Code 4901:1-29-05(D)(2) "No retail natural gas supplier or governmental aggregator may engage in marketing, solicitation, sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a competitive retail natural gas service. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (2) Failing to comply with paragraph (A) of this rule when soliciting a sale of competitive retail natural gas service and failing to disclose all terms, conditions, and limitations, including but not limited to contract length, prices, fees and termination fees, or penalties, and any discretionary charges."

16. Adm.Code 4901:1-21-05(B)(8)(f) "No CRES provider may engage in marketing, solicitation, or sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a CRES. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (8) Advertising or marketing offers that: (f) Offer a variable price for competitive retail electric service that is not based on verifiable factors."

17. Adm.Code 4901:1-29-05(D)(8)(d) "No retail natural gas supplier or governmental aggregator may engage in marketing, solicitation, sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a competitive retail natural gas service. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (8) Advertising or marketing offers that: (d) Offer a variable price per Ccf or Mcf, whichever is consistent with the incumbent natural gas company's billing format, for competitive retail natural gas service without disclosing all recurring and nonrecurring charges."

18. Adm.Code 4901:1-21-05(B)(8)(h) "No CRES provider may engage in marketing, solicitation, or sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a CRES. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (8) Advertising or marketing offers that: (h) Lead the customer to believe that

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services



Mike DeWine, Governor    Jenifer French, Chair    PUCO.Ohio.gov

the CRES provider is soliciting on behalf of or is an agent of an Ohio electric utility when no such relationship exists."

19. Adm.Code 4901:1-29-05(D)(5) "No retail natural gas supplier or governmental aggregator may engage in marketing, solicitation, sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a competitive retail natural gas service. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (5) Engaging in any solicitation that leads the customer to believe that the retail natural gas supplier or governmental aggregator or its agent is soliciting on behalf of or is an agent of any entity other than the competitive retail natural gas supplier or governmental aggregator."

20. Adm.Code 4901:1-21-05(B)(10) "No CRES provider may engage in marketing, solicitation, or sales acts, or practices which are unfair, misleading, deceptive, or unconscionable in the marketing, solicitation, or sale of a CRES. Such unfair, misleading, deceptive, or unconscionable acts or practices include, but are not limited to, the following: (10) Engaging in any solicitation that will lead the customer to believe that the CRES provider is soliciting on behalf of or is an agent of any entity other than the CRES provider."

21. Adm.Code 4901:1-21-06(D)(2)(a)(x) "Residential and small commercial enrollment. (2) Telephonic enrollment. (a) To enroll a residential or small commercial customer telephonically, a CRES provider shall make a date and time stamped audio recording verifying before the completion of the telephone call, at a minimum, all of the following: (x) If applicable, a verbal request for and the customer's provision of the customer's electric utility account number."

22. Adm.Code 4901:1-29-06(E)(1)(j) "Telephonic enrollment (1) To enroll a customer telephonically, a retail natural gas supplier or governmental aggregator, shall make a date- and time-stamped audio recording of the sales portion of the call, if the customer is enrolled, and before the completion of the enrollment process, a date- and time-stamped audio recording by an independent third-party verifier that verifies, at a minimum, the following: (j) A verbal request for and the customer's provision of the customer's natural gas company's account number."

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services



Mike DeWine, Governor    Jenifer French, Chair    PUCO.Ohio.gov

**Proposed Corrective Actions**

Due to the egregious nature of the violations discussed above, Staff proposes that Eligo take the following corrective actions to address these issues of probable non-compliance:

1. Continue Eligo's current suspension of all telemarketing in Ohio.
2. Notify all current and past customers of Eligo enrolled telephonically from May 1, 2023 to March 6, 2025, that there may have been issues with their enrollment with Eligo and they can contact the company to review.
    a. Customers who are currently enrolled with the Company will be given the option of canceling service with Eligo without penalty (no ETF) and be informed that they can either return to the Utility Company or choose another competitive supplier plan.
    b. Any past customers who enrolled telephonically with Eligo from May 1, 2023 to March 6, 2025, cancelled or ended service with Eligo, and were charged an ETF will be credited the amount charged.
    c. Eligo will rerate customer accounts where appropriate.
    d. Eligo will provide Staff with a comprehensive list that includes the following:
        i. All customers who will receive the notice;
        ii. All customers who responded to the notice;
        iii. The results of the required actions;
        iv. All ETF refunds issued, and to which customer; and
        v. All rerates issued, and to which customer.

3. Current and previous customers who reached out to the PUCO Call Center, Eligo, or any other entity (ex. Better Business Bureau and local utility) from May 1, 2023 to March 6, 2025 disputing their enrollment with Eligo will receive restitution from Eligo in the form of a rerate back to the utilities' price-to-compare (PTC).

4. Eligo will develop and implement a program for auditing all third-party telemarketing companies Eligo uses before Eligo resumes telemarketing in Ohio.

5. Eligo will notify Staff of all companies retained by Eligo for third-party telemarketing purposes and will update Staff anytime Eligo changes its third-party telemarketing vendors for five years after the Company resumes telemarketing.

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services



**Public Utilities Commission**

Mike DeWine, Governor

PUCO.Ohio.gov

Jenifer French, Chair

6. Eligo will not conduct outbound telemarketing sales to and enrollments of both new and existing customers for two years after the resolution of this notice of probable non-compliance.

7. Prior to restarting outbound telemarketing, Eligo shall advise staff that it has corrected all issues identified in the PNC to ensure compliance.

In accordance with R.C. 4905.54, Adm.Code 4901:1-21-15(A) (1), and Adm.Code 4901:1-34-08(A), Staff will view any continuation in Eligo's retail marketing and enrollments that result in violations to constitute additional offenses. Additional offenses may result in additional enforcement actions, including forfeitures to the state of up to ten thousand dollars ($10,000) per offense.

**Proposed Forfeiture**

Finally, after assessing many factors including harm to Ohioans, the number and nature of the violations, any history of noncompliance, and whether the Company was cooperative with Staff during Staff's investigation, Staff is proposing a forfeiture of $314,600 against Eligo for the above-mentioned probable non-compliance violations.

By March 21, 2025, please respond to this notice of probable non-compliance.   In the meantime, please contact me if you have any questions.

Sincerely,

Alla Magaziner-Tempesta,
Service Monitoring and Enforcement
Utility Specialist

**Commissioners**

Daniel R. Conway
Dennis P. Deters
Lawrence K. Friedeman
John D. Williams

180 E Broad Street
Columbus, OH 43215 U.S.A.

800 | 686 7826
puco.ohio.gov

The State of Ohio is an Equal Opportunity Employer and Provider of ADA Services

**This foregoing document was electronically filed with the Public Utilities Commission of Ohio Docketing Information System on**

**10/20/2025 1:51:57 PM**

**in**

**Case No(s). 25-0989-GE-UNC**

Summary: Stipulation JOINT STIPULATION AND RECOMMENDATION electronically filed by Mrs. Kimberly W. Bojko on behalf of Eligo Energy OH, LLC.