

Ryan Watstein<br>
Ryan@wtlaw.com<br>
404-782-0695

February 9, 2026

**VIA ECF**
Hon. Edgardo Ramos
U.S. District Court for the Southern District of New York
40 Foley Square
Courtroom 619
New York, NY 10007

      Re:    *Brous v. Eligo Energy, LLC*, 24 Civ. 1260 – Eligo's Response to Plaintiffs' Repeated Privilege Log Letter-Motion (ECF 330)

Dear Judge Ramos:

The last time this Court addressed Plaintiffs' challenges to Eligo's privilege log, it directed the parties to continue their conferral efforts, but to be reasonable in doing so, focusing on issues "that are important and relevant and cogent to the case. Distill whatever disputes continue for the Court, and come back to me with those issues." Oct. 24 Tr. at 30–31. Plaintiffs' renewed letter motion concerning Eligo's privilege log all but confirms that they have disregarded the Court's directions. Instead of focusing on "important" or "cogent" issues, Plaintiffs' letter is addressed solely to trifling details about documents that plainly have no relevance to this case. For example, they ask the Court to conduct a page-by-page, in camera review of documents Eligo has determined to be so far afield that they aren't even responsive to Plaintiffs' discovery requests. Plaintiffs further renew their request (which the Court previously denied) to deem the attorney-client privilege waived as to roughly 200 documents, without even attempting to show they are important or cogent. The same is true as to Asana "project management" documents, which Plaintiffs now raise for the first time, without any suggestion that they could possibly move the needle in this case, especially after discovery has closed.

To be clear, Eligo did its best to avoid yet another discovery hearing concerning its privilege log. Eligo complied fully with the Court's orders at the last hearing, including by producing a supplemental privilege log with family relationships identified and additional information regarding Slack chats. Eligo further reviewed the 20 "third-party" documents on Plaintiffs' "Exhibit B," met and conferred with Plaintiffs, addressing each document one-by-one, and revised its privilege log and production accordingly. So, having resolved the issues the Court addressed at the last hearing, Plaintiffs are now left to scrape the bottom of the barrel by quarreling over obviously irrelevant documents. Since that is the antithesis of what the Court directed the parties to do, it should now deny Plaintiffs' letter motion outright and finally put an end to a months-long series of Plaintiffs' mushrooming objections to Eligo's privilege log.

---

| Atlanta | Los Angeles | Miami |
|---|---|---|
| 75 14th Street NE, Ste. 2600 | 515 S. Flower Street, 19th Floor | 218 NW 24th Street, 3rd Floor |
| Atlanta, GA 30309 | Los Angeles, CA 90071 | Miami, FL 33127 |

 www.wtlaw.com      Ryan@wtlaw.com      404-782-0695

<u>*The Court Should Decline to Conduct an In-Camera Review of Non-Responsive Documents.*</u>

Far from focusing on "important" or "cogent" documents, Plaintiffs ask the Court to conduct a page-by-page review of documents Eligo removed from its privilege log because they were not responsive to Plaintiffs' discovery requests and categorically irrelevant to this case. Eligo removed those documents after re-reviewing them as part of the extensive meet-and-confer process described above. Plaintiffs have no basis to dispute Eligo's determinations that the documents are not responsive and irrelevant. All they offer is the mere *presumption* that because the documents were included on Eligo's initial privilege log, Eligo's reclassification of them must be for some improper purpose. *See* Plaintiffs' Letter Motion at 3.

Contrary to Plaintiffs' speculation, however, there is nothing unusual or suspicious about revising a very small number of document classifications upon a more detailed re-review. Here, Defendants have reviewed more than 200,000 documents and produced over 30,000. Against those totals, Plaintiffs take issue with Eligo's redesignation of just 636 documents, which barely qualifies as a rounding error in the context of Eligo's review database.[1] As such, there is no support for Plaintiffs' bald accusation that Eligo redesignated these documents as some sort of "tactic," as opposed to an honest correction of responsiveness calls made by junior-level, first-line reviewers.

In any event, Plaintiffs don't even *attempt* to show that any of these non-responsive documents are "important" or "cogent" to any issue in this case. That is so despite Plaintiffs being in possession of considerable information about each of them. Many of the documents were never withheld at all; they were produced with limited redactions, which makes their lack of relevance apparent on their face. For example, DEF090023 is a 2017 Slack chat exchange about the cartoon sitcom The Simpsons. Even where documents were withheld, the subject matter is often clear from the surrounding context and/or metadata as set forth on prior iterations of the privilege log. For example, Eligo downgraded well over 100 communications between Eligo's counsel and Trusted TPV staff regarding draft TPV scripts – that is, scripts for calls made to prospective customers. But Plaintiffs have argued elsewhere that the content of such calls is wholly irrelevant to this case, to say nothing of *draft* scripts that do not necessarily reflect what Eligo actually said to prospective customers. Eligo never agreed to produce such communications and even if they were responsive, they would be privileged.

