UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE BROUS, AS THE EXECUTOR OF THE ESTATE OF IRA BROUS and MICHELLE SCHUSTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELIGO ENERGY, LLC and ELIGO ENERGY NY, LLC,<br><br>Defendants. | Case No. 1:24-CV-01260-ER<br><br>DECLARATION OF DR. DEBRA ARON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE DR. ARON |

I, Dr. Debra Aron, per 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct.

1. I have been retained by Eligo Energy LLC to serve as an expert witness in this case. I have prepared a report that, along with its exhibits and appendices, fully describes my background and qualifications, along with the opinions I intend to express in this case, if called to testify.

2. As set forth in my report, I have expressed certain opinions about how, according to my expertise and training, and according to the scholarly economics literature and my experience as a professional economist, certain terms used in Eligo's enrollment materials and customer contract are understood from an economic perspective. These terms include "pricing strategies," which was used in the TPV enrollment call through which Plaintiffs Schuster and Brous enrolled in Eligo's services. The terms also include those used in Eligo's written customer contract, such as "market pricing," "other market price factors," and "market conditions." As I explain in my report, all of those terms, from the perspective of economics, refer to market-based

1

considerations that are taken into account by rational sellers when setting prices in competitive markets. Such considerations include consumer demand, supply, competitors' prices, profit maximization, and the extent to which price changes would lead to customer loss and attrition.[1]

3. I express no opinion on the legal interpretation of Eligo's customer contract, or the nature or scope of that contract. I particularly have no opinion as to whether Eligo's TPV enrollment script is part of Eligo's contract with its customers. As I note in my report, I understand the parties have a dispute over whether the TPV script is part of the customer contract, and I take no position on that dispute.[2] Here again, my only opinion about the TPV enrollment script is that it contains terms (e.g., "pricing strategies") that are consistent with the terms that appear in Eligo's written customer agreement, since the principles of "pricing strategies," from an economics standpoint, are encompassed in the principles of "market pricing" and incorporate "other market price factors."

4. I understand that the Court may decide whether or to what extent the terms from the TPV enrollment script are part of Eligo's customer contract. Even if the Court decides that the TPV script is not part of the contract, my opinion -- that Eligo's customer contract refers to market-based concepts that include consideration of economic principles such as balancing profit maximization with customer retention -- will not change. My analysis does not rely on any single phrase; it is grounded in economic principles and empirical evidence regarding how prices are set by rational firms in competitive markets and how market-based pricing concepts are understood from an economic perspective.

5. In particular, the term "pricing strategy" encompasses neither more nor less as an economic matter for purposes of examining the scope of implied pricing conduct than the terms

---

[1] Expert Report of Dr. Debra J. Aron, September 12, 2025 (hereafter, *Aron Expert Report*), ¶¶ 82–92.
[2] *Aron Expert Report*, fn. 15.

"market pricing" and "other market price factors" which, I understand, are indisputably part of the contracts at issue in this case. That is, the conduct that is implied by a rational firm engaging in pricing that reflects the concepts of "market pricing" and "other market price factors" is not observably different in my opinion from pricing that reflects those concepts plus "pricing strategy(ies)." However, whether the term "pricing strategy" is deemed by the court to be part of the contracts at issue, the term is relevant and useful to me for explaining and supporting my economic opinions in this case. This is because, as I explained in my expert report, the concept of "pricing strategy" is fundamental to understanding and informing the relevance of "market pricing" and "other market price factors."[3] Indeed, the title of the textbook I assigned in my pricing course at Northwestern University (one of the books I cited in my report[4]) is "The Strategy and Tactics of Pricing." Hence, the economic analysis and discussion throughout my report, including references to the terms "pricing strategy," is relevant to my opinions in this case regardless of the Court's legal determination regarding the inclusion or exclusion of the TPV as part of the relevant contracts.

6. I made myself available for a deposition at which I would have been happy to answer any questions about the nature and scope of my opinions, including testifying to the explanation provided in this declaration. I understand that the Plaintiffs declined to take my deposition, which in my experience is very uncommon.

7. I have been asked by defense counsel whether the data and methodology I used for assessing whether Eligo's prices are consistent with prices that reflect market factors are the same as the data and methodology that I used in the *Agway* case. The answer is that the ESCO rate data

---

[3] *Aron Expert Report*, Sections IX.A–B.
[4] See, e.g., *Aron Expert Report*, fn. 147. This book is cited throughout Sections IX.A–B of my report.

are the same, which I collected from the New York Department of Public Service website.[5] The methodology of comparing the prices charged by quarter by utility zone for each comparable ESCO is also the same. I also made my compiled data set available to Plaintiffs, which they could analyze using a different method if they so chose. I compared Eligo's prices to prices of all ESCOs offering variable electric rates available in the data, as I also did in *Agway*. In addition, for the period starting in 2021, after the New York Public Service Commission's order restricting the types of products that ESCOs are permitted to offer to mass-market customers in New York increased the green offerings by certain ESCOs, I compared Eligo's rates to rates of other green energy suppliers, which augmented my analysis in Agway in reflection of the facts specific to this case. Although the price of the utility is not a valid benchmark for all the reasons I articulated in multiple places in my report, and my analysis in the *Agway* matter did not include utility prices, I included the relevant utility's prices in the graphs pertaining to New York State Electric and Gas and Rochester Gas and Electric in my Eligo report. These are the utilities in whose territories the named plaintiffs reside. The graphs show that virtually all ESCOs charged prices in excess of the utility prices in all zones and quarters.

I declare under penalty of perjury under the laws of New York and the United States of America that the foregoing is true and correct.

Executed on February 20, 2026 in Chicago, IL.

_____
Dr. Debra Aron

---

[5] ESCOs' historical pricing data from the NY PSC website (Matter Number 14-02555), accessed August 17, 2025, http://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?MatterSeq=46965&MNO=14-02555. I supplemented the data used in my Agway report with additional data to extend the time period beyond the data available at the time of my Agway report.