**Wittels
McInturff
Palikovic**

March 9, 2026

**Via ECF**
Honorable Edgardo Ramos
United States District Court

Re:   <u>*Brous, et al. v. Eligo Energy, LLC, et al.*, 24 Civ. 1260 (ER)</u>

Dear Judge Ramos,

Plaintiffs and the proposed Class submit this response to Eligo's pre-motion letter seeking leave to file for summary judgment. ECF 348. Eligo's request is procedurally defective, meritless, and would unnecessarily burden the Court. The Court should first resolve the five motions it already authorized—Plaintiffs' pending class certification and *Daubert* motions (ECF 324 and 313) and Eligo's three forthcoming *Daubert* motions (ECF 338)—before entertaining a sixth. This sequence avoids "one-way intervention" issues and sharpens the record. For example, Eligo's summary judgment motion depends on their lone expert's opinions, which are the subject of Plaintiff's *Daubert* motion. Alternatively, if the Court permits Eligo to move, Eligo should be deemed to have waived one-way intervention protections such that Plaintiffs may file their much more meritorious summary judgment motion without risking their ability to certify a class.

**I. <u>The One-Way Intervention Rule Bars Pre-Certification Summary Judgment</u>.** The rule "ordinarily requires courts to delay adjudicating the merits of a class claim" until after class certification and the opt-out period. *Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436, 445 (N.D.N.Y. 2022). The rule prevents class members from awaiting a merits decision before deciding whether to be bound. *Id.* Thus, "the Second Circuit and other circuit courts have held that in general, issues relating to class certification should be decided before a decision on the merits is rendered." *DDMB, Inc. v. Visa, Inc.*, 2021 WL 6221326, at *10 (E.D.N.Y. Sept. 27, 2021) (cleaned up, collecting cases); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 507 (E.D.N.Y. 2017) ("traditional route" is "deciding class certification prior to deciding summary judgment"); *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132, 135 (2d Cir. 2000) ("[I]t is difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits." (cleaned up)). A plaintiff that prematurely moves for summary judgment may be precluded from seeking class certification. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016) ("Plaintiffs, by moving for class certification and partial summary judgment at the same time, came dangerously close to precluding review of the class certification decision.").

Alternatively, if the Court allows Eligo to proceed, it should find on the record a waiver of the one-way intervention protections and authorize Plaintiffs to file their pre-motion application for summary judgment without risking the violating the rule. *See Mendez v. Radec Corp.*, 260 F.R.D. 38, 44–45 (W.D.N.Y. 2009) (finding defense waiver from summary judgment motion).

**II. <u>Eligo's Summary Judgment Motion Is Meritless And Does Not Resolve The Case</u>.** First, Eligo has no defense to (and makes no mention of) Plaintiffs' claim that it breached the Class contracts by tacking on a $4.93 monthly fee that was nowhere mentioned in the contracts. Eligo's summary judgment motion will thus be partial at best. Second, Eligo is wrong that it was contractually authorized to charge consumers excessive variable electricity rates.

Class Members' contracts specifically notify them how those consumers' "[v]ariable price is determined" and state that "all" variable rates "shall be calculated on a monthly basis in response to market pricing, transportation costs, and other market price factors." In other words, each monthly rate shall be calculated "in response to" movements in just three discernable energy market inputs (1) market pricing, (2) transportation costs, and (3) other market price factors. The contract's pricing term thus "require[s] the variation in the variable rates to be determined solely" by those three inputs. *Mirkin v. XOOM Energy, LLC*, 2023 WL 5200294, at *7 (E.D.N.Y. Aug. 14, 2023). Just as in *Mirkin*: "When you make a calculation 'based on' specific factors, you take only those factors into account; . . . You calculate a baseball player's batting average 'based on' his number of hits and his number of at bats—nothing more and nothing less." *Id.* at 5 (quoting *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 471 (S.D.N.Y. 2014)).

Here, Plaintiffs contend that the plain meaning of the "market pricing" input is the prices Eligo pays in the wholesale market for the electricity it resells to consumers at a markup. This is an imminently reasonable interpretation given that Eligo is just a middleman that purchases at wholesale. Eligo does not deliver the electricity it sells, nor does it bill the customer. It is simply an energy market intermediary. Courts interpreting the use of "market" terms in ESCO contracts agree. *See, e.g.*, *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 426 (S.D.N.Y. 2020) ("[A] reasonable contract interpretation [is] that 'Market' meant that Defendant's variable rate would be tethered to some degree to supply costs[.]"); *IUE-CWA Loc. 901 v. Spark Energy, LLC*, 440 F. Supp. 3d 969 (N.D. Ind. 2020) ("[I]t is plausible that an agreement for a variable rate plan based on market prices means there would be some fluctuation in price tethered to wholesale prices. If not, it is entirely unclear what market price is a reference to.").

The inclusion of "other market price factors" does not expand the term "market pricing" beyond a reference to the other market costs Eligo pays to procure electricity. Since "transportation costs" unquestionably refers to Eligo procurement costs (which Eligo's expert admits), "other market price factors" also refers to Eligo costs. *See Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 390 (S.D.N.Y. 2023) ("[E]ach item in a list of items is interpreted by the company it keeps."). An ESCO's energy procurement cost is its biggest cost. It is unsurprising that the contract first lists the "market pricing" cost, followed by "transportation costs," followed by a cost-related catchall for "other market price factors." *See Baker v. Weber*, 2021 WL 4480998, at *7 (S.D.N.Y. Sept. 30, 2021) ("[W]hen general words follow specific words, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (cleaned up)). Eligo's reading ignores "transportation costs" entirely.

