# Exhibit 22

## Deposition Transcript of Frank Felder, Ph.D.

***Brous, et al. v. Eligo Energy, LLC, et al.***
**Case No. 1:24-cv-01260-ER**

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 1

1              UNITED STATES DISTRICT COURT

             SOUTHERN DISTRICT OF NEW YORK

2

3     _____

4     IRA BROUS AND MICHELLE SCHUSTER,

5     ON BEHALF OF THEMSELVES AND ALL

6     OTHERS SIMILARLY SITUATED,

7              Plaintiffs

8     v                        C.A. No.: 1:24-CV-01260

9     ELIGO ENERGY, LLC AND ELIGO

10    ENERGY NY, LLC,

11    Defendants

12    _____

13    VIDEOTAPED DEPOSITION OF:

14                  FRANK A. FELDER, PH.D.,

15    was held on Thursday, January 8th, 2026, commencing at

16    9:23 a.m., at Regus Dulles Corner, 13800 Coppermine

17    Road, Herndon, Virginia 20171, reported by Jeaninn

18    Alexis, Stenographic Reporter and Notary Public in the

19    State of Maryland and District of Columbia.

20

21

22

Page 2

```
 1                      APPEARANCES:

 2

 3      On Behalf of the PLAINTIFFS:

 4      GREG BLANKINSHIP, ESQUIRE

           FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP

 5         One North Broadway

           Suite 900

 6         White Plains, New York 10601

           (914) 298-3281

 7         Email: gblankinship@fbfglaw.com

 8

 9      On Behalf of the DEFENDANTS:

10      LEO O'TOOLE, ESQUIRE

           WATSTEIN TEREPKA LLP

11         75 14th Street Northeast

           Suite 2600

12         Atlanta, Georgia 30309

           (404) 779-5190

13         Email: lotoole@wtlaw.com

14

15      ALSO PRESENT:

16      Ms. Ellen Hebert - Videographer

17      David Meadows - Via Zoom

18      Andrea White - Via Zoom

19      Burkett McInturff  - Via Zoom

20      Andrey Belenky - Via Zoom

21      Thomas Moore - Via Zoom

22
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 3

```
 1                    I-N-D-E-X
 2     Videotaped Deposition of Frank A. Felder, PH.D.
 3                 January 8, 2026
 4
 5     EXAMINATION BY:                    PAGE:
 6     Mr. O'Toole                        7, 384
 7     Mr. Blankinship                     378
 8
 9     EXHIBITS:    DESCRIPTION:                PAGE:
10     Exhibit 1   Memorandum-Decision and Order    32
11     Exhibit 2   Decision                         38
12     Exhibit 3   Second Amended Complaint Document filed 42
                   09/16/2025
13
       Exhibit 4   Document filed 11/02/2023         88
14
       Exhibit 5   Expert Report of Frank Felder, PH.D.  122
15
       Exhibit 6   Exhibit A - Curriculum Vitae of Frank A.122
16                 Felder, Ph.D.
17     Exhibit 7   Exhibit B - Documents Considered     122
18     Exhibit 8   Expert Rebuttal Report of Frank Felder, 122
                   PH.D.
19
       Exhibit 9   Exhibit 51 Filed 01/06/25         204
20
       Exhibit 10  Email                            234
21
       Exhibit 11  Exhibit 2 Filed 05/10/24         241
22
       Exhibit 12  DEF024595 - 10_17_23             287
```

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 4

1

    Exhibit 13   Deposition Transcript of Frank Andrew    351
2                    Felder, PH.D. taken on August 26, 2020
3    Exhibit 14   Deposition Transcript of Frank Scott    360
                    Glotzbach, taken on May 6, 2025
4

    Exhibit 15   The Electricity Journal 32 (2019)31-38   368
5

    Exhibit 16   DEF019448 -                              373
6                    GROUP_OF_3_COMED_1.0_6-16-2021_IS

7

8

9            (Exhibits included with transcript.)

10

11

12

13

14

15

16

17

18

19

20

21

22

Frank A. Felder , Ph.D.                                January 8, 2026
Brous v. Eligo Energy, LLC

Page 5

1              P-R-O-C-E-E-D-I-N-G-S

2              THE VIDEOGRAPHER:  Good morning.  We are going

3       on the record at 9:23 a.m.  The date today is

4       January 8th, 2026.

5              Please note that the microphones are sensitive

6       and may pick up whispering and private conversations.

7       Please mute your phones at this time.  Audio and video

8       recording will continue to take place unless all parties

9       agree to go off the record.

10             This is Media Unit Number 1 of the

11      video-recorded deposition of Frank Felder taken by

12      counsel for the defendant in the matter of Anne Brous,

13      et al., v. Eligo Energy, LLC, et al., filed in the

14      United States District Court, Southern District of New

15      York, Case Number 24-CIV-01260, parenthesis, ER, close

16      parenthesis.

17             The location of the deposition is 13800

18      Coppermine Road, Herndon, Virginia.

19             My name is Ellen Hebert, representing

20      Veritext.  I am the videographer.  The court reporter is

21      Jeaninn Alexis from Court Reporters, Etcetera,

22      Incorporated.

Page 6

1           If there are any objections to proceeding,

2     please state them at the time of your appearance.

3     Counsel and all present, including remotely, will now

4     state their appearances and affiliations for the record,

5     beginning with the noticing attorney.

6           MR. O'TOOLE:  Um, thank you.

7           This is Leo O'Toole from the firm Watstein

8     Terepka on behalf of defendants, Eligo Energy, LLC, and

9     Eligo Energy, New York, LLC.  I'm joined here today

10    remotely by my colleague, David Meadows, and, also, by

11    Andrea White, who is in-house.

12          MR. BLANKINSHIP:  My name is Greg Blankinship

13    with Finkelstein, Blankinship, Frei-Pearson & Garber.  I

14    represent the plaintiffs in this matter.

15          Before I proceed, I just want to note for the

16    record that we reserve our right to, um, submit errata

17    as appropriate once we get the transcript.  With me

18    today remotely are my cocounsel, Burkett McInturff and

19    Andrey Belenky.

20          THE VIDEOGRAPHER:  Thank you.

21          Will the court reporter please swear in the

22    witness.

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 7

1    Whereupon,

2                        FRANK A. FELDER, PH.D.,

3    the deponent herein, called for oral examination in the

4      matter pending, being first duly sworn to tell the

5      truth, the whole truth, and nothing but the truth,

6                     testifies as follows:

7                          EXAMINATION

8                  BY MR. O'TOOLE:

9         Q    Thanks very much.  And good morning,

10   Dr. Felder.

11              First question right off the bat, you've been

12   deposed before, haven't you?

13        A    Uh, good morning.  Yes, I have been deposed

14   before.

15        Q    When was the last time you were deposed?

16        A    I believe the last time I was deposed was

17   around 2019.

18        Q    2019.  Okay.

19              So I'm going to just go through a few

20   background rules, uh, at the very beginning to just lay

21   some of the framework here.

22              So you were just sworn in by the court

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 8

1    reporter.  You understand today that you are under oath

2    just as if you were testifying before a judge.

3            Is that --

4        A    Yes, I understand that.

5        Q    Okay.  And while we're talking about the court

6    reporter, there's a few things to keep in mind.  She's

7    going to be transcribing everything that we say here

8    today.  And that's important for a few different

9    reasons.  Uh, so the first reason is that we should both

10   try to speak clearly, speak slowly, uh, and to just

11   make, uh, Ms. Alexis's job as easy as possible, um, for

12   her.

13           Can you -- can you agree to that?

14       A    I understand that, yes.

15       Q    Okay.  Great.

16           Um, another point that's relevant when it

17   comes to the transcription is that, um, you should

18   provide verbal responses.  So, for example, you

19   shouldn't shrug, you shouldn't say "uh-uh."

20           Can you commit to only providing verbal

21   responses here?

22       A    I will do my best to do so.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 9

1          Q    Great.

2               Um, another point.  I -- as you probably

3     gather by now and from your past depositions, I'm going

4     to be asking you questions today.  So to the best of

5     your abilities, please let me finish my question before

6     you provide an answer.  And I will simply extend you the

7     same courtesy of letting you finish your answer before I

8     pose my next question.

9               Does that make sense?

10         A    That makes sense to me.

11         Q    Great.

12              And so during the course of your deposition,

13    as I'm sure have happened in past depositions, your

14    counsel is going to be, um, making objections.

15              Uh, do you understand that those -- your

16    counsel making those objections doesn't relieve you of

17    your obligation to provide answers to my questions?

18              MR. BLANKINSHIP:  I'm just going to object.  I

19    might object on the basis of attorney/work product.

20              And -- but I will -- well, you shouldn't

21    answer any question that I don't specifically tell you

22    not to answer.

Page 10

1                MR. O'TOOLE:  And in -- understood.

2                BY MR. O'TOOLE:

3        Q    Uh, when it comes to an objection regarding

4     attorney/work -- work product, um, your client -- or

5     your counsel, excuse me, may instruct you not to answer

6     a question.

7                Do you understand that?

8        A    I understand that.

9        Q    Okay.  But as a general rule, how this is

10    going to work is I'm going to ask a question,

11    Mr. Blankinship may or may not object, and then you

12    provide an answer unless he specifically instructs you

13    not to.

14                Is -- is that fair?

15       A    That is clear.

16       Q    Okay.  Um, let's see.  Anything else.

17                So is there any reason today for reasons of

18    health, medication, fatigue, or anything else, any

19    reason why you can't testify truthfully?

20       A    No, there's no reason.

21       Q    Okay.  Great.

22                Um, so you've known Mr. Blankinship for more

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                      Page 11

1      than a decade.

2                    Is that right?

3          A     That is correct.

4          Q     Okay.  And you've worked with Mr. Blankinship

5      for more than a decade, haven't you?

6                    MR. BLANKINSHIP:  Objection.  Vague.

7                    THE WITNESS:  I've, uh, done --

8                    BY MR. O'TOOLE:

9          Q     Sorry.  One more instruction I should add is

10     when Mr. Blankinship poses an objection, I may want to

11     ask for the basis of that objection.  And so if you can

12     wait for me to respond to his objection, I'd appreciate

13     that.

14                   MR. O'TOOLE:  So, Mr. Blankinship, what was

15     vague about my question, and you've worked with him for

16     more than a decade?

17                   MR. BLANKINSHIP:  Uh, it's unclear if you mean

18     that we once worked together ten years ago or if we

19     worked continuously on a continuous basis for entirety.

20                   MR. O'TOOLE:  Okay.

21                   BY MR. O'TOOLE:

22         Q     You can interpret the question how you see

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 12

1    fit.

2         A    Since I've known Mr. Blankinship for

3    approximately ten years, I've had various assignments at

4    different times over that time period.

5         Q    What do you mean by "assignments"?

6         A    What I mean by assignments is a -- either

7    support in a -- a litigation matter or testifying as an

8    expert writing a report.

9         Q    Okay.  So you said that you've known

10   Mr. Blankinship for ten years.

11             Is it possible that you've known him for

12   longer than ten years?

13        A    I believe, and we can repeat what I said.  I

14   said I -- I believe around ten years --

15        Q    Around ten years.

16        A    -- so -- um, so it may be more like 12 years

17   or so, but...

18        Q    Okay.  What's the first case that you recall

19   working with Mr. Blankinship on?

20             MR. BLANKINSHIP:  I'm just going to object.

21   It's outside the scope and the disclosure rules.

22             But you can answer.

Page 13

```
 1              THE WITNESS:  It was on an energy service

 2      company matter.  To be honest, I forget the name.  It

 3      was ten or more years ago.

 4              BY MR. O'TOOLE:

 5         Q    Could it have been Wise v. Energy Plus?

 6              MR. BLANKINSHIP:  Objection.

 7              THE WITNESS:  Uh, yes, it -- it could have

 8      been.

 9              BY MR. O'TOOLE:

10         Q    Okay.  Do you recall any other cases from that

11      time?

12              MR. BLANKINSHIP:  Same objection.

13              THE WITNESS:  Do you mean from that time of

14      12 years ago or...

15              BY MR. O'TOOLE:

16         Q    Yes.

17              Oh, you said it was 12 years ago?

18              MR. BLANKINSHIP:  Object.  Mischaracterizes

19      his testimony.

20              THE WITNESS:  I think I made it clear that

21      it's been around ten to 12 years.  I don't recall

22      exactly what it is.  I think I made that clear several
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 14

1    times.  The -- I do not know if -- recall -- um, there

2    were other cases or other assignments.  I just do not

3    recall their names.

4              BY MR. O'TOOLE:

5         Q    Okay.  And in the past 12 years, how many

6    cases have you worked with Mr. Blankinship on?

7              MR. BLANKINSHIP:  Same objection.

8              THE WITNESS:  Um, if you include in cases, um,

9    not testifying, but you mean support, preparatory

10   support, or legal support or analyses, um -- and it

11   could be one client but in multiple states, so I don't

12   know to count those or one matter that -- in multiple

13   states, so I don't know how to count that.  But, you

14   know, a dozen to two dozen, something like that.

15             BY MR. O'TOOLE:

16        Q    So thank you for that answer.

17             When I asked you how many matters you've

18   worked on, I mean, how many different cases have been

19   filed.  So, for example, to -- to illustrate my point or

20   to illustrate my question, in this case, there have been

21   four different actions filed against Eligo Energy.  So

22   there's the Brous action in New York, there's the Bodkin

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 15

1    action in Pennsylvania, there's Orzolek in Ohio, and

2    then there is the Whiteside action in Maryland.

3              So when I'm asking my question, that would

4    count as four different cases that you've worked with

5    Mr. Blankinship on, if, in fact, you have worked with

6    him on those four.

7              Do you understand how I'm asking that

8    question?

9         A    I do now.

10        Q    Okay.  And so I'll ask the question again.

11             How many cases in the past 12 years have you

12   worked with Mr. Blankinship on?

13             MR. BLANKINSHIP:  Same objections.

14             THE WITNESS:  I don't know given your

15   definition because I don't know if they filed the cases

16   or not, and I may not know if there were multiple

17   filings, um, you know, so -- but with that ex- -- more

18   expansive definition, it could be a lot more than a

19   dozen because in -- I can recall several cases that were

20   multiple jurisdictions, so that would count as multiple

21   cases under your definition.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 16

1          BY MR. O'TOOLE:

2      Q    Okay.  And when you say "a lot more than a

3    dozen," what are we talking about in terms of magnitude?

4    Do you mean more than a hundred?

5          MR. BLANKINSHIP:  Same objections.

6          THE WITNESS:  I don't think so.  Again, I

7    don't know if a case is filed, so whether or not that

8    rises to your definition, um, but I would say maybe a

9    dozen to two dozen, maybe a little bit more.  It could

10   be something where it's an hour here or an hour there,

11   so on a diff- -- on a matter that would we count as a

12   case under your definition.

13         BY MR. O'TOOLE:

14     Q    Okay.  So I'm interested in hearing about

15   these cases.

16         What is the first case that you recall working

17   with Mr. Blankinship on?

18         MR. BLANKINSHIP:  Same objections.  Outside

19   the scope of this report.  Not required in the

20   disclosures.

21         But you can answer.

22         THE WITNESS:  Um, I think it's the one you

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 17

1    referred to.  I just -- I forgot the name.

2              BY MR. O'TOOLE:

3        Q    Okay.  So there's the Wise v. Energy Plus

4    case.

5              What other cases do you recall?

6        A    There was Agway, there's --

7        Q    Which -- which Agway?

8        A    Um, I just tend to remember them by the name

9    of the ESCO, you know, the full names of defendants and

10   plaintiffs.  Um, there was -- I'm just not recalling the

11   particular names of different cases.

12       Q    So your testimony today is that you can only

13   recall two cases from the past 12 years?

14             MR. BLANKINSHIP:  Objection.  Asked and

15   answered.  Argumentative.

16             THE WITNESS:  What I said is I don't recall

17   the names of those cases right off the top of my head.

18             BY MR. O'TOOLE:

19       Q    Okay.  And just for the record, I provided you

20   the Wise v. Energy Plus citation.

21             So are you able to recall one case of those in

22   the past 12 years?

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 18

1             MR. BLANKINSHIP:  Objection.  Asked and

2      answered.  Mischaracterizes his testimony.

3      Argumentative.

4             THE WITNESS:  As I said, that's the one that

5      comes immediately to mind.

6             BY MR. O'TOOLE:

7        Q    Okay.  Have you worked on cases against XOOM

8      Energy?

9        A    I believe so, yes.

10       Q    Okay.  Yes.

11            And do you recall when you worked on that

12     case?

13            MR. BLANKINSHIP:  Same objections.

14            THE WITNESS:  No, I do not.  Maybe -- no, I do

15     not recall when I worked on that case.

16            BY MR. O'TOOLE:

17       Q    Have you worked on any cases against Meridian

18     Energy?

19            MR. BLANKINSHIP:  Same objections.

20            THE WITNESS:  I believe that name rings a

21     bell.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

```
                                              Page 19

 1              BY MR. O'TOOLE:

 2         Q    You worked on any cases in Starlight Energy?

 3              MR. BLANKINSHIP:  Same objections.

 4              THE WITNESS:  That, I don't recall, but it's

 5         possible.  Again, some of these cases could have been

 6         very small amounts of time.

 7              BY MR. O'TOOLE:

 8         Q    Have you worked on cases against Hamdon

 9         Energy?

10              MR. BLANKINSHIP:  Same objections.

11              THE WITNESS:  I do recall against Ha- --

12         Hamdon or a case involving Hamdon.

13              BY MR. O'TOOLE:

14         Q    Okay.  And are you working on any other cases

15         with Mr. Blankinship at this time?

16              MR. BLANKINSHIP:  Objection.  Vague.

17              THE WITNESS:  Um, there are one or two that

18         are providing consulting services.

19              BY MR. O'TOOLE:

20         Q    And what cases are those?

21         A    Um, CleanChoice, I believe, but I would have

22         to check.
```

Page 20

1          Q     And do you recall which jurisdiction that's

2     in?

3                MR. BLANKINSHIP:  Same objections.

4                THE WITNESS:  No, I do not recall which

5     jurisdiction.

6                BY MR. O'TOOLE:

7          Q     Do you recall the name of the plaintiff?

8          A     No, I do not.

9                MR. BLANKINSHIP:  Same objections.

10               BY MR. O'TOOLE:

11         Q     Could it be Weinberg?

12               MR. BLANKINSHIP:  Same objections.

13               THE WITNESS:  It could be Weinberg.

14               BY MR. O'TOOLE:

15         Q     Okay.  All right.  Um, so you said you don't

16    recall Starden (sic).  You do recall -- so I guess

17    you're -- the cases that you're currently working on.

18    You said you recall maybe one or two, and one of them is

19    CleanChoice.

20               Is that right?

21         A     That is --

22               MR. BLANKINSHIP:  Objection.  Asked and

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 21

1     answered --

2                    THE WITNESS:  I believe I said yes.

3                    BY MR. O'TOOLE:

4          Q    Okay.  Any others?

5                    MR. BLANKINSHIP:  Same objections.

6                    THE WITNESS:  Sometimes cases that I've worked

7     on several years ago come back, or I'm asked to do

8     stuff.  So they may not be active in my mind, but I

9     could -- or I get a call, a quick question on a matter

10    that was several years old or -- so there are

11    possibilities that that counts as working on them.  Yes,

12    it could be other cases.

13                   BY MR. O'TOOLE:

14         Q    Sure.

15                   Can you tell me what those cases are?

16                   MR. BLANKINSHIP:  Same objections.

17                   THE WITNESS:  No, I don't recall the names of

18    them.

19                   BY MR. O'TOOLE:

20         Q    Okay.  Um, and you said you had worked on an

21    Ambit case.

22                   Is that right?

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

                                              Page 22

1              MR. BLANKINSHIP:  Same objection.

2    Testimony --

3              THE WITNESS:  I believe I -- yes, that rings a

4    bell, yes.

5              BY MR. O'TOOLE:

6         Q    Okay.  For these cases -- so -- so far, we've

7    got Wise v. Energy Plus, Agway, XOOM, Weinberg, um,

8    Starlight is a no.  We've also got Ambit.

9              And how many of those cases have you worked

10   with Mr. Blankinship?

11             MR. BLANKINSHIP:  Objection.  Lack of

12   foundation.  Outside the scope of the required

13   disclosure.

14             You can answer.

15             THE WITNESS:  I believe Starnet.  I wasn't

16   sure.  I'm not sure the question characterized what I

17   said correctly.  Um, I do not recall who the counsel

18   was, if it was Greg or Burkett's firm or both.

19             BY MR. O'TOOLE:

20        Q    Okay.  But it was one of the two of them.

21             Is that fair to say?

22             MR. BLANKINSHIP:  Same objections.

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

                                                        Page 23

1           THE WITNESS:  I would have to double-check.

2     Um, the- -- they're -- some of those cases may have

3     involved other attorneys.  I just don't know.

4           BY MR. O'TOOLE:

5       Q    Okay.  And so apart from these, let's say,

6     half dozen cases that you've listed so far, are there

7     any other cases that you worked with Mr. McInturff's

8     firm on the ESCO case in the past 12 years?

9           MR. BLANKINSHIP:  Objection.  Outside the

10    scope of his report.  Not in the required disclosure.

11          You can answer.

12          THE WITNESS:  There may have been cases that

13    I've worked with his firm, but -- and not Greg's firm.

14    That's possible.  I don't recall anymore off the top of

15    my head, but that's certainly possible.

16          BY MR. O'TOOLE:

17      Q    Okay.  And you earlier testified on the

18    difference between, um, I guess, acting in the

19    consulting capacity and acting as a testifying expert.

20          Do you understand that distinction?

21      A    Yes, I made that distinction.

22      Q    Okay.  Um, and so if you were acting as a

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 24

1      testifying expert, at least in federal court, you have

2      to provide a written report; right?

3                  MR. BLANKINSHIP:  Objection.  Calls for a

4      legal conclusion.

5                  THE WITNESS:  I don't know what the federal

6      requirements are.

7                  BY MR. O'TOOLE:

8          Q    Okay.  Um, how many reports do you recall

9      writing over the past 12 years?

10                 MR. BLANKINSHIP:  Objection.  Outside the

11     scope.  Not required disclosure.

12                 You can answer.

13                 THE WITNESS:  If -- if -- if you include

14     rebuttals as separate reports, um, six to 12.  In some

15     cases, it -- they weren't necessarily all for a court.

16     They could have been for some other type of legal

17     proceeding, um, but somewhere in the neighborhood of six

18     to 12 or six to 20.

19                 BY MR. O'TOOLE:

20         Q    When you say they weren't all for a court,

21     they could have been for some other kind of legal

22     proceeding, what do you mean by that?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 25

```
 1              MR. BLANKINSHIP:  Same objections.

 2              You can answer.

 3              THE WITNESS:  The report could have been --

 4     may have been part of a legal proceeding, but it could

 5     have been for mediation, for example.

 6              BY MR. O'TOOLE:

 7         Q    Okay.  Okay.  So of these six to 12 reports,

 8     what -- which one of -- of those reports do you recall,

 9     sitting here today?

10              MR. BLANKINSHIP:  Objection.  Vague.  The

11     other objection is about scope and disclosures.

12              THE WITNESS:  The two reports in this matter

13     and -- and the Agway report, um, those are the ones I

14     have a distinct recollection of.

15              BY MR. O'TOOLE:

16         Q    Okay.  So you said you worked on between one

17     dozen and two dozen, maybe more than two dozen, um,

18     litigations.

19              Um, which other firms have you worked with

20     apart from Mr. Blankinship's firm and Mr. McInturff's

21     firm?

22              MR. BLANKINSHIP:  Same objections.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page  26

1              THE WITNESS:  There's been -- and I don't

2    recall their names -- two to four firms.  And, again,

3    they may have had both counsel, so that number may have

4    been higher, um, over the -- roughly the same period,

5    maybe a bit more like the last ten years or so.

6              BY MR. O'TOOLE:

7       Q    Okay.

8              MR. O'TOOLE:  Let's just see what my real-time

9    transcription is.  Here we go --

10             MR. BLANKINSHIP:  There's a button on the side

11   that says "follow."

12             MR. O'TOOLE:  Got it.

13             BY MR. O'TOOLE:

14      Q    Let's take through these cases.  For Wise

15   versus Energy Plus, you were retained by

16   Mr. Blankinship's firm; correct?

17             MR. BLANKINSHIP:  Objection.  Asked and

18   answered.  Outside the scope.

19             THE WITNESS:  Um, I don't know for sure about

20   that time frame.

21             BY MR. O'TOOLE:

22      Q    Okay.  And you -- you testified for the

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                          Page 27

1    plaintiff; right?

2              MR. BLANKINSHIP:  Same obje- -- same

3    objections.

4              THE WITNESS:  Yes, I did testify over -- work

5    on behalf of the firm who was representing the

6    plaintiff.

7              BY MR. O'TOOLE:

8        Q    Okay.  And for the Agway case, you worked for

9    the plaintiff as well?

10             MR. BLANKINSHIP:  Same objections.

11             THE WITNESS:  I -- yes.  The -- Greg's firm or

12   whoever was representing the plaintiff.

13             BY MR. O'TOOLE:

14       Q    And the same for XOOM; correct?

15             MR. BLANKINSHIP:  Same objections.

16             THE WITNESS:  Um, yes.  For XOOM, it was for

17   the plaintiff.

18             BY MR. O'TOOLE:

19       Q    And how about CleanChoice Energy?

20             MR. BLANKINSHIP:  Same objections.

21             THE WITNESS:  It was for the plaintiff.

22

Page 28

```
 1              BY MR. O'TOOLE:
 2        Q     Ambit?
 3              MR. BLANKINSHIP:  Same objections.
 4              THE WITNESS:  Eh, yes, it was for the
 5     plaintiff.
 6              BY MR. O'TOOLE:
 7        Q     Do you recall ever working on a case against
 8     North American Power and Gas?
 9              MR. BLANKINSHIP:  Same objections.
10              THE WITNESS:  Yes.  Now that you mentioned it,
11     I believe so, but I don't distinctly recall the case.
12              BY MR. O'TOOLE:
13        Q     Okay.  But you worked for the plaintiff in
14     that case; is that correct?
15              MR. BLANKINSHIP:  Same objections.
16              THE WITNESS:  I believe if I worked on that
17     case, yes, it would have been for the plaintiff.  I do
18     somewhat recall that it being.
19              BY MR. O'TOOLE:
20        Q     Okay.  Have you ever worked for a defendant in
21     ESCO litigation?
22              MR. BLANKINSHIP:  Same objections.
```

Page 29

```
 1            THE WITNESS:  I have not worked for an ESCO in

 2     litigation.

 3            BY MR. O'TOOLE:

 4       Q    All right.  So, Dr. Felder, do you understand

 5     what a Daubert motion is?

 6            MR. BLANKINSHIP:  Objection.  Calls for a

 7     legal conclusion.  Outside the scope of his report.

 8            THE WITNESS:  My lay understanding, it's a

 9     legal claim about the eligibility of an expert witness,

10     but I could be incorrect on that.

11            BY MR. O'TOOLE:

12       Q    Okay.  Do you know how many times you've been

13     subject to a Daubert challenge?

14            MR. BLANKINSHIP:  Objection.  Outside the

15     scope.  Not a required disclosure.

16            You can answer.

17            THE WITNESS:  Um, I do not know how many times

18     I've been subject to that.  I wouldn't be informed of

19     that necessarily.

20            BY MR. O'TOOLE:

21       Q    Okay.  And so if you don't know how many times

22     you've been challenged, you don't know how many times,
```

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

                                                              Page 30

 1      is it fair to say, that the court has ruled on your

 2      admissibility under Daubert?

 3                  MR. BLANKINSHIP:  Same objections.  Lack of

 4      foundation.

 5                  THE WITNESS:  Yes, that would be correct.

 6                  BY MR. O'TOOLE:

 7          Q    Okay.  And the only case within the past

 8      12 years that you can recall when I asked you earlier

 9      was the Agway case.

10                  Is that right?

11                  MR. BLANKINSHIP:  Objection.  Mischaracterizes

12      his testimony.  Outside the scope.

13                  THE WITNESS:  That was the only case I can

14      recall the name of, but, yes.

15                  BY MR. O'TOOLE:

16          Q    Do you recall being subject to a Daubert in

17      that case?

18                  MR. BLANKINSHIP:  Same objections.

19                  THE WITNESS:  I do not recall being informed

20      that I was subject to a Daubert or not in that case.

21                  BY MR. O'TOOLE:

22          Q    And sitting here today, do you know whether or

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 31

 1      not you were subject to a Daubert challenge?

 2               MR. BLANKINSHIP:  Same objections.

 3               THE WITNESS:  I believe, um, I was.  I believe

 4      the court ruled on my testimony.  And, again, I could be

 5      mistaken.

 6               THE REPORTER:  After he asks you a question,

 7      do you mind waiting a moment and giving him some time to

 8      object?  Because it's just too fast.

 9               THE WITNESS:  I'm sorry.

10               THE REPORTER:  It's just too fast.

11               THE WITNESS:  I'm sorry.

12               THE REPORTER:  And I'm not getting it all

13      perfectly.

14               THE WITNESS:  Okay.  Thank you.

15               THE REPORTER:  Thank you.

16               THE WITNESS:  Sorry.

17               THE REPORTER:  No worries.

18               BY MR. O'TOOLE:

19          Q    So you said you believe you were subject to a

20      Daubert, and you believe the court ruled on your

21      testimony.

22               What do you understand the court's ruling

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 32

1      there to be?

2              MR. BLANKINSHIP:  Objection.  Calls for a

3      legal conclusion.  And it's outside the scope.

4              THE WITNESS:  I don't know the specific ruling

5      or the implications.  I don't -- I'm not a lawyer.  I

6      didn't track it.

7              BY MR. O'TOOLE:

8          Q    Sure.

9              So I'm going to hand you now what I will mark

10     as Exhibit 1.

11             (Felder Deposition Exhibit 1 marked for

12     identification.)

13             BY MR. O'TOOLE:

14         Q    And so there's no need for you to read the

15     entire order.  Dr. Felder, I'm just going to be asking

16     you some questions about the end.  We're looking here at

17     pages 30 and 31.

18             MR. BLANKINSHIP:  I -- I'm just going to

19     object.

20             If you want to read it, any document he puts

21     in front of you, Frank, you're welcome to, but you don't

22     have to read it.

Frank A. Felder , Ph.D.                              January 8, 2026
Brous v. Eligo Energy, LLC

Page 33

1          BY MR. O'TOOLE:

2      Q    Are you ready?

3      A    Please repeat your question or request.

4      Q    Sure.

5          So there is no question pending.  As we're

6      just saying, that my questions are going to focus on 30

7      and 31.

8          So do you see in the first full paragraph on

9      page 30, it begins with, "Here, Dr. Felder's opinion"?

10     A    Yes, I do.

11     Q    Okay.  Can you read that paragraph for me,

12     please.

13         MR. BLANKINSHIP:  I'm just going to object.

14     Outside the scope.  Calls for a legal conclusion.

15         Can you read it?

16         THE WITNESS:  Yes, I can read the paragraph.

17         BY MR. O'TOOLE:

18     Q    Okay.  Can you read it loud?

19     A    "Here, Dr. Felder's opinion is inadmissible

20     under Rule 702 because its conclusions are not the

21     product of reliable principles or grounded in sufficient

22     data.  Dr. Felder's report" -- "report primarily

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 34

1    consists of a calculation of the amount of money

2    defendant has alleged to have overcharged its customers

3    based on a comparison between defendant's revenues and

4    the cost to defendant from purchasing electricity from

5    the relevant public utilities."

6           And then there's a citation.  "The soundness

7    of this calculation rests on plaintiff's and

8    Dr. Felder's argument that the proper comparison for

9    defendant's variable rate is solely the rates of the

10   incumbent utilities.  However, as it is addressed in the

11   breach of contract section above, allowing plaintiff to

12   make this comparison would be in a direct conflict with

13   the entire point of electricity deregulation."

14          There's a citation.  "Dr. Felder's report does

15   not attempt to make any comparison against the rates

16   charged by defendant's ESCO competitors.  Thus,

17   Dr. Felder's opinion and report, which rests upon an" --

18   "an unreliable methodology and insufficient data, is

19   simply inaccurate to support the conclusions reached."

20       Q    Okay.  Does that recall -- or refresh your

21   recollection regarding the court's decision on the

22   Daubert motion in the Agway case?

Page 35

1              MR. BLANKINSHIP:  Objection.  Calls for a

2      legal conclusion.  Outside the scope of this report.

3      Not a required discussion.

4              You can answer.

5              THE WITNESS:  I -- I haven't seen or read this

6      legal opinion when it was issued.  Um, but it does, um,

7      reflect what I've come to know.

8              BY MR. O'TOOLE:

9       Q    And you're not learning about that for the

10      first time here today, are you?

11      A    No, I'm --

12              MR. BLANKINSHIP:  Same objection.

13              THE WITNESS:  -- not.

14              BY MR. O'TOOLE:

15      Q    You just didn't read the opinion when it first

16      came out?

17              MR. BLANKINSHIP:  Same objections.

18              THE WITNESS:  That's correct.  I did not read

19      the opinion when it first came out.

20              BY MR. O'TOOLE:

21      Q    Okay.  And then how did you learn that you had

22      been struck on Daubert?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 36

1          MR. BLANKINSHIP:  I'm just going to caution

2     the witness not to disclose the contents of any

3     attorney/client or any communications you might have

4     with the attorneys that had retained you in that case.

5     If you can answer the question without disclosing that,

6     go ahead.  But otherwise, I'll instruct you not to

7     answer.

8          THE WITNESS:  I don't think I can answer that

9     question, then.

10          BY MR. O'TOOLE:

11     Q    Fair enough.  Let me see.

12          Do you have an understanding whether or not

13     that decision was appealed?

14          MR. BLANKINSHIP:  Objection.  Calls for a

15     legal conclusion.  Outside the scope of his report.  Not

16     a required disclosure.

17          You can answer.

18          THE WITNESS:  I don't have any information one

19     way or the other.

20          BY MR. O'TOOLE:

21     Q    Okay.  Um, so you don't have any understanding

22     what the second -- whether the appeals court in that

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 37

```
1      instance agreed with the district court judge that your

2      methodology was unreliable or whether it disagreed?  You

3      don't have any understanding of that?

4               MR. BLANKINSHIP:  Same objections.  Asked and

5      answered.

6               THE WITNESS:  I don't have any understanding

7      of whether the appeals court or any of the appeals court

8      has done with respect to this matter.

9               BY MR. O'TOOLE:

10        Q    Okay.  And so your test- -- you can only

11     recall being subject to one Daubert motion; is that

12     correct?

13              MR. BLANKINSHIP:  Same objections.

14              THE WITNESS:  That's all that I have been

15     informed of or know of.

16              BY MR. O'TOOLE:

17        Q    Okay.  And you don't have any understanding of

18     how the appeals court made their decision?

19              MR. BLANKINSHIP:  Same objection.  Asked and

20     answered.

21              THE WITNESS:  I don't know what "their" refers

22     to.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                        Page 38

1            BY MR. O'TOOLE:

2       Q    In the Agway matter.

3            MR. BLANKINSHIP:  Same objection.  Asked and

4    answered.

5            THE WITNESS:  I believe I've answered that

6    question.

7            BY MR. O'TOOLE:

8       Q    What was your answer?

9            MR. BLANKINSHIP:  Same objections.

10           THE WITNESS:  You can have the court reporter

11   repeat it.

12           MR. BLANKINSHIP:  If you can just answer.

13           THE WITNESS:  Okay.  I do not, as I said

14   before, I think at least twice -- I have no

15   understanding what the appeal court did in relation to

16   the Agway matter on the issue that you've -- we've been

17   discussing.

18           BY MR. O'TOOLE:

19      Q    That's fine.  That's fine, Dr. Felder.

20           (Felder Deposition Exhibit 2 marked for

21   identification.)

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 39

1            BY MR. O'TOOLE:

2       Q    So I will hand you now a copy of the appeal

3    court decision.

4            MR. BLANKINSHIP:  This is Exhibit 2?

5            MR. O'TOOLE:  That's correct.

6            BY MR. O'TOOLE:

7       Q    And, again, you're welcome to read the entire

8    opinion if you'd like.  I'm only going to be asking you

9    what's on page 10.  You can see the faint gray numbers

10   at the bottom right of the page.

11           Do you see the paragraph on the right-hand

12   side that begins with, "The district court concluded"?

13      A    Yes, I see that paragraph.

14      Q    Can you read that paragraph into the record,

15   please.

16           MR. BLANKINSHIP:  I'm just going to object.

17   Calls for a legal conclusion.  Outside the scope of his

18   report.  Not a required scope.

19           You can read it.

20           THE WITNESS:  "The district court concluded

21   that Dr. Felder's report was inadmissible under Federal

22   Rule of Evidence 702 because his conclusions about the

Page 40

1    overcharges were based on, quote, unreliable methodology

2    and insufficient data, end quote.  Namely, his

3    subjective views on the reasonableness of margins and

4    the unsupported contention, quote, that the proper

5    comparison for Agway's variable rate is solely the rates

6    of the incumbent utilities."

7                And then there's a citation.

8                BY MR. O'TOOLE:

9        Q    Okay.  And then just the next sentence, the

10    first sentence in -- in the following paragraph.

11                MR. BLANKINSHIP:  Same objections.

12                THE WITNESS:  "It was not, quote,

13    manifestively (sic) erroneously, end quote, for the

14    district court to exclude Dr. Felder's report."

15                BY MR. O'TOOLE:

16        Q    Okay.  And does that refresh your recollection

17    regarding how the second circuit ruled on your Daubert

18    motion?

19                MR. BLANKINSHIP:  Same objections.

20                THE WITNESS:  This does not reflect my

21    recollection because I did not have a recollection about

22    how the appeals court ruled.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 41

```
 1              BY MR. O'TOOLE:
 2        Q    You can put that to the side, Dr. Felder.  I
 3     now want to focus on your involvement with the Brous
 4     litigation.
 5              Um, when did your involvement with the case
 6     start?
 7              MR. BLANKINSHIP:  Objection.  Vague.
 8              I'm sorry.  I withdraw that.
 9              THE WITNESS:  I believe in late 2024, I may
10     have had some initial contacts regarding this matter.
11              BY MR. O'TOOLE:
12        Q    Okay.  And do you understand about what the
13     filing of complaint signifies in litigation?
14              MR. BLANKINSHIP:  Objection.  Calls for a
15     legal conclusion.  Outside the scope of his report.
16              THE WITNESS:  I only would have a vague
17     layman's understanding that it starts a legal process.
18              BY MR. O'TOOLE:
19        Q    Okay.  Did you work on the Brous matter before
20     the complaint was filed?
21        A    I don't know, because I don't know when a
22     complaint was filed, um, so I don't know one way or the
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 42

```
 1    other if I worked on it before or after the initial

 2    complaint where a complaint was filed.  I just don't

 3    know.

 4         Q    Okay.  Have you worked -- have you assisted

 5    Mr. Blankinship and Mr. McInturff's firms in ESCO cases

 6    before -- in other matters before the complaints in

 7    those actions were filed?

 8              MR. BLANKINSHIP:  Objection.  Outside the

 9    scope.  Not a required disclosure.

10              You can answer.

11              THE WITNESS:  I just don't know because I

12    wouldn't know when a complaint was filed.  And I would

13    not necessarily know if a complaint had been filed.

14              (Felder Deposition Exhibit 3 marked for

15    identification.)

16              BY MR. O'TOOLE:

17         Q    I will next mark -- this will be the second

18    amended complaint in Brous.  I'll mark it as Exhibit 3.

19              And, again, you're welcome to peruse the

20    entire complaint.  I'm just going to ask you about some

21    of the allegations beginning at -- at page 24, if you

22    want to have a quick look there.
```

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 43

1          Do you see how this -- this part of the

2     complaint is providing benchmarks comparing Eligo's

3     rates to, quote, the local utility's contemporaneous

4     supply rates?

5          MR. BLANKINSHIP:  Objection.  Mischaracterizes

6     the document.

7          You can answer.

8          THE WITNESS:  I see the heading that, I

9     believe, you're referring to, "Benchmark 1, The Local

10    Utility's Contemporaneous Supply Rate."

11         BY MR. O'TOOLE:

12    Q    Okay.  And then do you see on the -- the

13    following page that there's a table, the billing period,

14    Eligo rate and NYSEG rate, at the bottom of the page?

15    A    I see a table at the bottom of page 25.

16    Q    Okay.  Um, did you assist in any way with

17    compiling this data?

18         MR. BLANKINSHIP:  I'm going to object.  Um, if

19    Dr. Felder assisted, it was in his capacity as a

20    consulting expert, not a testifying expert, and so

21    that's privileged.

22         I'm going to instruct you not to answer that

Page 44

```
1    question.
2            MR. O'TOOLE:  Okay.  And is it your contention
3    that any testimony regarding a comparison between the
4    local utility supply rate and Eligo's rates would also
5    be likewise privileged?
6            MR. BLANKINSHIP:  Uh, well, obviously, that's
7    a subject to his report, since you're going to ask about
8    that.  But the question about whether he worked on this
9    table for the complaint is not -- if he did that, it was
10   not part of his work as a testifying expert.  It was --
11   it would have been as a consulting expert.  So that part
12   is privileged.  Obviously, I'm not going to stop you
13   from asking questions about the relationship between
14   utility rates and Eligo's rates as they're described in
15   his report.
16           MR. O'TOOLE:  Well, I guess our position would
17   be that there's a sort of shield problem here.  If you
18   were, in fact, relying on Dr. Felder's expert opinion in
19   drafting these and making allegations here, I believe
20   you're going to assert privilege at this point and argue
21   that we can't ask questions regarding this line of
22   inquiry.
```

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

                                                        Page 45

 1              MR. BLANKINSHIP:  Um, well, I -- I'm going to

 2      disagree.  I will say that it's -- this might be a

 3      little bit of a close call.  And why don't -- when we

 4      take a break, I'll confer with my team, and we can

 5      circle back if you want.  But for now, I'm not going to

 6      let him answer the question.

 7              MR. O'TOOLE:  And we'll -- we'll preserve

 8      our -- our disagreement with -- with your position here.

 9              MR. BLANKINSHIP:  Okay.  Un- -- understood.

10              BY MR. O'TOOLE:

11         Q    Okay.  Regarding the next point or the next

12      benchmark here, there's a comparison between Eligo's own

13      fixed rates and Eligo's variable rates.

14              Do you see that?

15              MR. BLANKINSHIP:  I'm sorry.  Where are you?

16              MR. O'TOOLE:  Oh, sorry.  Eh, this is on

17      page 28.

18              THE WITNESS:  Is there a question pending?

19              BY MR. O'TOOLE:

20         Q    Yeah.

21              So, I guess, do you see that?  Yes, Doctor?

22              MR. BLANKINSHIP:  I -- I'm sorry.  I'm lost.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 46

1           What paragraph are you on?

2           MR. O'TOOLE:  Sure.  So we're on page 28, the

3       foot of page 28.

4           MR. BLANKINSHIP:  Oh, I see.  Okay.  Thank

5       you.

6           BY MR. O'TOOLE:

7       Q    Do you see how there's benchmark 2 on Eligo's

8       own fixed rates?

9       A    I do see that.

10      Q    Okay.  And so I'll represent to you, just for

11      the sake of time, that we are looking here at a

12      comparison between Eligo's own fixed rates and Eligo's

13      variable rates as allegations of breach in this case.

14          Did you assist in any way with -- I guess,

15      first question, did you assist in any way with

16      calculating, um, these -- the -- the -- the

17      allegations --

18          MR. BLANKINSHIP:  I'm just going to object.

19      That's out the -- outside the scope of the expert

20      report.

21          And for the same reasons as the last table,

22      I'm going to instruct you not to answer the question

Page 47

1      about whether you assisted with preparing this

2      information that's in the complaint.

3                  MR. O'TOOLE:  Fair enough.

4                  BY MR. O'TOOLE:

5          Q    And then -- so for the next benchmark,

6      benchmark 3.

7                  Do you see that it says "market supply costs"?

8          A    I see the heading, "Benchmark 3, Market Supply

9      Cost," on page 30.

10         Q    Do you have an understanding what "market

11     supply cost" mean here?

12                 MR. BLANKINSHIP:  I'm going to object to the

13     extent it's outside of the scope of his report.

14                 But you can answer.

15                 THE WITNESS:  This document describes market

16     supply cost in paragraph 88 and subsequently in the

17     following paragraphs, 89, and perhaps other places as

18     well.

19                 BY MR. O'TOOLE:

20         Q    Okay.  And I guess I'll ask the same question.

21                 For the record, did you assist at all in

22     preparing this section of the complaint?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 48

```
 1              MR. BLANKINSHIP:  Yeah.  And for the same

 2      reasons, I'm going to instruct you not to answer that

 3      question.

 4              BY MR. O'TOOLE:

 5         Q   I guess a separate question, sitting here

 6      today, um, do you agree that the comparison between

 7      Eligo's market supply cost can be as a basis for --

 8      for -- for breach in this case?

 9              MR. BLANKINSHIP:  Objection.  Calls for a

10      legal conclusion.  Outside the scope of his report.

11              THE WITNESS:  Um, I have not asked that

12      question or been asked that -- answer that question in

13      this matter.

14              BY MR. O'TOOLE:

15         Q   Okay.  And you're not offering any opinion

16      here today calculating class-wide damages that would be

17      comparing market supply costs?

18              MR. BLANKINSHIP:  Objection.  Mischaracterizes

19      his testimony.

20              THE WITNESS:  My report does make a variety of

21      comparisons, um, but I'm not offering any opinion

22      regarding the interpretation of the contract or whether
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 49

```
 1    or not it was breached or any contracts involved in this

 2    matter.

 3              BY MR. O'TOOLE:

 4        Q    Okay.  Would you say that you're -- wha- -- so

 5    I guess you're not offering any interpretation of the

 6    contract; correct?

 7        A    As I just said, I'm not offering any

 8    interpretation of the contract in this -- or contracts

 9    in this matter.

10        Q    Okay.  Um, as a separate matter, in terms of

11    calculating damages, would you agree that your

12    calculations that you're offering, irrespective of the

13    question of whether the contract is being breached, is

14    consistent with the market supply costs that are listed

15    here?

16              MR. BLANKINSHIP:  Objection.  Vague and

17    outside the scope of his report.

18              THE WITNESS:  Um, they are -- in the document

19    that I'm looking at, I guess Exhibit 3, the description

20    of paragraphs 88 and 89 are broadly consistent with one

21    of the methods I employed in my direct testimony or my

22    direct report in this matter.
```

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 50

1              BY MR. O'TOOLE:

2        Q    Okay.  And the same question regarding

3    benchmark 1.

4        A    Just could you re- --

5              MR. BLANKINSHIP:  I'm sorry.  Is there a

6    question pending?

7              BY MR. O'TOOLE:

8        Q    There is no question pending.

9        A    There's no --

10       Q    You're on benchmark 1 on page 24?

11       A    I'm on page 24, yes.

12       Q    Okay.  Great.

13             And is the -- is the -- the calculation that

14   you have performed in your report, comparing the local

15   utility rates to the rates Eligo charged, is that

16   consistent with what you see here, the allegations

17   regarding local utility's contemporaneous supply rate?

18             MR. BLANKINSHIP:  Objection.  Vague and

19   outside the scope.

20             THE WITNESS:  Yes, what's described in

21   paragraphs 73 and 74 of the exhibit I'm looking at is

22   consistent or broadly consistent with one of the methods

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 51

1       I -- I used in my direct report.

2                   BY MR. O'TOOLE:

3           Q     Okay.  And the same question for benchmark 2.

4                   Is that consistent with any methods that

5       you've used in your report?

6                   MR. BLANKINSHIP:  Same objections.  Outside

7       the scope.  And vague.

8                   It's on page 28.

9                   MR. O'TOOLE:  28 and 29.

10                  MR. BLANKINSHIP:  It's at the bottom.

11                  THE WITNESS:  No, I did not do a comparison

12      between Eligo's fixed rates and its variable rates in my

13      re- -- report -- reports in this matter that I've

14      submitted.

15                  BY MR. O'TOOLE:

16          Q     Okay.  And your testimony was that you don't

17      recall whether you assisted with this case before the

18      filing of the complaint; correct?

19                  MR. BLANKINSHIP:  Objection.  Asked and

20      answered.

21                  THE WITNESS:  Yes, as I said in -- I think,

22      twice, but I will say it again, I wouldn't know.  I may

Page 52

```
 1      not necessarily know when the complaint was filed.

 2                BY MR. O'TOOLE:

 3         Q    Okay.  When do you -- let's take through these

 4      cases that you've listed so far.

 5                When do you first recall working on the Agway

 6      case?  Do you recall the year?

 7                MR. BLANKINSHIP:  Objection.  Outside the

 8      scope.  Not required disclosure.

 9                You can answer.

10                THE WITNESS:  I do not recall the year when I

11      was first contacted about the Agway case.

12                BY MR. O'TOOLE:

13         Q    Okay.  And how about XOOM?

14                MR. BLANKINSHIP:  Same objections.

15                THE WITNESS:  I do not recall the year I was

16      first contacted about the XOOM case.

17                BY MR. O'TOOLE:

18         Q    CleanChoice?

19                MR. BLANKINSHIP:  Same objections.

20                THE WITNESS:  I do not recall the year that I

21      was contacted about CleanChoice.

22
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 53

```
1              BY MR. O'TOOLE:
2        Q    Do you have any idea when that complaint was
3    filed?
4              MR. BLANKINSHIP:  Same objections.  Vague.
5              THE WITNESS:  No, I do not.
6              BY MR. O'TOOLE:
7        Q    Okay.
8        A    As I said, I -- I may not know when a
9    complaint is filed.
10       Q    Ambit?
11             MR. BLANKINSHIP:  Same objections.
12             THE WITNESS:  Um, same answer.  I don't recall
13   when I was first contacted for that matter.
14             BY MR. O'TOOLE:
15       Q    In -- in any of these cases, have you assisted
16   in drafting the complaint?
17             MR. BLANKINSHIP:  Same objections.
18             And I think for the same reason, um, I'm going
19   to instruct you not to answer.
20             Because if he did assist in directing those
21   complaints as a consulting expert, I mean, I honestly --
22   I -- I don't know, frankly, where the privilege extend
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 54

1    to some of the cases where I didn't work on, so -- but

2    I'm going to -- but I'm -- on -- for the same reason I

3    said before, I will instruct you not to answer that

4    question.

5              BY MR. O'TOOLE:

6         Q    And did you review any drafts of those

7    complaints?

8              MR. BLANKINSHIP:  Same thing.

9              I'm going to instruct you not to answer for

10   the same reason.

11             BY MR. O'TOOLE:

12        Q    And for the question regarding class

13   definition or theories that appear on those complaints,

14   did you do any review there?

15             MR. BLANKINSHIP:  Same instruction.  That's --

16   yeah, don't answer that for the same reasons.

17             BY MR. O'TOOLE:

18        Q    Have you ever -- in any of the cases, have

19   you -- have you -- I guess I take it you've reviewed

20   discovery, pro- -- produced materials in your materials

21   considered list, right, for the --

22             MR. BLANKINSHIP:  Objection.  Vague.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 55

1              MR. O'TOOLE:  Sure, sure, sure.

2              BY MR. O'TOOLE:

3         Q    So in this litigation, you've produced an

4    exhibit as part of your report that list the materials

5    that you've considered; correct?

6         A    That's correct.

7         Q    Okay.  And among those materials considered is

8    material that's been produced by Eligo in discovery;

9    correct?

10        A    That is correct.

11        Q    Okay.  So it's fair to say that you've

12   reviewed -- as part of your work over the past 12 years

13   as an expert, that you've reviewed discovery that's been

14   produced; is that correct?

15             MR. BLANKINSHIP:  Objection.  Vague.

16             MR. O'TOOLE:  What basis?

17             MR. BLANKINSHIP:  Produced in what case?  This

18   case?

19             MR. O'TOOLE:  In any case.  The 12 cases.

20             MR. BLANKINSHIP:  Oh, yeah, then I'm not --

21   seeing that's outside the scope of his report and not a

22   required disclosure.

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 56

1           THE WITNESS:  I reviewed discovery material in

2     various litigation matters that I've been involved with

3     over the years.

4           BY MR. O'TOOLE:

5      Q     Have you ever assisted with the drafting of

6     discovery requests?

7           MR. BLANKINSHIP:  I'm going to instruct you

8     not to answer that question for the same reasons.

9           BY MR. O'TOOLE:

10      Q     And same question regarding formulating

11    interrogatories, request for production, those kind of

12    documents, have you assisted there?

13          MR. BLANKINSHIP:  For the same reason, I'm

14    going to instruct you not to answer that question.

15          BY MR. O'TOOLE:

16      Q     Okay.  So how much are you charging per hour

17    currently?

18          MR. BLANKINSHIP:  Objection.  Vague.

19          BY MR. O'TOOLE:

20      Q     So how much -- I can rephrase.

21          How much are you charging per hour in this

22    litigation?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 57

1      A     That's in my report, but $550 an hour.

2      Q     And how long has that been your rate?

3      A     It's been my rate in -- for this entire

4    litigation, if that's what you're asking.  I'm not clear

5    what you're asking.

6      Q     Yeah.  So that -- that is helpful to know that

7    it's been your rate for this entire litigation.

8            When was the last time you changed your price?

9      A     The last time I changed my rate for this type

10   of litigation, I believe, was in 2023.

11     Q     Okay.  And what was it in 2023?  What was your

12   rate?

13     A     I think it was in the neighborhood of 300 or

14   $350 an hour, but I could be wrong.

15     Q     Okay.  And why did you change your rate?

16           MR. BLANKINSHIP:  Objection.  Outside the

17   scope.

18           You can answer.

19           THE WITNESS:  I changed my rate based on the

20   type of work and my expertise in this area.

21           BY MR. O'TOOLE:

22     Q     Okay.  Do you know how much you've billed as

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 58

```
 1    part of this litigation?
 2         A    No, I do not.
 3         Q    You would have invoiced your counsel, the law
 4    firms that you're working for in order to get paid.
 5    That's fair; correct?
 6              MR. BLANKINSHIP:  Objection.  Outside the
 7    scope.
 8              You can answer.
 9              THE WITNESS:  Yes.  The way that one receives
10    payment is invoicing a client and receiving a check.
11    That's typically how it works --
12              BY MR. O'TOOLE:
13         Q    Fair enough.
14         A    -- in my experience.
15         Q    How do you save those invoices?
16              MR. BLANKINSHIP:  Same objections.
17              THE WITNESS:  I just didn't hear you.
18              Can you --
19              BY MR. O'TOOLE:
20         Q    Have you saved those invoices somewhere?
21              MR. BLANKINSHIP:  Same objections.
22              THE WITNESS:  Yes, I have those invoices.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 59

```
 1              BY MR. O'TOOLE:

 2       Q    And where are they?

 3              MR. BLANKINSHIP:  Same objections.

 4              THE WITNESS:  They are on my computer.

 5              BY MR. O'TOOLE:

 6       Q    Where?  Hard drive or something like that?

 7              MR. BLANKINSHIP:  Same objections.

 8              THE WITNESS:  Yes, on my computer or hard

 9       drive.  Although they may be in the cloud, so maybe

10       literally, not on my hard drive.  But I could have

11       copies also on my hard drive.

12              BY MR. O'TOOLE:

13       Q    Okay.  So independent of the content of the

14       advice, if you've given any advice to counsel,

15       independent of that question, how many hours have you

16       spent doing anything in this litigation, anything on the

17       Brous litigation on any related work that isn't your two

18       expert reports that you've produced here?

19              MR. BLANKINSHIP:  Objection.  Compound.

20       Outside the scope and not a required disclosure.

21              You can answer if you can.

22              THE WITNESS:  I'm not sure I've followed
```

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 60

```
1      the -- the question.

2             BY MR. O'TOOLE:

3        Q    Sure.

4             So you've testified so far that you don't

5      recall whether you were -- whether you were retained

6      before or after the complaint was filed.  And your

7      counsel is asserting objections as to the content of any

8      advice, if you did provide it, and instruct you not to

9      answer, you followed that instruction.

10            I guess my question is -- we know that you

11     filed a report, and then we know that you filed a

12     rebuttal report.  We know that you're here today

13     testifying.

14            Um, my question is, have you done any other

15     work in this case that you've billed for?

16            MR. BLANKINSHIP:  Yeah, I'm going to -- for

17     the same reasons before, I'm going to instruct you not

18     to answer that question.  That is just an end run, the

19     attempt to find out whether he's done consulting work as

20     opposed to testifying work.  So don't answer that.

21            MR. O'TOOLE:  I -- we will state our

22     objection.  It's not an end run.  It's the -- it's
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 61

```
1      independent from the content of any advice he's been

2      given, if he has been given advice.

3                  MR. BLANKINSHIP:  Okay.  I think the privilege

4      issue is -- is -- even his identity as a consulting

5      expert, if he was one, and whether he billed time for

6      that is relevant to that question.

7                  MR. O'TOOLE:  You're contending that the

8      identity of the consulting expert is privileged?

9                  MR. BLANKINSHIP:  I am, yes.  Like I

10     mentioned, I think this is a little bit of a close call.

11                 MR. O'TOOLE:  Okay.

12                 MR. BLANKINSHIP:  We're going to confer when

13     we take a break, and we can circle back to that, but for

14     now, yes.

15                 MR. O'TOOLE:  Okay.  And you're aware of

16     authority in the second circuit that says that the

17     identity of a client is not privileged?

18                 MR. BLANKINSHIP:  I am not going to argue the

19     issue with you.  If you want, like I said, when we're on

20     break, I'll circle back --

21                 MR. O'TOOLE:  Okay.

22                 MR. BLANKINSHIP:  -- and we'll figure this
```

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 62

1    out.

2              But for now, I'm going to instruct you not to

3    answer that question.

4              MR. O'TOOLE:  Okay.  And to be clear, the

5    position is that -- is binary, whether or not he has

6    served as a consulting expert is privileged?

7              MR. BLANKINSHIP:  Yes.

8              MR. O'TOOLE:  Okay.  All right.

9              BY MR. O'TOOLE:

10       Q    Okay.  So, I guess, do you have an idea of how

11   many hours you spent on your first report?  I mean -- I

12   should rephrase it.

13             Do you know how many hours you have billed for

14   your first report?

15             MR. BLANKINSHIP:  I'm going to object.  It's

16   not a required disclosure.

17             You can answer.

18             THE WITNESS:  No, I do not.

19             BY MR. O'TOOLE:

20       Q    Okay.  I guess let's -- let me -- let me take

21   a step back.

22             You are -- you run your own consulting firm;

Page 63

1      is that correct?

2           A    That's correct.

3           Q    Okay.  And what's the name of it?

4           A    Independent Electricity Consultants, LLC.

5           Q    Okay.  So just for -- for -- to help -- to

6      help me with that, I'm going to call that IEC.

7                So how many people work at IEC?

8           A    IEC has no employees.  My -- Carla Felder is a

9      partner, and she helps me time to time on various

10     matters.

11          Q    Okay.  You said they don't have any employees.

12               Do you work with any independent consultants?

13               MR. BLANKINSHIP:  Objection.  Vague.

14               THE WITNESS:  Yes.

15               BY MR. O'TOOLE:

16          Q    Okay.  And so from time to time, would you

17     assign tasks to an independent consultant that you, for

18     example, don't have the time to take on?

19               MR. BLANKINSHIP:  Same objections.

20               THE WITNESS:  Yes, I have used independent

21     consultants.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 64

1          BY MR. O'TOOLE:

2      Q    Are there any independent consultants that you

3    work on a, let's just say, regular basis with?

4          MR. BLANKINSHIP:  Same objections.

5          THE WITNESS:  Yes, there are.

6          BY MR. O'TOOLE:

7      Q    Okay.  And who are those independent

8    consultants?

9          MR. BLANKINSHIP:  Same objections.

10         THE WITNESS:  One is an editor, and he's

11   located in the UK.  And the other is Matt Livingston.

12         BY MR. O'TOOLE:

13     Q    What is the name of the editor in the UK?

14         MR. BLANKINSHIP:  Same objections.

15         Go ahead.

16         THE WITNESS:  Not good with names.  I would --

17   I just -- honestly, I just don't recall.

18         BY MR. O'TOOLE:

19     Q    Do you recall his first name?

20         MR. BLANKINSHIP:  Same objections.

21         THE WITNESS:  Let's see.  It will come to me

22   on a break or something.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 65

1                   BY MR. O'TOOLE:

2          Q    Do you recall a surname?

3                   MR. BLANKINSHIP:  Same objections.

4                   THE WITNESS:  No, I di- -- I'm blanking on his

5          name.

6                   BY MR. O'TOOLE:

7          Q    Okay.  But is it fair to say there is one

8          editor in the UK that you're referring to?  There's one

9          specific distinct person?

10                  MR. BLANKINSHIP:  Objection.  Asked and

11         answered.

12                  THE WITNESS:  Yes, it is.

13                  BY MR. O'TOOLE:

14         Q    And you mentioned that you also work with Matt

15         Livingston.

16                  Who is Matt Livingston?

17         A    Matt Livingston is -- works in the industry,

18         and he provided support on this matter.

19         Q    Okay.  Apart from the editor in the UK and

20         Matt Livingston, are there any other independent

21         consultants that you work with?

22                  MR. BLANKINSHIP:  Same objections.

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 66

```
 1            THE WITNESS:  Not on a routine basis that I
 2      recall.
 3            BY MR. O'TOOLE:
 4      Q    Okay.  So you've testified that Matt
 5      Livingston worked on this litigation.
 6            Did the editor in the UK work on this
 7      litigation at all?
 8      A    No, he did not.
 9      Q    And one point to clarify.  You mentioned that
10      Carla Felder is a partner.
11            Do you mean that in a legal sense, that she is
12      one of the partners of IEC?
13      A    I believe so, yes.
14      Q    Okay.
15      A    Yeah, or owner.
16      Q    But you're not referring to, like, a -- a --
17      whe- -- when you say that, you don't mean in the sense
18      of a personal relationship.  It could be a personal
19      relationship as well, but for the purposes of your --
20      of -- of this question, I guess I'm asking, that's
21      another one of the partners at the firm?
22      A    That's right.  A co-owner, yes.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 67

```
 1         Q    Okay.  All right.  So can you describe the
 2    kind of work that Matt Livingston did on this case?
 3         A    Yes.
 4         Q    Okay.  Please provide a description of that.
 5         A    Matt Livingston did a variety of support on
 6    computations for my direct and rebuttal report.
 7         Q    Okay.  And his identity wasn't disclosed
 8    anywhere in the report, was it?
 9         A    Subject to check, I -- I don't believe so.
10         Q    Okay.  And when you say support on the
11    computations, what do you mean by that?
12         A    In order to do methods, the various
13    calculation for methods, it involved a database, as I
14    described in my report, of over 800,000 invoices.  We
15    applied four different methods in the direct report and
16    then some additional analyses in the rebuttal report.
17    So that involved implementing -- or implementing the --
18    the calculations for the numerical results I provided
19    in -- in my re- -- report.
20         Q    Okay.  You said "800,000 invoices."
21              What are you referring to there?
22         A    If you could provide me a copy of my report, I
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 68

1       can point you to it.

2           Q    I can.  I can.  We will -- I'll tell you what,

3       we will probably -- we'll be marking your report soon

4       enough, and I'll put a pin in this, and we can come back

5       to that.

6               Okay.  So in terms of you said no one apart

7       from you and Matt Livingston worked on the first report.

8               Is that fair?

9           A    I did not say that.

10          Q    Okay.  Who else worked on this report?

11          A    Carla Felder.

12          Q    Carla Felder.  Okay.

13              And what did she do on the report?

14          A    She downloaded files that provided the input

15      for various calculations in the report and organized

16      those files and did straightforward calculations.

17          Q    Which files did she download?

18          A    They were files involving the price to compare

19      the utilities, energy prices from the New York ISO, the

20      wholesale electricity market operator, both prices and

21      load demand in megawatt hours and other files related to

22      components of utilities price to compare, and background

Page 69

1    research.

2         Q    Okay.  Um, do you have an estimate of how many

3    hours Matt Livingston spent on the first report and how

4    many hours would you say you billed for Matt

5    Livingston's work on the first report?

6              MR. BLANKINSHIP:  I'm going to object.

7    Outside of the scope and not a required disclosure.

8              You can answer.

9              THE WITNESS:  I don't know the number of hours

10   he worked on the first report.

11             BY MR. O'TOOLE:

12        Q    Do you have an estimate?

13             MR. BLANKINSHIP:  Same objections.

14             THE WITNESS:  I think it's in the neighborhood

15   of 50 to a hundred, but I would have to check.

16             BY MR. O'TOOLE:

17        Q    Okay.  And what is his current rate?

18        A    His rate --

19             MR. BLANKINSHIP:  Same objections.

20             THE WITNESS:  -- his rate is $250 an hour.

21             BY MR. O'TOOLE:

22        Q    And how about Carla Felder?

Page 70

1           MR. BLANKINSHIP:  Same objections.

2           THE WITNESS:  Her rate is $125 an hour.

3           BY MR. O'TOOLE:

4       Q   What are the qualifications of Matt

5   Livingston?

6       A   Matt --

7           MR. BLANKINSHIP:  Same objections.

8           You can answer.

9           THE WITNESS:  -- Matt Livingston had been

10  working doing data analysis and coding in the

11  electricity and energy industry for about ten years.  He

12  has a background in computer programming, an

13  understanding of electricity markets, and managing and

14  manipulating and calculating large data sets.

15          BY MR. O'TOOLE:

16      Q   Okay.  And none of his background was

17  disclosed before today.

18          Is that fair?

19          MR. BLANKINSHIP:  Same objections.

20          THE WITNESS:  I -- it's not in my report.

21  Whether the attorneys disclosed it, I don't know.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 71

1              BY MR. O'TOOLE:

2        Q    Okay.  And same question regarding Carla

3    Felder.

4              What is her background?

5              MR. BLANKINSHIP:  Same objections.

6              THE WITNESS:  Her background is, she's an

7    engineer in training.  She has a background in computers

8    and both software and hardware.  And she's been working

9    with me for the last three years, so she has experience

10   based on that.

11             BY MR. O'TOOLE:

12       Q    Okay.  Are you related to Carla Felder?

13       A    Yes, I am.

14       Q    Are you her father?

15       A    I'm her husband.

16       Q    Husband.  Okay.  Okay.

17             So you estimated that Matt Livingston spent

18   between 50 to a hundred hours on the first report.

19             How many hours do you estimate that he spent

20   on the rebuttal report?

21             MR. BLANKINSHIP:  Same objections.

22             THE WITNESS:  Something of that order.  Maybe

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 72

1    a little less, but I just don't recall.  I'm not sure.

2              BY MR. O'TOOLE:

3        Q    And same questions regarding Carla Felder.

4              How many hours do you estimate she spent on

5    the first report?

6              MR. BLANKINSHIP:  Same objections.

7              THE WITNESS:  The -- she didn't -- I don't

8    believe any time on the rebuttal report.  Regarding the

9    first report, um -- yeah, I -- I don't know.  It would

10   be in a broad neighborhood of 50 to a hundred hours, but

11   I would have to check to be sure.

12             BY MR. O'TOOLE:

13       Q    Just to make sure I understand your testimony,

14   you're saying over the two reports, she would have spent

15   50 to a hundred hours?

16             MR. BLANKINSHIP:  Same objections.

17             THE WITNESS:  I -- I believe so.  I don't

18   think she spent any time on the first report -- I mean,

19   on the rebuttal report.  The -- some of this goes to the

20   privileged conversation.  So in terms of the first

21   report, I think that the rough estimate I gave you is

22   accurate or, you know, it's a rough estimate.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 73

```
 1            BY MR. O'TOOLE:
 2       Q    And did either Carla or Matt Livingston --
 3    Carla Felder or Matt Livingston, did they assist you in
 4    preparing for your deposition?
 5       A    No, they did not.
 6       Q    And they haven't billed any time in connection
 7    with that?
 8       A    They have not billed any time in connection
 9    with this deposition.
10       Q    What did you do to prepare for the deposition?
11       A    I reread my report, the re- -- report of
12    Dr. Erin.  I read my rebuttal report.  I reviewed
13    various work papers of mine.  And I spoke with counsel.
14       Q    Okay.  And those work papers of yours, those
15    haven't been produced, have they?
16            MR. BLANKINSHIP:  I'm going to object as
17    vague.
18            You can answer.
19            THE WITNESS:  As -- I have provided some --
20    some work papers to the plaintiffs' attorneys.  What
21    they've done with it, I don't know.
22
```

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 74

```
 1              BY MR. O'TOOLE:
 2       Q    Okay.  That's fair.
 3              So how many hours do you estimate that you
 4    have spent on the first report?
 5              MR. BLANKINSHIP:  Objection.  Scope and
 6    required disclosure.
 7              You can answer.
 8              THE WITNESS:  In the range of 50 to a hundred,
 9    something like that, but, again, I would have to check.
10              BY MR. O'TOOLE:
11       Q    Okay.
12       A    I could be off.
13       Q    And how about the second report?
14              MR. BLANKINSHIP:  Same objections.
15              THE WITNESS:  It would be similar, maybe a
16    little less.
17              BY MR. O'TOOLE:
18       Q    Okay.  And then how many hours for your
19    deposition prep?
20       A    Fifteen to 20 --
21       Q    Okay.
22       A    -- I haven't invoiced those yet.
```

Frank A. Felder , Ph.D.                                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 75

1          Q    All right.  So I guess conservatively, using

2     the most conservative estimate, you've worked 115 hours

3     on this case; correct?

4               MR. BLANKINSHIP:  Same object- -- same -- same

5     objections.

6               You can answer.

7               THE WITNESS:  I haven't added up the numbers

8     in my mind, but that could be a reasonable estimate of

9     the amount of time I've worked on this case.

10              BY MR. O'TOOLE:

11         Q    Okay.  And so conservatively, to multiply 115

12    by 550 -- you have your bachelor's in mathematics.

13              Is that right?

14              Okay.  So I'm going to put you on the spot.

15    Just a mental math.  If you're multiplying 115 by 550,

16    that's probably a number that's bigger than 60,000.

17              Is that fair?

18              MR. BLANKINSHIP:  Same objections.

19              THE WITNESS:  I would say the math I studied

20    in college didn't involve multiplying discrete numbers,

21    so I would have used a calculator.

22              But would you like me to power up my phone and

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 76

1     calculate it?  I'm happy to do so.

2               BY MR. O'TOOLE:

3          Q    Sure.

4               Are you ready?

5          A    No, I have to turn on my phone.

6          Q    That's fine.

7          A    So remind me of the question, of the

8     calculation I'm doing, please.

9          Q    Sure.  So it's 115 times 550.

10              MR. BLANKINSHIP:  I'm just going to object

11    again for the same reasons.

12              THE WITNESS:  When I multiply 115 times 550, I

13    get 63,250.

14              BY MR. O'TOOLE:

15         Q    Okay.  So my initial question was it's north

16    of 60,000.  So you're looking at 63,000.  Now, the

17    estimates that you gave were 50 to a hundred, 50 to a

18    hundred, and 15 to 20.

19              So I guess that would be -- you're looking at

20    a total of 220 hours.  If you were to multiply 220 by --

21    by 550, that gives you 110,000.

22              Is that right?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 77

1              MR. BLANKINSHIP:  I'm just going to object

2       that there's a lack of foundation.  And I think your

3       math is -- well, I'll just object to lack of foundation.

4       Same objections before about the scope and required

5       disclosure.

6              THE WITNESS:  Please remind me of the two

7       numbers I'm asked to multiply.

8              BY MR. O'TOOLE:

9       Q    Sure.  So it's 220 times 550.

10      A    Multiplying 220 times 550 gives 121,000.

11      Q    Okay.

12             MR. O'TOOLE:  So, yeah, that's -- that's fair,

13      Counsel.  I was off by a factor of ten.  I

14      underestimated it by a factor of ten.

15             BY MR. O'TOOLE:

16      Q    So you've billed -- not including the time

17      that you're spending here today, you've billed somewhere

18      between 63,000 and 120,000.

19             Is that right?

20             MR. BLANKINSHIP:  Objection.  Objection.

21      Asked and answered.  Outside the scope and required

22      disclosure.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 78

1            You can answer it.

2            THE WITNESS:  I've provided you rough

3      estimates of the number of hours that I've worked.  I've

4      provided you my hourly rate.  We've done some

5      calculations based on some of those data points.  So

6      based on those calculations, assuming that my rough

7      estimates that I provided today are reasonable and

8      correct, then, yes, it follows.

9            BY MR. O'TOOLE:

10     Q     Okay.  And that would just be your rates;

11     right?  Matt Livingston and Carla Felder have also

12     billed Mr. Blankinship's firm for their time; correct?

13           MR. BLANKINSHIP:  Same objections.

14           THE WITNESS:  They've billed their time for --

15     to all the law firms involved.

16           BY MR. O'TOOLE:

17     Q     Okay.  Fair.  Fair.

18           When I say "Mr. Blankinship's firm," yeah, I'm

19     referring to -- to -- to both firms here.

20           So if your -- if your invoice is lower or

21     somewhere between 63- and 121,000, Matt is billing out

22     at about half the rate of you.  We're looking at a

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 79

```
 1      conservative estimate of about $100,000 that you've
 2      billed so far for this litigation; is that correct?
 3                  MR. BLANKINSHIP:  Objection.  Vague.  Lack of
 4      foundation.  Same objections about scope and required
 5      disclosure.
 6                  You can answer.
 7                  THE WITNESS:  I -- yeah.  That's a plausible
 8      number, subject to check.
 9                  BY MR. O'TOOLE:
10      Q     Okay.  And I guess if we were taking the more
11      liberal approach as oppo- -- as opposed to the more
12      conservative approach, you'd be looking at something
13      close to 200,000; right?
14                  MR. BLANKINSHIP:  Same objections.
15                  THE WITNESS:  If you multiply two larger
16      numbers, yes, you get a larger number.
17                  BY MR. O'TOOLE:
18      Q     So I don't think that's answering my question.
19      If you take a more -- what -- the -- the limits you've
20      given us, the -- the range you've given us, because your
21      testimony is that you don't recall what invoices you
22      have provided in this report, your testimony is that you
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 80

1    spent between 50 and a hundred hours, and you said that

2    for Matt Livingston as well.  So you would agree that a

3    hundred is twice as big as 50; correct?

4                 MR. BLANKINSHIP:  Objection.  Argumentative.

5    Same objections as before.

6                 THE WITNESS:  Yes, as I said, if you multiply

7    a larger number times 550, then you get a larger number

8    than if you multiply the smaller number.

9                 BY MR. O'TOOLE:

10       Q    Okay.  Do you know -- so over the past

11   12 years that you've worked on ESCO litigation, how much

12   have you made in that capacity?

13                MR. BLANKINSHIP:  Objection to scope.  Outside

14   of the required disclosure.

15                You can answer if you know.

16                THE WITNESS:  I do not know how much I've made

17   in that capacity.

18                BY MR. O'TOOLE:

19       Q    Okay.  But you said you've been on one dozen

20   to two dozen, maybe even more cases; is that correct?

21                MR. BLANKINSHIP:  Objection.  Asked and

22   answered.  Otherwise, same objections.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 81

1          THE WITNESS:  As I described, the cases can

2     range in level of effort over the years.  And I don't

3     know if you mean cases as in a legal case or just some

4     type of initial consul- -- consultation.  And in

5     addition, when we talk about cases, you added this

6     multiplier.  So if it was, perhaps in my mind, one case

7     but in multiple jurisdictions or one case in the same

8     jurisdiction but with multiple companies, so -- but

9     under that definition, I think I said something between

10    a dozen and two dozen or whatever I said.

11          BY MR. O'TOOLE:

12    Q    Okay.

13    A    But I do not know a firm estimate.

14    Q    And -- and in terms of providing an estimate

15    there, is it fair to say that you've billed more than a

16    million dollars over the 12 years?

17          MR. BLANKINSHIP:  Same objections.

18          THE WITNESS:  I don't -- I would have to

19    check.  I don't think that's a -- I'm not sure what you

20    mean by "fair."  I -- to be honest, I really don't know

21    what the total is.  So I don't know how to characterize

22    it as fair or unfair, your number.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 82

1              BY MR. O'TOOLE:

2         Q    Okay.  You issued invoices in those cases.

3              Is that fair to say?

4              MR. BLANKINSHIP:  Same objections.

5              THE WITNESS:  Yes.  We've discussed how

6    invoices work in -- yes, I issued invoices in all my

7    work.

8              BY MR. O'TOOLE:

9         Q    Okay.  Are those invoices stored at the same

10   place that your invoices for the Brous litigation is

11   stored?

12             MR. BLANKINSHIP:  Same objections.  Outside

13   the scope of required disclosure.

14             You can answer.

15             THE WITNESS:  They're stored on the same

16   computer or access to the same remote cloud, so to

17   speak, but they're obviously in different locations

18   physically.  The files are different files, so they have

19   to be in different locations.  They're on my computer in

20   different files or folders.

21             BY MR. O'TOOLE:

22        Q    Okay.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 83

1              MR. BLANKINSHIP:  Leo, is now a good time for

2       a break?

3              MR. O'TOOLE:  Yeah, we could take a break.

4              THE WITNESS:  And I should say --

5              THE VIDEOGRAPHER:  I'm sorry.

6              This marks the end of Media Unit Number 1.

7       Going off the record.  The time is 10:33 a.m.

8              (Short recess taken.)

9              THE VIDEOGRAPHER:  This marks the beginning of

10      Media Unit Number 2.  Going back on the record.  The

11      time is 10:48 a.m.

12              BY MR. O'TOOLE:

13         Q    Thanks very much, Dr. Felder.

14              I'd like to go back and understand a little

15      bit better how you've assisted on this case.

16              Apart from preparing your report -- apart from

17      preparing your expert report and preparing for this

18      deposition, so what else have you done for -- for the --

19      for the Brous litigation?

20              MR. BLANKINSHIP:  I'm going to instruct you

21      not to answer that question.

22              Anything else that he did, if he did anything,

Page 84

1      would have been in the role as a consulting expert, not

2      a testifying expert, so he is not required to disclose

3      that.

4                 MR. O'TOOLE:  And I guess for the purpose

5      of -- of -- of creating a record here, Mr. Blankinship,

6      you and I had a colloquy during the break regarding your

7      legal authority on that point.

8                 Could you state what that is for the record?

9                 MR. BLANKINSHIP:  Rule 26(b)(4) says that

10     consulting ex- -- discovery with consulting experts is

11     not required as an exceptional circumstances and ample

12     authority that that -- that the identity of a consulting

13     expert is also work product.

14                MR. O'TOOLE:  What is that ample authority?

15                MR. BLANKINSHIP:  I am not going to look up

16     the cases for you.  You're welcome to research it

17     yourself.  You might feel confident that that's the real

18     case law.

19                MR. O'TOOLE:  Sure.  So I guess on that point,

20     I think it's so obvious and self-evident a proposition

21     that I'm referring a case in law school on this point.

22     So it's United States v. Eight.  And that's a second

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 85

1      circuit case from 1944 --

2              THE REPORTER:  Please slow down.

3              MR. O'TOOLE:  Sure.

4              THE REPORTER:  You're speaking --

5              MR. O'TOOLE:  Sorry.  Yeah.

6              So it is so obvious and self-evident a

7      proposition that I recall reading this in law school

8      many moons ago that the identity of a client under

9      attorney/client privilege isn't privileged.  It seems to

10     me extremely unlikely, notwithstanding the fact that you

11     argued there's ample authority to the contrary that

12     whether Mr. Felder or not was a -- did any other work in

13     this case is somehow covered by attorney/work product

14     privilege.

15             MR. BLANKINSHIP:  It sounds like you're saying

16     in the case about attorney/client privilege, which is

17     not the same privilege.

18             MR. O'TOOLE:  It's not the same privilege, but

19     it would seem to apply with even greater strength.

20     Okay?

21             MR. BLANKINSHIP:  That's incorrect.

22             MR. O'TOOLE:  Okay.  And so in terms of your

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 86

1      citation of 26(b)(4), I mean, that applies to a

2      consulting expert.

3               And Mr. Felder isn't here as a consulting

4      expert, is he?

5               MR. BLANKINSHIP:  I'm not answering your

6      questions.

7               MR. O'TOOLE:  Okay.

8               MR. BLANKINSHIP:  I -- I stated the reason.

9      We're not going to let him answer it.

10              MR. O'TOOLE:  But whose privilege are you

11     invoking?

12              MR. BLANKINSHIP:  I've already explained that.

13     I don't have anything to add on this.

14              MR. O'TOOLE:  Are you -- are you -- have

15     you -- have you had any conversations with your client

16     regarding this?

17              MR. BLANKINSHIP:  I'm not going to answer.  If

18     I did, that's privileged too.

19              MR. O'TOOLE:  Whether or not you spoke with

20     him?

21              MR. BLANKINSHIP:  Leo, I'm not going to answer

22     any of these questions.  I'm not here being deposed.  As

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 87

1    I -- I -- as a -- as a courtesy, I cited to -- you have

2    the authority.  You should know already.  So I have

3    nothing further to add.

4              MR. O'TOOLE:  So I guess we do know this

5    authority already.  And the point is that it's not -- I

6    have to say -- you said there's ample authority, citing

7    nothing else?

8              MR. BLANKINSHIP:  I have nothing further to

9    add.

10             MR. O'TOOLE:  And so just -- just so I

11   understand, you will be asserting the -- you'd be

12   asserting the privilege of one of your clients; is that

13   correct?

14             MR. BLANKINSHIP:  I've -- I've -- I've already

15   explained this.  I explained the basis of my objection.

16   I have nothing further to add.

17             MR. O'TOOLE:  Okay.  All right.  Okay.  So

18   what are we up to right now, Alexis?

19             THE REPORTER:  Four.

20             MR. O'TOOLE:  Four.  Okay.

21             (Felder Deposition Exhibit 4 marked for

22   identification.)

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 88

```
 1              BY MR. O'TOOLE:

 2         Q    Have you had a chance to review the complaint?

 3         A    Um, the complaint is 62 pages, so I -- I would

 4    be happy to read it for you or read it.

 5         Q    So I don't need for you to read the entire

 6    complaint.  I can direct you to the -- the paragraphs

 7    that are most helpful.

 8              Would that be helpful?

 9         A    That would be helpful.

10         Q    Okay.

11         A    Before you do so, Chay Allen is the name of

12    the editor.

13         Q    How do you spell Chay?

14         A    C-H-A-Y.

15         Q    C-H-A-Y.  Chay Allen.

16              And you said -- is that a -- a -- Chay Allen,

17    that person has not had any work on this case?  That

18    person hasn't performed any work on this case?

19         A    Absolutely no work in this case.

20              And then you had another question about maybe

21    how much money I've earned over the years.  I don't know

22    how you came up with a million dollars.  I would just
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 89

```
 1    remind you that my rate was different over the years,

 2    certainly --

 3         Q    Okay.

 4         A    -- as we've discussed.

 5         Q    So we just took a break that lasted, I don't

 6    know, ten or 15 minutes.

 7              Is that right?

 8         A    I believe so, yes.

 9         Q    Okay.  Did anyone instruct you to provide that

10    answer?

11         A    No.  I was -- just wanted to -- to clarify the

12    record to the extent that should be useful.

13         Q    Okay.  Right.  So Chay Allen.

14              What is -- what is their expertise?  What is

15    their -- what do they add?

16         A    He's an editor, a copyright editor.

17         Q    Okay.  A copy editor?

18         A    Yes.  I mean, more than just punctuation,

19    but -- and he's worked a lot in the energy, and I use

20    him from time to time.

21         Q    Okay.  I -- and I just -- I just want to make

22    sure I'm understanding.  He doesn't work with copyright.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 90

1        He is a copy editor.

2                Is that fair?

3        A    He edits text that you give him.  So...

4        Q    Okay.  But he doesn't provide any kind of

5    legal opinion about the copyrights?

6        A    No, no, no.  He's not an attorney.  He doesn't

7    do copyright, well, as far as I know.

8        Q    Okay.  And that's true for all the people on

9    your team; correct?  No lawyers there, no legal

10    training.

11                Is that fair?

12        A    That's correct.  None of them are lawyers.

13        Q    Okay.  You said that Carla Felder trained as

14    an engineer?

15        A    Her undergraduate degree is in engineering.

16        Q    What kind of engineer?

17        A    Metallurgy.

18        Q    Methollurgy (sic)?

19        A    Metallurgy --

20        Q    Okay.

21        A    -- study of metals.

22        Q    Sure.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                        Page 91

1              And that -- is that -- and metallurgy is an

2      engineering?

3          A    It is at Columbia school of energy --

4      engineering, applied science.

5          Q    Okay.

6          A    It's not the most common degree.

7          Q    Okay.  And did she ever work as -- maybe

8      putting, like, metallurgist, or did she ever work in

9      that industry?

10         A    Yes, she did.

11         Q    Okay.  And what did that involve?

12         A    She worked for a large consulting company and

13     construction -- or contracting -- general contracting

14     company, I believe, called Stone & Webster, and her

15     specialty -- or one of her specialties was corrosion on

16     nuclear power plants.

17         Q    Okay.  And you, by training -- so you have a

18     mathematics -- you're -- you're -- you have graduate

19     degrees in mathematics; correct?

20         A    I have two undergraduate degrees in

21     mathematics, applied mathematics.

22         Q    Is it a BS and a BA?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 92

1        A    That is correct.

2        Q    Okay.

3        A    Yes, I have a BA and a BS in applied

4    mathematics.

5        Q    And so I guess help me understand.

6             What essentially is between a BA and a BS in

7    that sense?

8        A    To get the additional BS degree, where I went,

9    had a special program to do that in five years.  So I

10   took additional engineering-type courses, so a lot more

11   physics, thermodynamics, electrical engineering, and

12   other engineering courses.

13       Q    Okay.  So do you see here on page 24 that you

14   have the table again comparing?  And here it's adhering

15   and it's CleanChoice with the supply costs.

16            Do you see that table?

17            MR. BLANKINSHIP:  I'm going to object.  This

18   is outside the scope of what's required.

19            THE WITNESS:  I do see the table in

20   paragraph 71.

21            BY MR. O'TOOLE:

22       Q    Okay.  And did you assist at all with any of

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 93

1    these re- -- with any of these allegations here?

2              MR. BLANKINSHIP:  I'm going to instruct you

3    not to answer that for the same reasons we discussed

4    before.

5              MR. O'TOOLE:  And whose privilege are you

6    asserting?

7              MR. BLANKINSHIP:  It's attorney/work product

8    privilege, and I'm instructing him not to answer.

9              MR. O'TOOLE:  On whose behalf are you

10   asserting the attorney/work product?

11             MR. BLANKINSHIP:  I'm asserting attorney/work

12   product privilege, and I'm instructing him not to

13   answer.

14             MR. O'TOOLE:  So my question was, on whose

15   behalf are you --

16             MR. BLANKINSHIP:  I don't have to answer your

17   questions.

18             MR. O'TOOLE:  You assisted him on this case,

19   didn't you?

20             MR. BLANKINSHIP:  Again, don't -- if -- if

21   you've been -- yeah, there have been no expert

22   disclosures in this case, and so necessarily, that means

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 94

1     that if he did any work on this case, it was as

2     consulting expert.  So I'm instructing him not to answer

3     that.

4                BY MR. O'TOOLE:

5          Q    Well, you have already testified that you

6     worked on this case; right?  You have already testified

7     that you worked on the CleanChoice case.

8                MR. BLANKINSHIP:  I'm just going to object.

9     It's vague.  It's asked and answered.

10               MR. O'TOOLE:  Okay.  Well, to the extent

11    there's any kind of legitimate privilege here, it's been

12    waived.  The witness has already testified.

13               MR. BLANKINSHIP:  I'm going to disagree with

14    that.  If -- if -- if he has waived anything, and I

15    don't agree he has.  It's simply that he worked on this

16    case to say anything further.  And he certainly didn't

17    say what he worked on.  And that's all privileged.

18               BY MR. O'TOOLE:

19         Q    As -- as a more abstract matter, do you agree

20    that a comparison between CleanChoice's (sic) Energy,

21    the ESCO's rate, and supply cost can form a basis for

22    breach --

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 95

```
 1              MR. BLANKINSHIP:  Object- --

 2              BY MR. O'TOOLE:

 3        Q    -- In these cases?

 4              MR. BLANKINSHIP:  Objection.  Outside the

 5        scope.  Calls for a legal conclusion.

 6              You can answer if you can.

 7              THE WITNESS:  I haven't addressed that

 8        question, and I don't rec- -- recall addressing that

 9        question, so I have no opinion on that right now.

10              BY MR. O'TOOLE:

11        Q    I guess I'm not asking you, Dr. Felder, what

12        you've disclosed in your report.

13              I'm asking you, sitting here as someone who

14        testified in these cases over the past 12 years, can a

15        comparison between an ESCO's rate and the supply rate

16        form the basis of privilege?

17              MR. BLANKINSHIP:  Objection.  Calls for a

18        legal conclusion to the extent that that question isn't

19        about this case.  It's outside the scope of his -- "this

20        case" being Brous.  It's outside the scope of his

21        report.

22              THE WITNESS:  I have not been asked to answer
```

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 96

1      that question as part of this litigation.  I'm not a

2      lawyer, so I wouldn't know whether or not it formed any

3      types of legal claims or not.

4                 BY MR. O'TOOLE:

5          Q    Okay.  So you're taking no position on whether

6      a comparison between CleanChoice and ESCO's rate and

7      supply cost can form the basis for breach?

8                 MR. BLANKINSHIP:  Objection.  Mischaracterizes

9      his testimony.  And to the extent we've been talking

10     about the CleanChoice case, it is outside the scope of

11     his report.

12                THE WITNESS:  I think my prior answer answers

13     that question for you.

14                BY MR. O'TOOLE:

15         Q    Okay.  So, Dr. Felder, you have multiple

16     different sources of income.

17                Is that fair?

18                MR. BLANKINSHIP:  Objection.  Outside the

19     scope.

20                You can answer.

21                THE WITNESS:  Yes, I do.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 97

```
 1              BY MR. O'TOOLE:
 2        Q    Okay.  Part of your income comes from
 3    litigation work.
 4              Is that fair?
 5              MR. BLANKINSHIP:  Same objections.
 6              THE WITNESS:  Yes.
 7              BY MR. O'TOOLE:
 8        Q    And part also comes from consulting?
 9              MR. BLANKINSHIP:  Same objections.
10              THE WITNESS:  Yes.
11              BY MR. O'TOOLE:
12        Q    Are there any other sources of income that you
13    have?
14              MR. BLANKINSHIP:  Same objections.
15              THE WITNESS:  Yes.
16              BY MR. O'TOOLE:
17        Q    What are the sources?
18        A    Investing.
19              MR. BLANKINSHIP:  Same objections.
20              BY MR. O'TOOLE:
21        Q    Okay.  And what are your investments in?
22              MR. BLANKINSHIP:  Objection.  This is really
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 98

1    far outside the scope.

2                What -- how is this relevant?

3                MR. O'TOOLE:  Well, it goes to bias.

4                MR. BLANKINSHIP:  Maybe you can ask him, like,

5    a type -- for example, if he has an investment in a

6    washing machine company, it's obviously totally

7    irrelevant to this.

8                I mean, do you want to ask him about his

9    report?

10                MR. O'TOOLE:  So I'm taking this deposition.

11    I'd go to be asking a question.  That kind of colloquy

12    is entirely inappropriate under Rule 30, and you know

13    that, Mr. Blankinship.

14                MR. BLANKINSHIP:  Okay.  Then now I'm going to

15    object that it's irrelevant and outside the scope of his

16    report and harassing.

17                If you want to answer, you can.

18                BY MR. O'TOOLE:

19        Q    So I was asking you what kind of investments

20    you have.

21                What kind of investments do you have?

22                MR. BLANKINSHIP:  Same objections.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 99

1            THE WITNESS:  I have investments in a variety

2      of stocks and bonds over economy-wide, typically.

3            BY MR. O'TOOLE:

4      Q    Are these index funds?

5            MR. BLANKINSHIP:  Same objections.

6            THE WITNESS:  They are index funds or similar,

7      different variations, either index funds or mutual

8      funds.

9            BY MR. O'TOOLE:

10     Q    And do you -- you purchase individual stocks?

11           MR. BLANKINSHIP:  Same objections.

12           THE WITNESS:  Well, obviously, the index fund

13     purchases in- -- funds or individual financial

14     instrument, bonds, stocks, different types.  The -- I

15     inherited a variety of individual stocks.  It's a -- I

16     think what you're getting at from my father.  And I'm

17     required to withdraw a certain amount every year that

18     required the selling of some of those stocks, and the

19     dividends may be reinvested.  So those dividends may

20     result in purchases of those stocks.  And this fund that

21     I -- or this group of stocks I -- I inherited and --

22     could be some bonds from my father.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                              Page 100

1              BY MR. O'TOOLE:

2         Q    Okay.  What individual stocks do you recall

3    being in your portfolio?

4              MR. BLANKINSHIP:  Same objections.

5              THE WITNESS:  There is 30 to 50.  My father

6    was low eclectic in his investments.  Some are intended

7    favor bigger companies, so there's some pharmaceuticals

8    in there, I believe.  There's -- one of these applies if

9    there's modern deals, but I'm not sure.  There's -- oh,

10   well, definitely some financial companies in that and

11   some other stocks of various amounts, but I don't recall

12   any.  It covers a wide span, to be honest.

13             BY MR. O'TOOLE:

14        Q    Okay.  Is it fair to say these are -- using

15   the term loosely -- companies with large market caps?

16   These are big-name stocks?

17             MR. BLANKINSHIP:  Same objections.

18             THE WITNESS:  I believe so.  There could be

19   some exceptions --

20             BY MR. O'TOOLE:

21        Q    Sure.

22        A    -- but I believe so, yes.  That would be a

Page 101

1    fair characterization, I believe.

2         Q    All right.  Okay.  And so you said you got

3    money from investments, and then there's also

4    consulting.

5              How -- if you had to guess what's the

6    breakdown between your consulting work and your

7    litigation work, what -- I guess, first -- I'll take a

8    step back.

9              So in your work, as in your professional life,

10   you have consulting work, and then you have litigation

11   work.

12             Is there anything else you do in your

13   professional life to earn income?

14             MR. BLANKINSHIP:  Same objections.

15             THE WITNESS:  Over what time period?  If -- if

16   that -- I'm not trying to ask you a question since I

17   understand you're asking the questions.  But that has

18   varied over my career.

19             BY MR. O'TOOLE:

20        Q    Sure.

21             So let's say in the past -- let's say from

22   2020 until today.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 102

1              MR. BLANKINSHIP:  Same objections.

2              THE WITNESS:  Okay.  So in 2020, I was a

3       full-time professor at Rutgers University, and I also

4       did some consulting.  Obviously may have had some --

5       these cases and other types of consulting because it was

6       less than 12 years ago, not in Eligo's case but

7       ESCO-related cases -- I'm sorry.  I had both my

8       full-time job as a professor at Rutgers University, and

9       I had my consulting practice, which included litigation

10      work.

11             BY MR. O'TOOLE:

12         Q    Okay.  So -- and -- and how you're breaking it

13      out now is that the litigation and consulting are kind

14      of mixed in with each other.

15             Is that fair?  So you got your Rutgers

16      University, and then you've got your work doing

17      litigation, slash, consulting?

18             MR. BLANKINSHIP:  Objection.  Vague.

19      Compound.

20             THE WITNESS:  Yeah.  I think the confusion is

21      I'm using "consulting" in two different ways.  One as an

22      independent consulting with a firm that does a variety

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 103

1    of work, including litigation, but that's different from

2    the distinction we've been discussing where I may or may

3    not have provided consulting versus an expert witness.

4            But working outside of Rutgers, so I had also

5    investment income.  In 2020, I was a full-time professor

6    at Rutgers.  And then in -- and I don't remember the

7    dates right.  So in '21 and '22, last months of 2020, I

8    had a full-time job in Saudi Arabia.  I had also my

9    investment income.  I did some consulting as well.  And

10   then I returned from Saudi Arabia in 2023, and I do some

11   consulting work.  I did some work for the Oxford

12   Institute for Energy Studies as a fellow.  And also,

13   during that time period, my wife, for one of those

14   years, was working part-time at Apple.  So that would

15   have been part of my family income.

16           BY MR. O'TOOLE:

17       Q    You mean the -- the corporation, Apple?

18       A    Yes, the corporation, Apple.  Yeah.

19       Q    She was working there as an employee?

20           MR. BLANKINSHIP:  Objection.  Outside the

21   scope.

22           You can answer.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 104

1          THE WITNESS:  Yes.  In 2020, yes --

2          BY MR. O'TOOLE:

3     Q    Okay.

4     A    -- I believe.

5     Q    What kind of work was she doing?

6          MR. BLANKINSHIP:  Same objection.

7          THE WITNESS:  She had the greatest title ever.

8     She was a genius.  That's the Apple title.  So she -- if

9     your phone broke or your computer broke or you had a

10    virus on your phone or you wanted to learn how to do

11    one -- various -- she was -- she was the one to help you

12    with at the Apple store.

13         BY MR. O'TOOLE:

14    Q    Okay.  Great.

15         And there's the people with the lanyards or

16    whatever.  And, you know, if you go into the store and

17    you say, "I'm just going to buy a new computer --"

18    A    That's right.  But -- she started with that

19    and then went on to do repairs.  So she can fix

20    computers, provide additional technical support.

21    Q    And did you say that was in 2021?

22    A    So she worked -- so when we left from Saudi

Page 105

1    Arabia in the end of -- no, 2020, I believe.  I said

2    2020, but --

3         Q    Okay.

4         A    And then when we left Saudi Arabia, she was no

5    longer --

6         Q    Okay.

7         A    -- working for Apple.

8         Q    Okay.  Okay.  All right.  So I guess apart

9    from the position at Rutgers, have you held any other

10   full-time employment, or have you enjoyed any other kind

11   of full-time employment in the last -- since 2020?

12             MR. BLANKINSHIP:  Objection.  Vague -- I --

13   sorry.  Asked and answered.

14             THE WITNESS:  Yes.

15             BY MR. O'TOOLE:

16        Q    And where was that?

17        A    That was in Riyadh, Saudi Arabia.

18        Q    Oh, okay.  Great.

19             So that's -- we -- well, I guess tell me where

20   that was.

21        A    That was in Riyadh, Saudi Arabia.

22        Q    So tell me what institution you were at.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 106

1        A     It was KAPSARC, which is the King Abdullah

2    Petroleum Studies and Research Center.

3        Q     Okay.  And you were -- I take it you were

4    living in Saudi Arabia.

5              Is that right?

6        A     Yes.

7        Q     And that's a full-time position?

8              MR. BLANKINSHIP:  Objection.  Asked and

9    answered.

10             THE WITNESS:  That's correct if that's a

11   question.

12             BY MR. O'TOOLE:

13       Q     Have you, since 2020, worked with Rutgers and

14   King APSARC University (sic)?  Have you had another

15   full-time position?

16       A     I -- no.  I mean, I've had my consulting

17   practice, which is, you know, depending on the

18   assignment, could be part-time and full-time.

19       Q     Okay.  So your job at Rutgers, what was

20   your -- what was your salary while you were working

21   there?

22             MR. BLANKINSHIP:  Objection.  Outside the

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 107

1    scope.  Not a required disclosure.

2              You can answer.

3              THE WITNESS:  I think when I left -- and I had

4    a nine-month salary, and then I could also get summer

5    salary.  So -- and, usually, I got summer salary, but

6    125,000 to 150,000 plus benefits, something like that.

7              BY MR. O'TOOLE:

8         Q    Okay.  Was that a tenure position?

9         A    No, it was not.

10        Q    Okay.  And the same -- and I guess maybe this

11   is obvious.  Rutgers is in New Jersey; correct?

12        A    Yes, that's correct.

13        Q    And where -- where are you originally from --

14             MR. BLANKINSHIP:  Objection.  Outside the

15   scope.

16             THE WITNESS:  I was born in Atlanta, Georgia.

17             BY MR. O'TOOLE:

18        Q    Okay.  And -- interesting.

19        A    I --

20        Q    So let me see.  So you were -- you were living

21   in New Jersey when you were working at Rutgers; right?

22        A    I was living in Highland Park, New Jersey.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 108

1          Q    Okay.  And so I assume you were paying tax in

2      New Jersey under New Jersey -- at New Jersey Institute?

3               MR. BLANKINSHIP:  Objection.  Scope not

4      required in disclosure.

5               You can answer.

6               THE WITNESS:  Yes, I was paying taxes.

7               BY MR. O'TOOLE:

8          Q    Okay.  And how about the King Abdullah

9      University (sic), were you paying any taxes there?

10              MR. BLANKINSHIP:  Same objections.

11              THE WITNESS:  So the U.S. has a -- an

12     exception up to a certain amount of income earned in

13     Saudi Arabia.  It's just part of a tax law to -- I'm

14     speaking as a layperson.  So, yes, part of my income

15     from the KAPSARC, I play -- paid federal taxes.

16              BY MR. O'TOOLE:

17         Q    Okay.  Was there any kind of salary income

18     tax, what you're looking at?

19              MR. BLANKINSHIP:  Same objection.

20              THE WITNESS:  No, Saudi Arabia doesn't have an

21     income tax.

22

Frank A. Felder , Ph.D.                                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 109

```
 1              BY MR. O'TOOLE:
 2         Q    Okay.  And what was your salary while you were
 3     working there?
 4              MR. BLANKINSHIP:  Same objection.
 5              THE WITNESS:  My salary was, I think, 18-,
 6     19,000 a month plus housing, something like that, and
 7     medical and savings benefits, things like that.
 8              BY MR. O'TOOLE:
 9         Q    And what do you mean by "savings benefits"?
10              MR. BLANKINSHIP:  Same objections.
11              THE WITNESS:  Savings plan.  So corporate
12     savings plan.  So if you put money in, some of it was
13     matched.
14              BY MR. O'TOOLE:
15         Q    Okay.  So like a 401(k)?
16              MR. BLANKINSHIP:  Same objections.
17              THE WITNESS:  Yes, that would be it.  And that
18     would be something like that.
19              BY MR. O'TOOLE:
20         Q    All right.  And if we were to analyze 18- or
21     19,000 a month plus 12 months, that's about 200k; right?
22              MR. BLANKINSHIP:  Same objections.
```

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 110

```
1              THE WITNESS:  Sounds about right.

2              BY MR. O'TOOLE:

3         Q    Okay.

4         A    Plus the -- I didn't have to pay as much in

5    U.S. taxes.

6         Q    Okay.  How did you come to work at -- at the

7    university?

8              MR. BLANKINSHIP:  Same objections.

9              THE WITNESS:  It was during COVID, but before

10   the vaccine, so not to bring back.  I -- kids had

11   graduated from college.  My wife and I always wanted to

12   work abroad.  The opportunity came up, and we thought,

13   Well, let's go ahead and try it.  This would be a good

14   time to do it.  So I applied and was hired.

15             BY MR. O'TOOLE:

16        Q    Okay.  And how did you find out about the

17   position?

18             MR. BLANKINSHIP:  Same objections.

19             THE WITNESS:  I believe I was contacted by a

20   recruiter via LinkedIn.

21             BY MR. O'TOOLE:

22        Q    Okay.  And your -- your CV lists an
```

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 111

1    affiliation with the Oxford Institute for Energy

2    Studies.

3              Is that right?

4         A    That is correct.

5         Q    Okay.  And how did you -- how did you come to

6    have an authority to that institute?

7         A    I believe it started -- the institute is

8    well-known over the decades, so just, you know, from

9    life as an academic.  But I think it really took off

10   when I was at KAPSARC.  I met -- the director is an oil

11   economist.  And I don't know.  Saudi Arabia was

12   important in that regard.  And then through that, I met

13   his colleagues that worked more than electricity.  So I

14   think that's how the -- the relationship started.

15   The -- yes.

16        Q    And who was this director, the -- the oil

17   economist?

18        A    As you can see, I'm very bad at names.  So

19   I -- I don't want to guess and butcher his name.

20        Q    Do you remember his first name?

21        A    No, I don't.  I don't remember his name.

22        Q    Do you remember his last name?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 112

1        A    No.  My relationship is -- no, I do not.

2        Q    But do you remember his nationality?

3        A    I don't believe we ever discussed his

4   nationality, so I don't know what it is.

5        Q    Okay.  You seen him in -- in person,

6   face-to-face; yes?

7        A    Yes, but I -- I don't make a habit of

8   assigning nationalities in meeting some of the faces.

9        Q    That -- that's fair, Dr. Felder.

10            I guess was English his native language?

11       A    I don't know.  I didn't ask him.  He spoke

12  English very well, but it may not have been his native

13  language.

14       Q    Does -- do you remember any identifying

15  features about this person?

16       A    He's male.  He was a little younger than me,

17  so maybe in his 50s.  He was of average height.  I think

18  he had black hair, probably dark eyes, um, well-spoken.

19       Q    Do you remember his race?

20       A    He was Caucasian --

21       Q    Okay.

22       A    -- I believe.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 113

1           Can I -- I think very -- this is --

2           MR. BLANKINSHIP:  -- line of question.  But

3     just to answer --

4           THE WITNESS:  I'm happy to answer.  I'm

5     just --

6           BY MR. O'TOOLE:

7     Q    I -- I'm trying to understand who this person

8     was.  You said you don't have the first name.  You don't

9     have the surname.  You don't know their nationality.

10          MR. BLANKINSHIP:  We can Google the Oxford

11    Institute for Energy Studies, and you can see a picture

12    of the director, and you can -- his name and everything.

13          THE WITNESS:  I worked very little with him.

14    I mean, I have some assignments.  And I don't work

15    directly with him.  I worked with other people.

16          BY MR. O'TOOLE:

17    Q    Okay.  Do you have an understanding how that

18    institute is funded?

19    A    It has a variety of corporate and private

20    funding, I believe, and I assume some funding the

21    university, but I don't remember specifically.

22    Q    Do you know what Aramco is?

Frank A. Felder , Ph.D.                                January 8, 2026
Brous v. Eligo Energy, LLC

Page 114

1          A     Yes, I do know the Aramco.

2          Q     Okay.  Are you aware of whether -- what is

3     Aramco?

4          A     Aramco is the oil company for Saudi Arabia.

5          Q     Okay.  It's a state-owned company; is that

6     correct?

7          A     Yes.  Although they were going through an IPP

8     to sell off some of it, but, yes, it's --

9          Q     Are you aware of whether Aramco was one of the

10     sponsors of the Oxford Institute for Energy Studies?

11          A     I don't know who their sponsors are.  I --

12     I -- I don't know one way or the other.  It may be

13     available on their website.

14          Q     Okay.  And you've never -- it's never occurred

15     to you to look into this?

16          A     No, I don't do oil economics.  I -- no, I

17     don't make a habit of looking at who's sponsoring

18     different organizations.

19          Q     Okay.  And so you don't think it would be

20     relevant just looking to what an oil company is spending

21     at an energy institute?

22               MR. BLANKINSHIP:  Objection.  Outside the

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 115

1      scope of his report.  It's not a required disclosure.

2              You can answer.

3              THE WITNESS:  My work at Oxford is on this

4      topic about electricity.

5              BY MR. O'TOOLE:

6      Q    That wasn't my question.

7              You don't think it's relevant in oil companies

8      funding the research institute --

9              MR. BLANKINSHIP:  Objection.  Asked and

10     answered.

11             THE WITNESS:  Sorry.  I didn't fill in the --

12     the implication I'm working for -- I'm working for.  I

13     do maybe $5,000 a year on studies related to electricity

14     for the Oxford Institute for Energy Studies, and so I

15     did not look into their -- who's funding them, what oil,

16     or otherwise.

17             BY MR. O'TOOLE:

18     Q    What kind of work does that consist of?  You

19     said five hours a year?

20             MR. BLANKINSHIP:  Objection.

21             THE WITNESS:  I said about $5,000 to do a --

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                      Page 116

 1              BY MR. O'TOOLE:

 2        Q    Okay.

 3        A    -- paperwork.  So the papers -- I've done two

 4     papers.  They were on basically reliability of the

 5     electric power industry, resource advocacy, that type of

 6     thing.

 7        Q    Okay.  And it's also a podcast associated with

 8     that institute.

 9              Is that right?

10              MR. BLANKINSHIP:  I'm sorry.  Who?

11              MR. O'TOOLE:  Podcasts associated with the

12     institute.

13              MR. BLANKINSHIP:  Objection.  Outside the

14     scope.  Not a required disclosure.

15              You can answer if you know.

16              THE WITNESS:  Yes.  They host podcasts, maybe

17     some of the work for publication.  I think I

18     participated in two, I believe.

19              BY MR. O'TOOLE:

20        Q    And I take it you bill for that time; is that

21     correct?

22              MR. BLANKINSHIP:  Same objection.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 117

1              THE WITNESS:  No, I'm -- that's not how -- I

2     get paid for a paper.  I -- I don't bill for the

3     podcast.

4              BY MR. O'TOOLE:

5        Q    Okay.  And so that's, I guess, voluntary work.

6              Is that fair to say?

7        A    Well, the -- the goal is to promote the paper,

8     and so, yes, it's --

9        Q    Okay.

10       A    I think it's part of the publication process,

11    whether it's informally part of it.

12       Q    Do you have any understanding if King Abdullah

13    University is funded?

14       A    The King Abdullah University?

15       Q    Yeah.  KAPSARC.

16            How was that acquainted?

17       A    KAPSARC is not the King Abdullah University.

18       Q    Okay.  What is the distinction between KAPSARC

19    and the King Abdullah University?

20       A    Well, I didn't know there was a King Abdullah

21    University.  My understanding, if there is, it's two

22    separate organizations.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 118

1          Q    Okay.  And so I guess this is perhaps a --

2     a -- a -- a -- a -- a case of two ships passing in the night.

3               KAPSARC is the institution you worked for;

4     right?

5               MR. BLANKINSHIP:  Objection.

6               BY MR. O'TOOLE:

7          Q    That begins with King Abdullah?

8          A    Yes, that is correct.  KAPSARC is the only

9     institution that I worked with the first two.

10         Q    Okay.  The first two words; yes?

11         A    First two words.

12         Q    Okay.  So -- and you -- your -- you -- you

13    testified you're not aware of King Abdullah University,

14    correct, if one exists?

15              MR. BLANKINSHIP:  Objection.  Mischaracterizes

16    his testimony.  Outside the scope of his report.

17              THE WITNESS:  Yeah.  I don't believe in -- and

18    I was in Saudi Arabia -- I interacted with a university

19    of that name.  There may be.  I just don't know.

20              BY MR. O'TOOLE:

21         Q    And the only academic institution you worked

22    there was KAPSARC; correct?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 119

```
 1              MR. BLANKINSHIP:  Objection.  Mischaracterizes
 2      his testimony.  Lack of foundation.
 3              You can answer.
 4              THE WITNESS:  I think KAPSARC would
 5      characterize itself as a think tank and not an academic
 6      institution, although towards the end of -- when I was
 7      there, they were developing the KAPSARC School of Public
 8      Policy.  So that -- they were building that out right
 9      about during while I was there.  And I don't think it
10      formally started until almost the time I've left
11      full-time.
12              BY MR. O'TOOLE:
13          Q   All right.  I'd like to talk to you about some
14      material.  We'll -- we'll bring up as a -- as an exhibit
15      later point.
16              You testified earlier during the deposition
17      that you reviewed documents that Eligo produced,
18      including documents that had the DEF prefix and then a
19      string of numbers after it; is that correct?
20              MR. BLANKINSHIP:  Objection.  Mischaracterizes
21      his testimony.
22              THE WITNESS:  I did refer to my report
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 120

1      documents that had that Bates or that numbering system.

2                 BY MR. O'TOOLE:

3          Q     Okay.  And how did you access those documents?

4          A     The -- the attorneys had a portal that I could

5      ac- -- electronically access various documents in

6      discovery.

7          Q     Okay.  And what was the name of that portal?

8          A     I don't know.  It was just a legal portal --

9      portal designed for that purpose.  And I got an email.

10     I signed.  And that's how I access a set of folders with

11     different materials.

12         Q     Okay.  And to be clear, the folders that you

13     accessed -- I guess, help me understand what this portal

14     looked like.

15                Is it something that looks like Dropbox?

16                MR. BLANKINSHIP:  Objection.  Vague.

17                You can answer.

18                THE WITNESS:  Yes.  So you sign in.

19                BY MR. O'TOOLE:

20         Q     Mm-hmm.

21         A     Once your credentials are accepted, there's a

22     confirmation process at least initially.  And then

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 121

1    there's a list of folders.  It has different subtopics,

2    and then there were documents within the folder.

3         Q    Okay.  Was the name of the platform

4    Relativity?

5         A    I don't recall one way or the other.

6         Q    Okay.  Do you recall how many documents were

7    on this platform numerically?

8         A    There were lots of documents on this platform,

9    but I don't know how many.

10        Q    Okay.  Do you -- do you have any understanding

11   if it was more or less than a thousand?

12        A    There could have been lots of documents.  I --

13   I don't know the total number.

14        Q    Okay.  But you had a log-in where -- to access

15   this; is that correct?

16        A    Yes.

17        Q    Okay.  All right.  So I take it as a -- as

18   a -- a housekeeping matter, let's get your exhibit -- or

19   get your report and the exhibits filed to that on the

20   record.  So I think this is going to be Exhibit 5.

21             Is that right?

22             (Felder Deposition Exhibit 5 marked for

Veritext Legal Solutions
800.808.4958                                       770.343.9696

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 122

```
 1        identification.)
 2                 BY MR. O'TOOLE:
 3        Q     We'll do 5, 6, and 7.  So 5 is your initial
 4   report, if that helps.
 5                 (Felder Deposition Exhibit 6 marked for
 6   identification.)
 7                 BY MR. O'TOOLE:
 8        Q     And then 7 will be your documents considered.
 9                 (Felder Deposition Exhibit 7 marked for
10   identification.)
11                 BY MR. O'TOOLE:
12        Q     And while we are at it, let's also get your --
13   get your rebuttal report on the record.  Of course,
14   behind all the other ones.  And this will be 8.
15                 (Felder Deposition Exhibit 8 marked for
16   identification.)
17                 BY MR. O'TOOLE:
18        Q     You submitted two expert reports in this case;
19   is that correct?
20        A     Yes, that's correct.
21        Q     Okay.  So one is dated September 12th, and the
22   other one is dated October 31st; right?
```

Page 123

1          A     Yes.

2          Q     Okay.  And these are the only expert reports

3     that you have signed and issued in this litigation;

4     correct?

5          A     Yes.

6          Q     Okay.  Have you ever testified at trial?

7          A     I have not.

8          Q     Okay.  But in the event that this case goes to

9     trial and you intend to testify, you intend to testify

10    about the opinions that are in those two reports done?

11         A     Yes.

12         Q     Okay.

13         A     Subject to counseling.

14         Q     Okay.  And you understand you're not permitted

15    to offer opinions beyond those two reports; correct?

16              MR. BLANKINSHIP:  Objection.  Calls for a

17    legal conclusion.  Outside the scope of his report.

18              You can answer if you know.

19              THE WITNESS:  I don't have an understanding

20    one way or the other on that.

21              BY MR. O'TOOLE:

22         Q     Okay.  So it's fair to say that no other

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 124

1     report has been disclosed; correct?

2              MR. BLANKINSHIP:  Objection.  Asked and

3     answered.

4              THE WITNESS:  That -- that's correct.

5              BY MR. O'TOOLE:

6       Q    Okay.  And it's fair to say that you -- you

7     haven't prepared any other report you intend to file?

8              MR. BLANKINSHIP:  You can answer that.

9              THE WITNESS:  I have not prepared anything

10    else --

11             BY MR. O'TOOLE:

12      Q    Okay.

13      A    -- that I intend to file.

14      Q    And so I guess a -- a related question as well

15    as those two reports, which are Exhibit 5 and Exhibit 8,

16    we also have Exhibit B, which is -- or, excuse me,

17    Exhibit 7 is Exhibit B to your initial report, and that

18    is entitled "Materials Considered."

19             Do you see that?

20             MR. BLANKINSHIP:  Objection.  Mischar- -- it

21    doesn't say that.  It says "document."

22             MR. O'TOOLE:  "Document Considered."  Fair

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 125

1     enough.

2                 THE WITNESS:  Yes, Exhibit B was to my

3     original report, and it's marked Exhibit 7.

4                 BY MR. O'TOOLE:

5          Q    Okay.  And this is a complete list of all the

6     documents you considered in -- in drafting your report?

7          A    Yes, it is.

8          Q    Okay.  And when I say "your report," I mean

9     your initial report.

10                Do you understand that?

11         A    Yes, my initial report.

12         Q    And if we go to Exhibit 8, which is your

13    rebuttal report.

14                Do you see towards the end that you have an

15    Exhibit 1 there?  This is on page 23.

16         A    Yes, I see that.

17         Q    Okay.  And you see it says "Documents

18    Considered" as well?

19         A    That's right.

20         Q    Okay.  And this is the complete list of

21    documents you considered in -- in forming your opinion.

22                Is that right?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 126

1          A     That's correct.

2          Q     Okay.  Great.

3          A     I mean, my opinions are imparted and informed

4     on my background and expertise, so that would include

5     what I've learned over the years, including reading

6     other documents and learning about dif- -- different

7     things in the electric power industry.  So I just want

8     to make that clear.

9          Q     Okay.  Well, to the extent of your expertise,

10    there's this case.  You haven't disclosed -- I guess

11    let's take a step back.

12               It's documents considered; right?  So you --

13    and the question is whether you have expertise or you

14    remember some passing conversation eight years ago.

15               The question is, what do you consider --

16         A     That is -- that's correct.  That's a fair...

17         Q     Okay.  And the opinions that you are offering

18    in the two reports, they're based on the materials

19    considered in -- in exposing those two exhibits;

20    correct?

21         A     That is correct.

22               MR. BLANKINSHIP:  Objection.  Asked and

Page 127

1      answered.

2                    BY MR. O'TOOLE:

3          Q    Do you know how many Bates-stamped documents

4      are included in your -- any of your materials considered

5      list?

6                    MR. BLANKINSHIP:  Objection.  Lack of

7      foundation.

8                    THE WITNESS:  No, I do not.

9                    BY MR. O'TOOLE:

10         Q    Okay.  Do you know -- well, let's take a look.

11     Let's look at Exhibit B.

12                   MR. BLANKINSHIP:  Exhibit 7?

13                   MR. O'TOOLE:  Yes.  Excuse me, yes, Exhibit 7.

14                   BY MR. O'TOOLE:

15         Q    Also known as Exhibit B to your original

16     report.  And it's on the very last page, 44.

17         A    Yes.

18         Q    And so this is -- this is -- these are all the

19     documents that you've considered discovery and you

20     relied upon and -- in -- in forming the opinions that

21     you did?

22                   MR. BLANKINSHIP:  Objection.

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 128

1              THE WITNESS:  For my initial report and the

2      initial report also call -- has various defendants or

3      dis- -- disclosure materials as well --

4              BY MR. O'TOOLE:

5      Q     Okay.

6      A     -- and the body of the report.

7      Q     Okay.  And do you -- do you have any reason to

8      think that there are any Bates-stamped documents in the

9      body of the report that decided there are -- they are

10     included in the documents obtained in discovery?

11     A     To be honest, I didn't cross-check, so I don't

12     know.  I -- I believe I included them all, but --

13     Q     Okay.  And did you personally do this, or did

14     someone else on your team do this?

15     A     I personally did this.  Ms. Felder collected a

16     lot of the language and compiled them that were in my

17     work papers, and then I -- I developed the exhibit.

18     Q     Okay.  Okay.  So there -- there are fewer than

19     a hundred documents here, I'll represent to you, these

20     documents obtained in discovery.

21              Does that sound reasonable to you?

22     A     It sounds like you're looking at page 44 --

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 129

1          Q    That's correct, yeah.

2          A    -- of Exhibit B, Deposition Exhibit 7.  Yeah,

3     that seems reasonable.

4          Q    Okay.  And are you aware of how many documents

5     were produced in this litigation?

6          A    I believe I've answered that, but, no, I do

7     not.  I don't know how many documents.

8          Q    So I'll represent to you somewhere in the

9     range of 30,000 documents.

10              How did you determine which -- or just how

11     many of those 30,000 do you estimate you reviewed in the

12     course of forming your opinions?

13          A    I don't know how many I reviewed.

14          Q    Okay.  Was it more than a hundred?

15          A    I don't know how many I reviewed.

16          Q    Okay.  And how about the composition of the

17     documents that you did review and you are considering in

18     forming your opinion, can you describe what kind of

19     documents these are?

20              MR. BLANKINSHIP:  Objection.  Compound.

21              THE WITNESS:  I -- yes.  I mean, that was

22     probably when I reached the Bates number.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 130

1              BY MR. O'TOOLE:

2         Q    Sure.

3         A    And some of the documents that are referred to

4    in the body of the testimony described, you know, whose

5    deposition or so forth.  Probably the biggest list would

6    be the various POWWR spreadsheets that were needed for

7    one of my methods.

8         Q    What other kind of documents are there in your

9    documents considered?

10             MR. BLANKINSHIP:  Objection.  Asked and

11   answered.

12             THE WITNESS:  For the -- please repeat the

13   question --

14             BY MR. O'TOOLE:

15        Q    Sure.

16        A     -- because the last calls --

17        Q    Yes.  That's fine.  That's fine.

18             So looking at page 44, I think we're looking

19   at the same -- you see a whole bunch of numbers here,

20   DEF00 whatever.  You said that a whole bunch of these

21   are POWWR spreadsheets.

22             So I'm asking you, what other documents are

Page 131

1      you -- that's in the list that we're looking at?

2                MR. BLANKINSHIP:  Objection.  Asked and

3      answered.

4                THE WITNESS:  As I mentioned in the body of my

5      report, I referred to various depositions of fact

6      witnesses that informed the -- how to use the POWWR

7      spreadsheet or information I needed or informed me on

8      what I needed to do.

9                BY MR. O'TOOLE:

10         Q    Okay.  And apart from this deposition

11     transcript, do you recall reviewing or relying on any

12     discovery?

13               MR. BLANKINSHIP:  Objection.  Vague.  Asked

14     and answered.

15               BY MR. O'TOOLE:

16         Q    There were, I think, references in the body of

17     my report to some contracts, customers, and I recall

18     that.  I mean, I can flip through the report and tell

19     you Dr. Andrew's report.  I don't know if Dr. Corbin has

20     discovery --

21               MR. BLANKINSHIP:  This would be the rebuttal.

22               THE WITNESS:  Yeah.  Rebuttal.  We're talking

Page 132

1    about the direct reports.

2            BY MR. O'TOOLE:

3        Q    Mm-hmm.

4        A    Sorry.  Let's see.  Some interrogatories, I

5    believe.  The billing data.  Some depositions, some

6    defendant exhibits related to contract's terms of

7    service.

8        Q    Okay.  Um, so I'd like to ask you, Dr. Felder,

9    what you know about the litigation.

10           What is your understanding of the Brous

11   litigation?

12           MR. BLANKINSHIP:  Objection.  Vague.  Outside

13   the scope of his report.

14           You can answer.

15           THE WITNESS:  My understanding in that, as a

16   layperson and not as an expert of offering opinions, is

17   that -- are you collecting this? -- it's a dispute over

18   the variable rate calculation for a set of contracts in

19   the period of February 2014 to February 2018 based with

20   Eli- -- El- -- Eligo and the variety of the customers.

21           BY MR. O'TOOLE:

22       Q    Okay.  And what are the names of the

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 133

```
 1    plaintiffs?
 2         A     The names of the --
 3               MR. BLANKINSHIP:  I'm sorry.  I'm just going
 4    to object.  It's outside the scope of his report.
 5               THE WITNESS:  The names of the plaintiffs are
 6    provided on the first page of my expert report, which is
 7    Brous and Schuster.
 8               BY MR. O'TOOLE:
 9         Q     Okay.  And do you know where they live?
10               MR. BLANKINSHIP:  Same objections.
11               THE WITNESS:  They live in -- well, they have
12    invoices from electric utilities in New York.
13               BY MR. O'TOOLE:
14         Q     Okay.  And which utilities are these?
15         A     I would have to check.  One is Rochester Gas
16    and Electric, I believe.  The other one is New York
17    State Electric and Gas, I think.  I would have to check.
18         Q     Okay.  Do you know who -- for these two named
19    plaintiffs, do you know who their previous energy
20    supplier was?
21               MR. BLANKINSHIP:  Objection.  Outside the
22    scope of his report.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 134

1              THE WITNESS:  No, I do not.

2              BY MR. O'TOOLE:

3        Q    Do you know if that information was produced

4    in discovery?

5              MR. BLANKINSHIP:  Same objection.  Outside of

6    the scope of his report.

7              THE WITNESS:  I don't know if it was produced

8    in discovery or not.  Sorry about that.

9              BY MR. O'TOOLE:

10       Q    If it had been produced in discovery, would

11   this be the kind of information that you want to rely on

12   in forming your opinions?

13             MR. BLANKINSHIP:  Same objection.  Outside the

14   scope.

15             THE WITNESS:  Does my microphone still work?

16   Sorry about that.  I didn't mean to --

17             BY MR. O'TOOLE:

18       Q    No, you're fine.

19             MR. BLANKINSHIP:  Why don't you repeat the

20   question.

21             THE WITNESS:  Yes, please repeat the question.

22   I'm sorry.  I apologize.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 135

1          BY MR. O'TOOLE:

2          Q    Sure.  So let's see.  This real time isn't

3     working for me.

4               Okay.  So if information regarding the named

5     plaintiffs' previous energy suppliers has been produced

6     in discovery, would this be the kind of information

7     you -- you would have wanted in forming your opinions?

8               MR. BLANKINSHIP:  Objection.  Outside the

9     scope of his report.

10              THE WITNESS:  Well, without knowing what that

11    information is, I do not believe so, because I was

12    tasked to do some calculations during the time period

13    that covered a broader time period for this company and

14    not another energy supplier.

15              BY MR. O'TOOLE:

16         Q    Okay.  And so as part of your calculations,

17    you didn't consider individual customers' previous

18    energy suppliers; is that correct?

19         A    That's correct.

20         Q    Okay.  And was that your decision, or did that

21    come from the instruction of counsel?

22         A    That was my --

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                        Page 136

1              MR. BLANKINSHIP:  Hold on.

2              THE WITNESS:  I'm sorry.

3              MR. BLANKINSHIP:  If -- I'm going to instruct

4      you not to answer to the extent that it divulges the

5      substance of conversations.  If you want to tell him

6      what assumptions you made related to that, you certainly

7      can.

8              MR. O'TOOLE:  I think this has been put in

9      issue, Mr. Blankinship.

10             MR. BLANKINSHIP:  I'm not instructing him not

11     to answer, Mr. O'Toole.  I'm just saying don't -- I'm

12     going to caution him not to disclose the substance of

13     conversations with his --

14             MR. O'TOOLE:  Okay.

15             MR. BLANKINSHIP:  -- attorney.  That's all.

16             MR. O'TOOLE:  That's fair.

17             THE WITNESS:  I didn't -- not on my own need

18     to consider or think that it was important to

19     consider -- relative to consider prior energy service

20     company that the named plaintiffs or other plaintiffs

21     used or didn't use.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 137

1           BY MR. O'TOOLE:

2      Q    Okay.  Do you have any understanding of how

3    the named plaintiffs enrolled with Eligo?

4           MR. BLANKINSHIP:  Objection.  Outside the

5    scope of his report.

6           THE WITNESS:  My understanding is in general

7    about how clients enroll in ESCOs in New York, but I do

8    not -- I don't believe I have a know or have a

9    recollection about exact -- how the named plaintiffs

10   were enrolled --

11          BY MR. O'TOOLE:

12     Q    Okay.

13     A    -- with Eligo.

14     Q    And from your previous work in -- in the ESCO

15   space, you're aware that there are multiple different

16   means of enrolling with Eligo Energy suppliers; is that

17   correct?

18          MR. BLANKINSHIP:  Objection.  Outside the

19   scope of his report.

20          You can answer.

21          THE WITNESS:  Yes, based on my experience in

22   the energy service company arena in general, in New

Page 138

```
 1     York, there are multiple ways that prospective customers

 2     become customers of different energy service companies.

 3     Yes, that's correct.

 4              BY MR. O'TOOLE:

 5         Q    And one example would be door-to-door

 6     marketing?

 7              MR. BLANKINSHIP:  Same objection.

 8              THE WITNESS:  Yes.  One example was Eligo

 9     marketing.

10              BY MR. O'TOOLE:

11         Q    Another example would be via telephone?

12              MR. BLANKINSHIP:  Same objection.

13              THE WITNESS:  Another example would be someone

14     calling a potential client over the telephone, yes.

15              BY MR. O'TOOLE:

16         Q    Okay.  And I guess an additional one would be

17     just signing up using the company's website to enroll;

18     is that correct?

19              MR. BLANKINSHIP:  Same objections.

20              THE WITNESS:  Yes.  My understanding, that's

21     not ma- -- many energy service companies offer.

22
```

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

                                                  Page 139

1            BY MR. O'TOOLE:

2        Q    Okay.  And you didn't consider the customer's

3    means of enrollment in forming your opinions there in

4    your expert point of view?

5            MR. BLANKINSHIP:  Objection.  Asked and

6    answered.

7            THE WITNESS:  No, I did not consider they were

8    clients or customers of Eligo in the billing, and that's

9    what I used.

10           BY MR. O'TOOLE:

11       Q    Okay.  Do you know what the named

12   plaintiffs -- I guess I want to take a step back.

13           You said that one plaintiff was in the -- and

14   you said the other plaintiff was either in NiMo or in

15   NYSEG.

16           Is that right?

17           MR. BLANKINSHIP:  Objection.  Mischaracterizes

18   his statement.

19           THE WITNESS:  I think I mistakenly went to

20   NiMo.  I believe it's NYSEG and not NiMo, but --

21           BY MR. O'TOOLE:

22       Q    Okay.

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 140

1          A      -- subject to check.

2          Q      Okay.  And within -- those are -- those are

3     utility zones at work.

4                 Is that fair?

5          A      The way -- the way utility zones are --

6     well -- well, the utility will have a service territory.

7     That service territory may overlap multiple New York

8     zones.  So it depends on the context which zone or layer

9     you're discussing.

10         Q      Sure.

11                And let's just get some common terminology so

12    that we're not talking past each other.

13                When you say "service territory," you're

14    talking about NYSEG, Con Ed, RG&E, ORU, and -- the one

15    escapes me right now.  There's another one.  That's what

16    you mean by --

17         A      NiMo.

18         Q      That's a -- is it NiMo?  Okay.

19         A      Yeah.

20         Q      And then when you are talking -- I forget the

21    terminology you used.  Maybe for the ease of reference,

22    we call it the load zone, and that would be something

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 141

1      like A through J; correct?

2          A      That's right.  So there's the electric utility

3      distribution company.  And you listed about four or

4      five, I believe.  They have service territories mandated

5      by law and by regulation, and that is separate from,

6      although they overlap with, the wholesale market and the

7      New York.  That -- so that defines these zones in New

8      York, A through J, I believe.

9          Q      Okay.  Great.

10             And so just so we're on the same page, when

11     we're talking about the -- the bigger ones, those

12     things, I'm going to say certain territory.  You

13     understand what I mean by that; yeah?

14         A      Yes.

15         Q      Okay.  And then when we're talking about

16     the -- the ones that are denominated with loads, I'm

17     going to call those load zones; is that fine?

18         A      Yes, we can do that.

19         Q      Okay.  Or I have the NYSEG zones from the --

20     at that point?

21         A      Load zone is fine.

22         Q      Okay.

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 142

1          A     It's fine.

2          Q     Okay.  Great.

3                Do you know what the service territory

4     associated with -- do you know what the load zone

5     associated with those two named plaintiffs is?

6          A     One is B, and the other one is -- I don't

7     know.

8          Q     Okay.

9          A     I would have to look it up.

10         Q     Okay.  And did you consider the -- so I take

11    it throughout your methodology, you considered the

12    service territory.

13               Is that fair to say?

14               MR. BLANKINSHIP:  I'm going to object.  That's

15    vague.

16               But you can answer.

17               THE WITNESS:  I considered both the service

18    territory as you defined it and the -- the alphanumeric

19    load zone --

20               BY MR. O'TOOLE:

21         Q     Okay.

22         A     -- that we -- we've discussed.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 143

1        Q    And even when we're looking at customers that

2    have a -- the same service territory and have the same

3    load zone, it's possible for customers to have a

4    different rate classification; is that right?

5              MR. BLANKINSHIP:  Objection.  Vague.

6              THE WITNESS:  That's right.

7              BY MR. O'TOOLE:

8        Q    Okay.  And so, for example, you might have

9    SC1 -- an SC1 residential customer, and you might have

10   an SC2 residential customer within RG&E.

11             Is that fair?

12       A    That is, yes.

13       Q    Okay.  Do you know -- so I'll represent to you

14   that Plaintiff Schuster is in the RG&E zone B.

15             Do you know what rate class she was on?

16       A    No, I do not know --

17       Q    Okay.

18       A    -- off the top of my head.

19       Q    And then same question for Mr. Brous.

20       A    I do not know what type of class --

21       Q    Okay.

22       A    -- Mr. Brous was on.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 144

1        Q    Is it your understanding that Ms. Schuster

2    herself personally enrolled with Eligo?

3             MR. BLANKINSHIP:  Objection.  Outside the

4    scope of his report.

5             You can answer.

6             THE WITNESS:  I don't have any understanding

7    about how she enrolled within -- enrolled with Eligo.

8             BY MR. O'TOOLE:

9        Q    Okay.  And is it your understanding that

10   Ms. Schuster herself personally canceled her service

11   with Eligo?

12            MR. BLANKINSHIP:  Same objection.

13            THE WITNESS:  I have no understanding one way

14   or the other how that account was canceled or not.

15            BY MR. O'TOOLE:

16       Q    Okay.  And I'll ask the same questions for

17   Mr. Brous.

18            Do you have any understanding as to how he

19   came to be an Eligo customer?

20            MR. BLANKINSHIP:  Objection.  Outside the

21   scope of his report.

22            THE WITNESS:  No, I do not.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 145

```
1              BY MR. O'TOOLE:
2         Q    And same questions on the other end.
3              Do you have an understanding of how he ceased
4    to be an Eligo customer?
5              MR. BLANKINSHIP:  Same objections.
6              THE WITNESS:  Assuming that he did, no, I
7    don't.
8              BY MR. O'TOOLE:
9         Q    Okay.
10        A    Can we do a break -- I mean, not now, but ten,
11   20 minutes, I think --
12        Q    Okay.
13        A     -- Is fine.  I didn't mean to break up your
14   flow, but I'm just --
15        Q    No, no, no.  You're fine.  You're fine.
16        A     -- I'm just -- we'll make it a natural
17   point --
18        Q    Sure.
19        A     -- if that makes sense for you.
20             MR. O'TOOLE:  I'll tell you what, why don't we
21   do five or ten minutes, and then we can -- I see it's
22   11:48 right now.  I think we can break for lunch then,
```

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 146

1    and then --

2              MR. BLANKINSHIP:  Sure.  That's fine.

3              THE WITNESS:  Whatever -- it doesn't have to

4    be for lunch, but it's whatever you --

5              MR. O'TOOLE:  Okay.

6              THE WITNESS:  -- is appropriate.

7              MR. O'TOOLE:  I think that -- I think that

8    probably -- I think -- well, yeah.  Let's try to do

9    that.  We can have a quick lunch.

10             THE REPORTER:  Can we go off the record, and

11   then --

12             MR. O'TOOLE:  Sure.

13             THE REPORTER:  -- we can continue to talk --

14             THE VIDEOGRAPHER:  This marks the end of Media

15   Unit Number 2.  Going off the record.  The time is

16   11:48 a.m.

17             (Short recess taken.)

18             THE VIDEOGRAPHER:  This marks the beginning of

19   Media Unit Number 3.  Going back on the record.  The

20   time is 11:57 a.m.

21             BY MR. O'TOOLE:

22        Q    Thanks very much, Dr. Felder.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 147

1              Following up on the line of inquiry earlier,

2      we were talking about the two named plaintiffs'

3      contracts.

4              Was -- do you have any understanding as to

5      whether there was a cancellation fee associated with

6      those contracts?

7              MR. BLANKINSHIP:  Objection.  Outside the

8      scope of his report.

9              THE WITNESS:  I do not know one way or the

10     other.

11             BY MR. O'TOOLE:

12       Q    Okay.  And that didn't factor into your

13     analysis at all; is that correct?

14             MR. BLANKINSHIP:  Same objection.

15             THE WITNESS:  In my analysis, I did not

16     include a cancellation fee one way or the other.

17             BY MR. O'TOOLE:

18       Q    Okay.  So I guess before we go --

19       A    Can I elaborate, please?  In my report, in one

20     of my footnotes, I go through how there will be billing

21     adjustments that did not appear to be an invoice, but

22     some type of payment just given the entries.  To the

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 148

1    extent that those involved a cancellation fee, then my

2    process that I describe would account for them or

3    accommodate or be affected by that because I excluded

4    those adjustments where I could.  I don't know if that

5    makes sense.

6         Q    Perhaps we can put a pin in this, and we can

7    talk about this, because we may bring this up at some

8    point --

9         A    Okay.

10        Q    -- regarding the calculations for method 1; is

11   that correct?

12        A    That -- that would affect all the methods

13   because it affects the universe of invoices that I

14   consider to re- -- or that -- that more -- whenever it's

15   self-compared.

16        Q    Okay.  And you said there's a footnote that

17   corresponds to this.  Just so that we have a --

18        A    Footnote in my direct report.  Footnote 18 is

19   what I'm referring to.

20        Q    Okay.  I want -- I want to address a few

21   things before we -- before we go to do those in methods.

22             Do you have any understanding of how Eligo --

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 149

```
 1              MR. BLANKINSHIP:  Objection.  Outside the

 2      scope of his report.

 3              THE WITNESS:  I wasn't asked to form an

 4      opinion on it at a vague -- or maybe "vague" is not

 5      quite the right word, but imprecise level based on

 6      reading Dr. Erin's re- -- rebuttal or report, direct

 7      report, and just some discussions --

 8              MR. BLANKINSHIP:  I would caution you not to

 9      disclose the contents of any communications you had with

10      your attorneys.

11              THE WITNESS:  Sorry about that.

12              The -- based on her report.

13              BY MR. O'TOOLE:

14      Q    Okay.  So I'll represent to you that the named

15      plaintiffs in this case received invoices, billing

16      invoices for -- for each month that they're serviced

17      with Eligo.

18              Did you -- and I will represent those invoices

19      were also not included in your documents considered

20      list, and that Eligo has produced those.

21              If you knew that Eligo had produced those,

22      would you have wanted to consider those in forming your
```

Page 150

1    opinions?

2              MR. BLANKINSHIP:  Objection.  Outside the

3    scope of his report.

4              THE WITNESS:  The -- what I'm -- the

5    information I needed regard- -- in related to invoicing

6    was in this billing data set that we just mentioned.

7              BY MR. O'TOOLE:

8         Q    Okay.

9         A    And so that would be what I would need to do

10   my analysis.

11        Q    Okay.  And so we're on the same page.  This is

12   like a million-row file.

13             MR. BLANKINSHIP:  Objection.  Mischaracterizes

14   his testimony.

15             THE WITNESS:  As of -- yeah.  We were

16   discussing at the beginning of the deposition.  It's

17   838,000, something like that.  Table 1.  So 838,312 plus

18   a header row --

19             BY MR. O'TOOLE:

20        Q    It says, "Table 1 to" --

21        A    My direct report, page 13.

22        Q    Okay.  And what -- what is this reflecting

Page 151

1    here?

2              MR. BLANKINSHIP:  Objection.  Vague.

3              THE WITNESS:  I'm assuming it refers to

4    table 1.

5              BY MR. O'TOOLE:

6         Q    Okay.  And so table 1 is re- -- like, which --

7    are we on the same page here, DEF -- you were looking at

8    DEF0932- -- 924, which is Exhibit 18?

9         A    Yes.  So that's -- yes.

10        Q    Okay.  Okay.  And so, basically, when you're

11   talking about 800,000 invoices, give or take, you're not

12   talking about 800,000 different documents that's

13   produced in discovery.  We're talking about one very

14   large collection of that invoice data; is that correct?

15        A    That's right.

16        Q    Okay.

17        A    That's right.

18        Q    Okay.  And so because you didn't review the

19   actual individual invoices, you don't know if there were

20   any representations or any kind of disclosures that were

21   made in the invoices that customers received; correct?

22             MR. BLANKINSHIP:  Objection.  Vague.  Outside

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 152

1      the scope of his testimony.

2                  THE WITNESS:  For calculating my methodology

3      used -- that I used that data set in -- as I described

4      in my report what's in that data set.  So it had

5      numerical values.

6                  BY MR. O'TOOLE:

7          Q    So my question, Dr. Felder, is a little bit

8      different.

9          A    Okay.

10         Q    I didn't ask you if you used that Excel to

11     calculate the -- the damages at issue here.  I asked you

12     whether you're aware of any kind of disclosures or any

13     kind of statements that are in the individual invoices

14     that customers received.

15                 MR. BLANKINSHIP:  Sir, there's no question

16     pending.

17                 THE WITNESS:  I'm sorry?

18                 MR. BLANKINSHIP:  There's no question to

19     answer.

20                 THE WITNESS:  I understand.

21                 MR. BLANKINSHIP:  He made a statement.  He

22     didn't mention -- he didn't ask a question.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 153

1              THE WITNESS:  Okay.

2              BY MR. O'TOOLE:

3         Q    Well -- um, let's see.  Okay.  I'll just

4    repeat my question.

5              And so because you didn't review the actual

6    individual invoices, you don't know if there were any

7    representations or any kind of disclosures made on the

8    invoices that the customers received; correct?

9              MR. BLANKINSHIP:  Objection.  Asked and

10   answered.  Outside the scope of his testimony.  Vague.

11             THE WITNESS:  Well, I do want to mention on my

12   direct report, my first report, on page 17, in

13   footnotes 25 through 27, there's terms of service, and

14   they may be referred to -- they may, or I just don't

15   recall whether or not they have any disclosures in them.

16             BY MR. O'TOOLE:

17        Q    Yeah.  So my question is a little bit

18   different.  I'm not asking about the contracts.  I'm

19   asking about the invoices that utility -- that -- excuse

20   me, that --

21        A    Oh, I'm sorry.  I misunder- -- I apologize.  I

22   misunderstood.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 154

```
 1        Q    I -- I guess just so we can solve the loop on

 2   this.  You didn't look at any individual -- in- --

 3   individual invoices.  You looked at the big Excel file

 4   or CSV for invoice data; correct?

 5        A    That's right.  I didn't look at 838,000

 6   invoices.

 7        Q    Okay.  And so you don't know what kind of

 8   disclosures or statements were made on those individual

 9   invoices, do you?

10             MR. BLANKINSHIP:  Objection.  Asked and

11   answered.  Outside the scope of his report.

12             THE WITNESS:  That is correct.

13             BY MR. O'TOOLE:

14        Q    Okay.  And do you have any understanding about

15   what kind of -- presumably not.  You don't have an

16   understanding about what kind of disclosures were made

17   in those invoices?

18             MR. BLANKINSHIP:  Same objections.

19             THE WITNESS:  Are we talking in those invoices

20   of your client's customers or in --

21             BY MR. O'TOOLE:

22        Q    Yes.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 155

1          A      -- in general?

2          Q      The invoices of the client adjustment.

3          A      No, I -- I do know -- not, whether they have

4     any disclosures or not.

5          Q      And are you aware whether they had an itemized

6     breakdown of supply charges?

7                 MR. BLANKINSHIP:  Same objections.

8                 THE WITNESS:  In New York, they --

9     customers -- electricity customers and natural gas

10    customers who do not choose the utility have a separate

11    charge or set of charges for delivery, which is the

12    utility versus the competitive product.  So those would

13    be separate.

14                BY MR. O'TOOLE:

15         Q      And so you -- when you say "competitive

16    product," to be clear, you're talking about supply?

17         A      Yes.  It -- competitive supply, so either

18    electricity or natural gas.

19         Q      Okay.  And do you know exactly -- do you

20    know -- you said -- let's see.

21                Do you know what those separate charges would

22    have said or how they would have been listed in

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 156

```
 1      New York?

 2              MR. BLANKINSHIP:  Objection.  Outside the

 3      scope.

 4              THE WITNESS:  Speaking in general, yes.

 5              BY MR. O'TOOLE:

 6          Q    And what is your understanding?

 7              MR. BLANKINSHIP:  Same objection.

 8              THE WITNESS:  There would be the amount of --

 9      if we're using electricity as an example, kilowatt

10      hours, but that's also information that you found.  The

11      delivery portion of the bill times the third-party

12      supplier energy service, company supplier's rate, and

13      the -- and the total.

14              BY MR. O'TOOLE:

15          Q    Okay.

16          A    Typically, that's what's done.

17          Q    And do you know how that supply charge would

18      be explained or how you listed?

19              MR. BLANKINSHIP:  Objection.  Outside the

20      scope.

21              THE WITNESS:  Speaking in general, it lists

22      the name of the company, and it may or may not have a
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 157

1    telephone number or some way to contact the company.  It

2    may or may not have some wording, you know, "This is the

3    entity you should contact for this portion of the bill."

4    I -- but -- but something around that.  And those things

5    change over time and by states and jurisdictions.

6              BY MR. O'TOOLE:

7         Q    Okay.

8         A    And by utility potential.

9         Q    Okay.  Um, so I -- I guess let's just circle

10   or close a few loops.

11             You said it listed the name of the company.

12   The company you're referring to there is regional energy

13   supplier like Eligo; correct?

14             MR. BLANKINSHIP:  Objection.  Outside the

15   scope of his report.

16             THE WITNESS:  That's right.  Again, I'm

17   speaking in general that it would say, "Your supplier is

18   Eligo.  Here's the rate."  And then the quantity is

19   already on the bill because you need it for the delivery

20   piece.  And then those two numbers may be multiplied,

21   which we did this morning.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 158

```
 1              BY MR. O'TOOLE:
 2         Q    Sure.  And I just want to understand what your
 3    testimony.
 4              Is your testimony that every one of Eligo's
 5    New York customers would have received an invoice with
 6    that supply charge that said "Eligo Energy" broken out?
 7              MR. BLANKINSHIP:  Objection.  Outside the
 8    scope.  Mischaracterizes his testimony.
 9              THE WITNESS:  As I said, I didn't look at any
10    invoices, the -- as part of my direct report or
11    rebuttal.  So I will not be surprised that that's the
12    case, if there's information, along those lines.
13              BY MR. O'TOOLE:
14         Q    Okay.  Okay.  So I'm just a bit confused
15    because you said at one point that in New York, the
16    supply charge is broken out, and then at another point,
17    you said that things will vary, I guess, state by state
18    and from time to time.
19              Um, with -- I guess from -- I'll represent to
20    you that the class period here is object- --
21    February 2018 to Feb- -- February 2018 to February 2024.
22              In that time period, would these Eligo
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 159

1    customers have received this -- a -- a -- a uniform

2    disclosure, or is this a kind of thing that you would

3    need the individual invoices to determine --

4            MR. BLANKINSHIP:  Objection.  Out- -- sorry.

5    I didn't hear it.

6            MR. O'TOOLE:  Yes, sir.

7            BY MR. O'TOOLE:

8        Q    To determine whether this supply charge had

9    been disclosed?

10           MR. BLANKINSHIP:  Objection.  Outside the

11   scope.  Lack of foundation.

12           THE WITNESS:  Whether I was answering these

13   things vary from time to time, I was referring -- maybe

14   I wasn't clear to additional information, such as an

15   email address --

16           BY MR. O'TOOLE:

17       Q    Okay.

18       A    -- or telephone number of the company.  But in

19   order for someone -- the bills would have the energy

20   supply company, the rate, and the amount.

21           BY MR. O'TOOLE:

22       Q    Okay.  Okay.  So it would be uniform.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                Page 160

 1              Is that what you're saying?
 2              MR. BLANKINSHIP:  Objection.  Mischaracterizes
 3      his testimony.  Outside the scope of his report.
 4              THE WITNESS:  Yeah, in uniform.  That
 5      information would provide maybe at different places on
 6      the bill.  That placement may vary about the utility.
 7      The utility may have additional language about --
 8      related to that.
 9              BY MR. O'TOOLE:
10         Q    Do you have any understanding of whether Eligo
11      has submitted its contracts for regulatory approval in
12      New York?
13              MR. BLANKINSHIP:  Objection.  Outside the
14      scope.
15              THE WITNESS:  I do not know one way or the
16      other.
17              BY MR. O'TOOLE:
18         Q    Okay.  And you haven't seen any documents
19      produced in discovery that are relevant to that point?
20              MR. BLANKINSHIP:  Objection.  Outside the
21      scope.
22              THE WITNESS:  In my direct report and

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 161

1    rebuttal, I refer to a Pu- -- New York Public Service

2    Commission hearing and order that discusses the terms

3    and conditions of energy service companies.  So that

4    would pertain to the topic of contracts.

5              BY MR. O'TOOLE:

6         Q    And when you say that, you're referencing the

7    2019 reset order; is that correct?

8         A    That is correct.

9         Q    Okay.  So aside from the 2019 reset order,

10   have you seen any other information disclosed in the

11   discovery regarding Eligo's applications to the

12   regulator concerning its contracts?

13        A    No, I have not.

14        Q    Okay.  And have you seen any information in

15   discovery regarding approval from regulators for these

16   contracts?

17             MR. BLANKINSHIP:  Objection.  Outside the

18   scope.

19             THE WITNESS:  No, I have not.

20             BY MR. O'TOOLE:

21        Q    Okay.  And are you aware that sitting here

22   today that Eligo as a regional energy supplier, is

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 162

1    obligated to disclose its variable rates to the relevant

2    regulator here?

3              MR. BLANKINSHIP:  Objection.  Lack of

4    foundation.  Outside the scope.

5              THE WITNESS:  I'm -- I'm not aware of that

6    regulation one way or the other.

7              BY MR. O'TOOLE:

8         Q    Okay.

9         A    Surprised to hear, but -- well, actually, I

10   didn't know that because there are -- that's why.  So

11   now, I don't know the timing or if it's monthly or

12   quarterly.  There may be some important details.

13        Q    Okay.  And just so we're on the same page and

14   in terms of parsing which one is which, Eligo would be

15   submitting that information to the New York PSC because

16   that's a regulator for the retail market; correct?

17             MR. BLANKINSHIP:  Objection.  Compound.

18   Vague.  Outside the scope of his testimony.

19             THE WITNESS:  Yes, that's my -- that's my

20   understanding of what -- how the regulation works.

21             BY MR. O'TOOLE:

22        Q    And the New York Public Service Commission,

Page 163

1    they don't regulate -- they don't regulate NYISO, do

2    they, the wholesale market?

3         A    The New York ISO, Independent System Operator,

4    is regulated by the Federal Energy Regulatory

5    Commission.

6         Q    Okay.  So in short, you got a wholesale

7    market.  It's regulated by a federal regulator.  You got

8    a retail market.  It's regu- -- it's regulated by a

9    state regulator.

10              Is that fair?

11              MR. BLANKINSHIP:  Objection.  Outside the

12    scope.  Compound.  And mischaracterizes his testimony.

13              THE WITNESS:  That's correct.

14              BY MR. O'TOOLE:

15         Q    Okay.  All right.  I think I'm -- just a few

16    more points on this.

17              You're aware that there are two other experts

18    who have been -- I should say, testifying experts who've

19    been designated in this litigation; is that correct?

20              MR. BLANKINSHIP:  Objection.  Outside the

21    scope.

22              THE WITNESS:  I'm aware of three other

Page 164

1    experts.

2                BY MR. O'TOOLE:

3        Q    Fair.

4                Two other experts who have been disclosed by

5    Plaintiffs as well as yourself; correct?

6        A    I mean, I'm assuming they've been disclosed by

7    Plaintiffs, but my understanding Plaintiffs have three

8    experts -- at least three experts.

9        Q    Fair.

10               And those experts are Edo Macan, you, and

11   Mr. O'Brien; is that right?

12               MR. BLANKINSHIP:  I'm just going to object.

13   Outside of the scope.

14               THE WITNESS:  I -- yes, I believe tha- --

15   that's correct.

16               BY MR. O'TOOLE:

17       Q    Okay.  In the course -- so, I guess, have

18   you -- have you spoken with or met Mr. Macan?

19               MR. BLANKINSHIP:  Same objections.

20               THE WITNESS:  Yes.

21               BY MR. O'TOOLE:

22       Q    Okay.  Have you exchanged emails with him?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 165

1         A     Yes.

2         Q     What role did Mr. Macan play in drafting

3    the -- the reports that you have disclosed in this

4    litigation?

5         A     Do you mean my reports?

6         Q     Yes.

7         A     Okay.  Um, he had no role in drafting them.

8    He did provide the -- as I stated in my report, the --

9    the formulas, the methodology for Methods 1, 2, and 3.

10   Um, yeah.

11        Q     Okay.  And aside from that, did he offer any

12   kind of drafting or consideration of your report?  Did

13   he offer any of those?  Anything like that?

14             MR. BLANKINSHIP:  Objection.  Compound.

15             THE WITNESS:  No.  We may, um -- so I don't

16   know if this affects privilege.

17             MR. BLANKINSHIP:  Well, I -- I think that you

18   can just answer that question yes or no.

19             THE WITNESS:  Okay.  He provided the

20   methodologies and formulas, which I used in my report.

21   There may have been some clarifications to make sure,

22   obviously, but that would be the extent of any editing,

Frank A. Felder , Ph.D.                           January 8, 2026
Brous v. Eligo Energy, LLC

Page 166

```
 1      drafting, commenting on my report.
 2               BY MR. O'TOOLE:
 3          Q    Okay.  And how many times have you met
 4      Mr. Macan, either in person or via Zoom or on a
 5      telephone call?
 6          A    Four to six.
 7          Q    Four to six.
 8          A    Five to eight, something like that.
 9          Q    Okay.  And about how many emails would you say
10      you've exchanged with him?
11          A    The emails were primarily about scheduling the
12      calls, so --
13               MR. BLANKINSHIP:  Yeah, I'm going to caution
14      you.  You can tell him how many emails --
15               THE WITNESS:  Okay.
16               MR. BLANKINSHIP:  -- but don't talk about the
17      substance of those -- those conversations.
18               THE WITNESS:  That same ballpark, maybe a
19      little bit more.
20               BY MR. O'TOOLE:
21          Q    Okay.  Four to eight emails?
22          A    I -- you know, in abundance of caution, four
```

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 167

1    to 16.  I mean, you know, what -- what do you mean by

2    email?  Does that include the implied data?  I mean, you

3    know, the...

4         Q    And same questions for Dr. O'Brien.

5              Is -- is -- Dr. O'Brien has a Ph.D.; is that

6    correct?

7         A    I don't know.  I don't have a -- I don't -- I

8    don't recall that right -- right now.

9         Q    I guess how many times have you spoken with

10   him?  It could be meeting in person, it could be via

11   Zoom, via telephone call.

12        A    I've never spoken to him.

13        Q    And so have you ever exchanged emails with

14   him?

15        A    I've never exchanged emails -- emails with

16   him.

17        Q    Have you ever met him just outside of the

18   context of litigation?

19        A    I do not believe I have met him, but I've been

20   around.  So it's possible --

21        Q    Okay.

22        A    -- but I do not firmly recall meeting him.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 168

```
 1          Q    Okay.  Okay.  I think probably the last thing

 2     before we break for lunch, I just want to understand,

 3     you have a -- you have quite a distinct and colorful

 4     resume.  It seems like you got to travel a lot.  I saw

 5     that you were in Ulaanbaatar last year.

 6          A    I was in -- yes.

 7               In Malaysia?

 8          Q    Yeah -- oh, no, in -- in Mongolia.  In

 9     Mongolia.

10          A    Oh, my -- yes, yes, excuse me.

11          Q    But, I -- I guess, were you -- were you in

12     Malaysia as well?

13          A    I was in Malaysia as well.

14          Q    Okay.  And you've done work in, like, Senegal;

15     is that correct?

16          A    Yup.

17          Q    Okay.  So you've traveled a whole bunch for

18     your work; right?

19          A    Yes, I have.

20          Q    Okay.  And you've been asked to speak at these

21     kind of events?

22          A    Yes.  A lot of them were training events, so I
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 169

1    was with other colleagues providing training --

2         Q    Okay.

3         A    -- or speaking engagements.

4         Q    Okay.  You referenced the 2019 reset order

5    earlier in your testimony just during this break.  So

6    you -- okay.  So let's take a step back before we get

7    into the 2019 order.

8              You've never worked for the New York PSC, have

9    you?

10             MR. BLANKINSHIP:  Objection.  Vague.

11             THE WITNESS:  I have not worked as an employee

12   or consultant that I believe -- no, I haven't worked as

13   a consultant either for the New York Public Service

14   Commission.

15             BY MR. O'TOOLE:

16        Q    Okay.  And you've -- you've never been invited

17   to give testimony before the New York Public Service

18   Commission.

19             Is that fair?

20        A    I don't believe so.

21        Q    Okay.

22        A    No, I haven't.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 170

1          Q     And in any event, you've never given testimony

2     before the New York Public Service Commission; correct?

3          A     Yeah, I think that's correct.

4          Q     Okay.  And so --

5          A     Um, let me -- I was involved in a matter

6     called the "Cross-Sound Cable" that connected Long

7     Island and Connecticut.  And I provided testimony on the

8     topic of whether or not this underwater DC direct

9     current transmission line, whether or not it was needed.

10    And, well, really what the reliability implications

11    would be for New York.

12          New York, I believe at the time, but I could

13    be wrong, had the Public Service Commission and the

14    entity, the sitting commission had a relationship.  So

15    the testimony I provided regarding the need of this

16    transmission line may have ended up as testimony before

17    the New York Public Service Commission.  I just don't

18    know because of this -- how this arran- -- arrangement

19    works.

20          Q     But you've never testified in an -- in an open

21    hearing or anything like that?

22                MR. BLANKINSHIP:  Objection.  Vague.

Page 171

```
 1              THE WITNESS:  No, this was a written report
 2      testimony.
 3              BY MR. O'TOOLE:
 4      Q     You said it was a Cross-Sound matter.
 5              Just to be clear, you're talking about going
 6      from New York to Connecticut across the Long Island
 7      Sound?
 8         A     That's right.  That is the Cross-Sound Cable.
 9         Q     Okay.
10         A     It's a transmission line.
11         Q     And -- and you offered some kind of a
12      written -- written statement; is that correct?
13      Regarding this -- regarding the liability?
14         A     I was retained by the developer --
15         Q     Okay.
16         A     -- of this transmission line.  And the -- the
17      top- -- one topic in New York would be since much of the
18      power will be flowing, well, from Connecticut to
19      New York, you know, the reliability implications of that
20      is.
21         Q     Okay.  And when did you deliver this written
22      statement?
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 172

1          A     So this was in -- you know what, now, I'm now

2     just reme- -- so this was in -- so this was my Ph.D. in

3     '97, '98.  But my testimony to be -- came -- it could

4     have been for Connecticut, but I did -- but whether or

5     not it was filed in New York, I don't know.

6          Q     Okay.

7          A     So I -- I may have misspoke.

8          Q     Was this sometime around then the late '90s or

9     in 2000s?

10         A     Yeah, it was the late '90s.

11         Q     Late '90s, sort of.  Okay.  Great.

12               And the reset you talk in your report about

13    how extensive the reset order hearings were, there were

14    more than ten days of testimony; is that correct?

15         A     Yes.  I described, I think, in -- in my direct

16    report, my first report --

17         Q     Mm-hmm.

18         A     -- the records and the proceedings, so

19    paragraph 16 starting on page 6 going to page 7.

20         Q     Okay.  All right.  And so we've got more than

21    ten days -- over ten days of an evident- -- of an

22    evidentiary hearing.  We've got -- well, the evidentiary

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 173

1    hearing --

2         A    Okay.

3         Q    -- the evidentiary hearing took place over --

4    over ten days; that's correct?

5         A    I -- that's what my testimony says, yes.

6         Q    Okay.  And the transcript is 4233 pages,

7    22 witnesses?

8         A    Yes.

9         Q    At least.  Great.

10             MR. O'TOOLE:  Okay.  That will be -- we can

11   probably take a break for lunch now.

12             MR. BLANKINSHIP:  Okay.

13             THE VIDEOGRAPHER:  This marks the end of Media

14   Unit Number 3.  Going off the record.  The time is

15   12:23 p.m.

16             (Whereupon, a recess was taken for lunch.)

17             THE VIDEOGRAPHER:  This marks the beginning of

18   Media Unit Number 4.  Going back on the record.  The

19   time is 13:16 p.m.

20             MR. O'TOOLE:  Thank you very much.

21             BY MR. O'TOOLE:

22        Q    Dr. Felder, before the lunch break, we spoke a

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 174

1    little bit about the people who are on your team.  And

2    you indicated that Matt Livingston provided support for

3    computations for -- for the -- for the figures that you

4    have in your re- -- report.

5            Can you give me a bit more detail about the

6    breakdown between -- of work between you and him?  Would

7    he calculate the figures in the first instance?

8        A    I believe by "figures," you're referring to

9    tables or --

10       Q    That's --

11       A    What do you mean by "figures"?

12       Q    Sure.  Yeah.

13           It could be the -- the damages calculations

14   that were on the report, and those, I believe, are in

15   tables.

16       A    Yes, yeah.  Sorry.  And I'm not trying to

17   be --

18       Q    No, that's okay.

19       A    Just making -- yes, so to implement the

20   various methods across these roughly 838,000 invoices,

21   it required doing multiple calculations, setting up

22   input files, doing multiple calculations, reporting the

Page 175

1    results, reviewing the results.  And so under my

2    instruction, Matt would perform those calculations and

3    computations.

4         Q    Okay.  Um, so you said there were multiple

5    steps in calculating this.

6              What is your understanding of what the first

7    step is?

8              MR. BLANKINSHIP:  Objection.  Vague.

9              THE WITNESS:  Well, it -- the first step

10   depends on the methodology.

11             BY MR. O'TOOLE:

12        Q    Okay.

13        A    But the -- one step was -- and some of them do

14   depend on sequence and some don't, but one step was --

15   as we were discussing before the break or lunch, was

16   reviewing the billing dataset on that footnote that we

17   were talking about and, um, processing it so that we

18   were only looking at invoices and not an entry that was

19   a payment or a correction or a refund to a cu- -- to a

20   particular customer.  So one step involved doing that.

21             Another step involved extracting assumptions.

22   In the case of Matt, he did a lot of work extracting

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 176

```
 1      various numerical values from the POWWR spreadsheets

 2      over the time period we've been discussing and making

 3      sure that that extraction was correct, that the values

 4      made sense, putting them in a file that would then be

 5      used to do further computations.

 6          Q    Okay.

 7          A    And then he would -- he did similar tasks with

 8      the other methods, in some cases be data or assumptions

 9      provided by me, and other -- and then doing the

10      implementation of the formulas in my report.

11          Q    Okay.

12          A    And likewise on the rebuttal report.

13          Q    Okay.  And you haven't seen any of those input

14      files or reporting results or anything like that during

15      the course of today's deposition, have you?

16          A    No.  We haven't talked about my report at all.

17          Q    Okay.  Well, so we have talked about your

18      report, Dr. Felder.  I want to make sure we're clear on

19      this.  We've submitted your report and your re- --

20      rebuttal report and your exhibits as -- as exhibits --

21      exhibits for your original report.  We've submitted

22      those as exhibits for this deposition; correct?
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 177

1        A    Yes.  I'm sorry.  I meant in terms of, well,

2    the topic we're on now.

3        Q    Okay.

4        A    That's what I meant.

5        Q    So I'll represent to you that these input

6    files and the reporting results and any kind of

7    immediate calculations haven't been produced to us.

8             I take it you've produced those to your own

9    counsel?

10            MR. BLANKINSHIP:  I am going to object with

11    that as for attorney-work product.

12            And I will instruct you not to answer that

13    question.

14            BY MR. O'TOOLE:

15       Q    Um, all right.  Point being, Dr. Felder, we

16    haven't seen those -- those -- those intermediate steps.

17            Do you have an idea -- let's just take

18    Method 1, for example.  When -- in calculating that, do

19    you have an idea how many different steps were involved?

20       A    Well, I'm not trying to be --

21       Q    Sure.

22       A    -- flippant, but Method 1 and the other

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 178

1    methods process over 800,000 invoices.  And in order to

2    do that, they are doing 800,000 calculations for each

3    method just as a starting point.  And then there are

4    additional calculations in the later methods, Methods 5

5    through 8, that are doing some additional calculations.

6    There are also some -- I don't want to call them minor

7    but, you know, in -- in terms of numerical processing,

8    you know, there's --

9         Q    Yeah.

10        A    -- a lot of steps to do a particular

11   calculation to calculate the overcharge for one invoice

12   for one month.  You know, that involves multiple

13   calculations.  That could also -- in the input files,

14   there could have been multiple calculations to provide

15   or to extract or process the data for the input

16   assumptions.

17             So, um, needless to say, there were -- you

18   know, I don't want to be -- there was a lot of

19   calculations depending on how you group them and

20   categorize them within each method.

21        Q    Do you have an estimate as to the number of

22   steps and number of calculations that were involved

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 179

1        here?

2                MR. BLANKINSHIP:  Objection.  Vague.

3                THE WITNESS:  Well, in terms of major steps

4        and not really calculations, but a step that could

5        include, you know, a lot of calculations, you know, five

6        to ten major steps, and they're outlined or dis- -- and

7        discussed in the report.  And then underneath those

8        steps could be if it called upon processing those large

9        dataset, then that would trigger, you know, on the order

10       of millions of potentially calculations, because if you

11       did two calculations per row, per entry, that's, you

12       know, 1.6 million or whatever the number is, you know.

13          Q    So we're talking about an enormous number of

14       calculations here.

15               Is that fair?

16               MR. BLANKINSHIP:  Objection.  Vague.

17               THE WITNESS:  Uh, yes.

18               BY MR. O'TOOLE:

19          Q    Okay.  So you testified that Matt did these

20       calculations in the first instance.

21               What was your role -- did -- all right.  I

22       guess I should first ask, did you have any role in

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 180

1      performing these calculations?

2              A     Yes.

3              Q     And what was your role?

4              A     My role was to provide explicit instructions

5      on what the input files would be, if he created them, or

6      providing input files for when he needed them.

7      Reviewing, um, the data extraction that he did.  Um,

8      reviewing the steps he took to ensure that whatever he

9      was doing -- data extraction, calculations, processing

10     of any type -- was checked.  Um, the review of the -- of

11     the results, the comparison of results across methods,

12     the quality check of data entry from the input file to

13     the -- the actual processing of that, things like that.

14             Q     Okay.  So are you aware of any software was

15     used in the course of these calculations, if you had to

16     code anything?

17             A     Yes.

18             Q     Okay.  What did you -- what program did you

19     use to code?

20             A     So -- well, a lot of the file manipulation was

21     done in Excel.

22             Q     Okay.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 181

1        A    A lot of it was done in -- in Python.

2        Q    Okay.  And so --

3        A    Th- -- there may have been some coding -- oh,

4     I -- some of the coding was done in R.

5        Q    Okay.  So the -- the calculation process

6     involved work in Excel.

7             Did you write any -- I -- I should say, did

8     you write any programs at all, any kind of coding

9     programs as part of the calculation process?

10       A    If you're not including an Excel, the answer

11    is no.  But within Excel, I did calculations and...

12       Q    Okay.  And how about Matt, did he write any

13    code --

14       A    Yes.

15       Q    -- for the calculations?

16            What bits of code did he write?

17       A    He wrote -- again, I'll do categories, but the

18    code that extracted data from the POWWR spreadsheets.

19    He wrote code that implemented the various methods.  And

20    I'm also including the rebuttal reports.  Well, I think

21    that's pretty straightforward what -- you know, what we

22    can talk about if you have questions, obviously.

Page 182

1           He too produced the tables that we discussed.

2      And to check as we were able, input assumptions by -- we

3      would do checks of sub-calculations or partial

4      calculations, you know, pieces at a time so that we were

5      ensured that a particular subroutine, to use some

6      old-fashioned language, or a particular piece of code

7      was working properly.  He would check that -- write it

8      and then check that.  We would discuss that.  And then

9      we would continue to build out the -- the code to do the

10     complete calculations we needed.

11          Q    Okay.  And so do I understand you correctly

12     that there was code that was performed to do these

13     calculations, and then there was subcode, in a way, that

14     was used to check whether the code was functioning

15     right?

16          A    That's right.  It was all part of the same

17     code.  That's common computer practice to as you write

18     code, put in certain checks.  Like, if values aren't

19     supposed to be negative, this is a silly example, the

20     code would check why is it producing a negative number

21     and then flag it and you know if you pro- -- wrote

22     something wrong or -- that's a trivial example.

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 183

1              Q     Okay.  Okay.  And you haven't produced any of

2        that code in this litigation, have you?

3                    MR. BLANKINSHIP:  Objection.  Asked and

4        answered.

5                    THE WITNESS:  I have not provided that to --

6                    BY MR. O'TOOLE:

7              Q     Okay.

8              A     -- to the attorneys in this.

9              Q     You mentioned that there were three different

10       programs that were used:  Excel, Python, and R.

11                   Can you explain what code -- did you use a --

12       did you or Matt use any code specifically regarding

13       Excel?

14             A     Yes.

15             Q     And which codes were they?

16                   MR. BLANKINSHIP:  Objection.  Vague.

17                   THE WITNESS:  I'm -- I'm -- well, when you

18       mean codes like Visual Basic or within Excel or just --

19       I guess I was using Excel code, maybe too strong of a

20       word.  You know, if you add two numbers, in a sense,

21       that's coding in Excel.  But if you mean something

22       beyond that, I think the answer is no.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 184

1          Q    Okay.  So we will start with -- with both

2     questions, I can break it up.

3               You're talking there -- when you say you're

4     adding two numbers, maybe using the formula bar in

5     Excel, so you say C31 plus D31, and then gives you

6     a new value; is that -- is that correct?

7          A    Yes.  So...

8          Q    Yeah.  Okay.

9               And so you guys -- you guys did that in this

10    report?

11         A    Yes.

12         Q    Got it.

13              And then did you write any additional code,

14    apart from what's preexisting in Excel, to form any

15    calculations in Excel?

16         A    Well, there was a code to extract data from

17    the POWWR reports, which were in Excel.  The code itself

18    was not part of Excel, but it worked on the Excel files.

19         Q    Okay.

20         A    So that makes a difference.

21         Q    So, I guess, how did you apply that code to

22    the Excel files if it wasn't part of the -- if the

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                  Page 185

1    operation wasn't within the Excel file?

2         A     What Matt did, he wrote a Python code that

3    read -- searched and read the various -- the relevant --

4    for my calculations -- POWWR reports, and extracted the

5    data that we needed for a particular method, and then

6    compiled that in a Python file that then made its way

7    into an Excel file.

8         Q     Okay.  And how many drafts of that code were

9    there, this Python code that was -- essentially extracts

10   the values in the POWWR spreadsheet and spits them out

11   somewhere?

12        A     I guess it -- again, I'll try to -- it depends

13   on what you mean by "draft."  I mean, it -- it takes --

14   I mean, there was one set of code.  It was revised as we

15   applied the POWWR spreadsheet -- let's say, the POWWR

16   spreadsheets changed the format, and I'm making the

17   data, you know, January of 2022.  There was a -- you

18   know, it had a -- a stage or somehow.  And so Matt may

19   have originally wrote the code that assumed that that

20   certain data was in a certain place.  And then when you

21   get the new format, that doesn't work, so we had to

22   revise it to account for that case, for example.

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 186

1          So, you know, it was an iterative process.  It
2     wasn't discrete versions, you know, Version 1 then
3     Version 2.
4          Q    Okay.  And how much of -- I guess how many
5     revisions in this iterative process took place?
6          A    I mean, beyond just minor -- which, again, it
7     depends on what you mean by "revisions," but two to
8     three.  I think the major one is the one I just
9     mentioned, which is if there was a structural change
10    to -- and, I mean, it's a -- a formatting change that
11    affected how Matt wrote his code.  So he may have gone
12    back once or twice.  Once he -- you know -- so maybe
13    three, roughly.  He extracted the data from selected
14    Excel files, made sure that worked.  He then applied it
15    to the universe of POWWR files.  And then that may have
16    created issues that he didn't anticipate, like I
17    discussed, make a revision then, and then do the -- the
18    final code, so something like that.
19         Q    Okay.  And when it comes to the code, I think
20    you described it as a kind of living -- living entity.
21         Was it the way that this is in a platform in
22    Python, or did you save multiple different versions of

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 187

1    the code?

2         A    That would have to -- well, the way Python is

3    written, you can run it modular.  So, you know, you can

4    run up subsections, you know, a sub-entity of that kind

5    of data language.  So about a portion of the code that's

6    somewhat self-contained, you can run it or not run it as

7    part of a larger code.  And so, um, you know, I don't

8    know if -- if Matt literally changed -- saved that

9    particular subroutine as a different file name, or he,

10   you know, would test subroutines, and then they would

11   save that the same file name.  But I'm sure there are

12   different variations or, you know, savings of the code

13   over time.

14        Q    Okay.  And --

15        A    I mean, because that's just good practice to

16   make sure that you have what you did yesterday in case

17   you need to reproduce it.  In fact, it may be -- you

18   know, now the standard practice is you save almost any

19   change at all.  So you can literally go back -- so, I

20   mean -- to a potential data code.

21        Q    And so your representation is that you believe

22   that that took place in this litigation?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 188

1              MR. BLANKINSHIP:  Objection.  Vague.

2              THE WITNESS:  I -- I'm just trying to

3      describe -- I -- I don't know for a fact if Matt just

4      saved one version of the code.  I suspect there are

5      multiple versions of the code.

6              BY MR. O'TOOLE:

7          Q    Okay.

8          A    How many and whether he did this extensive

9      process where we could unwind each edit to the code, I

10     do not know.  What we have is a common practice.

11         Q    Okay.  Do you know if he kept a separate

12     document, which would have explained all of the edits

13     that he made to the code?

14         A    He kept in Python and every other language,

15     you can put comments, indicative of the way you guys

16     think, but comments that don't affect the running of the

17     code, but describe why this variable is named this or

18     why this input or why it's doing this calculation so

19     that it could be -- you know, to remind him what he was

20     doing.

21         Q    Okay.  So, I guess, my question was, did he

22     keep a separate document that would lay out all of the

Page 189

1    different revisions that he made to the code?

2              MR. BLANKINSHIP:  Asked and answered.

3              THE WITNESS:  He may have kept a separate

4    document that at a high level was some rising key steps,

5    but I -- I -- I do not know -- know for a fact.

6              BY MR. O'TOOLE:

7         Q    Okay.

8         A    But I think my -- yeah.  Sorry.

9         Q    Sorry.  Yeah.

10             And I -- I should -- I should tell you this,

11   Dr. Felder, I do- -- I don't need for you to speculate

12   on any of these points --

13        A    Okay.

14        Q    -- if you don't know and it's a matter that

15   Matt would know exactly.  That's -- that's --

16        A    Okay.

17        Q    -- that's perfectly appropriate response.

18        A    Okay.

19        Q    If you are under oath, and so what you're

20   saying is -- is -- is obviously under oath, and so if

21   you don't -- I don't want you to go out on a whim here

22   if you don't know the answer.

Frank A. Felder , Ph.D.                                  January 8, 2026
Brous v. Eligo Energy, LLC

Page 190

1        A    Okay.

2        Q    So you talked about this Python code that

3    would extract the values from the POWWR spreadsheet.

4    And then you talked about also subroutines and modular

5    coding that would -- that would analyze the accuracy of

6    that code.

7             What kind of code was performed in the R

8    platform?

9        A    So that was performed by Carol Felder.  So

10   we -- when we extracted data from the New York

11   Independent System Operator's website, we had to do a

12   variety of -- well, downloading the file, that did not

13   involve R.  And then doing calculations like averaging

14   energy prices over a month by zone, load zone in the

15   terminology, for example, or summing up total ISO load

16   by month.

17            So R was written to take that CSV or Excel

18   file and do that -- those calculations over the class

19   period.

20       Q    Okay.  And you haven't -- you haven't provided

21   any of that code, have you?

22            MR. BLANKINSHIP:  Objection.  Vague.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 191

1          THE WITNESS:  I've not given it to the --

2          BY MR. O'TOOLE:

3      Q    Okay.

4      A    -- plaintiffs' counsel, no.

5      Q    To the plaintiffs; counsel?

6      A    I have not given the --

7      Q    But I -- to -- to your own counsel; that's

8  correct?

9      A    Right.

10     Q    Okay.

11     A    But, technically, they're not my counsel.  I

12  mean, I understand what you're saying by my counsel,

13  but...

14     Q    Okay.  Fair.  Fair.

15     A    I don't mean to...

16     Q    Does -- do you know what Matt Livingston's

17  academic background is?

18     A    Yes.

19     Q    And what is it?

20     A    He has an under- -- a graduate degree from

21  Penn State in both meteorology and business analytics, I

22  believe.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 192

1          Q     Okay.  And you said your wife was a trained

2    metallurgist?

3          A     Yes, I did say that.

4          Q     So we've talked a little bit about what I'll

5    refer to as your work papers.  So that could be things

6    like input files.  It could be -- let's see -- billing

7    data s- -- well, the billing dataset, I guess, was

8    produced in discovery.  Well, you have reporting

9    results, all of that code.  That's what I mean by work

10   papers, basically how you got from the inputs that

11   Mr. Macan suggested, and then how you get to those

12   tables all the way at the end.  So we've got input

13   files.  We've got reporting results.  We've got code and

14   then subcode, and that's spread across different

15   platforms.

16              Is there anything else in your work papers

17   that either you or Matt or Mrs. Felder used to arrive at

18   the -- at the damaged models or the damaged estimates

19   that you do?

20         A     Yes.

21         Q     And what was that?

22         A     So there would be documents related to

Page 193

1    particular aspects of the utility's price to compare

2    different components.  And there would be documents --

3    in some cases, not all -- one per month so you could

4    have whatever the number is, over a five or seven --

5    whatever the period is.

6              There would be tariffs, utility tariffs, where

7    we would double-check stuff or, in some cases, extract

8    information.  There were -- are maps of these various

9    load zoning utility service territories we discussed.

10   There is some file from the U.S. Energy Information

11   Administration or Agency, regarding transmission losses.

12   There can be other -- I wouldn't call them work papers,

13   they were -- so I would distinguish work papers from

14   documents I considered.  But there's work papers -- the

15   files I just described where there is a utility input,

16   was then translated into a file that, you know, put them

17   all together in one place that then could be used for

18   computation.

19         Q    Okay.

20         A    So those would be the examples.

21         Q    Yeah.

22              To be clear, when I'm talking about work

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 194

1    papers, I think you and I are of the same mind here, but

2    I just want to clarify.

3          I'm not necessarily -- or I'm not talking

4    about the materials that you disclosed in your materials

5    considered.  If you're looking at -- I don't know what

6    the merchant function charge in Orange and Rockland was

7    in 20- -- March 2019.  What I more mean is you disclosed

8    a whole bunch of things in your materials considered,

9    and then you've come up with the damage estimates.  And

10   so I guess what I mean -- when I say "work papers," I

11   mean all of the intermediate process, how you basically

12   synthesize and process all of that raw data, and then

13   how you arrive at those -- those values.

14         So understanding that you looked at things

15   like utility price to compare, merchant function charge,

16   tariffs, EIA data, and things like that, is there

17   anything else specifically in your work papers?

18         MR. BLANKINSHIP:  Objection.  Asked and

19   answered.

20         THE WITNESS:  Well, there's data on service

21   and added service costs from the NYISO.  I took their

22   input files and then synthesized them -- well, extracted

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 195

1    what I needed.  An Excel file, that would be a work

2    paper product.

3             There are calculations of the test cases when

4    we were doing different calculations or varying

5    assumptions for whatever reason or updating data.  So

6    there would be those partial results or draft results.

7    Those would be, I'm thinking, what you described.  If

8    you just give me a minute -- if you -- just to ensure --

9    or I'm trying to ensure I'm being complete.  You know,

10   we've modified the consumer data -- the consumer dataset

11   we were given.  And so that those modifications or work

12   papers -- you know, that's what we've already mentioned.

13        Q    Can you explain what modifications you made to

14   that data you were given?

15        A    Yes, I can.

16        Q    Please explain.

17        A    So if you go to my direct report, page 12,

18   that would -- Depo Exhibit 5.

19        Q    Okay.

20        A    So footnote 18.  So I briefly described this,

21   I think, before, but in the 800,000-plus of invoices,

22   there were these adjustments, 28,540, that did not look

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 196

1    like a standard invoice.  You know, some positive amount

2    of kilowatt hour usage times a positive rate, and then

3    multiplied to get a positive number.

4             So either there was just a negative number in

5    the invoice amount, negative $200, or there was a

6    negative one unit times a -- a hundred dollars as the

7    rate to get a negative $100 total invoice.  Those may

8    not literally be examples, but examples of that effect.

9    When -- when looking at those, those were not invoices,

10   they weren't monthly invoices.  They -- although they

11   had no notation or comment about what they were, they

12   look like they were ready to refund money for whatever

13   reason not provided to the customer.

14            A lot of those entries, it turned out over

15   10,000 just had zero in -- in the total supply charge.

16   And I'm not sure what was going on with those, but those

17   were removed.  What I mean removed, they stayed in the

18   dataset with a flag or not be considered in the

19   calculations.  We -- you don't want to delete it, and

20   you just put a flag, a notation that -- not to use it in

21   certain calculations.

22            Q    And that flag would exclude those rules from

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 197

1     your end product; right?

2          A     That's right.

3          Q     Okay.

4          A     Now, in the case of a near -- a zero invoice,

5     it would have done it almost au- -- automatically

6     just --

7          Q     Okay.

8          A     But whatever, they were flagged and identified

9     and then processed as part of the damages.  Um, and then

10    there was the 17,000 remaining where they were negative,

11    and I could find -- well, Matt wrote the code, I could

12    the mi- -- exact mirror image.  So there was no, "Frank

13    Felder used 10 kilowatt hours at one cent a kilowatt

14    hour, total bill of ten cents."  And then some time

15    later, there was the negative one -- the 10 kilowatt

16    hours and -- you know.  And so they just canceled out

17    exactly in terms of the -- the total amount, the bill,

18    the invoice amount.

19               So, clearly, those looks like they were

20    refunding a particular bill for whatever reason.  So we

21    found all those mirror matches and flagged those.

22         Q     Hold on a minute.

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 198

1              I guess my question is, if they're mirror
2        matches, why couldn't you just have left both in and
3        just essentially the customer -- let's just say,
4        theoretically, customer gets billed 200 bucks by Eligo,
5        and then they have a refund the next month of -- of,
6        let's just say, negative 200.  Let's just say it's
7        negative 200.  And so easier; right?
8              A    Yes.
9              Q    When you're performing your calculations,
10       wouldn't it just have been the way that those numbers
11       kind of came out of the wash?
12             A    So if you go to my direct report, Exhibit 5,
13       footnote 22 at the bottom of page 15.  So months in
14       which the customer's contract rate was higher than the
15       defendant's rate, they're treated as having zero
16       damages.  So if you implement that, then you would
17       get -- it would just screw up the calculation.  So it
18       was better to identify these mirror images, flag them,
19       and then not consider them in the damage calculation.
20             Q    Okay.  And what -- I guess what are you
21       relying on in making this leap here, where you say the
22       months in which a customer's contract rate was higher

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 199

1      than Eligo's rate are treated as having zero damages?

2                MR. BLANKINSHIP:  Objection.  Vague.

3                THE WITNESS:  I'm not sure what "leap" means,

4      but I was instructed by counsel to do that.

5                BY MR. O'TOOLE:

6          Q    Okay.  Instructed by counsel.

7                And so I understand what this means really

8      practically.  Just trying to distill it down as simple

9      as possible.  So this would be for, let's say, Method 4.

10     Method 4 is just a price compare.  Eligo charges me a

11     hundred bucks.  And, let's say, they're two months we're

12     looking at.  Eligo charged me a hundred bucks in

13     one month, and they charged said me a hundred bucks the

14     next month.  Utility in the first month, let's say, they

15     charged me -- they would have charged me $96.  The next

16     month, utility would have charged me $105.  Okay?

17               And let me actually just make sure I'm writing

18     this out.  So you've got Eligo that's charging a hundred

19     in both months.  In the first month, you're -- you're

20     paying more with Eligo than you are with utility.  So

21     hundred minus 96, so basically four cents of kilowatt

22     hour more.  In the second month, utility is going to be

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 200

1    charging you 105, and so you're saving five bucks with

2    Eligo.

3                Do you understand the -- the scenario that I'm

4    putting out there?

5                MR. BLANKINSHIP:  Objection.  Incomplete and

6    inconsistent hypothetical.

7                THE WITNESS:  Yes, I do.

8                BY MR. O'TOOLE:

9        Q    Okay.  So Eligo is charging 100 bucks in both

10   one.  In one month, you're paying with Eligo $4 more

11   than the utility.  In the following month, you are

12   essentially saving $5, you're paying $5 less than the

13   utility.

14               Do you understand that?

15       A    Yes.

16       Q    Okay.  And so according to your calculations,

17   what would the damages be if -- for this customer for

18   these two months?

19       A    It would be for $4, and then that would be

20   before applying the 349 stuff.  I didn't --

21       Q    Okay.

22       A    -- I didn't -- I'm not trying to be cute, I'm

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 201

1      just trying to --

2          Q     Yeah.

3          A     It would be $4.

4          Q     Okay.  Notwithstanding the fact that there's a

5      net saving fee of $1?

6                MR. BLANKINSHIP:  Objection.  Incomplete

7      hypothetical.  Mischaracterizes the testimony.

8                THE WITNESS:  The -- I -- the arithmetic is

9      the arithmetic.  I would have calculated the damages of

10     the positive $4 of damages.  The net savings or that

11     type of framing, I did not form a legal -- or I could

12     not form a legal opinion.  I didn't form any opinion on

13     because it involves interpreting the contracts, which I

14     did not do in this matter.

15               BY MR. O'TOOLE:

16         Q     Okay.  And in this -- on this question, you

17     deferred to the instructions of the plaintiffs' counsel;

18     correct?

19         A     That's correct.

20         Q     Okay.  Are you aware if you've -- I guess, you

21     have provided any of your work papers to -- to -- to

22     Defense counsel in this litigation?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 202

```
 1        A    I'm not aware of one way or the other.  It

 2    doesn't sound like I have.

 3        Q    Okay.

 4        A    I -- well, I -- first of all, I've had no

 5    communication with Defense counsel, so I would not have

 6    provided anything --

 7        Q    Sure.

 8        A    -- to Defense counsel directly.

 9        Q    But no one's on my -- on your behalf as --

10             MR. BLANKINSHIP:  Objection.

11             BY MR. O'TOOLE:

12        Q    -- far as you're aware of it?

13             MR. BLANKINSHIP:  I'm just going to object.

14    Outside of the scope.

15             THE WITNESS:  I -- I don't know -- I -- I

16    don't know what Burkett and Greg do on a daily basis.

17             BY MR. O'TOOLE:

18        Q    Okay.  All right.  So I -- I just want to ask

19    a -- a kind of higher level question.

20             Why is it you, and why is it not Dr. -- or

21    Mr. Macan who's conducting or who's performing these

22    calculations?
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 203

 1              MR. BLANKINSHIP:  Objection.  Outside the

 2      scope.

 3              BY MR. O'TOOLE:

 4         Q    All right.  Let -- let me rephrase that.

 5              Dr. -- Mr. Macan is not performing these

 6      calculations.

 7              Do you have any understanding why it was that

 8      Plaintiffs' counsel instructed you and not Dr. Macan to

 9      perform these calculations?

10              MR. BLANKINSHIP:  So first, I'm going to

11      object to you mischaracterizing Mr. Macan's work.  And

12      second, I'm going to instruct you not to -- I'm going to

13      instruct Dr. Felder not to disclose any of the substance

14      of communications you've had with Plaintiffs' attorneys.

15              You can answer that question without doing so.

16      Please go ahead.

17              THE WITNESS:  I do not know why that decision

18      was made or occurred.

19              BY MR. O'TOOLE:

20         Q    Okay.  So let's take a look at your report --

21      let me make sure I've got the right question here.  So

22      if you can turn with me to paragraph 29.

Page 204

1              MR. BLANKINSHIP:  Is that the first expert

2      report?

3              MR. O'TOOLE:  Yes, that's right.

4              THE WITNESS:  Yes, I'm there.

5              BY MR. O'TOOLE:

6         Q    Okay.  And so you see it here that you limited

7      the analysis to customers who enrolled with Eligo on or

8      before June 20th, 2019; correct?

9         A    The third line or the second line from the

10     bottom?  Yes, I see that.

11        Q    Okay.  And do you have -- you testified

12     earlier that you considered the contracts, at least some

13     of the contracts that have been produced in this

14     litigation in -- in forming your expert opinion; is that

15     correct?

16        A    That's right.  With respect to the renewable

17     rules or --

18        Q    Okay.

19        A    -- renewable issues.

20             (Felder Deposition Exhibit 9 marked for

21     identification.)

22             BY MR. O'TOOLE:

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 205

1        Q    So I'm going to hand you now --

2             MR. O'TOOLE:  Are we up to Exhibit 9?

3             THE REPORTER:  Yes.

4             THE WITNESS:  Yes, we are.  We're backwards,

5       yeah.

6             MR. O'TOOLE:  You're right.  Okay.  All right.

7             THE REPORTER:  Thank you.

8             BY MR. O'TOOLE:

9        Q    And in case the pagination is a little bit

10      complicated here, Dr. Felder, this was taken from

11      another file in this case.  So if you see Exhibit 51,

12      Exhibit 52, this is from a separate document.

13            But I'll represent to you these are the six

14      contracts -- six residential variable rate electricity

15      contacts -- contracts that have been produced in this

16      litigation.  Your date here that you've used on or

17      before June 20th, 2019, that corresponds to the first

18      three contracts.

19            Does that sound right?

20            MR. BLANKINSHIP:  Objection.  Outside the

21      scope of this witness's testimony.

22            THE WITNESS:  Well, I just got these

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 206

```
 1      documents, so I --

 2              BY MR. O'TOOLE:

 3          Q    Okay.

 4          A    -- I don't know.  But I'm -- it -- it's -- I'm

 5      going to stick to --

 6          Q    Feel free -- feel free to take a look.

 7          A    When you mean -- again, I'm not trying to ask

 8      you a question.  When you mean corresponds before during

 9      that, what -- like there's this date June 20th, 2019,

10      and then this first one is -- says February 14th, 2014.

11          Q    Sure.  So --

12          A    So those two dates are different.

13          Q    If you're limiting the enrollment date in this

14      litigation to customers who enrolled on or before --

15          A    Okay.

16          Q    -- June 20th, 2019, they would have enrolled

17      and then bound to one of these three contracts.

18          A    Let's see.  Let me check.  I'm just going to

19      check if we have in --

20          Q    Sure.

21          A    -- the upper -- and not the billing date, but

22      the --
```

Frank A. Felder , Ph.D.                                January 8, 2026
Brous v. Eligo Energy, LLC

Page 207

```
 1              MR. BLANKINSHIP:  I -- I'm just going to renew
 2      my objection.  Outside the scope of witness's testimony.
 3              THE WITNESS:  Exhibit 55, is it what -- can I
 4      see it?  I'm sure I'm missing it, the date for
 5      Exhibit 55 and 56.
 6              BY MR. O'TOOLE:
 7         Q    I can represent to you that 55 and fift- -- 56
 8      refer to contracts that would have been entered into
 9      after your penalty.
10         A    Okay.  So this is from -- so 55 is before, 52,
11      I don't see a date, 53, I don't see a date, 54, I don't
12      see a date, 55.
13              So which ones of these are before, and which
14      ones are after?
15         Q    So one -- 51, 52, and 53 are before, and those
16      correspond to New York Transit Service 1 --
17         A    Okay.
18         Q    -- New York Transit Service 2, and New York
19      Transit Service 3.
20         A    Okay.  Okay.  I think I got it.
21         Q    And if you want, Dr. Felder, these should
22      correspond to footnote 25, 26, and 27.  Okay.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 208

```
 1        A     And let me voice my next question.  Okay.

 2   So -- so those would be the -- these don't have

 3   defendant numbers, Bates numbers, or whatever they're

 4   called.  Okay.  I think I got the -- the -- the

 5   matching.

 6        Q    Okay.  Um, so it's your understanding in

 7   reviewing these here -- let's see.

 8             On the first page, if you turn to the first

 9   full page, and it -- and that's previously marked as

10   Exhibit 51, you'll see it says "variable prices

11   determined."

12             Do you see that box?

13             MR. BLANKINSHIP:  I'm going to object.  It is

14   outside the scope of his report.

15             THE WITNESS:  Yes, I do.

16             BY MR. O'TOOLE:

17        Q    Okay.  And you see it says, "Other than fixed

18   rates, all rates shall be calculated on a monthly basis

19   in response to market pricing, transportation costs, and

20   other market price factors."

21             Do you see that?

22             MR. BLANKINSHIP:  Same objections.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 209

```
 1                    THE WITNESS:  Yes, I do.

 2                    BY MR. O'TOOLE:

 3           Q    Okay.  And if you move on to the next exhibit,

 4      this is what's previously marked as Exhibit 52, again,

 5      there's a box that's listed, "Variable price is

 6      determined."

 7                    Do you see that?

 8                    MR. BLANKINSHIP:  Same objections.

 9                    THE WITNESS:  Yes, I do.

10                    BY MR. O'TOOLE:

11           Q    And it says, "Other than fixed rates, all

12      rates shall be calculated on a monthly basis in response

13      to market pricing, transportation costs, and other

14      market price factors."

15                    Do you see that?

16                    MR. BLANKINSHIP:  Same objections.

17                    THE WITNESS:  Yes, I do.

18                    BY MR. O'TOOLE:

19           Q    Okay.  And those market pricing,

20      transportation costs, and other market price factors are

21      the same market pricing, transportation costs, and other

22      market price factors that we saw in the contract that
```

Page 210

1     was previously marked as Exhibit 51?

2              MR. BLANKINSHIP:  Is that a question?

3              BY MR. O'TOOLE:

4        Q    Is that correct?

5              MR. BLANKINSHIP:  Same objection.

6              THE WITNESS:  The wording is identical.

7              BY MR. O'TOOLE:

8        Q    Okay.  And then looking --

9        A    If that's what you're asking me.

10       Q    -- looking at what's previously marked as

11    Exhibit 53.

12       A    Okay.

13       Q    Um, do you see, again, there's a box that

14    says, "Variable price is determined?"

15       A    Yes.

16             MR. BLANKINSHIP:  Same objections.

17             BY MR. O'TOOLE:

18       Q    And -- and you see that it goes on to use,

19    "All" -- "other than fixed rates, all rates should be

20    ca-" -- "calculated based on 100 percent renewable

21    energy to the use of renewable energy credits and

22    calculated on a monthly basis in response to market

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 211

1    pricing, transportation costs, and other market price

2    factors."

3              You see that, don't you?

4              MR. BLANKINSHIP:  I'm just going to object.

5    It -- part of it is outside the scope of his report.

6              THE WITNESS:  Yes, I do.

7              BY MR. O'TOOLE:

8         Q    Okay.  And so you see the same terms "market

9    rising, transportation costs, and other market price

10   factors"?

11             MR. BLANKINSHIP:  Same objections.

12             BY MR. O'TOOLE:

13        Q    In all three contexts; correct?

14             MR. BLANKINSHIP:  Same objections.

15             THE WITNESS:  Yes.

16             BY MR. O'TOOLE:

17        Q    Okay.  And that makes a certain amount of

18   sense.  You calculated damages for customers who

19   enrolled in Contract 1, customers who enrolled in

20   Contract 2, customers who enrolled in Contact 3, and

21   for -- for the purposes of this report; correct?

22        A    That's right.

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 212

1          Q    Okay.  And so if you theoretically had

2     Contract 1, which said Frank Felder gets price to

3     compare minus two cents; Contract 2 said Frank Felder

4     gets price to compare plus two cents a kilowatt hour;

5     and then you have Contract 3, which said Frank Felder

6     gets three times what utility is charging, you would

7     have to perform different calculations because you have

8     different benchmarks here.

9               MR. BLANKINSHIP:  Objection.  Incomplete

10    hypothetical.  Outside the scope of his testimony.

11              THE WITNESS:  Is this a hypothetical question,

12    or is it --

13              BY MR. O'TOOLE:

14         Q    Sure.

15              MR. BLANKINSHIP:  Same objections.

16              THE WITNESS:  My methods compare a -- the

17    actual rate with a -- but for -- we -- we call the

18    contract rate.  And to the extent that the contract rate

19    changes, um, because its underlying terms and conditions

20    change, which is my understanding in your hypothetical,

21    then, um, that would be reflected in the calculations.

22    Now, whether I have to do a separate set of calculations

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 213

1    or I can code that in the same process, that's a -- a

2    separate issue.

3         Q    Okay.  And I think we're on the same page

4    here.

5              Basically, what I'm asking is those -- let's

6    say, the customer -- Eligo represented that you'll be

7    charged two times the utility rate.  And if Eligo

8    represented you'd be charged the utility rate minus

9    two cents, you're going to have to be looking at

10   different contract rates because Eligo essentially

11   promised different rates.

12             Is that fair?

13             MR. BLANKINSHIP:  Objection.  Asked and

14   answered.  Calls for a legal conclusion.  And it's

15   outside the scope of his report.

16             THE WITNESS:  In the hypothetical, if I was

17   asked to do damage calculations, yes, I would -- not

18   making a certain amount of legal conclusion, not

19   interpreting the contract, but I would adjust my

20   calculations accordingly.

21             BY MR. O'TOOLE:

22        Q    Okay.  If we can go back to paragraph 29.  So

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 214

```
 1      you say here that the customer dataset lists the

 2      invoices Eligo issued from February 2018 to

 3      February 2024.

 4              Do you see that?

 5      A    Yes.  At the bottom of page 11, yes.

 6      Q    Okay.  And when you say February 2018, is that

 7      the beginning of February 2018?

 8      A    Yes.  That's what I was trying to say by

 9      inclusive.

10      Q    Okay.  And then conversely, when you list

11      February 2024, by inclusive, do you mean the end of

12      2024?

13      A    Yes.  I apologize for not being clear.  As I

14      was trying to say, the -- those months aren't clear.

15      Q    Okay.  And so that will be, just to be clear,

16      February 1st, 2018 to February -- yes, I'm talking

17      about, you know, 2024 is probably a leap year.

18      A    A leap year, yeah.

19      Q    Yeah.  So it's February 29.

20      A    Yeah.

21      Q    Okay.  So in essence, you're -- you're

22      calculating six months of -- six -- six full years with
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 215

1      12 months.  And then you're calculating February 2024 on

2      the end?

3              A    Is it seven years now?  '18, '19, '20, '21,

4      '22, '23, '24 -- ending in February '24.  So '18 to '19,

5      '20, yes, six years and a month.  Yes.  So --

6              Q    Okay.

7              A    -- I did the math here.

8              Q    And did you take that, or did you use that

9      time range -- was that another instance where you're

10     following the advice of -- following --

11             A    Correct.

12             Q    -- the direction of Plaintiffs' counsel?

13             A    Yes, that is correct.

14             Q    Okay.  And sitting here today, do you know if

15     the customer data, the invoice data, if it includes

16     any -- any invoices that predate February 1st, 2018?

17             A    I do not know that sitting here today.

18             Q    Okay.  And then I have the opposite question.

19                  Sitting here today, do you know if there are

20     any invoices in the customer data that -- that postdate

21     February 29th, 2024?

22             A    I don't know that sitting here today.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 216

1          Q    All right.  We're going to move on to

2     paragraph 30.  Um, you say, in Methods 1 through 3

3     developed by Plaintiffs' additional expert, Edo Macan,

4     the damages are the difference between variable rate

5     charging to customer and contract variable rate.

6               Is it fa- -- is it safe to say that Mr. Macan

7     interpreted the contract and came up with a means of

8     calculating the variable rate?

9               MR. BLANKINSHIP:  Objection.  Outside the

10    scope of his report.  And calls for a legal conclusion.

11              THE WITNESS:  I -- I don't-- all I know is I

12    was provided for Methods 1, 2, 3 these formulas from

13    Mr. Macan.

14              BY MR. O'TOOLE:

15         Q    Okay.  And --

16         A    Again, it was from -- from Mr. Macan.

17         Q    Is it your understanding that Mr. Macan

18    provided a practical way of interpreting the contract

19    terms we just read:  Market price and transportation

20    costs and other market price factors?

21              MR. BLANKINSHIP:  Objection.  Outside the

22    scope of Dr. Felder's report.  And calls for a legal

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 217

1    conclusion.

2              THE WITNESS:  I guess I took the formulas that

3    I was provided and then implemented them to -- just

4    not -- I don't know what Mr. Macan's opinions, if any,

5    were on the issues between those formulas and any

6    contracts, if any.

7              BY MR. O'TOOLE:

8         Q    Okay.  And you never read his report?

9              MR. BLANKINSHIP:  Objection.  Outside the

10   scope.

11             You can answer.

12             THE WITNESS:  The -- no, there were a few

13   minor portions of the report re- -- regarding the

14   formulas that I cross-checked, but I have not read his

15   direct report.  And I don't know if he filed a rebuttal

16   report, but I haven't read it.  I didn't know that.

17        Q    When you say that you cross-checked the

18   sections of his report, what do you mean by that?

19        A    I'm sorry.  I just wanted to make sure that

20   where I take the formulas from Mr. Macan that I did -- I

21   did it accurately.

22        Q    Okay.  And what does that look like?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 218

1              MR. BLANKINSHIP:  Objection.  Vague.

2              THE WITNESS:  Is it the formulas or the

3      cross-checking?

4              BY MR. O'TOOLE:

5         Q    Cross-checking.

6         A    I looked at the section of his report that had

7      the formulas, I looked at the section of my report that

8      had the formulas, and I checked to see if they were

9      consistent.

10        Q    Okay.  So, basically, those just be like a

11     copy-paste, and that what is in Dr. Macan's --

12     Mr. Macan's report would be identical to what's in your

13     report as concerns the formulas?

14        A    I did not say I copied and paste, I just -- I

15     made a side-by-side comparison.

16        Q    Right.

17             But it wouldn't really be an issue if you had

18     copy-pasted the formulas.  I mean, you want to be using

19     the same formulas as Mr. Macan; right?

20             MR. BLANKINSHIP:  Objection.  Incomplete

21     hypothetical.

22             THE WITNESS:  Okay.  It may have affected

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 219

```
 1     formatting or something.

 2              BY MR. O'TOOLE:

 3        Q    Okay.

 4        A    I -- I --

 5        Q    I mean -- by that, you mean formatting in

 6     Microsoft Word?

 7        A    Yes, yeah.

 8        Q    So you would have no -- you would have, like,

 9     a formula in Arial instead of in Times New Roman?

10        A    I -- I -- I didn't -- I -- I guess I think we

11     were comparing --

12        Q    So -- sure.  I just -- I just -- I want to

13     understand --

14        A    I just compared the two formulas and measured

15     if they're the same.

16        Q    Okay.

17        A    That's all I'm saying.  I don't know if I'm

18     clear with that.

19        Q    No, no, no.  I -- I -- I appreciate -- I

20     appreciate the accuracy here, Dr. Felder.

21              So paragraph 30 provides on overview of these

22     eight different methods.  It's fair to say that you're
```

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 220

1     basically just reciting the formulas that Plaintiffs'

2     counsel provided based on their representations of

3     Mr. Macan's report; right?

4             MR. BLANKINSHIP:  Objection.  Vague.

5             THE WITNESS:  Um, for three of the methods,

6     Method 4 was just the price to compare.  And then the

7     Methods 5 through 8, although they come -- at least some

8     of them come from Methods 1 through 3, they may or may

9     not be Mr. Macan's report, but they were further

10    modifi- -- calculations based on the damages I've

11    calculated.  The higher of this, the lower of that,

12    blah, blah, blah.  So -- so it does more than that,

13    but -- than just Mr. Macan.

14            Paragraph 30 described more than me just

15    taking Mr. Macan's formulas because there were some

16    additional things in Methods 4 through 8 --

17        Q     Okay.

18        A     -- that may not have come from Mr. Macan, or

19    parts of it may not have come from Mr. Macan.

20        Q     All right.  And when it comes to the three --

21    the methods -- and you say Methods 5 through 8.  So

22    we'll leave Method 7 to the side, so Method -- Method 7

Page 221

1    deals with the calculation of what you characterize as

2    the unauthorized fee; is that right?

3            MR. BLANKINSHIP:  Objection.  Mischaracterizes

4    his report.

5            THE WITNESS:  What I say paragraph 30, just to

6    be clear, Method 7 calculates the contract damages, and

7    a lot of it goes monthly.

8            BY MR. O'TOOLE:

9        Q    Okay.  So you're not offering opinion as to

10   whether it's authorized or not, you're just summing up

11   the monthly fees; is that right?

12       A    Yeah.  I just want to check in Method 5 --

13       Q    Sure.

14       A    -- or Method 7 if I used the word -- I don't

15   think I used the word "unauthorized," but I would have

16   to search the document one more time.

17       Q    That's -- that's fine.  That's fine.  But

18   there, your operation is just a matter of summing up the

19   monthly fees that you saw, and basically you did some

20   su- -- summation, whatever, column K.  I don't know what

21   column it is, but that was basically what you did there;

22   yeah?

Frank A. Felder , Ph.D.                        January 8, 2026
Brous v. Eligo Energy, LLC

Page 222

1        A    That is correct.

2        Q    Okay.  And so you did need to rely on

3    Plaintiffs' counsel or -- or -- or Mr. Macan there to

4    tell you -- tell you that value; correct?

5        A    No.  Plaintiffs' counsel told me to do that

6    calculation, which I did.

7        Q    Okay.  Okay.  And then for Methods 5, 6, and

8    8, those are all calculations under the New York GBL

9    Section 349 or some sub- -- sub- -- some subsection

10   under that statute?

11            MR. BLANKINSHIP:  Objection.  Mischaracterizes

12   the statutes.

13            THE WITNESS:  You have to ask it --

14            BY MR. O'TOOLE:

15       Q    Sure.  Sure.

16            So for those methods, you were essentially

17   applying -- and we'll get through Methods 1 through 4

18   now.  You were essentially applying -- no, we can -- we

19   can get to that a little bit later.

20            Okay.  Let's go back to Table 1.  We're on the

21   same page here.  You said before that the number of rows

22   for this invoice was something like 838,000?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 223

1        A     That's correct.

2        Q     Okay.  And the number of cu- -- the number of

3    customers that are corresponding to this are 27,257; is

4    that right?

5        A     Yes.

6        Q     Okay.  And you're not contending that every

7    single one of those 27,000 customers suffered damages,

8    are you?

9              MR. BLANKINSHIP:  I'm going to object and say

10   that calls for a legal conclusion.

11             But you can answer.

12             THE WITNESS:  I apologize for the pause, but

13   what I was -- first of all, I -- I did the calculations,

14   I wasn't making any expert view that they are legal

15   damages.  Um, I did the calculations.  But in the bottom

16   of footnote 18, to get what I think is the crux of the

17   question perhaps, is there were 69 customers who did not

18   have positive invoices and were thu- -- thus not

19   considered in the damage calculations.  So, yes, some of

20   that 27,000 are those 69 customers.

21       Q     Okay.  And so let's just do that, and let's

22   say 27,257 minus 69.  You're going to end up with

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 224

1    something like 27,197.

2        A    Okay.

3        Q    So even taking out those 69 customers, are you

4    alleging that the remaining 27,197 customers, that all

5    of those customers are included in your damages

6    calculation for, let's say, Method 1?

7        A    No.

8        Q    Okay.  And so it's some -- some -- some subset

9    of that 27,000 customers who are included for the

10   purposes of Method 1; correct?

11           MR. BLANKINSHIP:  Objection.  Vague.  Asked

12   and answered.

13           THE WITNESS:  So if you go to footnote 22, we

14   call that in Method 1, I used.  And 2, I have two

15   overcharge rates, 5 percent, and 6.3 percent.

16           BY MR. O'TOOLE:

17       Q    Mm-hmm.

18       A    So depending on which overcharge rate, that

19   may -- so if you increase the overcharge rate -- I --

20   I'm sorry, I misspoke, not overcharge, markup or the

21   overhead rate, so what I call the -- the markup.  If you

22   increase the markup, that narrows the difference between

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 225

1    what they were charged and what they should have been

2    charged, and that may remove some customers who didn't

3    experience damages from the 5 percent market.

4            Q    Okay.

5            A    And then Method 1 and Method 2 aren't

6    identical, so that's a similar type of concern that

7    could happen to compare Method 1 and 2 based on the same

8    overcharge rate.  So in footnote 22, I then identify the

9    numbers there.

10           Q    On footnote 22?

11           A    Yes.  On page 15.  Let me read it just to make

12   sure I'm being clear about it.  Yes, footnote 22.

13           Q    Okay.  And so what this is saying is the

14   number of eligible customers who are included in your

15   damages model would vary depending on whether -- which

16   margin you applied, that was 5 percent or 6.38; is that

17   correct?

18                MR. BLANKINSHIP:  Objection.  Mischaracterizes

19   his testimony.

20                You can answer.

21                THE WITNESS:  The way I would say it is in the

22   prior footnote, once I removed those -- flagged those 69

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 226

1    and all those variations, all the remaining customers

2    were considered.  They may -- some of those customers

3    and those numbers are given here, depending on the

4    method, may not have had damages, but they were

5    considered.  And I had to run through the calculation to

6    identify which ones didn't have any damages based on the

7    particular type of method I was using.

8              BY MR. O'TOOLE:

9         Q    Okay.  And so regardless of whether or not

10   they are in the Excel or the CSV that you were using,

11   they -- they would not be -- they would not be

12   contributing, but they not -- would not be factored into

13   your estimate damages calculation; is that correct?

14             MR. BLANKINSHIP:  Objection.  Mischaracterizes

15   testimony.

16             Go ahead.

17             THE WITNESS:  Their damages were zero.

18             BY MR. O'TOOLE:

19        Q    Okay.  I think we're -- I think we're on the

20   same page then, Doctor.

21             Of these 27,000, do you have an understanding

22   of how many are fixed rate customers and how many are

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 227

```
 1    variable rate customers?
 2            MR. BLANKINSHIP:  Objection.  Outside the
 3    scope of the witness.
 4            THE WITNESS:  Sorry.  I just want to get back
 5    to the -- yeah, all the customers in the dataset that I
 6    was provided via discovery were variable rate customers,
 7    my understanding, during the time period in question.
 8            BY MR. O'TOOLE:
 9        Q    Okay.  And is it -- is your understanding that
10    this is a mixture of residential and commercial
11    customers, or what -- what is your understanding there?
12            MR. BLANKINSHIP:  Objection.  Outside the
13    scope.
14            THE WITNESS:  My understanding is it's a lot
15    of those customers for those clients.
16            BY MR. O'TOOLE:
17        Q    Okay.  Do you have an understanding whether
18    this is commercial and residential customers or between
19    the two, one or the other?
20            MR. BLANKINSHIP:  Objection.
21            THE WITNESS:  No, I don't --
22            MR. BLANKINSHIP:  Mischaracterizes testimony.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 228

```
 1                THE WITNESS:  -- I do not, but they didn't

 2      provide that.

 3                MR. O'TOOLE:  Okay.  How long have we been

 4      going on the record?

 5                THE VIDEOGRAPHER:  About 50 minutes.

 6                MR. BLANKINSHIP:  We've been going for about

 7      an hour actually since we started --

 8                THE VIDEOGRAPHER:  Around -- about an hour.

 9                MR. O'TOOLE:  Okay.  I think we can maybe take

10      a break at this point.  If that works for you, we have a

11      bit longer -- a longer module coming up, unless you --

12      unless you're ready to keep going.

13                THE WITNESS:  You want me to keep going?

14                MR. BLANKINSHIP:  Everybody want to take a

15      break?

16                THE WITNESS:  I -- what do you --

17                MR. BLANKINSHIP:  Sorry.  You're the one

18      that's -- you're the ones working out there.

19                Do you want a break?

20                THE REPORTER:  Five minutes just to --

21                MR. O'TOOLE:  Okay.

22                MR. BLANKINSHIP:  Let's take five.  Let's take
```

Page 229

1    a five-minute break.

2             THE VIDEOGRAPHER:  This marks the end of Media

3    Unit Number 4.  Going off the record.  The time is

4    14:15 -- sorry, 14:16 p.m.

5             (Short recess taken.)

6             THE VIDEOGRAPHER:  This marks the beginning of

7    Media Unit Number 5.  Going back on the record.  The

8    time is 14:27 p.m.

9             MR. O'TOOLE:  Thank you.

10            BY MR. O'TOOLE:

11       Q    Dr. Felder, you've referenced POWWR several

12   times in this deposition.

13            When you say "POWWR," when you're referring to

14   an entity, are you referring to an organization that is

15   P-O-W-W-R?

16       A    I'm referring to the spreadsheet that I

17   believe that organization produces, so --

18       Q    Okay.

19       A    -- yes.  But the spelling is correct in it.

20       Q    Okay.  What do you know about POWWR?  And to

21   be clear, I mean P-O-W-W-R?

22       A    Not enough about the other POWWR, to be

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 230

1    honest.  I -- my familiarity is -- is primarily with the

2    spreadsheet tool that was used by the defendant or is

3    being used by the defendant in the context of my damage

4    calculation.

5         Q    You never worked for POWWR, have you?

6         A    No.  I've not worked for that company or

7    organization.

8         Q    Okay.  And Matt Livingston has never worked

9    for POWWR, has he?

10        A    No, I do not -- I'm pretty sure he has not,

11   no.

12        Q    Okay.  Before being retained for this

13   litigation, have you heard of POWWR?

14        A    No, I have -- did not.

15        Q    Okay.  So aside from the fact that these POWWR

16   spreadsheets were produced during this litigation, what

17   do you know about POWWR?

18        A    So putting aside the knowledge that I've

19   learned from this litigation, I would say I did not know

20   anything about that company or its products or what it

21   was up to.

22        Q    Okay.  And so from looking at these

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 231

1    spreadsheets, what have you learned during the course of

2    this litigation?

3                MR. BLANKINSHIP:  Objection.  Vague.  Outside

4    the scope of his report.

5                THE WITNESS:  I learned the -- and used the

6    various -- many of the calculation outputs of that

7    spreadsheet.  In some cases, they were inputs in some of

8    my methods and my damage calculations.

9                BY MR. O'TOOLE:

10       Q    Okay.  So you used -- and just to be clear,

11    you used these POWWR spreadsheets for that work;

12    correct?

13       A    Yes.  And then in -- also for a small part of

14    Method 2.

15       Q    All right.

16       A    What -- and one other method I used for this

17    is the living costs, so yeah.  But primarily for

18    Method 1.

19       Q    Okay.  And you agree these -- these

20    spreadsheets are large.

21                Is that a fair characterization?

22                MR. BLANKINSHIP:  Objection.  Vague.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 232

```
1              THE WITNESS:  Yeah, I don't -- um, I don't
2    know their -- the megabytes.  Probably in today's term,
3    not that large given the files running around.  But
4    they're not just your one of the middle spreadsheets --
5              BY MR. O'TOOLE:
6         Q    Okay.
7         A    -- if that's what you're trying to get at.
8         Q    They usually got more than ten tabs.
9              Is that fair?
10        A    I'm trying to remember.  Yes, I've -- I've
11   seen something --
12        Q    Okay.
13        A    -- something like that.
14        Q    And are you -- do you agree that some of those
15   tabs, some of those sheets are encrypted?
16        A    Yes.
17        Q    Okay.  And that encryption prevented you and
18   your team from accessing some of the data in these -- in
19   these spreadsheets; correct?
20        A    Initially, it did.
21        Q    And then?
22        A    So the -- Matt figured out a way to extract
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 233

1    the data without having to, for each spreadsheet, open

2    it up and remove any restrictions on getting access to

3    certain data.

4        Q    Okay.  And so are you saying that he figured

5    out a way to unencrypt the file?

6             MR. BLANKINSHIP:  Objection.  Mischaracterizes

7    testimony.

8             THE WITNESS:  My understanding, it's not so

9    much unencrypt it, but to gain access through the --

10   writing the Python code that could read the file that

11   maybe one could not have access if you just opened up

12   the file.

13            BY MR. O'TOOLE:

14       Q    So your suggestion is there was some kind of

15   Python code that was written that could access

16   information that was hidden in encrypt- -- encrypted

17   sheets?

18            MR. BLANKINSHIP:  Objection.  Mischaracterizes

19   testimony.

20            THE WITNESS:  I don't know if it was -- the

21   data was really encrypted or there was just a setting

22   that hit a tab or had a conditional that hid the data,

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 234

1      but maybe not encrypted.  That distinction, I don't

2      know.

3                  BY MR. O'TOOLE:

4           Q    Okay.  Okay.  Great.

5                  (Felder Deposition Exhibit 10 marked for

6      identification.)

7

8                  BY MR. O'TOOLE:

9           Q    I'm going to hand you what's been marked --

10     well, I will mark as Exhibit 10.

11                 THE REPORTER:  Thank you.

12                 THE WITNESS:  Okay.

13                 BY MR. O'TOOLE:

14          Q    And there's a distinction here, Dr. Felder,

15     between encrypted data and data that might be hidden as

16     a tab.

17                 Do you understand that distinction?

18          A    Yes, I think I referred to it, but I may not

19     be perfectly using it consistently.

20          Q    Okay.  And, let's say, you open up the POWWR

21     spreadsheet by default, and it has three tabs that I'm

22     showing you right now.  You right-click on the bottom of

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 235

1    that and click that "unhide some tabs."

2            And is that what you mean by hiding and

3    unhiding tabs?

4        A    Yes.

5        Q    Okay.  In addition to that, you may see a

6    padlock that is next to some of those tabs.

7            Is that what you understand by encryption or

8    unencryption?

9        A    Yeah, I don't know if that padlock means

10   encrypted, unencrypted, or you need a password to gain

11   access.  So I just don't know how -- what that exactly

12   means in Excel.

13       Q    Okay.  And your understanding of Python code

14   that Matt Livingston wrote, that would've been a code to

15   unhide tabs and access unlocked information?  Or do

16   you -- is it your understanding that that was a code to

17   essentially unencrypt and enter some kind of password

18   into those tabs?

19           MR. BLANKINSHIP:  Objection.  Asked and

20   answered.  And compound.

21           THE WITNESS:  Um, yeah, I can- -- cannot say,

22   for sure.  I don't think we were unlocking -- Matt is

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 236

1    unlocking passwords.

2            BY MR. O'TOOLE:

3        Q    Okay.

4        A    He just had a way to get to data that was, I

5    think, hidden.  But, again, I'm using it in the broad

6    way, not the more narrow way --

7        Q    Okay.

8        A    -- that we needed to get at.

9        Q    Okay.  That's fair.  That's fair, Dr. Felder.

10           I want to draw your attention to this exhibit,

11   which is marked -- so this is Exhibit 10.  If you look

12   at the bottom of the second email, you'll see there's --

13   the second page, there's an email from Mr. Blankinship.

14   And that's, I'll represent to you, the first email in

15   this thread.

16           Do you see that?

17       A    Yes, I do.

18       Q    And -- and so he says, "I hope this finds you

19   well.  We just learned that some of the data in the

20   POWWR reports for December 2020 and later is encrypted,

21   which prevents our expert from being able to access all

22   the data and additionally extract it.  Please provide us

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 237

1    with that password today."

2              Do you see that?

3         A    Yes.

4         Q    Okay.  And did you instruct Mr. Blankinship to

5    make this request?

6              MR. BLANKINSHIP:  Um, I am going to -- I'm

7    going to instruct him not to answer that question

8    because any conversations we have would be product --

9    work product.  I'm also going to object that this is

10   outside the scope of his report.

11             BY MR. O'TOOLE:

12        Q    And are you going to follow Plaintiffs'

13   counsel's instruction here and not answer the question?

14        A    Yes.

15        Q    Okay.

16        A    Yes.

17        Q    You understand you have the choice to follow

18   counsel's instruction or not?

19        A    Well, I understand the existential nature of

20   yes or no, but I don't think you meant that.  I am -- I

21   don't understand any legal implications one way or the

22   other.  I assume I'll follow Greg's instruction, and I

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 238

1    assume you guys can work out, and then I would provide

2    any additional information as appropriate.

3                    BY MR. O'TOOLE:

4         Q    Okay.  Was it consistent with you and Matt's

5    work that you were unable to hide data in the zonal

6    prices tab?

7                    Do you know that sitting here today?

8                    MR. BLANKINSHIP:  Objection.  Mischaracterizes

9    his testimony.  Vague.

10                   THE WITNESS:  I honestly don't understand your

11   question.

12                   BY MR. O'TOOLE:

13        Q    Okay.  So if you move above to the next email,

14   Mr. Blankinship says, "As an example of this problem,

15   prior to December 2020, we were able to unhide the data

16   in zonal prices tab.  But after that time, including

17   this example, when we select the 'unprotect sheet'

18   option in the drop-down menu, a win-" -- "a window pops

19   up asking us for a password.  We are looking for that

20   password."

21                   Did you ever get a password?

22        A    No, we did not.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 239

1          Q     Okay.  Did you ever ask POWWR for a password?

2          A     I had no con- --

3                MR. BLANKINSHIP:  Objection.  Vague.

4                THE WITNESS:  -- no contact with POWWR.

5                BY MR. O'TOOLE:

6          Q     Okay.  Why didn't you ask POWWR for the

7    password?

8          A     Because Matt figured out a way to get access

9    to the data that we needed via the Python code.

10         Q     Okay.  And how did you know that the data that

11   you needed wasn't behind an unprotected sheet?

12         A     I don't know one way or the other.  I just

13   know that we were able to get access to the data inputs

14   or outputs of the POWWR spreadsheet that we needed

15   shortly after this time period.

16         Q     Okay.  But you never got access to the

17   information that is -- that is hidden by the password.

18               Is that fair?

19               MR. BLANKINSHIP:  Objection.  Incomplete

20   hypothetical.  And vague.

21               THE WITNESS:  I was never provided a password,

22   so I don't know how I would have gotten that

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 240

```
 1      information.
 2              BY MR. O'TOOLE:
 3         Q    Okay.  So before we dive too much into the
 4      POWWR spreadsheets, I want to understand some basics.
 5              So you used these POWWR spreadsheets to
 6      contract -- well, entered -- to calculate what you call
 7      a contract rate; is that correct?
 8         A    In Method 1, yes.
 9         Q    Okay.  And so you use the POWWR spreadsheet,
10      just as an example, to determine the contract rate for
11      March 2018, just to pick a month among many others; is
12      that right?
13         A    Yes.
14         Q    Okay.  And sitting here today, can you
15      identify by Bates number which POWWR spreadsheet you've
16      used for March 2018?
17         A    No.  But I can describe the file that would
18      identify it.
19         Q    Okay.
20         A    Not by Bates number.
21         Q    Not by Bates number.  Okay.
22              All right.  So I'm going to mark here -- I'm
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 241

1    going to mark what we will call Exhibit 11.

2              (Felder Deposition Exhibit 11 marked for

3    identification.)

4              THE WITNESS:  Yeah.

5              MR. O'TOOLE:  Yeah.

6              I only have three copies --

7              THE REPORTER:  Okay.

8              MR. O'TOOLE:  -- of this document.  Yes.

9              THE REPORTER:  Should I put a sticker on that

10    one?

11             MR. BLANKINSHIP:  Please.  And then I'll hand

12    it to you right here.

13             THE REPORTER:  Mm-hmm.  Thanks.

14             BY MR. O'TOOLE:

15        Q    Um, do you recognize this document as the

16    expert report that you submitted in the Agway

17    litigation?

18        A    Yes, I do.

19        Q    And if you can turn to page 10.

20        A    Okay.

21        Q    You see there's a Table 2 here.

22        A    Yeah.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 242

1           MR. BLANKINSHIP:  I'm just going to object.

2     This is outside the scope of his expert opinions.

3           THE WITNESS:  Okay.

4           BY MR. O'TOOLE:

5      Q    Okay.  And so this identifies the Bates number

6     of every produced document that we're using by year and

7     months; correct?

8           MR. BLANKINSHIP:  Objection.  Outside the

9     scope.  If you want to -- if you need to read the whole

10    report to figure out --

11          THE WITNESS:  Yeah.  Please repeat the

12    question.

13          BY MR. O'TOOLE:

14     Q    Sure.

15          So this table identifies the Bates number of

16    Agway discovery files containing electric- --

17    electricity sales revenues, units sold, and cost of

18    goods sold; correct?

19     A    Yes.

20          MR. BLANKINSHIP:  Objection.  Outside the

21    scope.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 243

1              BY MR. O'TOOLE:

2         Q    And what you're looking at here is on the

3    left-hand side, you have months of the year, January

4    through December.  And then on the horizontal axis, you

5    have years; is that right?

6         A    Yes.

7         Q    And so looking at this, you haven't done any

8    work for the Agway litigation, I'm guessing, in about

9    five years; is that right?

10             MR. BLANKINSHIP:  Objection.  Outside the

11   scope.

12             THE WITNESS:  Yes, because I checked the

13   signature date, and it's like 2020 or something --

14             BY MR. O'TOOLE:

15        Q    Mm-hmm.

16        A    -- basically.

17        Q    So you sitting here today can tell me, looking

18   at this chart, which document you used to form this

19   calculation for June 2015; right?

20             MR. BLANKINSHIP:  Objection.  Vague.  Outside

21   of the scope.

22             THE WITNESS:  I can tell you the Bates number,

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 244

1    yes, for June 2015.

2                BY MR. O'TOOLE:

3        Q    Okay.  Did you provide any kind of similar

4    cross-reference in your expert report in this

5    litigation?

6        A    In paragraph 33 of my direct report on

7    page 14, I described that I used the POWWR pricing model

8    results published on the 15th month -- of the month or

9    the closest date to the 15th with the latest time stamp.

10       Q    Sure.  So that wasn't my question.

11               My question was, did you produce a table like

12   this?

13               MR. BLANKINSHIP:  Objection.  Asked and

14   answered.

15               THE WITNESS:  I did not produce a table like

16   in Table 2 of page 10 of my Agway report, Exhibit 11.

17               BY MR. O'TOOLE:

18       Q    Okay.  And because you didn't produce some

19   kind of a table like that, you can't tell me sitting

20   here today which POWWR spreadsheet you used by Bates

21   number for March 2018; correct?

22               MR. BLANKINSHIP:  Objection.  Mischaracterizes

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 245

1      his testimony.

2              THE WITNESS:  Sitting here today, I do not

3      know the Bates numbers of the POWWR files I used.

4              BY MR. O'TOOLE:

5      Q    Okay.  And you didn't disclose those on the

6      Bates of your report, did you?

7              MR. BLANKINSHIP:  Objection.

8              BY MR. O'TOOLE:

9      Q    Which Bates numbers you used for which month?

10             MR. BLANKINSHIP:  Objection.  Mischaracterizes

11     his report.

12             THE WITNESS:  Let me just check.  I don't

13     believe I did.  No.  As I testified, I didn't provide a

14     table like that.

15             BY MR. O'TOOLE:

16     Q    Okay.  So why didn't you provide a table?

17             MR. BLANKINSHIP:  Same objections.

18             THE WITNESS:  The reason is I think in

19     paragraph 33, it describes which is the appropriate file

20     I used accurately.

21             BY MR. O'TOOLE:

22     Q    Okay.  And which -- when you say date, for

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 246

1    documents that don't have a date associated in the

2    metadata, how would Defense counsel know which documents

3    you used?

4            MR. BLANKINSHIP:  Objection.  Outside the

5    scope of his testimony.  Mischaracterizes his report.

6            You can answer.

7            THE WITNESS:  Um, well, it would be that the

8    file on the 15th of the closest day, that would narrow

9    down the universe, and that would be the one with the

10   latest time stamp.  So, um, you know, that assumes it

11   has a time stamp.

12           BY MR. O'TOOLE:

13   Q    And you're operating under the assumption that

14   each of the documents that you disclosed here has a time

15   stamp?

16   A    I bel- -- yeah, I -- I -- yes, I am.  That's

17   true.

18   Q    Okay.  And that would affect your analysis if

19   there are documents in your materials considered that

20   don't have time stamps; correct?

21           MR. BLANKINSHIP:  Objection.  Incomplete

22   hypothetical.

Page 247

1           THE WITNESS:  It wouldn't affect the analysis,

2    it would just be the -- which file I used for the 15th.

3           BY MR. O'TOOLE:

4       Q    And we wouldn't know which file you used for

5    the 15th, right, in that case?

6           MR. BLANKINSHIP:  Objection.  Incomplete

7    hypothetical.

8           THE WITNESS:  Yeah, I guess it's possible,

9    yes.

10          BY MR. O'TOOLE:

11      Q    Okay.  But opposing counsel would have known

12   in the Agway case because you put together a table,

13   didn't you?

14          MR. BLANKINSHIP:  Objection.  Outside the

15   scope.  Calls for speculation.

16          THE WITNESS:  Yes.  In the Agway case,

17   opposing counsel would know the Bates number by months

18   and year.

19          BY MR. O'TOOLE:

20      Q    Okay.  And you also did that if we move on

21   here -- did that for Table 5 on page 15; right?

22      A    I -- I see.  We're still talking about

Page 248

1    Exhibit 11, the votes of 11?  That's correct.  And I

2    report in Table 5 of this Exhibit 11 Bates numbers by

3    year and date and month.

4         Q    Okay.

5              MR. BLANKINSHIP:  So what page are we on?

6              THE WITNESS:  Page 15, sorry.  Exhibit --

7    table 5, page 15.

8              MR. BLANKINSHIP:  I'm just going to object.

9    That's outside the scope.

10             BY MR. O'TOOLE:

11        Q    If you had produced this kind of table, we

12   could be sure that we were looking at the same kind

13   of -- the same spreadsheet, couldn't we?

14             MR. BLANKINSHIP:  Objection.  Incomplete

15   hypothetical.  Outside the scope of his report.

16             THE WITNESS:  I don't know one way or -- or

17   the other because it would depend on the actual

18   spreadsheet how many there were if they were actually

19   different based on the assumptions so --

20             BY MR. O'TOOLE:

21        Q    Okay.  And so I'll represent to you that each

22   unique document that's produced in litigation has a

Page 249

1     unique Bates number.  So, for example, in this Agway

2     litigation, if I wanted to find the February 2015 value

3     in Table 5, I know it's going to be 713225.  I don't

4     know that in this litigation because you haven't

5     produced that table, have you?

6               MR. BLANKINSHIP:  Objection.  Misstates the

7     facts and the report itself.

8               THE WITNESS:  I don't know what you can or

9     cannot do, but I described the files that I used for the

10    POWWR files that I thought was precise or sufficiently

11    precise.  So to the extent that there are multiple files

12    without big s- -- time stamps, which may -- or I don't

13    know if it's the case or not, th- -- those files could

14    be identical and the data I use, there could be no

15    material difference.  So I -- I -- I don't know what you

16    can or can't do.

17              BY MR. O'TOOLE:

18         Q    Let's talk about what you can or can't do.

19              You can't identify by Bates number which POWWR

20    spreadsheet you used in March 2018; correct?

21              MR. BLANKINSHIP:  Objection.  Asked and

22    answered.  Argumentative.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 250

1              THE WITNESS:  I could go back and identify the

2       files that were used -- the POWWR files that were used

3       in the calculations, where they have to go in the

4       calculations, and therefore identify the Bates numbers

5       of those files, I think.

6              BY MR. O'TOOLE:

7         Q    And that would be on your work papers;

8       correct?

9              MR. BLANKINSHIP:  Objection.  Asked and

10      answered.  Mischaracterizes his testimony.

11             THE WITNESS:  That's right.

12             BY MR. O'TOOLE:

13        Q    Okay.  So you and/or Matt know which file you

14      used, you just chose not to include it in your report;

15      correct?

16             MR. BLANKINSHIP:  Objection.  Mischaracterizes

17      his testimony and the report.

18             THE WITNESS:  I believe the characterization I

19      provided would describe the files that I used.

20             BY MR. O'TOOLE:

21        Q    And what is that characterization?

22        A    Paragraph 33 in my direct report, I used

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 251

1    the -- my model results from the 15th of the month with

2    the closest date with the latest time stamp.

3         Q    Okay.  Before we move on further, Dr. Felder,

4    I'd like to look at exactly what you were doing when you

5    looked at -- when you used these spreadsheets to

6    calculate the contract rate.

7              So let's see.  This paragraph, paragraph 37,

8    and this is of Exhibit 5, which is your expert report,

9    it lays out the configurations that you're using to

10   calculate damages under Method 1; correct?

11        A    Yes.

12        Q    Okay.  And you use these configurations

13   because Plaintiffs' counsel instructed you to use these

14   configurations; correct?

15        A    That's correct.

16        Q    Okay.  And assuming that the spreadsheet, the

17   POWWR spreadsheet didn't come pre-configured this way,

18   you would have to change values in that POWWR

19   spreadsheet; is that correct?

20        A    That is correct.

21        Q    Okay.  Can you recall sitting here today

22   whether there was any of the approximately hundred

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 252

1    spreadsheets that you had included in your materials

2    considered that came pre-configured according to the

3    instructions that you were given by Plaintiffs' counsel?

4              MR. BLANKINSHIP:  Objection.  Vague.

5              THE WITNESS:  Um, I don't know.  We just set

6    each -- once we've identified those files, we set

7    each -- we made sure each file was set as I described

8    here.

9              BY MR. O'TOOLE:

10        Q     Okay.

11        A     Those configurations, to use your term.

12        Q     Okay.  And do you recall any instance where

13    you didn't have to make any configurations and you would

14    use it for these as is?

15        A     I don't recall.  We automated the process, so

16    I don't recall one way or the other.

17        Q     Okay.  And what kind of quality controls did

18    you perform to ensure that the automation was done

19    correctly?

20        A     So what we did is we, by hand, did a variety

21    of spreadsheets over the time period, the cost time

22    period.  And then we checked -- when the computer code

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 253

1    went to extract that data, we checked different

2    utilities, different values.  You know, because we were

3    extracting multiple data across multiple utilities, and

4    so we checked that we have identical in the hand

5    configurations versus the automated configurations.

6         Q    Okay.  And what do you mean by identical in

7    the hand configurations as opposed to the automated

8    configurations?

9         A    That a particular data value that we were

10   using was identical.

11        Q    Did you do that for all of the hundred or so

12   POWWR spreadsheets?  That comparison between the hand

13   calculations and the automated calculations?

14        A    No.  We did for a large number across the time

15   period.

16        Q    When you say "a large number," how many is

17   that?

18        A    Somewhere two dozen, something like that.

19        Q    Okay.  So you're looking at -- let's just say

20   it's six years of POWWR spreadsheets, so you're looking

21   at 70-odd POWWR spreadsheets, and you did quality

22   control on two dozen of those.

Page 254

1              Is that fair?

2              MR. BLANKINSHIP:  Objection.  Mischaracterizes

3      his testimony.

4              THE WITNESS:  We did other quality control to

5      make sure the numbers were reasonable so that even if we

6      didn't compare our hand configuration with the automated

7      configuration for -- that the numbers made sense, they

8      were with ranges, they were what we were expecting.

9              BY MR. O'TOOLE:

10       Q    Okay.  Did you find any instances in which the

11     POWWR spreadsheets produced data that you felt was

12     unreasonable?

13       A    No, we did not.  Not that I recall.

14       Q    Okay.  But you said you -- you had quality

15     checks to make sure that the data seemed re- --

16     reasonable?

17             MR. BLANKINSHIP:  Objection.  Asked and

18     answered.

19             BY MR. O'TOOLE:

20       Q    Is that right?

21       A    Yes.

22       Q    Okay.  But you don't recall any instances in

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 255

1    which the data seemed unreasonable?

2              MR. BLANKINSHIP:  Objection.  Asked and

3    answered.

4              THE WITNESS:  That's correct.

5              BY MR. O'TOOLE:

6         Q    Okay.  So the first -- the first bullet in

7    this list is the inflation rate.

8              Do you see that?

9         A    Yes.

10        Q    Okay.  And I guess Plaintiffs' counsel

11   instructed you to set that to zero; correct?

12        A    Yes.

13        Q    All right.  Do you have an understanding of

14   what POWWR meant by the term "inflation rate"?

15        A    Nothing beyond just what may be implied by the

16   term "inflation rate," but I assume it was -- it was set

17   to zero, so I didn't investigate further.

18        Q    Okay.  And so you don't know if this is like a

19   monthly rate or an annual inflation rate?

20        A    Sitting here today, no, I don't recall one way

21   or the other.

22        Q    Okay.  And you applied zero percent inflation

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 256

1      for the entire class period; is that correct?

2           A    It -- I don't think it characterized what

3      happened.  So we were using the 15th of a month,

4      January, to extract data, the assumptions, at least

5      according to POWWR for February 1st of the month of

6      February.  So that was roughly two weeks in advance.

7      And then once we've got to March, we were, you know,

8      setting the inflation rate at February 15th to zero to

9      get to the -- the March.  So it wasn't that I assume

10     there was zero inflation over six years, it was just

11     that from the -- the time period from the file we used

12     and the -- the next month was zero.

13               Does that make sense?

14          Q    It does.

15               I think my question is simply, you used the

16     inflation rate set to zero for your calculations

17     throughout the class period; yes or no?

18               MR. BLANKINSHIP:  Objection.  Asked and

19     answered.

20               THE WITNESS:  I don't think I can answer yes

21     or no because it may leave the implication that I assume

22     for six years, there was zero inflation, which I did not

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 257

1    assume.

2              BY MR. O'TOOLE:

3        Q    Okay.

4        A    Mechanically, the inflation rate box for each

5    file was set for zero, and that inflation affected the

6    calculation because POWWR was calculating one month out

7    up to multiple months out, 18, 36 months out.  And so I

8    wasn't assuming that in February that two years later,

9    there was zero inflation.  I was just assuming there

10   were -- or instructed to assume there was zero inflation

11   from February 15 to March, the subsequent month.

12       Q    And you were only setting inflation as zero

13   for the entire class period because counsel instructed

14   you to do that; is that correct?

15             MR. BLANKINSHIP:  Objection.  Asked and

16   answered.

17             THE WITNESS:  I was instructed to with the

18   description that I think is important, yes.  But I did

19   not assume that inflation was zero for six months -- for

20   six years.

21             BY MR. O'TOOLE:

22       Q    If you had, would that have affected your

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 258

1    calculations in any way?

2         A    Well, you know, if I was looking at

3    January 1st, 2018 and I was projecting future prices

4    using POWWR's methodology six years later -- you know,

5    January, whenever, 2024, 2023, whatever -- then whether

6    or not I had an inflation rate of 3 percent or 1 percent

7    or whatever wouldn't matter, but that's not what I was

8    doing because I was just looking a month ahead.

9         Q    Because you were following the instructions of

10   your counsel; correct?

11             MR. BLANKINSHIP:  Objection.  Asked and

12   answered.

13             THE WITNESS:  I looked the month ahead because

14   that was the closest forward month of data that I could

15   use to calculate the contract rate as provided per

16   instruction from counsel.

17             BY MR. O'TOOLE:

18        Q    So I -- I'm little bit confused.

19             Were you exercising your own judgment?  You

20   seem to be defending the use of zero percent inflation.

21   I -- I was under the impression -- your testimony so far

22   has been that you were simply following the advice of

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 259

1    counsel -- or not the advice of counsel, but the

2    instruction of counsel.

3            Did -- did you -- did you -- were you

4    following the advice of counsel, or were you exercising

5    your own judgment in determining that zero percent

6    inflation was reasonable here?

7            MR. BLANKINSHIP:  Objection.  Asked and

8    answered.  And mischaracterizes his testimony.

9            THE WITNESS:  I was -- you asked me if -- I

10   was just trying to explain the implications of, um, I

11   think, what you've offered up as a hypothetical.  I've

12   followed the instruction of counsel to use inflation for

13   the next month at zero percent.  And then I was just

14   explaining implications, which I interpret as a

15   hypothetical of if it was over multiple months or years.

16           BY MR. O'TOOLE:

17   Q     Okay.  Do you have an understanding as to the

18   meaning of the next term, "general interest rate"?

19   A     Nothing beyond just the general term, the cost

20   of borrowing money for a bond or a loan.

21   Q     Do you understand what POWWR meant by the

22   general interest rate?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 260

1          A    I did not look into that in detail.  I set it

2     to zero.

3          Q    And you don't have any understanding what the

4     relationship could be between the inflation rate and the

5     general interest rate, do you?

6               MR. BLANKINSHIP:  Objection.  Mischaracterizes

7     the testimony.  Outside of the scope.

8               THE WITNESS:  Are you asking in the context of

9     the POWWR spreadsheets or in general?

10              BY MR. O'TOOLE:

11         Q    In the context of the POWWR spreadsheets.

12         A    No, I do not.

13         Q    The next bullet talks about start date, set

14    to -- set to the first of the month considered.

15              So I take it as the -- so there's a typo, I

16    presume, it should be start date set to the first of the

17    month considered; right?

18         A    That's correct.

19         Q    Okay.  And so you use these POWWR spreadsheets

20    to calculate the contract rate for a calendar month;

21    right?

22         A    That's correct.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 261

```
1          Q    Okay.  So you -- you'd be calculating the
2      contract rate for March 2018, it's basically the
3      contract rate for March -- 1st to March 31st, 2018;
4      correct?
5          A    That's correct.
6          Q    Okay.  And that was consistent with what you
7      did in the Agway case, where you identified Bates
8      numbers that you used for each discrete month; right?
9              MR. BLANKINSHIP:  Objection.  Outside the
10     scope.  Mischaracterizes the witness.
11             THE WITNESS:  Um, I -- to the extent I recall
12     in Agway, yes, I was doing the calculation for a month.
13             BY MR. O'TOOLE:
14         Q    The next bullet talks about you set the
15     product type to variable with cap.
16             Um, do you know what POWWR intended for the
17     variable -- variable with cap product type to mean?
18         A    I assume to put a variable rate, but nothing
19     beyond that, the description.
20         Q    Okay.  And what does "with cap" mean?
21         A    That, I do not know.
22         Q    Okay.  Are you familiar with the idea of a --
```

Page 262

1      of rate cap, which is a ceiling?

2                 MR. BLANKINSHIP:  Objection.  Outside the

3      scope of his testimony.

4                 THE WITNESS:  Yes.

5                 BY MR. O'TOOLE:

6          Q    Okay.  And you're also familiar with the

7      concept in energy economics called capacity; right?

8          A    Yes, I am.

9          Q    Okay.  And so you don't have any understanding

10     whether this is variable with cap or variable with

11     capacity, do you?

12                MR. BLANKINSHIP:  Same objections.

13                THE WITNESS:  That's right.

14                BY MR. O'TOOLE:

15         Q    Okay.  And do you have an understanding about

16     whether any of those contracts included a numerical rate

17     cap?

18                MR. BLANKINSHIP:  Objection.  Outside the

19     scope of his testimony.

20                THE WITNESS:  I don't have an understanding

21     one way or the other.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 263

1                  BY MR. O'TOOLE:

2          Q    Okay.  Do you know if the contracts that we

3     looked at earlier today -- Exhibit 51, 52, and 53 -- do

4     you know if any of those had a numerical rate cap?

5                  MR. BLANKINSHIP:  Objection.  Outside the

6     scope of his testimony.

7                  THE WITNESS:  I don't know.

8                  BY MR. O'TOOLE:

9          Q    Okay.  Do you know what the other products

10    type -- product types were you could have chosen from in

11    that drop-down menu?

12                 MR. BLANKINSHIP:  Same objections.

13                 THE WITNESS:  I don't recall.  There were

14    four, five, or six, or something like that.  I think one

15    was a fixed price.

16                 BY MR. O'TOOLE:

17         Q    Okay.

18         A    But I don't recall what the other options

19    were.

20         Q    Okay.  And do you have any understanding of

21    how Eligo used these spreadsheets and which product it

22    has selected?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 264

1              MR. BLANKINSHIP:  Same objections.  Outside

2       the scope.

3              THE WITNESS:  In my report, I describe how

4       POWWR -- my understanding of POWWR was used, but -- so

5       it'd be limited to what I describe in my report.

6              BY MR. O'TOOLE:

7          Q    Okay.  So I represent to you that you didn't

8       include in your report what product type Eligo has

9       selected when it was pricing contracts using the POWWR

10      spreadsheets.

11             Would that change?  What -- do you think this

12      would change based on what kind of product type that

13      it's selected?

14             MR. BLANKINSHIP:  Objection.  Incomplete

15      hypothetical.

16             THE WITNESS:  I don't know one way or the

17      other.

18             BY MR. O'TOOLE:

19         Q    Okay.  And you don't know the underlying

20      formula here -- of the -- how the product type affects

21      the ultimate calculation; correct?

22             MR. BLANKINSHIP:  Objection.  Outside the

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 265

1    scope.

2            THE WITNESS:  That's correct.

3            BY MR. O'TOOLE:

4        Q    Okay.  So the state -- the next setting, this

5    is on page 16, is set to New York.  I think that seems

6    relatively straightforward here.

7            But for the next bullet, it says, "Utility

8    rate, slash, profile, load zone set, respectively to the

9    utility, rate category, and NYISO load zone

10   corresponding to the customer."

11           So we talked earlier about service

12   territories.

13           So you -- when you say "utility" here, you

14   mean a service territory; right?

15       A    Yes, I do.  As we discussed before, yes.

16       Q    And the load zone would correspond to a

17   numerical -- a numerical -- nu- -- sorry, not a

18   numerical -- a load zone that's indicated with a letter

19   abbreviation.

20           Is that -- is that fair?

21       A    That's right, the NYISO load zone, yes.

22       Q    Okay.  Do you know how many service territory

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 266

1    and load zone combinations are at issue in this case?

2        A    There are a lot.  So at one point, Matt

3    calculated that or -- but -- so there's five utilities,

4    and, you know -- so I think 20, 25, I don't know the

5    exact number, but --

6        Q    Okay.

7        A    -- something like that, I believe.

8        Q    Okay.  So if you're just looking at service

9    territory and ISO load zones, you're saying you've got

10   20 or 25 permutations?

11            MR. BLANKINSHIP:  Objection.  Asked and

12   answered.

13            THE WITNESS:  Technically, they would be

14   combinations because the order wouldn't matter if you

15   said load zone A and utility Con Ed, but there could be

16   25 of them or something like that, you know.

17            BY MR. O'TOOLE:

18       Q    Okay.  I will -- I will defer to your

19   knowledge of -- of mathematics there.

20            The -- the distinction between a permutation

21   and a combination being whether or not it's what we're

22   looking for in the operations here; right?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 267

1        A     No, sorry, I didn't mean to go on.

2              So one, two would be -- the permutation 1, 2

3     would be different from two, one.  The combination of

4     one and two are the same.

5        Q     Okay.

6        A     But if I picked the subset of people, you

7     know, the order didn't really matter of the two people,

8     but I picked two people.  But if I picked 21 versus 12,

9     that would matter.

10       Q     Okay.  Okay.  That's fair.

11             So -- so we're basically looking at 20-plus

12    different combinations here, between the service

13    territory and the load zone; right?

14             MR. BLANKINSHIP:  Objection.  Asked and

15    answered.

16             THE WITNESS:  Yes, I believe so.  Something

17    like that, yeah.

18             BY MR. O'TOOLE:

19       Q     Okay.  And then you also say that for the rate

20    profile, you set this to the rate category corresponding

21    to the customer.

22             Do you see that?

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 268

1        A     Yes.

2        Q     Okay.  And so the rate category would be

3    another term for a rate classification or a service

4    classification; right?

5        A     That's correct.

6        Q     Okay.  And do you know how many service

7    classifications are at issue in these 20-plus ter- --

8    service territory and load zone combinations?

9        A     You mean, including all the different service

10   classes by utility?  No, I don't.

11       Q     Okay.  Is it safe to say it's in the excess of

12   20?

13       A     A 20 different rate classes?

14       Q     No, not 20 different rate classes --

15       A     So what are we --

16       Q     -- but you have distinct rate classes for each

17   service territory and load zone combination?

18       A     Right.  So if you add in rate classes, which

19   could be whatever the number is for utility, yes, that

20   would increase that -- that number.

21       Q     Okay.  So what we're basically looking at here

22   is dozens of different combinations.

Page 269

1              Is that fair that they're what you consider

2       service territory, load zone, and rate classification?

3              MR. BLANKINSHIP:  Objection.  Asked and

4       answered.

5              THE WITNESS:  Yes.

6              BY MR. O'TOOLE:

7       Q    Okay.  And you -- did you have work papers for

8       each of these dozens of different unique combinations of

9       service territory, load zone, and rate classifications?

10             MR. BLANKINSHIP:  Objection.  Vague.

11             THE WITNESS:  So I've work papers for the

12      various methods by utility and ISO zones.  I use the

13      residential service class, which is typically referred

14      to as SD1 or RS1 --

15             BY MR. O'TOOLE:

16      Q    Okay.

17      A    -- depending on the utility.

18      Q    There were multiple residential rate classes

19      in New York, are there?

20      A    There are, and some utilities have different

21      rate classes.

22      Q    Okay.  And so SC2, in some utilities, that

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 270

1    would also be a residential rate class?

2          A    I believe so, subject to check, yes.

3          Q    Okay.  And the terminology of that -- of

4    the -- of the service classifications and of the rate

5    class, that varies from utility to utility.

6                Is that fair?

7          A    Yes.

8          Q    Okay.  And is that also true within -- or the

9    load zones, that if you have different rate classes,

10   they're going to vary within -- within the load zones?

11         A    Well, the load zones are really defined by the

12   New York ISO, so they're not linked to a utility's

13   service territory and rate structure.

14         Q    So if we have a service territory that spans

15   two of -- two load zones, so let's just say NYSEG --

16   let's say, NYSEG A and C.

17               Are you saying they're going to have the same,

18   that NYSEG A and NYSEG C are going to have the same rate

19   classifications?

20         A    Not necessarily, because NYSEG bec- --

21   wouldn't be using the NYISO load zone, they may be using

22   east or west, or they may have some -- to the extent its

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 271

1    applicable.  But -- so they may, within their rate

2    structure, separate out, and that may or may not line up

3    with the NYISO load zone.  I'm not saying they don't.

4         Q    Okay.

5         A    But it's a utility rate -- excuse me -- rate

6    structure that does this.

7         Q    Okay.

8         A    The utilities had these rate structures before

9    the NYISO, so they have some way of -- if they did,

10   separate geographically by rate structure.  You know,

11   the same rate class but different pricing, then they

12   would have to implement that in a way before the

13   New York ISO made the case, A or J zones.

14        Q    Okay.

15        A    That's all I'm trying say.

16        Q    Yeah.

17             So -- and let me -- just help me understand

18   this.

19             The customer invoice data that you received,

20   that big messy spreadsheet, so that had information

21   regarding the service territory and the load zone, but

22   it didn't have information concerning the rate class; is

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 272

```
 1      that correct?
 2              MR. BLANKINSHIP:  Objection.  Mischaracterizes
 3      the spreadsheets.
 4              You may answer.
 5              THE WITNESS:  Yeah.  It did not have the rate
 6      class data.
 7              BY MR. O'TOOLE:
 8          Q    Okay.  And do you know what rate class
 9      Mr. Brous was before we he passed away?
10          A    No, I do not.
11          Q    Okay.  And how about Ms. Schuster?
12          A    No, I do not.
13          Q    Okay.  Do you know the rate class of any of
14      Eligo's customers?
15          A    No, I do not because the spreadsheet didn't
16      have them.
17          Q    Okay.  Do you know whether the contract rate
18      would have varied depending on which rate class you
19      selected?
20          A    It -- it could have.  So if it's in the POWWR
21      spreadsheet, I would have selected a different rate
22      class for the same utility, for the same load zone, for
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 273

```
 1     the same month.  It could have provided a different
 2     number.  I don't know.
 3          Q    Okay.  And so how did you decide which value
 4     to use?
 5          A    I use residential, the most common rate
 6     classes, SD1 or RS1.
 7          Q    Okay.  But we've already established that
 8     there are multiple different residential rate classes;
 9     correct?
10               MR. BLANKINSHIP:  Objection.  Asked and
11     answered.
12               THE WITNESS:  Yes, but those tend to be the
13     most common ones in a residential class.
14               BY MR. O'TOOLE:
15          Q    And so it's possible that -- taking a step
16     back, your basic calculation, as you described it, is
17     what Eligo charged minus the contract rate.
18               And so it's possible here -- you're saying for
19     all of the Eligo rates, you were using SC1 or RS1,
20     right, as the -- as the first one?
21          A    That's correct.
22          Q    Okay.  And it's possible that the customer was
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 274

```
 1    actually an SC2 or some other different kind of rate
 2    class; correct?
 3               MR. BLANKINSHIP:  Objection.  Incomplete
 4    hypothetical.
 5               THE WITNESS:  That's correct.  And if I was
 6    provided the rate class of each customer, I could make
 7    any adjustments if necessary.
 8               BY MR. O'TOOLE:
 9      Q    Okay.  And did you ever ask for the rate class
10    for customers in the -- in the invoice data spreadsheet?
11      A    Not that I recall.
12      Q    Okay.  And why didn't you ask for that?
13      A    I don't know.
14      Q    Okay.  But you acknowledge that insofar as
15    you're preparing SC1 contract rates to SC2 charge rates,
16    you're not making an apples-to-apples comparison here?
17               MR. BLANKINSHIP:  Objection.  Asked and
18    answered.  Argumentative.
19               THE WITNESS:  One would have to do the
20    calculation to -- to see whether it would increase or
21    decrease my numbers for the various methods.  My -- let
22    me think about that for a moment.
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 275

1          So the data I extracted from the POWWR

2     spreadsheets are wholesale energy cost, capacity cost,

3     ancillary services, mandatory RECs and ZECs.  So

4     mandatory RECs and ZECs do -- are not affected by

5     someone's rate class, if they're SC1 or SC2, for

6     example.

7          Voluntary RECs would not be affected.  I used

8     overall transmission and distribution losses, so that

9     would not be affected by rate class.

10          Ancillary services is based on wholesale

11     ancillary services.  So that -- first of all, the number

12     is small, and to the extent that different rate classes

13     have a different load profile, that may affect not the

14     capacity costs, but may, on a small amount, one way or

15     the other, the energy costs and even less so on the

16     ancillary services cost.

17          So my expectation would be, subject to check,

18     that replacing one residential rate class with another

19     would not have drastically given different energy costs

20     or capacity costs or ancillary service cost.

21          BY MR. O'TOOLE:

22     Q    And what is that expectation based on?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 276

1          A     Well, the analysis I just went through; that

2     the energy cost is set at the wholesale market, not by

3     the rate class.  The capacity cost is set at the

4     wholesale market, not by the rate class.  Ancillary

5     services are set at the wholesale market, not by the

6     rate class.  Mandatory RECs and ZECs are not based on

7     rate class at all, but based on total consumption.  Same

8     with voluntary and transmission and distribution losses

9     are based on total consumption of a customer, not their

10    rate class.

11         Q     Is it not your opinion that the energy cost is

12    the lion's share of this calculation here?

13         A     The energy cost is the largest share of this

14    calculation.

15         Q     Okay.  So can you run me through again one

16    time, how many different calculations, considering there

17    are five service territories -- let's just say, when you

18    add in the load zones, it's up to 20 or 25 different

19    combinations.  You've got a different, a couple of

20    different, at least a couple of different rate classes

21    for all of those -- all of those combinations.

22               Um, how many different calculations were you

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 277

1      performing for each month?

2                MR. BLANKINSHIP:  Objection.  Asked and

3      answered.

4                THE WITNESS:  So I think there may be

5      different way of thinking about it.  I created, with the

6      help of Matt and my -- Carla, input files.  So the input

7      files would have, for example, a utility -- and if it

8      had different load zones, you know, utility 1, load

9      zone A and B -- and so when I was calculating -- or when

10     the computer programs were calculating the damages for a

11     particular customer for a particular month, it didn't

12     have to calculate or go through all the different

13     combinations.  It knew that customer 1 was a part of

14     utility 1, zone A.  And then it looked, in the lookup

15     file, the particular information that it needed to do --

16     it didn't have to somehow calculate all the other zone

17     combinations; it just went to the appropriate file for

18     the appropriate piece of data to proceed.

19                BY MR. O'TOOLE:

20         Q    Okay.

21         A    So there could have been 50 combinations, it

22     didn't increase the order of magnitude of the

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 278

1    calculations by fiftyfold because it -- it -- it had to

2    do a search function.  So to the extent the search

3    function is now looking over 25 of it, the search

4    functions are incredibly efficient.

5              So this is trivial.  I mean, so -- but it

6    wasn't doing -- I mean, I guess to do the search

7    function over a larger input table involves slightly

8    more computational time.  I'm not sure I would

9    categorize that as a calculation, but maybe someone else

10   would.

11        Q    Okay.  So tell me if I'm understanding you

12   right.  You're saying, "It's not like I took the

13   March 2018 POWWR spreadsheet, set it for NYSEG A,

14   service class 1, came up with a value.  I set it for

15   NYSEG A, service class 2, set it for a value.  I -- I

16   set it as a calculation for RG&E, zone B, and I set it

17   to service class 1, service class 2."

18             It wasn't like you were generating multiple

19   different spreadsheets or multiple different

20   calculations.

21             You essentially had an input file and lookup

22   code so that you could automatically calculate these

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 279

1    things; is that right?

2        A    Yeah.  I think I misunderstood your question.

3    To extract, to formulate this set of tables -- it

4    probably wasn't one -- but this -- we had -- which is

5    why we had to automate it because we did have to cycle

6    through, you know, there were hundreds of thousands of

7    POWWR files.  We had to find the right one per what

8    we've discussed.

9            And then -- well, to be honest, what happened

10   is, see, um, I think you are thinking, okay, there's a

11   drop-down menu.  Let's just stick with utility, you

12   know, a NIMO.  Frank gets the data, then the computer

13   switches it to NYSEG, grabs the data.

14           What happens is behind -- my understanding,

15   behind the POWWR spreadsheets is there's a flat file

16   that has the row and the table, NIMO zone A or whatever

17   for the -- and -- for the month we're looking at.  And

18   so then the -- the Python code then doesn't have to

19   calculate that.  It's in a file.  It just knows where to

20   look, where POWWR has it behind the scenes and grabs

21   that number.

22           So it's not doing any calculations; it's just

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 280

1    searching for a particular assumption we need based on

2    the utility rate class of SD1 and the load zone.

3         Q    What do you mean by a "flat file"?

4         A    I'm sorry.  Just what you and I would look at,

5    say, a table of data where it has -- just like -- it's

6    just a table of data where you have a row and a column.

7    It may be very large, but you're -- you're just -- we're

8    picking off numbers.  We're not calculating the numbers

9    that are filling up the table.

10        Q    And so what is the basis of your understanding

11   that there's a flat file behind the POWWR spreadsheets

12   that Python can use to access its data?

13        A    And flat may just be my colloquialism.  My

14   discussions with Matt on how this works, when we were

15   discussing how to extract the data.

16        Q    Okay.  But you, aside from that, don't have an

17   independent understanding of how -- how Python is going

18   to be able to see the data that may or may not be in the

19   spreadsheet?

20        A    Um, that's right.  I mean, Matt showed me

21   examples of Python doing this function --

22        Q    Okay.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 281

1          A     -- that I described.

2          Q     So let's keep going for five or ten minutes or

3     so, and then we can take a little break.  Unless you

4     need a break now.

5          A     No.  Unless --

6                MR. BLANKINSHIP:  I'm going to catch my 7:45

7     plane, so the more we can grind away, the better.

8                MR. O'TOOLE:  Okay.  I've probably got at

9     least a couple hours.

10                MR. BLANKINSHIP:  Let's get this thrown away.

11                MR. O'TOOLE:  Okay.

12                BY MR. O'TOOLE:

13          Q     So where are we now?  Okay.

14                The next bullet, if we can go back.  I know we

15     were talking about all those limitations for a little

16     bit.  The muni- -- the municipality is set to all other.

17                I guess here -- again, you're -- you're

18     following the advice -- you're following the instruction

19     of counsel?

20          A     That's correct.

21          Q     Okay.  Do you have an understanding as to what

22     POWWR means when it says "all other"?

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 282

1          A    I do not.

2          Q    Okay.  And you -- you set the municipality to

3    all other -- for all Eligo customers in the 27,000?

4          A    Oh, I -- I did see the reference of 27.  Yes,

5    it's -- I re- -- that's the setting.

6          Q    Okay.  And so you even did that for CONN/AG,

7    zone J?

8          A    Yes.

9          Q    Okay.  Next point would be the gross margin

10   type target.

11              So, again, you set that to zero at the

12   instruction of counsel; correct?

13         A    That's correct.

14         Q    Okay.  Do you have an understanding of what

15   POWWR meant by "gross margin target"?

16         A    Nothing beyond those three words.

17         Q    Okay.  And do you have any understanding of

18   how that would be different from a net margin target?

19         A    No, I do not.

20         Q    All right.  And you don't know how this margin

21   is calculated?

22         A    This gross margin target, no, I do not.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 283

1          Q    All right.  And so we've gone through these

2     terms -- some of these terms -- "inflation, general

3     interest rate, gross margin target" -- and you've

4     testified that you don't know what POWWR meant by these

5     terms.

6                    Did you ask POWWR the meaning of any of these

7     terms?

8                    MR. BLANKINSHIP:  Objection.  Asked and

9     answered.

10                   THE WITNESS:  I did not communicate with POWWR

11    at all.

12                   BY MR. O'TOOLE:

13         Q    Okay.  And why didn't you ask POWWR?

14                   MR. BLANKINSHIP:  Asked and answered.

15                   THE WITNESS:  I was instructed to set the

16    parameters, and I did so.

17                   BY MR. O'TOOLE:

18         Q    Were you instructed not to ask POWWR the

19    meaning of these terms?

20                   MR. BLANKINSHIP:  I'm going to instruct you

21    not to answer that question because it's privileged.

22

Page 284

1          BY MR. O'TOOLE:

2      Q    So after following these instructions, you

3    came up with a value for market pricing; is that

4    correct?

5          And I guess what I'm looking at here, to help

6    you out maybe a little bit, Dr. Felder, is if you go

7    back to the 37 of your report.

8          MR. BLANKINSHIP:  Paragraph 37?

9          MR. O'TOOLE:  Yes.

10         Did I say paragraph 37?

11         MR. BLANKINSHIP:  You just said 37.

12         MR. O'TOOLE:  Okay.  Yes.

13         THE WITNESS:  Yes, so that's the first step

14   under -- yes, under that method.

15         BY MR. O'TOOLE:

16     Q    Okay.  And so let's see.  This market present

17   value, it was located in G22 of the spreadsheet.

18         That's what it says here; right?

19     A    Can you just point me to here?

20     Q    Sure.  If you look at paragraph 37.  They're

21   very limited.

22     A    Well, yes.  I mean, it -- it starts

Page 285

1    identifying what I did in different parts of the

2    spreadsheet.

3         Q    Okay.  So you've identified the cell here that

4    you used.

5              Have you identified any other cells

6    specifically to use as part of that calculation in your

7    reports?

8         A    In paragraph 38, I identified the cell, G22 --

9         Q    And that's the same cell?

10        A    It's the same -- yeah, I don't think so.

11        Q    Okay.  Um, if you look at page -- or, excuse

12   me -- paragraph 39 here, the second sentence in that

13   paragraph says, "Direct obligation mandated by

14   New York PSC is already included in the rate on G22";

15   right?

16        A    Yes.

17        Q    Okay.  But the voluntary RECs, they are not

18   included in this G22 value; right?

19        A    That's correct.

20        Q    Okay.  And so you lay out, in paragraph 40,

21   basically how you calculated those voluntary RECs;

22   right?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 286

1        A    I -- yeah, I think, really, 41, but yes.

2        Q    Okay.

3        A    Subsequently, yes.

4        Q    Okay.  And I guess to be clear on this point,

5    was this something where you followed the instruction of

6    counsel in making these calculations, or did you

7    exercise independent judgment?

8        A    I followed counsel's instructions on how I

9    determine the amount, if any, of voluntary RECs.

10       Q    Okay.  And so you were offering -- you are

11   offering the opinion, um, that the POWWR pricing model

12   does not include estimated costs for the voluntary RECs;

13   right?

14            MR. BLANKINSHIP:  Objection.  Mischaracterizes

15   the testimony.

16            THE WITNESS:  I thought -- that's right.  I

17   explicitly added in the voluntary RECs.

18            BY MR. O'TOOLE:

19       Q    Okay.

20       A    Because I thought it was -- or wasn't informed

21   or wasn't -- well, I -- it wasn't included.

22       Q    Okay.  Okay.  So I think we can take a break

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 287

1    here.  I'm going to show you one of the POWWR

2    spreadsheets now, but I need to use the -- the restroom

3    first.

4               THE VIDEOGRAPHER:  This marks the end of

5    Media Unit Number 5.  Going off the record.  The time is

6    15:26 p.m.

7               (Short recess taken.)

8               THE VIDEOGRAPHER:  This marks the beginning of

9    Media Unit Number 6.  Going back on the record.  The

10   time is 15:35 p.m.

11              MR. O'TOOLE:  Thank you.

12              BY MR. O'TOOLE:

13       Q    So I'm next going to mark -- I believe we're

14   up to Exhibit 12.  This would be just a placeholder as

15   much as anything else.

16              (Felder Deposition Exhibit 12 marked for

17   identification.)

18              BY MR. O'TOOLE:

19       Q    You can see, on the television screen to your

20   right, what is DEF024595; is that correct?

21              MR. BLANKINSHIP:  I just -- it's hard to read

22   from over here.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 288

```
 1              THE WITNESS:  Is this attached to the cable?
 2              THE VIDEOGRAPHER:  Yes.
 3              THE WITNESS:  Yeah.  24595, yes.
 4              BY MR. O'TOOLE:
 5       Q    Okay.  And so is this what the POWWR
 6    spreadsheets look like when you open this up on -- on
 7    your computer?
 8       A    Yes.
 9       Q    And what did you do in order to make these
10    POWWR spreadsheets usable?
11       A    Well, um, the end result was, as we discussed,
12    Matt wrote a code -- a set of codes that extracted the
13    information we needed via Python.  So we didn't have to
14    individually open up each of these spreadsheets.
15       Q    Okay.  So your -- so you didn't remove any
16    kind of formatting from these spreadsheets?  You didn't
17    clear any formatting from these spreadsheets when you
18    were using them?
19              MR. BLANKINSHIP:  Objection.  Vague.
20    Mischaracterizes his testimony.
21              THE WITNESS:  When I was first introduced to
22    this spreadsheet, we played around with it, and then we
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 289

1    had to solve this problem, but Matt was the one who

2    executed the extraction of the data in this automated

3    way.

4              BY MR. O'TOOLE:

5         Q    Okay.  And when he executed the extraction of

6    this data in the automated way, did he remove any

7    conditional formatting?

8         A    I don't know if "remove" is the right way to

9    say it, but he was able to get around it, or it wasn't a

10   problem.

11        Q    Okay.  But he didn't open up individual files.

12   So if you want to follow on the screen here, I'm going

13   to click on "Conditional Formatting."  Go "Clear Rules."

14   And then "Clear rules from the entire sheet."

15             Do you see that?

16        A    Yes.

17        Q    Okay.

18        A    Although it's far away, but yes.

19        Q    So Matt didn't do that when he was -- when he

20   was extracting the data from these spreadsheets, did he?

21        A    No, we did that as -- or -- or Matt did that

22   as part of the quality control that we discussed,

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 290

1    because we were manually checking in some individual

2    spreadsheets.

3            Q    Got it.

4            A    But, no.  But -- that would be crazy.

5            Q    Okay.  So we'll remove the formatting here.

6                 Does this look similar to what you recall

7    seeing in the POWWR spreadsheets?

8            A    I need to just move closer, but --

9            Q    Okay.

10           A    -- it has the general big artsy shape of it.

11           Q    Okay.  Let me see if I can zoom in here.

12                Is that helpful to you?

13           A    Yes, that is helpful.

14           Q    Okay.

15           A    Thank you.

16           Q    And so what I'm going to do, you see, I will

17   also remove the conditional formatting from this page.

18   And we can zoom in on this.  But I guess let's -- I just

19   want to make sure that I'm -- that I'm following what

20   you did here.

21                So if we take a look back at paragraph 37 of

22   your report -- you're more than welcome to follow along,

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 291

```
 1    Dr. Felder -- you -- you first set the inflation rate to
 2    zero here; correct?
 3            A    Yes.  Cell D7 and F, yes.
 4            Q    And then the next -- next thing we'll do is we
 5    set the general interest rate to zero?
 6            A    Yes.
 7            Q    Okay.  And then we have to move to the summary
 8    page, which is this next tab over.
 9            A    Yeah.
10            Q    Yeah.  Okay.
11                 And then do you see how the date for this file
12    is 10/17/23?
13            A    Yes, I do.
14            Q    Yeah.
15                 So that's very -- very hard for you to see,
16    but it's the -- it's in the --
17            A    Yeah, I can kind of see.
18            Q    -- name of the file.
19                 So the start date for this -- because you're
20    using something in the middle of October 2023 -- is the
21    beginning of November; right?
22            A    Yes, so we would have used -- my glasses
```

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 292

```
 1    aren't going to help -- the date closest to 10/15,

 2    whatever the year is, 2023, with the latest time stamp,

 3    as we discussed.

 4         Q    Okay.  And so, in other words, for this

 5    document that has a 10/17/23 title, you would have been

 6    using this to calculate November 2023; is that right?

 7         A    Yes.

 8              MR. BLANKINSHIP:  Object to the scope.

 9              THE WITNESS:  Oh.

10              MR. BLANKINSHIP:  Objection.  Lack of

11    foundation.

12              BY MR. O'TOOLE:

13         Q    All right.  And then when it comes to product

14    type, you selected variable with cap?

15         A    Yes.

16         Q    For state, I think we can agree on that.

17              New York, the utility -- let's assume we're

18    calculating Ms. Schuster's rate.  I will represent to

19    you that she was in RG&E.

20         A    Okay.

21         Q    What -- you said you submit -- or you used SC1

22    for every customer in the database; right?
```

Page 293

1          A     Yes.

2          Q     Okay.  And so you used SC1 when -- when you

3     were calculating here.

4                Load zone, there's only one option in this

5     case, you're aware that there's only one load zone in

6     RG&E?

7          A     Yes, generally use.

8          Q     Weather zone, you left as is?

9          A     Yes.

10         Q     Okay.  And then for municipalities, all

11    others?

12         A     Yes.

13         Q     Okay.  All right.  And just to be clear, all

14    of these operations that we've done so far, those

15    were -- that's what your counsel asked you to do;

16    correct?

17         A     Yes.

18         Q     Okay.  And so then if we look down here, this

19    is set for one month.  And so when I look at -- oh, I --

20    I guess the last thing we want to do is set gross margin

21    target.

22                So this is, right now, set to 10 percent;

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 294

1    right?

2         A    Yes.

3         Q    Okay.  And you want to set that to zero?

4         A    Yes.

5         Q    All right.  And so when we set this to zero,

6    we get a value in G22 that's $47 and 52 cents.

7              Do you see that?

8         A    Yes.

9         Q    And would that correspond to the dollar per

10   megawatt hour?

11        A    Can you go to the next tab and then scroll

12   over to the right?  Again, this is really hard to see,

13   and I'm tethered by the mic.  Keep scrolling to the

14   right.

15             I'm just trying to -- you didn't do the

16   unconditional formatting.

17             And then are some of the row -- columns hidden

18   in this tab?  Yeah.  From S to R -- or S to BI.  Can you

19   unhide those?

20             Yeah, I don't know if whether or not -- and

21   then -- okay.  And then if you can go back to the

22   summary page?  And then scroll to the right, please.

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 295

1       Keep scrolling.

2               The -- and then P to CW, can you hide those

3       tabs?  And keep scrolling.  Yup, keep going to the

4       right.  Keep going.  Okay.  So, now, this is where,

5       um --

6               Q    Keep going or stop?

7               A    No.  So this -- the energy price, AK -- column

8       AK, row 17, the capacity price.  And then if you keep

9       scrolling to the right, those are upcoming components

10      for the ancillary, net added charges.

11              Q    And when you say, "Those are upcoming

12      components for the ancillary charges," what do you mean?

13              A    I believe the column AN through AR -- oh,

14      through AT.

15              Q    And so to calculate ancillary charges, we

16      would look at AN through AT; is that right?

17              A    Yes, subject to check.  I mean, I'm doing this

18      just off the top of my head.

19              Q    Sure.

20              A    It was an automated process, but, yes.  And

21      then if you keep scrolling to the right, there is --

22      keep scrolling to the right.  The compliance RECs -- and

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 296

1    keep scrolling to the right just so I get oriented.

2    Line losses, so I could use those.  And then there's a

3    tab that's hidden, a right cross tab.  So if you unhide

4    some of the tabs -- and, yeah, don't unhide them all.

5    Just the ones called RPS calls.

6         Q    Okay.

7         A    It's kind of right -- second on the top.

8    Okay.  So, um -- and then this is organized by state, so

9    you've got to scroll away to the right to get to

10   New York.

11        Q    Okay.  So I think, for this, I mean, my

12   question was basically just, look at G22 -- and I

13   probably didn't clear it here.

14             If you look at G22, is this dollars per

15   megawatt hour, or is this -- is this a dollar per

16   megawatt hour, and it's not cents per kilowatt hour?

17        A    Not -- not even in your clients' world is that

18   cents per kilowatt hour.

19        Q    Okay.  And it would -- it would be very

20   unreasonable if you got a value that was --

21        A    Yes.

22        Q    -- 47 --

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 297

1        A     Yeah.

2        Q     -- 47 cents a kilowatt hour?

3        A     Yeah.  I think we can agree on that.

4        Q     Okay.  Okay.  Great.

5              And so what I would like to do here, you

6    offered the testimony before the break that you didn't

7    see a means to calculate the voluntary REC given in the

8    POWWR spreadsheet?

9              MR. BLANKINSHIP:  Objection.  Mischaracterizes

10   his testimony.

11             THE WITNESS:  I think what I was -- I said or

12   tried to say was that I didn't think that POWWR

13   calculated that.  If you go to that RPS -- maybe on the

14   RPS tab, there's a -- I think there's a column somewhere

15   that says voluntary --

16             BY MR. O'TOOLE:

17       Q     Sure.

18       A     -- RECs, and it's zeroed -- or Green RECs,I

19   think it's zeroed out.

20       Q     Okay.  So -- and this, I think, brings me unto

21   the point I want to raise.

22             In paragraph 22, you say the POWWR pricing

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 298

1    model does not put an estimated cost for any of those

2    voluntary REC amendments associated with the -- with the

3    order.  And that's just the first sentence in

4    paragraph 28 of your --

5         A    Oh, I -- I went to 22.  I'm sorry.

6    Twenty-eight.

7              Yes, that's the first sentence of my

8    paragraph 28.

9         Q    Okay.  Great.

10             And I think you mentioned a Green-e REC being

11   zeroed out.

12             So if we scroll over here, you can see that

13   the compliance REC, there's a nonzero value, and that's

14   4.93.  And then for Green-e REC, that's 0.00.

15             Do you see that?

16        A    Yes, I do.

17        Q    Okay.  So did you ever try moving the product

18   type from variable to cap to a hundred percent

19   New York-sided REC?

20        A    No, I did not.

21        Q    Okay.  So if we look at a variable with cap,

22   we have an energy charge that's $47 approximately per --

Frank A. Felder , Ph.D.                January 8, 2026
Brous v. Eligo Energy, LLC

Page 299

```
 1    per megawatt hour; right?

 2         A    Yes.

 3         Q    Okay.  And then, if we were to exchange that

 4    to New -- a hundred percent New York-sided REC, do you

 5    see how that value dramatically goes up?

 6         A    Yes, I do.

 7         Q    And so this says what?  This represents about

 8    $25 more per megawatt hour?

 9              MR. BLANKINSHIP:  Objection.  Misstates his

10    testimony.

11              THE WITNESS:  It went up.  That number changed

12    by about that amount.

13              BY MR. O'TOOLE:

14         Q    Okay.  And so if you were to go over and you

15    were to look where this compliance REC was beforehand,

16    we -- you remember seeing the 4.93 compliance REC value?

17         A    Right.

18         Q    And the now, the Green-e REC that's next to it

19    has a nonzero value; correct?

20         A    That's correct.

21         Q    Okay.  And you didn't use this to calculate

22    the cost of voluntary RECs, did you?
```

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 300

1        A    No, I did use the price of the compliance REC

2    in POWWR to calculate for method 1, the incremental cost

3    of the voluntary agreement.

4        Q    Okay.  And you acknowledge here that there's a

5    pretty considerable disparity between the estimates to

6    the price of compliance REC and the price of the

7    voluntary REC?

8             MR. BLANKINSHIP:  Objection.  Incomplete

9    hypothetical.

10             THE WITNESS:  So it's not technically the

11    price; it's the product of the price and the incremental

12    purchase of the REC.  That was -- and I agree that the

13    number 72 is greater than 48 or whatever the -- those

14    numbers were.

15             I did, through the calculation I described in

16    method 1, I -- I calculate the cost of incremental

17    compliance RECs.

18             So to the extent that that process implement,

19    it would be using the same prices for the -- well, I did

20    account -- account for, in method 1, the additional REC,

21    as I've described in -- sorry to go back -- in forty --

22    my paragraph 42, using the prices and POWWR for the

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 301

1    compliance RECs, using the statutory compliance amounts,

2    calculating the difference as appropriate by the time

3    periods for 42, for that additional cost of the Green or

4    voluntary RECs.

5         Q    Okay.

6         A    I would note, if I was asked to do this

7    calculation that we just walked through, I could do

8    that.  And if asked, I could reproduce the damages, my

9    calculations.

10        Q    And do you know when the expert disclosure

11   deadline was in this case?

12             MR. BLANKINSHIP:  Objection.  Calls for legal

13   conclusion.

14             THE WITNESS:  I was just saying physically, I

15   can do that calculation and automate it, not that I've

16   been in some -- some timeline.  I'm not aware of one way

17   or the other.

18             BY MR. O'TOOLE:

19        Q    Okay.  And you didn't perform this calculation

20   the first time around because you didn't know the

21   spreadsheet worked this way.

22             Is that fair?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 302

```
 1              MR. BLANKINSHIP:  Objection.  Vague.
 2      Mischaracterizes his testimony.
 3              THE WITNESS:  Yeah, that was my understanding,
 4      that we cited the paragraph where I said it wasn't clear
 5      to me, so that's why I did it the way I described in my
 6      report.
 7              BY MR. O'TOOLE:
 8        Q     Okay.  For your calculations of voluntary RECs
 9      that you -- that you detailed here in paragraph 42, when
10      it comes -- I guess do you know which terms of service
11      the named plaintiffs enrolled with Eligo under?
12              MR. BLANKINSHIP:  Objection.  Outside of the
13      scope of his testimony.
14              THE WITNESS:  No, I do not.
15              BY MR. O'TOOLE:
16        Q     Okay.  So I will represent to you that they --
17      that they enrolled under the terms of service 2.
18              And you see in footnote 26 that the term
19      for -- the relevant term for terms of service 2 was at
20      least 30 percent renewable?
21        A     Yes.
22        Q     Okay.  And so you acknowledge this isn't a
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 303

1    fixed rate, it's -- provides a floor for the renewable

2    energy content; correct?

3                MR. BLANKINSHIP:  Objection.  Outside of

4    the -- the scope of his testimony.  Mischaracterizes the

5    document.

6                THE WITNESS:  Yes, footnote 26 does says which

7    provides for at least 30 percent renewable energy.  Yes.

8                BY MR. O'TOOLE:

9        Q    Okay.

10       A    That's your point?

11       Q    And when you were calculating these terms of

12   the RECs that are associated with customers enrolled

13   under the second term of service, for periods before

14   April 2021, you calculated exactly -- the cost of

15   exactly 30 percent renewable energy; correct?

16       A    For periods on or before April 15th, 2021, I

17   took whatever the compliance REC -- the difference

18   between 30 percent and the compliance of the REC

19   obligation -- the renewable energy standard obligation.

20       Q    Okay.  But combining the RES RECs and the

21   voluntary RECs, you still calculated a maximum of

22   30 percent of the customer's energy during that period;

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 304

1    correct?

2                MR. BLANKINSHIP:  Objection.  Asked and

3    answered.  Mischaracterizes testimony.

4                THE WITNESS:  That's right.  Yeah.

5                BY MR. O'TOOLE:

6        Q    Okay.  And then for the next period, you

7    calculated 50 percent plus whatever the current

8    mandatory renewable energy content was; correct?

9        A    Yes, I did.

10       Q    Okay.  And there's nothing in the terms that

11   provides for at least 30 percent renewable energy that

12   would limit Eligo to providing exactly 30 percent

13   energy; right?

14               MR. BLANKINSHIP:  Objection.  Outside the

15   scope of his testimony.

16               THE WITNESS:  I think you are referring to the

17   terms of service that the contract cited in footnote 26.

18               BY MR. O'TOOLE:

19       Q    Mm-hmm.

20       A    I'm just trying to --

21       Q    Yeah.

22       A    I -- sitting here, I don't know one way or the

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 305

```
 1    other.
 2         Q    Okay.  And there's nothing here that would
 3    limit Eligo's ability to provide renewable energy
 4    content for that matter greater than a hundred percent
 5    of the way that a customer has.
 6              Is that right?
 7              MR. BLANKINSHIP:  Objection.  Incomplete
 8    hypothetical.  Lack of foundation.
 9              THE WITNESS:  I -- again, without going
10    through the terms of service right now, I don't know one
11    way or the other.
12              BY MR. O'TOOLE:
13         Q    Okay.
14         A    I would note, if I was provided the actual
15    percentage of RECs for each customer by each month above
16    the compliance, then I could calculate either using
17    POWWR prices or the NYSERDA prices or any other prices
18    for Green RECs --
19         Q    Okay.
20         A    -- that you guys used for the damages.
21         Q    Do you know if that information has been
22    produced in discovery?
```

Page 306

1          A     That, I do not know.

2          Q     Okay.  Did you ask anyone whether that

3     information had been produced in discovery?

4                MR. BLANKINSHIP:  I'm going to instruct you

5     not to answer that question unless you asked somebody

6     other than plaintiff's counsel.

7                THE WITNESS:  I can't answer that question.

8                BY MR. O'TOOLE:

9          Q     Okay.  So going back to -- to -- to

10    paragraph 39 here -- and I think you -- you said this

11    earlier, but I just want to make sure I understand you.

12               When you referenced the difference here, and

13    that is, "I include the difference as a market price

14    factor," that is essentially the difference between the

15    value that was included in the contract and whatever the

16    RES mandatory renewable energy content is; correct?

17         A     Yes.

18         Q     Okay.  And so let's say there's a year in

19    which -- in which the RES mandatory renewable energy

20    content is 6.16 percent.

21               Let's say you have a customer who has a

22    hundred percent renewable energy, the difference that

Page 307

1    you calculated here was basically 100 minus 6.16; right?

2        A    I -- I -- yes.

3            I mean, are we talking about now, in

4    paragraph 22, per a cus- -- where the customer purchased

5    a hundred percent RECs?

6        Q    So I guess let's focus on 39 for now, just in

7    terms of -- here, if the customer had purchased a

8    hundred percent RECs, the difference that you're citing

9    here, the difference between the mandatory REC

10   obligation and whatever was required by the contract;

11   correct?

12       A    Well, what I'm trying to communicate,

13   39 cents, the general that I added on the compliance

14   REC -- I mean, sorry -- the voluntary green RECs or what

15   your expert says, EDP RECs, above the compliance.  But

16   then in paragraph 42, in some cases, it's additive; in

17   some cases, it -- it -- it's topped off to a

18   hundred percent.

19           Does that make sense?

20           So, for example, in -- so in this -- in

21   paragraph 42, page 17, in my direct testimony, in the

22   first underlined section, the second bullet from

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 308

1      April 16th onward -- 21, 20 -- 2021, I added the cost of

2      purchase RECs of 50 percent of customer usage plus the

3      applicable REC percentages.  So it was the compliance

4      plus 50 percent.  Whereas in other situations, it may

5      have just been topped of to 30 percent.

6                My -- am I misunderstanding your question?

7           Q    No.

8                But I -- I'm looking to understand why in some

9      situations you took an additive approach and why, in

10     some cases, you found that there was a ceiling?

11          A    I was instructed by counsel to do this.

12          Q    Okay.  And so, I guess, maybe this is obvious,

13     but you're not offering any kind of a legal opinion here

14     today?

15          A    That's, I think, has been established, but

16     I -- yes, I'm not offering a legal opinion today --

17          Q    Okay.

18          A    -- today or tomorrow or yesterday.

19          Q    Okay.  So you're not offering any kind of

20     interpretation of how the -- what the New York

21     regulations are; correct?

22                MR. BLANKINSHIP:  I'm going object that.

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 309

1      Mischaracterizes his testimony.

2              THE WITNESS:  Um --

3              MR. BLANKINSHIP:  That's vague.

4              THE WITNESS:  -- when I read this, I, um, went

5      through the filing that's referred to, but I accepted

6      these instructions from counsel.

7              BY MR. O'TOOLE:

8          Q    Okay.  And the -- when you say "the

9      instructions," you're talking about the bullet points in

10     paragraph 22; right?

11         A    Yes.

12         Q    Okay.  And you say in your -- you say in your

13     rebuttal port -- report -- and we can move to that now.

14         A    Exhibit 8.

15         Q    That would be Exhibit 8, yeah.  And looking at

16     page 4 here.

17         A    Okay.  Just --

18         Q    Sorry.  This is page 5.

19         A    All right.  Here we go.

20              Which page?

21         Q    It's page 5.

22         A    Yes.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 310

1          Q     Okay.  And you say, "Dr. Aron's report claims

2     that ESCO is offering allegedly a hundred percent

3     renewable products, as purchased EP RECs to cover their

4     entire load in addition to the compliance RECs."

5                Do you see that?

6          A     Yes, I do.

7          Q     Okay.  And so it's your opinion essentially

8     that a -- um, that a -- an ESCO has to buy, at most, a

9     hundred percent RECs and never in any case have to buy

10    greater than a hundred percent RECs.

11               Is that right?

12               MR. BLANKINSHIP:  Objection.  Vague.

13               THE WITNESS:  I think my opinion is, her

14    report does not substantiate that claim, and following

15    on describes that.  And I couldn't find an authority

16    requiring an ESCO to buy more than a hundred percent.

17               And then I also did a search of ESCO, which --

18    which I described later in my rebuttal report, and I --

19    and Google search, for whatever that's worth.  And I

20    couldn't find a company, an ESCO that said they were

21    buying more than a hundred percent.  Presumably, if they

22    were, they would make that publicly available.  And so

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 311

1      those are my opinions on this issue.

2              BY MR. O'TOOLE:

3          Q    Okay.  And when you said you couldn't find a

4      company that said they were offering more than a

5      hundred percentage in RECs, is your opinion limited to

6      what ESCOs are permitted to market or permitted to

7      offer?

8              MR. BLANKINSHIP:  Objection.  Vague.

9              THE WITNESS:  The opinions I offer are based

10     on those several elements.  One is I didn't find the

11     citation by Dr. Aron credible -- or, yeah, credible is

12     not quite the right word, but substantial.  I couldn't

13     find a requirement that you should offer a

14     hundred percent.  I couldn't observe, based on my

15     searches, someone offering a hundred percent.

16              I think I have a quote on page 15 of my

17     rebuttal reports.  According -- the -- let's see if I

18     got it the quote right.  Bottom of page 15.  This quote

19     from the New York Public Service Commission says that

20     they don't have to offer more than a hundred percent.

21     Perhaps some did, but -- so that's -- those are the

22     elements for my opinion.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 312

1      Q    Sure.

2           And this is -- this is a limitation on what

3      the ESCO can offer; right?

4      A    This point from the quotation from the

5      New York Public Service Commission is, but my search on

6      what ESCOs are advertising or publicly saying about

7      their offering would not be limited to a mandate.  In --

8      in other words, if -- if the requirement was -- the

9      requirement -- the regulation is you cannot -- you'd

10     have to offer a hundred percent under these conditions,

11     I agree that's different from someone could say, "Well,

12     we're offering 110 percent."

13          But when I look from my search described in

14     the report, I couldn't find someone in ESCO raising

15     their hand and saying, "I was offering a 110 percent."

16     So it's those elements together.

17     Q    Okay.  And did you look at how much the volume

18     of RECs that Eligo retired at any point in -- in this

19     litigation?

20     A    No, I did not.

21     Q    Okay.  Would that be on a publicly accessible

22     database?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 313

1         A    Some -- I -- I just don't know to what extent

2    it's publicly available.  You know, literally that Eligo

3    owned 100 RECs, and 58 were retired.  I don't know if

4    that's literally publicly available.

5         Q    Okay.

6         A    That's why I just don't know.

7         Q    Okay.

8         A    I mean, if I may, for completeness, but I

9    don't want to interrupt your flow --

10        Q    Let's try to --

11        A    Okay.

12        Q    Yeah.  If -- if you -- of course, if you want

13   to raise it with your counsel, you are more than

14   entitled to.

15             Do you have an opinion on this, when you said

16   the -- the -- the -- the provision that you quoted here.

17   So they're saying in no case greater than a

18   hundred percent.

19             Is that limitation, as you understand it, does

20   that applies to individual customer contracts, or is

21   that to the entire portfolio of mass market customers?

22        A    Um, I do not have an opinion one way, if it's

Page 314

1    portfolio-wide for the ESCO or individual contracts.  I

2    would note the first sentence says the minimum percent

3    offered by the ESCO.  That may imply -- this -- again,

4    I'm not offering a legal opinion, and just off the cuff,

5    for whatever that's worth.  That may imply a portfolio.

6            But then, therefore, any ESCO offering a

7    renewable product, so a product would be -- could be

8    interpreted as a particular product for -- that a

9    customer signs up for.  And so then maybe that wouldn't

10   be the portfolio, but those are my thoughts on that.

11       Q    Okay.  And so long story short, is your answer

12   there whether this is a portfolio requirement or a

13   customer-specific requirement, that you don't know?

14            MR. BLANKINSHIP:  Objection.  Asked and

15   answered.

16            THE WITNESS:  Long story short is I don't have

17   an opinion on it at this is a time.

18            BY MR. O'TOOLE:

19       Q    Okay.  At any point during -- during your

20   retention here, did you ask the New York Public Service

21   Commission for their understanding of this regulation?

22       A    No, I do not.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 315

1          Q     Okay.  So how would you be able to identify an

2     ESCO?  For example, you talked about searching for

3     ESCOs.

4                How would you be able to identify an ESCO that

5     offered a hundred percent green consistent with this

6     contract and then retire a hundred percent voluntary

7     RECs and the RES value, let's say, at 6 percent for

8     mandatory RECs?

9                How would you be able to identify that scope?

10               MR. BLANKINSHIP:  Objection.  Vague.  Outside

11    the scope of this report.  Compound.

12               THE WITNESS:  So one is that the ESCO made

13    that as part of its marketing or outreach.  So if they

14    just raise their hand and say, This is what we're doing,

15    come -- whatever, buy from us.  So that would be -- that

16    would be the way.

17               Another way is if we went ESCO by ESCO and if

18    there was publicly available data on what an ESCO's

19    portfolio, you know, maybe a cross, fixed and variable

20    or different products, maybe you can do an analysis,

21    but...

22

Frank A. Felder , Ph.D.                              January 8, 2026
Brous v. Eligo Energy, LLC

Page 316

1              BY MR. O'TOOLE:

2         Q    Do you know -- so, at one point, you said is

3     that if the ESCO were putting out a -- if the ESCO were

4     advertising, if we -- if you sign up with us, you're

5     going to get a hundred percent voluntary and 6 percent

6     RES.

7              Do you know if ESCOs are allowed to advertise

8     their RES REC percentage?

9              MR. BLANKINSHIP:  Objection.  Outside the

10    scope.

11             THE WITNESS:  That, I don't know.  But I can

12    imagine ESCO -- and I -- to be honest, I don't know if

13    they could just say, you know, We buy 110 percent RECs

14    for every kilowatt hour we use and not specifically say,

15    you know, the compliance amount.

16             BY MR. O'TOOLE:

17        Q    Okay.  So I'd like to ask you to turn to

18    page 20 of your -- of your original report.  And this is

19    in method 2.  We may need to do a bit of cleanup with

20    method 1, but you can -- you can turn on this now, and

21    we're looking at the REC percentages.

22             So you see at the top here, next to the REC

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 317

1    prices, it says "dollar per megawatt hour"?

2         A    Yes.

3         Q    Okay.  And so this is basically the cost to

4    purchase one REC.

5              Is that right?

6         A    That's right, which is the -- for

7    one megawatt hour --

8         Q    Okay.

9         A    -- of electricity, yes.

10        Q    And so the -- you got the prices listed in

11   this table.

12             Is that the prices for tier 1, LSE RECs, or

13   for ED voluntary RECs?

14        A    Tier 1.

15        Q    Okay.  And in your experience, do tier 1 RECs

16   and ED voluntary RECs cost the same thing?

17             MR. BLANKINSHIP:  Objection.  Outside the

18   scope.

19             You can answer.

20             THE WITNESS:  I was not able to get a good

21   data set on EDP RECs or voluntary RECs.

22

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 318

1              BY MR. O'TOOLE:

2          Q    Okay.

3          A    And in footnote, just to -- to a prior

4    question, footnote 32 says its tier 1 for the prices

5    that I use for table 1 and 2.

6              BY MR. O'TOOLE:

7          Q    Okay.  Okay.  And so your testimony was that

8    you weren't able to find good data comparing tier 1 RECs

9    and a voluntary RECs.

10             Is that right?

11             MR. BLANKINSHIP:  Objection.  Mischaracterizes

12   testimony.

13             THE WITNESS:  Or a data set on tier -- on

14   voluntary RECs.

15             BY MR. O'TOOLE:

16         Q    Okay.

17         A    Their prices.

18         Q    Have you ever bought a REC before?

19         A    As a residential customer in New Jersey, when

20   my load serving entity would have had to buy RECs on my

21   behalf.  I don't think I've actually purchased a REC

22   myself.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 319

1        Q    Okay.  And that was -- that was my question.
2             Have you ever retired a REC yourself?
3        A    Not in -- like, me individually, no.  Again,
4    my load serving entity would have done on my behalf.
5        Q    Okay.  And you've never worked with a broker
6    to -- to buy RECs for you on your behalf?
7        A    No.  I've not contacted a broker to buy RECs.
8        Q    Okay.  For these -- for this -- this table
9    here, it says "Tier 1 Quarterly Prices."
10            Are these the prices from NYGATS, or is this
11   the price from NYSERDA?
12       A    Um, NYSERDA.
13       Q    Okay.  And is it NYSERDA or NYGATS that
14   provides the pricing for the ED voluntary RECs?
15       A    I believe, subject to check, one may be able
16   to buy voluntary REC from NYSERDA.  I think at one
17   point, they were initiating a program, but I could be
18   wrong.  So the voluntary RECs may be purchased elsewhere
19   in the -- the PSC order we've been discussing that talks
20   about that.
21       Q    Okay.  And do you have an idea -- when you say
22   voluntary RECs can be purchased somewhere else, do you

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 320

1    have an idea of what percentage voluntary RECs are

2    purchased through NYSERDA as opposed to a third party?

3         A    No, I do not.

4         Q    Okay.  Do you know what a -- what ACP is in

5    this context?

6         A    Yes.

7         Q    Okay.  And what is that?

8         A    The alternative compliance payment, I believe

9    that's what you're referring to.

10        Q    That's right.

11             What is that?

12        A    So in order to induce load serving entities

13   where the -- the utility or the ESCO to buy RECs --

14   because otherwise they want to do it unless for a

15   marketing reason to attract a certain type of customers.

16   Well, at least for the compliance REC, a load serving

17   entity would have to pay the alternate compliance

18   payment if they did not buy and then retire a sufficient

19   amount of RECs over the time period, typically a

20   calendar year, with some banking.  So it -- in effect,

21   the shorthand is a -- the penalty or what you would pay

22   if a load-serving entity didn't meet its obligation for

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 321

 1    compliance RECs.

 2         Q    For compliance RECs.

 3              Is that -- and by "compliance RECs," you mean

 4    mandatory RECs?

 5         A    Yes.

 6         Q    Okay.  And does the ACP also apply to

 7    voluntary RECs?  Do you fail to meet your requirement

 8    for voluntary RECs?

 9         A    I would not think so because they're

10    voluntary.

11         Q    Well, okay, I supposed in the event that an

12    ESCO has made a representation to its customers and has

13    contracts that are approved by the New York PSC to

14    provide, let's say, a hundred percent renewable energy,

15    is there a situation where that -- where a regulator

16    would be looking to make sure that Eligo or whoever is,

17    in fact, purchasing the voluntary RECs that it said it

18    would?

19              MR. BLANKINSHIP:  Objection.  Outside the

20    scope.  Incomplete hypothetical.

21              THE WITNESS:  My understanding of your

22    hypothetical is that if an energy service company

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 322

1     volunteers to purchase more RECs than the compliance

2     RECs, and if they are subject by the Public Service

3     Commission to do so, and if that contract or regulations

4     requires them to pay a penalty, if they don't do so,

5     that then, yes, they would have to pay the penalty or an

6     additional price, and maybe that's called the ACP.

7                 BY MR. O'TOOLE:

8         Q    Okay.  And so if you had a record of Eligo's

9     EDP voluntary REC purchases, would you have used that to

10    calculate actual costs as opposed to the NYSERDA values

11    in table 2?

12                MR. BLANKINSHIP:  Objection.  Incomplete

13    hypothetical.

14                THE WITNESS:  Well, for method 1, I had the

15    data for the compliance RECs.  I'm sorry.  I'm not

16    trying to -- reask your question.

17                BY MR. O'TOOLE:

18        Q    Sure.

19        A    I mean --

20        Q    So basically version 1, when you're

21    calculating RECs, you're using estimates based on the

22    POWWR spreadsheet.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 323

1              Is that fair?

2       A    Yes.

3       Q    Okay.  For version 2, you're using this table

4    here, and that's data from NYSERDA for tier 1 RECs;

5    right?

6       A    Yes.

7       Q    My question, I guess, is if Eligo had produced

8    actual data of its actual costs and the costs that it

9    incurred to buy and retire those voluntary RECs, would

10   you have used that data instead of the tier 1 data that

11   you got from NYSERDA?

12            MR. BLANKINSHIP:  Same objections.

13            THE WITNESS:  I would have reviewed the data

14   to -- to see if it was reasonable, but, yes, if I had

15   specific data, then maybe I would have done an

16   additional calculation using that data.

17            BY MR. O'TOOLE:

18       Q    Okay.  And I guess just to -- to round out

19   where we are on method 1, you're basically looking at

20   utility service area, you're looking at load zone, and

21   you're looking at rate class, and then you came up with

22   a contract rate for customers based on that using the

Page 324

1      kind of -- the zero -- the parameters, the

2      configurations you set out earlier in your report, so

3      0 percent interest, 0 percent general interest rate.

4                  And you set -- or you've set a contract rate

5      for -- for every customer, for every method that's in

6      the 800,000 low invoice data; right?

7                  MR. BLANKINSHIP:  Objection.  Asked and

8      answered.  Compound.  Vague.

9                  You can answer.

10                 THE WITNESS:  I -- yes, for every invoice that

11     I considered.

12                 BY MR. O'TOOLE:

13         Q    Okay.  And you -- you have records of those in

14     your work papers?

15         A    I -- what's the "those"?  Yeah, I --

16         Q    Records of the contract rate for every

17     customer, for every month that you've calculated?

18         A    Okay.  Yes.

19         Q    Okay.  So you basically have -- what you've

20     received in discovery from the invoice data is basically

21     Eligo's rate, what it charged.  And then what you're

22     telling me is you've got a corresponding rate in your

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 325

1    work papers that basically is the contract rate.

2            What, I believe, Mr. Macan, is opining Eligo's

3    shift charge?

4        A    Yes, for each of the methods, of course, yes.

5        Q    Okay.  All right.  So to turn on to -- to

6    method 2 here, this is looking at NYISO wholemeal --

7    wholesale market prices.

8            You -- so you calculated the contract rate

9    here on a calendar month basis again; right?

10       A    Yes, I did.

11       Q    Okay.  And so in the complaint that we looked

12   at earlier, there were allegations regarding the market

13   supply costs.

14           Do you have any opinion as to the similarity

15   or the difference between the market supply costs that

16   are calculated in the complaint and the NYISO wholesale

17   market prices in method 2, in your opinion?

18           MR. BLANKINSHIP:  Objection.  Vague and

19   outside the scope of this report.

20           THE WITNESS:  I haven't made that comparison.

21           BY MR. O'TOOLE:

22       Q    Okay.  So I -- I want to understand a little

Page 326

1      bit better exactly what -- um, what values you're using

2      for -- for the wholesale market prices here.  If you can

3      take a look, I think it's Exhibit 7, to this deposition.

4      That's your materials considered.  About 40-something

5      pages long.

6               So, for example, let's start in -- let's start

7      in -- in Orange & Rockland.  If I wanted to find out

8      what the wholesale costs are, what item in your

9      materials considered would I go to?  What link would I

10     click on here?

11              MR. BLANKINSHIP:  Objection.  Form.

12              THE WITNESS:  I'd say if you go to page 13 --

13              BY MR. O'TOOLE:

14         Q    Okay.

15         A    -- oh, roughly in the middle of the page --

16         Q    Mm-hmm.

17         A    -- there's the New York Independent System

18     Operator Custom Reports.

19         Q    Okay.

20         A    And so the -- the NYISO has a data portal

21     where you can go in and access energy prices and

22     capacity prices.  And then --

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 327

```
 1        Q    So let's -- I'll stop you -- I'll stop you
 2    there.  I think I pulled this up here.
 3              MR. BLANKINSHIP:  I'm sorry.
 4              Were you done with your answer, Dr. Felder?
 5              THE WITNESS:  And then if you just go to the
 6    next page, you see a lot of links for the NYISO for
 7    printing, emission rates and on-site services.
 8              BY MR. O'TOOLE:
 9        Q    Okay.  And what you were referring to -- I can
10    try to make this bigger -- is these customer reports,
11    yeah?  Here in --
12        A    Yes.
13        Q    Okay.  So if I were to click on that, this
14    opens up something.
15        A    Yup.
16        Q    So there's -- there's not any data here;
17    right?  This is just a -- this is just a portal?
18              MR. BLANKINSHIP:  Objection.  Vague.
19              THE WITNESS:  I --
20              MR. BLANKINSHIP:  Mischaracterizes the
21    testimony.
22              THE WITNESS:  I mean, this portal, then you
```

Frank A. Felder , Ph.D.                     January 8, 2026
Brous v. Eligo Energy, LLC

Page 328

1      select the options to get the data that you want.

2                  BY MR. O'TOOLE:

3          Q      Okay.  But we don't know which options you

4      selected; right?

5                  MR. BLANKINSHIP:  Objection.  Vague.

6      Argumentative.

7                  THE WITNESS:  Well, I would -- I selected the

8      zones where -- the New York ISO zones, which you see on

9      the left, capital, central, et cetera, for all the zones

10     I had the -- I had invoice data for.  I selected the

11     dates for the period of the -- of the analysis.  In my

12     report, I say I used the day ahead marginal prices.  So

13     then that would give you a data set.

14         Q      Okay.  But the data set is -- it's not

15     attached anywhere in your report.

16                There's a link to an open the portal where you

17     can enter certain values and get certain values out;

18     right?

19                 MR. BLANKINSHIP:  Objection.  Lack of

20     foundation.  Vague.

21                 THE WITNESS:  In my experience, this is common

22     practice done.  All the ISOs have these portals.

Page 329

1    They're used thousands of times.  ESCOs and other

2    companies automate data retrieval.  They understand the

3    data set.  This is straightforward.  It's been data for

4    20 years or so.

5              BY MR. O'TOOLE:

6         Q    Okay.

7         A    There's nothing -- it's like using a phone

8    book, yellow pages when I was growing up -- or the

9    business yellow pages.

10        Q    The white pages?

11        A    Business yellow page -- it's -- or white

12   pages, or it's -- it's -- this is common -- this is --

13   and this is -- yeah, it's common practice.

14        Q    So common practice among people who've been in

15   the energy industry for 20 years?

16        A    Common practice for people who've been in the

17   energy industry for -- I mean, this is just

18   straightforward pooling.

19             So a junior analyst, in my experience, and I

20   trained them and would go to these portals or very

21   similar portals on EIA, they would enter the data se- --

22   you know, the configurations of the files, you -- of

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 330

1    what they want.

2           Because these files are so large, it makes

3    more sense instead of in the olden days, you have a

4    table, and then you couldn't select the data that you

5    want.  You can then, you know, design your -- let's say,

6    your table, to get the data that you want.

7           I'm not trying to -- yes, you have to make

8    selections.  I think there -- they would be obvious, in

9    my view, to someone who's been in the industry in a

10   relatively short amount of time.

11       Q    So if it's so easy and so straightforward, why

12   didn't you just attach these files or provide your work

13   papers to -- to us?

14       A    Because they would -- I just -- I described

15   what I did, and I -- I guess -- I thought someone can

16   reproduce it or get what they needed.

17       Q    Okay.  So we were -- you mentioned that there

18   would be other places we could look at here.

19           MR. BLANKINSHIP:  Objection.  Vague.

20           BY MR. O'TOOLE:

21       Q    So on the following page?

22       A    Yes, sorry.  Um, well, that portal was for

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 331

```
 1    energy.  There's a -- a similar portal for capacity
 2    information, and then there are a bunch of file links
 3    for -- that I use for ancillary services and
 4    transmission calls, and those are these various files
 5    that -- or links that start up on -- around page 14 --
 6         Q    Okay.
 7         A    -- and so forth.
 8         Q    Okay.  And so would it be like one of these,
 9    the New York Independent System Operator Transmission
10    Service charges?
11         A    Yes.
12         Q    Okay.  All right.  And so here, we can
13    basically see a spreadsheet, and it's got values; right?
14              MR. BLANKINSHIP:  Objection.
15              THE WITNESS:  Yes.
16              MR. BLANKINSHIP:  Vague --
17              BY MR. O'TOOLE:
18         Q    Okay?
19              MR. BLANKINSHIP:  -- as to "spreadsheet."
20              BY MR. O'TOOLE:
21         Q    Or table, I mean, call it what you want.
22              Okay.  So this -- I -- I think I clicked on
```

Page 332

1    this.  I'll do it again just for good measure.  This is

2    called NYISO T -- T -- transmission service charges, TSC

3    rates, and NTAC for the month of February 2018.

4         A    Yes.

5         Q    Okay.  So I guess which methods does this

6    correspond to and which service fields, and which load

7    zones have you used this for?

8              MR. BLANKINSHIP:  Objection.  Compound.

9              THE WITNESS:  So this is method 2, and then

10   the table has it "by utility," and then in footnote 34,

11   I provided the reference.

12             BY MR. O'TOOLE:

13        Q    Okay.  So which column did you use?

14        A    Can you make it larger, please?

15        Q    Sure.

16        A    That -- that column that says "NYCA, New York

17   Control Area."

18        Q    Okay.  And so you're saying NYCA stands for

19   New York Control Area?

20        A    Yes, I am.

21        Q    Okay.  And so there's -- what way would we

22   know -- know that you used this column and that you used

Page 333

1    this category without taking your deposition today and

2    asking you?

3        A    Because it wouldn't make sense to use the

4    other columns, which aren't in the New York Control

5    Area.

6        Q    Okay.  And so do you know where the Chateaugay

7    is?  HQ load Chateaugay is?

8        A    Can you make that bigger?  That's a

9    Hydro-Quebec line.  So it's a terminal -- terminal

10   Hydro-Quebec line into New York.

11       Q    Okay.

12       A    So everything to the right is external, but

13   it's connected to the New York Control Area.

14       Q    Okay.  And so your opinion is that someone

15   who's in the en- -- been in the energy industry for a

16   week should know these terms?

17       A    I said that regarding how to download files

18   from data sets because that's taught in -- we taught

19   that in graduate school and undergraduates.

20            For this, I would assume that someone even new

21   in the industry would know someone or be able to look up

22   HQ load Chateaugay -- I'm not saying the French

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

                                                      Page 334

 1    pronunciation right or whatever.  I would guess, I don't

 2    know for sure, there's probably maps that show these

 3    points, yeah, on the NYISO website, or if you just

 4    Googled it.  So I -- I think someone would be able to,

 5    in a relatively short time, even if their experience

 6    was, in fact, great, to figure out what's going on.

 7                   BY MR. O'TOOLE:

 8         Q    Okay.  So I can see that there's February 2018

 9    there.  And then we'll scroll down a little bit more.

10    And you've got for every month.  So I'm going to click

11    on December until we see something similar here.  And

12    keep on scrolling.

13                   And did you include this value for every month

14    in the -- in the -- in the periods that you were asked

15    to calculate rates for us?

16         A    Yes.

17         Q    Okay.

18         A    And then so try clicking on this one.  All

19    right.  Okay.  And then there's some other values here.

20    Cancel statements.

21                   If I wanted to look at wholesale costs, is

22    there any value here apart from the NYISO portal that we

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 335

1    were discussing at the beginning when we were looking at

2    this?  Is there any other link that I can click on that

3    would give me that?

4              MR. BLANKINSHIP:  Objection.  Vague.

5              BY MR. O'TOOLE:

6         Q    So, like, for example, this one I'm looking at

7    right, it says, "NYSEG Gas Incorporation, electric rates

8    only."

9              Would this be the kind of thing I click on for

10   the -- for the wholesale cost, or is this the kind of

11   thing I click on for the price to compare?

12        A    For the price to compare.

13        Q    Okay.  And so if we click on this, it gives an

14   error message.

15        A    Okay.

16        Q    So there's no way of knowing what you're

17   referencing here; right?

18             MR. BLANKINSHIP:  Objection.  Incomplete

19   hypothetical.

20             THE WITNESS:  The utilities change their links

21   frequently for price to compare surprisingly frequently.

22             So someone who's familiar with how to find and

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 336

1     tabulate utilities price compare would know that, and

2     then they would try a different search to -- to the

3     appropriate lengths.

4              BY MR. O'TOOLE:

5        Q    So you would have to conduct separate Google

6     search to try to calculate this out?

7        A    Um, you may have to -- either within the

8     website -- you know, the website may have a search

9     function.  The -- or you would have to do ano- --

10    another search, or you could go, and I did provide links

11    to the -- their tariffs, so you could do it.  So there's

12    several ways to get out that data.

13       Q    Okay.

14       A    It depends on the utility.

15       Q    Okay.  And how would the tariff tell you the

16    price to compare?

17       A    It may tell you -- well, the tariff would

18    define how the price to compare is calculated, and then

19    various numerical components would be filed, either as

20    part of the tariff or lease that are adjusted, and/or

21    there would be a data set on the utility's website.

22       Q    Okay.  All right.  Um, so you pulled the NYISO

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 337

1    wholesale market prices; correct?  Or someone on your

2    team did?

3            MR. BLANKINSHIP:  Objection.  Vague.

4            THE WITNESS:  That's correct.

5            BY MR. O'TOOLE:

6    Q    Okay.  And Mr. Macan didn't do that?

7         He relied on you; right?

8    A    That's correct.

9    Q    Okay.

10   A    I -- I believe so.  He may have done it

11   independently.  I mean...

12   Q    Okay.  And do you have any understanding of

13   why there was that division of responsibility, or were

14   you following objection of the counsel?

15           MR. BLANKINSHIP:  I'm just going to instruct

16   you not to disclose information that plaintiff's

17   attorneys told you.  If you have some understanding of

18   that outside of that, you can answer.

19           THE WITNESS:  I believe I've been asked this

20   question, and I believe my answer was I do not -- I

21   don't know why there was that division of labor.

22

Frank A. Felder , Ph.D.                                 January 8, 2026
Brous v. Eligo Energy, LLC

Page 338

```
 1              BY MR. O'TOOLE:

 2        Q    Okay.

 3        A    But we can check the record, if you'd like.

 4              BY MR. O'TOOLE:

 5        Q    Okay.  Let's keep going on this -- this

 6   Exhibit B.

 7              So if I'm looking at trying to get an idea --

 8   these supply service charges, what's what rate would

 9   that -- what method would that correspond to?

10        A    Method 4.

11        Q    Method -- so this is the price of compare?

12        A    Yes, it -- it's a component in the price of

13   compare.

14        Q    When you say the price of compare, do you --

15   are you referring to something different than the price

16   you compare?

17        A    I -- I meant to say price to --

18        Q    Oh.

19        A    -- compare.  I may have slurred my words.

20        Q    Okay.  All right.  And so this is for NIMO,

21   and it's a statement of supply service charges.

22              Do you see that?
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 339

```
 1        A    Yes.
 2        Q    Okay.  And here you've got the different ISO
 3   zones that we were talking about?
 4        A    Yes.
 5        Q    And you see the different -- the two different
 6   service classifications, 1 and 2?
 7        A    Yes.
 8        Q    Okay.  And so the build rate, the ES cost,
 9   you're saying that reflects the price to compare.
10             Is that right?
11        A    Can -- I'm sorry, can you make that bigger?
12        Q    Sure.
13        A    That is a component in the price to compare,
14   so I used SC1.
15        Q    Okay.  And that -- with that being a
16   component, what are the other components in the price to
17   compare?
18        A    So different utilities divide up differently,
19   and so I would have to check for this utility, but
20   conceptually there's a -- the price of the wholesale
21   electricity, energy capacity, ancillary services, and
22   then there's a merchant function charge, and I described
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 340

1      that in my rebuttal report.  And that -- it covers the

2      cost of the utility procuring that electricity, so

3      working capital, administrative costs, those type of

4      costs.

5              Then depending on the utility, they may or may

6      not incorporate the main- -- the compliance or mandatory

7      tax in the supply charge.  Some utilities do, and some

8      utilities have a separate charge.  Likewise, for the

9      ZEC, the zero emission credit, or -- and there can be

10     some other charges like that, maybe separate or

11     incorporated in the supply charge, depends on the

12     utility.

13             Then at -- the utility may have a supply

14     charge adjustment, that may be a separate ability to --

15     as two different market supply adjustment factors, or

16     some utilities -- I believe, that adjustment is included

17     in the merchant function charge.  And then -- so let's

18     see -- so I did the -- the electricity cost.  I did the

19     merchant function charge.  I did the -- the right to

20     clean energy stuff -- oh, then there are two other

21     components that are wrapped up in this, which is the

22     purchase of receivables.  That may end the cost of the

Page 341

1    utility issuing the invoice on behalf of the ESCO.

2              So those are factors.  One is the percentage

3    to purch- -- purchase of receivables, the other is a per

4    invoice charge -- per monthly invoice charge -- or

5    invoice charge.  And then those are, then, incorporated

6    by the utility in one of those elements that, to the

7    extents, they broke it out.

8         Q    Okay.  And this is -- and that's all from

9    method 4?

10        A    I just want to make sure I'm remembering the

11   methods correctly, but, yes, from method 4 where I'm

12   using the price to compare, yes.  Yes.

13        Q    Okay.  So let's take a look at your discussion

14   of method 4 in the report.  It's four paragraphs long;

15   right?

16              MR. BLANKINSHIP:  What page are you on?

17              MR. O'TOOLE:  Twenty-three.

18              THE WITNESS:  Yes, it's four paragraphs long,

19   62 to 65.

20              BY MR. O'TOOLE:

21        Q    And everything you said there, you're probably

22   speaking for at least a minute.  None of that is

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 342

1      included on this page, is it?

2               MR. BLANKINSHIP:  Objection.  Argumentative.

3      Mischaracterizes his testimony on the record.

4               THE WITNESS:  Not on this page, no.

5               BY MR. O'TOOLE:

6          Q    Okay.  And so you don't tell us how we would

7      find this supply service charge in those

8      four paragraphs, do you?

9               MR. BLANKINSHIP:  Same objections.

10              THE WITNESS:  Well, I do in the Appendix B.  I

11     provided the links that you've been clicking on.

12              BY MR. O'TOOLE:

13         Q    You provide the links, but you don't explain

14     that this is used to calculate this -- this six-sentence

15     section you have here.

16              MR. BLANKINSHIP:  There's no question pending.

17              BY MR. O'TOOLE:

18         Q    Do you?

19              MR. BLANKINSHIP:  Same objections.

20              THE WITNESS:  I did not describe probably one

21     of the most common data collection exercises done in the

22     energy service area for electricity, in my experience.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 343

1        That is correct.

2                BY MR. O'TOOLE:

3        Q    Okay.  And when you say one of the most common

4    processes done in the energy industry, you are -- that

5    was -- I mean, how many processes -- how many steps did

6    that have in -- in the testimony you gave?

7                MR. BLANKINSHIP:  Objection.

8                MR. O'TOOLE:  No, I tell you what, I'll

9    withdraw -- I'll withdraw the question.

10                BY MR. O'TOOLE:

11        Q    Um, for number 4, while we're there --

12    actually, before we move onto four, there are few things

13    I want to get back to on Exhibit B.  So if we were to

14    look at -- if we were to look at pages 35 to 37.

15        A    Yes.

16        Q    So you just used the statement of supply

17    charge to calculate the price to compare; correct?

18                MR. BLANKINSHIP:  Objection.  Asked and

19    answered.

20                THE WITNESS:  It was a piece of the price to

21    compare.

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 344

1          BY MR. O'TOOLE:

2          Q    Okay.  So you've given citations here to both

3     the price to compare, so the first full citation on this

4     page is Orange & Rockland Utilities, Inc. price to

5     compare.  And then you've also provided --

6          A    I'm sorry --

7          Q    -- and --

8          A    I -- I may be on the wrong page.

9          Q    Sure.

10         A    Just tell me what --

11         Q    This is 35.

12         A    Okay.

13         Q    It's the first complete link on that page.

14         A    Mm-hmm.

15         Q    So it says, "Orange & Rockland Utilities, Inc.

16    price to compare, dash, electric."  So if I click on

17    this -- but again, it's an invalid URL.

18              But how would I know whether I'm supposed to

19    use that price to compare value or whether I'm supposed

20    to use the statement of market supply charge, which is

21    below it?

22         A    The utility only posts -- although they may

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 345

1      update it, and then you would see the most recent one,

2      one set of data, so that's the whole point of the

3      posting this data publicly of the components of the

4      price to compare.  So they would only be effective at

5      one point in time, one price to compare -- or one -- or

6      supply charge in this example.

7           Q    That isn't really my question.

8                My question is, if you wanted to -- if we

9      wanted to try to recreate the calculations and we wanted

10     to determine what the price to compare in ORU was, would

11     we look at this statement of market supply charge or

12     we -- would we look at the price to compare?  So price

13     to compare is here, and statement of market supply

14     charge is here.

15          A    Can you pull up those files?

16          Q    Sure.  It's all -- I would try to pull up the

17     price to compare, but again, this link isn't working.

18          A    Okay.  If you did it either way, assuming the

19     links were available, you would get the same number.

20          Q    Okay.  And the links aren't available.

21               MR. BLANKINSHIP:  Objection.  Foundation.

22               THE WITNESS:  Yes, as I said, unfortunately,

Page 346

1    the utilities -- I mean, I don't know, as far as I know,

2    sometimes change their link, but they provide the data

3    even in a different place, or they update it, or -- so,

4    you know, it may take a little bit of -- of looking for

5    someone who hasn't looked for that utilities data, but

6    it's available.

7         Q    Okay.  And do you have records of what data

8    you used to calculate the price to compare in the --

9         A    Yes, I do.

10        Q    Okay.  And you didn't produce that to defense

11   counsel, did you?

12        A    I produced the links, but not the data --

13   well, I did -- um, in general, defense counsel may have

14   seen some of the files that may have contained or not

15   contained some of that information.  I don't want to get

16   into privilege, but from the vein of the conversation,

17   it doesn't sound like he saw that.  That's correct.

18        Q    Okay.  And again, Dr. Felder -- this is 39.

19   We're looking at RG&E electrical summary.  If I try to

20   click on that, again, the link isn't available.

21             You have a record of the values you used when

22   you access this, don't you?

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 347

1        A    That's correct.  Looks like RG&E may have

2    updated their website or -- or something, so you're

3    getting --

4        Q    Okay.

5        A    -- multiple links that aren't --

6        Q    And so --

7        A    -- active.

8        Q    So that one was RG&E.  So now when you try to

9    click on Orange & Rockland --

10       A    And --

11       Q    -- all the way.  There we go.  Click on the

12   price to compare, that's also an invalid URL --

13       A    Yeah.

14       Q    -- link.

15       A    Well, it redirects you.  I don't know if the

16   redirection helps or not.

17       Q    Did you know how to visit that page?  What are

18   you suggesting?  Or if we want to access this, what

19   would we do?

20       A    Well, what I do in my normal practice, I'll

21   look at the link, and it says "redirect."  First thing,

22   because there's a security issue, you know, a bug or

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 348

```
 1      whatever, a virus.  And then -- then if I feel

 2      comfortable with the link by looking at it, I would

 3      maybe click on it or do another Google search to try to

 4      find the data that I'm looking for.

 5          Q    When you say "click on the link," what do you

 6      mean?

 7          A    I -- I -- it's hard for me to see.

 8          Q    Okay.

 9          A    I thought it said it was redirect.  It --

10      it --

11          Q    So it says, "The previous page is not --

12          A    Oh, I'm sorry, it did not give a -- a -- a

13      link to go to.  It just will put you back.  I'm sorry.

14      I thought it had -- I couldn't see it.  I thought --

15      I -- I thought it had a -- a link where you should go

16      to, which would be the proper page.

17          Q    Okay.  That'd be great.  I'll tell you what,

18      so that, I think, is the end of method 2.

19               MR. O'TOOLE:  How about we'll take a quick

20      break here, and then we can turn to -- turn to some of

21      the rest, so...

22               MR. BLANKINSHIP:  I'd -- I'd --
```

Page 349

1              MR. O'TOOLE:  --

2              MR. BLANKINSHIP:  -- rather we didn't take a

3       break so we can try to get out of here and catch our

4       flights.

5              MR. O'TOOLE:  Okay.

6              MR. BLANKINSHIP:  -- though.  That's fine.

7              MR. O'TOOLE:  Why don't we go real quick?

8              MR. BLANKINSHIP:  Okay.

9              MR. O'TOOLE:  I just -- I need to --

10             MR. BLANKINSHIP:  Okay.  Yeah.

11             MR. O'TOOLE:  Yeah, yeah.

12             THE VIDEOGRAPHER:  This marks the end of Media

13      Unit Number 6.  Going off the record.  The time is

14      16:43 p.m.

15             (Short recess taken.)

16             THE VIDEOGRAPHER:  This marks the beginning of

17      Media Unit Number 7.  Going back on the record.  The

18      time is 16:50 p.m.

19             MR. O'TOOLE:  All right.  Thank you very much.

20             BY MR. O'TOOLE:

21        Q    Dr. Felder, before the break, we were talking

22      about method 4 and your calculation for the price to

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 350

1    compare.

2                So in paragraph 59, looking at -- excuse me,

3    in paragraph 65, you say you did not include any costs

4    associated with voluntary recs for this method.

5                I mean, what was your basis for not including

6    any costs associated with purchase of voluntary recs

7    with price to compare?

8         A    I was instructed by counsel.

9         Q    Okay.  But that would be a cost that Eligo

10   would have to bear.  You agree with that, yes?

11               MR. BLANKINSHIP:  Objection.  Vague.

12               THE WITNESS:  If they offered to supply more

13   than the compliance amount --

14               BY MR. O'TOOLE:

15        Q    Okay.

16        A    -- there would be some cost associated doing

17   that, which I addressed in my rebuttal report.

18        Q    And in terms of calculating the price to

19   compare, is it your opinion that there is one price to

20   compare per utility service area and load zone for each

21   month?

22               MR. BLANKINSHIP:  Objection.  Vague.  Lack of

Page 351

```
 1    foundation.

 2              THE WITNESS:  And right class, yes.

 3              BY MR. O'TOOLE:

 4         Q    Yeah.  Okay.  Okay.  Again, I've got -- I've

 5    got three copies of this one.  We will mark this as

 6    Exhibit 13.

 7              Is that correct?

 8              (Felder Deposition Exhibit 13 marked for

 9    identification.)

10              BY MR. O'TOOLE:

11         Q    Okay.  So utility and -- you -- you're welcome

12    to take a look at that.  That is your testimony, which

13    you probably recognize from -- from the Eligo

14    litigation.

15              Just let me ask you a few questions.  I want

16    to see if we -- if -- if -- if we need to get into your

17    testimony.

18              You would agree that utility can charge

19    different rates in different zones within that utility;

20    right?

21         A    Um, we're talking about the price to compare?

22         Q    Yeah -- um, yes.  Yeah, the price to compare
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 352

```
 1     for a utility service area is going to vary depending on

 2     the results.

 3          A    That's correct.

 4          Q    Okay.

 5          A    Yes.

 6          Q    And then even within a load zone, it's going

 7     to vary by REC classifications?

 8          A    Yes.

 9          Q    Okay.

10          A    Could vary by REC classification.

11          Q    And there's also a possibility that it could

12     vary depending on a customer's billing cycle; right?

13          A    Yes, and it depends on how a utility does

14     that.

15          Q    Okay.  And different utilities -- and by

16     utilities, you mean a service -- a utility service area.

17               Different utility service areas do it

18     differently in New York; right?

19               MR. BLANKINSHIP:  Objection.  Vague.

20               THE WITNESS:  Yes, yes.

21               BY MR. O'TOOLE:

22          Q    Okay.  And so I -- I'm struggling to
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 353

1    understand how you can conceive the price to compare.

2            If you have different rates within utility

3    areas, different rates within subzones, and different

4    rates depending on how -- how the billing cycle was

5    construed, what in your report -- this is in the

6    six sentences you have, in paragraph 62 through 65, what

7    tells us how you calculated this price to compare?

8        A    Well, the -- the customers are in different

9    utilities, which I know, and different zones within that

10   utility.  I used the SC1 rate class.  And then I went

11   and got the -- the various components of the price to

12   compare and determined the price to compare for that

13   specific customer, class, utility, and zone.

14       Q    Would the customers' price to compare vary

15   depending on what their precise billing cycle was?

16       A    It could for some utilities.

17       Q    Okay.  And so how do you control from that?

18       A    So what I did is -- and this is the case in

19   Con Ed where, sort of just to provide the context, which

20   perhaps you already know, maybe I mentioned during

21   this -- this morning, I don't know, the utilities read

22   meters every business day of a month.  They don't read

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 354

```
1      them all meters on the same day.  And they cycle through
2      this.
3              And so in Con Edison, they actually
4      calculate -- so if -- if my meter read is on April 1st,
5      they calculate the price to compare, the wholesale
6      prices, based on the prior 30 days or something --
7      billing cycle.  If my meter read is in April 15th, it
8      would be April 14th or 13th back 30 or so days.
9              And so what I did for -- I just considered the
10     average because I didn't have -- I just could not
11     implement.  And it's -- as you also saw in POWWR, you
12     know, each precise billing cycle be- -- for each
13     utility, because there could be potentially 22 --
14        Q    Uh-huh.
15        A    -- so in -- I constructed a -- a price for the
16     month based on the utility data that -- ba- -- and based
17     on their tariffs, which I have to do, and then use that.
18             BY MR. O'TOOLE:
19        Q    Okay.  And when you said "because they were
20     22," are you referring to 22 different billing cycles
21     within a month based on 22 business days?
22        A    Yeah, typically that's it or something like
```

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 355

1    that.

2         Q    And so I guess that's -- that's -- that's

3    one question I have, and maybe we can try to short

4    circuit some of this.

5              But when you look at the customer invoice

6    data, it reflects that diversity of billing invoice

7    dates, right?  So you're going to see people who start

8    on the first, second, third, yada, yada, all throughout

9    the months, and there are relatively few customers who

10   are starting on March 1st and who are ending on

11   March 31st, right?  It's going to be, I don't know,

12   March 10th to April 9th, just as an example.

13             So you've calculated contracts rates for

14   methods 1 through 4 based on a calendar month.  That's

15   what you testified so far.  So you're using the

16   spread- -- the POWWR spreadsheets to calculate what

17   contract rate for method 1 would have been for

18   March 2018.  Because my question to you is, how you're

19   subtracting that contract rate from Eligo's rate, but

20   these don't appear to be synchronized.  So you're

21   dealing with a calendar month as in what's being

22   subtracted as the contract rate, and then you're dealing

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 356

 1     with this messy data that's not synchronizing anyway.

 2              So what did you do to control for that?

 3              MR. BLANKINSHIP:  Objection.  Compound.

 4              THE WITNESS:  So it is synchronized to the

 5     month -- or linked to the month, and it's -- in my

 6     experience, it's a common practice to -- in order to

 7     avoid this tedious and not very informative, in general,

 8     of trying to link each customer to their particular

 9     billing cycle.

10              BY MR. O'TOOLE:

11       Q    So I guess help me understand.  You said it's

12     synchronized in a month.  Let's say you have a ca- -- a

13     client -- or not a client, you have a customer who has a

14     30-day billing period.  Fifteen of those days are in

15     January, 15 are in February.

16              How did you compare that person's rate, which

17     is straddled evenly across the two months to your

18     contract rates, which are calendar -- which are

19     calculated on a calendar months basis?

20       A    So what I did is, I -- I -- to address this

21     issue, I picked the invoice date.  So if the invoice

22     date was April 15, then I used the April price for that

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 357

1    customer.

2         Q    Okay.  And so you were -- to be clear, you

3    were using -- for the invoice date of April 15th, you

4    were using the POWWR spreadsheet that corresponded to

5    March 15th to calendar -- to calculate the April 15th

6    invoice date.

7              Is that right?

8         A    No.  I was using the April 15th -- sorry.  The

9    April forward price from POWWR.  So that would be from

10   the March 15th spreadsheet --

11        Q    Okay.

12        A    -- for two weeks or whatever to April, and

13   then those terms set the price for anyone whose invoice

14   was issued on -- in April, whether April 1st or

15   April 31st.

16        Q    Okay.  And so in the event of a customer who

17   had an April 1st invoice date, that would be presumably

18   for power that was consumed in March; correct?

19        A    That's correct.

20        Q    Okay.  And so if you were using the POWWR

21   estimate there, you would be looking at POWWR's

22   estimates of what the price of energy would be in April.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 358

1              Is that correct?

2         A    Yes, and this is a common practice in the

3    industry, as the utilities when they publish their price

4    to compare on -- on a monthly basis.

5         Q    Okay.  So basically, to deal -- okay.  So help

6    me understand -- understand this correctly.

7              To deal with the messiness of that billing

8    data, basically just look at the invoice data -- the

9    invoice date?

10             MR. BLANKINSHIP:  Objection.  Mischaracterizes

11   his testimony.

12             You can answer.

13             THE WITNESS:  That -- that's correct.  Then I

14   could pick another date and then do a comparison.  My

15   experience on this issue is it doesn't change the

16   numbers materially.

17             BY MR. O'TOOLE:

18        Q    Okay.  And what experience is that?

19        A    This issue has come up in other ESCO cases,

20   and I've done calculations.

21        Q    In which cases?

22        A    Okay.  So if -- I'm -- as you know, I'm bad

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 359

1    with names.  I remember the setting.  I -- I don't
2    remember the specific case.
3            Q    What was the setting?
4            A    It was a mediation setting.
5            Q    Okay.  Do you remember what year?
6            A    It was, um, at least five years ago, maybe
7    five to ten years ago, but, no, I do not.
8            Q    Okay.  All right.  So before we -- before we
9    wrap up here, I want to return to how you're using the
10   POWWR spreadsheet in method 1.
11           Um, you've listed in your materials
12   consider -- that you considered your deposition of Scott
13   Glotzbach as part of prepare- -- preparing your report;
14   correct?
15           A    Yeah, let me double check that.
16           What was the last name?
17           Q    That's Glotzbach, B-A-C-H?
18           A    Glotzbach.  Yes, I'm sorry, I misheard you.
19   Yes.
20           Q    Okay.  Do you know who Mr. Glotzbach was,
21   slash, is?
22           A    An employee of -- of your client.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 360

1      Q     Okay.  Do you know his title?

2      A     Not sitting here, no.

3      Q     Do you know what kind of work he did more

4      generally, even if you don't know his title?

5      A     No.  Not sitting here, no.

6      Q     Okay.  Do you have any opinion as to whether

7      he was involved in variable rates setting?

8      A     That, I do not know one way or the other.

9      Q     Okay.  Do you know whether Eligo ever used the

10     variable with cap setting on the POWWR sheets?

11     A     I think -- I -- I don't know one way or the

12     other.

13     Q     Okay.  Great.

14            MR. O'TOOLE:  What exhibit are we up to, this

15     one?

16            THE REPORTER:  Fourteen.

17            MR. O'TOOLE:  Fourteen.  Okay.

18            Here we go.

19            THE WITNESS:  Sorry.

20            (Felder Deposition Exhibit 14 marked for

21     identification.)

22

Frank A. Felder , Ph.D.                      January 8, 2026
Brous v. Eligo Energy, LLC

Page 361

1              BY MR. O'TOOLE:

2        Q    And you consider this deposition transcript in

3    forming your opinions, didn't you, Dr. Felder?

4        A    That is correct.

5        Q    Okay.  And if you turn to page 205 with me.

6        A    Okay.

7        Q    All right.  So Mr. Blankinship asked him, and

8    this is beginning of line 13, "And when" -- "so when

9    you're setting rates for fixed prices, is that what you

10   choose?"

11             He says, "I would select fixed prices, yes.

12             "Okay.  Do you know what fixed DEM PS3 refers

13   to?

14             "No, I don't.

15             "Do you know what variable with cap refers to?

16             "No, I don't."

17             Do you see that testimony?

18        A    Yes.

19        Q    Okay.  And so it's safe to say that Eligo's

20   employees don't know what the variable with cap product

21   type is; correct?

22             MR. BLANKINSHIP:  Objection.  Vague.  And

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 362

1      mischaracterizes testimony.  Lack of foundation.

2              THE WITNESS:  I think you said employees of,

3      Mr. -- the witness does not.

4              BY MR. O'TOOLE:

5          Q    Okay.  And do you know if anyone else at Eligo

6      who knows what the variable with cap product type means?

7          A    I -- no, I do not.

8          Q    Do you know what any other witnesses opined on

9      how to use these POWWR spreadsheets?

10         A    Um, well, I do cite Lapointe, in paragraph 27,

11     and Fille, but --

12         Q    Did you --

13         A    -- on the -- on the proposition of the --

14     POWWR's used to determine its estimated cost of

15     supplying electricity.

16         Q    Okay.  Do you know who Mr. Lapointe and

17     Mr. Fille are?

18         A    Employees of POWWR, but no.

19         Q    Okay.  And do you have any understanding of

20     whether they know how the POWWR spreadsheets work?

21         A    Only from the pages I cited in my report.

22         Q    Okay.  Do you have any understanding of how

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 363

1    Eligo consider individualized factors like history,

2    usage of power, capacity, or transmission tags when it

3    was setting its rates?

4              MR. O'TOOLE:  Objection.  Vague.  Compound and

5    outside the scope of his testimony.

6              THE WITNESS:  Nothing beyond -- maybe some of

7    those issues were touched upon in Dr. Aron's report.

8              BY MR. O'TOOLE:

9         Q    Okay.

10        A    But I don't think she got into transmission

11   tags, but -- but only to that and in passing --

12        Q    Okay.

13        A    -- in my -- I don't want to say understanding,

14   but my exposure to that topic.

15        Q    Okay.  And so was -- was it your understanding

16   when Eligo was sending rates, it didn't consider things

17   like capacity tags or transmission tags or historical

18   usage?

19             MR. BLANKINSHIP:  Objection.  Compound.

20   Outside the scope of this testimony.

21             THE WITNESS:  I did not form an opinion about

22   what Eligo was thinking about or not thinking about when

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 364

1      forming rates.  I just implemented the four methods that

2      we've been discussing.

3           Q    Okay.  And so if Eligo were to implement those

4      on the POWWR spreadsheet, if it were to have included

5      ICAP and NITS and historical usage, that wouldn't have

6      affected the calculations that you dealt with?

7               MR. BLANKINSHIP:  Objection.  Compound.

8      Outside the scope of his testimony.

9               THE WITNESS:  So I did get capacity ICAP from

10     POWWR.  I did do NITS.  We wa- -- walked through that.

11              What were the other ones?

12              BY MR. O'TOOLE:

13          Q    Historical usage.

14          A    Well, that would have been reflected in the

15     variable rate that I was comparing my contract rate to,

16     but not in my contract rate.  Remember, I'm comparing

17     Eligo's variable rate to a contract rate that varies by

18     different methods.  So historical usage was not a factor

19     in -- when I calculated the contract rate under any of

20     the methods --

21          Q    Okay.

22          A    -- historical usage of the customer.

Frank A. Felder , Ph.D.                       January 8, 2026
Brous v. Eligo Energy, LLC

Page 365

```
 1        Q    Mm-hmm.

 2             And so you -- you didn't consider the

 3   historical usage of the customer.

 4             You didn't consider whether any of these

 5   customers was previously a customer of the utility or

 6   energy supply, did you?

 7             MR. BLANKINSHIP:  Objection.  Asked and

 8   answered.

 9             THE WITNESS:  Yeah, I believe you asked that

10   question earlier, but that is correct.

11             BY MR. O'TOOLE:

12        Q    Okay.  And it's possible that Eligo's

13   customers could be paying contract rates in issue, and

14   they could still be saving compared to the previous

15   supplier; right?

16             MR. BLANKINSHIP:  Objection.  Outside the

17   scope of his testimony.

18             THE WITNESS:  And the reverse is also

19   possible, that --

20             BY MR. O'TOOLE:

21        Q    Okay.

22        A    -- they could be paying more or the same.
```

Page 366

1          Those are the three possibilities.

2          Q    Okay.  So, Dr. Felder, you've long believed

3     that electricity isn't a market commodity.  Instead,

4     it's a good that should be made available based upon

5     need instead of willingness to pay, haven't you?

6                MR. BLANKINSHIP:  Objection.  Outside of the

7     scope.  Lack of foundation.

8                THE WITNESS:  I think you're probably quoting

9     from something.  So if you could provide the -- the

10    context because that quote matters.  Typically, what I

11    say is that regulators believe that electricity is not a

12    commodity -- or only a commodity; and therefore, they

13    are very concerned about affordability because it's a

14    necessity in a modern society.  So that's the statement.

15               So it's not me saying I believe that.  It's me

16    saying many policy makers believe that, and then

17    typically I would discuss the implications of that.

18               BY MR. O'TOOLE:

19          Q    So it's -- I guess my question to you is, do

20    you believe that?

21               MR. BLANKINSHIP:  Same objections.  Outside of

22    the scope.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 367

1              THE WITNESS:  I do believe that electricity is

2       a necessity in modern society, and I believe that

3       policies should accommodate that, whether they do it

4       through their means to do it outside of electricity

5       markets so you could have a competitive electricity

6       market, but account for those affordability issues,

7       which almost every State does in a variety of ways.

8                   BY MR. O'TOOLE:

9       Q    So my question, which I haven't heard an

10      answer to yet, Dr. Felder, is, do you believe that

11      electricity should be made available based upon need and

12      instead of willingness to pay?

13                  MR. BLANKINSHIP:  Objection.  Asked and

14      answered.  Outside the scope of his report.

15                  THE WITNESS:  I believe it should be public

16      policies that address the fact that not all customers

17      can afford to pay electricity prices.

18                  BY MR. O'TOOLE:

19      Q    And who are those -- who determines those

20      policies?

21                  MR. BLANKINSHIP:  Same objections.

22                  THE WITNESS:  The state and federal policy

Page 368

1    does.

2             BY MR. O'TOOLE:

3        Q    The -- two more exhibits.

4             THE REPORTER:  Thank you.  Yes.

5             THE WITNESS:  Do you have a copy?

6             BY MR. O'TOOLE:

7        Q    Yeah, I think I should.

8        A    If not, we can bring this --

9        Q    I got it.

10       A    -- exhibit back.

11       Q    I got it.

12            (Felder Deposition Exhibit 15 marked for

13    identification.)

14            BY MR. O'TOOLE:

15       Q    And this is a paper that you have written,

16    Exhibit 15, entitled "Residential Energy Supply Market."

17            Is that correct?

18       A    I'm a co-author, yes.

19       Q    Okay.  If you turn to the last page.

20       A    Okay.

21       Q    In your conclusion section, you say,

22    "Moreover" -- do you see that on the -- on the

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 369

1      right-hand column about five lines down?

2          A     Let me see.  Yes, I do.

3          Q     So you say, "Moreover, electricity is a

4      particular concern because it is an essential item, what

5      economists refer to as a merit good and also one that

6      relates to public safety and health."

7                That's your opinion that you are offering

8      here, isn't it, Dr. Felder?

9                MR. BLANKINSHIP:  Objection.  Outside the

10     scope of his re- -- report.

11               THE WITNESS:  Um, I -- yes, but it's in the

12     context of what I just described in my prior answer.

13     So, yes, I said -- I just said electricity was an

14     essential item, and it relates to public -- I didn't

15     mention public safety and health, but that's pretty

16     obvious, so...

17               BY MR. O'TOOLE:

18         Q     And in the footnote, you go on to say that

19     it's commodity that should be made available based upon

20     need instead of willingness to pay; correct?

21               MR. BLANKINSHIP:  Same objection.  Outside the

22     scope of his report.

Page 370

```
1           THE WITNESS:  I'm defining what a merit good
2      is.
3           BY MR. O'TOOLE:
4      Q    And your understanding, therefore, is that all
5      merit goods are commodities that should be made
6      available based upon need instead of willingness to pay?
7           MR. O'TOOLE:  Objection.  Asked and answered.
8      Outside the scope of his report.
9           THE WITNESS:  The purpose of this paragraph in
10     this sentence -- although I do believe electricity is a
11     necessity, a merit good is that given that it has public
12     policy implications, including the design of electricity
13     markets.
14          BY MR. O'TOOLE:
15     Q    Okay.  But you don't think price and markets
16     should determine at all?
17          MR. BLANKINSHIP:  Objection.  Mischaracterizes
18     his testimony.  Lack of foundation.  Outside the scope.
19     Argumentative.
20          THE WITNESS:  You said "at all."
21          BY MR. O'TOOLE:
22     Q    Mm-hmm.
```

Page 371

1      A    Remember, in my prior answer, I said there may

2    be means -- or there are means that many states --

3    almost all states take to mitigate this.  So, for

4    example, you could price in New York electricity based

5    on market forces, and during a hot summer day, it could

6    go very high, and some people, unfortunately, won't be

7    able to afford it.

8            But you could have policies where you don't

9    disconnect someone if they don't pay their bill.  The

10   price is still rising based on market conditions, that

11   maybe it's due to market power, or maybe it's due to

12   scarcity, but the price is rising.  But there are public

13   policies that address that circumstance, either by not

14   disconnecting customers when it's really cold or hot,

15   air conditioning centers, low income support, energy

16   efficiency programs for low income.

17           BY MR. O'TOOLE:

18      Q    Okay.  And so -- and in terms of pricing, do

19   you think similar measures are necessary?

20           MR. BLANKINSHIP:  Objection.  Vague.  Outside

21   the scope of his testimony.

22           THE WITNESS:  There are -- so economists go

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 372

1    through -- yes, there are situations in which if the

2    market is not performing efficiently, then there may be

3    needs for limiting prices among other measures.

4              BY MR. O'TOOLE:

5        Q    You wrote this in -- you write this with

6    Susan Baldwin in early 2019.  This article wasn't cited

7    by the New York Public Service Commission -- or

8    considered by the New York Public Service Commission as

9    part of the research or was it?

10              MR. BLANKINSHIP:  Objection.  Lack of

11    foundation.  Outside the scope of his testimony.

12              THE WITNESS:  I don't know either way.

13              BY MR. O'TOOLE:

14        Q    Okay.

15        A    But you -- feel free to cite it.

16        Q    Cite what?

17        A    Feel free to cite it even if you disagree with

18    it because I always like citations.

19        Q    Oh, okay.  I think -- I think we just have one

20    last exhibit here.

21              Okay.  And this is just a --

22              THE REPORTER:  Thank you.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 373

1           MR. BLANKINSHIP:  What -- what's the number?

2      Do you have it on there?  Oh, okay.

3           MR. O'TOOLE:  It's Ex- -- Exhibit --

4      Exhibit 16.

5           (Felder Deposition Exhibit 16 marked for

6      identification.)

7           BY MR. O'TOOLE:

8      Q    So, Dr. Felder, this is one of the documents

9      that's on your materials exhibit list.  Sitting here

10     today, we've been through this, but you don't have an

11     understanding as to what -- or do you have an

12     understanding as to what month this is calculated for

13     based on the -- the title here?

14          MR. BLANKINSHIP:  Objection.  Vague.

15          THE WITNESS:  I --

16          BY MR. O'TOOLE:

17     Q    And so I'm not able to scroll -- to -- to zoom

18     in on that part.  If you want to go closer to the TV,

19     you should feel free to.

20     A    And what --

21     Q    Sure.

22          So if you look at the top where my cursor is,

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

Page 374

```
 1      this is the name of the document as it appears in the

 2      production.

 3            A     Sorry.  I'll play this.  Okay.

 4            Q     Okay.  So you see this is titled "Group of 3

 5      ComEd."

 6                  Do you see that?

 7            A     Yes.

 8            Q     What does "group of 3" mean?

 9            A     I don't know.

10            Q     Okay.  What -- do you know what ComEd is?

11            A     ComEd, is it C-O-M?

12            Q     Yeah.

13            A     Commonwealth Edison.

14            Q     Okay.  And what is that?

15            A     That's a utility in Illinois.

16            Q     Okay.  And then you see a date next to it,

17      6/16/2021?

18            A     Yes.

19            Q     Okay.  So am I right in thinking that you used

20      this spreadsheet to calculate the July 2021 rates for

21      method 1?

22            A     I would have used what I described, but I --
```

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 375

1      if I did use this, I would have to check, but I would

2      have, then, adjusted the parameters for New York and the

3      appropriate --

4              Q     Okay.  Fair, fair.

5                    And we can run through those real quick.  I'm

6      just going to take a quick look at your report to make

7      sure that we're following all the steps that you

8      followed in paragraph 37.

9                    So -- okay.  First thing, we changed the

10     inflation rate, and I can zoom in on this for you,

11     Dr. Felder.

12             A     Okay.

13             Q     You changed that to zero.  The next item must

14     be changed to general interest rates to zero.  Then we

15     go to the next page, the summary page.  Zoom in here.

16                    For the start date -- because this is a

17     January -- oh, sorry, excuse me, mid-June 2021 file, we

18     want to use July 1st?

19             A     Yup.

20             Q     For product type, we use variable cap.

21                    For state, we use New York.

22                    Utility, again, let's use Ms. Schuster's RG&E.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 376

1              You remember that her service classification
2      used was C --SC1?
3          A    Yup, yup.
4          Q    Okay.  Load zone, there's only one, Genesee.
5      Weather zone, zero.  Municipality, all others.  And then
6      we change this to one month.
7              Okay.  And we also set the gross margin target
8      to zero.
9              Is that correct?
10         A    Yes.
11         Q    Okay.  And you see the energy charge here is
12     $14,000 per megawatt hour.
13             Okay.  That can't be right, can it?
14         A    No.
15         Q    Okay.  And that doesn't look reasonable?
16         A    No.
17         Q    Okay.  Did this example come up during the
18     course of your calculations?
19         A    I don't explicitly recall, but it would have,
20     because it would have just blown up the damage and...
21         Q    Okay.  Well, hang on.
22             Would it have blown up the --

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 377

1      A    Right.  Let me see.  The energy charge -- um,

2    yeah, it did.  So -- well, first of all, if you go to

3    the subcomponents for energy capacity, remember, we did

4    this earlier, those columns?  So if I -- what it would

5    have done is it would have set a whole bunch of

6    customers.  If I did use 14,000 as the contract rate,

7    their damages would have been zero; and therefore, I --

8    my estimate of damages would be too little --

9      Q    Okay.

10     A    -- if that occurred.

11     Q    But you don't have an understanding of why

12   it's showing up $14,000 a megawatt hour, do you?

13     A    No, I do not.  And I believe too that, as we

14   discussed, we had various ways to just check.  So we

15   were comparing Eligo's rate with NYISO.

16          So, for example, the damages from my method,

17   the PTC method 4, method 2 which is NYISO, and method 1

18   are in line.  So to the extent that there was an error

19   like this, either it was caught because of the

20   comparisons we were making and the quality checks, or it

21   was immaterial.

22          MR. O'TOOLE:  If we can go off the record, I

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 378

1    think that's everything that I have.  Let me just go

2    over my outline to make sure that I'm not --

3                 THE VIDEOGRAPHER:  This marks the end of Media

4    Unit Number 7.  Going off the record.  The time is

5    17:22 p.m.

6                 (Short recess taken.)

7                 THE VIDEOGRAPHER:  This marks the beginning of

8    Media Unit Number 8.  Going back on the record.  The

9    time is 17:33 p.m.

10                MR. O'TOOLE:  So thanks very much for your

11   time today, Dr. Felder.  No further questions for me.

12                THE WITNESS:  Thank you very much.  I hope you

13   have a safe trip back.

14                MR. O'TOOLE:  Likewise.

15                MR. BLANKINSHIP:  Dr. Felder, I do have a few

16   questions.

17                          EXAMINATION

18                BY MR. BLANKINSHIP:

19        Q    In your report, you described every step of

20   the calculations you used in all of the methods;

21   correct?

22        A    Yes, I do.

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 379

1       Q    You didn't leave any steps out?

2       A    No, I did not.

3            MR. O'TOOLE:  Form.

4            BY MR. BLANKINSHIP:

5       Q    So someone could just take your report and the

6    data that you identified and make it recreate your

7    results; correct?

8            MR. O'TOOLE:  Same objection.

9            THE WITNESS:  Yes, I -- I think someone who's

10   familiar with the industry doesn't have to be extensive,

11   but -- and what I did was -- it is common practice based

12   on my experience over the years of observing other ESCOs

13   and utility commissions and analysts doing similar

14   calculations.  I've also taught courses for professional

15   development that involve a lot of the topics we talked

16   about today and how one would go about both

17   understanding those concepts and then doing analysis and

18   data analysis, including that.

19           BY MR. BLANKINSHIP:

20      Q    Okay.  Do you recall a discussion you had with

21   Mr. O'Toole about how counsel asked you to assume --

22   sorry, about how counsel instructed you not to credit

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 380

```
 1      Eligo for those instances in which the Eligo rate was

 2      actually lower than the contract rate?

 3           A    Yes, I do.

 4           Q    Okay.  And if you were instructed to credit

 5      Eligo for those time periods, you could just recalculate

 6      everything; correct?

 7                MR. O'TOOLE:  Objection to form.

 8                THE WITNESS:  That's correct.  Yes.

 9                BY MR. BLANKINSHIP:

10           Q    And it'd be pretty easy; right?

11                MR. O'TOOLE:  Objection to form.

12                THE WITNESS:  That's -- that's correct.

13                BY MR. BLANKINSHIP:

14           Q    Okay.  I'd like to take a look at your

15      Exhibit 6 -- no, I'm sorry, Exhibit 8, which is the --

16      oh, I'm sorry, no, Exhibit 7, which is your list of

17      materials list considered.

18                Do you see on the back, the very last page,

19      there's a list of Bates numbers?

20           A    Yes, I do, on page 44.

21           Q    Okay.  Yeah.  Thanks.

22                If I -- if I were -- if I were to remind you
```

Frank A. Felder , Ph.D.                         January 8, 2026
Brous v. Eligo Energy, LLC

Page 381

1    that every POWWR report that you used in your method 1

2    analysis was listed on that page, would that refresh

3    your recollection about Mr. O'Toole's answer -- question

4    when he asked you whether or not you listed by Bates

5    number all the POWWR reports that you used?

6              MR. O'TOOLE:  Objection to form.

7    Mischaracterizes the record.

8              THE WITNESS:  If it is the case, those are the

9    Bates numbers to the POWWR files, I would want to double

10   check that they match the criteria, but then, yes, I

11   was -- I was incorrect.  They did provide the Bates

12   numbers for that.

13             BY MR. BLANKINSHIP:

14        Q    Okay.

15        A    But not to -- in the sort of tools defense,

16   not exactly in the date-month format that I did in other

17   cases.

18        Q    Okay.  But having had your memory ref- --

19   well, that's fine.  That -- that's fine.

20        A    The date would be obvious by opening up the

21   file, so...

22        Q    Great.  Thank you.

Page 382

1          Do you recall the discussion you had with --

2     with Mr. O'Toole about the que- -- the issue about the

3     relationship between meter read date and the monthly

4     calculations that you did?

5          A     Yes, I did.

6          Q     Okay.  Ha- -- have -- have there ever been

7     instances in the past where you have gone through the

8     exercise of lining up customers' meter reading date and

9     then apportioning their cost for that particular month

10    based upon the -- that meter reading date?

11              MR. O'TOOLE:  Objection.

12              BY MR. BLANKINSHIP:

13         Q    That's a terrible -- let me try that again.

14              In the past, have you gone through the

15    exercise where if a customer's meter reading date was on

16    the first of the month but was sometime in the middle,

17    that you apportioned the cost associated with serving

18    that customer for a month based upon the number of days

19    before and after that meter reading date?

20              MR. O'TOOLE:  Objection.

21              THE WITNESS:  Yes.  I -- I -- yeah.  So in

22    your example -- and I mentioned this, that I -- I

Page 383

1    believe, in my direct testimony, that I've done -- not

2    at this level of detail, so, for example, on that, I

3    would use the price 50 percent in April, or 15 days

4    equivalent in April, and 15 in May, and I -- so I have

5    done that.  And as I mentioned in my direct -- I don't

6    know -- the first part before talking to you that on

7    this issue here right now, that it's not -- my

8    experience is nonmaterial.

9              BY MR. BLANKINSHIP:

10       Q    And -- and what do you mean by "material"?

11       A    It doesn't affect the answer in a -- a

12   meaningful way, and it could increase or lower damages.

13   Basically, underneath, it's the law of averages that's

14   working, so up -- electricity prices go up and come

15   down.  And some people are, you know, 1 through 30, some

16   are days 2 through 1 of the next month.  And so just

17   this rolling effect, given that prices are going up and

18   down, doesn't materially affect the -- the damage

19   calculations.

20       Q    Okay.  So you -- is it fair to say that if

21   there -- if there were a discrepancy between the

22   different ways to calculate that we just discussed,

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 384

1     you -- that would -- that would even out over time?

2          A    That's been --

3               MR. O'TOOLE:  Objection to form.

4               THE WITNESS:  Historically, that's been my

5     experience, albeit it's an empirical issue on each data

6     set, to what extent it would move them up or down and

7     then to what extent how much.

8               BY MR. BLANKINSHIP:

9          Q    That's something Dr. Aron could have done.

10    She had a criticism about your report; right?

11         A    I suspect Dr. Aron can do a lot more than I

12    could.

13         Q    Okay.

14              MR. BLANKINSHIP:  All right.  That's all I

15    have.  Thank you.

16              MR. O'TOOLE:  I have just one -- one question

17    on redirect.

18                    FURTHER EXAMINATION

19              BY MR. O'TOOLE:

20         Q    You haven't done empirical analysis to

21    determine if it would, in fact, be the case that the law

22    of averages means that there's no real difference on

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 385

1    this data set, have you?

2              MR. BLANKINSHIP:  Objection.  Asked and

3    answered.

4              THE WITNESS:  That's correct, but I've used --

5    when I've done it, now that I recall, for New York,

6    and -- but that's correct.  I've not done it on this

7    data set.

8              MR. O'TOOLE:  Thanks very much.  That's all I

9    have for today.  Thanks so much for your time,

10   Dr. Felder.

11             THE WITNESS:  Thank you so much.

12             MR. O'TOOLE:  I'm going to talk to you --

13             THE VIDEOGRAPHER:  One --

14             THE WITNESS:  Oh.

15             THE VIDEOGRAPHER:  Does anyone have any

16   questions?

17             MR. O'TOOLE:  No, they don't have a question.

18   Well, I'm speaking for --

19             MR. BLANKINSHIP:  Yeah.

20             MR. O'TOOLE:  Yeah.  Nobody from our side has

21   any questions.

22             MR. BLANKINSHIP:  I -- I think we're good on

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 386

1     our --

2              THE WITNESS:  I appreciate that.

3              THE VIDEOGRAPHER:  Thank you.

4              THE WITNESS:  Thank you.

5              THE VIDEOGRAPHER:  Thank you very much.

6              We are off the record at 17:40 p.m.  This

7     concludes today's testimony given by Dr. Frank Felder.

8     The total number of media units used is eight and will

9     be retained by Veritext.

10              (Deposition concluded at 5:40 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

Frank A. Felder , Ph.D.                          January 8, 2026
Brous v. Eligo Energy, LLC

                                                    Page 387

1              CERTIFICATE OF COURT REPORTER
2                   I, JEANINN ALEXIS, do hereby
3        certify that the proceedings were recorded
4        by me stenographically and electronically at
5        the time and place mentioned on the cover
6        sheet thereof, and, thereafter, transcribed;
7        that said hearing is a true record of the
8        statements made; that I am neither counsel
9        for, related to, nor employed by any of the
10       parties to this proceeding;
11                  And further, that I am not
12       financially or otherwise interested in the
13       outcome of this matter.
14                  As Witnessed by my hand and
15       signature as indicated below.
16
17
18
19
                 JEANINN ALEXIS
20               Certified Court Reporter
21
22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 388

1    DATE SENT:  January 21, 2026
2                    ERRATA SHEET
     Job No. ATL7743482
3    VIDEO DEPOSITION OF FRANK A. FELDER, PH.D.
4         DATE:  January 8, 2026
5         CASE:  Brous v. Eligo Energy, LLC
6    INSTRUCTIONS:
7    1.  Please read the transcript of your
         deposition and make note of any
8        corrections or changes on this Errata
         Sheet.
9
10   2.  Indicate below general reason for
         change, such as:
             A.  To correct stenographic error.
11           B.  To clarify record.
             C.  To conform to the facts.
12
13   3.  Sign the Certificate of Deponent page.
14   4.  Within 30 days of the Date Sent, return
         this Errata Sheet, and signed
         Certificate of Deponent, to the address
15       listed below AND to all Counsel listed
         on the Appearances page.
16
17   PAGE #   LINE #   CORRECTION          REASON

18   _____

19   _____

20   _____

21   _____
22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 389

1                          ERRATA SHEET

   Job No. ATL7743482

2  VIDEO DEPOSITION OF FRANK A. FELDER, PH.D.:

3  PAGE #   LINE #   CORRECTION              REASON

4  _____

5  _____

6  _____

7  _____

8  _____

9  _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 _____

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 390

1              CERTIFICATE OF DEPONENT

2              I hereby certify that I have read

3    and examined the foregoing transcript and:

4    (Check one of the following)

5              (  )  The same is a true and

6    accurate record of the testimony given by

7    me, and I have made no corrections to this

8    transcript.

9                    -OR-

10             (  )  Any additions or

11   corrections that I feel are necessary, I

12   have listed on the attached Errata Sheet.

13             As witness my hand and signature

14   this _____ day of _____.

15

16                  - - - - - - - - - - - - - - -

                   FRANK A. FELDER, PH.D.

17

18

19

20

21

22

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

Page 391

1    GREG BLANKINSHIP, ESQUIRE

2    gblankinship@fbfglaw.com

3                         January 21, 2026

4    RE: Brous v. Eligo Energy, LLC

5         1/8/2026, Frank A. Felder, Ph.D. (#7743482)

6         The above-referenced transcript is available for

7    review.

8         Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12        The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   cs-southeast@veritext.com

16    Return completed errata within 30 days from

17   receipt of testimony.

18     If the witness fails to do so within the time

19   allotted, the transcript may be used as if signed.

20

            Yours,

21

            Veritext Legal Solutions

22

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[& - 15th]**

Page 1

| & | | | |
|---|---|---|---|
| **&** 2:4 6:13 91:14 326:7 344:4,15 347:9 | 316:20 317:12 317:14,15 318:4,5,8 319:9 322:14 322:20 323:4 323:10,19 339:6 355:14 355:17 359:10 374:21 377:17 381:1 383:15 383:16 388:7 | **11** 3:21 214:5 241:1,2 244:16 248:1,1,2 | **12th** 122:21 |
| **0** | | **11/02/2023** 3:13 | **13** 4:1 150:21 326:12 351:6,8 361:8 |
| **0** 324:3,3 | | **110** 312:12,15 316:13 | **13800** 1:16 5:17 |
| **0.00.** 298:14 | | **110,000** 76:21 | **13:16** 173:19 |
| **01/06/25** 3:19 | | **115** 75:2,11,15 76:9,12 | **13th** 354:8 |
| **01260** 1:8 5:15 | | **11870** 387:19 | **14** 4:3 244:7 331:5 360:20 |
| **05/10/24** 3:21 | **1.0** 4:6 | **11:48** 145:22 146:16 | **14,000** 376:12 377:6,12 |
| **09/16/2025** 3:12 | **1.6** 179:12 | **11:57** 146:20 | **14:15** 229:4 |
| **1** | **1/8/2026** 391:5 | **12** 3:22 12:16 13:14,17,21 14:5 15:11 17:13,22 23:8 24:9,14,18 25:7 30:8 55:12,19 80:11 81:16 95:14 102:6 109:21 195:17 215:1 267:8 287:14 287:16 | **14:16** 229:4 |
| **1** 3:10 5:10 32:10,11 43:9 50:3,10 83:6 125:15 148:10 150:17,20 151:4,6 165:9 177:18,22 186:2 201:5 207:16 211:19 212:2 216:2,12 220:8 222:17 222:20 224:6 224:10,14 225:5,7 231:18 240:8 251:10 258:6 267:2 277:8,13,14 278:14,17 300:2,16,20 | **10** 3:20,22 39:9 197:13,15 234:5,10 236:11 241:19 244:16 293:22 | | **14:27** 229:8 |
| | **10,000** 196:15 | | **14th** 2:11 206:10 354:8 |
| | **10/15** 292:1 | | **15** 4:4 76:18 89:6 198:13 225:11 247:21 248:6,7 257:11 311:16,18 356:15,22 368:12,16 383:3,4 |
| | **10/17/23** 291:12 292:5 | | |
| | **100** 196:7 200:9 210:20 307:1 313:3 | **120,000** 77:18 | **150,000** 107:6 |
| | **100,000** 79:1 | **121,000** 77:10 78:21 | **15:26** 287:6 |
| | **105** 199:16 200:1 | **122** 3:14,17,18 | **15:35** 287:10 |
| | **10601** 2:6 | **125** 70:2 | **15th** 244:8,9 246:8 247:2,5 251:1 256:3,8 303:16 354:7 357:3,5,5,8,10 |
| | **10:33** 83:7 | **125,000** 107:6 | |
| | **10:48** 83:11 | **12:23** 173:15 | |
| | **10th** 355:12 | | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[16 - 26]**

Page 2

**16**   4:5 167:1
172:19 265:5
373:4,5
**16:43**   349:14
**16:50**   349:18
**16th**   308:1
**17**   3:22 153:12
295:8 307:21
**17,000**   197:10
**17:22**   378:5
**17:33**   378:9
**17:40**   386:6
**18**   109:5,20
148:18 151:8
195:20 215:3,4
223:16 257:7
**19**   215:3,4
**19,000**   109:6,21
**1944**   85:1
**1:24**   1:8
**1st**   214:16
215:16 256:5
258:3 261:3
354:4 355:10
357:14,17
375:18

**2**

**2**   3:11,21 38:20
39:4 46:7 51:3
83:10 146:15
165:9 186:3
207:18 211:20
212:3 216:12

224:14 225:5,7
231:14 241:21
244:16 267:2
278:15,17
302:17,19
316:19 318:5
322:11 323:3
325:6,17 332:9
339:6 348:18
377:17 383:16
388:9
**20**   24:18 74:20
76:18 145:11
194:7 215:3,5
266:4,10
267:11 268:7
268:12,13,14
276:18 308:1
316:18 329:4
329:15
**200**   196:5
198:4,6,7
**200,000**   79:13
**2000s**   172:9
**200k**   109:21
**2014**   132:19
206:10
**2015**   243:19
244:1 249:2
**20171**   1:17
**2018**   132:19
158:21,21
214:2,6,7,16
215:16 240:11

240:16 244:21
249:20 258:3
261:2,3 278:13
332:3 334:8
355:18
**2019**   4:4 7:17
7:18 161:7,9
169:4,7 194:7
204:8 205:17
206:9,16 372:6
**2020**   4:2
101:22 102:2
103:5,7 104:1
105:1,2,11
106:13 236:20
238:15 243:13
**2021**   104:21
303:14,16
308:1 374:20
375:17
**2022**   185:17
**2023**   57:10,11
103:10 258:5
291:20 292:2,6
**2024**   41:9
158:21 214:3
214:11,12,17
215:1,21 258:5
**2025**   4:3
**2026**   1:15 3:3
5:4 388:1,4
391:3
**204**   3:19

**205**   361:5
**20th**   204:8
205:17 206:9
206:16
**21**   103:7 215:3
267:8 308:1
388:1 391:3
**22**   103:7 173:7
198:13 215:4
224:13 225:8
225:10,12
297:22 298:5
307:4 309:10
354:13,20,20
354:21
**220**   76:20,20
77:9,10
**23**   3:22 125:15
215:4
**234**   3:20
**24**   5:15 42:21
50:10,11 92:13
215:4,4
**241**   3:21
**24595**   288:3
**25**   43:15
153:13 207:22
266:4,10,16
276:18 278:3
299:8
**250**   69:20
**26**   4:2 84:9
86:1 207:22
302:18 303:6

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[26 - 52]**

Page 3

304:17
**2600** 2:11
**27** 153:13
207:22 282:4
362:10
**27,000** 223:7,20
224:9 226:21
282:3
**27,197** 224:1,4
**27,257** 223:3,22
**28** 45:17 46:2,3
51:8,9 298:4,8
**28,540** 195:22
**287** 3:22
**29** 51:9 203:22
213:22 214:19
**298-3281** 2:6
**29th** 215:21

**3**

**3** 3:12 4:6
42:14,18 47:6
47:8 49:19
146:19 165:9
173:14 207:19
211:20 212:5
216:2,12 220:8
258:6 374:4,8
388:12
**30** 32:17 33:6,9
47:9 98:12
100:5 216:2
219:21 220:14
221:5 302:20

303:7,15,18,22
304:11,12
308:5 354:6,8
356:14 383:15
388:13 391:16
**30,000** 129:9,11
**300** 57:13
**30309** 2:12
**31** 32:17 33:7
**31-38** 4:4
**31st** 122:22
261:3 355:11
357:15
**32** 3:10 4:4
318:4
**33** 244:6
245:19 250:22
**34** 332:10
**349** 200:20
222:9
**35** 343:14
344:11
**350** 57:14
**351** 4:1
**36** 257:7
**360** 4:3
**368** 4:4
**37** 251:7 284:7
284:8,10,11,20
290:21 343:14
375:8
**373** 4:5
**378** 3:7

**38** 3:11 285:8
**384** 3:6
**39** 285:12
306:10 307:6
307:13 346:18

**4**

**4** 3:13 84:9
86:1 87:21
173:18 199:9
199:10 200:10
200:19 201:3
201:10 220:6
220:16 222:17
229:3 309:16
338:10 341:9
341:11,14
343:11 349:22
355:14 377:17
388:13
**4.93** 299:16
**4.93.** 298:14
**40** 285:20
326:4
**401** 109:15
**404** 2:12
**41** 286:1
**42** 3:12 300:22
301:3 302:9
307:16,21
**4233** 173:6
**44** 127:16
128:22 130:18
380:20

**47** 294:6
296:22 297:2
298:22
**48** 300:13

**5**

**5** 3:14 121:20
121:22 122:3,3
124:15 178:4
195:18 198:12
200:12,12
220:7,21
221:12 222:7
224:15 225:3
225:16 229:7
247:21 248:2,7
249:3 251:8
287:5 309:18
309:21
**5,000** 115:13,21
**50** 69:15 71:18
72:10,15 74:8
76:17,17 80:1
80:3 100:5
228:5 277:21
304:7 308:2,4
383:3
**50s** 112:17
**51** 3:19 205:11
207:15 208:10
210:1 263:3
**52** 205:12
207:10,15
209:4 263:3

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[52 - accepted]**

Page 4

294:6
**53** 207:11,15
210:11 263:3
**54** 207:11
**55** 207:3,5,7,10
207:12
**550** 57:1 75:12
75:15 76:9,12
76:21 77:9,10
80:7
**56** 207:5,7
**58** 313:3
**59** 350:2
**5:40** 386:10

**6**

**6** 3:15 4:3
122:3,5 172:19
222:7 287:9
315:7 316:5
349:13 380:15
**6-16-2021** 4:6
**6.16** 306:20
307:1
**6.3** 224:15
**6.38** 225:16
**6/16/2021**
374:17
**60,000** 75:16
76:16
**62** 88:3 341:19
353:6
**63** 78:21

**63,000** 76:16
77:18
**63,250** 76:13
**65** 341:19
350:3 353:6
**69** 223:17,20,22
224:3 225:22

**7**

**7** 3:6,17 122:3
122:8,9 124:17
125:3 127:12
127:13 129:2
172:19 220:22
220:22 221:6
221:14 326:3
349:17 378:4
380:16
**70** 253:21
**702** 33:20
39:22
**71** 92:20
**713225** 249:3
**72** 300:13
**73** 50:21
**74** 50:21
**75** 2:11
**7743482** 391:5
**779-5190** 2:12

**8**

**8** 3:3,18 122:14
122:15 124:15
125:12 178:5
220:7,16,21

222:8 309:14
309:15 378:8
380:15 388:4
**800,000** 67:14
67:20 151:11
151:12 178:1,2
195:21 324:6
**838,000** 150:17
154:5 174:20
222:22
**838,312** 150:17
**88** 3:13 47:16
49:20
**89** 47:17 49:20
**8th** 1:15 5:4

**9**

**9** 3:19 204:20
205:2
**900** 2:5
**90s** 172:8,10,11
**914** 2:6
**924** 151:8
**96** 199:15,21
**97** 172:3
**98** 172:3
**9:23** 1:16 5:3
**9th** 355:12

**a**

**a.122** 3:15
**a.m.** 1:16 5:3
83:7,11 146:16
146:20

**abbreviation**
265:19
**abdullah** 106:1
108:8 117:12
117:14,17,19
117:20 118:7
118:13
**abilities** 9:5
**ability** 305:3
340:14
**able** 17:21
182:2 236:21
238:15 239:13
280:18 289:9
315:1,4,9
317:20 318:8
319:15 333:21
334:4 371:7
373:17
**above** 34:11
238:13 305:15
307:15 391:6
**abroad** 110:12
**absolutely**
88:19
**abstract** 94:19
**abundance**
166:22
**ac** 120:5
**academic** 111:9
118:21 119:5
191:17
**accepted**
120:21 309:5

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**access** 82:16
120:3,5,10
121:14 233:2,9
233:11,15
235:11,15
236:21 239:8
239:13,16
280:12 326:21
346:22 347:18
**accessed**
120:13
**accessible**
312:21
**accessing**
232:18
**accommodate**
148:3 367:3
**account** 144:14
148:2 185:22
300:20,20
367:6
**accuracy** 190:5
219:20 391:9
**accurate** 72:22
390:6
**accurately**
217:21 245:20
**acknowledge**
274:14 300:4
302:22
**acknowledg...**
391:12
**acp** 320:4
321:6 322:6

**acquainted**
117:16
**acting** 23:18,19
23:22
**action** 14:22
15:1,2
**actions** 14:21
42:7
**active** 21:8
347:7
**actual** 151:19
153:5 180:13
212:17 248:17
305:14 322:10
323:8,8
**actually** 162:9
199:17 228:7
248:18 274:1
318:21 343:12
354:3 380:2
**add** 11:9 86:13
87:3,9,16
89:15 183:20
268:18 276:18
**added** 75:7
81:5 194:21
286:17 295:10
307:13 308:1
**adding** 184:4
**addition** 81:5
235:5 310:4
**additional**
67:16 92:8,10
104:20 138:16

159:14 160:7
178:4,5 184:13
216:3 220:16
238:2 300:20
301:3 322:6
323:16
**additionally**
236:22
**additions**
390:10
**additive** 307:16
308:9
**address** 148:20
159:15 356:20
367:16 371:13
388:14
**addressed**
34:10 95:7
350:17
**addressing**
95:8
**adhering** 92:14
**adjust** 213:19
**adjusted**
336:20 375:2
**adjustment**
155:2 340:14
340:15,16
**adjustments**
147:21 148:4
195:22 274:7
**administration**
193:11

**administrative**
340:3
**admissibility**
30:2
**advance** 256:6
**advertise** 316:7
**advertising**
312:6 316:4
**advice** 59:14,14
60:8 61:1,2
215:10 258:22
259:1,4 281:18
**advocacy** 116:5
**affect** 148:12
188:16 246:18
247:1 275:13
383:11,18
**affected** 148:3
186:11 218:22
257:5,22 275:4
275:7,9 364:6
**affects** 148:13
165:16 264:20
**affiliation**
111:1
**affiliations** 6:4
**afford** 367:17
371:7
**affordability**
366:13 367:6
**ag** 282:6
**agency** 193:11
**ago** 11:18 13:3
13:14,17 21:7

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[ago - answer]**

Page 6

85:8 102:6
126:14 359:6,7
**agree** 5:9 8:13
48:6 49:11
80:2 94:15,19
231:19 232:14
292:16 297:3
300:12 312:11
350:10 351:18
**agreed** 37:1
**agreement**
300:3
**agway** 17:6,7
22:7 25:13
27:8 30:9
34:22 38:2,16
52:5,11 241:16
242:16 243:8
244:16 247:12
247:16 249:1
261:7,12
**agway's** 40:5
**ahead** 36:6
64:15 110:13
203:16 226:16
258:8,13
328:12
**air** 371:15
**ak** 295:7,8
**al** 5:13,13
**albeit** 384:5
**alexis** 1:18 5:21
87:18 387:2,19

**alexis's** 8:11
**allegations**
42:21 44:19
46:13,17 50:16
93:1 325:12
**alleged** 34:2
**allegedly** 310:2
**alleging** 224:4
**allen** 88:11,15
88:16 89:13
**allotted** 391:19
**allowed** 316:7
**allowing** 34:11
**alphanumeric**
142:18
**alternate**
320:17
**alternative**
320:8
**ambit** 21:21
22:8 28:2
53:10
**amended** 3:12
42:18
**amendments**
298:2
**american** 28:8
**amount** 34:1
75:9 99:17
108:12 156:8
159:20 196:1,5
197:17,18
211:17 213:18
275:14 286:9

299:12 316:15
320:19 330:10
350:13
**amounts** 19:6
100:11 301:1
**ample** 84:11,14
85:11 87:6
**analyses** 14:10
67:16
**analysis** 70:10
147:13,15
150:10 204:7
246:18 247:1
276:1 315:20
328:11 379:17
379:18 381:2
384:20
**analyst** 329:19
**analysts** 379:13
**analytics**
191:21
**analyze** 109:20
190:5
**ancillary** 275:3
275:10,11,16
275:20 276:4
295:10,12,15
331:3 339:21
**andrea** 2:18
6:11
**andrew** 4:1
**andrew's**
131:19

**andrey** 2:20
6:19
**anne** 5:12
**annual** 255:19
**ano** 336:9
**answer** 9:6,7
9:21,22 10:5
10:12 12:22
14:16 16:21
22:14 23:11
24:12 25:2
29:16 35:4
36:5,7,8,17
38:8,12 42:10
43:7,22 45:6
46:22 47:14
48:2,12 52:9
53:12,19 54:3
54:9,16 56:8
56:14 57:18
58:8 59:21
60:9,18,20
62:3,17 69:8
70:8 73:18
74:7 75:6 78:1
79:6 80:15
82:14 83:21
86:9,17,21
89:10 93:3,8
93:13,16 94:2
95:6,22 96:12
96:20 98:17
103:22 107:2
108:5 113:3,4

| | | | |
|---|---|---|---|
| 115:2 116:15 | 224:12 235:20 | **appeals** 36:22 | **apportioned** |
| 119:3 120:17 | 244:14 249:22 | 37:7,7,18 | 382:17 |
| 123:18 124:8 | 250:10 254:18 | 40:22 | **apportioning** |
| 132:14 136:4 | 255:3 256:19 | **appear** 54:13 | 382:9 |
| 136:11 137:20 | 257:16 258:12 | 147:21 355:20 | **appreciate** |
| 142:16 144:5 | 259:8 266:12 | **appearance** 6:2 | 11:12 219:19 |
| 152:19 165:18 | 267:15 269:4 | **appearances** | 219:20 386:2 |
| 177:12 181:10 | 273:11 274:18 | 2:1 6:4 388:15 | **approach** |
| 183:22 189:22 | 277:3 283:9,14 | **appears** 374:1 | 79:11,12 308:9 |
| 203:15 217:11 | 304:3 314:15 | **appendix** | **appropriate** |
| 223:11 225:20 | 324:8 343:19 | 342:10 | 6:17 146:6 |
| 237:7,13 246:6 | 365:8 367:14 | **apple** 103:14 | 189:17 238:2 |
| 256:20 272:4 | 370:7 385:3 | 103:17,18 | 245:19 277:17 |
| 283:21 306:5,7 | **answering** | 104:8,12 105:7 | 277:18 301:2 |
| 314:11 317:19 | 79:18 86:5 | **apples** 274:16 | 336:3 375:3 |
| 324:9 327:4 | 159:12 | 274:16 | **approval** |
| 337:18,20 | **answers** 9:17 | **applicable** | 160:11 161:15 |
| 358:12 367:10 | 96:12 | 271:1 308:3 | **approved** |
| 369:12 371:1 | **anticipate** | 391:8 | 321:13 |
| 381:3 383:11 | 186:16 | **applications** | **approximately** |
| **answered** | **anymore** 23:14 | 161:11 | 12:3 251:22 |
| 17:15 18:2 | **anyway** 356:1 | **applied** 67:15 | 298:22 |
| 21:1 26:18 | **apart** 23:5 | 91:4,21 92:3 | **april** 303:14,16 |
| 37:5,20 38:4,5 | 25:20 65:19 | 110:14 185:15 | 308:1 354:4,7 |
| 51:20 65:11 | 68:6 83:16,16 | 186:14 225:16 | 354:8 355:12 |
| 77:21 80:22 | 105:8 131:10 | 255:22 | 356:22,22 |
| 94:9 105:13 | 184:14 334:22 | **applies** 86:1 | 357:3,5,8,9,12 |
| 106:9 115:10 | **apologize** | 100:8 313:20 | 357:14,14,15 |
| 124:3 127:1 | 134:22 153:21 | **apply** 85:19 | 357:17,22 |
| 129:6 130:11 | 214:13 223:12 | 184:21 321:6 | 383:3,4 |
| 131:3,14 139:6 | **appeal** 38:15 | **applying** | **apsarc** 106:14 |
| 153:10 154:11 | 39:2 | 200:20 222:17 | **ar** 295:13 |
| 183:4 189:2 | **appealed** 36:13 | 222:18 | **arabia** 103:8 |
| 194:19 213:14 | | | 103:10 105:1,4 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[arabia - assumptions]**

Page 8

| | | | |
|---|---|---|---|
| 105:17,21 | **arrive** 192:17 | 293:15 301:6,8 | 92:22 |
| 106:4 108:13 | 194:13 | 304:2 306:5 | **assisted** 42:4 |
| 108:20 111:11 | **article** 372:6 | 314:14 324:7 | 43:19 47:1 |
| 114:4 118:18 | **artsy** 290:10 | 334:14 337:19 | 51:17 53:15 |
| **aramco** 113:22 | **aside** 161:9 | 343:18 361:7 | 56:5,12 83:15 |
| 114:1,3,4,9 | 165:11 230:15 | 365:7,9 367:13 | 93:18 |
| **area** 57:20 | 230:18 280:16 | 370:7 379:21 | **associated** |
| 323:20 332:17 | **asked** 14:17 | 381:4 385:2 | 116:7,11 142:4 |
| 332:19 333:5 | 17:14 18:1 | **asking** 9:4 15:3 | 142:5 147:5 |
| 333:13 342:22 | 20:22 21:7 | 15:7 32:15 | 246:1 298:2 |
| 350:20 352:1 | 26:17 30:8 | 39:8 44:13 | 303:12 350:4,6 |
| 352:16 | 37:4,19 38:3 | 57:4,5 66:20 | 350:16 382:17 |
| **areas** 352:17 | 48:11,12 51:19 | 95:11,13 98:11 | **assume** 108:1 |
| 353:3 | 65:10 77:7,21 | 98:19 101:17 | 113:20 237:22 |
| **arena** 137:22 | 80:21 94:9 | 130:22 153:18 | 238:1 255:16 |
| **argue** 44:20 | 95:22 105:13 | 153:19 210:9 | 256:9,21 257:1 |
| 61:18 | 106:8 115:9 | 213:5 238:19 | 257:10,19 |
| **argued** 85:11 | 124:2 126:22 | 260:8 333:2 | 261:18 292:17 |
| **argument** 34:8 | 130:10 131:2 | **asks** 31:6 | 333:20 379:21 |
| **argumentative** | 131:13 139:5 | **aspects** 193:1 | **assumed** |
| 17:15 18:3 | 149:3 152:11 | **assert** 44:20 | 185:19 |
| 80:4 249:22 | 153:9 154:10 | **asserting** 60:7 | **assumes** 246:10 |
| 274:18 328:6 | 168:20 183:3 | 87:11,12 93:6 | **assuming** 78:6 |
| 342:2 370:19 | 189:2 194:18 | 93:10,11 | 145:6 151:3 |
| **arial** 219:9 | 213:13,17 | **assign** 63:17 | 164:6 251:16 |
| **arithmetic** | 224:11 235:19 | **assigning** 112:8 | 257:8,9 345:18 |
| 201:8,9 | 244:13 249:21 | **assignment** | **assumption** |
| **aron** 311:11 | 250:9 254:17 | 106:18 | 246:13 280:1 |
| 384:9,11 | 255:2 256:18 | **assignments** | **assumptions** |
| **aron's** 310:1 | 257:15 258:11 | 12:3,5,6 14:2 | 136:6 175:21 |
| 363:7 | 259:7,9 266:11 | 113:14 | 176:8 178:16 |
| **arran** 170:18 | 267:14 269:3 | **assist** 43:16 | 182:2 195:5 |
| **arrangement** | 273:10 274:17 | 46:14,15 47:21 | 248:19 256:4 |
| 170:18 | 277:2 283:8,14 | 53:20 73:3 | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**atl7743482**
388:2 389:1
**atlanta** 2:12
107:16
**attach** 330:12
**attached** 288:1
328:15 390:12
391:11
**attempt** 34:15
60:19
**attention**
236:10
**attorney** 6:5
9:19 10:4 36:3
85:9,13,16
90:6 93:7,10
93:11 136:15
177:11 391:13
**attorneys** 23:3
36:4 70:21
73:20 120:4
149:10 183:8
203:14 337:17
**attract** 320:15
**au** 197:5
**audio** 5:7
**august** 4:2
**author** 368:18
**authority** 61:16
84:7,12,14
85:11 87:2,5,6
111:6 310:15
**authorized**
221:10

**automate** 279:5
301:15 329:2
**automated**
252:15 253:5,7
253:13 254:6
289:2,6 295:20
**automatically**
197:5 278:22
**automation**
252:18
**available**
114:13 310:22
313:2,4 315:18
345:19,20
346:6,20 366:4
367:11 369:19
370:6 391:6
**average** 112:17
354:10
**averages**
383:13 384:22
**averaging**
190:13
**avoid** 356:7
**aware** 61:15
114:2,9 118:13
129:4 137:15
152:12 155:5
161:21 162:5
163:17,22
180:14 201:20
202:1,12 293:5
301:16

**axis** 243:4

**b**

**b** 3:17 84:9
86:1 124:16,17
125:2 127:11
127:15 129:2
142:6 143:14
277:9 278:16
338:6 342:10
343:13 359:17
388:11
**ba** 91:22 92:3,6
354:16
**bachelor's**
75:12
**back** 21:7 45:5
61:13,20 62:21
68:4 83:10,14
101:8 110:10
126:11 139:12
146:19 169:6
173:18 186:12
187:19 213:22
222:20 227:4
229:7 250:1
273:16 281:14
284:7 287:9
290:21 294:21
300:21 306:9
343:13 348:13
349:17 354:8
368:10 378:8
378:13 380:18

**background**
7:20 68:22
70:12,16 71:4
71:6,7 126:4
191:17
**backwards**
205:4
**bad** 111:18
358:22
**baldwin** 372:6
**ballpark**
166:18
**banking** 320:20
**bar** 184:4
**based** 34:3 40:1
57:19 71:10
78:5,6 126:18
132:19 137:21
149:5,12
210:20 220:2
220:10 225:7
226:6 248:19
264:12 275:10
275:22 276:6,7
276:9 280:1
311:9,14
322:21 323:22
354:6,16,16,21
355:14 366:4
367:11 369:19
370:6 371:4,10
373:13 379:11
382:10,18

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[basic - billed]

Page 10

**basic** 183:18
273:16
**basically** 116:4
151:10 192:10
194:11 199:21
213:5 218:10
220:1 221:19
221:21 243:16
261:2 267:11
268:21 285:21
296:12 307:1
317:3 322:20
323:19 324:19
324:20 325:1
331:13 358:5,8
383:13
**basics** 240:4
**basis** 9:19
11:11,19 48:7
55:16 64:3
66:1 87:15
94:21 95:16
96:7 202:16
208:18 209:12
210:22 280:10
325:9 350:5
356:19 358:4
**bat** 7:11
**bates** 120:1
127:3 128:8
129:22 208:3
240:15,20,21
242:5,15
243:22 244:20

245:3,6,9
247:17 248:2
249:1,19 250:4
261:7 380:19
381:4,9,11
**bear** 350:10
**bec** 270:20
**beginning** 6:5
7:20 42:21
83:9 146:18
150:16 173:17
214:7 229:6
287:8 291:21
335:1 349:16
361:8 378:7
**begins** 33:9
39:12 118:7
**behalf** 1:5 2:3,9
6:8 27:5 93:9
93:15 202:9
318:21 319:4,6
341:1
**bel** 246:16
**belenky** 2:20
6:19
**believe** 7:16
12:13,14 18:9
18:20 19:21
21:2 22:3,15
28:11,16 31:3
31:3,19,20
38:5 41:9 43:9
44:19 57:10
66:13 67:9

72:8,17 89:8
91:14 100:8,18
100:22 101:1
104:4 105:1
110:19 111:7
112:3,22
113:20 116:18
118:17 128:12
129:6 132:5
133:16 135:11
137:8 139:20
141:4,8 164:14
167:19 169:12
169:20 170:12
174:8,14
187:21 191:22
229:17 245:13
250:18 266:7
267:16 270:2
287:13 295:13
319:15 320:8
325:2 337:10
337:19,20
340:16 365:9
366:11,15,16
366:20 367:1,2
367:10,15
370:10 377:13
383:1
**believed** 366:2
**bell** 18:21 22:4
**benchmark**
43:9 45:12
46:7 47:5,6,8

50:3,10 51:3
**benchmarks**
43:2 212:8
**benefits** 107:6
109:7,9
**best** 8:22 9:4
**better** 83:15
198:18 281:7
326:1
**beyond** 123:15
183:22 186:6
255:15 259:19
261:19 282:16
363:6
**bi** 294:18
**bias** 98:3
**big** 80:3 100:16
154:3 249:12
271:20 290:10
**bigger** 75:16
100:7 141:11
327:10 333:8
339:11
**biggest** 130:5
**bill** 116:20
117:2 156:11
157:3,19 160:6
197:14,17,20
371:9
**billed** 57:22
60:15 61:5
62:13 69:4
73:6,8 77:16
77:17 78:12,14

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

| | | | |
|---|---|---|---|
| 79:2 81:15 | 11:6,10,14,17 | 55:15,17,20 | 108:3,10,19 |
| 198:4 | 12:2,10,19,20 | 56:7,13,18 | 109:4,10,16,22 |
| **billing** 43:13 | 13:6,12,18 | 57:16 58:6,16 | 110:8,18 113:2 |
| 78:21 132:5 | 14:6,7 15:5,12 | 58:21 59:3,7 | 113:10 114:22 |
| 139:8 147:20 | 15:13 16:5,17 | 59:19 60:16 | 115:9,20 |
| 149:15 150:6 | 16:18 17:14 | 61:3,9,12,18,22 | 116:10,13,22 |
| 175:16 192:6,7 | 18:1,13,19 | 62:7,15 63:13 | 118:5,15 119:1 |
| 206:21 352:12 | 19:3,10,15,16 | 63:19 64:4,9 | 119:20 120:16 |
| 353:4,15 354:7 | 20:3,9,12,22 | 64:14,20 65:3 | 123:16 124:2,8 |
| 354:12,20 | 21:5,16 22:1 | 65:10,22 69:6 | 124:20 126:22 |
| 355:6 356:9,14 | 22:10,11,22 | 69:13,19 70:1 | 127:6,12,22 |
| 358:7 | 23:9 24:3,10 | 70:7,19 71:5 | 129:20 130:10 |
| **bills** 159:19 | 25:1,10,22 | 71:21 72:6,16 | 131:2,13,21 |
| **binary** 62:5 | 26:10,17 27:2 | 73:16 74:5,14 | 132:12 133:3 |
| **bit** 16:9 26:5 | 27:10,15,20 | 75:4,18 76:10 | 133:10,21 |
| 45:3 61:10 | 28:3,9,15,22 | 77:1,20 78:13 | 134:5,13,19 |
| 83:15 152:7 | 29:6,14 30:3 | 79:3,14 80:4 | 135:8 136:1,3 |
| 153:17 158:14 | 30:11,18 31:2 | 80:13,21 81:17 | 136:9,10,15 |
| 166:19 174:1,5 | 32:2,18 33:13 | 82:4,12 83:1 | 137:4,18 138:7 |
| 192:4 205:9 | 35:1,12,17 | 83:20 84:5,9 | 138:12,19 |
| 222:19 228:11 | 36:1,14 37:4 | 84:15 85:15,21 | 139:5,17 |
| 258:18 281:16 | 37:13,19 38:3 | 86:5,8,12,17,21 | 142:14 143:5 |
| 284:6 316:19 | 38:9,12 39:4 | 87:8,14 92:17 | 144:3,12,20 |
| 326:1 334:9 | 39:16 40:11,19 | 93:2,7,11,16,20 | 145:5 146:2 |
| 346:4 | 41:7,14 42:5,8 | 94:8,13 95:1,4 | 147:7,14 149:1 |
| **bits** 181:16 | 43:5,18 44:6 | 95:17 96:8,18 | 149:8 150:2,13 |
| **black** 112:18 | 45:1,9,15,22 | 97:5,9,14,19,22 | 151:2,22 |
| **blah** 220:12,12 | 46:4,18 47:12 | 98:4,13,14,22 | 152:15,18,21 |
| 220:12 | 48:1,9,18 | 99:5,11 100:4 | 153:9 154:10 |
| **blanking** 65:4 | 49:16 50:5,18 | 100:17 101:14 | 154:18 155:7 |
| **blankinship** | 51:6,10,19 | 102:1,18 | 156:2,7,19 |
| 2:4,4 3:7 6:12 | 52:7,14,19 | 103:20 104:6 | 157:14 158:7 |
| 6:12,13 9:18 | 53:4,11,17 | 105:12 106:8 | 159:4,10 160:2 |
| 10:11,22 11:4 | 54:8,15,22 | 106:22 107:14 | 160:13,20 |

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

**[blankinship - break]**                                    Page 12

| | | | |
|---|---|---|---|
| 161:17 162:3 | 242:1,8,20 | 317:17 318:11 | **blankinship's** |
| 162:17 163:11 | 243:10,20 | 321:19 322:12 | 25:20 26:16 |
| 163:20 164:12 | 244:13,22 | 323:12 324:7 | 78:12,18 |
| 164:19 165:14 | 245:7,10,17 | 325:18 326:11 | **blown** 376:20 |
| 165:17 166:13 | 246:4,21 247:6 | 327:3,18,20 | 376:22 |
| 166:16 169:10 | 247:14 248:5,8 | 328:5,19 | **bodkin** 14:22 |
| 170:22 173:12 | 248:14 249:6 | 330:19 331:14 | **body** 128:6,9 |
| 175:8 177:10 | 249:21 250:9 | 331:16,19 | 130:4 131:4,16 |
| 179:2,16 183:3 | 250:16 252:4 | 332:8 335:4,18 | **bond** 259:20 |
| 183:16 188:1 | 254:2,17 255:2 | 337:3,15 | **bonds** 99:2,14 |
| 189:2 190:22 | 256:18 257:15 | 341:16 342:2,9 | 99:22 |
| 194:18 199:2 | 258:11 259:7 | 342:16,19 | **book** 329:8 |
| 200:5 201:6 | 260:6 261:9 | 343:7,18 | **born** 107:16 |
| 202:10,13 | 262:2,12,18 | 345:21 348:22 | **borrowing** |
| 203:1,10 204:1 | 263:5,12 264:1 | 349:2,6,8,10 | 259:20 |
| 205:20 207:1 | 264:14,22 | 350:11,22 | **bottom** 39:10 |
| 208:13,22 | 266:11 267:14 | 352:19 356:3 | 43:14,15 51:10 |
| 209:8,16 210:2 | 269:3,10 272:2 | 358:10 361:7 | 198:13 204:10 |
| 210:5,16 211:4 | 273:10 274:3 | 361:22 363:19 | 214:5 223:15 |
| 211:11,14 | 274:17 277:2 | 364:7 365:7,16 | 234:22 236:12 |
| 212:9,15 | 281:6,10 283:8 | 366:6,21 | 311:18 |
| 213:13 216:9 | 283:14,20 | 367:13,21 | **bought** 318:18 |
| 216:21 217:9 | 284:8,11 | 369:9,21 | **bound** 206:17 |
| 218:1,20 220:4 | 286:14 287:21 | 370:17 371:20 | **box** 208:12 |
| 221:3 222:11 | 288:19 292:8 | 372:10 373:1 | 209:5 210:13 |
| 223:9 224:11 | 292:10 297:9 | 373:14 378:15 | 257:4 |
| 225:18 226:14 | 299:9 300:8 | 378:18 379:4 | **breach** 34:11 |
| 227:2,12,20,22 | 301:12 302:1 | 379:19 380:9 | 46:13 48:8 |
| 228:6,14,17,22 | 302:12 303:3 | 380:13 381:13 | 94:22 96:7 |
| 231:3,22 233:6 | 304:2,14 305:7 | 382:12 383:9 | **breached** 49:1 |
| 233:18 235:19 | 306:4 308:22 | 384:8,14 385:2 | 49:13 |
| 236:13 237:4,6 | 309:3 310:12 | 385:19,22 | **break** 45:4 |
| 238:8,14 239:3 | 311:8 314:14 | 391:1 | 61:13,20 64:22 |
| 239:19 241:11 | 315:10 316:9 | | 83:2,3 84:6 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[break - calculation]

Page 13

89:5 145:10,13
145:22 168:2
169:5 173:11
173:22 175:15
184:2 228:10
228:15,19
229:1 281:3,4
286:22 297:6
348:20 349:3
349:21
**breakdown**
101:6 155:6
174:6
**breaking**
102:12
**briefly** 195:20
**bring** 110:10
119:14 148:7
368:8
**brings** 297:20
**broad** 72:10
236:5
**broader** 135:13
**broadly** 49:20
50:22
**broadway** 2:5
**broke** 104:9,9
341:7
**broken** 158:6
158:16
**broker** 319:5,7
**brous** 1:4 5:12
14:22 41:3,19
42:18 59:17

82:10 83:19
95:20 132:10
133:7 143:19
143:22 144:17
272:9 388:5
391:4
**bs** 91:22 92:3,6
92:8
**bucks** 198:4
199:11,12,13
200:1,9
**bug** 347:22
**build** 182:9
339:8
**building** 119:8
**bullet** 255:6
260:13 261:14
265:7 281:14
307:22 309:9
**bunch** 130:19
130:20 168:17
194:8 331:2
377:5
**burkett** 2:19
6:18 202:16
**burkett's** 22:18
**business**
191:21 329:9
329:11 353:22
354:21
**butcher** 111:19
**button** 26:10
**buy** 104:17
310:8,9,16

315:15 316:13
318:20 319:6,7
319:16 320:13
320:18 323:9
**buying** 310:21

**c**

**c** 5:1 88:14,15
270:16,18
359:17 374:11
376:2 388:11
**c.a.** 1:8
**c31** 184:5
**ca** 210:20
356:12
**cable** 170:6
171:8 288:1
**calculate** 76:1
152:11 174:7
178:11 240:6
251:6,10
258:15 260:20
277:12,16
278:22 279:19
292:6 295:15
297:7 299:21
300:2,16
305:16 322:10
334:15 336:6
342:14 343:17
346:8 354:4,5
355:16 357:5
374:20 383:22

**calculated**
201:9 208:18
209:12 210:20
210:22 211:18
220:11 266:3
282:21 285:21
297:13 303:14
303:21 304:7
307:1 324:17
325:8,16
336:18 353:7
355:13 356:19
364:19 373:12
**calculates**
221:6
**calculating**
46:16 48:16
49:11 70:14
152:2 175:5
177:18 214:22
215:1 216:8
257:6 261:1
277:9,10 280:8
292:18 293:3
301:2 303:11
322:21 350:18
**calculation**
34:1,7 50:13
67:13 76:8
132:18 178:11
181:5,9 188:18
198:17,19
221:1 222:6
224:6 226:5,13

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[calculation - case]**

Page 14

230:4 231:6
243:19 257:6
261:12 264:21
273:16 274:20
276:12,14
278:9,16 285:6
300:15 301:7
301:15,19
323:16 349:22
**calculations**
  49:12 67:18
  68:15,16 78:5
  78:6 135:12,16
  148:10 174:13
  174:21,22
  175:2 177:7
  178:2,4,5,13,14
  178:19,22
  179:4,5,10,11
  179:14,20
  180:1,9,15
  181:11,15
  182:3,4,10,13
  184:15 185:4
  190:13,18
  195:3,4 196:19
  196:21 198:9
  200:16 202:22
  203:6,9 212:7
  212:21,22
  213:17,20
  220:10 222:8
  223:13,15,19
  231:8 250:3,4

253:13,13
256:16 258:1
276:16,22
278:1,20
279:22 286:6
301:9 302:8
345:9 358:20
364:6 376:18
378:20 379:14
382:4 383:19
**calculator**
  75:21
**calendar**
  260:20 320:20
  325:9 355:14
  355:21 356:18
  356:19 357:5
**call**  21:9 45:3
  61:10 63:6
  128:2 140:22
  141:17 166:5
  167:11 178:6
  193:12 212:17
  224:14,21
  240:6 241:1
  331:21
**called**  7:3 91:14
  170:6 179:8
  208:4 262:7
  296:5 322:6
  332:2
**calling**  138:14
**calls**  24:3 29:6
  32:2 33:14

35:1 36:14
39:17 41:14
48:9 95:5,17
123:16 130:16
166:12 213:14
216:10,22
223:10 247:15
296:5 301:12
331:4
**cancel**  334:20
**canceled**
  144:10,14
  197:16
**cancellation**
  147:5,16 148:1
**cap**  261:15,17
  261:20 262:1
  262:10,17
  263:4 292:14
  298:18,21
  360:10 361:15
  361:20 362:6
  375:20
**capacity**  23:19
  43:19 80:12,17
  262:7,11 275:2
  275:14,20
  276:3 295:8
  326:22 331:1
  339:21 363:2
  363:17 364:9
  377:3
**capital**  328:9
  340:3

**caps**  100:15
**career**  101:18
**carla**  63:8
  66:10 68:11,12
  69:22 71:2,12
  72:3 73:2,3
  78:11 90:13
  277:6
**carol**  190:9
**case**  5:15 12:18
  14:20 16:7,12
  16:16 17:4,21
  18:12,15 19:12
  21:21 23:8
  27:8 28:7,11
  28:14,17 30:7
  30:9,13,17,20
  34:22 36:4
  41:5 46:13
  48:8 51:17
  52:6,11,16
  55:17,18,19
  60:15 67:2
  75:3,9 81:3,6,7
  83:15 84:18,21
  85:1,13,16
  88:17,18,19
  93:18,22 94:1
  94:6,7,16
  95:19,20 96:10
  102:6 118:2
  122:18 123:8
  126:10 149:15
  158:12 175:22

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[case - charging]

Page 15

185:22 187:16
197:4 205:9,11
247:5,12,16
249:13 261:7
266:1 271:13
293:5 301:11
310:9 313:17
353:18 359:2
381:8 384:21
388:5
**cases** 13:10
14:2,6,8,18
15:4,11,15,19
15:21 16:15
17:5,11,13,17
18:7,17 19:2,5
19:8,14,20
20:17 21:6,12
21:15 22:6,9
23:2,6,7,12
24:15 26:14
42:5 52:4
53:15 54:1,18
55:19 80:20
81:1,3,5 82:2
84:16 95:3,14
102:5,7 176:8
193:3,7 195:3
231:7 307:16
307:17 308:10
358:19,21
381:17
**catch** 281:6
349:3

**categories**
181:17
**categorize**
178:20 278:9
**category** 265:9
267:20 268:2
333:1
**caucasian**
112:20
**caught** 377:19
**caution** 36:1
136:12 149:8
166:13,22
**ceased** 145:3
**ceiling** 262:1
308:10
**cell** 285:3,8,9
291:3
**cells** 285:5
**cent** 197:13
**center** 106:2
**centers** 371:15
**central** 328:9
**cents** 197:14
199:21 212:3,4
213:9 294:6
296:16,18
297:2 307:13
**certain** 99:17
108:12 141:12
182:18 185:20
185:20 196:21
211:17 213:18
233:3 320:15

328:17,17
**certainly** 23:15
89:2 94:16
136:6
**certificate**
387:1 388:12
388:14 390:1
**certified**
387:20
**certify** 387:3
390:2
**cetera** 328:9
**challenge** 29:13
31:1
**challenged**
29:22
**chance** 88:2
**change** 57:15
157:5 186:9,10
187:19 212:20
251:18 264:11
264:12 335:20
346:2 358:15
376:6 388:10
**changed** 57:8,9
57:19 185:16
187:8 299:11
375:9,13,14
**changes** 212:19
388:8 391:10
**characterizati...**
101:1 231:21
250:18,21

**characterize**
81:21 119:5
221:1
**characterized**
22:16 256:2
**charge** 155:11
156:17 158:6
158:16 159:8
194:6,15
196:15 274:15
298:22 325:3
339:22 340:7,8
340:11,14,17
340:19 341:4,4
341:5 342:7
343:17 344:20
345:6,11,14
351:18 376:11
377:1
**charged** 34:16
50:15 199:12
199:13,15,15
199:16 213:7,8
225:1,2 273:17
324:21
**charges** 155:6
155:11,21
199:10 295:10
295:12,15
331:10 332:2
338:8,21
340:10
**charging** 56:16
56:21 199:18

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[charging - click]

Page 16

200:1,9 212:6
216:5
**chart** 243:18
**chateaugay**
333:6,7,22
**chay** 88:11,13
88:15,16 89:13
**check** 19:22
23:1 58:10
67:9 69:15
72:11 74:9
79:8 81:19
128:11 133:15
133:17 140:1
180:12 182:2,7
182:8,14,20
193:7 206:18
206:19 221:12
245:12 270:2
275:17 295:17
319:15 338:3
339:19 359:15
375:1 377:14
381:10 390:4
**checked** 180:10
217:14,17
218:8 243:12
252:22 253:1,4
**checking** 218:3
218:5 290:1
**checks** 182:3
182:18 254:15
377:20

**choice** 237:17
**choose** 155:10
361:10
**chose** 250:14
**chosen** 263:10
**circle** 45:5
61:13,20 157:9
**circuit** 40:17
61:16 85:1
355:4
**circumstance**
371:13
**circumstances**
84:11
**citation** 17:20
34:6,14 40:7
86:1 311:11
344:3
**citations** 344:2
372:18
**cite** 362:10
372:15,16,17
**cited** 87:1
302:4 304:17
362:21 372:6
**citing** 87:6
307:8
**civ** 5:15
**claim** 29:9
310:14
**claims** 96:3
310:1
**clarifications**
165:21

**clarify** 66:9
89:11 194:2
388:11
**class** 48:16
54:12 143:15
143:20 158:20
190:18 256:1
256:17 257:13
269:13 270:1,5
271:11,22
272:6,8,13,18
272:22 273:13
274:2,6,9
275:5,9,18
276:3,4,6,7,10
278:14,15,17
278:17 280:2
323:21 351:2
353:10,13
**classes** 268:10
268:13,14,16
268:18 269:18
269:21 270:9
273:6,8 275:12
276:20
**classification**
143:4 268:3,4
269:2 352:10
376:1
**classifications**
268:7 269:9
270:4,19 339:6
352:7

**clean** 340:20
**cleanchoice**
19:21 20:19
27:19 52:18,21
92:15 94:7
96:6,10
**cleanchoice's**
94:20
**cleanup** 316:19
**clear** 10:15
13:20,22 57:4
62:4 120:12
126:8 155:16
159:14 171:5
176:18 193:22
214:13,14,15
219:18 221:6
225:12 229:21
231:10 286:4
288:17 289:13
289:14 293:13
296:13 302:4
357:2
**clearly** 8:10
197:19
**click** 234:22
235:1 289:13
326:10 327:13
334:10 335:2,9
335:11,13
344:16 346:20
347:9,11 348:3
348:5

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[clicked - commodity]

Page 17

clicked  331:22
clicking  334:18
 342:11
client  10:4
 14:11 36:3
 58:10 61:17
 85:8,9,16
 86:15 138:14
 155:2 356:13
 356:13 359:22
client's  154:20
clients  87:12
 137:7 139:8
 227:15 296:17
close  5:15 45:3
 61:10 79:13
 157:10
closer  290:8
 373:18
closest  244:9
 246:8 251:2
 258:14 292:1
cloud  59:9
 82:16
cocounsel  6:18
code  180:16,19
 181:13,16,18
 181:19 182:6,9
 182:12,14,17
 182:18,20
 183:2,11,12,19
 184:13,16,17
 184:21 185:2,8
 185:9,14,19

186:11,18,19
187:1,5,7,12,20
188:4,5,9,13,17
189:1 190:2,6
190:7,21 192:9
192:13 197:11
213:1 233:10
233:15 235:13
235:14,16
239:9 252:22
278:22 279:18
288:12
codes  183:15
 183:18 288:12
coding  70:10
 181:3,4,8
 183:21 190:5
cold  371:14
colleague  6:10
colleagues
 111:13 169:1
collected
 128:15
collecting
 132:17
collection
 151:14 342:21
college  75:20
 110:11
colloquialism
 280:13
colloquy  84:6
 98:11

colorful  168:3
columbia  1:19
 91:3
column  221:20
 221:21 280:6
 295:7,13
 297:14 332:13
 332:16,22
 369:1
columns
 294:17 333:4
 377:4
combination
 266:21 267:3
 268:17
combinations
 266:1,14
 267:12 268:8
 268:22 269:8
 276:19,21
 277:13,17,21
combining
 303:20
come  21:7 35:7
 64:21 68:4
 110:6 111:5
 135:21 194:9
 220:7,8,18,19
 251:17 315:15
 358:19 376:17
 383:14
comed  4:6
 374:5,10,11

comes  8:17
 10:3 18:5 97:2
 97:8 186:19
 220:20 292:13
 302:10
comfortable
 348:2
coming  228:11
commencing
 1:15
comment
 196:11
commenting
 166:1
comments
 188:15,16
commercial
 227:10,18
commission
 161:2 162:22
 163:5 169:14
 169:18 170:2
 170:13,14,17
 311:19 312:5
 314:21 322:3
 372:7,8
commissions
 379:13
commit  8:20
commodities
 370:5
commodity
 366:3,12,12
 369:19

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[common - compound]

Page 18

| | | | |
|---|---|---|---|
| **common** 91:6 | **compare** 68:18 | 45:12 46:12 | **completed** |
| 140:11 182:17 | 68:22 193:1 | 48:6 51:11 | 391:16 |
| 188:10 273:5 | 194:15 199:10 | 94:20 95:15 | **completeness** |
| 273:13 328:21 | 212:3,4,16 | 96:6 180:11 | 313:8 |
| 329:12,13,14 | 220:6 225:7 | 218:15 253:12 | **compliance** |
| 329:16 342:21 | 254:6 335:11 | 274:16 325:20 | 295:22 298:13 |
| 343:3 356:6 | 335:12,21 | 358:14 | 299:15,16 |
| 358:2 379:11 | 336:1,16,18 | **comparisons** | 300:1,6,17 |
| **commonwealth** | 338:11,13,14 | 48:21 377:20 | 301:1,1 303:17 |
| 374:13 | 338:16,19 | **competitive** | 303:18 305:16 |
| **communicate** | 339:9,13,17 | 155:12,15,17 | 307:13,15 |
| 283:10 307:12 | 341:12 343:17 | 367:5 | 308:3 310:4 |
| **communication** | 343:21 344:3,5 | **competitors** | 316:15 320:8 |
| 202:5 | 344:16,19 | 34:16 | 320:16,17 |
| **communicati...** | 345:4,5,10,12 | **compiled** | 321:1,2,3 |
| 36:3 149:9 | 345:13,17 | 128:16 185:6 | 322:1,15 340:6 |
| 203:14 | 346:8 347:12 | **compiling** | 350:13 |
| **companies** 81:8 | 350:1,7,19,20 | 43:17 | **complicated** |
| 100:7,10,15 | 351:21,22 | **complaint** 3:12 | 205:10 |
| 115:7 138:2,21 | 353:1,7,12,12 | 41:13,20,22 | **component** |
| 161:3 329:2 | 353:14 354:5 | 42:2,2,12,13,18 | 338:12 339:13 |
| **company** 13:2 | 356:16 358:4 | 42:20 43:2 | 339:16 |
| 91:12,14 98:6 | **compared** | 44:9 47:2,22 | **components** |
| 114:4,5,20 | 148:15 219:14 | 51:18 52:1 | 68:22 193:2 |
| 135:13 136:20 | 365:14 | 53:2,9,16 60:6 | 295:9,12 |
| 137:22 141:3 | **comparing** | 88:2,3,6 | 336:19 339:16 |
| 156:12,22 | 43:2 48:17 | 325:11,16 | 340:21 345:3 |
| 157:1,11,12 | 50:14 92:14 | **complaints** | 353:11 |
| 159:18,20 | 219:11 318:8 | 42:6 53:21 | **composition** |
| 230:6,20 | 364:15,16 | 54:7,13 | 129:16 |
| 310:20 311:4 | 377:15 | **complete** 125:5 | **compound** |
| 321:22 | **comparison** | 125:20 182:10 | 59:19 102:19 |
| **company's** | 34:3,8,12,15 | 195:9 344:13 | 129:20 162:17 |
| 138:17 | 40:5 44:3 | | 163:12 165:14 |

Frank A. Felder , Ph.D.                                      January 8, 2026
Brous v. Eligo Energy, LLC

**[compound - consistent]**                                              Page 19

| | | | |
|---|---|---|---|
| 235:20 315:11 | **concerns** | **confident** 84:17 | 139:2,7 142:10 |
| 324:8 332:8 | 218:13 | **configuration** | 148:14 149:22 |
| 356:3 363:4,19 | **concluded** | 254:6,7 | 198:19 269:1 |
| 364:7 | 39:12,20 | **configurations** | 359:12 361:2 |
| **computation** | 386:10 | 251:9,12,14 | 363:1,16 365:2 |
| 193:18 | **concludes** | 252:11,13 | 365:4 |
| **computational** | 386:7 | 253:5,5,7,8 | **considerable** |
| 278:8 | **conclusion** 24:4 | 324:2 329:22 | 300:5 |
| **computations** | 29:7 32:3 | **configured** | **consideration** |
| 67:6,11 174:3 | 33:14 35:2 | 251:17 252:2 | 165:12 |
| 175:3 176:5 | 36:15 39:17 | **confirmation** | **considered** |
| **computer** 59:4 | 41:15 48:10 | 120:22 | 3:17 54:21 |
| 59:8 70:12 | 95:5,18 123:17 | **conflict** 34:12 | 55:5,7 122:8 |
| 82:16,19 104:9 | 213:14,18 | **conform** | 124:18,22 |
| 104:17 182:17 | 216:10 217:1 | 388:11 | 125:6,18,21 |
| 252:22 277:10 | 223:10 301:13 | **confused** | 126:12,19 |
| 279:12 288:7 | 368:21 | 158:14 258:18 | 127:4,19 130:9 |
| **computers** 71:7 | **conclusions** | **confusion** | 142:11,17 |
| 104:20 | 33:20 34:19 | 102:20 | 149:19 193:14 |
| **con** 140:14 | 39:22 | **conn** 282:6 | 194:5,8 196:18 |
| 239:2 266:15 | **conditional** | **connected** | 204:12 223:19 |
| 353:19 354:3 | 233:22 289:7 | 170:6 333:13 | 226:2,5 246:19 |
| **conceive** 353:1 | 289:13 290:17 | **connecticut** | 252:2 260:14 |
| **concept** 262:7 | **conditioning** | 170:7 171:6,18 | 260:17 324:11 |
| **concepts** | 371:15 | 172:4 | 326:4,9 354:9 |
| 379:17 | **conditions** | **connection** | 359:12 372:8 |
| **conceptually** | 161:3 212:19 | 73:6,8 | 380:17 |
| 339:20 | 312:10 371:10 | **conservative** | **considering** |
| **concern** 225:6 | **conduct** 336:5 | 75:2 79:1,12 | 129:17 276:16 |
| 369:4 | **conducting** | **conservatively** | **consist** 115:18 |
| **concerned** | 202:21 | 75:1,11 | **consistent** |
| 366:13 | **confer** 45:4 | **consider** | 49:14,20 50:16 |
| **concerning** | 61:12 | 126:15 135:17 | 50:22,22 51:4 |
| 161:12 271:22 | | 136:18,19,19 | 218:9 238:4 |

Frank A. Felder , Ph.D.                                January 8, 2026
Brous v. Eligo Energy, LLC

261:6 315:5
**consistently**
234:19
**consists** 34:1
**constructed**
354:15
**construction**
91:13
**construed**
353:5
**consul** 81:4
**consultant**
63:17 169:12
169:13
**consultants**
63:4,12,21
64:2,8 65:21
**consultation**
81:4
**consulting**
19:18 23:19
43:20 44:11
53:21 60:19
61:4,8 62:6,22
84:1,10,10,12
86:2,3 91:12
94:2 97:8
101:4,6,10
102:4,5,9,13,17
102:21,22
103:3,9,11
106:16
**consumed**
357:18

**consumer**
195:10,10
**consumption**
276:7,9
**contact** 157:1,3
211:20 239:4
**contacted**
52:11,16,21
53:13 110:19
319:7
**contacts** 41:10
205:15
**contained**
187:6 346:14
346:15
**containing**
242:16
**contemporan...**
43:3,10 50:17
**contending**
61:7 223:6
**content** 59:13
60:7 61:1
303:2 304:8
305:4 306:16
306:20
**contention** 40:4
44:2
**contents** 36:2
149:9
**context** 140:8
167:18 230:3
260:8,11 320:5
353:19 366:10

369:12
**contexts** 211:13
**continue** 5:8
146:13 182:9
**continuous**
11:19
**continuously**
11:19
**contract** 34:11
48:22 49:6,8
49:13 198:14
198:22 209:22
211:19,20
212:2,3,5,18,18
213:10,19
216:5,7,18
221:6 240:6,7
240:10 251:6
258:15 260:20
261:2,3 272:17
273:17 274:15
304:17 306:15
307:10 315:6
322:3 323:22
324:4,16 325:1
325:8 355:17
355:19,22
356:18 364:15
364:16,17,19
365:13 377:6
380:2
**contract's**
132:6

**contracting**
91:13,13
**contracts** 49:1
49:8 131:17
132:18 147:3,6
153:18 160:11
161:4,12,16
201:13 204:12
204:13 205:14
205:15,18
206:17 207:8
217:6 262:16
263:2 264:9
313:20 314:1
321:13 355:13
**contrary** 85:11
**contributing**
226:12
**control** 253:22
254:4 289:22
332:17,19
333:4,13
353:17 356:2
**controls** 252:17
**conversation**
72:20 126:14
346:16
**conversations**
5:6 86:15
136:5,13
166:17 237:8
**conversely**
214:10

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[copied - costs]**

Page 21

| | | | |
|---|---|---|---|
| **copied**  218:14 | 118:14,22 | 255:4,11 256:1 | 341:11 358:6 |
| **copies**  59:11 | 119:19 121:15 | 257:14 258:10 | **correspond** |
| 241:6 351:5 | 122:19,20 | 260:18,22 | 207:16,22 |
| 391:14 | 123:4,15 124:1 | 261:4,5 264:21 | 265:16 294:9 |
| **coppermine** | 124:4 126:1,16 | 265:2 268:5 | 332:6 338:9 |
| 1:16 5:18 | 126:20,21 | 272:1 273:9,21 | **corresponded** |
| **copy**  39:2 | 129:1 135:18 | 274:2,5 281:20 | 357:4 |
| 67:22 89:17 | 135:19 137:17 | 282:12,13 | **corresponding** |
| 90:1 218:11,18 | 138:3,18 141:1 | 284:4 285:19 | 223:3 265:10 |
| 368:5 | 147:13 148:11 | 287:20 291:2 | 267:20 324:22 |
| **copyright** | 151:14,21 | 293:16 299:19 | **corresponds** |
| 89:16,22 90:7 | 153:8 154:4,12 | 299:20 303:2 | 148:17 205:17 |
| **copyrights**  90:5 | 157:13 161:7,8 | 303:15 304:1,8 | 206:8 |
| **corbin**  131:19 | 162:16 163:13 | 306:16 307:11 | **corrosion** |
| **corner**  1:16 | 163:19 164:5 | 308:21 337:1,4 | 91:15 |
| **corporate** | 164:15 167:6 | 337:8 343:1,17 | **cost**  34:4 47:9 |
| 109:11 113:19 | 168:15 170:2,3 | 346:17 347:1 | 47:11,16 48:7 |
| **corporation** | 171:12 172:14 | 351:7 352:3 | 94:21 96:7 |
| 103:17,18 | 173:4 176:3,22 | 357:18,19 | 242:17 252:21 |
| **correct**  11:3 | 184:6 191:8 | 358:1,13 | 259:19 275:2,2 |
| 26:16 27:14 | 201:18,19 | 359:14 361:4 | 275:16,20 |
| 28:14 30:5 | 204:8,15 210:4 | 361:21 365:10 | 276:2,3,11,13 |
| 35:18 37:12 | 211:13,21 | 368:17 369:20 | 298:1 299:22 |
| 39:5 49:6 | 215:11,13 | 376:9 378:21 | 300:2,16 301:3 |
| 51:18 55:5,6,9 | 222:1,4 223:1 | 379:7 380:6,8 | 303:14 308:1 |
| 55:10,14 58:5 | 224:10 225:17 | 380:12 385:4,6 | 317:3,16 |
| 63:1,2 75:3 | 226:13 229:19 | 388:10 | 335:10 339:8 |
| 78:8,12 79:2 | 231:12 232:19 | **correction** | 340:2,18,22 |
| 80:3,20 87:13 | 240:7 242:7,18 | 175:19 388:16 | 350:9,16 |
| 90:9,12 91:19 | 244:21 246:20 | 389:3 | 362:14 382:9 |
| 92:1 106:10 | 248:1 249:20 | **corrections** | 382:17 |
| 107:11,12 | 250:8,15 | 388:8 390:7,11 | **costs**  47:7 |
| 111:4 114:6 | 251:10,14,15 | **correctly**  22:17 | 48:17 49:14 |
| 116:21 118:8 | 251:19,20 | 182:11 252:19 | 92:15 194:21 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[costs - customer's]

Page 22

| | | | |
|---|---|---|---|
| 208:19 209:13 | 379:21,22 | cover 310:3 | current 69:17 |
| 209:20,21 | 387:8 388:15 | 387:5 | 170:9 304:7 |
| 211:1,9 216:20 | 391:14 | covered 85:13 | currently 20:17 |
| 231:17 275:14 | counsel's | 135:13 | 56:17 |
| 275:15,19,20 | 237:13,18 | covers 100:12 | curriculum |
| 286:12 322:10 | 286:8 | 340:1 | 3:15 |
| 323:8,8 325:13 | counseling | covid 110:9 | cursor 373:22 |
| 325:15 326:8 | 123:13 | crazy 290:4 | cus 307:4 |
| 334:21 340:3,4 | count 14:12,13 | created 180:5 | custom 326:18 |
| 350:3,6 | 15:4,20 16:11 | 186:16 277:5 | customer 143:9 |
| counsel 5:12 | counts 21:11 | creating 84:5 | 143:10 144:19 |
| 6:3 9:14,16 | couple 276:19 | credentials | 145:4 175:20 |
| 10:5 22:17 | 276:20 281:9 | 120:21 | 196:13 198:3,4 |
| 26:3 58:3 | course 9:12 | credible 311:11 | 200:17 213:6 |
| 59:14 60:7 | 122:13 129:12 | 311:11 | 214:1 215:15 |
| 73:13 77:13 | 164:17 176:15 | credit 340:9 | 215:20 216:5 |
| 135:21 177:9 | 180:15 231:1 | 379:22 380:4 | 265:10 267:21 |
| 191:4,5,7,11,12 | 313:12 325:4 | credits 210:21 | 271:19 273:22 |
| 199:4,6 201:17 | 376:18 | criteria 381:10 | 274:6 276:9 |
| 201:22 202:5,8 | courses 92:10 | criticism | 277:11,13 |
| 203:8 215:12 | 92:12 379:14 | 384:10 | 292:22 305:5 |
| 220:2 222:3,5 | court 1:1 5:14 | cross 128:11 | 305:15 306:21 |
| 246:2 247:11 | 5:20,21 6:21 | 170:6 171:4,8 | 307:4,7 308:2 |
| 247:17 251:13 | 7:22 8:5 24:1 | 217:14,17 | 313:20 314:9 |
| 252:3 255:10 | 24:15,20 30:1 | 218:3,5 244:4 | 314:13 318:19 |
| 257:13 258:10 | 31:4,20 36:22 | 296:3 315:19 | 324:5,17 |
| 258:16 259:1,1 | 37:1,7,7,18 | crux 223:16 | 327:10 353:13 |
| 259:2,4,12 | 38:10,15 39:3 | cs 391:15 | 355:5 356:8,13 |
| 281:19 282:12 | 39:12,20 40:14 | csv 154:4 | 357:1,16 |
| 286:6 293:15 | 40:22 387:1,20 | 190:17 226:10 | 364:22 365:3,5 |
| 306:6 308:11 | court's 31:22 | cu 175:19 | 382:18 |
| 309:6 313:13 | 34:21 | 223:2 | customer's |
| 337:14 346:11 | courtesy 9:7 | cuff 314:4 | 139:2 198:14 |
| 346:13 350:8 | 87:1 | | 198:22 303:22 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[customer's - date]

Page 23

| | d | | |
|---|---|---|---|
| 352:12 382:15 | **d**   3:1 5:1 | 152:3,4 154:4 | 326:20 327:16 |
| **customers**   34:2 | **d31**   184:5 | 167:2 176:8 | 328:1,10,13,14 |
| 131:17 132:20 | **d7**   291:3 | 178:15 180:7,9 | 329:2,3,3,21 |
| 135:17 138:1,2 | **daily**   202:16 | 180:12 181:18 | 330:4,6 333:18 |
| 139:8 143:1,3 | **damage**   194:9 | 184:16 185:5 | 336:12,21 |
| 151:21 152:14 | 198:19 213:17 | 185:17,20 | 342:21 345:2,3 |
| 153:8 154:20 | 223:19 230:3 | 186:13 187:5 | 346:2,5,7,12 |
| 155:9,9,10 | 231:8 376:20 | 187:20 190:10 | 348:4 354:16 |
| 158:5 159:1 | 383:18 | 192:7 194:12 | 355:6 356:1 |
| 204:7 206:14 | **damaged** | 194:16,20 | 358:8,8 379:6 |
| 211:18,19,20 | 192:18,18 | 195:5,10,14 | 379:18 384:5 |
| 223:3,7,17,20 | **damages**   48:16 | 215:15,15,20 | 385:1,7 |
| 224:3,4,5,9 | 49:11 152:11 | 232:18 233:1,3 | **database**   67:13 |
| 225:2,14 226:1 | 174:13 197:9 | 233:21,22 | 292:22 312:22 |
| 226:2,22 227:1 | 198:16 199:1 | 234:15,15 | **dataset**   175:16 |
| 227:5,6,11,15 | 200:17 201:9 | 236:4,19,22 | 179:9 192:7 |
| 227:18 272:14 | 201:10 211:18 | 238:5,15 239:9 | 195:10 196:18 |
| 274:10 282:3 | 216:4 220:10 | 239:10,13 | 214:1 227:5 |
| 303:12 313:21 | 221:6 223:7,15 | 249:14 253:1,3 | **date**   5:3 205:16 |
| 320:15 321:12 | 224:5 225:3,15 | 253:9 254:11 | 206:9,13,21 |
| 323:22 353:8 | 226:4,6,13,17 | 254:15 255:1 | 207:4,11,11,12 |
| 353:14 355:9 | 251:10 277:10 | 256:4 258:14 | 243:13 244:9 |
| 365:5,13 | 301:8 305:20 | 271:19 272:6 | 245:22 246:1 |
| 367:16 371:14 | 377:7,8,16 | 274:10 275:1 | 248:3 251:2 |
| 377:6 382:8 | 383:12 | 277:18 279:12 | 260:13,16 |
| **cute**   200:22 | **dark**   112:18 | 279:13 280:5,6 | 291:11,19 |
| **cv**   1:8 110:22 | **dash**   344:16 | 280:12,15,18 | 292:1 356:21 |
| **cw**   295:2 | **data**   33:22 | 289:2,6,20 | 356:22 357:3,6 |
| **cycle**   279:5 | 34:18 40:2 | 315:18 317:21 | 357:17 358:9 |
| 352:12 353:4 | 43:17 70:10,14 | 318:8,13 | 358:14 374:16 |
| 353:15 354:1,7 | 78:5 132:5 | 322:15 323:4,8 | 375:16 381:16 |
| 354:12 356:9 | 150:6 151:14 | 323:10,10,13 | 381:20 382:3,8 |
| **cycles**   354:20 | | 323:15,16 | 382:10,15,19 |
| | | 324:6,20 | 388:1,4,13 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[dated - deposition]

Page 24

| | | | |
|---|---|---|---|
| **dated** 122:21 122:22 | **decades** 111:8 | **defense** 201:22 202:5,8 246:2 | **depending** 106:17 178:19 |
| **dates** 103:7 206:12 328:11 355:7 | **december** 236:20 238:15 243:4 334:11 | 346:10,13 381:15 | 224:18 225:15 226:3 269:17 272:18 340:5 |
| **daubert** 29:5 29:13 30:2,16 | **decide** 273:3 **decided** 128:9 | **defer** 266:18 **deferred** 201:17 | 352:1,12 353:4 353:15 |
| 30:20 31:1,20 34:22 35:22 37:11 40:17 | **decision** 3:10 3:11 34:21 36:13 37:18 | **define** 336:18 **defined** 142:18 270:11 | **depends** 140:8 175:10 185:12 186:7 336:14 340:11 352:13 |
| **david** 2:17 6:10 | 39:3 135:20 203:17 | **defines** 141:7 **defining** 370:1 | **depo** 195:18 |
| **day** 246:8 328:12 353:22 354:1 356:14 371:5 390:14 | **decrease** 274:21 | **definitely** 100:10 **definition** 15:15,18,21 | **deponent** 7:3 388:12,14 390:1 391:13 |
| **days** 172:14,21 172:21 173:4 | **def** 119:18 151:7 **def00** 130:20 | 16:8,12 54:13 81:9 | **deposed** 7:12 7:13,15,16 86:22 |
| 330:3 354:6,8 354:21 356:14 | **def019448** 4:5 **def024595** 3:22 287:20 | **degree** 90:15 91:6 92:8 191:20 | **deposing** 391:13 |
| 382:18 383:3 383:16 388:13 391:16 | **def0932** 151:8 **default** 234:21 | **degrees** 91:19 91:20 | **deposition** 1:13 3:2 4:1,3 5:11 5:17 9:12 |
| **dc** 170:8 | **defendant** 5:12 28:20 34:2,4 | **delete** 196:19 **deliver** 171:21 | 32:11 38:20 42:14 73:4,9 |
| **deadline** 301:11 | 132:6 208:3 230:2,3 | **delivery** 155:11 156:11 157:19 | 73:10 74:19 83:18 87:21 |
| **deal** 358:5,7 **dealing** 355:21 355:22 | **defendant's** 34:3,9,16 198:15 | **dem** 361:12 **demand** 68:21 | 98:10 119:16 121:22 122:5,9 122:15 129:2 |
| **deals** 100:9 221:1 | **defendants** 1:11 2:9 6:8 | **denominated** 141:16 | 130:5 131:10 150:16 176:15 |
| **dealt** 364:6 | 17:9 128:2 | **depend** 175:14 248:17 | 176:22 204:20 229:12 234:5 |
| **decade** 11:1,5 11:16 | **defending** 258:20 | | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[deposition - direction]

Page 25

241:2 287:16
326:3 333:1
351:8 359:12
360:20 361:2
368:12 373:5
386:10 388:3,7
389:2
**depositions** 9:3
9:13 131:5
132:5
**deregulation**
34:13
**describe** 67:1
129:18 148:2
188:3,17
240:17 250:19
264:3,5 342:20
**described**
44:14 50:20
67:14 81:1
130:4 152:3
172:15 186:20
193:15 195:7
195:20 220:14
244:7 249:9
252:7 273:16
281:1 300:15
300:21 302:5
310:18 312:13
330:14 339:22
369:12 374:22
378:19
**describes** 47:15
245:19 310:15

**description** 3:9
49:19 67:4
257:18 261:19
**design** 330:5
370:12
**designated**
163:19
**designed** 120:9
**detail** 174:5
260:1 383:2
**detailed** 302:9
**details** 162:12
**determine**
129:10 159:3,8
240:10 286:9
345:10 362:14
370:16 384:21
**determined**
208:11 209:6
210:14 353:12
**determines**
367:19
**determining**
259:5
**developed**
128:17 216:3
**developer**
171:14
**developing**
119:7
**development**
379:15
**di** 65:4

**dif** 126:6
**diff** 16:11
**difference**
23:18 184:20
216:4 224:22
249:15 301:2
303:17 306:12
306:13,14,22
307:8,9 325:15
384:22
**different** 8:8
12:4 14:18,21
15:4 17:11
67:15 82:17,18
82:19,20 89:1
96:16 99:7,14
102:21 103:1
114:18 120:11
121:1 126:6
137:15 138:2
143:4 151:12
152:8 153:18
160:5 177:19
183:9 186:22
187:9,12 189:1
192:14 193:2
195:4 206:12
212:7,8 213:10
213:11 219:22
248:19 253:1,2
267:3,12 268:9
268:13,14,22
269:8,20 270:9
271:11 272:21

273:1,8 274:1
275:12,13,19
276:16,18,19
276:20,20,22
277:5,8,12
278:19,19
282:18 285:1
312:11 315:20
336:2 338:15
339:2,5,5,18
340:15 346:3
351:19,19
352:15,17
353:2,3,3,8,9
354:20 364:18
383:22
**differently**
339:18 352:18
**direct** 34:12
49:21,22 51:1
67:6,15 88:6
132:1 148:18
149:6 150:21
153:12 158:10
160:22 170:8
172:15 195:17
198:12 217:15
244:6 250:22
285:13 307:21
383:1,5
**directing** 53:20
**direction**
215:12

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

[directly - documents]                                            Page 26

| | | | |
|---|---|---|---|
| **directly** 113:15 | 159:2 301:10 | 186:17 193:9 | **district** 1:1,1 |
| 202:8 | **disclosures** | 265:15 279:8 | 1:19 5:14,14 |
| **director** 111:10 | 16:20 25:11 | 288:11 289:22 | 37:1 39:12,20 |
| 111:16 113:12 | 93:22 151:20 | 292:3 377:14 | 40:14 |
| **dis** 128:3 179:6 | 152:12 153:7 | 383:22 | **dive** 240:3 |
| **disagree** 45:2 | 153:15 154:8 | **discusses** 161:2 | **diversity** 355:6 |
| 94:13 372:17 | 154:16 155:4 | **discussing** | **divide** 339:18 |
| **disagreed** 37:2 | **disconnect** | 38:17 103:2 | **dividends** |
| **disagreement** | 371:9 | 140:9 150:16 | 99:19,19 |
| 45:8 | **disconnecting** | 175:15 176:2 | **division** 337:13 |
| **disclose** 36:2 | 371:14 | 280:15 319:19 | 337:21 |
| 84:2 136:12 | **discovery** | 335:1 364:2 | **divulges** 136:4 |
| 149:9 162:1 | 54:20 55:8,13 | **discussion** 35:3 | **doctor** 45:21 |
| 203:13 245:5 | 56:1,6 84:10 | 341:13 379:20 | 226:20 |
| 337:16 | 120:6 127:19 | 382:1 | **document** 3:12 |
| **disclosed** 67:7 | 128:10,20 | **discussions** | 3:13 32:20 |
| 70:17,21 95:12 | 131:12,20 | 149:7 280:14 | 43:6 47:15 |
| 124:1 126:10 | 134:4,8,10 | **disparity** 300:5 | 49:18 124:21 |
| 159:9 161:10 | 135:6 151:13 | **dispute** 132:17 | 124:22 188:12 |
| 164:4,6 165:3 | 160:19 161:11 | **distill** 199:8 | 188:22 189:4 |
| 194:4,7 246:14 | 161:15 192:8 | **distinct** 25:14 | 205:12 221:16 |
| **disclosing** 36:5 | 227:6 242:16 | 65:9 168:3 | 241:8,15 242:6 |
| **disclosure** | 305:22 306:3 | 268:16 | 243:18 248:22 |
| 12:21 22:13 | 324:20 | **distinction** | 292:5 303:5 |
| 23:10 24:11 | **discrepancy** | 23:20,21 103:2 | 374:1 |
| 29:15 36:16 | 383:21 | 117:18 234:1 | **documents** |
| 42:9 52:8 | **discrete** 75:20 | 234:14,17 | 3:17 56:12 |
| 55:22 59:20 | 186:2 261:8 | 266:20 | 119:17,18 |
| 62:16 69:7 | **discuss** 182:8 | **distinctly** 28:11 | 120:1,3,5 |
| 74:6 77:5,22 | 366:17 | **distinguish** | 121:2,6,8,12 |
| 79:5 80:14 | **discussed** 82:5 | 193:13 | 122:8 125:6,17 |
| 82:13 107:1 | 89:4 93:3 | **distribution** | 125:21 126:6 |
| 108:4 115:1 | 112:3 142:22 | 141:3 275:8 | 126:12 127:3 |
| 116:14 128:3 | 179:7 182:1 | 276:8 | 127:19 128:8 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[documents - ed]

Page 27

| | | | e |
|---|---|---|---|
| 128:10,19,20 | **downloaded** | 311:11 327:4 | **e** 3:1 5:1,1 |
| 129:4,7,9,17,19 | 68:14 | 346:18 349:21 | 298:10,14 |
| 130:3,8,9,22 | **downloading** | 361:3 363:7 | 299:18 |
| 149:19 151:12 | 190:12 | 366:2 367:10 | **earlier** 23:17 |
| 160:18 192:22 | **dozen** 14:14,14 | 369:8 373:8 | 30:8 119:16 |
| 193:2,14 206:1 | 15:19 16:3,9,9 | 375:11 378:11 | 147:1 169:5 |
| 246:1,2,14,19 | 23:6 25:17,17 | 378:15 384:9 | 204:12 263:3 |
| 373:8 | 25:17 80:19,20 | 384:11 385:10 | 265:11 306:11 |
| **doing** 59:16 | 81:10,10 | 386:7 | 324:2 325:12 |
| 70:10 76:8 | 253:18,22 | **draft** 185:13 | 365:10 377:4 |
| 102:16 104:5 | **dozens** 268:22 | 195:6 | **early** 372:6 |
| 174:21,22 | 269:8 | **drafting** 44:19 | **earn** 101:13 |
| 175:20 176:9 | **dr** 7:10 29:4 | 53:16 56:5 | **earned** 88:21 |
| 178:2,5 180:9 | 32:15 33:9,19 | 125:6 165:2,7 | 108:12 |
| 188:18,20 | 33:22 34:8,14 | 165:12 166:1 | **ease** 140:21 |
| 190:13 195:4 | 34:17 38:19 | **drafts** 54:6 | **easier** 198:7 |
| 203:15 251:4 | 39:21 40:14 | 185:8 | **east** 270:22 |
| 258:8 261:12 | 41:2 43:19 | **dramatically** | **easy** 8:11 |
| 278:6 279:22 | 44:18 73:12 | 299:5 | 330:11 380:10 |
| 280:21 295:17 | 83:13 95:11 | **drastically** | **eclectic** 100:6 |
| 315:14 350:16 | 96:15 112:9 | 275:19 | **economics** |
| 379:13,17 | 131:19,19 | **draw** 236:10 | 114:16 262:7 |
| **dollar** 294:9 | 132:8 146:22 | **drive** 59:6,9,10 | **economist** |
| 296:15 317:1 | 149:6 152:7 | 59:11 | 111:11,17 |
| **dollars** 81:16 | 167:4,5 173:22 | **drop** 238:18 | **economists** |
| 88:22 196:6 | 176:18 177:15 | 263:11 279:11 | 369:5 371:22 |
| 296:14 | 189:11 202:20 | **dropbox** | **economy** 99:2 |
| **door** 138:5,5 | 203:5,8,13 | 120:15 | **ed** 140:14 |
| **double** 23:1 | 205:10 207:21 | **due** 371:11,11 | 266:15 317:13 |
| 193:7 359:15 | 216:22 218:11 | **dulles** 1:16 | 317:16 319:14 |
| 381:9 | 219:20 229:11 | **duly** 7:4 | 353:19 |
| **download** | 234:14 236:9 | | |
| 68:17 333:17 | 251:3 284:6 | | |
| | 291:1 310:1 | | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[edison - employees]**

Page 28

| | | | |
|---|---|---|---|
| **edison** 354:3 | 196:4 305:16 | **eli** 132:20 | **eligo's** 43:2 |
| 374:13 | 336:7,19 | **eligibility** 29:9 | 44:4,14 45:12 |
| **edit** 188:9 | 345:18 371:13 | **eligible** 225:14 | 45:13 46:7,12 |
| **editing** 165:22 | 372:12 377:19 | **eligo** 1:9,9 5:13 | 46:12 48:7 |
| **editor** 64:10,13 | **el** 132:20 | 6:8,9 14:21 | 51:12 102:6 |
| 65:8,19 66:6 | **elaborate** | 43:14 50:15 | 158:4 161:11 |
| 88:12 89:16,16 | 147:19 | 55:8 119:17 | 199:1 272:14 |
| 89:17 90:1 | **electric** 116:5 | 132:20 137:3 | 305:3 322:8 |
| **edits** 90:3 | 126:7 133:12 | 137:13,16 | 324:21 325:2 |
| 188:12 | 133:16,17 | 138:8 139:8 | 355:19 361:19 |
| **edo** 164:10 | 141:2 242:16 | 144:2,7,11,19 | 364:17 365:12 |
| 216:3 | 335:7 344:16 | 145:4 148:22 | 377:15 |
| **edp** 307:15 | **electrical** 92:11 | 149:17,20,21 | **ellen** 2:16 5:19 |
| 317:21 322:9 | 346:19 | 157:13,18 | **email** 2:7,13 |
| **effect** 196:8 | **electricity** 4:4 | 158:6,22 | 3:20 120:9 |
| 320:20 383:17 | 34:4,13 63:4 | 160:10 161:22 | 159:15 167:2 |
| **effective** 345:4 | 68:20 70:11,13 | 162:14 198:4 | 236:12,13,14 |
| **efficiency** | 111:13 115:4 | 199:10,12,18 | 238:13 |
| 371:16 | 115:13 155:9 | 199:20 200:2,9 | **emails** 164:22 |
| **efficient** 278:4 | 155:18 156:9 | 200:10 204:7 | 166:9,11,14,21 |
| **efficiently** | 205:14 242:17 | 213:6,7,10 | 167:13,15,15 |
| 372:2 | 317:9 339:21 | 214:2 263:21 | **emission** 327:7 |
| **effort** 81:2 | 340:2,18 | 264:8 273:17 | 340:9 |
| **eh** 28:4 45:16 | 342:22 362:15 | 273:19 282:3 | **empirical** 384:5 |
| **eia** 194:16 | 366:3,11 367:1 | 302:11 304:12 | 384:20 |
| 329:21 | 367:4,5,11,17 | 312:18 313:2 | **employed** |
| **eight** 84:22 | 369:3,13 | 321:16 323:7 | 49:21 387:9 |
| 126:14 166:8 | 370:10,12 | 350:9 351:13 | **employee** |
| 166:21 219:22 | 371:4 383:14 | 360:9 362:5 | 103:19 169:11 |
| 298:6 386:8 | **electronically** | 363:1,16,22 | 359:22 |
| **either** 12:6 73:2 | 120:5 387:4 | 364:3 380:1,1 | **employees** 63:8 |
| 99:7 139:14 | **elements** | 380:5 388:5 | 63:11 361:20 |
| 155:17 166:4 | 311:10,22 | 391:4 | 362:2,18 |
| 169:13 192:17 | 312:16 341:6 | | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**employment**
105:10,11
**en** 333:15
**encrypt** 233:16
**encrypted**
232:15 233:16
233:21 234:1
234:15 235:10
236:20
**encryption**
232:17 235:7
**ended** 170:16
**energy** 1:9,10
5:13 6:8,9 13:1
13:5 14:21
17:3,20 18:8
18:18 19:2,9
22:7 26:15
27:19 68:19
70:11 89:19
91:3 94:20
103:12 111:1
113:11 114:10
114:21 115:14
133:19 135:5
135:14,18
136:19 137:16
137:22 138:2
138:21 156:12
157:12 158:6
159:19 161:3
161:22 163:4
190:14 193:10
210:21,21

262:7 275:2,15
275:19 276:2
276:11,13
295:7 298:22
303:2,7,15,19
303:22 304:8
304:11,13
305:3 306:16
306:19,22
321:14,22
326:21 329:15
329:17 331:1
333:15 339:21
340:20 342:22
343:4 357:22
365:6 368:16
371:15 376:11
377:1,3 388:5
391:4
**engagements**
169:3
**engineer** 71:7
90:14,16
**engineering**
90:15 91:2,4
92:10,11,12
**english** 112:10
112:12
**enjoyed** 105:10
**enormous**
179:13
**enroll** 137:7
138:17

**enrolled** 137:3
137:10 144:2,7
144:7 204:7
206:14,16
211:19,19,20
302:11,17
303:12
**enrolling**
137:16
**enrollment**
139:3 206:13
**ensure** 180:8
195:8,9 252:18
**ensured** 182:5
**enter** 235:17
328:17 329:21
**entered** 207:8
240:6
**entire** 32:15
34:13 39:7
42:20 57:3,7
88:5 256:1
257:13 289:14
310:4 313:21
**entirely** 98:12
**entirety** 11:19
**entities** 320:12
**entitled** 124:18
313:14 368:16
**entity** 157:3
170:14 186:20
187:4 229:14
318:20 319:4
320:17,22

**entries** 147:22
196:14
**entry** 175:18
179:11 180:12
**ep** 310:3
**equivalent**
383:4
**er** 5:15
**erin** 73:12
**erin's** 149:6
**errata** 6:16
388:2,8,14
389:1 390:12
391:11,13,16
**erroneously**
40:13
**error** 335:14
377:18 388:10
**es** 339:8
**escapes** 140:15
**esco** 17:9 23:8
28:21 29:1
34:16 42:5
80:11 102:7
137:14 310:2,8
310:16,17,20
312:3,14 314:1
314:3,6 315:2
315:4,12,17,17
316:3,3,12
320:13 321:12
341:1 358:19
**esco's** 94:21
95:15 96:6

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[esco's - exhibit]**

315:18
**escos** 137:7
311:6 312:6
315:3 316:7
329:1 379:12
**esquire** 2:4,10
391:1
**essence** 214:21
**essential** 369:4
369:14
**essentially** 92:6
185:9 198:3
200:12 213:10
222:16,18
235:17 278:21
306:14 310:7
**established**
273:7 308:15
**estimate** 69:2
69:12 71:19
72:4,21,22
74:3 75:2,8
79:1 81:13,14
129:11 178:21
226:13 357:21
377:8
**estimated**
71:17 286:12
298:1 362:14
**estimates** 76:17
78:3,7 192:18
194:9 300:5
322:21 357:22

**et** 5:13,13
328:9
**etcetera** 5:21
**evenly** 356:17
**event** 123:8
170:1 321:11
357:16
**events** 168:21
168:22
**everybody**
228:14
**evidence** 39:22
**evident** 84:20
85:6 172:21
**evidentiary**
172:22,22
173:3
**ex** 15:17 84:10
373:3
**exact** 137:9
197:12 266:5
**exactly** 13:22
155:19 189:15
197:17 235:11
251:4 303:14
303:15 304:12
326:1 381:16
**examination**
3:5 7:3,7
378:17 384:18
**examined**
390:3
**example** 8:18
14:19 25:5

63:18 98:5
138:5,8,11,13
143:8 156:9
177:18 182:19
182:22 185:22
190:15 238:14
238:17 240:10
249:1 275:6
277:7 307:20
315:2 326:6
335:6 345:6
355:12 371:4
376:17 377:16
382:22 383:2
**examples**
193:20 196:8,8
280:21
**excel** 152:10
154:3 180:21
181:6,10,11
183:10,13,18
183:19,21
184:5,14,15,17
184:18,18,22
185:1,7 186:14
190:17 195:1
226:10 235:12
**exception**
108:12
**exceptional**
84:11
**exceptions**
100:19

**excess** 268:11
**exchange** 299:3
**exchanged**
164:22 166:10
167:13,15
**exclude** 40:14
196:22
**excluded** 148:3
**excuse** 10:5
124:16 127:13
153:19 168:10
271:5 285:11
350:2 375:17
**executed** 289:2
289:5
**exercise** 286:7
382:8,15
**exercises**
342:21
**exercising**
258:19 259:4
**exhibit** 3:10,11
3:12,13,14,15
3:15,17,17,18
3:19,19,20,21
3:21,22 4:1,3,4
4:5 32:10,11
38:20 39:4
42:14,18 49:19
50:21 55:4
87:21 119:14
121:18,20,22
122:5,9,15
124:15,15,16

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[exhibit - fact]

Page 31

| | | | |
|---|---|---|---|
| 124:17,17 | **expansive** | **expertise** 57:20 | 300:18 313:1 |
| 125:2,3,12,15 | 15:18 | 89:14 126:4,9 | 377:18 384:6,7 |
| 127:11,12,13 | **expectation** | 126:13 | **extents** 341:7 |
| 127:15 128:17 | 275:17,22 | **experts** 84:10 | **external** 333:12 |
| 129:2,2 151:8 | **expecting** | 163:17,18 | **extract** 178:15 |
| 195:18 198:12 | 254:8 | 164:1,4,8,8,10 | 184:16 190:3 |
| 204:20 205:2 | **experience** | **explain** 183:11 | 193:7 232:22 |
| 205:11,12 | 58:14 71:9 | 195:13,16 | 236:22 253:1 |
| 207:3,5 208:10 | 137:21 225:3 | 259:10 342:13 | 256:4 279:3 |
| 209:3,4 210:1 | 317:15 328:21 | **explained** | 280:15 |
| 210:11 234:5 | 329:19 334:5 | 86:12 87:15,15 | **extracted** |
| 234:10 236:10 | 342:22 356:6 | 156:18 188:12 | 181:18 185:4 |
| 236:11 241:1,2 | 358:15,18 | **explaining** | 186:13 190:10 |
| 244:16 248:1,2 | 379:12 383:8 | 259:14 | 194:22 275:1 |
| 248:6 251:8 | 384:5 | **explicit** 180:4 | 288:12 |
| 263:3 287:14 | **expert** 3:14,18 | **explicitly** | **extracting** |
| 287:16 309:14 | 12:8 23:19 | 286:17 376:19 | 175:21,22 |
| 309:15 326:3 | 24:1 29:9 | **exposing** | 253:3 289:20 |
| 338:6 343:13 | 43:20,20 44:10 | 126:19 | **extraction** |
| 351:6,8 360:14 | 44:11,18 46:19 | **exposure** | 176:3 180:7,9 |
| 360:20 368:10 | 53:21 55:13 | 363:14 | 289:2,5 |
| 368:12,16 | 59:18 61:5,8 | **extend** 9:6 | **extracts** 185:9 |
| 372:20 373:3,4 | 62:6 83:17 | 53:22 | **extremely** |
| 373:5,9 380:15 | 84:1,2,13 86:2 | **extensive** | 85:10 |
| 380:15,16 | 86:4 93:21 | 172:13 188:8 | **eyes** 112:18 |
| **exhibits** 3:9 4:9 | 94:2 103:3 | 379:10 | |
| 121:19 126:19 | 122:18 123:2 | **extent** 47:13 | **f** |
| 132:6 176:20 | 132:16 133:6 | 89:12 94:10 | |
| 176:20,21,22 | 139:4 204:1,14 | 95:18 96:9 | **f** 291:3 |
| 368:3 | 216:3 223:14 | 126:9 136:4 | **fa** 216:6 |
| **existential** | 236:21 241:16 | 148:1 165:22 | **face** 112:6,6 |
| 237:19 | 242:2 244:4 | 212:18 249:11 | **faces** 112:8 |
| **exists** 118:14 | 251:8 301:10 | 261:11 270:22 | **fact** 15:5 44:18 |
| | 307:15 | 275:12 278:2 | 85:10 131:5 |
| | | | 187:17 188:3 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[fact - felder's]

Page 32

| | | | |
|---|---|---|---|
| 189:5 201:4 | 136:16 140:4 | **features** 112:15 | 83:13 85:12 |
| 230:15 321:17 | 142:13 143:11 | **feb** 158:21 | 86:3 87:21 |
| 334:6 367:16 | 163:10 164:3,9 | **february** | 90:13 95:11 |
| 384:21 | 169:19 179:15 | 132:19,19 | 96:15 112:9 |
| **factor** 77:13,14 | 191:14,14 | 158:21,21,21 | 121:22 122:5,9 |
| 147:12 306:14 | 213:12 219:22 | 206:10 214:2,3 | 122:15 128:15 |
| 364:18 | 231:21 232:9 | 214:6,7,11,16 | 132:8 146:22 |
| **factored** | 236:9,9 239:18 | 214:16,19 | 152:7 173:22 |
| 226:12 | 254:1 265:20 | 215:1,4,16,21 | 176:18 177:15 |
| **factors** 208:20 | 267:10 269:1 | 249:2 256:5,6 | 189:11 190:9 |
| 209:14,20,22 | 270:6 301:22 | 256:8 257:8,11 | 192:17 197:13 |
| 211:2,10 | 323:1 375:4,4 | 332:3 334:8 | 203:13 204:20 |
| 216:20 340:15 | 383:20 | 356:15 | 205:10 207:21 |
| 341:2 363:1 | **familiar** 261:22 | **federal** 24:1,5 | 212:2,3,5 |
| **facts** 249:7 | 262:6 335:22 | 39:21 108:15 | 219:20 229:11 |
| 388:11 | 379:10 | 163:4,7 367:22 | 234:5,14 236:9 |
| **fail** 321:7 | **familiarity** | **fee** 147:5,16 | 241:2 251:3 |
| **fails** 391:18 | 230:1 | 148:1 201:5 | 284:6 287:16 |
| **faint** 39:9 | **family** 103:15 | 221:2 | 291:1 327:4 |
| **fair** 10:14 | **far** 22:6 23:6 | **feel** 84:17 206:6 | 346:18 349:21 |
| 22:21 30:1 | 52:4 60:4 79:2 | 206:6 348:1 | 351:8 360:20 |
| 36:11 47:3 | 90:7 98:1 | 372:15,17 | 361:3 366:2 |
| 55:11 58:5,13 | 202:12 258:21 | 373:19 390:11 | 367:10 368:12 |
| 65:7 68:8 | 289:18 293:14 | **fees** 221:11,19 | 369:8 373:5,8 |
| 70:18 74:2 | 346:1 355:15 | **felder** 1:14 3:2 | 375:11 378:11 |
| 75:17 77:12 | **fashioned** | 3:14,16,18 4:2 | 378:15 385:10 |
| 78:17,17 81:15 | 182:6 | 5:11 7:2,10 | 386:7 388:3 |
| 81:20,22 82:3 | **fast** 31:8,10 | 29:4 32:11,15 | 389:2 390:16 |
| 90:2,11 96:17 | **father** 71:14 | 38:19,20 41:2 | 391:5 |
| 97:4 100:14 | 99:16,22 100:5 | 42:14 43:19 | **felder's** 33:9,19 |
| 101:1 102:15 | **fatigue** 10:18 | 63:8 66:10 | 33:22 34:8,14 |
| 112:9 117:6 | **favor** 100:7 | 68:11,12 69:22 | 34:17 39:21 |
| 123:22 124:6 | **fbfglaw.com** | 71:3,12 72:3 | 40:14 44:18 |
| 124:22 126:16 | 2:7 391:2 | 73:3 78:11 | 216:22 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[fellow - first]

Page 33

**fellow** 103:12
**felt** 254:11
**fewer** 128:18
**fields** 332:6
**fift** 207:7
**fifteen** 74:20
   356:14
**fiftyfold** 278:1
**figure** 61:22
   242:10 334:6
**figured** 232:22
   233:4 239:8
**figures** 174:3,7
   174:8,11
**file** 124:7,13
   150:12 154:3
   176:4 180:12
   180:20 185:1,6
   185:7 187:9,11
   190:12,18
   193:10,16
   195:1 205:11
   233:5,10,12
   240:17 245:19
   246:8 247:2,4
   250:13 252:7
   256:11 257:5
   277:15,17
   278:21 279:15
   279:19 280:3
   280:11 291:11
   291:18 331:2
   375:17 381:21

**filed** 3:12,13,19
   3:21 5:13
   14:19,21 15:15
   16:7 41:20,22
   42:2,7,12,13
   52:1 53:3,9
   60:6,11,11
   121:19 172:5
   217:15 336:19
**files** 68:14,16
   68:17,18,21
   82:18,18,20
   174:22 176:14
   177:6 178:13
   180:5,6 184:18
   184:22 186:14
   186:15 192:6
   192:13 193:15
   194:22 232:3
   242:16 245:3
   249:9,10,11,13
   250:2,2,5,19
   252:6 277:6,7
   279:7 289:11
   329:22 330:2
   330:12 331:4
   333:17 345:15
   346:14 381:9
**filing** 41:13
   51:18 309:5
**filings** 15:17
**fill** 115:11
**fille** 362:11,17

**filling** 280:9
**final** 186:18
**financial** 99:13
   100:10
**financially**
   387:12
**find** 60:19
   110:16 197:11
   249:2 254:10
   279:7 310:15
   310:20 311:3
   311:10,13
   312:14 318:8
   326:7 335:22
   342:7 348:4
**finds** 236:18
**fine** 38:19,19
   76:6 130:17,17
   134:18 141:17
   141:21 142:1
   145:13,15,15
   146:2 221:17
   221:17 349:6
   381:19,19
**finish** 9:5,7
**finkelstein** 2:4
   6:13
**firm** 6:7 22:18
   23:8,13,13
   25:20,21 26:16
   27:5,11 62:22
   66:21 78:12,18
   81:13 102:22

**firmly** 167:22
**firms** 25:19
   26:2 42:5 58:4
   78:15,19
**first** 7:4,11 8:9
   12:18 16:16
   33:8 35:10,15
   35:19 40:10
   46:15 52:5,11
   52:16 53:13
   62:11,14 64:19
   68:7 69:3,5,10
   71:18 72:5,9
   72:18,20 74:4
   101:7 111:20
   113:8 118:9,10
   118:11 133:6
   153:12 172:16
   174:7 175:6,9
   179:20,22
   199:14,19
   202:4 203:10
   204:1 205:17
   206:10 208:8,8
   223:13 236:14
   255:6,6 260:14
   260:16 273:20
   275:11 284:13
   287:3 288:21
   291:1 298:3,7
   301:20 307:22
   314:2 344:3,13
   347:21 355:8
   375:9 377:2

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[first - four]

Page 34

| | | | |
|---|---|---|---|
| 382:16 383:6 | **flowing** 171:18 | 332:10 369:18 | **formula** 184:4 |
| **fit** 12:1 | **focus** 33:6 41:3 | **footnotes** | 219:9 264:20 |
| **five** 92:9 | 307:6 | 147:20 153:13 | **formulas** 165:9 |
| 115:19 141:4 | **folder** 121:2 | **forces** 371:5 | 165:20 176:10 |
| 145:21 166:8 | **folders** 82:20 | **foregoing** | 216:12 217:2,5 |
| 179:5 193:4 | 120:10,12 | 390:3 | 217:14,20 |
| 200:1 228:20 | 121:1 | **forget** 13:2 | 218:2,7,8,13,18 |
| 228:22 229:1 | **follow** 26:11 | 140:20 | 218:19 219:14 |
| 243:9 263:14 | 237:12,17,22 | **forgot** 17:1 | 220:1,15 |
| 266:3 276:17 | 289:12 290:22 | **form** 94:21 | **formulate** |
| 281:2 359:6,7 | **followed** 59:22 | 95:16 96:7 | 279:3 |
| 369:1 | 60:9 259:12 | 149:3 184:14 | **formulating** |
| **fix** 104:19 | 286:5,8 375:8 | 201:11,12,12 | 56:10 |
| **fixed** 45:13 | **following** 40:10 | 243:18 326:11 | **forth** 130:5 |
| 46:8,12 51:12 | 43:13 47:17 | 363:21 379:3 | 331:7 |
| 208:17 209:11 | 147:1 200:11 | 380:7,11 381:6 | **forty** 300:21 |
| 210:19 226:22 | 215:10,10 | 384:3 | **forward** 258:14 |
| 263:15 303:1 | 258:9,22 259:4 | **formally** | 357:9 |
| 315:19 361:9 | 281:18,18 | 119:10 | **found** 156:10 |
| 361:11,12 | 284:2 290:19 | **format** 185:16 | 197:21 308:10 |
| **flag** 182:21 | 310:14 330:21 | 185:21 381:16 | **foundation** |
| 196:18,20,22 | 337:14 375:7 | **formatting** | 22:12 30:4 |
| 198:18 | 390:4 | 186:10 219:1,5 | 77:2,3 79:4 |
| **flagged** 197:8 | **follows** 7:6 | 288:16,17 | 119:2 127:7 |
| 197:21 225:22 | 78:8 | 289:7,13 290:5 | 159:11 162:4 |
| **flat** 279:15 | **foot** 46:3 | 290:17 294:16 | 292:11 305:8 |
| 280:3,11,13 | **footnote** 148:16 | **formed** 96:2 | 328:20 345:21 |
| **flights** 349:4 | 148:18,18 | **forming** 125:21 | 351:1 362:1 |
| **flip** 131:18 | 175:16 195:20 | 127:20 129:12 | 366:7 370:18 |
| **flippant** 177:22 | 198:13 207:22 | 129:18 134:12 | 372:11 |
| **floor** 303:1 | 223:16 224:13 | 135:7 139:3 | **four** 14:21 15:4 |
| **flow** 145:14 | 225:8,10,12,22 | 149:22 204:14 | 15:6 26:2 |
| 313:9 | 302:18 303:6 | 361:3 364:1 | 67:15 87:19,20 |
| | 304:17 318:3,4 | | 141:3 166:6,7 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[four - go]

Page 35

166:21,22
199:21 263:14
341:14,18
342:8 343:12
364:1
**fourteen**
360:16,17
**frame** 26:20
**framework**
7:21
**framing** 201:11
**frank** 1:14 3:2
3:14,15,18 4:1
4:3 5:11 7:2
32:21 197:12
212:2,3,5
279:12 386:7
388:3 389:2
390:16 391:5
**frankly** 53:22
**free** 206:6,6
372:15,17
373:19
**frei** 2:4 6:13
**french** 333:22
**frequently**
335:21,21
**front** 32:21
**full** 17:9 33:8
102:3,8 103:5
103:8 105:10
105:11 106:7
106:15,18
119:11 208:9

214:22 344:3
**function** 194:6
194:15 278:2,3
278:7 280:21
336:9 339:22
340:17,19
**functioning**
182:14
**functions** 278:4
**fund** 99:12,20
**funded** 113:18
117:13
**funding** 113:20
113:20 115:8
115:15
**funds** 99:4,6,7
99:8,13
**further** 87:3,8
87:16 94:16
176:5 220:9
251:3 255:17
378:11 384:18
387:11
**future** 258:3

**g**

**g** 5:1
**g22** 284:17
285:8,14,18
294:6 296:12
296:14
**gain** 233:9
235:10

**garber** 2:4 6:13
**gas** 28:8 133:15
133:17 155:9
155:18 335:7
**gather** 9:3
**gbl** 222:8
**gblankinship**
2:7 391:2
**general** 10:9
91:13 137:6,22
155:1 156:4,21
157:17 259:18
259:19,22
260:5,9 283:2
290:10 291:5
307:13 324:3
346:13 356:7
375:14 388:9
**generally** 293:7
360:4
**generating**
278:18
**genesee** 376:4
**genius** 104:8
**geographically**
271:10
**georgia** 2:12
107:16
**getting** 31:12
99:16 233:2
347:3
**give** 90:3
151:11 169:17
174:5 195:8

328:13 335:3
348:12
**given** 15:14
59:14 61:2,2
79:20,20
147:22 170:1
191:1,6 195:11
195:14 226:3
232:3 252:3
275:19 297:7
344:2 370:11
383:17 386:7
390:6
**gives** 76:21
77:10 184:5
335:13
**giving** 31:7
**glasses** 291:22
**glotzbach** 4:3
359:13,17,18
359:20
**go** 5:9 7:19
26:9 36:6
64:15 83:14
98:11 104:16
110:13 125:12
146:10 147:18
147:20 148:21
187:19 189:21
195:17 198:12
203:16 213:22
222:20 224:13
226:16 250:1,3
267:1 277:12

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[go - guess]**

Page 36

| | | | |
|---|---|---|---|
| 281:14 284:6 | 75:14 76:10 | 295:6 305:9 | 141:9 142:2 |
| 289:13 294:11 | 77:1 83:7,10 | 306:4,9 308:22 | 172:11 173:9 |
| 294:21 297:13 | 83:20 84:15 | 316:5 334:6,10 | 234:4 297:4 |
| 299:14 300:21 | 86:9,17,21 | 337:15 338:5 | 298:9 334:6 |
| 309:19 326:9 | 92:17 93:2 | 349:13,17 | 348:17 360:13 |
| 326:12,21 | 94:8,13 98:14 | 352:1,6 355:7 | 381:22 |
| 327:5 329:20 | 104:17 114:7 | 355:11 375:6 | **greater**  85:19 |
| 336:10 347:11 | 121:20 133:3 | 378:4,8 383:17 | 300:13 305:4 |
| 348:13,15 | 136:3,12 | 385:12 | 310:10 313:17 |
| 349:7 360:18 | 141:12,17 | **good**  5:2 7:9,13 | **greatest**  104:7 |
| 369:18 371:6 | 142:14 146:15 | 64:16 83:1 | **green**  297:18 |
| 371:22 373:18 | 146:19 164:12 | 110:13 187:15 | 298:10,14 |
| 375:15 377:2 | 166:13 171:5 | 317:20 318:8 | 299:18 301:3 |
| 377:22 378:1 | 172:19 173:14 | 332:1 366:4 | 305:18 307:14 |
| 379:16 383:14 | 173:18 177:10 | 369:5 370:1,11 | 315:5 |
| **goal**  117:7 | 196:16 199:22 | 385:22 | **greg**  2:4 6:12 |
| **goes**  72:19 98:3 | 202:13 203:10 | **goods**  242:18 | 22:18 202:16 |
| 123:8 210:18 | 203:12,12 | 370:5 | 391:1 |
| 221:7 299:5 | 205:1 206:5,18 | **google**  113:10 | **greg's**  23:13 |
| **going**  5:2 7:19 | 207:1 208:13 | 310:19 336:5 | 27:11 237:22 |
| 8:7 9:3,14,18 | 211:4 213:9 | 348:3 | **grind**  281:7 |
| 10:10,10 12:20 | 216:1 223:9,22 | **googled**  334:4 | **gross**  282:9,15 |
| 32:9,15,18 | 228:4,6,12,13 | **gotten**  239:22 | 282:22 283:3 |
| 33:6,13 36:1 | 229:3,7 234:9 | **grabs**  279:13 | 293:20 376:7 |
| 39:8,16 42:20 | 237:6,7,9,12 | 279:20 | **grounded** |
| 43:18,22 44:7 | 240:22 241:1 | **graduate**  91:18 | 33:21 |
| 44:12,20 45:1 | 242:1 248:8 | 191:20 333:19 | **group**  4:6 |
| 45:5 46:18,22 | 249:3 270:10 | **graduated** | 99:21 178:19 |
| 47:12 48:2 | 270:17,18 | 110:11 | 374:4,8 |
| 53:18 54:2,9 | 280:17 281:2,6 | **gray**  39:9 | **growing**  329:8 |
| 56:7,14 60:16 | 283:20 287:1,5 | **great**  8:15 9:1 | **guess**  20:16 |
| 60:17 61:12,18 | 287:9,13 | 9:11 10:21 | 23:18 44:16 |
| 62:2,15 63:6 | 289:12 290:16 | 50:12 104:14 | 45:21 46:14 |
| 69:6 73:16 | 292:1 295:3,4 | 105:18 126:2 | 47:20 48:5 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[guess - hmm]**

Page 37

49:5,19 54:19
60:10 62:10,20
66:20 75:1
76:19 79:10
84:4,19 87:4
92:5 95:11
101:5,7 105:8
105:19 107:10
111:19 112:10
117:5 118:1
120:13 124:14
126:10 138:16
139:12 147:18
154:1 157:9
158:17,19
164:17 167:9
168:11 179:22
183:19 184:21
185:12 186:4
188:21 192:7
194:10 198:1
198:20 201:20
217:2 219:10
247:8 255:10
278:6 281:17
284:5 286:4
290:18 293:20
302:10 307:6
308:12 323:7
323:18 330:15
332:5 334:1
355:2 356:11
366:19

**guessing** 243:8
**guys** 184:9,9
188:15 238:1
305:20

### h

**h** 88:14,15
359:17
**ha** 19:11 382:6
**habit** 112:7
114:17
**hair** 112:18
**half** 23:6 78:22
**hamdon** 19:8
19:12,12
**hand** 32:9 39:2
39:11 205:1
234:9 241:11
243:3 252:20
253:4,7,12
254:6 312:15
315:14 369:1
387:14 390:13
**hang** 376:21
**happen** 225:7
**happened** 9:13
256:3 279:9
**happens**
279:14
**happy** 76:1
88:4 113:4
**harassing**
98:16

**hard** 59:6,8,10
59:11 287:21
291:15 294:12
348:7
**hardware** 71:8
**head** 17:17
23:15 143:18
295:18
**header** 150:18
**heading** 43:8
47:8
**health** 10:18
369:6,15
**hear** 58:17
159:5 162:9
**heard** 230:13
367:9
**hearing** 16:14
161:2 170:21
172:22 173:1,3
387:7
**hearings**
172:13
**hebert** 2:16
5:19
**height** 112:17
**held** 1:15 105:9
**help** 63:5,6
92:5 104:11
120:13 271:17
277:6 284:5
292:1 356:11
358:5

**helpful** 57:6
88:7,8,9
290:12,13
**helps** 63:9
122:4 347:16
**herndon** 1:17
5:18
**hid** 233:22
**hidden** 233:16
234:15 236:5
239:17 294:17
296:3
**hide** 238:5
295:2
**hiding** 235:2
**high** 189:4
371:6
**higher** 26:4
198:14,22
202:19 220:11
**highland**
107:22
**hired** 110:14
**historical**
363:17 364:5
364:13,18,22
365:3
**historically**
384:4
**history** 363:1
**hit** 233:22
**hmm** 120:20
132:3 172:17
224:17 241:13

243:15 304:19
326:16 344:14
365:1 370:22
**hold** 136:1
197:22
**honest** 13:2
81:20 100:12
128:11 230:1
279:9 316:12
**honestly** 53:21
64:17 238:10
**hope** 236:18
378:12
**horizontal**
243:4
**host** 116:16
**hot** 371:5,14
**hour** 16:10,10
56:16,21 57:1
57:14 69:20
70:2 196:2
197:14 199:22
212:4 228:7,8
294:10 296:15
296:16,16,18
297:2 299:1,8
316:14 317:1,7
376:12 377:12
**hourly** 78:4
**hours** 59:15
62:11,13 68:21
69:3,4,9 71:18
71:19 72:4,10
72:15 74:3,18

75:2 76:20
78:3 80:1
115:19 156:10
197:13,16
281:9
**house** 6:11
**housekeeping**
121:18
**housing** 109:6
**hq** 333:7,22
**huh** 354:14
**hundred** 16:4
69:15 71:18
72:10,15 74:8
76:17,18 80:1
80:3 128:19
129:14 196:6
199:11,12,13
199:18,21
251:22 253:11
298:18 299:4
305:4 306:22
307:5,8,18
310:2,9,10,16
310:21 311:5
311:14,15,20
312:10 313:18
315:5,6 316:5
321:14
**hundreds**
279:6
**husband** 71:15
71:16

**hydro** 333:9,10
**hypothetical**
200:6 201:7
212:10,11,20
213:16 218:21
239:20 246:22
247:7 248:15
259:11,15
264:15 274:4
300:9 305:8
321:20,22
322:13 335:19

**i**

**icap** 364:5,9
**idea** 53:2 62:10
177:17,19
261:22 319:21
320:1 338:7
**identical** 210:6
218:12 225:6
249:14 253:4,6
253:10
**identification**
32:12 38:21
42:15 87:22
122:1,6,10,16
204:21 234:6
241:3 287:17
351:9 360:21
368:13 373:6
**identified**
197:8 252:6
261:7 285:3,5

285:8 379:6
**identifies** 242:5
242:15
**identify** 198:18
225:8 226:6
240:15,18
249:19 250:1,4
315:1,4,9
**identifying**
112:14 285:1
**identity** 61:4,8
61:17 67:7
84:12 85:8
**iec** 63:6,7,8
66:12
**illinois** 374:15
**illustrate** 14:19
14:20
**image** 197:12
**images** 198:18
**imagine** 316:12
**immaterial**
377:21
**immediate**
177:7
**immediately**
18:5
**imparted** 126:3
**implement**
174:19 198:16
271:12 300:18
354:11 364:3
**implementati...**
176:10

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**implemented**
181:19 217:3
364:1
**implementing**
67:17,17
**implication**
115:12 256:21
**implications**
32:5 170:10
171:19 237:21
259:10,14
366:17 370:12
**implied** 167:2
255:15
**imply** 314:3,5
**important** 8:8
111:12 136:18
162:12 257:18
**imprecise**
149:5
**impression**
258:21
**inaccurate**
34:19
**inadmissible**
33:19 39:21
**inappropriate**
98:12
**include** 14:8
24:13 126:4
147:16 167:2
179:5 250:14
264:8 286:12
306:13 334:13

350:3
**included** 4:9
102:9 127:4
128:10,12
149:19 224:5,9
225:14 252:1
262:16 285:14
285:18 286:21
306:15 340:16
342:1 364:4
**includes** 215:15
**including** 6:3
77:16 103:1
119:18 126:5
181:10,20
238:16 268:9
350:5 370:12
379:18
**inclusive** 214:9
214:11
**income** 96:16
97:2,12 101:13
103:5,9,15
108:12,14,17
108:21 371:15
371:16
**incomplete**
200:5 201:6
212:9 218:20
239:19 246:21
247:6 248:14
264:14 274:3
300:8 305:7
321:20 322:12

335:18
**inconsistent**
200:6
**incorporate**
340:6
**incorporated**
5:22 340:11
341:5
**incorporation**
335:7
**incorrect** 29:10
85:21 381:11
**increase** 224:19
224:22 268:20
274:20 277:22
383:12
**incredibly**
278:4
**incremental**
300:2,11,16
**incumbent**
34:10 40:6
**incurred** 323:9
**independent**
59:13,15 61:1
63:4,12,17,20
64:2,7 65:20
102:22 163:3
190:11 280:17
286:7 326:17
331:9
**independently**
337:11

**index** 99:4,6,7
99:12
**indicate** 388:9
**indicated** 174:2
265:18 387:15
**indicative**
188:15
**individual**
99:10,13,15
100:2 135:17
151:19 152:13
153:6 154:2,3
154:8 159:3
289:11 290:1
313:20 314:1
**individualized**
363:1
**individually**
288:14 319:3
**induce** 320:12
**industry** 65:17
70:11 91:9
116:5 126:7
329:15,17
330:9 333:15
333:21 343:4
358:3 379:10
**inflation** 255:7
255:14,16,19
255:22 256:8
256:10,16,22
257:4,5,9,10,12
257:19 258:6
258:20 259:6

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[inflation - interrogatories]**

Page 40

| | | | |
|---|---|---|---|
| 259:12 260:4 | **initially** 120:22 | **instruct** 10:5 | 309:6,9 388:6 |
| 283:2 291:1 | 232:20 | 36:6 43:22 | **instructs** 10:12 |
| 375:10 | **initiating** | 46:22 48:2 | **instrument** |
| **informally** | 319:17 | 53:19 54:3,9 | 99:14 |
| 117:11 | **input** 68:14 | 56:7,14 60:8 | **insufficient** |
| **information** | 174:22 176:13 | 60:17 62:2 | 34:18 40:2 |
| 36:18 47:2 | 177:5 178:13 | 83:20 89:9 | **intend** 123:9,9 |
| 131:7 134:3,11 | 178:15 180:5,6 | 93:2 136:3 | 124:7,13 |
| 135:4,6,11 | 180:12 182:2 | 177:12 203:12 | **intended** 100:6 |
| 150:5 156:10 | 188:18 192:6 | 203:13 237:4,7 | 261:16 |
| 158:12 159:14 | 192:12 193:15 | 283:20 306:4 | **interacted** |
| 160:5 161:10 | 194:22 277:6,6 | 337:15 | 118:18 |
| 161:14 162:15 | 278:7,21 | **instructed** | **interest** 259:18 |
| 193:8,10 | **inputs** 192:10 | 199:4,6 203:8 | 259:22 260:5 |
| 233:16 235:15 | 231:7 239:13 | 251:13 255:11 | 283:3 291:5 |
| 238:2 239:17 | **inquiry** 44:22 | 257:10,13,17 | 324:3,3 375:14 |
| 240:1 271:20 | 147:1 | 283:15,18 | **interested** |
| 271:22 277:15 | **insofar** 274:14 | 308:11 350:8 | 16:14 387:12 |
| 288:13 305:21 | **instance** 37:1 | 379:22 380:4 | **interesting** |
| 306:3 331:2 | 174:7 179:20 | **instructing** | 107:18 |
| 337:16 346:15 | 215:9 252:12 | 93:8,12 94:2 | **intermediate** |
| **informative** | **instances** | 136:10 | 177:16 194:11 |
| 356:7 | 254:10,22 | **instruction** | **interpret** 11:22 |
| **informed** 29:18 | 380:1 382:7 | 11:9 54:15 | 259:14 |
| 30:19 37:15 | **institute** 103:12 | 60:9 135:21 | **interpretation** |
| 126:3 131:6,7 | 108:2 111:1,6 | 175:2 237:13 | 48:22 49:5,8 |
| 286:20 | 111:7 113:11 | 237:18,22 | 308:20 |
| **inherited** 99:15 | 113:18 114:10 | 258:16 259:2 | **interpreted** |
| 99:21 | 114:21 115:8 | 259:12 281:18 | 216:7 314:8 |
| **initial** 41:10 | 115:14 116:8 | 282:12 286:5 | **interpreting** |
| 42:1 76:15 | 116:12 | **instructions** | 201:13 213:19 |
| 81:4 122:3 | **institution** | 180:4 201:17 | 216:18 |
| 124:17 125:9 | 105:22 118:3,9 | 252:3 258:9 | **interrogatories** |
| 125:11 128:1,2 | 118:21 119:6 | 284:2 286:8 | 56:11 132:4 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[interrupt - june]

Page 41

| | | | |
|---|---|---|---|
| **interrupt** 313:9 | 82:2,6,6,9,10 | **ipp** 114:7 | 375:13 |
| **introduced** | 133:12 148:13 | **ira** 1:4 | **itemized** 155:5 |
| 288:21 | 149:15,16,18 | **irrelevant** 98:7 | **iterative** 186:1 |
| **invalid** 344:17 | 151:11,19,21 | 98:15 | 186:5 |
| 347:12 | 152:13 153:6,8 | **irrespective** | |
| **investigate** | 153:19 154:3,6 | 49:12 | **j** |
| 255:17 | 154:9,17,19 | **island** 170:7 | **j** 141:1,8 |
| **investing** 97:18 | 155:2 158:10 | 171:6 | 271:13 282:7 |
| **investment** | 159:3 174:20 | **iso** 68:19 163:3 | **january** 1:15 |
| 98:5 103:5,9 | 175:18 178:1 | 190:15 266:9 | 3:3 5:4 185:17 |
| **investments** | 195:21 196:9 | 269:12 270:12 | 243:3 256:4 |
| 97:21 98:19,21 | 196:10 214:2 | 271:13 328:8 | 258:3,5 356:15 |
| 99:1 100:6 | 215:16,20 | 339:2 | 375:17 388:1,4 |
| 101:3 | 223:18 | **isos** 328:22 | 391:3 |
| **invited** 169:16 | **invoicing** 58:10 | **issue** 38:16 | **jeaninn** 1:17 |
| **invoice** 78:20 | 150:5 | 61:4,19 136:9 | 5:21 387:2,19 |
| 147:21 151:14 | **invoking** 86:11 | 152:11 213:2 | **jersey** 107:11 |
| 154:4 158:5 | **involve** 75:20 | 218:17 266:1 | 107:21,22 |
| 178:11 196:1,5 | 91:11 190:13 | 268:7 311:1 | 108:2,2,2 |
| 196:7 197:4,18 | 379:15 | 347:22 356:21 | 318:19 |
| 215:15 222:22 | **involved** 23:3 | 358:15,19 | **job** 8:11 102:8 |
| 271:19 274:10 | 49:1 56:2 | 365:13 382:2 | 103:8 106:19 |
| 324:6,10,20 | 67:13,17 78:15 | 383:7 384:5 | 388:2 389:1 |
| 328:10 341:1,4 | 148:1 170:5 | **issued** 35:6 | **joined** 6:9 |
| 341:4,5 355:5 | 175:20,21 | 82:2,6 123:3 | **journal** 4:4 |
| 355:6 356:21 | 177:19 178:22 | 214:2 357:14 | **judge** 8:2 37:1 |
| 356:21 357:3,6 | 181:6 360:7 | **issues** 186:16 | **judgment** |
| 357:13,17 | **involvement** | 204:19 217:5 | 258:19 259:5 |
| 358:8,9 | 41:3,5 | 363:7 367:6 | 286:7 |
| **invoiced** 58:3 | **involves** 178:12 | **issuing** 341:1 | **july** 374:20 |
| 74:22 | 201:13 278:7 | **it'd** 264:5 | 375:18 |
| **invoices** 58:15 | **involving** 19:12 | 380:10 | **june** 204:8 |
| 58:20,22 67:14 | 68:18 | **item** 326:8 | 205:17 206:9 |
| 67:20 79:21 | | 369:4,14 | 206:16 243:19 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[june - know]**

Page 42

| | | | |
|---|---|---|---|
| 244:1 375:17 | **kind** 24:21 | **know** 14:1,12 | 133:19 134:3,7 |
| **junior** 329:19 | 56:11 67:2 | 14:13,14 15:14 | 137:8 139:11 |
| **jurisdiction** | 90:4,16 94:11 | 15:15,16,17 | 142:3,4,7 |
| 20:1,5 81:8 | 98:11,19,21 | 16:7 17:9 23:3 | 143:13,15,16 |
| **jurisdictions** | 102:13 104:5 | 24:5 26:19 | 143:20 147:9 |
| 15:20 81:7 | 105:10 108:17 | 29:12,17,21,22 | 148:4 151:19 |
| 157:5 | 115:18 129:18 | 30:22 32:4 | 153:6 154:7 |
| | 130:8 134:11 | 35:7 37:15,21 | 155:3,19,20,21 |
| **k** | 135:6 151:20 | 41:21,21,22 | 156:17 157:2 |
| | 152:12,13 | 42:3,11,12,13 | 160:15 162:10 |
| **k** 109:15 | 153:7 154:7,15 | 51:22 52:1 | 162:11 165:16 |
| 221:20 | 154:16 159:2 | 53:8,22 57:6 | 166:22 167:1,3 |
| **kapsarc** 106:1 | 165:12 168:21 | 57:22 60:10,11 | 167:7 170:18 |
| 108:15 111:10 | 171:11 177:6 | 60:12 62:13 | 171:19 172:1,5 |
| 117:15,17,18 | 181:8 186:20 | 69:9 70:21 | 178:7,8,12,18 |
| 118:3,8,22 | 187:4 190:7 | 72:9,22 73:21 | 179:5,5,9,12,12 |
| 119:4,7 | 198:11 202:19 | 80:10,15,16 | 181:21 182:4 |
| **keep** 8:6 188:22 | 233:14 235:17 | 81:3,13,20,21 | 182:21 183:20 |
| 228:12,13 | 244:3,19 | 87:2,4 88:21 | 185:17,18 |
| 281:2 294:13 | 248:11,12 | 89:6 90:7 96:2 | 186:1,2,12 |
| 295:1,3,3,4,6,8 | 252:17 264:12 | 98:12 104:16 | 187:3,4,7,8,10 |
| 295:21,22 | 274:1 288:16 | 106:17 111:8 | 187:12,18 |
| 296:1 334:12 | 291:17 296:7 | 111:11 112:4 | 188:3,10,11,19 |
| 338:5 | 308:13,19 | 112:11 113:9 | 189:5,5,14,15 |
| **kept** 188:11,14 | 324:1 335:9,10 | 113:22 114:1 | 189:22 191:16 |
| 189:3 | 360:3 | 114:11,12 | 193:16 194:5 |
| **key** 189:4 | **king** 106:1,14 | 116:15 117:20 | 195:9,12 196:1 |
| **kids** 110:10 | 108:8 117:12 | 118:19 120:8 | 197:16 202:15 |
| **kilowatt** 156:9 | 117:14,17,19 | 121:9,13 | 202:16 203:17 |
| 196:2 197:13 | 117:20 118:7 | 123:18 127:3 | 206:4 214:17 |
| 197:13,15 | 118:13 | 127:10 128:12 | 215:14,17,19 |
| 199:21 212:4 | **knew** 149:21 | 129:7,13,15 | 215:22 216:11 |
| 296:16,18 | 277:13 | 130:4 131:19 | 217:4,15,16 |
| 297:2 316:14 | | 132:9 133:9,18 | 219:17 221:20 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[know - legal]**

Page 43

229:20 230:17
230:19 232:2
233:20 234:2
235:9,11 238:7
239:10,12,13
239:22 245:3
246:2,10 247:4
247:17 248:16
249:3,4,8,13,15
250:13 252:5
253:2 255:18
256:7 258:2,4
261:16,21
263:2,4,7,9
264:16,19
265:22 266:4,4
266:16 267:7
268:6 271:10
272:8,13,17
273:2 274:13
277:8 279:6,12
281:14 282:20
283:4 289:8
294:20 301:10
301:20 302:10
304:22 305:10
305:21 306:1
313:1,2,3,6
314:13 315:19
316:2,7,11,12
316:13,15
320:4 328:3
329:22 330:5
332:22,22

333:6,16,21
334:2 336:1,8
337:21 344:18
346:1,1,4
347:15,17,22
353:9,20,21
354:12 355:11
358:22 359:20
360:1,3,4,8,9
360:11 361:12
361:15,20
362:5,8,16,20
372:12 374:9
374:10 383:6
383:15
**knowing**
135:10 335:16
**knowledge**
230:18 266:19
**known** 10:22
12:2,9,11
111:8 127:15
247:11
**knows** 279:19
362:6

**l**

**labor** 337:21
**lack** 22:11 30:3
77:2,3 79:3
119:2 127:6
159:11 162:3
292:10 305:8
328:19 350:22

362:1 366:7
370:18 372:10
**language**
112:10,13
128:16 160:7
182:6 187:5
188:14
**lanyards**
104:15
**lapointe** 362:10
362:16
**large** 70:14
91:12 100:15
151:14 179:8
231:20 232:3
253:14,16
280:7 330:2
**larger** 79:15,16
80:7,7 187:7
278:7 332:14
**largest** 276:13
**lasted** 89:5
**late** 41:9 172:8
172:10,11
**latest** 244:9
246:10 251:2
292:2
**law** 58:3 78:15
84:18,21 85:7
108:13 141:5
383:13 384:21
**lawyer** 32:5
96:2

**lawyers** 90:9
90:12
**lay** 7:20 29:8
188:22 285:20
**layer** 140:8
**layman's** 41:17
**layperson**
108:14 132:16
**lays** 251:9
**leap** 198:21
199:3 214:17
214:18
**learn** 35:21
104:10
**learned** 126:5
230:19 231:1,5
236:19
**learning** 35:9
126:6
**lease** 336:20
**leave** 220:22
256:21 379:1
**left** 104:22
105:4 107:3
119:10 198:2
243:3 293:8
328:9
**legal** 14:10
24:4,16,21
25:4 29:7,9
32:3 33:14
35:2,6 36:15
39:17 41:15,17
48:10 66:11

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

81:3 84:7 90:5
90:9 95:5,18
96:3 120:8
123:17 201:11
201:12 213:14
213:18 216:10
216:22 223:10
223:14 237:21
301:12 308:13
308:16 314:4
391:21
**legitimate**
94:11
**lengths**  336:3
**leo**  2:10 6:7
83:1 86:21
**letter**  265:18
**letting**  9:7
**level**  81:2 149:5
189:4 202:19
383:2
**liability**  171:13
**liberal**  79:11
**life**  101:9,13
111:9
**likewise**  44:5
176:12 340:8
378:14
**limit**  304:12
305:3
**limitation**
312:2 313:19
**limitations**
281:15

**limited**  204:6
264:5 284:21
311:5 312:7
**limiting**  206:13
372:3
**limits**  79:19
**line**  44:21
113:2 147:1
170:9,16
171:10,16
204:9,9 271:2
296:2 333:9,10
361:8 377:18
388:16 389:3
**lines**  158:12
369:1
**lining**  382:8
**link**  326:9
328:16 335:2
344:13 345:17
346:2,20
347:14,21
348:2,5,13,15
356:8
**linked**  270:12
356:5
**linkedin**  110:20
**links**  327:6
331:2,5 335:20
336:10 342:11
342:13 345:19
345:20 346:12
347:5

**lion's**  276:12
**list**  54:21 55:4
121:1 125:5,20
127:5 130:5
131:1 149:20
214:10 255:7
373:9 380:16
380:17,19
**listed**  23:6
49:14 52:4
141:3 155:22
156:18 157:11
209:5 317:10
359:11 381:2,4
388:15,15
390:12
**lists**  110:22
156:21 214:1
**literally**  59:10
187:8,19 196:8
313:2,4
**litigation**  12:7
28:21 29:2
41:4,13 55:3
56:2,22 57:4,7
57:10 58:1
59:16,17 66:5
66:7 79:2
80:11 82:10
83:19 96:1
97:3 101:7,10
102:9,13,17
103:1 123:3
129:5 132:9,11

163:19 165:4
167:18 183:2
187:22 201:22
204:14 205:16
206:14 230:13
230:16,19
231:2 241:17
243:8 244:5
248:22 249:2,4
312:19 351:14
**litigations**
25:18
**little**  16:9 45:3
61:10 72:1
74:16 83:14
112:16 113:13
152:7 153:17
166:19 174:1
192:4 205:9
222:19 258:18
281:3,15 284:6
325:22 334:9
346:4 377:8
**live**  133:9,11
**living**  106:4
107:20,22
186:20,20
231:17
**livingston**
64:11 65:15,16
65:17,20 66:5
67:2,5 68:7
69:3 70:5,9
71:17 73:2,3

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

78:11 80:2
174:2 230:8
235:14
**livingston's**
69:5 191:16
**llc** 1:9,10 5:13
6:8,9 63:4
388:5 391:4
**llp** 2:4,10
**load** 68:21
140:22 141:17
141:21 142:4
142:19 143:3
190:14,15
193:9 265:8,9
265:16,18,21
266:1,9,15
267:13 268:8
268:17 269:2,9
270:9,10,11,15
270:21 271:3
271:21 272:22
275:13 276:18
277:8,8 280:2
293:4,5 310:4
318:20 319:4
320:12,16,22
323:20 332:6
333:7,22
350:20 352:6
376:4
**loads** 141:16
**loan** 259:20

**local** 43:3,9
44:4 50:14,17
**located** 64:11
284:17
**location** 5:17
**locations** 82:17
82:19
**log** 121:14
**long** 57:2 170:6
171:6 228:3
314:11,16
326:5 341:14
341:18 366:2
**longer** 12:12
105:5 228:11
228:11
**look** 42:22
84:15 114:15
115:15 127:10
127:11 142:9
154:2,5 158:9
195:22 196:12
203:20 206:6
217:22 236:11
251:4 260:1
279:20 280:4
284:20 285:11
288:6 290:6,21
293:18,19
295:16 296:12
296:14 298:21
299:15 312:13
312:17 326:3
330:18 333:21

334:21 341:13
343:14,14
345:11,12
347:21 351:12
355:5 358:8
373:22 375:6
376:15 380:14
**looked** 120:14
154:3 194:14
218:6,7 251:5
258:13 263:3
277:14 325:11
346:5
**looking** 32:16
46:11 49:19
50:21 76:16,19
78:22 79:12
108:18 114:17
114:20 128:22
130:18,18
131:1 143:1
151:7 175:18
194:5 196:9
199:12 210:8
210:10 213:9
230:22 238:19
243:2,7,17
248:12 253:19
253:20 258:2,8
266:8,22
267:11 268:21
278:3 279:17
284:5 308:8
309:15 316:21

321:16 323:19
323:20,21
325:6 335:1,6
338:7 346:4,19
348:2,4 350:2
357:21
**looks** 120:15
197:19 347:1
**lookup** 277:14
278:21
**loop** 154:1
**loops** 157:10
**loosely** 100:15
**losses** 193:11
275:8 276:8
296:2
**lost** 45:22
**lot** 15:18 16:2
89:19 92:10
128:16 168:4
168:22 175:22
178:10,18
179:5 180:20
181:1 196:14
221:7 227:14
266:2 327:6
379:15 384:11
**lotoole** 2:13
**lots** 121:8,12
**loud** 33:18
**low** 100:6
324:6 371:15
371:16

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[lower - market]**

Page 46

**lower** 78:20
220:11 380:2
383:12
**lse** 317:12
**lunch** 145:22
146:4,9 168:2
173:11,16,22
175:15

**m**

**m** 374:11
**ma** 138:21
**macan** 164:10
164:18 165:2
166:4 192:11
202:21 203:5,8
216:3,6,13,16
216:17 217:20
218:19 220:13
220:18,19
222:3 325:2
337:6
**macan's** 203:11
217:4 218:11
218:12 220:3,9
220:15
**machine** 98:6
**made** 13:20,22
23:21 37:18
80:12,16 136:6
151:21 152:21
153:7 154:8,16
176:4 185:6
186:14 188:13

189:1 195:13
203:18 218:15
252:7 254:7
271:13 315:12
321:12 325:20
366:4 367:11
369:19 370:5
387:8 390:7
**magnitude**
16:3 277:22
**main** 340:6
**major** 179:3,6
186:8
**make** 8:11 9:9
34:12,15 48:20
72:13 89:21
112:7 114:17
126:8 145:16
165:21 176:18
186:17 187:16
199:17 203:21
217:19 225:11
237:5 252:13
254:5,15
256:13 274:6
288:9 290:19
306:11 307:19
310:22 321:16
327:10 330:7
332:14 333:3,8
339:11 341:10
375:6 378:2
379:6 388:7

**makers** 366:16
**makes** 9:10
145:19 148:5
184:20 211:17
330:2
**making** 9:14,16
44:19 174:19
176:2 185:16
198:21 213:18
223:14 274:16
286:6 377:20
**malaysia** 168:7
168:12,13
**male** 112:16
**managing**
70:13
**mandate** 312:7
**mandated**
141:4 285:13
**mandatory**
275:3,4 276:6
304:8 306:16
306:19 307:9
315:8 321:4
340:6
**manifestively**
40:13
**manipulating**
70:14
**manipulation**
180:20
**manually** 290:1
**maps** 193:8
334:2

**march** 194:7
240:11,16
244:21 249:20
256:7,9 257:11
261:2,3,3
278:13 355:10
355:11,12,18
357:5,10,18
**margin** 225:16
282:9,15,18,20
282:22 283:3
293:20 376:7
**marginal**
328:12
**margins** 40:3
**mark** 32:9
42:17,18
234:10 240:22
241:1 287:13
351:5
**marked** 32:11
38:20 42:14
87:21 121:22
122:5,9,15
125:3 204:20
208:9 209:4
210:1,10 234:5
234:9 236:11
241:2 287:16
351:8 360:20
368:12 373:5
**market** 47:7,8
47:10,15 48:7
48:17 49:14

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

68:20 100:15
141:6 162:16
163:2,7,8
208:19,20
209:13,14,19
209:20,21,22
210:22 211:1,8
211:9 216:19
216:20 225:3
276:2,4,5
284:3,16
306:13 311:6
313:21 325:7
325:12,15,17
326:2 337:1
340:15 344:20
345:11,13
366:3 367:6
368:16 371:5
371:10,11
372:2
**marketing**
138:6,9 315:13
320:15
**markets**  70:13
367:5 370:13
370:15
**marking**  68:3
**marks**  83:6,9
146:14,18
173:13,17
229:2,6 287:4
287:8 349:12
349:16 378:3,7

**markup**  224:20
224:21,22
**maryland**  1:19
15:2
**mass**  313:21
**match**  381:10
**matched**
109:13
**matches**  197:21
198:2
**matching**  208:5
**material**  55:8
56:1 119:14
249:15 383:10
**materially**
358:16 383:18
**materials**  54:20
54:20 55:4,7
120:11 124:18
126:18 127:4
128:3 194:4,4
194:8 246:19
252:1 326:4,9
359:11 373:9
380:17
**math**  75:15,19
77:3 215:7
**mathematics**
75:12 91:18,19
91:21,21 92:4
266:19
**matt**  64:11
65:14,16,17,20
66:4 67:2,5

68:7 69:3,4
70:4,6,9 71:17
73:2,3 78:11
78:21 80:2
174:2 175:2,22
179:19 181:12
183:12 185:2
185:18 186:11
187:8 188:3
189:15 191:16
192:17 197:11
230:8 232:22
235:14,22
239:8 250:13
266:2 277:6
280:14,20
288:12 289:1
289:19,21
**matt's**  238:4
**matter**  5:12
6:14 7:4 12:7
13:2 14:12
16:11 21:9
25:12 37:8
38:2,16 41:10
41:19 48:13
49:2,9,10,22
51:13 53:13
65:18 94:19
121:18 170:5
171:4 189:14
201:14 221:18
258:7 266:14
267:7,9 305:4

387:13
**matters**  14:17
42:6 56:2
63:10 366:10
**maximum**
303:21
**mcinturff**  2:19
6:18
**mcinturff's**
23:7 25:20
42:5
**meadows**  2:17
6:10
**mean**  11:17
12:5,6 13:13
14:9,18 16:4
24:22 47:11
53:21 62:11
66:11,17 67:11
72:18 81:3,20
86:1 89:18
98:8 103:17
106:16 109:9
113:14 125:8
126:3 129:21
131:18 134:16
140:16 141:13
145:10,13
164:6 165:5
167:1,1,2
174:11 183:18
183:21 185:13
185:13,14
186:6,7,10

Frank A. Felder , Ph.D.
January 8, 2026
Brous v. Eligo Energy, LLC

[mean - method]
Page 48

187:15,20
191:12,15
192:9 194:7,10
194:11 196:17
206:7,8 214:11
217:18 218:18
219:5,5 229:21
235:2 253:6
261:17,20
265:14 267:1
268:9 278:5,6
280:3,20
284:22 295:12
295:17 296:11
307:3,14 313:8
321:3 322:19
327:22 329:17
331:21 337:11
343:5 346:1
348:6 350:5
352:16 374:8
383:10
**meaning**
259:18 283:6
283:19
**meaningful**
383:12
**means** 93:22
137:16 139:3
199:3,7 216:7
235:9,12
281:22 297:7
362:6 367:4
371:2,2 384:22

**meant** 177:1,4
237:20 255:14
259:21 282:15
283:4 338:17
**measure** 332:1
**measured**
219:14
**measures**
371:19 372:3
**mechanically**
257:4
**media** 5:10
83:6,10 146:14
146:19 173:13
173:18 229:2,7
287:5,9 349:12
349:17 378:3,8
386:8
**mediation** 25:5
359:4
**medical** 109:7
**medication**
10:18
**meet** 320:22
321:7
**meeting** 112:8
167:10,22
**megabytes**
232:2
**megawatt**
68:21 294:10
296:15,16
299:1,8 317:1
317:7 376:12

377:12
**memorandum**
3:10
**memory** 381:18
**mental** 75:15
**mention** 152:22
153:11 369:15
**mentioned**
28:10 61:10
65:14 66:9
131:4 150:6
183:9 186:9
195:12 298:10
330:17 353:20
382:22 383:5
387:5
**menu** 238:18
263:11 279:11
**merchant**
194:6,15
339:22 340:17
340:19
**meridian** 18:17
**merit** 369:5
370:1,5,11
**message** 335:14
**messiness**
358:7
**messy** 271:20
356:1
**met** 111:10,12
164:18 166:3
167:17,19

**metadata** 246:2
**metallurgist**
91:8 192:2
**metallurgy**
90:17,19 91:1
**metals** 90:21
**meteorology**
191:21
**meter** 354:4,7
382:3,8,10,15
382:19
**meters** 353:22
354:1
**method** 148:10
177:18,22
178:3,20 185:5
199:9,10 220:6
220:22,22,22
221:6,12,14
224:6,10,14
225:5,5,7
226:4,7 231:14
231:16,18
240:8 251:10
284:14 300:2
300:16,20
316:19,20
322:14 323:19
324:5 325:6,17
332:9 338:9,10
338:11 341:9
341:11,14
348:18 349:22
350:4 355:17

Frank A. Felder , Ph.D.                January 8, 2026
Brous v. Eligo Energy, LLC

[method - modified]                                    Page 49

| | | | |
|---|---|---|---|
| 359:10 374:21 | michelle  1:4 | mirror  197:12 | misspoke  172:7 |
| 377:16,17,17 | microphone | 197:21 198:1 | 224:20 |
| 377:17 381:1 | 134:15 | 198:18 | misstates  249:6 |
| **methodologies** | microphones | mischar  124:20 | 299:9 |
| 165:20 | 5:5 | mischaracteri... | mistaken  31:5 |
| **methodology** | microsoft | 13:18 18:2 | mistakenly |
| 34:18 37:2 | 219:6 | 30:11 43:5 | 139:19 |
| 40:1 142:11 | mid  375:17 | 48:18 96:8 | misunder |
| 152:2 165:9 | middle  232:4 | 118:15 119:1 | 153:21 |
| 175:10 258:4 | 291:20 326:15 | 119:20 139:17 | misunderstan... |
| **methods**  49:21 | 382:16 | 150:13 158:8 | 308:6 |
| 50:22 51:4 | million  81:16 | 160:2 163:12 | misunderstood |
| 67:12,13,15 | 88:22 150:12 | 201:7 221:3 | 153:22 279:2 |
| 130:7 148:12 | 179:12 | 222:11 225:18 | mitigate  371:3 |
| 148:21 165:9 | millions  179:10 | 226:14 227:22 | mixed  102:14 |
| 174:20 176:8 | mind  8:6 18:5 | 233:6,18 238:8 | mixture  227:10 |
| 178:1,4,4 | 21:8 31:7 75:8 | 244:22 245:10 | mm  120:20 |
| 180:11 181:19 | 81:6 194:1 | 246:5 250:10 | 132:3 172:17 |
| 212:16 216:2 | mine  73:13 | 250:16 254:2 | 224:17 241:13 |
| 216:12 219:22 | minimum | 259:8 260:6 | 243:15 304:19 |
| 220:5,7,8,16,21 | 314:2 | 261:10 272:2 | 326:16 344:14 |
| 220:21 222:7 | minor  178:6 | 286:14 288:20 | 365:1 370:22 |
| 222:16,17 | 186:6 217:13 | 297:9 302:2 | model  225:15 |
| 231:8 269:12 | minus  199:21 | 303:4 304:3 | 244:7 251:1 |
| 274:21 325:4 | 212:3 213:8 | 309:1 318:11 | 286:11 298:1 |
| 332:5 341:11 | 223:22 273:17 | 327:20 342:3 | models  192:18 |
| 355:14 364:1 | 307:1 | 358:10 362:1 | modern  100:9 |
| 364:18,20 | minute  195:8 | 370:17 381:7 | 366:14 367:2 |
| 378:20 | 197:22 229:1 | mischaracteri... | modifi  220:10 |
| **methollurgy** | 341:22 | 203:11 | modifications |
| 90:18 | minutes  89:6 | misheard | 195:11,13 |
| mi  197:12 | 145:11,21 | 359:18 | modified |
| mic  294:13 | 228:5,20 281:2 | missing  207:4 | 195:10 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[modular - narrows]**

Page 50

| | | | |
|---|---|---|---|
| **modular** 187:3 190:4 | 354:16,21 355:14,21 | 247:20 251:3 290:8 291:7 | **mutual** 99:7 |
| **module** 228:11 | 356:5,5,12 | 309:13 343:12 | **n** |
| **moment** 31:7 274:22 | 373:12 376:6 381:16 382:9 | 384:6 | **n** 3:1 5:1 |
| **money** 34:1 | 382:16,18 | **moving** 298:17 | **name** 5:19 6:12 |
| 88:21 101:3 | 383:16 | **multiple** 14:11 | 13:2 17:1,8 |
| 109:12 196:12 | **monthly** | 14:12 15:16,20 | 18:20 20:7 |
| 259:20 | 162:11 196:10 | 15:20 81:7,8 | 30:14 63:3 |
| **mongolia** 168:8 | 208:18 209:12 | 96:15 137:15 | 64:13,19 65:5 |
| 168:9 | 210:22 221:7 | 138:1 140:7 | 88:11 100:16 |
| **month** 107:4 | 221:11,19 | 174:21,22 | 111:19,20,21 |
| 109:6,21 | 255:19 341:4 | 175:4 178:12 | 111:22 113:8 |
| 149:16 178:12 | 358:4 382:3 | 178:14 186:22 | 113:12 118:19 |
| 190:14,16 | **months** 103:7 | 188:5 249:11 | 120:7 121:3 |
| 193:3 198:5 | 109:21 198:13 | 253:3,3 257:7 | 156:22 157:11 |
| 199:13,14,14 | 198:22 199:11 | 259:15 269:18 | 187:9,11 |
| 199:16,19,22 | 199:19 200:18 | 273:8 278:18 | 291:18 359:16 |
| 200:10,11 | 214:14,22 | 278:19 347:5 | 374:1 |
| 215:5 240:11 | 215:1 242:7 | **multiplied** | **named** 133:18 |
| 244:8,8 245:9 | 243:3 247:17 | 157:20 196:3 | 135:4 136:20 |
| 248:3 251:1 | 257:7,7,19 | **multiplier** 81:6 | 137:3,9 139:11 |
| 256:3,5,12 | 259:15 355:9 | **multiply** 75:11 | 142:5 147:2 |
| 257:6,11 258:8 | 356:17,19 | 76:12,20 77:7 | 149:14 188:17 |
| 258:13,14 | **moons** 85:8 | 79:15 80:6,8 | 302:11 |
| 259:13 260:14 | **moore** 2:21 | **multiplying** | **names** 14:3 |
| 260:17,20 | **morning** 5:2 | 75:15,20 77:10 | 17:9,11,17 |
| 261:8,12 273:1 | 7:9,13 157:21 | **muni** 281:16 | 21:17 26:2 |
| 277:1,11 | 353:21 | **municipalities** | 64:16 111:18 |
| 279:17 293:19 | **motion** 29:5 | 293:10 | 132:22 133:2,5 |
| 305:15 324:17 | 34:22 37:11 | **municipality** | 359:1 |
| 325:9 332:3 | 40:18 | 281:16 282:2 | **narrow** 236:6 |
| 334:10,13 | **move** 209:3 | 376:5 | 246:8 |
| 350:21 353:22 | 216:1 238:13 | **mute** 5:7 | **narrows** 224:22 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**nationalities**
112:8
**nationality**
112:2,4 113:9
**native** 112:10
112:12
**natural** 145:16
155:9,18
**nature** 237:19
**near** 197:4
**necessarily**
24:15 29:19
42:13 52:1
93:22 194:3
270:20
**necessary**
274:7 371:19
390:11
**necessity**
366:14 367:2
370:11
**need** 32:14 88:5
136:17 150:9
157:19 159:3
170:15 187:17
189:11 222:2
235:10 242:9
280:1 281:4
287:2 290:8
316:19 349:9
351:16 366:5
367:11 369:20
370:6

**needed** 130:6
131:7,8 150:5
170:9 180:6
182:10 185:5
195:1 236:8
239:9,11,14
277:15 288:13
330:16
**needless** 178:17
**needs** 372:3
**negative**
182:19,20
196:4,5,6,7
197:10,15
198:6,7
**neighborhood**
24:17 57:13
69:14 72:10
**neither** 387:8
**net** 201:5,10
282:18 295:10
**never** 114:14
114:14 167:12
167:15 169:8
169:16 170:1
170:20 217:8
230:5,8 239:16
239:21 310:9
319:5
**new** 1:1 2:6
5:14 6:9 14:22
68:19 104:17
107:11,21,22
108:2,2,2

133:12,16
137:7,22 140:7
141:7,7 155:8
156:1 158:5,15
160:12 161:1
162:15,22
163:3 169:8,13
169:17 170:2
170:11,12,17
171:6,17,19
172:5 184:6
185:21 190:10
207:16,18,18
219:9 222:8
265:5 269:19
270:12 271:13
285:14 292:17
296:10 298:19
299:4,4 308:20
311:19 312:5
314:20 318:19
321:13 326:17
328:8 331:9
332:16,19
333:4,10,13,20
352:18 371:4
372:7,8 375:2
375:21 385:5
**night** 118:2
**nimo** 139:14,20
139:20 140:17
140:18 279:12
279:16 338:20

**nine** 107:4
**nits** 364:5,10
**nonmaterial**
383:8
**nonzero** 298:13
299:19
**normal** 347:20
**north** 2:5 28:8
76:15
**northeast** 2:11
**notary** 1:18
**notation**
196:11,20
**note** 5:5 6:15
301:6 305:14
314:2 388:7
391:10
**noticing** 6:5
**notwithstandi...**
85:10 201:4
**november**
291:21 292:6
**ntac** 332:3
**nu** 265:17
**nuclear** 91:16
**number** 5:10
5:15 26:3 69:9
75:16 78:3
79:8,16 80:7,7
80:8 81:22
83:6,10 121:13
129:22 146:15
146:19 157:1
159:18 173:14

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[number - o'toole]**

Page 52

| | | | |
|---|---|---|---|
| 173:18 178:21 | 358:16 380:19 | 323:11 | 45:10,16,19 |
| 178:22 179:12 | 381:9,12 | **o** | 46:2,6 47:3,4 |
| 179:13 182:20 | **numerical** | **o** 5:1 229:15,21 | 47:19 48:4,14 |
| 193:4 196:3,4 | 67:18 152:5 | 374:11 | 49:3 50:1,7 |
| 222:21 223:2,2 | 176:1 178:7 | **o'brien** 164:11 | 51:2,9,15 52:2 |
| 225:14 229:3,7 | 262:16 263:4 | 167:4,5 | 52:12,17 53:1 |
| 240:15,20,21 | 265:17,17,18 | **o'toole** 3:6 6:6 | 53:6,14 54:5 |
| 242:5,15 | 336:19 | 6:7 7:8 10:1,2 | 54:11,17 55:1 |
| 243:22 244:21 | **numerically** | 11:8,14,20,21 | 55:2,16,19 |
| 247:17 249:1 | 121:7 | 13:4,9,15 14:4 | 56:4,9,15,19 |
| 249:19 253:14 | **ny** 1:10 | 14:15 16:1,13 | 57:21 58:12,19 |
| 253:16 266:5 | **nyca** 332:16,18 | 17:2,18 18:6 | 59:1,5,12 60:2 |
| 268:19,20 | **nygats** 319:10 | 18:16 19:1,7 | 60:21 61:7,11 |
| 273:2 275:11 | 319:13 | 19:13,19 20:6 | 61:15,21 62:4 |
| 279:21 287:5,9 | **nyiso** 163:1 | 20:10,14 21:3 | 62:8,9,19 |
| 299:11 300:13 | 194:21 265:9 | 21:13,19 22:5 | 63:15 64:1,6 |
| 343:11 345:19 | 265:21 270:21 | 22:19 23:4,16 | 64:12,18 65:1 |
| 349:13,17 | 271:3,9 325:6 | 24:7,19 25:6 | 65:6,13 66:3 |
| 373:1 378:4,8 | 325:16 326:20 | 25:15 26:6,8 | 69:11,16,21 |
| 381:5 382:18 | 327:6 332:2 | 26:12,13,21 | 70:3,15 71:1 |
| 386:8 | 334:3,22 | 27:7,13,18 | 71:11 72:2,12 |
| **numbering** | 336:22 377:15 | 28:1,6,12,19 | 73:1 74:1,10 |
| 120:1 | 377:17 | 29:3,11,20 | 74:17 75:10 |
| **numbers** 39:9 | **nyseg** 43:14 | 30:6,15,21 | 76:2,14 77:8 |
| 75:7,20 77:7 | 139:15,20 | 31:18 32:7,13 | 77:12,15 78:9 |
| 79:16 119:19 | 140:14 141:19 | 33:1,17 35:8 | 78:16 79:9,17 |
| 130:19 157:20 | 270:15,16,18 | 35:14,20 36:10 | 80:9,18 81:11 |
| 183:20 184:4 | 270:18,20 | 36:20 37:9,16 | 82:1,8,21 83:3 |
| 198:10 208:3,3 | 278:13,15 | 38:1,7,18 39:1 | 83:12 84:4,14 |
| 225:9 226:3 | 279:13 335:7 | 39:5,6 40:8,15 | 84:19 85:3,5 |
| 245:3,9 248:2 | **nyserda** 305:17 | 41:1,11,18 | 85:18,22 86:7 |
| 250:4 254:5,7 | 319:11,12,13 | 42:16 43:11 | 86:10,14,19 |
| 261:8 274:21 | 319:16 320:2 | 44:2,16 45:7 | 87:4,10,17,20 |
| 280:8,8 300:14 | 322:10 323:4 | | 88:1 92:21 |

Frank A. Felder , Ph.D.

January 8, 2026

Brous v. Eligo Energy, LLC

**[o'toole - o'toole]**

| | | | |
|---|---|---|---|
| 93:5,9,14,18 | 137:1,11 138:4 | 210:3,7,17 | 269:6,15 272:7 |
| 94:4,10,18 | 138:10,15 | 211:7,12,16 | 273:14 274:8 |
| 95:2,10 96:4 | 139:1,10,21 | 212:13 213:21 | 275:21 277:19 |
| 96:14 97:1,7 | 142:20 143:7 | 216:14 217:7 | 281:8,11,12 |
| 97:11,16,20 | 144:8,15 145:1 | 218:4 219:2 | 283:12,17 |
| 98:3,10,18 | 145:8,20 146:5 | 221:8 222:14 | 284:1,9,12,15 |
| 99:3,9 100:1 | 146:7,12,21 | 224:16 226:8 | 286:18 287:11 |
| 100:13,20 | 147:11,17 | 226:18 227:8 | 287:12,18 |
| 101:19 102:11 | 149:13 150:7 | 227:16 228:3,9 | 288:4 289:4 |
| 103:16 104:2 | 150:19 151:5 | 228:21 229:9 | 292:12 297:16 |
| 104:13 105:15 | 152:6 153:2,16 | 229:10 231:9 | 299:13 301:18 |
| 106:12 107:7 | 154:13,21 | 232:5 233:13 | 302:7,15 303:8 |
| 107:17 108:7 | 155:14 156:5 | 234:3,8,13 | 304:5,18 |
| 108:16 109:1,8 | 156:14 157:6 | 236:2 237:11 | 305:12 306:8 |
| 109:14,19 | 158:1,13 159:6 | 238:3,12 239:5 | 309:7 311:2 |
| 110:2,15,21 | 159:7,16,21 | 240:2 241:5,8 | 314:18 316:1 |
| 113:6,16 115:5 | 160:9,17 161:5 | 241:14 242:4 | 316:16 318:1,6 |
| 115:17 116:1 | 161:20 162:7 | 242:13 243:1 | 318:15 322:7 |
| 116:11,19 | 162:21 163:14 | 243:14 244:2 | 322:17 323:17 |
| 117:4 118:6,20 | 164:2,16,21 | 244:17 245:4,8 | 324:12 325:21 |
| 119:12 120:2 | 166:2,20 | 245:15,21 | 326:13 327:8 |
| 120:19 122:2,7 | 169:15 171:3 | 246:12 247:3 | 328:2 329:5 |
| 122:11,17 | 173:10,20,21 | 247:10,19 | 330:20 331:17 |
| 123:21 124:5 | 175:11 177:14 | 248:10,20 | 331:20 332:12 |
| 124:11,22 | 179:18 183:6 | 249:17 250:6 | 334:7 335:5 |
| 125:4 127:2,9 | 188:6 189:6 | 250:12,20 | 336:4 337:5 |
| 127:13,14 | 191:2 199:5 | 252:9 254:9,19 | 338:1,4 341:17 |
| 128:4 130:1,14 | 200:8 201:15 | 255:5 257:2,21 | 341:20 342:5 |
| 131:9,15 132:2 | 202:11,17 | 258:17 259:16 | 342:12,17 |
| 132:21 133:8 | 203:3,19 204:3 | 260:10 261:13 | 343:2,8,10 |
| 133:13 134:2,9 | 204:5,22 205:2 | 262:5,14 263:1 | 344:1 348:19 |
| 134:17 135:1 | 205:6,8 206:2 | 263:8,16 264:6 | 349:1,5,7,9,11 |
| 135:15 136:8 | 207:6 208:16 | 264:18 265:3 | 349:19,20 |
| 136:11,14,16 | 209:2,10,18 | 266:17 267:18 | 350:14 351:3 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[o'toole - objection]**

Page 54

| | | | |
|---|---|---|---|
| 351:10 352:21 | 95:1 98:15 | 102:18 103:20 | 190:22 194:18 |
| 354:18 356:10 | 133:4 142:14 | 104:6 105:12 | 199:2 200:5 |
| 358:17 360:14 | 158:20 164:12 | 106:8,22 | 201:6 202:10 |
| 360:17 361:1 | 177:10 202:13 | 107:14 108:3 | 203:1 205:20 |
| 362:4 363:4,8 | 203:11 208:13 | 108:19 109:4 | 207:2 210:5 |
| 364:12 365:11 | 211:4 223:9 | 114:22 115:9 | 212:9 213:13 |
| 365:20 366:18 | 237:9 242:1 | 115:20 116:13 | 216:9,21 217:9 |
| 367:8,18 368:2 | 248:8 292:8 | 116:22 118:5 | 218:1,20 220:4 |
| 368:6,14 | 308:22 | 118:15 119:1 | 221:3 222:11 |
| 369:17 370:3,7 | **objection**   10:3 | 119:20 120:16 | 224:11 225:18 |
| 370:14,21 | 11:6,10,11,12 | 123:16 124:2 | 226:14 227:2 |
| 371:17 372:4 | 13:6,12 14:7 | 124:20 126:22 | 227:12,20 |
| 372:13 373:3,7 | 17:14 18:1 | 127:6,22 | 231:3,22 233:6 |
| 373:16 377:22 | 19:16 20:22 | 129:20 130:10 | 233:18 235:19 |
| 378:10,14 | 22:1,11 23:9 | 131:2,13 | 238:8 239:3,19 |
| 379:3,8,21 | 24:3,10 25:10 | 132:12 133:21 | 242:8,20 |
| 380:7,11 381:6 | 25:11 26:17 | 134:5,13 135:8 | 243:10,20 |
| 382:2,11,20 | 29:6,14 30:11 | 137:4,18 138:7 | 244:13,22 |
| 384:3,16,19 | 32:2 35:1,12 | 138:12 139:5 | 245:7,10 246:4 |
| 385:8,12,17,20 | 36:14 37:19 | 139:17 143:5 | 246:21 247:6 |
| **o'toole's**   381:3 | 38:3 41:7,14 | 144:3,12,20 | 247:14 248:14 |
| **oath**   8:1 189:19 | 42:8 43:5 48:9 | 147:7,14 149:1 | 249:6,21 250:9 |
| 189:20 | 48:18 49:16 | 150:2,13 151:2 | 250:16 252:4 |
| **obje**   27:2 | 50:18 51:19 | 151:22 153:9 | 254:2,17 255:2 |
| **object**   9:18,19 | 52:7 54:22 | 154:10 156:2,7 | 256:18 257:15 |
| 10:11 12:20 | 55:15 56:18 | 156:19 157:14 | 258:11 259:7 |
| 13:18 31:8 | 57:16 58:6 | 158:7 159:4,10 | 260:6 261:9 |
| 32:19 33:13 | 59:19 60:22 | 160:2,13,20 | 262:2,18 263:5 |
| 39:16 43:18 | 63:13 65:10 | 161:17 162:3 | 264:14,22 |
| 46:18 47:12 | 74:5 77:20,20 | 162:17 163:11 | 266:11 267:14 |
| 62:15 69:6 | 79:3 80:4,13 | 163:20 165:14 | 269:3,10 272:2 |
| 73:16 75:4 | 80:21 87:15 | 169:10 170:22 | 273:10 274:3 |
| 76:10 77:1,3 | 95:4,17 96:8 | 175:8 179:2,16 | 274:17 277:2 |
| 92:17 94:8 | 96:18 97:22 | 183:3,16 188:1 | 283:8 286:14 |

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

**[objection - okay]**                                    Page 55

| | | | |
|---|---|---|---|
| 288:19 292:10 | 18:19 19:3,10 | 211:11,14 | 311:13,20 |
| 297:9 299:9 | 20:3,9,12 21:5 | 212:15 245:17 | 312:3,10 |
| 300:8 301:12 | 21:16 22:22 | 262:12 263:12 | **offered** 171:11 |
| 302:1,12 303:3 | 25:1,22 27:3 | 264:1 323:12 | 259:11 297:6 |
| 304:2,14 305:7 | 27:10,15,20 | 342:9,19 | 314:3 315:5 |
| 310:12 311:8 | 28:3,9,15,22 | 366:21 367:21 | 350:12 |
| 314:14 315:10 | 30:3,18 31:2 | **obligated** 162:1 | **offering** 48:15 |
| 316:9 317:17 | 35:17 37:4,13 | **obligation** 9:17 | 48:21 49:5,7 |
| 318:11 321:19 | 38:9 40:11,19 | 285:13 303:19 | 49:12 126:17 |
| 322:12 324:7 | 51:6 52:14,19 | 303:19 307:10 | 132:16 221:9 |
| 325:18 326:11 | 53:4,11,17 | 320:22 | 286:10,11 |
| 327:18 328:5 | 58:16,21 59:3 | **observe** 311:14 | 308:13,16,19 |
| 328:19 330:19 | 59:7 60:7 | **observing** | 310:2 311:4,15 |
| 331:14 332:8 | 63:19 64:4,9 | 379:12 | 312:7,12,15 |
| 335:4,18 337:3 | 64:14,20 65:3 | **obtained** | 314:4,6 369:7 |
| 337:14 342:2 | 65:22 69:13,19 | 128:10,20 | **oh** 13:17 45:16 |
| 343:7,18 | 70:1,7,19 71:5 | **obvious** 84:20 | 46:4 55:20 |
| 345:21 350:11 | 71:21 72:6,16 | 85:6 107:11 | 100:9 105:18 |
| 350:22 352:19 | 74:14 75:5,18 | 308:12 330:8 | 153:21 168:8 |
| 356:3 358:10 | 77:4 78:13 | 369:16 381:20 | 168:10 181:3 |
| 361:22 363:4 | 79:4,14 80:5 | **obviously** 44:6 | 282:4 292:9 |
| 363:19 364:7 | 80:22 81:17 | 44:12 82:17 | 293:19 295:13 |
| 365:7,16 366:6 | 82:4,12 97:5,9 | 98:6 99:12 | 298:5 326:15 |
| 367:13 369:9 | 97:14,19 98:22 | 102:4 165:22 | 338:18 340:20 |
| 369:21 370:7 | 99:5,11 100:4 | 181:22 189:20 | 348:12 372:19 |
| 370:17 371:20 | 100:17 101:14 | **occurred** | 373:2 375:17 |
| 372:10 373:14 | 102:1 108:10 | 114:14 203:18 | 380:16 385:14 |
| 379:8 380:7,11 | 109:10,16,22 | 377:10 | **ohio** 15:1 |
| 381:6 382:11 | 110:8,18 | **october** 122:22 | **oil** 111:10,16 |
| 382:20 384:3 | 133:10 138:19 | 291:20 | 114:4,16,20 |
| 385:2 | 145:5 154:18 | **odd** 253:21 | 115:7,15 |
| **objections** 6:1 | 155:7 164:19 | **offer** 123:15 | **okay** 7:18 8:5 |
| 9:14,16 15:13 | 208:22 209:8 | 138:21 165:11 | 8:15 10:9,16 |
| 16:5,18 18:13 | 209:16 210:16 | 165:13 311:7,9 | 10:21 11:4,20 |

Frank A. Felder , Ph.D.                                    January 8, 2026
Brous v. Eligo Energy, LLC

**[okay - okay]**                                                    Page 56

| | | | |
|---|---|---|---|
| 12:9,18 13:10 | 71:2,12,16,16 | 123:2,6,8,12,14 | 162:8,13 163:6 |
| 14:5 15:10 | 73:14 74:2,11 | 123:22 124:6 | 163:15 164:17 |
| 16:2,14 17:3 | 74:18,21 75:11 | 124:12 125:5,8 | 164:22 165:7 |
| 17:19 18:7,10 | 75:14 76:15 | 125:17,20 | 165:11,19 |
| 19:14 20:15 | 77:11 78:10,17 | 126:2,9,17 | 166:3,9,15,21 |
| 21:4,20 22:6 | 79:10 80:10,19 | 127:10 128:5,7 | 167:21 168:1,1 |
| 22:20 23:5,17 | 81:12 82:2,9 | 128:13,18,18 | 168:14,17,20 |
| 23:22 24:8 | 82:22 85:20,22 | 129:4,14,16 | 169:2,4,6,16,21 |
| 25:7,7,16 26:7 | 86:7 87:17,17 | 131:10 132:8 | 170:4 171:9,15 |
| 26:22 27:8 | 87:20 88:10 | 132:22 133:9 | 171:21 172:6 |
| 28:13,20 29:12 | 89:3,9,13,17,21 | 133:14,18 | 172:11,20 |
| 29:21 30:7 | 90:4,8,13,20 | 135:4,16,20 | 173:2,6,10,12 |
| 31:14 33:11,18 | 91:5,7,11,17 | 136:14 137:2 | 174:18 175:4 |
| 34:20 35:21 | 92:2,13,22 | 137:12 138:16 | 175:12 176:6 |
| 36:21 37:10,17 | 94:10 96:5,15 | 139:2,11,22 | 176:11,13,17 |
| 38:13 40:9,16 | 97:2,21 98:14 | 140:2,18 141:9 | 177:3 179:19 |
| 41:12,19 42:4 | 100:2,14 101:2 | 141:15,19,22 | 180:14,18,22 |
| 43:12,16 44:2 | 102:2,12 104:3 | 142:2,8,10,21 | 181:2,5,12 |
| 45:9,11 46:4 | 104:14 105:3,6 | 143:8,13,17,21 | 182:11 183:1,1 |
| 46:10 47:20 | 105:8,8,18 | 144:9,16 145:9 | 183:7 184:1,8 |
| 48:15 49:4,10 | 106:3,19 107:8 | 145:12 146:5 | 184:19 185:8 |
| 50:2,12 51:3 | 107:10,18 | 147:12,18 | 186:4,19 |
| 51:16 52:3,13 | 108:1,8,17 | 148:9,16,20 | 187:14 188:7 |
| 53:7 55:7,11 | 109:2,15 110:3 | 149:14 150:8 | 188:11,21 |
| 56:16 57:11,15 | 110:6,16,22 | 150:11,22 | 189:7,13,16,18 |
| 57:22 59:13 | 111:5 112:5,21 | 151:6,10,10,16 | 190:1,20 191:3 |
| 61:3,11,15,21 | 113:17 114:2,5 | 151:18 152:9 | 191:10,14 |
| 62:4,8,10,20 | 114:14,19 | 153:1,3 154:7 | 192:1 193:19 |
| 63:3,5,11,16 | 116:2,7 117:5 | 154:14 155:19 | 195:19 197:3,7 |
| 64:7 65:7,19 | 117:9,18 118:1 | 156:15 157:7,9 | 198:20 199:6 |
| 66:4,14 67:1,4 | 118:10,12 | 158:14,14 | 199:16 200:9 |
| 67:7,10,20 | 120:3,7,12 | 159:17,22,22 | 200:16,21 |
| 68:6,10,12 | 121:3,6,10,14 | 160:18 161:9 | 201:4,16,20 |
| 69:2,17 70:16 | 121:17 122:21 | 161:14,21 | 202:3,18 |

Veritext Legal Solutions

800.808.4958                                              770.343.9696

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[okay - okay]

Page 57

| | | | |
|---|---|---|---|
| 203:20 204:6 | 240:3,9,14,19 | 283:13 284:12 | 323:3,18 |
| 204:11,18 | 240:21 241:7 | 284:16 285:3 | 324:13,18,19 |
| 205:6 206:3,15 | 241:20 242:3,5 | 285:11,17,20 | 325:5,11,22 |
| 207:10,17,20 | 244:3,18 245:5 | 286:2,4,10,19 | 326:14,19 |
| 207:20,22 | 245:16,22 | 286:22,22 | 327:9,13 328:3 |
| 208:1,4,6,17 | 246:18 247:11 | 288:5,15 289:5 | 328:14 329:6 |
| 209:3,19 210:8 | 247:20 248:4 | 289:11,17 | 330:17 331:6,8 |
| 210:12 211:8 | 248:21 250:13 | 290:5,9,11,14 | 331:12,18,22 |
| 211:17 212:1 | 251:3,12,16,21 | 291:7,10 292:4 | 332:5,13,18,21 |
| 213:3,22 214:6 | 252:10,12,17 | 292:20 293:2 | 333:6,11,14 |
| 214:10,15,21 | 253:6,19 | 293:10,13,18 | 334:8,17,19 |
| 215:6,14,18 | 254:10,14,22 | 294:3,21 295:4 | 335:13,15 |
| 216:15 217:8 | 255:6,10,18,22 | 296:6,8,11,19 | 336:13,15,22 |
| 217:22 218:10 | 257:3 259:17 | 297:4,4,20 | 337:6,9,12 |
| 218:22 219:3 | 260:19 261:1,6 | 298:9,17,21 | 338:2,5,20 |
| 219:16 220:17 | 261:20,22 | 299:3,14,21 | 339:2,8,15 |
| 221:9 222:2,7 | 262:6,9,15 | 300:4 301:5,19 | 341:8,13 342:6 |
| 222:7,20 223:2 | 263:2,9,17,20 | 302:8,16,22 | 343:3 344:2,12 |
| 223:6,21 224:2 | 264:7,19 265:4 | 303:9,20 304:6 | 345:18,20 |
| 224:8 225:4,13 | 265:22 266:6,8 | 304:10 305:2 | 346:7,10,18 |
| 226:9,19 227:9 | 266:18 267:5 | 305:13,19 | 347:4 348:8,17 |
| 227:17 228:3,9 | 267:10,10,19 | 306:2,9,18 | 349:5,8,10 |
| 228:21 229:18 | 268:2,6,11,21 | 308:12,17,19 | 350:9,15 351:4 |
| 229:20 230:8 | 269:7,16,22 | 309:8,12,17 | 351:4,11 352:4 |
| 230:12,15,22 | 270:3,8 271:4 | 310:1,7 311:3 | 352:9,15,22 |
| 231:10,19 | 271:7,14 272:8 | 312:17,21 | 353:17 354:19 |
| 232:6,12,17 | 272:11,13,17 | 313:5,7,11 | 357:2,11,16,20 |
| 233:4 234:4,4 | 273:3,7,22 | 314:11,19 | 358:5,5,18,22 |
| 234:12,20 | 274:9,12,14 | 315:1 316:17 | 359:5,8,20 |
| 235:5,13 236:3 | 276:15 277:20 | 317:3,8,15 | 360:1,6,9,13,17 |
| 236:7,9 237:4 | 278:11 279:10 | 318:2,7,7,16 | 361:5,6,12,19 |
| 237:15 238:4 | 280:16,22 | 319:1,5,8,13,21 | 362:5,16,19,22 |
| 238:13 239:1,6 | 281:8,11,13,21 | 320:4,7 321:6 | 363:9,12,15 |
| 239:10,16 | 282:2,6,9,14,17 | 321:11 322:8 | 364:3,21 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[okay - outside]**

Page 58

| | | | |
|---|---|---|---|
| 365:12,21 | **opened** 233:11 | **opinions** | 267:7 277:22 |
| 366:2 368:19 | **opening** 381:20 | 123:10,15 | 288:9 298:3 |
| 368:20 370:15 | **opens** 327:14 | 126:3,17 | 319:19 320:12 |
| 371:18 372:14 | **operating** | 127:20 129:12 | 356:6 |
| 372:19,21 | 246:13 | 132:16 134:12 | **organization** |
| 373:2 374:3,4 | **operation** | 135:7 139:3 | 229:14,17 |
| 374:10,14,16 | 185:1 221:18 | 150:1 217:4 | 230:7 |
| 374:19 375:4,9 | **operations** | 242:2 311:1,9 | **organizations** |
| 375:12 376:4,7 | 266:22 293:14 | 361:3 | 114:18 117:22 |
| 376:11,13,15 | **operator** 68:20 | **oppo** 79:11 | **organized** |
| 376:17,21 | 163:3 326:18 | **opportunity** | 68:15 296:8 |
| 377:9 379:20 | 331:9 | 110:12 | **oriented** 296:1 |
| 380:4,14,21 | **operator's** | **opposed** 60:20 | **original** 125:3 |
| 381:14,18 | 190:11 | 79:11 253:7 | 127:15 176:21 |
| 382:6 383:20 | **opined** 362:8 | 320:2 322:10 | 316:18 |
| 384:13 | **opining** 325:2 | **opposing** | **originally** |
| **old** 21:10 182:6 | **opinion** 33:9,19 | 247:11,17 | 107:13 185:19 |
| **olden** 330:3 | 34:17 35:6,15 | **opposite** | **oru** 140:14 |
| **once** 6:17 11:18 | 35:19 39:8 | 215:18 | 345:10 |
| 120:21 186:12 | 44:18 48:15,21 | **option** 238:18 | **orzolek** 15:1 |
| 186:12 225:22 | 90:5 95:9 | 293:4 | **outcome** |
| 252:6 256:7 | 125:21 129:18 | **options** 263:18 | 387:13 |
| **one's** 202:9 | 149:4 201:12 | 328:1,3 | **outline** 378:2 |
| **ones** 25:13 | 201:12 204:14 | **oral** 7:3 | **outlined** 179:6 |
| 122:14 141:11 | 221:9 276:11 | **orange** 194:6 | **outputs** 231:6 |
| 141:16 207:13 | 286:11 308:13 | 326:7 344:4,15 | 239:14 |
| 207:14 226:6 | 308:16 310:7 | 347:9 | **outreach** |
| 228:18 273:13 | 310:13 311:5 | **order** 3:10 | 315:13 |
| 296:5 364:11 | 311:22 313:15 | 32:15 58:4 | **outside** 12:21 |
| **onward** 308:1 | 313:22 314:4 | 67:12 71:22 | 16:18 22:12 |
| **open** 170:20 | 314:17 325:14 | 159:19 161:2,7 | 23:9 24:10 |
| 233:1 234:20 | 325:17 333:14 | 161:9 169:4,7 | 26:18 29:7,14 |
| 288:6,14 | 350:19 360:6 | 172:13 178:1 | 30:12 32:3 |
| 289:11 328:16 | 363:21 369:7 | 179:9 266:14 | 33:14 35:2 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[outside - pages]

Page 59

| | | | |
|---|---|---|---|
| 36:15 39:17 | 213:15 216:9 | **overlap** 140:7 | 125:15 127:16 |
| 41:15 42:8 | 216:21 217:9 | 141:6 | 128:22 130:18 |
| 46:19 47:13 | 227:2,12 231:3 | **overview** | 133:6 141:10 |
| 48:10 49:17 | 237:10 242:2,8 | 219:21 | 150:11,21 |
| 50:19 51:6 | 242:20 243:10 | **own** 45:12 46:8 | 151:7 153:12 |
| 52:7 55:21 | 243:20 246:4 | 46:12 62:22 | 162:13 172:19 |
| 57:16 58:6 | 247:14 248:9 | 136:17 177:8 | 172:19 195:17 |
| 59:20 69:7 | 248:15 260:7 | 191:7 258:19 | 198:13 208:8,9 |
| 77:21 80:13 | 261:9 262:2,18 | 259:5 | 213:3 214:5 |
| 82:12 92:18 | 263:5 264:1,22 | **owned** 114:5 | 222:21 225:11 |
| 95:4,19,20 | 302:12 303:3 | 313:3 | 226:20 236:13 |
| 96:10,18 98:1 | 304:14 315:10 | **owner** 66:15,22 | 241:19 244:7 |
| 98:15 103:4,20 | 316:9 317:17 | **oxford** 103:11 | 244:16 247:21 |
| 106:22 107:14 | 321:19 325:19 | 111:1 113:10 | 248:5,6,7 |
| 114:22 116:13 | 337:18 363:5 | 114:10 115:3 | 265:5 285:11 |
| 118:16 123:17 | 363:20 364:8 | 115:14 | 290:17 291:8 |
| 132:12 133:4 | 365:16 366:6 | **o'toole** 2:10 | 294:22 307:21 |
| 133:21 134:5 | 366:21 367:4 | | 309:16,18,20 |
| 134:13 135:8 | 367:14 369:9 | **p** | 309:21 311:16 |
| 137:4,18 144:3 | 369:21 370:8 | **p** 5:1 229:15,21 | 311:18 316:18 |
| 144:20 147:7 | 370:18 371:20 | 295:2 | 326:12,15 |
| 149:1 150:2 | 372:11 | **p.m.** 173:15,19 | 327:6 329:11 |
| 151:22 153:10 | **overall** 275:8 | 229:4,8 287:6 | 330:21 331:5 |
| 154:11 156:2 | **overcharge** | 287:10 349:14 | 341:16 342:1,4 |
| 156:19 157:14 | 178:11 224:15 | 349:18 378:5,9 | 344:4,8,13 |
| 158:7 159:10 | 224:18,19,20 | 386:6,10 | 347:17 348:11 |
| 160:3,13,20 | 225:8 | **padlock** 235:6 | 348:16 361:5 |
| 161:17 162:4 | **overcharged** | 235:9 | 368:19 375:15 |
| 162:18 163:11 | 34:2 | **page** 3:5,9 33:9 | 375:15 380:18 |
| 163:20 164:13 | **overcharges** | 39:9,10 42:21 | 380:20 381:2 |
| 167:17 202:14 | 40:1 | 43:13,14,15 | 388:12,15,16 |
| 203:1 205:20 | **overhead** | 45:17 46:2,3 | 389:3 |
| 207:2 208:14 | 224:21 | 47:9 50:10,11 | **pages** 32:17 |
| 211:5 212:10 | | 51:8 92:13 | 88:3 173:6 |

Veritext Legal Solutions

800.808.4958

770.343.9696

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[pages - pending]

Page 60

| | | | |
|---|---|---|---|
| 326:5 329:8,9 | 290:21 297:22 | 359:13 372:9 | **passwords** |
| 329:10,12 | 298:4,8 300:22 | 373:18 383:6 | 236:1 |
| 343:14 362:21 | 302:4,9 306:10 | **partial** 182:3 | **past** 9:3,13 |
| **pagination** | 307:4,16,21 | 195:6 | 14:5 15:11 |
| 205:9 | 309:10 350:2,3 | **participated** | 17:13,22 23:8 |
| **paid** 58:4 | 353:6 362:10 | 116:18 | 24:9 30:7 |
| 108:15 117:2 | 370:9 375:8 | **particular** | 55:12 80:10 |
| **paper** 117:2,7 | **paragraphs** | 17:11 175:20 | 95:14 101:21 |
| 195:2 368:15 | 47:17 49:20 | 178:10 182:5,6 | 140:12 382:7 |
| **papers** 73:13 | 50:21 88:6 | 185:5 187:9 | 382:14 |
| 73:14,20 116:3 | 341:14,18 | 193:1 197:20 | **paste** 218:11,14 |
| 116:4 128:17 | 342:8 | 226:7 253:9 | **pasted** 218:18 |
| 192:5,10,16 | **parameters** | 277:11,11,15 | **pause** 223:12 |
| 193:12,13,14 | 283:16 324:1 | 280:1 314:8 | **pay** 110:4 |
| 194:1,10,17 | 375:2 | 356:8 369:4 | 320:17,21 |
| 195:12 201:21 | **parenthesis** | 382:9 | 322:4,5 366:5 |
| 250:7 269:7,11 | 5:15,16 | **parties** 5:8 | 367:12,17 |
| 324:14 325:1 | **park** 107:22 | 387:10 | 369:20 370:6 |
| 330:13 | **parsing** 162:14 | **partner** 63:9 | 371:9 |
| **paperwork** | **part** 25:4 43:1 | 66:10 | **paying** 108:1,6 |
| 116:3 | 44:10,11 55:4 | **partners** 66:12 | 108:9 199:20 |
| **paragraph** | 55:12 58:1 | 66:21 | 200:10,12 |
| 33:8,11,16 | 96:1 97:2,8 | **parts** 220:19 | 365:13,22 |
| 39:11,13,14 | 103:14,15 | 285:1 | **payment** 58:10 |
| 40:10 46:1 | 106:18 108:13 | **party** 156:11 | 147:22 175:19 |
| 47:16 92:20 | 108:14 117:10 | 320:2 | 320:8,18 |
| 172:19 203:22 | 117:11 135:16 | **passed** 272:9 | **pearson** 2:4 |
| 213:22 216:2 | 158:10 181:9 | **passing** 118:2 | 6:13 |
| 219:21 220:14 | 182:16 184:18 | 126:14 363:11 | **penalty** 207:9 |
| 221:5 244:6 | 184:22 187:7 | **password** | 320:21 322:4,5 |
| 245:19 250:22 | 197:9 211:5 | 235:10,17 | **pending** 7:4 |
| 251:7,7 284:8 | 231:13 277:13 | 237:1 238:19 | 33:5 45:18 |
| 284:10,20 | 285:6 289:22 | 238:20,21 | 50:6,8 152:16 |
| 285:8,12,13,20 | 315:13 336:20 | 239:1,7,17,21 | 342:16 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**penn** 191:21
**pennsylvania**
15:1
**people** 63:7
90:8 104:15
113:15 174:1
267:6,7,8
329:14,16
355:7 371:6
383:15
**percent** 210:20
224:15,15
225:3,16
255:22 258:6,6
258:20 259:5
259:13 293:22
298:18 299:4
302:20 303:7
303:15,18,22
304:7,11,12
305:4 306:20
306:22 307:5,8
307:18 308:2,4
308:5 310:2,9
310:10,16,21
311:14,15,20
312:10,12,15
313:18 314:2
315:5,6,7
316:5,5,13
321:14 324:3,3
383:3
**percentage**
305:15 311:5

316:8 320:1
341:2
**percentages**
308:3 316:21
**perfectly** 31:13
189:17 234:19
**perform** 175:2
203:9 212:7
252:18 301:19
**performed**
50:14 88:18
182:12 190:7,9
**performing**
180:1 198:9
202:21 203:5
277:1 372:2
**period** 12:4
26:4 43:13
101:15 103:13
132:19 135:12
135:13 158:20
158:22 176:2
190:19 193:5
227:7 239:15
252:21,22
253:15 256:1
256:11,17
257:13 303:22
304:6 320:19
328:11 356:14
**periods** 301:3
303:13,16
334:14 380:5

**permitted**
123:14 311:6,6
**permutation**
266:20 267:2
**permutations**
266:10
**person** 65:9
88:17,18 112:5
112:15 113:7
166:4 167:10
**person's**
356:16
**personal** 66:18
66:18
**personally**
128:13,15
144:2,10
**pertain** 161:4
**peruse** 42:19
**petroleum**
106:2
**ph.d.** 1:14 3:2
3:14,16,18 4:2
7:2 167:5
172:2 388:3
389:2 390:16
391:5
**pharmaceutic...**
100:7
**phone** 75:22
76:5 104:9,10
329:7
**phones** 5:7

**physically**
82:18 301:14
**physics** 92:11
**pick** 5:6 240:11
358:14
**picked** 267:6,8
267:8 356:21
**picking** 280:8
**picture** 113:11
**piece** 157:20
182:6 277:18
343:20
**pieces** 182:4
**pin** 68:4 148:6
**place** 5:8 82:10
173:3 185:20
186:5 187:22
193:17 346:3
387:5
**placeholder**
287:14
**placement**
160:6
**places** 47:17
160:5 330:18
**plains** 2:6
**plaintiff** 20:7
27:1,6,9,12,17
27:21 28:5,13
28:17 34:11
139:13,14
143:14
**plaintiff's** 34:7
306:6 337:16

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[plaintiffs - powwr]

Page 62

**plaintiffs** 1:7
2:3 6:14 17:10
73:20 133:1,5
133:19 135:5
136:20,20
137:3,9 139:12
142:5 147:2
149:15 164:5,7
164:7 191:4,5
201:17 203:8
203:14 215:12
216:3 220:1
222:3,5 237:12
251:13 252:3
255:10 302:11
**plan** 109:11,12
**plane** 281:7
**plants** 91:16
**platform** 121:3
121:7,8 186:21
190:8
**platforms**
192:15
**plausible** 79:7
**play** 108:15
165:2 374:3
**played** 288:22
**please** 5:5,7 6:2
6:21 9:5 33:3
33:12 39:15
67:4 76:8 77:6
85:2 130:12
134:21 147:19
195:16 203:16

236:22 241:11
242:11 294:22
332:14 388:7
**plus** 13:5 17:3
17:20 22:7
26:15 107:6
109:6,21 110:4
150:17 184:5
195:21 212:4
267:11 268:7
304:7 308:2,4
**podcast** 116:7
117:3
**podcasts**
116:11,16
**point** 8:16 9:2
14:19 34:13
44:20 45:11
66:9 68:1 84:7
84:19,21 87:5
119:15 139:4
141:20 145:17
148:8 158:15
158:16 160:19
177:15 178:3
228:10 266:2
282:9 284:19
286:4 297:21
303:10 312:4
312:18 314:19
316:2 319:17
345:2,5
**points** 78:5
163:16 189:12

309:9 334:3
**policies** 367:3
367:16,20
371:8,13
**policy** 119:8
366:16 367:22
370:12
**pooling** 329:18
**pops** 238:18
**port** 309:13
**portal** 120:4,7
120:8,9,13
326:20 327:17
327:22 328:16
330:22 331:1
334:22
**portals** 328:22
329:20,21
**portfolio** 100:3
313:21 314:1,5
314:10,12
315:19
**portion** 156:11
157:3 187:5
**portions**
217:13
**pose** 9:8
**poses** 11:10
**position** 44:16
45:8 62:5 96:5
105:9 106:7,15
107:8 110:17
**positive** 196:1
196:2,3 201:10

223:18
**possibilities**
21:11 366:1
**possibility**
352:11
**possible** 8:11
12:11 19:5
23:14,15 143:3
167:20 199:9
247:8 273:15
273:18,22
365:12,19
**postdate**
215:20
**posting** 345:3
**posts** 344:22
**potential**
138:14 157:8
187:20
**potentially**
179:10 354:13
**power** 28:8
75:22 91:16
116:5 126:7
171:18 357:18
363:2 371:11
**powwr** 130:6
130:21 131:6
176:1 181:18
184:17 185:4
185:10,15,15
186:15 190:3
229:11,13,20
229:22 230:5,9

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[powwr - prices]

Page 63

| | | | |
|---|---|---|---|
| 230:13,15,17 | **practical** | **preserve** 45:7 | 338:11,12,14 |
| 231:11 234:20 | 216:18 | **presumably** | 338:15,17 |
| 236:20 239:1,4 | **practically** | 154:15 310:21 | 339:9,13,16,20 |
| 239:6,14 240:4 | 199:8 | 357:17 | 341:12 343:17 |
| 240:5,9,15 | **practice** 102:9 | **presume** | 343:20 344:3,4 |
| 244:7,20 245:3 | 106:17 182:17 | 260:16 | 344:16,19 |
| 249:10,19 | 187:15,18 | **pretty** 181:21 | 345:4,5,10,12 |
| 250:2 251:17 | 188:10 328:22 | 230:10 300:5 | 345:12,17 |
| 251:18 253:12 | 329:13,14,16 | 369:15 380:10 | 346:8 347:12 |
| 253:20,21 | 347:20 356:6 | **prevented** | 349:22 350:7 |
| 254:11 255:14 | 358:2 379:11 | 232:17 | 350:18,19 |
| 256:5 257:6 | **pre** 251:17 | **prevents** | 351:21,22 |
| 259:21 260:9 | 252:2 | 236:21 | 353:1,7,11,12 |
| 260:11,19 | **precise** 249:10 | **previous** | 353:14 354:5 |
| 261:16 264:4,4 | 249:11 353:15 | 133:19 135:5 | 354:15 356:22 |
| 264:9 272:20 | 354:12 | 135:17 137:14 | 357:9,13,22 |
| 275:1 278:13 | **predate** 215:16 | 348:11 365:14 | 358:3 370:15 |
| 279:7,15,20 | **preexisting** | **previously** | 371:4,10,12 |
| 280:11 281:22 | 184:14 | 208:9 209:4 | 383:3 |
| 282:15 283:4,6 | **prefix** 119:18 | 210:1,10 365:5 | **prices** 68:19,20 |
| 283:10,13,18 | **prep** 74:19 | **price** 57:8 | 190:14 208:10 |
| 286:11 287:1 | **preparatory** | 68:18,22 193:1 | 238:6,16 258:3 |
| 288:5,10 290:7 | 14:9 | 194:15 199:10 | 300:19,22 |
| 297:8,12,22 | **prepare** 73:10 | 208:20 209:5 | 305:17,17,17 |
| 300:2,22 | 359:13 | 209:14,20,22 | 317:1,10,12 |
| 305:17 322:22 | **prepared** 124:7 | 210:14 211:1,9 | 318:4,17 319:9 |
| 354:11 355:16 | 124:9 | 212:2,4 216:19 | 319:10 325:7 |
| 357:4,9,20 | **preparing** 47:1 | 216:20 220:6 | 325:17 326:2 |
| 359:10 360:10 | 47:22 73:4 | 263:15 295:7,8 | 326:21,22 |
| 362:9,18,20 | 83:16,17,17 | 300:1,6,6,11,11 | 328:12 337:1 |
| 364:4,10 381:1 | 274:15 359:13 | 306:13 319:11 | 354:6 361:9,11 |
| 381:5,9 | **present** 2:15 | 322:6 335:11 | 367:17 372:3 |
| **powwr's** 258:4 | 6:3 284:16 | 335:12,21 | 383:14,17 |
| 357:21 362:14 | | 336:1,16,18 | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**pricing** 208:19
209:13,19,21
211:1 244:7
264:9 271:11
284:3 286:11
297:22 319:14
371:18
**primarily**
33:22 166:11
230:1 231:17
**principles**
33:21
**printing** 327:7
**prior** 96:12
136:19 225:22
238:15 318:3
354:6 369:12
371:1
**private** 5:6
113:19
**privilege** 44:20
53:22 61:3
85:9,14,16,17
85:18 86:10
87:12 93:5,8
93:12 94:11
95:16 165:16
346:16
**privileged**
43:21 44:5,12
61:8,17 62:6
72:20 85:9
86:18 94:17
283:21

**pro** 54:20
182:21
**probably** 9:2
68:3 75:16
112:18 129:22
130:5 146:8
168:1 173:11
214:17 232:2
279:4 281:8
296:13 334:2
341:21 342:20
351:13 366:8
**problem** 44:17
238:14 289:1
289:10
**proceed** 6:15
277:18
**proceeding** 6:1
24:17,22 25:4
387:10
**proceedings**
172:18 387:3
**process** 41:17
117:10 120:22
148:2 178:1,15
181:5,9 186:1
186:5 188:9
194:11,12
213:1 252:15
295:20 300:18
**processed**
197:9
**processes** 343:4
343:5

**processing**
175:17 178:7
179:8 180:9,13
**procuring**
340:2
**produce** 244:11
244:15,18
346:10
**produced**
54:20 55:3,8
55:14,17 59:18
73:15 119:17
129:5 134:3,7
134:10 135:5
149:20,21
151:13 160:19
177:7,8 182:1
183:1 192:8
204:13 205:15
230:16 242:6
248:11,22
249:5 254:11
305:22 306:3
323:7 346:12
**produces**
229:17
**producing**
182:20
**product** 9:19
10:4 33:21
84:13 85:13
93:7,10,12
155:12,16
177:11 195:2

197:1 237:8,9
261:15,17
263:10,21
264:8,12,20
292:13 298:17
300:11 314:7,7
314:8 361:20
362:6 375:20
**production**
56:11 374:2
**products**
230:20 263:9
310:3 315:20
**professional**
101:9,13
379:14
**professor** 102:3
102:8 103:5
**profile** 265:8
267:20 275:13
**program** 92:9
180:18 319:17
**programming**
70:12
**programs**
181:8,9 183:10
277:10 371:16
**projecting**
258:3
**promised**
213:11
**promote** 117:7
**pronunciation**
334:1

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[proper - question]

Page 65

proper 34:8
40:4 348:16
properly 182:7
proposition
84:20 85:7
362:13
prospective
138:1
provide 8:18
9:6,17 10:12
24:2 60:8 67:4
67:22 89:9
90:4 104:20
160:5 165:8
178:14 180:4
228:2 236:22
238:1 244:3
245:13,16
305:3 321:14
330:12 336:10
342:13 346:2
353:19 366:9
381:11
provided 17:19
65:18 67:18
68:14 73:19
78:2,4,7 79:22
103:3 133:6
165:19 170:7
170:15 174:2
176:9 183:5
190:20 196:13
201:21 202:6
216:12,18

217:3 220:2
227:6 239:21
250:19 258:15
273:1 274:6
305:14 332:11
342:11 344:5
provides
219:21 303:1,7
304:11 319:14
providing 8:20
19:18 43:2
81:14 169:1
180:6 304:12
provision
313:16
ps3 361:12
psc 162:15
169:8 285:14
319:19 321:13
ptc 377:17
pu 161:1
public 1:18
34:5 119:7
161:1 162:22
169:13,17
170:2,13,17
311:19 312:5
314:20 322:2
367:15 369:6
369:14,15
370:11 371:12
372:7,8
publication
116:17 117:10

publicly 310:22
312:6,21 313:2
313:4 315:18
345:3
publish 358:3
published
244:8
pull 345:15,16
pulled 327:2
336:22
punctuation
89:18
purch 341:3
purchase 99:10
300:12 308:2
317:4 322:1
340:22 341:3
350:6
purchased
307:4,7 310:3
318:21 319:18
319:22 320:2
purchases
99:13,20 322:9
purchasing
34:4 321:17
purpose 84:4
120:9 370:9
purposes 66:19
211:21 224:10
put 41:2 68:4
75:14 109:12
136:8 148:6
182:18 188:15

193:16 196:20
241:9 247:12
261:18 298:1
348:13
puts 32:20
putting 91:8
176:4 200:4
230:18 316:3
python 181:1
183:10 185:2,6
185:9 186:22
187:2 188:14
190:2 233:10
233:15 235:13
239:9 279:18
280:12,17,21
288:13

q

qualifications
70:4
quality 180:12
252:17 253:21
254:4,14
289:22 377:20
quantity
157:18
quarterly
162:12 319:9
que 382:2
quebec 333:9
333:10
question 7:11
9:5,8,21 10:6

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[question - rate]

Page 66

10:10 11:15,22
14:20 15:3,8
15:10 21:9
22:16 31:6
33:3,5 36:5,9
38:6 44:1,8
45:6,18 46:15
46:22 47:20
48:3,5,12,12
49:13 50:2,6,8
51:3 54:4,12
56:8,10,14
59:15 60:1,10
60:14,18 61:6
62:3 66:20
71:2 76:7,15
79:18 83:21
88:20 93:14
95:8,9,18 96:1
96:13 98:11
101:16 106:11
113:2 115:6
124:14 126:13
126:15 130:13
134:20,21
143:19 152:7
152:15,18,22
153:4,17
165:18 177:13
188:21 198:1
201:16 202:19
203:15,21
206:8 208:1
210:2 212:11

215:18 223:17
227:7 237:7,13
238:11 242:12
244:10,11
256:15 279:2
283:21 296:12
306:5,7 308:6
318:4 319:1
322:16 323:7
337:20 342:16
343:9 345:7,8
355:3,18
365:10 366:19
367:9 381:3
384:16 385:17
**questions**   9:4
9:17 32:16
33:6 44:13,21
72:3 86:6,22
93:17 101:17
144:16 145:2
167:4 181:22
184:2 351:15
378:11,16
385:16,21
**quick**   21:9
42:22 146:9
348:19 349:7
375:5,6
**quite**   149:5
168:3 311:12
**quotation**
312:4

**quote**   40:1,2,4
40:12,13 43:3
311:16,18,18
366:10
**quoted**   313:16
**quoting**   366:8

**r**

**r**   5:1 181:4
183:10 190:7
190:13,17
229:15,21
294:18
**race**   112:19
**raise**   297:21
313:13 315:14
**raising**   312:14
**range**   74:8
79:20 81:2
129:9 215:9
**ranges**   254:8
**rate**   34:9 40:5
43:10,14,14
44:4 50:17
57:2,3,7,9,12
57:15,19 69:17
69:18,20 70:2
78:4,22 89:1
94:21 95:15,15
96:6 132:18
143:4,15
156:12 157:18
159:20 196:2,7
198:14,15,22

199:1 205:14
212:17,18,18
213:7,8 216:4
216:5,8 224:18
224:19,21
225:8 226:22
227:1,6 240:7
240:10 251:6
255:7,14,16,19
255:19 256:8
256:16 257:4
258:6,15
259:18,22
260:4,5,20
261:2,3,18
262:1,16 263:4
265:8,9 267:19
267:20 268:2,3
268:13,14,16
268:18 269:2,9
269:18,21
270:1,4,9,13,18
271:1,5,5,8,10
271:11,22
272:5,8,13,17
272:18,21
273:5,8,17
274:1,6,9
275:5,9,12,18
276:3,4,6,7,10
276:20 280:2
283:3 285:14
291:1,5 292:18
303:1 323:21

Veritext Legal Solutions

800.808.4958

770.343.9696

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[rate - recall]**

Page 67

| | | | |
|---|---|---|---|
| 323:22 324:3,4 | **reached** 34:19 | **reason** 8:9 | **rebuttals** 24:14 |
| 324:16,21,22 | 129:22 | 10:17,19,20 | **rec** 95:8 297:7 |
| 325:1,8 338:8 | **read** 32:14,20 | 53:18 54:2,10 | 298:2,10,13,14 |
| 339:8 353:10 | 32:22 33:11,15 | 56:13 86:8 | 298:19 299:4 |
| 355:17,19,19 | 33:16,18 35:5 | 128:7 195:5 | 299:15,16,18 |
| 355:22 356:16 | 35:15,18 39:7 | 196:13 197:20 | 300:1,6,7,12,20 |
| 364:15,15,16 | 39:14,19 73:12 | 245:18 320:15 | 303:17,18 |
| 364:17,17,19 | 88:4,4,5 185:3 | 388:9,16 389:3 | 307:9,14 308:3 |
| 375:10 377:6 | 185:3 216:19 | 391:11 | 316:8,21,22 |
| 377:15 380:1,2 | 217:8,14,16 | **reasonable** | 317:4 318:18 |
| **rates** 34:9,15 | 225:11 233:10 | 75:8 78:7 | 318:21 319:2 |
| 40:5 43:3,4 | 242:9 287:21 | 128:21 129:3 | 319:16 320:16 |
| 44:4,14,14 | 309:4 353:21 | 254:5,16 259:6 | 322:9 352:7,10 |
| 45:13,13 46:8 | 353:22 354:4,7 | 323:14 376:15 | **recalculate** |
| 46:12,13 50:15 | 382:3 388:7 | **reasonableness** | 380:5 |
| 50:15 51:12,12 | 390:2 391:9 | 40:3 | **recall** 12:18 |
| 78:10 162:1 | **reading** 85:7 | **reasons** 8:9 | 13:10,21 14:1 |
| 208:18,18 | 126:5 149:6 | 10:17 46:21 | 14:3 15:19 |
| 209:11,12 | 382:8,10,15,19 | 48:2 54:16 | 16:16 17:5,13 |
| 210:19,19 | **ready** 33:2 76:4 | 56:8 60:17 | 17:16,21 18:11 |
| 213:10,11 | 196:12 228:12 | 76:11 93:3 | 18:15 19:4,11 |
| 224:15 273:19 | **real** 26:8 84:17 | **rebuttal** 3:18 | 20:1,4,7,16,16 |
| 274:15,15 | 135:2 349:7 | 60:12 67:6,16 | 20:18 21:17 |
| 327:7 332:3 | 375:5 384:22 | 71:20 72:8,19 | 22:17 23:14 |
| 334:15 335:7 | **really** 81:20 | 73:12 122:13 | 24:8 25:8 26:2 |
| 351:19 353:2,3 | 97:22 111:9 | 125:13 131:21 | 28:7,11,18 |
| 353:4 355:13 | 170:10 179:4 | 131:22 149:6 | 30:8,14,16,19 |
| 356:18 360:7 | 199:7 218:17 | 158:11 161:1 | 34:20 37:11 |
| 361:9 363:3,16 | 233:21 267:7 | 176:12,20 | 51:17 52:5,6 |
| 364:1 365:13 | 270:11 286:1 | 181:20 217:15 | 52:10,15,20 |
| 374:20 375:14 | 294:12 345:7 | 309:13 310:18 | 53:12 60:5 |
| **rather** 349:2 | 371:14 | 311:17 340:1 | 64:17,19 65:2 |
| **raw** 194:12 | **reask** 322:16 | 350:17 | 66:2 72:1 |
| | | | 79:21 85:7 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[recall - refund]

Page 68

| | | | |
|---|---|---|---|
| 95:8 100:2,11 | 137:9 381:3 | 302:8 303:12 | 306:12 391:6 |
| 121:5,6 131:11 | **record** 5:3,9 | 303:20,21 | **references** |
| 131:17 153:15 | 6:4,16 17:19 | 305:15,18 | 131:16 |
| 167:8,22 | 39:14 47:21 | 307:5,8,14,15 | **referencing** |
| 251:21 252:12 | 83:7,10 84:5,8 | 308:2 310:3,4 | 161:6 335:17 |
| 252:15,16 | 89:12 121:20 | 310:9,10 311:5 | **referred** 17:1 |
| 254:13,22 | 122:13 146:10 | 312:18 313:3 | 130:3 131:5 |
| 255:20 261:11 | 146:15,19 | 315:7,8 316:13 | 153:14 234:18 |
| 263:13,18 | 173:14,18 | 317:12,13,15 | 269:13 309:5 |
| 274:11 290:6 | 228:4 229:3,7 | 317:16,21,21 | **referring** 43:9 |
| 376:19 379:20 | 287:5,9 322:8 | 318:8,9,14,20 | 65:8 66:16 |
| 382:1 385:5 | 338:3 342:3 | 319:6,7,14,18 | 67:21 78:19 |
| **recalling** 17:10 | 346:21 349:13 | 319:22 320:1 | 84:21 148:19 |
| **receipt** 391:17 | 349:17 377:22 | 320:13,19 | 157:12 159:13 |
| **receivables** | 378:4,8 381:7 | 321:1,2,3,4,7,8 | 174:8 229:13 |
| 340:22 341:3 | 386:6 387:7 | 321:17 322:1,2 | 229:14,16 |
| **received** | 388:11 390:6 | 322:15,21 | 304:16 320:9 |
| 149:15 151:21 | **recorded** 5:11 | 323:4,9 350:4 | 327:9 338:15 |
| 152:14 153:8 | 387:3 | 350:6 | 354:20 |
| 158:5 159:1 | **recording** 5:8 | **redirect** 347:21 | **refers** 37:21 |
| 271:19 324:20 | **records** 172:18 | 348:9 384:17 | 151:3 361:12 |
| **receives** 58:9 | 324:13,16 | **redirection** | 361:15 |
| **receiving** 58:10 | 346:7 | 347:16 | **reflect** 35:7 |
| **recent** 345:1 | **recreate** 345:9 | **redirects** | 40:20 |
| **recess** 83:8 | 379:6 | 347:15 | **reflected** |
| 146:17 173:16 | **recruiter** | **ref** 381:18 | 212:21 364:14 |
| 229:5 287:7 | 110:20 | **refer** 119:22 | **reflecting** |
| 349:15 378:6 | **recs** 275:3,4,7 | 161:1 192:5 | 150:22 |
| **reciting** 220:1 | 276:6 285:17 | 207:8 369:5 | **reflects** 339:9 |
| **recognize** | 285:21 286:9 | **reference** | 355:6 |
| 241:15 351:13 | 286:12,17 | 140:21 244:4 | **refresh** 34:20 |
| **recollection** | 295:22 297:18 | 282:4 332:11 | 40:16 381:2 |
| 25:14 34:21 | 297:18 299:22 | **referenced** | **refund** 175:19 |
| 40:16,21,21 | 300:17 301:1,4 | 169:4 229:11 | 196:12 198:5 |

Veritext Legal Solutions

800.808.4958

770.343.9696

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[refunding - report]**

Page 69

| | | | |
|---|---|---|---|
| **refunding** 197:20 | **regulator** 161:12 162:2 162:16 163:7,9 321:15 | 160:19 162:1 185:3 302:19 | **remove** 225:2 233:2 288:15 289:6,8 290:5 290:17 |
| **regard** 111:12 150:5 | **regulators** 161:15 366:11 | **reliability** 116:4 170:10 171:19 | **removed** 196:17,17 225:22 |
| **regarding** 10:3 34:21 40:17 41:10 44:3,21 45:11 48:22 50:2,17 54:12 56:10 71:2 72:3,8 84:6 86:16 135:4 148:10 161:11 161:15 170:15 171:13,13 183:12 193:11 217:13 271:21 325:12 333:17 | **regulatory** 160:11 163:4 **regus** 1:16 **reinvested** 99:19 **related** 59:17 68:21 71:12 102:7 115:13 124:14 132:6 136:6 150:5 160:8 192:22 387:9 | **reliable** 33:21 **relied** 127:20 337:7 **relieve** 9:16 **rely** 134:11 222:2 **relying** 44:18 131:11 198:21 **remaining** 197:10 224:4 226:1 **reme** 172:2 **remember** 17:8 | **renew** 207:1 **renewable** 204:16,19 210:20,21 302:20 303:1,7 303:15,19 304:8,11 305:3 306:16,19,22 310:3 314:7 321:14 **repairs** 104:19 **repeat** 12:13 |
| **regardless** 226:9 **regional** 157:12 161:22 **regu** 163:8 **regular** 64:3 **regulate** 163:1 163:1 | **relates** 369:6 369:14 **relation** 38:15 **relationship** 44:13 66:18,19 111:14 112:1 170:14 260:4 382:3 | 103:6 111:20 111:21,22 112:2,14,19 113:21 126:14 232:10 299:16 359:1,2,5 364:16 371:1 376:1 377:3 | 33:3 38:11 130:12 134:19 134:21 153:4 242:11 **rephrase** 56:20 62:12 203:4 **replacing** 275:18 |
| **regulated** 163:4,7,8 **regulation** 141:5 162:6,20 312:9 314:21 **regulations** 308:21 322:3 | **relative** 136:19 **relatively** 265:6 330:10 334:5 355:9 **relativity** 121:4 **relevant** 8:16 34:5 61:6 98:2 114:20 115:7 | **remembering** 341:10 **remind** 76:7 77:6 89:1 188:19 380:22 **remote** 82:16 **remotely** 6:3,10 6:18 | **report** 3:14,18 12:8 16:19 23:10 24:2 25:3,13 29:7 33:22,22 34:14 34:17 35:2 36:15 39:18,21 |

Case 1:24-cv-01260-ER    Document 360-22    Filed 03/13/26    Page 462 of 488

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[report - required]

Page 70

| | | | |
|---|---|---|---|
| 40:14 41:15 | 153:12,12 | 325:19 328:12 | 185:4 236:20 |
| 44:7,15 46:20 | 154:11 157:15 | 328:15 340:1 | 285:7 311:17 |
| 47:13 48:10,20 | 158:10 160:3 | 341:14 350:17 | 326:18 327:10 |
| 49:17,22 50:14 | 160:22 165:8 | 353:5 359:13 | 381:5 |
| 51:1,5,13 55:4 | 165:12,20 | 362:21 363:7 | **represent** 6:14 |
| 55:21 57:1 | 166:1 171:1 | 367:14 369:10 | 46:10 128:19 |
| 60:11,12 62:11 | 172:12,16,16 | 369:22 370:8 | 129:8 143:13 |
| 62:14 67:6,8 | 174:4,14 | 375:6 378:19 | 149:14,18 |
| 67:14,15,16,19 | 176:10,12,16 | 379:5 381:1 | 158:19 177:5 |
| 67:22 68:3,7 | 176:18,19,20 | 384:10 | 205:13 207:7 |
| 68:10,13,15 | 176:21 179:7 | **reported** 1:17 | 236:14 248:21 |
| 69:3,5,10 | 184:10 195:17 | **reporter** 1:18 | 264:7 292:18 |
| 70:20 71:18,20 | 198:12 203:20 | 5:20 6:21 8:1,6 | 302:16 |
| 72:5,8,9,18,19 | 204:2 208:14 | 31:6,10,12,15 | **representation** |
| 72:21 73:11,11 | 211:5,21 | 31:17 38:10 | 187:21 321:12 |
| 73:12 74:4,13 | 213:15 216:10 | 85:2,4 87:19 | **representations** |
| 79:22 83:16,17 | 216:22 217:8 | 146:10,13 | 151:20 153:7 |
| 95:12,21 96:11 | 217:13,15,16 | 205:3,7 228:20 | 220:2 |
| 98:9,16 115:1 | 217:18 218:6,7 | 234:11 241:7,9 | **represented** |
| 118:16 119:22 | 218:12,13 | 241:13 360:16 | 213:6,8 |
| 121:19 122:4 | 220:3,9 221:4 | 368:4 372:22 | **representing** |
| 122:13 123:17 | 231:4 237:10 | 387:1,20 | 5:19 27:5,12 |
| 124:1,7,17 | 241:16 242:10 | **reporters** 5:21 | **represents** |
| 125:3,6,8,9,11 | 244:4,6,16 | **reporting** | 299:7 |
| 125:13 127:16 | 245:6,11 246:5 | 174:22 176:14 | **reproduce** |
| 128:1,2,6,9 | 248:2,15 249:7 | 177:6 192:8,13 | 187:17 301:8 |
| 131:5,17,18,19 | 250:14,17,22 | **reports** 24:8,14 | 330:16 |
| 132:13 133:4,6 | 251:8 264:3,5 | 25:7,8,12 | **request** 33:3 |
| 133:22 134:6 | 264:8 284:7 | 51:13 59:18 | 56:11 237:5 |
| 135:9 137:5,19 | 290:22 302:6 | 72:14 122:18 | **requests** 56:6 |
| 144:4,21 147:8 | 309:13 310:1 | 123:2,10,15 | **required** 16:19 |
| 147:19 148:18 | 310:14,18 | 124:15 126:18 | 22:12 23:10 |
| 149:2,6,7,12 | 312:14 315:11 | 132:1 165:3,5 | 24:11 29:15 |
| 150:3,21 152:4 | 316:18 324:2 | 181:20 184:17 | 35:3 36:16 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[required - right]**

Page 71

| | | | |
|---|---|---|---|
| 39:18 42:9 | 227:18 269:13 | **retail** 162:16 | **revise** 185:22 |
| 52:8 55:22 | 269:18 270:1 | 163:8 | **revised** 185:14 |
| 59:20 62:16 | 273:5,8,13 | **retained** 26:15 | **revision** 186:17 |
| 69:7 74:6 77:4 | 275:18 318:19 | 36:4 60:5 | **revisions** 186:5 |
| 77:21 79:4 | 368:16 | 171:14 230:12 | 186:7 189:1 |
| 80:14 82:13 | **resource** 116:5 | 386:9 | **rg&e** 140:14 |
| 84:2,11 92:18 | **respect** 37:8 | **retention** | 143:10,14 |
| 99:17,18 107:1 | 204:16 | 314:20 | 278:16 292:19 |
| 108:4 115:1 | **respectively** | **retire** 315:6 | 293:6 346:19 |
| 116:14 174:21 | 265:8 | 320:18 323:9 | 347:1,8 375:22 |
| 307:10 | **respond** 11:12 | **retired** 312:18 | **right** 6:16 7:11 |
| **requirement** | **response** | 313:3 319:2 | 11:2 17:17 |
| 311:13 312:8,9 | 189:17 208:19 | **retrieval** 329:2 | 20:15,20 21:22 |
| 314:12,13 | 209:12 210:22 | **return** 359:9 | 24:2 27:1 29:4 |
| 321:7 | **responses** 8:18 | 388:13 391:13 | 30:10 39:10,11 |
| **requirements** | 8:21 | 391:16 | 54:21 62:8 |
| 24:6 | **responsibility** | **returned** | 66:22 67:1 |
| **requires** 322:4 | 337:13 | 103:10 | 75:1,13 76:22 |
| **requiring** | **rest** 348:21 | **revenues** 34:3 | 77:19 78:11 |
| 310:16 | **restrictions** | 242:17 | 79:13 87:17,18 |
| **reread** 73:11 | 233:2 | **reverse** 365:18 | 89:7,13 94:6 |
| **res** 303:20 | **restroom** 287:2 | **review** 54:6,14 | 95:9 101:2 |
| 306:16,19 | **rests** 34:7,17 | 88:2 129:17 | 103:7 104:18 |
| 315:7 316:6,8 | **result** 99:20 | 151:18 153:5 | 105:8 106:5 |
| **research** 69:1 | 288:11 | 180:10 391:7 | 107:21 109:20 |
| 84:16 106:2 | **results** 67:18 | **reviewed** 54:19 | 109:21 110:1 |
| 115:8 372:9 | 175:1,1 176:14 | 55:12,13 56:1 | 111:3 116:9 |
| **reserve** 6:16 | 177:6 180:11 | 73:12 119:17 | 118:4 119:8,13 |
| **reset** 161:7,9 | 180:11 192:9 | 129:11,13,15 | 121:17,21 |
| 169:4 172:12 | 192:13 195:6,6 | 323:13 | 122:22 125:19 |
| 172:13 | 244:8 251:1 | **reviewing** | 125:22 126:12 |
| **residential** | 352:2 379:7 | 131:11 175:1 | 139:16 140:15 |
| 143:9,10 | **resume** 168:4 | 175:16 180:7,8 | 141:2 143:4,6 |
| 205:14 227:10 | | 208:7 | 145:22 149:5 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[right - safety]

Page 72

| | | | |
|---|---|---|---|
| 151:15,17 | 287:20 289:8 | **rings** 18:20 | **rs1** 269:14 |
| 154:5 157:16 | 291:21 292:6 | 22:3 | 273:6,19 |
| 163:15 164:11 | 292:13,22 | **rises** 16:8 | **rule** 10:9 33:20 |
| 167:8,8 168:18 | 293:13,22 | **rising** 189:4 | 39:22 84:9 |
| 171:8 172:20 | 294:1,5,12,14 | 211:9 371:10 | 98:12 |
| 177:15 179:21 | 294:22 295:4,9 | 371:12 | **ruled** 30:1 31:4 |
| 182:15,16 | 295:16,21,22 | **riyadh** 105:17 | 31:20 40:17,22 |
| 191:9 197:1,2 | 296:1,3,7,9 | 105:21 | **rules** 7:20 |
| 198:7 202:18 | 299:1,17 304:4 | **road** 1:17 5:18 | 12:21 196:22 |
| 203:4,21 204:3 | 304:13 305:6 | **rochester** | 204:17 289:13 |
| 204:16 205:6,6 | 305:10 307:1 | 133:15 | 289:14 |
| 205:19 211:22 | 309:10,19 | **rockland** 194:6 | **ruling** 31:22 |
| 216:1 218:16 | 310:11 311:12 | 326:7 344:4,15 | 32:4 |
| 218:19 220:3 | 311:18 312:3 | 347:9 | **run** 60:18,22 |
| 220:20 221:2 | 317:5,6 318:10 | **role** 84:1 165:2 | 62:22 187:3,4 |
| 221:11 223:4 | 320:10 323:5 | 165:7 179:21 | 187:6,6 226:5 |
| 231:15 234:22 | 324:6 325:5,9 | 179:22 180:3,4 | 276:15 375:5 |
| 234:22 240:12 | 327:17 328:4 | **rolling** 383:17 | **running** 188:16 |
| 240:22 241:12 | 328:18 331:12 | **roman** 219:9 | 232:3 |
| 243:5,9,19 | 331:13 333:12 | **rough** 72:21,22 | **rutgers** 102:3,8 |
| 247:5,21 | 334:1,19 335:7 | 78:2,6 | 102:15 103:4,6 |
| 250:11 254:20 | 335:17 336:22 | **roughly** 26:4 | 105:9 106:13 |
| 255:13 260:17 | 337:7 338:20 | 174:20 186:13 | 106:19 107:11 |
| 260:21 261:8 | 339:10 340:19 | 256:6 326:15 | 107:21 |
| 262:7,13 | 341:15 349:19 | **round** 323:18 | |
| 265:14,21 | 351:2,20 | **routine** 66:1 | **s** |
| 266:22 267:13 | 352:12,18 | **row** 150:12,18 | **s** 5:1 192:7 |
| 268:4,18 | 355:7,11 357:7 | 179:11 279:16 | 249:12 294:18 |
| 273:20 278:12 | 359:8 361:7 | 280:6 294:17 | 294:18 |
| 279:1,7 280:20 | 365:15 369:1 | 295:8 | **safe** 216:6 |
| 282:20 283:1 | 374:19 376:13 | **rows** 222:21 | 268:11 361:19 |
| 284:18 285:15 | 377:1 380:10 | **rps** 296:5 | 378:13 |
| 285:18,22 | 383:7 384:10 | 297:13,14 | **safety** 369:6,15 |
| 286:13,16 | 384:14 | | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[sake - scope]

| | | | |
|---|---|---|---|
| sake  46:11 | 332:18 333:22 | school  84:21 | 133:22 134:6 |
| salary  106:20 | 339:9 366:15 | 85:7 91:3 | 134:14 135:9 |
| 107:4,5,5 | 366:16 | 119:7 333:19 | 137:5,19 144:4 |
| 108:17 109:2,5 | says  26:11 47:7 | schuster  1:4 | 144:21 147:8 |
| sales  242:17 | 61:16 84:9 | 133:7 143:14 | 149:2 150:3 |
| saudi  103:8,10 | 124:21 125:17 | 144:1,10 | 152:1 153:10 |
| 104:22 105:4 | 150:20 173:5 | 272:11 | 154:11 156:3 |
| 105:17,21 | 206:10 208:10 | schuster's | 156:20 157:15 |
| 106:4 108:13 | 208:17 209:11 | 292:18 375:22 | 158:8 159:11 |
| 108:20 111:11 | 210:14 236:18 | science  91:4 | 160:3,14,21 |
| 114:4 118:18 | 238:14 265:7 | scope  12:21 | 161:18 162:4 |
| save  58:15 | 281:22 284:18 | 16:19 22:12 | 162:18 163:12 |
| 186:22 187:11 | 285:13 297:15 | 23:10 24:11 | 163:21 164:13 |
| 187:18 | 299:7 303:6 | 25:11 26:18 | 202:14 203:2 |
| saved  58:20 | 307:15 311:19 | 29:7,15 30:12 | 205:21 207:2 |
| 187:8 188:4 | 314:2 317:1 | 32:3 33:14 | 208:14 211:5 |
| saving  200:1,12 | 318:4 319:9 | 35:2 36:15 | 212:10 213:15 |
| 201:5 365:14 | 332:16 335:7 | 39:17,18 41:15 | 216:10,22 |
| savings  109:7,9 | 344:15 347:21 | 42:9 46:19 | 217:10 227:3 |
| 109:11,12 | 348:11 361:11 | 47:13 48:10 | 227:13 231:4 |
| 187:12 201:10 | sc1  143:9,9 | 49:17 50:19 | 237:10 242:2,9 |
| saw  168:4 | 273:19 274:15 | 51:7 52:8 | 242:21 243:11 |
| 209:22 221:19 | 275:5 292:21 | 55:21 57:17 | 243:21 246:5 |
| 346:17 354:11 | 293:2 339:14 | 58:7 59:20 | 247:15 248:9 |
| saying  33:6 | 353:10 376:2 | 69:7 74:5 77:4 | 248:15 260:7 |
| 72:14 85:15 | sc2  143:10 | 77:21 79:4 | 261:10 262:3 |
| 136:11 160:1 | 269:22 274:1 | 80:13 82:13 | 262:19 263:6 |
| 189:20 191:12 | 274:15 275:5 | 92:18 95:5,19 | 264:2 265:1 |
| 219:17 225:13 | scarcity  371:12 | 95:20 96:10,19 | 292:8 302:13 |
| 233:4 266:9 | scenario  200:3 | 98:1,15 103:21 | 303:4 304:15 |
| 270:17 271:3 | scenes  279:20 | 107:1,15 108:3 | 315:9,11 |
| 273:18 278:12 | scheduling | 115:1 116:14 | 316:10 317:18 |
| 301:14 312:6 | 166:11 | 118:16 123:17 | 321:20 325:19 |
| 312:15 313:17 | | 132:13 133:4 | 363:5,20 364:8 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[scope - sent]

Page 74

| | | | |
|---|---|---|---|
| 365:17 366:7 | 42:17 61:16 | 210:18 211:3,8 | **seems** 85:9 |
| 366:22 367:14 | 74:13 84:22 | 214:4 218:8 | 129:3 168:4 |
| 369:10,22 | 199:22 203:12 | 235:5 236:12 | 265:5 |
| 370:8,18 | 204:9 236:12 | 236:16 237:2 | **seen** 35:5 112:5 |
| 371:21 372:11 | 236:13 285:12 | 241:21 247:22 | 160:18 161:10 |
| **scott** 4:3 | 296:7 303:13 | 251:7 255:8 | 161:14 176:13 |
| 359:12 | 307:22 355:8 | 267:22 274:20 | 177:16 232:11 |
| **screen** 287:19 | **section** 34:11 | 279:10 280:18 | 346:14 |
| 289:12 | 47:22 218:6,7 | 282:4 284:16 | **select** 238:17 |
| **screw** 198:17 | 222:9 307:22 | 287:19 289:15 | 328:1 330:4 |
| **scroll** 294:11 | 342:15 368:21 | 290:11,16 | 361:11 |
| 294:22 296:9 | **sections** 217:18 | 291:11,15,17 | **selected** 186:13 |
| 298:12 334:9 | **security** 347:22 | 294:7,12 297:7 | 263:22 264:9 |
| 373:17 | **see** 10:16 11:22 | 298:12,15 | 264:13 272:19 |
| **scrolling** | 26:8 33:8 | 299:5 302:18 | 272:21 292:14 |
| 294:13 295:1,3 | 36:11 39:9,11 | 310:5 311:17 | 328:4,7,10 |
| 295:9,21,22 | 39:13 43:1,8 | 316:22 323:14 | **selections** |
| 296:1 334:12 | 43:12,15 45:14 | 327:6 328:8 | 330:8 |
| **sd1** 269:14 | 45:21 46:4,7,9 | 331:13 334:8 | **self** 84:20 85:6 |
| 273:6 280:2 | 47:7,8 50:16 | 334:11 338:22 | 148:15 187:6 |
| **se** 329:21 | 64:21 92:13,16 | 339:5 340:18 | **sell** 114:8 |
| **search** 221:16 | 92:19 107:20 | 345:1 348:7,14 | **selling** 99:18 |
| 278:2,2,3,6 | 111:18 113:11 | 351:16 355:7 | **sending** 363:16 |
| 310:17,19 | 124:19 125:14 | 361:17 368:22 | **senegal** 168:14 |
| 312:5,13 336:2 | 125:16,17 | 369:2 374:4,6 | **sense** 9:9,10 |
| 336:6,8,10 | 130:19 132:4 | 374:16 376:11 | 66:11,17 92:7 |
| 348:3 | 135:2 145:21 | 377:1 380:18 | 145:19 148:5 |
| **searched** 185:3 | 153:3 155:20 | **seeing** 55:21 | 176:4 183:20 |
| **searches** | 192:6 204:6,10 | 290:7 299:16 | 211:18 254:7 |
| 311:15 | 205:11 206:18 | **seem** 85:19 | 256:13 307:19 |
| **searching** | 207:4,11,11,12 | 258:20 | 330:3 333:3 |
| 280:1 315:2 | 208:7,10,12,17 | **seemed** 254:15 | **sensitive** 5:5 |
| **second** 3:12 | 208:21 209:7 | 255:1 | **sent** 388:1,13 |
| 36:22 40:17 | 209:15 210:13 | | 391:14 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[sentence - side]

Page 75

| | | | |
|---|---|---|---|
| **sentence** 40:9 | 266:8 267:12 | 256:16 257:5 | **shape** 290:10 |
| 40:10 285:12 | 268:3,6,8,9,17 | 260:1,13,14,16 | **share** 276:12 |
| 298:3,7 314:2 | 269:2,9,13 | 261:14 265:5,8 | 276:13 |
| 342:14 370:10 | 270:4,13,14 | 267:20 276:2,3 | **sheet** 238:17 |
| **sentences** 353:6 | 271:21 275:20 | 276:5 278:13 | 239:11 289:14 |
| **separate** 24:14 | 276:17 278:14 | 278:14,15,16 | 387:6 388:2,8 |
| 48:5 49:10 | 278:15,17,17 | 278:16 279:3 | 388:14 389:1 |
| 117:22 141:5 | 302:10,17,19 | 281:16 282:2 | 390:12 391:11 |
| 155:10,13,21 | 303:13 304:17 | 282:11 283:15 | **sheets** 232:15 |
| 188:11,22 | 305:10 311:19 | 288:12 291:1,5 | 233:17 360:10 |
| 189:3 205:12 | 312:5 314:20 | 293:19,20,22 | **shield** 44:17 |
| 212:22 213:2 | 321:22 322:2 | 294:3,5 317:21 | **shift** 325:3 |
| 271:2,10 336:5 | 323:20 331:10 | 318:13 324:2,4 | **ships** 118:2 |
| 340:8,10,14 | 332:2,6 338:8 | 324:4 328:13 | **short** 83:8 |
| **september** | 338:21 339:6 | 328:14 329:3 | 146:17 163:6 |
| 122:21 | 342:7,22 | 336:21 345:2 | 229:5 287:7 |
| **sequence** | 350:20 352:1 | 357:13 376:7 | 314:11,16 |
| 175:14 | 352:16,16,17 | 377:5 384:6 | 330:10 334:5 |
| **served** 62:6 | 372:7,8 376:1 | 385:1,7 | 349:15 355:3 |
| **service** 13:1 | **serviced** 149:16 | **sets** 70:14 | 378:6 |
| 132:7 136:19 | **services** 19:18 | 333:18 | **shorthand** |
| 137:22 138:2 | 275:3,10,11,16 | **setting** 174:21 | 320:21 |
| 138:21 140:6,7 | 276:5 327:7 | 233:21 256:8 | **shortly** 239:15 |
| 140:13 141:4 | 331:3 339:21 | 257:12 265:4 | **show** 287:1 |
| 142:3,12,17 | **serving** 318:20 | 282:5 359:1,3 | 334:2 |
| 143:2 144:10 | 319:4 320:12 | 359:4 360:7,10 | **showed** 280:20 |
| 153:13 156:12 | 320:16,22 | 361:9 363:3 | **showing** 234:22 |
| 161:1,3 162:22 | 382:17 | **seven** 193:4 | 377:12 |
| 169:13,17 | **set** 120:10 | 215:3 | **shrug** 8:19 |
| 170:2,13,17 | 132:18 150:6 | **several** 13:22 | **sic** 20:16 40:13 |
| 193:9 194:20 | 152:3,4 155:11 | 15:19 21:7,10 | 90:18 94:20 |
| 194:21 207:16 | 185:14 212:22 | 229:11 311:10 | 106:14 108:9 |
| 207:18,19 | 252:5,6,7 | 336:12 | **side** 26:10 |
| 265:11,14,22 | 255:11,16 | | 39:12 41:2 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[side - speaking]

Page 76

| | | | |
|---|---|---|---|
| 218:15,15 | site 327:7 | smaller 80:8 | 280:4 298:5 |
| 220:22 243:3 | sitting 25:9 | society 366:14 | 300:21 307:14 |
| 385:20 | 30:22 48:5 | 367:2 | 309:18 322:15 |
| sided 298:19 | 95:13 161:21 | software 71:8 | 327:3 330:22 |
| 299:4 | 170:14 215:14 | 180:14 | 339:11 344:6 |
| sign 120:18 | 215:17,19,22 | sold 242:17,18 | 348:12,13 |
| 316:4 388:12 | 238:7 240:14 | solely 34:9 40:5 | 357:8 359:18 |
| 391:12 | 243:17 244:19 | solutions | 360:19 374:3 |
| signature | 245:2 251:21 | 391:21 | 375:17 379:22 |
| 243:13 387:15 | 255:20 304:22 | solve 154:1 | 380:15,16 |
| 387:19 390:13 | 360:2,5 373:9 | 289:1 | sort 44:17 |
| signed 120:10 | situated 1:6 | somebody | 172:11 353:19 |
| 123:3 388:14 | situation | 306:5 | 381:15 |
| 391:19 | 321:15 | someone's | sound 128:21 |
| signifies 41:13 | situations | 275:5 | 170:6 171:4,7 |
| signing 138:17 | 308:4,9 372:1 | somewhat | 171:8 202:2 |
| signs 314:9 | six 24:14,17,18 | 28:18 187:6 | 205:19 346:17 |
| silly 182:19 | 25:7 166:6,7 | soon 68:3 | soundness 34:6 |
| similar 74:15 | 205:13,14 | sorry 11:9 31:9 | sounds 85:15 |
| 99:6 176:7 | 214:22,22,22 | 31:11,16 41:8 | 110:1 128:22 |
| 225:6 244:3 | 215:5 253:20 | 45:15,16,22 | sources 96:16 |
| 290:6 329:21 | 256:10,22 | 50:5 83:5 85:5 | 97:12,17 |
| 331:1 334:11 | 257:19,20 | 102:7 105:13 | southeast |
| 371:19 379:13 | 258:4 263:14 | 115:11 116:10 | 391:15 |
| similarity | 342:14 353:6 | 132:4 133:3 | southern 1:1 |
| 325:14 | slash 102:17 | 134:8,16,22 | 5:14 |
| similarly 1:6 | 265:8 359:21 | 136:2 149:11 | space 137:15 |
| simple 199:8 | slightly 278:7 | 152:17 153:21 | span 100:12 |
| simply 9:6 | slow 85:2 | 159:4 174:16 | spans 270:14 |
| 34:19 94:15 | slowly 8:10 | 177:1 189:8,9 | speak 8:10,10 |
| 256:15 258:22 | slurred 338:19 | 217:19 224:20 | 82:17 168:20 |
| single 223:7 | small 19:6 | 227:4 228:17 | speaking 85:4 |
| sir 152:15 | 231:13 275:12 | 229:4 248:6 | 108:14 156:4 |
| 159:6 | 275:14 | 265:17 267:1 | 156:21 157:17 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[speaking - stayed]

Page 77

169:3 341:22
385:18
**special**  92:9
**specialties**
91:15
**specialty**  91:15
**specific**  32:4
65:9 314:13
323:15 353:13
359:2
**specifically**
9:21 10:12
113:21 183:12
194:17 285:6
316:14
**speculate**
189:11
**speculation**
247:15
**spell**  88:13
**spelling**  229:19
**spending**  77:17
114:20
**spent**  59:16
62:11 69:3
71:17,19 72:4
72:14,18 74:4
80:1
**spits**  185:10
**spoke**  73:13
86:19 112:11
173:22
**spoken**  112:18
164:18 167:9

167:12
**sponsoring**
114:17
**sponsors**
114:10,11
**spot**  75:14
**spread**  192:14
355:16
**spreadsheet**
131:7 185:10
185:15 190:3
229:16 230:2
231:7 233:1
234:21 239:14
240:9,15
244:20 248:13
248:18 249:20
251:16,17,19
271:20 272:15
272:21 274:10
278:13 280:19
284:17 285:2
288:22 297:8
301:21 322:22
331:13,19
357:4,10
359:10 364:4
374:20
**spreadsheets**
130:6,21 176:1
181:18 185:16
230:16 231:1
231:11,20
232:4,19 240:4

240:5 251:5
252:1,21
253:12,20,21
254:11 260:9
260:11,19
263:21 264:10
272:3 275:2
278:19 279:15
280:11 287:2
288:6,10,14,16
288:17 289:20
290:2,7 355:16
362:9,20
**stage**  185:18
**stamp**  244:9
246:10,11,15
251:2 292:2
**stamped**  127:3
128:8
**stamps**  246:20
249:12
**standard**
187:18 196:1
303:19
**stands**  332:18
**starden**  20:16
**starlight**  19:2
22:8
**starnet**  22:15
**start**  41:6
184:1 260:13
260:16 291:19
326:6,6 331:5
355:7 375:16

**started**  104:18
111:7,14
119:10 228:7
**starting**  172:19
178:3 355:10
**starts**  41:17
284:22
**state**  1:19 6:2,4
60:21 84:8
114:5 133:17
158:17,17
163:9 191:21
265:4 292:16
296:8 367:7,22
375:21
**stated**  86:8
165:8
**statement**
139:18 152:21
171:12,22
338:21 343:16
344:20 345:11
345:13 366:14
**statements**
152:13 154:8
334:20 387:8
**states**  1:1 5:14
14:11,13 84:22
157:5 371:2,3
**statute**  222:10
**statutes**  222:12
**statutory**  301:1
**stayed**  196:17

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[stenographic - supplier]

Page 78

**stenographic**
1:18 388:10
**stenographic...**
387:4
**step** 62:21
101:8 126:11
139:12 169:6
175:7,9,13,14
175:20,21
179:4 273:15
284:13 378:19
**steps** 175:5
177:16,19
178:10,22
179:3,6,8
180:8 189:4
343:5 375:7
379:1
**stick** 206:5
279:11
**sticker** 241:9
**stocks** 99:2,10
99:14,15,18,20
99:21 100:2,11
100:16
**stone** 91:14
**stop** 44:12
295:6 327:1,1
**store** 104:12,16
**stored** 82:9,11
82:15
**story** 314:11,16
**straddled**
356:17

**straightforward**
68:16 181:21
265:6 329:3,18
330:11
**street** 2:11
**strength** 85:19
**string** 119:19
**strong** 183:19
**struck** 35:22
**structural**
186:9
**structure**
270:13 271:2,6
271:10
**structures**
271:8
**struggling**
352:22
**studied** 75:19
**studies** 103:12
106:2 111:2
113:11 114:10
115:13,14
**study** 90:21
**stuff** 21:8 193:7
200:20 340:20
**su** 221:20
**sub** 182:3
187:4 222:9,9
**subcode** 182:13
192:14
**subcompone...**
377:3

**subject** 29:13
29:18 30:16,20
31:1,19 37:11
44:7 67:9 79:8
123:13 140:1
270:2 275:17
295:17 319:15
322:2
**subjective** 40:3
**submit** 6:16
292:21
**submitted**
51:14 122:18
160:11 176:19
176:21 241:16
**submitting**
162:15
**subroutine**
182:5 187:9
**subroutines**
187:10 190:4
**subsection**
222:9
**subsections**
187:4
**subsequent**
257:11
**subsequently**
47:16 286:3
**subset** 224:8
267:6
**substance**
136:5,12
166:17 203:13

**substantial**
311:12
**substantiate**
310:14
**subtopics** 121:1
**subtracted**
355:22
**subtracting**
355:19
**subzones** 353:3
**suffered** 223:7
**sufficient** 33:21
320:18
**sufficiently**
249:10
**suggested**
192:11
**suggesting**
347:18
**suggestion**
233:14
**suite** 2:5,11
**summary** 291:7
294:22 346:19
375:15
**summation**
221:20
**summer** 107:4
107:5 371:5
**summing**
190:15 221:10
221:18
**supplier** 133:20
135:14 156:12

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[supplier - take]

Page 79

157:13,17
161:22 365:15
**supplier's**
156:12
**suppliers** 135:5
135:18 137:16
**supply** 43:4,10
44:4 47:7,8,11
47:16 48:7,17
49:14 50:17
92:15 94:21
95:15 96:7
155:6,16,17
156:17 158:6
158:16 159:8
159:20 196:15
325:13,15
338:8,21 340:7
340:11,13,15
342:7 343:16
344:20 345:6
345:11,13
350:12 365:6
368:16
**supplying**
362:15
**support** 12:7
14:9,10,10
34:19 65:18
67:5,10 104:20
174:2 371:15
**supposed**
182:19 321:11
344:18,19

**sure** 9:13 21:14
22:16,16 26:19
32:8 33:4 46:2
55:1,1,1 59:22
60:3 72:1,11
72:13 76:3,9
77:9 81:19
84:19 85:3
89:22 90:22
100:9,21
101:20 130:2
130:15 135:2
140:10 145:18
146:2,12 158:2
165:21 174:12
176:3,18
177:21 186:14
187:11,16
196:16 199:3
199:17 202:7
203:21 206:11
206:20 207:4
212:14 217:19
219:12 221:13
222:15,15
225:12 230:10
235:22 242:14
244:10 248:12
252:7 254:5,15
278:8 284:20
290:19 295:19
297:17 306:11
312:1 321:16
322:18 332:15

334:2 339:12
341:10 344:9
345:16 373:21
375:7 378:2
**surname** 65:2
113:9
**surprised**
158:11 162:9
**surprisingly**
335:21
**susan** 372:6
**suspect** 188:4
384:11
**swear** 6:21
**switches**
279:13
**sworn** 7:4,22
**synchronized**
355:20 356:4
356:12
**synchronizing**
356:1
**synthesize**
194:12
**synthesized**
194:22
**system** 120:1
163:3 190:11
326:17 331:9

| t |
| --- |

**t** 332:2,2
**tab** 233:22
234:16 238:6

238:16 291:8
294:11,18
296:3,3 297:14
**table** 43:13,15
44:9 46:21
92:14,16,19
150:17,20
151:4,6 222:20
241:21 242:15
244:11,15,16
244:19 245:14
245:16 247:12
247:21 248:2,7
248:11 249:3,5
278:7 279:16
280:5,6,9
317:11 318:5
319:8 322:11
323:3 330:4,6
331:21 332:10
**tables** 174:9,15
182:1 192:12
279:3
**tabs** 232:8,15
234:21 235:1,3
235:6,15,18
295:3 296:4
**tabulate** 336:1
**tags** 363:2,11
363:17,17
**take** 5:8 26:14
45:4 52:3
54:19 61:13
62:20 63:18

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[take - terms]**

Page 80

| | | | |
|---|---|---|---|
| 79:19 83:3 | **talking** 8:5 16:3 | **taxes** 108:6,9 | 89:6 145:10,21 |
| 101:7 106:3 | 96:9 131:22 | 108:15 110:5 | 172:14,21,21 |
| 116:20 121:17 | 140:12,14,20 | **team** 45:4 90:9 | 173:4 179:6 |
| 126:11 127:10 | 141:11,15 | 128:14 174:1 | 197:14 232:8 |
| 139:12 142:10 | 147:2 151:11 | 232:18 337:2 | 281:2 359:7 |
| 151:11 169:6 | 151:12,13 | **technical** | **tend** 17:8 |
| 173:11 177:8 | 154:19 155:16 | 104:20 | 273:12 |
| 177:17 190:17 | 171:5 175:17 | **technically** | **tenure** 107:8 |
| 203:20 206:6 | 179:13 184:3 | 191:11 266:13 | **ter** 268:7 |
| 215:8 217:20 | 193:22 194:3 | 300:10 | **terepka** 2:10 |
| 228:9,14,22,22 | 214:16 247:22 | **tedious** 356:7 | 6:8 |
| 260:15 281:3 | 281:15 307:3 | **telephone** | **term** 100:15 |
| 286:22 290:21 | 309:9 339:3 | 138:11,14 | 232:2 252:11 |
| 326:3 341:13 | 349:21 351:21 | 157:1 159:18 | 255:14,16 |
| 346:4 348:19 | 383:6 | 166:5 167:11 | 259:18,19 |
| 349:2 351:12 | **talks** 260:13 | **television** | 268:3 302:18 |
| 371:3 375:6 | 261:14 319:19 | 287:19 | 302:19 303:13 |
| 379:5 380:14 | **tank** 119:5 | **tell** 7:4 9:21 | **terminal** 333:9 |
| **taken** 4:2,3 | **target** 282:10 | 21:15 68:2 | 333:9 |
| 5:11 83:8 | 282:15,18,22 | 105:19,22 | **terminology** |
| 146:17 173:16 | 283:3 293:21 | 131:18 136:5 | 140:11,21 |
| 205:10 229:5 | 376:7 | 145:20 166:14 | 190:15 270:3 |
| 287:7 349:15 | **tariff** 336:15,17 | 189:10 222:4,4 | **terms** 16:3 |
| 378:6 | 336:20 | 243:17,22 | 49:10 68:6 |
| **takes** 185:13 | **tariffs** 193:6,6 | 244:19 278:11 | 72:20 81:14 |
| **talk** 81:5 | 194:16 336:11 | 336:15,17 | 85:22 132:6 |
| 119:13 146:13 | 354:17 | 342:6 343:8 | 153:13 161:2 |
| 148:7 166:16 | **tasked** 135:12 | 344:10 348:17 | 162:14 177:1 |
| 172:12 181:22 | **tasks** 63:17 | **telling** 324:22 | 178:7 179:3 |
| 249:18 385:12 | 176:7 | **tells** 353:7 | 197:17 211:8 |
| **talked** 176:16 | **taught** 333:18 | **ten** 11:18 12:3 | 212:19 216:19 |
| 176:17 190:2,4 | 333:18 379:14 | 12:10,12,14,15 | 283:2,2,5,7,19 |
| 192:4 265:11 | **tax** 108:1,13,18 | 13:3,21 26:5 | 302:10,17,19 |
| 315:2 379:15 | 108:21 340:7 | 70:11 77:13,14 | 303:11 304:10 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[terms - think]**

Page 81

| | | | |
|---|---|---|---|
| 304:17 305:10 | 43:20 44:10 | 307:21 309:1 | **theories**  54:13 |
| 307:7 333:16 | 60:13,20 84:2 | 318:7,12 | **thereof**  387:6 |
| 350:18 357:13 | 163:18 | 327:21 342:3 | **thermodyna...** |
| 371:18 | **testimony** | 343:6 351:12 | 92:11 |
| **terrible**  382:13 | 13:19 17:12 | 351:17 358:11 | **thing**  54:8 |
| **territories** | 18:2 22:2 | 361:17 362:1 | 116:6 159:2 |
| 141:4 193:9 | 30:12 31:4,21 | 363:5,20 364:8 | 168:1 291:4 |
| 265:12 276:17 | 44:3 48:19 | 365:17 370:18 | 293:20 317:16 |
| **territory**  140:6 | 49:21 51:16 | 371:21 372:11 | 335:9,11 |
| 140:7,13 | 72:13 79:21,22 | 383:1 386:7 | 347:21 375:9 |
| 141:12 142:3 | 96:9 118:16 | 390:6 391:9,17 | **things**  8:6 |
| 142:12,18 | 119:2,21 130:4 | **tethered** | 109:7 126:7 |
| 143:2 265:14 | 150:14 152:1 | 294:13 | 141:12 148:21 |
| 265:22 266:9 | 153:10 158:3,4 | **text**  90:3 | 157:4 158:17 |
| 267:13 268:8 | 158:8 160:3 | **th**  181:3 249:13 | 159:13 180:13 |
| 268:17 269:2,9 | 162:18 163:12 | **tha**  164:14 | 192:5 194:8,14 |
| 270:13,14 | 169:5,17 170:1 | **thank**  6:6,20 | 194:16 220:16 |
| 271:21 | 170:7,15,16 | 14:16 31:14,15 | 279:1 343:12 |
| **test**  37:10 | 171:2 172:3,14 | 46:4 173:20 | 363:16 |
| 187:10 195:3 | 173:5 201:7 | 205:7 229:9 | **think**  13:20,22 |
| **testified**  23:17 | 205:21 207:2 | 234:11 287:11 | 16:6,22 36:8 |
| 26:22 60:4 | 212:10 225:19 | 290:15 349:19 | 38:14 51:21 |
| 66:4 94:5,6,12 | 226:15 227:22 | 368:4 372:22 | 53:18 57:13 |
| 95:14 118:13 | 233:7,19 238:9 | 378:12 381:22 | 61:3,10 69:14 |
| 119:16 123:6 | 245:1 246:5 | 384:15 385:11 | 72:18,21 77:2 |
| 170:20 179:19 | 250:10,17 | 386:3,4,5 | 79:18 81:9,19 |
| 204:11 245:13 | 254:3 258:21 | **thanks**  7:9 | 84:20 96:12 |
| 283:4 355:15 | 259:8 260:7 | 83:13 146:22 | 99:16 102:20 |
| **testifies**  7:6 | 262:3,19 263:6 | 241:13 378:10 | 107:3 109:5 |
| **testify**  10:19 | 286:15 288:20 | 380:21 385:8,9 | 111:9,14 |
| 27:4 123:9,9 | 297:6,10 | **that'd**  348:17 | 112:17 113:1 |
| **testifying**  8:2 | 299:10 302:2 | **theoretically** | 114:19 115:7 |
| 12:7 14:9 | 302:13 303:4 | 198:4 212:1 | 116:17 117:10 |
| 23:19 24:1 | 304:3,15 | | 119:4,5,9 |

Frank A. Felder , Ph.D.                                  January 8, 2026
Brous v. Eligo Energy, LLC

**[think - times]**                                              Page 82

| | | | |
|---|---|---|---|
| 121:20 128:8 | 318:21 319:16 | 211:13 212:6 | 158:18,22 |
| 130:18 131:16 | 321:9 326:3 | 220:5,20 | 159:13,13 |
| 133:17 136:8 | 327:2 330:8 | 234:21 241:6 | 170:12 173:14 |
| 136:18 139:19 | 331:22 334:4 | 282:16 341:17 | 173:19 176:2 |
| 145:11,22 | 348:18 360:11 | 351:5 366:1 | 182:4 187:13 |
| 146:7,7,8 | 362:2 363:10 | **thrown** 281:10 | 197:14 215:9 |
| 163:15 165:17 | 366:8 368:7 | **thu** 223:18 | 221:16 227:7 |
| 168:1 170:3 | 370:15 371:19 | **thursday** 1:15 | 229:3,8 238:16 |
| 172:15 181:20 | 372:19,19 | **tier** 317:12,14 | 239:15 244:9 |
| 183:22 186:8 | 378:1 379:9 | 317:15 318:4,8 | 246:10,11,14 |
| 186:19 188:16 | 385:22 | 318:13 319:9 | 246:20 249:12 |
| 189:8 194:1 | **thinking** 195:7 | 323:4,10 | 251:2 252:21 |
| 195:21 207:20 | 277:5 279:10 | **time** 5:7 6:2 | 252:21 253:14 |
| 208:4 213:3 | 363:22,22 | 7:15,16 12:4 | 256:11 276:16 |
| 219:10 221:15 | 374:19 | 13:11,13 19:6 | 278:8 287:5,10 |
| 223:16 226:19 | **third** 156:11 | 19:15 26:8,20 | 292:2 301:2,20 |
| 226:19 228:9 | 204:9 320:2 | 31:7 35:10 | 314:17 320:19 |
| 234:18 235:22 | 355:8 | 46:11 57:8,9 | 330:10 334:5 |
| 236:5 237:20 | **thomas** 2:21 | 61:5 63:9,9,16 | 345:5 349:13 |
| 245:18 250:5 | **thought** 110:12 | 63:16,18 72:8 | 349:18 378:4,9 |
| 256:2,15,20 | 249:10 286:16 | 72:18 73:6,8 | 378:11 380:5 |
| 257:18 259:11 | 286:20 330:15 | 75:9 77:16 | 384:1 385:9 |
| 263:14 264:11 | 348:9,14,14,15 | 78:12,14 83:1 | 387:5 391:18 |
| 265:5 266:4 | **thoughts** | 83:7,11 89:20 | **timeframe** |
| 274:22 277:4 | 314:10 | 89:20 101:15 | 391:8 |
| 279:2,10 | **thousand** | 102:3,8 103:5 | **timeline** 301:16 |
| 285:10 286:1 | 121:11 | 103:8,13,14 | **times** 12:4 14:1 |
| 286:22 292:16 | **thousands** | 105:10,11 | 29:12,17,21,22 |
| 296:11 297:3 | 279:6 329:1 | 106:7,15,18,18 | 76:9,12 77:9 |
| 297:11,12,14 | **thread** 236:15 | 110:14 116:20 | 77:10 80:7 |
| 297:19,20 | **three** 71:9 | 119:10,11 | 156:11 166:3 |
| 298:10 304:16 | 163:22 164:7,8 | 135:2,12,13 | 167:9 196:2,6 |
| 306:10 308:15 | 183:9 186:8,13 | 146:15,20 | 212:6 213:7 |
| 310:13 311:16 | 205:18 206:17 | 157:5 158:18 | 219:9 229:12 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[times - tsc]**

Page 83

| | | | |
|---|---|---|---|
| 329:1 | **took** 89:5 92:10 | 168:22 169:1 | **tried** 297:12 |
| **timing** 162:11 | 111:9 173:3 | **transcribed** | **trigger** 179:9 |
| **title** 104:7,8 | 180:8 186:5 | 387:6 | **trip** 378:13 |
| 292:5 360:1,4 | 187:22 194:21 | **transcribing** | **trivial** 182:22 |
| 373:13 | 217:2 278:12 | 8:7 | 278:5 |
| **titled** 374:4 | 303:17 308:9 | **transcript** 4:1,3 | **true** 90:8 |
| **today** 5:3 6:9 | **tool** 230:2 | 4:9 6:17 | 246:17 270:8 |
| 6:18 8:1,8 9:4 | **tools** 381:15 | 131:11 173:6 | 387:7 390:5 |
| 10:17 17:12 | **top** 17:17 23:14 | 361:2 388:7 | **truth** 7:5,5,5 |
| 25:9 30:22 | 143:18 171:17 | 390:3,8 391:6 | **truthfully** |
| 35:10 48:6,16 | 295:18 296:7 | 391:19 | 10:19 |
| 60:12 70:17 | 316:22 373:22 | **transcription** | **try** 8:10 110:13 |
| 77:17 78:7 | **topic** 115:4 | 8:17 26:9 | 146:8 185:12 |
| 101:22 161:22 | 161:4 170:8 | **transit** 207:16 | 298:17 313:10 |
| 215:14,17,19 | 171:17 177:2 | 207:18,19 | 327:10 334:18 |
| 215:22 237:1 | 363:14 | **translated** | 336:2,6 345:9 |
| 238:7 240:14 | **topics** 379:15 | 193:16 | 345:16 346:19 |
| 243:17 244:20 | **topped** 307:17 | **transmission** | 347:8 348:3 |
| 245:2 251:21 | 308:5 | 170:9,16 | 349:3 355:3 |
| 255:20 263:3 | **total** 76:20 | 171:10,16 | 382:13 |
| 308:14,16,18 | 81:21 121:13 | 193:11 275:8 | **trying** 101:16 |
| 333:1 373:10 | 156:13 190:15 | 276:8 331:4,9 | 113:7 174:16 |
| 378:11 379:16 | 196:7,15 | 332:2 363:2,10 | 177:20 188:2 |
| 385:9 | 197:14,17 | 363:17 | 195:9 199:8 |
| **today's** 176:15 | 276:7,9 386:8 | **transportation** | 200:22 201:1 |
| 232:2 386:7 | **totally** 98:6 | 208:19 209:13 | 206:7 214:8,14 |
| **together** 11:18 | **touched** 363:7 | 209:20,21 | 232:7,10 |
| 193:17 247:12 | **towards** 119:6 | 211:1,9 216:19 | 259:10 271:15 |
| 312:16 | 125:14 | **travel** 168:4 | 294:15 304:20 |
| **told** 222:5 | **track** 32:6 | **traveled** 168:17 | 307:12 322:16 |
| 337:17 | **trained** 90:13 | **treated** 198:15 | 330:7 338:7 |
| **tomorrow** | 192:1 329:20 | 199:1 | 356:8 |
| 308:18 | **training** 71:7 | **trial** 123:6,9 | **tsc** 332:2 |
| | 90:10 91:17 | | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[turn - un]**

Page 84

| | | u | |
|---|---|---|---|
| **turn**  76:5 | 213:7,9 219:14 | | 48:21 49:10,18 |
| 203:22 208:8 | 224:14 227:19 | **u.s.**  108:11 | 53:12,18 60:14 |
| 241:19 316:17 | 253:18,22 | 110:5 193:10 | 69:2 72:9 88:3 |
| 316:20 325:5 | 256:6 257:8 | **uh**  7:13,20 8:9 | 112:18 132:8 |
| 348:20,20 | 267:2,3,4,7,8 | 8:10,11,19,19 | 153:3 157:9 |
| 361:5 368:19 | 270:15,15 | 9:15 10:3 11:7 | 158:19 165:7 |
| **turned**  196:14 | 339:5 340:15 | 11:17 13:7 | 165:10,15 |
| **tv**  373:18 | 340:20 356:17 | 44:6 179:17 | 170:5 175:4,17 |
| **twenty**  298:6 | 357:12 368:3 | 354:14 | 177:15 178:17 |
| 341:17 | **type**  24:16 57:9 | **uk**  64:11,13 | 180:7,7,10 |
| **twice**  38:14 | 57:20 81:4 | 65:8,19 66:6 | 187:7 197:9 |
| 51:22 80:3 | 92:10 98:5 | **ulaanbaatar** | 208:6 210:13 |
| 186:12 | 116:5 143:20 | 168:5 | 212:19,21 |
| **two**  14:14 16:9 | 147:22 180:10 | **ultimate** | 216:2 220:5 |
| 17:13 19:17 | 201:11 225:6 | 264:21 | 223:15 232:1 |
| 20:18 22:20 | 226:7 261:15 | **um**  6:6,16 8:11 | 235:21 237:6 |
| 25:12,17,17 | 261:17 263:10 | 8:16,17 9:2,14 | 241:15 246:7 |
| 26:2 59:17 | 264:8,12,20 | 10:4,16,22 | 246:10 252:5 |
| 72:14 77:6 | 282:10 292:14 | 12:16 14:1,8,8 | 259:10 261:11 |
| 79:15 80:20 | 298:18 320:15 | 14:10 15:17 | 261:16 276:22 |
| 81:10 91:20 | 340:3 361:21 | 16:8,22 17:8 | 279:10 280:20 |
| 102:21 116:3 | 362:6 375:20 | 17:10 19:17,21 | 285:11 286:11 |
| 116:18 117:21 | **types**  96:3 | 20:15 21:20 | 288:11 295:5 |
| 118:2,9,10,11 | 99:14 102:5 | 22:7,17 23:2 | 296:8 309:2,4 |
| 122:18 123:10 | 263:10 | 23:18,22 24:8 | 310:8 313:22 |
| 123:15 124:15 | **typically**  58:11 | 24:14,17 25:13 | 319:12 326:1 |
| 126:18,19 | 99:2 156:16 | 25:17,19 26:4 | 330:22 336:7 |
| 133:18 142:5 | 269:13 320:19 | 26:19 27:16 | 336:22 343:11 |
| 147:2 157:20 | 354:22 366:10 | 29:17 31:3 | 346:13 351:21 |
| 163:17 164:4 | 366:17 | 35:6,6 36:21 | 351:22 359:6 |
| 179:11 183:20 | **typo**  260:15 | 41:5,22 43:16 | 359:11 362:10 |
| 184:4 186:7 | | 43:18 45:1 | 369:11 377:1 |
| 199:11 200:18 | | 46:16 48:6,11 | **un**  45:9 |
| 206:12 212:3,4 | | | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[unable - unlocked]

Page 85

| | | | |
|---|---|---|---|
| **unable** 238:5 | 10:7,8 15:7 | 154:16 156:6 | **unfair** 81:22 |
| **unauthorized** | 23:20 29:4 | 160:10 162:20 | **unfortunately** |
| 221:2,15 | 31:22 41:12 | 164:7 175:6 | 345:22 371:6 |
| **unclear** 11:17 | 72:13 83:14 | 194:14 203:7 | **unhide** 235:1 |
| **unconditional** | 87:11 92:5 | 208:6 212:20 | 235:15 238:15 |
| 294:16 | 101:17 113:7 | 216:17 226:21 | 294:19 296:3,4 |
| **under** 8:1 | 120:13 123:14 | 227:7,9,11,14 | **unhiding** 235:3 |
| 15:21 16:12 | 125:10 141:13 | 227:17 233:8 | **uniform** 159:1 |
| 30:2 33:20 | 152:20 158:2 | 235:13,16 | 159:22 160:4 |
| 39:21 81:9 | 168:2 182:11 | 255:13 259:17 | **unique** 248:22 |
| 85:8 98:12 | 191:12 199:7 | 260:3 262:9,15 | 249:1 269:8 |
| 108:2 175:1 | 200:3,14 | 262:20 263:20 | **unit** 5:10 83:6 |
| 189:19,20 | 219:13 234:17 | 264:4 278:11 | 83:10 146:15 |
| 191:20 222:8 | 235:7 237:17 | 279:14 280:10 | 146:19 173:14 |
| 222:10 246:13 | 237:19,21 | 280:17 281:21 | 173:18 196:6 |
| 251:10 258:21 | 238:10 240:4 | 282:14,17 | 229:3,7 287:5 |
| 284:14,14 | 259:21 271:17 | 302:3 314:21 | 287:9 349:13 |
| 302:11,17 | 306:11 308:8 | 321:21 337:12 | 349:17 378:4,8 |
| 303:13 312:10 | 313:19 325:22 | 337:17 362:19 | **united** 1:1 5:14 |
| 364:19 | 329:2 353:1 | 362:22 363:13 | 84:22 |
| **underestimated** | 356:11 358:6,6 | 363:15 370:4 | **units** 242:17 |
| 77:14 | **understanding** | 373:11,12 | 386:8 |
| **undergraduate** | 29:8 36:12,21 | 377:11 379:17 | **universe** |
| 90:15 91:20 | 37:3,6,17 | **understood** | 148:13 186:15 |
| **undergraduates** | 38:15 41:17 | 10:1 45:9 | 246:9 |
| 333:19 | 47:10 70:13 | **underwater** | **university** |
| **underlined** | 89:22 113:17 | 170:8 | 102:3,8,16 |
| 307:22 | 117:12,21 | **unencrypt** | 106:14 108:9 |
| **underlying** | 121:10 123:19 | 233:5,9 235:17 | 110:7 113:21 |
| 212:19 264:19 | 132:10,15 | **unencrypted** | 117:13,14,17 |
| **underneath** | 137:2,6 138:20 | 235:10 | 117:19,21 |
| 179:7 383:13 | 144:1,6,9,13,18 | **unencryption** | 118:13,18 |
| **understand** 8:1 | 145:3 147:4 | 235:8 | **unlocked** |
| 8:4,14 9:15 | 148:22 154:14 | | 235:15 |

Veritext Legal Solutions

800.808.4958

770.343.9696

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

| | | | |
|---|---|---|---|
| **unlocking** | 215:8 240:9 | 249:20 250:2,2 | 300:22 301:1 |
| 235:22 236:1 | 249:14 251:12 | 250:14,19,22 | 305:16 322:21 |
| **unprotect** | 251:13 252:11 | 251:5 256:11 | 323:3,16,22 |
| 238:17 | 252:14 258:15 | 256:15 261:8 | 326:1 329:7 |
| **unprotected** | 258:20 259:12 | 263:21 264:4 | 341:12 355:15 |
| 239:11 | 260:19 269:12 | 275:7 285:4 | 357:3,4,8,20 |
| **unreasonable** | 273:4,5 280:12 | 291:22 292:21 | 359:9 |
| 254:12 255:1 | 285:6 287:2 | 293:2 305:20 | **usually** 107:5 |
| 296:20 | 293:7 296:2 | 322:9 323:10 | 232:8 |
| **unreliable** | 299:21 300:1 | 328:12 329:1 | **utilities** 34:5,10 |
| 34:18 37:2 | 316:14 318:5 | 332:7,22,22 | 40:6 68:19,22 |
| 40:1 | 331:3 332:13 | 339:14 342:14 | 133:12,14 |
| **unsupported** | 333:3 344:19 | 343:16 346:8 | 253:2,3 266:3 |
| 40:4 | 344:20 354:17 | 346:21 353:10 | 269:20,22 |
| **unwind** 188:9 | 362:9 375:1,18 | 356:22 360:9 | 271:8 335:20 |
| **upcoming** | 375:20,21,22 | 362:14 374:19 | 336:1 339:18 |
| 295:9,11 | 377:6 383:3 | 374:22 376:2 | 340:7,8,16 |
| **update** 345:1 | **used** 51:1,5 | 378:20 381:1,5 | 344:4,15 346:1 |
| 346:3 | 63:20 75:21 | 385:4 386:8 | 346:5 352:15 |
| **updated** 347:2 | 136:21 139:9 | 391:19 | 352:16 353:9 |
| **updating** 195:5 | 140:21 152:3,3 | **useful** 89:12 | 353:16,21 |
| **upper** 206:21 | 152:10 165:20 | **using** 75:1 | 358:3 |
| **url** 344:17 | 176:5 180:15 | 100:14 102:21 | **utility** 44:4,14 |
| 347:12 | 182:14 183:10 | 138:17 156:9 | 50:15 140:3,5 |
| **usable** 288:10 | 192:17 193:17 | 183:19 184:4 | 140:6 141:2 |
| **usage** 196:2 | 197:13 205:16 | 218:18 226:7 | 153:19 155:10 |
| 308:2 363:2,18 | 221:14,15 | 226:10 234:19 | 155:12 157:8 |
| 364:5,13,18,22 | 224:14 230:2,3 | 236:5 242:6 | 160:6,7 193:6 |
| 365:3 | 231:5,10,11,16 | 251:9 253:10 | 193:9,15 |
| **use** 89:19 131:6 | 240:5,16 | 256:3 258:4 | 194:15 199:14 |
| 136:21 180:19 | 243:18 244:7 | 264:9 270:21 | 199:16,20,22 |
| 182:5 183:11 | 244:20 245:3,9 | 270:21 273:19 | 200:11,13 |
| 183:12 196:20 | 245:20 246:3 | 288:18 291:20 | 212:6 213:7,8 |
| 210:18,21 | 247:2,4 249:9 | 292:6 300:19 | 265:7,9,13 |

Veritext Legal Solutions

800.808.4958                                    770.343.9696

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[utility - veritext]

Page 87

| | | | |
|---|---|---|---|
| 266:15 268:10 | 63:13 73:17 | 285:18 294:6 | **varied** 101:18 |
| 268:19 269:12 | 79:3 94:9 | 296:20 298:13 | 272:18 |
| 269:17 270:5,5 | 102:18 105:12 | 299:5,16,19 | **varies** 270:5 |
| 271:5 272:22 | 120:16 131:13 | 306:15 315:7 | 364:17 |
| 277:7,8,14 | 132:12 142:15 | 334:13,22 | **variety** 48:20 |
| 279:11 280:2 | 143:5 149:4,4 | 344:19 | 67:5 99:1,15 |
| 292:17 320:13 | 151:2,22 | **values** 152:5 | 102:22 113:19 |
| 323:20 332:10 | 153:10 162:18 | 176:1,3 182:18 | 132:20 190:12 |
| 336:14 339:19 | 169:10 170:22 | 185:10 190:3 | 252:20 367:7 |
| 340:2,5,12,13 | 175:8 179:2,16 | 194:13 251:18 | **various** 12:3 |
| 341:1,6 344:22 | 183:16 188:1 | 253:2 322:10 | 56:2 63:9 |
| 350:20 351:11 | 190:22 199:2 | 326:1 328:17 | 67:12 68:15 |
| 351:18,19 | 218:1 220:4 | 328:17 331:13 | 73:13 100:11 |
| 352:1,13,16,17 | 224:11 231:3 | 334:19 346:21 | 104:11 120:5 |
| 353:2,10,13 | 231:22 238:9 | **variable** 34:9 | 128:2 130:6 |
| 354:13,16 | 239:3,20 | 40:5 45:13 | 131:5 174:20 |
| 365:5 374:15 | 243:20 252:4 | 46:13 51:12 | 176:1 181:19 |
| 375:22 379:13 | 269:10 288:19 | 132:18 162:1 | 185:3 193:8 |
| **utility's** 43:3,10 | 302:1 309:3 | 188:17 205:14 | 231:6 269:12 |
| 50:17 193:1 | 310:12 311:8 | 208:10 209:5 | 274:21 331:4 |
| 270:12 336:21 | 315:10 324:8 | 210:14 216:4,5 | 336:19 353:11 |
| **v** | 325:18 327:18 | 216:8 227:1,6 | 377:14 |
| | 328:5,20 | 261:15,17,17 | **vary** 158:17 |
| **v** 1:8 5:13 13:5 | 330:19 331:16 | 261:18 262:10 | 159:13 160:6 |
| 17:3,20 22:7 | 335:4 337:3 | 262:10 292:14 | 225:15 270:10 |
| 84:22 388:5 | 350:11,22 | 298:18,21 | 352:1,7,10,12 |
| 391:4 | 352:19 361:22 | 315:19 360:7 | 353:14 |
| **vaccine** 110:10 | 363:4 371:20 | 360:10 361:15 | **varying** 195:4 |
| **vague** 11:6,15 | 373:14 | 361:20 362:6 | **vein** 346:16 |
| 19:16 25:10 | **value** 184:6 | 364:15,17 | **verbal** 8:18,20 |
| 41:7,16 49:16 | 222:4 249:2 | 375:20 | **verify** 391:9 |
| 50:18 51:7 | 253:9 273:3 | **variations** 99:7 | **veritext** 5:20 |
| 53:4 54:22 | 278:14,15 | 187:12 226:1 | 386:9 391:14 |
| 55:15 56:18 | 284:3,17 | | 391:21 |

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

[veritext.com - way]                                    Page 88

| | | | |
|---|---|---|---|
| **veritext.com** 391:15 | **visual** 183:18 | **walked** 301:7 | **wanted** 89:11 |
| **version** 186:2,3 | **vitae** 3:15 | 364:10 | 104:10 110:11 |
| 188:4 322:20 | **voice** 208:1 | **want** 6:15 | 135:7 149:22 |
| 323:3 | **volume** 312:17 | 11:10 32:20 | 217:19 249:2 |
| **versions** 186:2 | **voluntary** | 41:3 42:22 | 326:7 334:21 |
| 186:22 188:5 | 117:5 275:7 | 45:5 61:19 | 345:8,9,9 |
| **versus** 26:15 | 276:8 285:17 | 89:21 98:8,17 | **wash** 198:11 |
| 103:3 155:12 | 285:21 286:9 | 111:19 126:7 | **washing** 98:6 |
| 253:5 267:8 | 286:12,17 | 134:11 136:5 | **watstein** 2:10 |
| **video** 5:7,11 | 297:7,15 298:2 | 139:12 148:20 | 6:7 |
| 388:3 389:2 | 299:22 300:3,7 | 148:20 153:11 | **way** 36:19 |
| **videographer** | 301:4 302:8 | 158:2 168:2 | 41:22 43:16 |
| 2:16 5:2,20 | 303:21 307:14 | 176:18 178:6 | 46:14,15 58:9 |
| 6:20 83:5,9 | 315:6 316:5 | 178:18 189:21 | 114:12 121:5 |
| 146:14,18 | 317:13,16,21 | 194:2 196:19 | 123:20 140:5,5 |
| 173:13,17 | 318:9,14 | 202:18 207:21 | 144:13 147:9 |
| 228:5,8 229:2 | 319:14,16,18 | 218:18 219:12 | 147:16 157:1 |
| 229:6 287:4,8 | 319:22 320:1 | 221:12 227:4 | 160:15 162:6 |
| 288:2 349:12 | 321:7,8,10,17 | 228:13,14,19 | 182:13 185:6 |
| 349:16 378:3,7 | 322:9 323:9 | 236:10 240:4 | 186:21 187:2 |
| 385:13,15 | 350:4,6 | 242:9 289:12 | 188:15 192:12 |
| 386:3,5 | **volunteers** | 290:19 293:20 | 198:10 202:1 |
| **videotaped** | 322:1 | 294:3 297:21 | 216:18 225:21 |
| 1:13 3:2 | **votes** 248:1 | 306:11 313:9 | 232:22 233:5 |
| **view** 139:4 | | 313:12 320:14 | 236:4,6,6 |
| 223:14 330:9 | **w** | 325:22 328:1 | 237:21 239:8 |
| **views** 40:3 | **w** 229:15,15,21 | 330:1,5,6 | 239:12 248:16 |
| **virginia** 1:17 | 229:21 | 331:21 341:10 | 251:17 252:16 |
| 5:18 | **wa** 364:10 | 343:13 346:15 | 255:20 258:1 |
| **virus** 104:10 | **wait** 11:12 | 347:18 351:15 | 262:21 264:16 |
| 348:1 | **waiting** 31:7 | 359:9 363:13 | 271:9,12 |
| **visit** 347:17 | **waived** 94:12 | 373:18 375:18 | 275:14 277:5 |
| | 94:14 | 381:9 | 289:3,6,8 |
| | | | 301:16,21 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

[way - witness]

Page 89

| | | | |
|---|---|---|---|
| 302:5 304:22 | **weeks** 256:6 | **wide** 48:16 | 37:14,21 38:5 |
| 305:5,11 | 357:12 | 99:2 100:12 | 38:10,13 39:20 |
| 313:22 315:16 | **weinberg** 20:11 | 314:1 | 40:12,20 41:9 |
| 315:17 332:21 | 20:13 22:7 | **wife** 103:13 | 41:16 42:11 |
| 335:16 345:18 | **welcome** 32:21 | 110:11 192:1 | 43:8 45:18 |
| 347:11 360:8 | 39:7 42:19 | **willingness** | 47:15 48:11,20 |
| 360:11 372:12 | 84:16 290:22 | 366:5 367:12 | 49:18 50:20 |
| 383:12 | 351:11 | 369:20 370:6 | 51:11,21 52:10 |
| **ways** 102:21 | **went** 92:8 | **win** 238:18 | 52:15,20 53:5 |
| 138:1 336:12 | 104:19 139:19 | **window** 238:18 | 53:12 56:1 |
| 367:7 377:14 | 253:1 276:1 | **wise** 13:5 17:3 | 57:19 58:9,17 |
| 383:22 | 277:17 298:5 | 17:20 22:7 | 58:22 59:4,8 |
| **we've** 22:6,8 | 299:11 309:4 | 26:14 | 59:22 62:18 |
| 38:16 78:4 | 315:17 353:10 | **withdraw** 41:8 | 63:14,20 64:5 |
| 82:5 89:4 96:9 | **west** 270:22 | 99:17 343:9,9 | 64:10,16,21 |
| 103:2 142:22 | **wha** 49:4 | **witness** 6:22 | 65:4,12 66:1 |
| 172:20,22 | **whe** 66:17 | 11:7 13:1,7,13 | 69:9,14,20 |
| 176:2,19,21 | **whim** 189:21 | 13:20 14:8 | 70:2,9,20 71:6 |
| 192:4,12,13,13 | **whispering** 5:6 | 15:14 16:6,22 | 71:22 72:7,17 |
| 195:10,12 | **white** 2:6,18 | 17:16 18:4,14 | 73:19 74:8,15 |
| 228:6 252:6 | 6:11 329:10,11 | 18:20 19:4,11 | 75:7,19 76:12 |
| 256:7 273:7 | **whiteside** 15:2 | 19:17 20:4,13 | 77:6 78:2,14 |
| 279:8 283:1 | **who've** 163:18 | 21:2,6,17 22:3 | 79:7,15 80:6 |
| 293:14 319:19 | 329:14,16 | 22:15 23:1,12 | 80:16 81:1,18 |
| 364:2 373:10 | **wholemeal** | 24:5,13 25:3 | 82:5,15 83:4 |
| **weather** 293:8 | 325:6 | 25:12 26:1,19 | 92:19 94:12 |
| 376:5 | **wholesale** | 27:4,11,16,21 | 95:7,22 96:12 |
| **website** 114:13 | 68:20 141:6 | 28:4,10,16 | 96:21 97:6,10 |
| 138:17 190:11 | 163:2,6 275:2 | 29:1,8,9,17 | 97:15 99:1,6 |
| 334:3 336:8,8 | 275:10 276:2,4 | 30:5,13,19 | 99:12 100:5,18 |
| 336:21 347:2 | 276:5 325:7,16 | 31:3,9,11,14,16 | 101:15 102:2 |
| **webster** 91:14 | 326:2,8 334:21 | 32:4 33:16 | 102:20 103:3 |
| **week** 333:16 | 335:10 337:1 | 35:5,13,18 | 104:1,7 105:14 |
| | 339:20 354:5 | 36:2,8,18 37:6 | 106:10 107:3 |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[witness - word]**

Page 90

| | | | |
|---|---|---|---|
| 107:16 108:6 | 161:19 162:5 | 245:12,18 | 328:7,21 |
| 108:11,20 | 162:19 163:13 | 246:7 247:1,8 | 331:15 332:9 |
| 109:5,11,17 | 163:22 164:14 | 247:16 248:6 | 335:20 337:4 |
| 110:1,9,19 | 164:20 165:15 | 248:16 249:8 | 337:19 341:18 |
| 113:4,13 115:3 | 165:19 166:15 | 250:1,11,18 | 342:4,10,20 |
| 115:11,21 | 166:18 169:11 | 252:5 254:4 | 343:20 345:22 |
| 116:16 117:1 | 171:1 175:9 | 255:4 256:20 | 350:12 351:2 |
| 118:17 119:4 | 179:3,17 183:5 | 257:17 258:13 | 352:20 356:4 |
| 119:22 120:18 | 183:17 188:2 | 259:9 260:8 | 358:13 360:19 |
| 123:19 124:4,9 | 189:3 191:1 | 261:10,11 | 362:2,3 363:6 |
| 125:2 127:8 | 194:20 199:3 | 262:4,13,20 | 363:21 364:9 |
| 128:1 129:21 | 200:7 201:8 | 263:7,13 264:3 | 365:9,18 366:8 |
| 130:12 131:4 | 202:15 203:17 | 264:16 265:2 | 367:1,15,22 |
| 131:22 132:15 | 204:4 205:4,22 | 266:13 267:16 | 368:5 369:11 |
| 133:5,11 134:1 | 207:3 208:15 | 269:5,11 272:5 | 370:1,9,20 |
| 134:7,15,21 | 209:1,9,17 | 273:12 274:5 | 371:22 372:12 |
| 135:10 136:2 | 210:6 211:6,15 | 274:19 277:4 | 373:15 378:12 |
| 136:17 137:6 | 212:11,16 | 283:10,15 | 379:9 380:8,12 |
| 137:21 138:8 | 213:16 216:11 | 284:13 286:16 | 381:8 382:21 |
| 138:13,20 | 217:2,12 218:2 | 288:1,3,21 | 384:4 385:4,11 |
| 139:7,19 | 218:22 220:5 | 292:9 297:11 | 385:14 386:2,4 |
| 142:17 143:6 | 221:5 222:13 | 299:11 300:10 | 390:13 391:8 |
| 144:6,13,22 | 223:12 224:13 | 301:14 302:3 | 391:10,12,18 |
| 145:6 146:3,6 | 225:21 226:17 | 302:14 303:6 | **witness's** |
| 147:9,15 149:3 | 227:3,4,14,21 | 304:4,16 305:9 | 205:21 207:2 |
| 149:11 150:4 | 228:1,13,16 | 306:7 309:2,4 | **witnessed** |
| 150:15 151:3 | 231:5 232:1 | 310:13 311:9 | 387:14 |
| 152:2,17,20 | 233:8,20 | 314:16 315:12 | **witnesses**   131:6 |
| 153:1,11 | 234:12 235:21 | 316:11 317:20 | 173:7 362:8 |
| 154:12,19 | 238:10 239:4 | 318:13 321:21 | **word**   149:5 |
| 155:8 156:4,8 | 239:21 241:4 | 322:14 323:13 | 183:20 219:6 |
| 156:21 157:16 | 242:3,11 | 324:10 325:20 | 221:14,15 |
| 158:9 159:12 | 243:12,22 | 326:12 327:5 | 311:12 |
| 160:4,15,22 | 244:15 245:2 | 327:19,22 | |

Frank A. Felder , Ph.D.
Brous v. Eligo Energy, LLC

January 8, 2026

**[wording - yeah]**

Page 91

| | | | |
|---|---|---|---|
| **wording** 157:2 | 192:5,9,16 | 230:5,6,8 | **written** 24:2 |
| 210:6 | 193:12,13,14 | 301:21 319:5 | 171:1,12,12,21 |
| **words** 118:10 | 193:22 194:10 | **working** 12:19 | 187:3 190:17 |
| 118:11 282:16 | 194:17 195:1 | 16:16 19:14 | 233:15 368:15 |
| 292:4 312:8 | 195:11 201:21 | 20:17 21:11 | **wrong** 57:14 |
| 338:19 | 203:11 231:11 | 28:7 52:5 58:4 | 170:13 182:22 |
| **work** 9:19 10:4 | 237:9 238:1,5 | 70:10 71:8 | 319:18 344:8 |
| 10:4,10 27:4 | 243:8 250:7 | 103:4,14,19 | **wrote** 181:17 |
| 41:19 44:10 | 269:7,11 | 105:7 106:20 | 181:19 182:21 |
| 54:1 55:12 | 324:14 325:1 | 107:21 109:3 | 185:2,19 |
| 57:20 59:17 | 330:12 360:3 | 115:12,12 | 186:11 197:11 |
| 60:15,19,20 | 362:20 | 135:3 182:7 | 235:14 288:12 |
| 63:7,12 64:3 | **worked** 11:4,15 | 228:18 340:3 | 372:5 |
| 65:14,21 66:6 | 11:18,19 14:6 | 345:17 383:14 | **wtlaw.com** |
| 67:2 69:5 | 14:18 15:4,5 | **works** 58:11 | 2:13 |
| 73:13,14,20 | 15:12 18:7,11 | 65:17 162:20 | **x** |
| 82:6,7 84:13 | 18:15,17 19:2 | 170:19 228:10 | **x** 3:1 |
| 85:12,13 88:17 | 19:8 21:6,20 | 280:14 | **xoom** 18:7 22:7 |
| 88:18,19 89:22 | 22:9 23:7,13 | **world** 296:17 | 27:14,16 52:13 |
| 91:7,8 93:7,10 | 25:16,19 27:8 | **worries** 31:17 | 52:16 |
| 93:11 94:1 | 28:13,16,20 | **worth** 310:19 | **y** |
| 97:3 101:6,7,9 | 29:1 42:1,4 | 314:5 | **y** 88:14,15 |
| 101:10,11 | 44:8 66:5 68:7 | **would've** | **yada** 355:8,8 |
| 102:10,16 | 68:10 69:10 | 235:14 | **yeah** 45:20 |
| 103:1,11,11 | 75:2,9 78:3 | **wrap** 359:9 | 48:1 54:16 |
| 104:5 110:6,12 | 80:11 89:19 | **wrapped** | 55:20 57:6 |
| 113:14 115:3 | 91:12 94:6,7 | 340:21 | 60:16 66:15 |
| 115:18 116:17 | 94:15,17 | **write** 181:7,8 | 72:9 77:12 |
| 117:5 128:17 | 104:22 106:13 | 181:12,16 | 78:18 79:7 |
| 134:15 137:14 | 111:13 113:13 | 182:7,17 | 83:3 85:5 |
| 140:3 168:14 | 113:15 118:3,9 | 184:13 372:5 | 93:21 102:20 |
| 168:18 174:6 | 118:21 169:8 | **writing** 12:8 | 103:18 117:15 |
| 175:22 177:11 | 169:11,12 | 24:9 199:17 | 118:17 129:1,2 |
| 181:6 185:21 | 184:18 186:14 | 233:10 | |

Veritext Legal Solutions

800.808.4958

770.343.9696

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

**[yeah - zone]**                                    Page 92

| | | | |
|---|---|---|---|
| 131:22 140:19 | 380:21 382:21 | **yellow** 329:8,9 | **younger** 112:16 |
| 141:13 146:8 | 385:19,20 | 329:11 | **yup** 168:16 |
| 150:15 153:17 | **year** 52:6,10,15 | **yesterday** | 295:3 327:15 |
| 160:4 165:10 | 52:20 99:17 | 187:16 308:18 | 375:19 376:3,3 |
| 166:13 168:8 | 115:13,19 | **york** 1:1 2:6 | **z** |
| 170:3 172:10 | 168:5 214:17 | 5:15 6:9 14:22 | |
| 174:12,16 | 214:18 242:6 | 68:19 133:12 | **zec** 340:9 |
| 178:9 184:8 | 243:3 247:18 | 133:16 137:7 | **zecs** 275:3,4 |
| 189:8,9 193:21 | 248:3 292:2 | 138:1 140:7 | 276:6 |
| 201:2 205:5 | 306:18 320:20 | 141:7,8 155:8 | **zero** 196:15 |
| 214:18,19,20 | 359:5 | 156:1 158:5,15 | 197:4 198:15 |
| 219:7 221:12 | **years** 11:18 | 160:12 161:1 | 199:1 226:17 |
| 221:22 227:5 | 12:3,10,12,14 | 162:15,22 | 255:11,17,22 |
| 231:17 232:1 | 12:15,16 13:3 | 163:3 169:8,13 | 256:8,10,12,16 |
| 235:9,21 241:4 | 13:14,17,21 | 169:17 170:2 | 256:22 257:5,9 |
| 241:5,22 | 14:5 15:11 | 170:11,12,17 | 257:10,12,19 |
| 242:11 246:16 | 17:13,22 21:7 | 171:6,17,19 | 258:20 259:5 |
| 247:8 267:17 | 21:10 23:8 | 172:5 190:10 | 259:13 260:2 |
| 271:16 272:5 | 24:9 26:5 30:8 | 207:16,18,18 | 282:11 291:2,5 |
| 279:2 285:10 | 55:12 56:3 | 222:8 265:5 | 294:3,5 324:1 |
| 286:1 288:3 | 70:11 71:9 | 269:19 270:12 | 340:9 375:13 |
| 291:9,10,14,17 | 80:11 81:2,16 | 271:13 285:14 | 375:14 376:5,8 |
| 294:18,20 | 88:21 89:1 | 292:17 296:10 | 377:7 |
| 296:4 297:1,3 | 92:9 95:14 | 298:19 299:4 | **zeroed** 297:18 |
| 302:3 304:4,21 | 102:6 103:14 | 308:20 311:19 | 297:19 298:11 |
| 309:15 311:11 | 126:5,14 | 312:5 314:20 | **zonal** 238:5,16 |
| 313:12 324:15 | 214:22 215:3,5 | 321:13 326:17 | **zone** 140:8,22 |
| 327:11 329:13 | 243:5,9 253:20 | 328:8 331:9 | 141:21 142:4 |
| 334:3 347:13 | 256:10,22 | 332:16,19 | 142:19 143:3 |
| 349:10,11,11 | 257:8,20 258:4 | 333:4,10,13 | 143:14 190:14 |
| 351:4,22,22 | 259:15 329:4 | 352:18 371:4 | 190:14 265:8,9 |
| 354:22 359:15 | 329:15 359:6,7 | 372:7,8 375:2 | 265:16,18,21 |
| 365:9 368:7 | 379:12 | 375:21 385:5 | 266:1,15 |
| 374:12 377:2 | | | 267:13 268:8 |

Frank A. Felder , Ph.D.                    January 8, 2026
Brous v. Eligo Energy, LLC

**[zone - zoom]**                                      Page 93

268:17 269:2,9
270:21 271:3
271:21 272:22
277:9,14,16
278:16 279:16
280:2 282:7
293:4,5,8
323:20 350:20
352:6 353:13
376:4,5
**zones**  140:3,5,8
141:7,17,19
266:9 269:12
270:9,10,11,15
271:13 276:18
277:8 328:8,8
328:9 332:7
339:3 351:19
353:9
**zoning**  193:9
**zoom**  2:17,18
2:19,20,21
166:4 167:11
290:11,18
373:17 375:10
375:15

Federal Rules of Civil Procedure

Rule 30


(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the
deponent or a party before the deposition is
completed, the deponent must be allowed 30 days
after being notified by the officer that the
transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to
sign a statement listing the changes and the
reasons for making them.

(2)  Changes Indicated in the Officer's Certificate.
The officer must note in the certificate prescribed
by Rule 30(f)(1) whether a review was requested
and, if so, must attach any changes the deponent
makes during the 30-day period.



DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.