Ultimately, Eligo in its discovery responses agreed to produce only "documents sufficient to identify how variable rates were calculated in the relevant time period" in New York. Eligo's production of 30,000+ documents did that and more. Plaintiffs don't argue otherwise or point to any specific document that they need – nor could they, given the fact that they have now produced multiple expert reports and moved for class certification. There is simply no reason for the Court to now review dozens of non-responsive documents to confirm they are neither "important" nor "cogent" to this case.

---

[1] Defendants notified Plaintiffs of these non-responsive designations more than six months ago. If Plaintiffs believed this approach was improper, they should have raised the issue months ago—when any dispute could have been addressed in the ordinary course—not now, after discovery has closed, as a last-minute attempt to reopen and relitigate settled issues.

*The Court Should Not Order the Mass Waiver of Third-Party Documents.*

Plaintiffs' request for the Court to deem the attorney-client privilege waived as to all documents involving "third parties" likewise fails to focus on any relevant information and misstates the parties' conferral efforts. During the first meet and confer, Eligo took Plaintiffs through each of those 20 documents and explained whether Eligo intended to 1) remove the privilege assertion and produce the document, 2) stand by its privilege assertion, or 3) designate the document as non-responsive. During that call, Eligo explained the identity of these third parties, even though much of this information was either publicly available, available through other documents, or could have been asked about in depositions. Eligo then revised its privilege log and production in line with the information it disclosed to Plaintiffs.

Plaintiffs' response was to expand their list beyond the 20 documents they initially asked about, to include an additional 50 documents that had been merely footnoted in Exhibit B to their initial letter motion, even though Plaintiffs had not previously argued they needed these footnoted documents. Plaintiffs offered no explanation for this last-minute expansion, nor do they cite any basis for their demand that Eligo research and disclose the identity of every third party mentioned on that list. Here again, Plaintiffs took more than 10 depositions and could have asked about any of those third parties. That they did not only confirms the third parties and their associated documents are irrelevant. Yet Plaintiffs now ask the Court to deem this mass of documents waived, not because they can show that the "third parties" break privilege but merely because Eligo declined to expand the scope of Plaintiffs' inquiry, especially as to documents for which Plaintiffs refused to say why these documents were important or relevant to this case. The Court should therefore deny Plaintiffs' request to order mass waiver of these documents or further meet and confers.

*The Court Should Not Order Eligo to Produce New Metadata for Asana Project Management Documents.*

The Court should deny this request because it misrepresents the Court's Order and seeks irrelevant information. The Court ordered Eligo to revise its privilege log to include "the names of the participants," the start and end dates, and the "general subject matter" for each "chat" entry. Oct. 24 Tr. at 23:20–23. Defendants have done just that, as is clear from the latest privilege log that Plaintiffs chose not to attach.

Instead of narrowing the scope of privilege issues, Plaintiffs ask the Court to now broaden the scope and order Defendants to produce the same participant and start/end date for Asana "project management" documents. Plaintiffs do not explain how such information is "important and relevant and cogent." Indeed, Defendants provided such information concerning chats on the privilege log, and Plaintiffs have done nothing with it. Plaintiffs' suggestion that the Court previously ordered Eligo to provide this project management metadata is untrue, and they cite no section of the transcript because they cannot.

Exhibit 2 (DEF046010) to Plaintiffs' latest motion vividly illustrates how divorced Plaintiffs' request is from any kind of practical application. Plaintiffs ask the Court to order Defendants to log the participants and dates for Exhibit 2 along with every other Asana document on the privilege log. **But the information that Plaintiffs are asking for is already available from the face of Exhibit 2** because this document has been redacted (not withheld) for privilege. Moreover, anyone can see that the document is about **rate caps for commercial customers in Maryland** and is not remotely relevant to New York residential customers. This facially irrelevant and unimportant document shows Plaintiffs' indifference to the importance or relevance of the information they seek and conclusively shows why Plaintiffs' request should be denied.

3

Respectfully,

*/s/ Ryan Watstein*
Ryan Watstein