Eligo does not contest that it does not solely set its rate based on the market prices it pays at wholesale; nor can it. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Mirkin* at 8 (evidence of reliance on non-contractual factors shows question of fact as to whether ESCO set "monthly variable rate in compliance with the contract"). As an Eligo whistleblower confirmed, "Eligo would gradually ratchet up the variable rate so the customer would not appreciate that the rate . . . was getting higher and higher." ECF 240-1 ¶ 8. This "was exploitative and was designed to trick Eligo's customers." *Id.* ¶ 14. And Plaintiffs' experts demonstrate that Eligo's average variable-rate markup over its projected costs was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Eligo's contention that this ▮▮▮ is not enough for it to be profitable is

flatly contradicted by ███████████████████████████████████ as well as New York's utility regulator, which concluded that 5% is sufficient for an ESCO to make a reasonable profit. These and other facts unearthed in discovery show that Eligo's variable rates were not commercially reasonable. Indeed, even if "market pricing" refers to prevailing retail electricity rates, Plaintiffs' experts have shown that Eligo's rates far outpaced prevailing retail prices.

Eligo's summary judgment motion turns on its claim that it had complete rate-setting discretion. But no reasonable consumer would expect that a rate that "shall be calculated on a monthly basis in response to market pricing, transportation costs, and other market price factors" means that Eligo faced no contractual rate-setting constraints. Fortunately for consumers, Second Circuit law confirms that Eligo's contract does not grant "discretion." In *Martinez*, the Second Circuit identified the two "dispositive questions" for ESCO contracts: "[1] whether an agreement entitled the energy services provider to use discretion in setting its rates and, [2] if so, how the agreement cabined that discretion." *Id.* at 410. The Second Circuit recognized two different categories of ESCO pricing terms with different legal operations—(1) terms (like here) that do not expressly grant discretion and instead tie rates to identified inputs; and (2) terms that expressly provide for discretion and then cabin that discretion in varying degrees. *Id.* at 410–11.

If a pricing term falls into the first *Martinez* category, rates must be set according to the contractual factors, and the analysis stops. *Id.* If the term falls into the second category, the question is whether the ESCO exercised discretion in bad faith or beyond the constraints on that discretion. *Id.* In *Martinez*, the Second Circuit contrasted two precedents: *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88 (2d Cir. 2019) (explicit "discretion" to set rates "higher or lower each month based upon business and market conditions"), and *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173 (2d Cir. 2019) ("[A]greement did not describe the monthly variable rate as being set according to the ESCO's discretion."). *Martinez*, 88 F.4th at 410–11. These two cases are the "goalposts" for ESCO contract cases. *Stanley*, 466 F. Supp. 3d at 425–26.

Here, the word "discretion" is absent. *Id.* at 411. Instead, rates "shall be calculated on a monthly basis in response to" three identified factors. *See Weinberg v. CleanChoice Energy, Inc.*, 2024 WL 3446515, at *10 (S.D.N.Y. July 17, 2024) ("The variable rate pricing terms in both *Richards* and *Agway* provided that the rate would be set at the ESCO's discretion. No such language is present in the instant term."); *Melville v. HOP Energy, LLC*, 2023 WL 2648775, at *7 (S.D.N.Y. Mar. 27, 2023). And of course, as an adhesion contract, vagueness is construed against Eligo. *Mirkin* at 5.

Eligo also wrongly claims a third-party mentioning "pricing strategies" on a phone call amends the written contract. But New York regulations require ESCO contracts to be reduced to a single writing. Indeed, Plaintiffs' contract reading is supported by the fact that Eligo later amended to its contract for new customers to expressly include "discretion" and "pricing strategies." ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Finally, even if Eligo's contract reading were correct, it would not dispose of the case. Courts in this District recognize that the "factfinder might conclude that the contract itself did not promise what Plaintiff expected but that, nevertheless, Defendant violated a 'duty of good faith' that it owed to less-informed consumers in providing something as universally necessary as utility services." *Stanley*, 466 F. Supp. 3d at 430.

Dated: March 9, 2026                                        Respectfully submitted,

                                          By:   */s/ J. Burkett McInturff*
                                                    J. Burkett McInturff
                                                    Tiasha Palikovic
                                                    Jessica L. Hunter
                                                    **WITTELS MCINTURFF PALIKOVIC**
                                                    305 Broadway, 7th Floor
                                                    New York, New York 10007
                                                    Tel: (917) 775-8862

                                                    D. Greg Blankinship
                                                    Daniel J. Martin
                                                    **FINKELSTEIN, BLANKINSHIP,**
                                                    **FREI-PEARSON & GARBER, LLP**
                                                    One North Broadway, Suite 900
                                                    White Plains, New York 10601
                                                    Tel: (914) 298-3281

                                                    *Attorneys for Plaintiffs and the*
                                                    *Proposed Class*

CC: All Counsel of Record via ECF