# Exhibit 24

## Deposition Transcript of Edo Macan

*Brous, et al. v. Eligo Energy, LLC, et al.*
**Case No. 1:24-cv-01260-ER**

Page 1

|     |                              |
| --- | ---------------------------- |
| 1   | Volume:       I              |
|     | Pages:        323            |
| 2   | Exhibits:     8              |
| 3   | UNITED STATES DISTRICT COURT |
|     | SOUTHERN DISTRICT OF NEW YORK |

4                                           C.A. No.: 1:24-CV-01260

5

6                ********************************

6  IRA BROUS, AND MICHELLE SCHUSTER

    ON BEHALF OF THEMSELVES AND ALL

7  OTHERS SIMILARLY SITUATED,

        Plaintiffs

8  v.

    ELIGO ENERGY, LLC AND ELIGO

9  ENERGY NY, LLC,

        Defendants

10  ********************************

11

12         DEPOSITION of EDO MACAN, a witness called on behalf

13

14  of the Defendants, taken pursuant to the applicable provisions

15

16  of the Federal Rules of Civil Procedure, before Melissa Lupo,

17

18  a Court Reporter and Notary Public in and for the Commonwealth

19

20  of Massachusetts, at the Cambridge Center Marriott, 50

21

22  Broadway, Cambridge, Massachusetts 02142, on Wednesday,

23

24  December 17, 2025, at 9:02 a.m.

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 2

1                   A P P E A R A N C E S

2

3             David Meadows, Esquire

4             Leo O'Toole, Esquire

5             WATSTEIN TEREPKA, LLP

6             75 14th Street NE #2600

7             Atlanta, GA 30309

8             404-602-4371

9             dmeadows@wtlaw.com

10                REPRESENTING: Eligo Energy, LLC and Eligo

11                              Energy NY, Defendants

12

13

14            D. Greg Blankinship, Esquire

15            FINKELSTEIN, BLANKINSHIP, FREI-PEARSON &

16            GARBER, LLP

17            One North Broadway

18            White Plains, NY 10601

19            914-298-3290

20            gblanikinship@fbfglaw.com

21                REPRESENTING: Ira Brous and Michelle

22                              Schuster, et al., Plaintiffs

23

24

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

                                                    Page 3

1               A P P E A R A N C E S (CONT.)

2

3          J. Burkett McInturff, Esquire (via Conference

4               Phone)

5          Andrey Belenky, Esquire (via Conference Phone)

6          WITTELS MCINTURFF PALIKOVIC

7          305 Broadway, 7th Floor

8          New York, NY 10007

9          jbm@wittelslaw.com

10          910-476-7253

11               REPRESENTING: Ira Brous and Michelle

12                              Schuster, et al., Plaintiffs

13

14

15          Andy LaPointe, Esquire

16          In-House Counsel

17          201 West Lake Street, Suite 151

18          Chicago, IL 60606

19               REPRESENTING: Eligo Energy, LLC and Eligo

20                              Energy NY, Defendants

21

22

23

24

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 4

1                A P P E A R A N C E S (Cont.)

2

3    ALSO PRESENT:

4    Deane Cartensen, Videographer, d.cartensen@vdidepo.com

5    Goran Vojvodic, Consulting Assistant, EconONE (via Conference

6         Phone)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

```
                                                   Page 5

1                         I N D E X

2    WITNESS:             DIRECT   CROSS    REDIRECT    RECROSS

3    EDO MACAN

4    By Mr. Meadows:            8

5    By Mr. Blankinship:              318

6

7

8                       E X H I B I T S

9    NO.            DESCRIPTION                          PAGE

10   Exhibit 1 Expert Report of Edo Macan, Sept. 12th 2025    57

11   Exhibit 2 Deposition Excerpt, LaPointe, pgs. 20-35    103

12   Exhibit 3 Deposition Excerpt, Pedotto, pgs. 99-104    113

13   Exhibit 4 DEF000907 rate_policy_8 sheet           127

14   Exhibit 5 DEF000908 rate_policy_9 sheet           127

15   Exhibit 6 Ex. 1 of Expert Report, M. Schuster T&C,    148

16            NY ESCO Consumer Bill of Rights

17   Exhibit 7 Eligo Risk Policies and Procedures, Effective    256

18            Nov. 1st 2016

19   Exhibit 8 Four Figures from Expert Report          308

20       (5, 6, 9 and 10)

21

22

23

24
```

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 6

1              P R O C E E D I N G S

2              THE VIDEOGRAPHER: Okay.  Good morning --

3       at 9:02 a.m. on December 17, 2025.  Please note that

4       the microphones are sensitive and they may pick up

5       whispers and private conversations.  Please mute

6       your phone at this time.  Audio and video recording

7       will continue to take place unless all parties agree

8       to go off the record.

9              (Begin Media 1.)

10             This is Media Unit 1 of the video recorded

11      deposition of Edo Macan, in the matter of Ira Brous

12      and Michelle Schuster on behalf of themselves and

13      all others similarly situated versus Eligo Energy,

14      LLC and Eligo Energy, NY, LLC.

15             This case is filed in the United States

16      District Court for the Southern District of New

17      York, Case Number 1:24-CV-01260.  The location of

18      this deposition is 50 Broadway, Cambridge,

19      Massachusetts.

20             My name is Deane Carstensen representing

21      Veritext and I'm the videographer today.  I'm not

22      authorized to administer an oath.  I'm not related

23      to any party in this action, nor am I financially

24      interested in the outcome.  If there are any

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 7

```
 1              objections to proceeding, please state them at the
 2              time of your appearance.  Counsel and all present,
 3              including on the conference call, can now please
 4              state your appearance and affiliation to the record.
 5                      MR. MEADOWS: David Meadows and Leo O'Toole
 6              for the defendants and we're accompanied by Andy
 7              LaPointe who is in house with Eligo Energy.
 8                      MR. BLANKINSHIP: My name is Greg
 9              Blankinship with Finkelstein, Blankinship, Frei-
10              Pearson & Garber, representing the plaintiffs.
11              Before I forget, we're going to reserve our right to
12              review the transcript, and to offer errata as
13              appropriate.  I'll let the folks on the -- on the
14              phone introduce themselves.
15                      MR. BELENKY: Andrey Belenky for plaintiff,
16              from Wittels McInturff Palikovic.
17                      MR. MCINTURFF: This is Burkett McInturff
18              for plaintiffs, also Wittels McInturff Palikovic.
19                      MR. VOJVODIC: This is Goran Vojvodic for
20              plaintiff also, not also-- with EconONE.
21                      THE VIDEOGRAPHER: And if that is everyone
22              then thank you.  Will the court reporter please
23              introduce yourself and administer the oath to the
24              witness?  And then counsel may proceed.
```

Page 8

```
 1              THE COURT REPORTER: Great.  Good morning.
 2        My name is Melissa Lupo.  When we get to the end of
 3        the proceeding, I may need to ask for spelling, so
 4        after we wrap up, give me a moment to do that.
 5              Will you please raise your right hand to
 6        be sworn?
 7              Do you solemnly swear to tell the truth,
 8        the whole truth, and nothing but the truth?
 9              MR. MACAN: I do.
10              EDO MACAN, after being satisfactorily
11        identified and duly sworn by the Notary Public, was
12        examined and testified as follows:
13              THE COURT REPORTER: Thank you.
14                   DIRECT EXAMINATION
15     BY MR. MEADOWS:
16     Q    Okay.  Thank you.  Good morning, Mr. Macan.
17     A    Good morning.
18     Q    Can I start by asking you to state your first full
19        name for the record, please?
20     A    Edo Macan.
21     Q    Thank you.  And is there any reason that you can't
22        give truthful testimony in your deposition here
23        today?
24     A    No.
```

Edo Macan                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 9

```
 1      Q    You're not under the influence of any prescription

 2           drug or anything like that that would impact --

 3      A    No.

 4      Q    Sorry, let me finish -- that would impact your

 5           ability to testify?

 6      A    No.

 7      Q    Okay.  I'm sure you've been through this routine

 8           before, but just as a reminder, it's important that

 9           you allow me to finish my questions before you begin

10           to answer.  I will certainly try to let you finish

11           your answer before I ask the next question; is that

12           fair?

13      A    Yes.  And understood.

14      Q    Okay.  Great.  Thank you.  When we had -- there are

15           a number of folks listening in on this deposition on

16           the phone and it sounded like one of them is one of

17           your colleagues at EconONE; is that correct?

18      A    That's correct.

19      Q    Could you identify that person's name for the

20           record?

21      A    Goran Vojvodic.

22      Q    And what role does -- I'm sorry -- say his last name

23           one more time?

24      A    Vojvodic.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 10

1    Q    Vojvodic.  Okay.

2    A    Yeah.

3    Q    Can you explain what Mr. Vojvodic's role is at

4         EconONE?

5    A    He's one of my support staff at EconONE.

6    Q    All right.  And did he work on this engagement

7         related to this case against Eligo with you?

8    A    He supported -- he supported me on some of the

9         analytical work at -- at this engagement.  Correct.

10   Q    I'm sorry.  He supported you on some of the what

11        work?

12   A    Analytical work.

13   Q    Analytical work.  Okay.

14   A    Yeah.

15   Q    Can you describe for me in more detail what

16        particularly he did?

17   A    Provided audits of my work, calculations, checking

18        the numbers, administrative supportive staff,

19        consulting supportive staff.

20   Q    I see.  Other than Mr. Vojvodic, was there anyone

21        else at EconONE who worked with you on this report?

22   A    I'd have to look at my billing sheets, but if there

23        was, it'd be very junior person on, you know,

24        mundane auditing, quality control type of tasks.

Edo Macan                                            December 17, 2025
Brous v. Eligo Energy, LLC

Page 11

```
 1      Q      Is it fair to say that you and Mr. Vojvodic together
 2             did the bulk of the work on this particular case?
 3                        MR. BLANKINSHIP: Objection.  Leading.
 4                        THE WITNESS: I'm sorry.  Can you rephrase
 5             the question one -- one --
 6        BY MR. MEADOWS:
 7      Q      Yeah.  I'm just -- is it fair to say that you and
 8             Mr. Vojvodic did the majority of the work that led
 9             up to the expert report that you're here to talk
10             about today?
11                        MR. BLANKINSHIP: Same objection.
12                        THE WITNESS: I've done the majority of the
13             work.
14        BY MR. MEADOWS:
15      Q      All right.  Now you mentioned -- we've talked some
16             about EconONE already.  You're currently employed as
17             a managing director at EconONE Research, correct?
18      A      Correct.
19      Q      What business is EconONE Research in?
20      A      Antitrust and economic consulting -- consultancy.
21             Mostly economists practicing across different
22             industries on litigation matters, antitrust, and
23             things of that sort.
24      Q      One of EconONE's lines of business is what it calls
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 12

1          "litigation support," correct?

2    A     Yes, I -- I think so.

3    Q     And litigation support includes the engagement that

4          -- that you've had on this case, which is testifying

5          expert, correct?

6    A     Correct.

7    Q     Now, your bio on the EconONE website describes you

8          as a seasoned testifying expert; do you agree with

9          that?

10   A     I have been testifying for quite many years,

11         correct.

12   Q     How many years?

13   A     I have to look at my CV, but I've -- probably the

14         first written testimony report -- report format I've

15         submitted at Federal Regulatory Commission has been

16         10 years ago or something like that.  In addition to

17         that, I probably spent additional 10 years working

18         with expert witnesses, supporting expert witnesses

19         on litigation cases and all that.  I haven't -- I've

20         been -- I wasn't a witness myself at the time, but I

21         altogether combined 20 years' experience in

22         litigation.

23   Q     I see.  So some of your testimony experience is

24         before regulatory bodies; is that right?

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 13

 1      A      Correct.

 2      Q      How many times have you testified in person in

 3             regulatory hearings?

 4      A      A couple of times.  I wouldn't recall the exact

 5             number.

 6      Q      A couple, meaning like two or three?

 7      A      It'll be under half a dozen times.  The form that

 8             testimony takes in front of mostly Federal Energy

 9             Regulatory Commission isn't in a written form.  It -

10             - it's basically an expert report gets submitted.

11      Q      I see.

12      A      Few times, I -- I had to testify or defend my

13             positions in person.

14      Q      I see.

15      A      So it -- it happens -- it's more an exception than

16             the norm, which is why I don't remember the exact

17             number.

18      Q      Fair enough.

19      A      Yeah.

20      Q      And of course, here we're -- we're here today for a

21             deposition in civil litigation; you understand that?

22      A      I understand that.

23      Q      And how many times have you had your deposition

24             taken as an expert in civil litigation?

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 14

```
 1     A      Again, I don't recall the exact number, but a couple

 2            of times -- under -- under a dozen times.  Yeah.

 3     Q      Under a dozen.  All right.  Have you ever testified

 4            at a trial in civil litigation?

 5     A      No, I have not.

 6     Q      What about at -- at a hearing before a judge that

 7            was -- that was not a trial?  Have you -- have you

 8            done that?

 9     A      No, I have not.

10     Q      Now, you're here today as an expert witness for the

11            plaintiffs in this class action case against Eligo;

12            you understand that?

13     A      Yes.

14     Q      Have you ever testified in any capacity, whether

15            it's a deposition or any other -- in any other

16            proceeding in civil litigation on behalf of a

17            defendant?

18     A      In this case?

19     Q      In any case?

20     A      No, I haven't.

21     Q      Have you ever issued a -- an expert report in civil

22            litigation on behalf of a defendant?

23     A      No, I haven't.

24     Q      And you've been in the expert witness game for more
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 15

 1              than 10 years, correct?

 2                      MR. BLANKINSHIP: Objection.  Asked and

 3              answered.

 4                      THE WITNESS: I believe I answered his

 5              question.

 6        BY MR. MEADOWS:

 7        Q     Are you refusing to answer it again?

 8        A     I believe I've answered this question already.  I

 9              will answer -- yeah.

10        Q     Okay.  So my question is, have you been in a --

11              you've been in the expert witness game for more than

12              10 years, right?

13                      MR. BLANKINSHIP: Objection.  Asked and

14              answered.  You can answer.

15                      THE WITNESS: Yes.

16        BY MR. MEADOWS:

17        Q     Okay.  And why is it that in all that time you've

18              never issued a report on behalf of the defendant?

19                      MR. BLANKINSHIP: Objection.  Outside the

20              scope of his report.  You can answer.

21                      THE WITNESS: As a consultant, you do work

22              that you get hired for.  And it just turned out that

23              in as far as the civil cases are concerned, that I

24              have been retained only on the plaintiff side on --

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 16

```
 1              on, like I said, a couple of cases, under half a
 2              dozen cases total.
 3         BY MR. MEADOWS:
 4     Q     All right.  Now, at an earlier point in your career,
 5           as I understand it, you were employed by Duke Power
 6           in Houston; is that right?
 7     A     Correct.
 8     Q     And Duke Power as a utility; is that right?
 9     A     Correct.
10     Q     What did you do for Duke Power when you were
11           employed there?
12     A     My main role -- it's been a while, but I do remember
13           it.  My main role has been I was responsible for
14           North American power price fundamentals, meaning I
15           was responsible for internal power price forecasts
16           for the company.  My second role was working with
17           traders, ensuring that on behalf of -- I -- I was
18           part of corporate risk management, ensuring that the
19           positions and -- and trading activity that was going
20           on, the trading arm of the company was consistent
21           with what has been going on on the -- on the
22           developing side of the company.
23     Q     All right.  Duke Power is not an ESCO, is it?
24     A     No, they're not an ESCO.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 17

```
 1      Q      Have you ever worked for any utility besides Duke
 2             Power?
 3      A      No, I have not.
 4      Q      Have you ever been employed by an ESCO in any
 5             capacity?
 6      A      No.
 7      Q      Have you ever done consulting work for an ESCO?
 8      A      Nothing that comes to mind.  I've -- I've had
 9             hundreds of clients over the years.  I'm pretty
10             certain that I haven't consulted for an ESCO in --
11             in New York, which is closest to this particular
12             case, but I -- I could not give you a definitive no
13             on that.  But I -- yeah, I -- I don't think so.
14      Q      Okay.  Have you ever worked with an ESCO to help it
15             set its retail prices for electricity?
16      A      No.
17      Q      What about a utility?  Have you ever worked for a
18             utility to help it set its retail prices for
19             electricity?
20      A      I'm going to have to think about this one because
21             like I said, there's been a lot of engagements.  So
22             utility rate setting comes up in -- in numerous
23             occasions and so have I been -- I -- I don't recall
24             being engaged to, you know, file regulatory, you
```

Page 18

1              know, rate applications or on behalf of utilities.

2              That wasn't the sole role.  But a lot of, you know,

3              many engagements that I've been involved on are very

4              much related to that process.

5        Q     Related to the process of setting rates -- retail

6              rates for electricity.

7        A     Not -- I -- I -- yeah.  I -- look -- yeah.  I -- I

8              cannot really give you a definitive yes or no.  I

9              mean, yes, the -- they are -- they are related and I

10             just -- I -- I just really -- I -- I don't recall to

11             giving a -- giving a -- give you definitive yes or

12             no.

13       Q     Okay.  Well, let me --

14       A     Can you maybe rephrase the question?  Yeah.

15       Q     Well, yeah.  Let me try to be more specific.

16       A     Sure.

17       Q     Has a -- has a utility ever come to you --

18       A     Yeah.

19       Q     -- and said, we'd like to hire you to help advise us

20             as to what we should charge retail consumers for

21             electricity?

22       A     No.  No.

23                   MR. BLANKINSHIP: Objection.  Lack of

24             foundation.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 19

```
 1        BY MR. MEADOWS:

 2     Q    Your answer to the last question was no; is that

 3          right?

 4     A    I -- I've -- I've -- not in that direct capacity.

 5          Yeah.

 6     Q    Okay.  And I take it, this is true from some of your

 7          prior answers, but just to be sure we have a clear

 8          record, have you ever worked with an ESCO to help it

 9          purchase power in the wholesale market in any state?

10     A    With -- with a utility?

11     Q    With an ESCO?

12     A    Not with an ESCO, but with other market

13          participants, for sure.

14     Q    What other market participants?

15     A    Like large commercial buyers, utilities.  Again, I'm

16          speaking based on my recollection.  Most cases I

17          deal with are very much related to that.  Fire

18          procurement is like one of the key -- key areas of -

19          - of the type of work we do.

20     Q    All right.  And then let's isolate that to New York.

21          Have you worked -- and this could be with anyone --

22     A    Yeah.

23     Q    -- commercial buyers, ESCOs, whoever.  Have you

24          worked with anyone with regard to purchasing power
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 20

```
 1              on the wholesale market in New York?
 2    A    I believe I have, yes.
 3    Q    Can you recall, you know, who were the clients for
 4         those engagements?
 5    A    Google was one of the clients that comes to mind.
 6         It was a confidential engagement that I'm not sure
 7         to what extent I can get into the details, but the -
 8         - the subject matter, among other things, dealt with
 9         energy procurement in various areas in the United
10         States and abroad, including New York.
11    Q    All right.  Going back to your testifying
12         experience, I take it you've never -- well, I think
13         I've asked you.  You've never testified on behalf of
14         an ESCO in litigation, right?
15    A    No.
16    Q    But you've testified against an ESCO in litigation,
17         correct?
18              MR. BLANKINSHIP: Objection.
19              THE WITNESS: I testified on the -- I
20         testified on the -- on the plaintiff side.  I have
21         been retained by the plaintiff in a capacity of an
22         expert witness to opine on the subject matter, and I
23         have testified in the context of that.
24       BY MR. MEADOWS:
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 21

1    Q    How many times have you testified in that context in
2         a lawsuit against an ESCO?
3    A    I think, like I said, it was under a half a dozen
4         times.  A -- a few -- a few times, really -- half a
5         dozen times, but best estimate.
6    Q    Okay.  And I -- and I -- I think I asked that
7         question about testimony, but let me be a little bit
8         more general --
9    A    Okay.
10   Q    -- how many times have you been retained as an
11        expert witness in litigation by the plaintiff who is
12        suing an ESCO?
13   A    By -- in how many cases or by how many attorneys?
14   Q    In how many cases, yeah.  Thank you.
15   A    Half a dozen.
16   Q    Okay.
17   A    And all of them have been quite a while ago, more
18        than five, six years ago, which is why my
19        recollection is not that great.
20   Q    I see.  Can you recollect the names of any ESCOs who
21        were involved in the cases that you testified to?
22   A    Yes.  Direct Energy, Verde, Viridian Energy, I --
23        those -- those three come to mind.
24   Q    Okay.  Now you're seated next to a gentleman whose

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 22

 1        name's Greg Blankinship today, correct?

 2    A   Correct.

 3    Q   And Mr. Blankinship is one of the attorneys for the

 4        plaintiffs in this case against Eligo, right?

 5    A   Correct.

 6    Q   Have you worked with Mr. Blankinship before this

 7        case against Eligo?

 8    A   No.

 9    Q   What about any of the other lawyers representing the

10        plaintiffs in this case against Eligo, have you

11        worked with them before?

12            MR. BLANKINSHIP: Objection.  Vague.  You

13        can answer.

14            THE WITNESS: Can you -- okay.  No, I have

15        not worked for any of them before.  I have met

16        Counsel -- I always mispronounce his name -- Burkett

17        --

18      BY MR. MEADOWS:

19    Q   Mr. McInturff?

20    A   McInturff.

21    Q   Okay.  Yeah.  That's cool.

22    A   I'm sorry.  This is embarrassing, but I -- I just

23        don't retain names well.

24    Q   Sure.  Join the club but go ahead.

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 23

| 1 | A | I had met him on one of the previous cases.  I have |
| 2 |   | not worked for him, but I -- I -- I've -- I've met |
| 3 |   | him on one of the previous cases that I worked on. |
| 4 | Q | All right.  How did you come to meet Mr. McInturff |
| 5 |   | on previous cases?  Was he involved in the cases in |
| 6 |   | some way? |
| 7 | A | I don't -- honestly, I don't recall.  I was -- my |
| 8 |   | role on that case, and I don't even remember which |
| 9 |   | case it was; it might have been Direct.  It might |
| 10 |  | have been one of the other cases I've mentioned.  My |
| 11 |  | role was I was basically a quantum expert.  My |
| 12 |  | testimony, I -- I submitted testimony or expert |
| 13 |  | report along with another colleague at the time from |
| 14 |  | Charles River Associates, who's sort of, you know, |
| 15 |  | had the role that I have right now. |
| 16 |  | And my role was more -- more -- mostly |
| 17 |  | supportive.  The -- the portions of our expert |
| 18 |  | report that I testified on dealt with the -- the |
| 19 |  | analytic -- the analysis, basically, that we |
| 20 |  | submitted in the expert report.  So I don't -- I |
| 21 |  | honestly don't recall in what context I've met |
| 22 |  | Burkett at the time, because most of the -- most of |
| 23 |  | the communications that were held between the |
| 24 |  | counsels and us have been dealt with my colleague. |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 24

```
 1     Q     I see.  Now, you mentioned one of the prior ESCO

 2           cases you were involved in was a lawsuit against

 3           Direct Energy, right?

 4     A     Yes.

 5     Q     And Direct Energy, I believe, was based in

 6           Connecticut; is that right?

 7     A     Sounds right.

 8     Q     Have any of the ESCO cases in which you've been

 9           involved as an expert witness been filed against

10           ESCOs who are based in New York?

11                 MR. BLANKINSHIP: Objection.  Objection.

12           Vague.  You can answer.

13                 BY MR. MEADOWS:

14                 THE WITNESS: I -- I honestly don't recall.

15       BY MR. MEADOWS:

16     Q     And I asked if those cases involved ESCOs that were

17           based in New York.  I want to broaden that, too.

18           Did any of those cases involve operations of the

19           ESCOs in the state of New York?

20     A     They -- they might have.  I -- it -- it's been more

21           than five years.  I really -- I really don't recall.

22     Q     All right.  Is the Direct Energy case the last ESCO

23           case in which you were involved as an expert?

24           Before this one, of course.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 25

```
 1    A    Then -- I don't know.  I -- I don't have a copy of
 2         my CV here, but if that's what it says in my CV,
 3         then yes, that's -- that's what it was.  Like I
 4         said, it's been more than five years ago and I -- I
 5         don't really remember the sequence in which I've
 6         done these cases, but it sounds about right.  I
 7         mean, I know it's a vague answer, but it wasn't the
 8         first one, as far as I recall.  Yeah.
 9    Q    Well, I wasn't asking which was the first one, just
10         to be clear, I want to know, setting this case
11         aside, is Direct Energy the last ESCO case in which
12         you were involved?
13    A    No, no.  I -- I understand.
14    Q    Oh, okay.
15    A    I'm saying it wasn't the first case of this type
16         that -- that I worked on, so it was -- whether it
17         was that last one before this one, I honestly don't
18         recall.
19    Q    Fair enough.  I understand.  Have you ever lived in
20         the state of New York?
21    A    Not permanently.  I've spent a lot of time in New
22         York, but I haven't lived in New York.
23    Q    All right.  Have you ever been a customer of a New
24         York utility?
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 26

1    A    No.

2    Q    I looked back at your website bio, Mr. Macan, and it

3         looks like that going back all the way to 1996, all

4         the -- all the jobs that you've had have been for

5         businesses that were based in either Massachusetts,

6         Texas, or California; does that sound right to you?

7    A    Where did you look at my CV?

8    Q    You have a website bio on the EconONE website.

9    A    Yeah.  It's -- it's a very abbreviated synopsis of

10        the work that I've done.  I -- it was really all

11        over the place.  I mean, I -- I don't want to go on

12        the record saying that I've probably done work in

13        every single state, but I've done work for 25 years,

14        predominantly US, Europe, and Asia.  I -- yeah.  All

15        over the place.  It -- it wasn't -- it didn't have a

16        geographic focus or -- nor I ever had a business

17        strategy of becoming an expert in a geographic

18        market, just to give you some color to it.  Yeah.

19        That's pretty much it.

20   Q    Understood.  I just want -- what I'm trying to get

21        at is, have you ever worked for a company or entity

22        that is actually based in the state of New York?

23             MR. BLANKINSHIP: Objection.  Vague.  Asked

24        and answered.

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

```
                                                    Page 27

 1                    THE WITNESS: You still want me to respond

 2           to that?

 3                    MR. BLANKINSHIP: Yeah.  You can answer it.

 4           Yeah.

 5                    THE WITNESS: Yeah.  Like I said, I really

 6           like that -- it very much could be.  I -- I just

 7           don't recall on top of my head --

 8      BY MR. MEADOWS:

 9      Q    Okay.

10      A    -- but it would be more likely yes than no.  I just,

11           yeah.  It's too much stuff and I don't keep track of

12           it.

13      Q    Understood.  Now, when you worked for Duke Power,

14           did Duke have any operations in the state of New

15           York?

16      A    Again, this is speaking 20-plus years ago, 20 --

17           yeah, something like that, 24 -- 24 years ago.  They

18           -- they were the second largest power company at the

19           time, right after Enron, I believe, or among the

20           top.  They had generation plants everywhere.  They

21           had -- they traded all the markets.  I don't recall

22           for a fact, but I'm 99 percent sure that, yes, that

23           there was a lot of activity in New York at the time.

24      Q    All right.  Now, you were at Duke from sometime in
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 28

1            the year 2000 to sometime in the year 2001, does

2            that sound --

3    A       Correct.  Correct.

4    Q       That's right?  Why was your tenure at Duke, you

5            know, relatively short?

6    A       For personal reasons.  Actually, family reasons, not

7            even mine that I don't really volunteer to discuss.

8            But if you want, I can.

9    Q       No, I don't want to pry into family reasons.  I

10           think --

11   A       Yeah.

12   Q       That -- that's enough.  But you weren't asked to

13           leave Duke?

14   A       No, no, no.  No.

15   Q       And you weren't fired?

16   A       No, I wasn't fired.

17   Q       All right.  Now, since you've left Duke, I think

18           EconONE is the sixth company that you have been

19           employed by; does that sound about right?

20   A       If that's the count, I'm sure you got the count

21           right.  Yeah.

22   Q       All right.  And between working at Duke and your

23           current job at EconONE, I think you spent about nine

24           years at Charles River Associates; is that right?

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 29

| | | |
|---|---|---|
| 1 | A | Correct. |
| 2 | Q | Was that -- where were you physically based when you |
| 3 | | worked for Charles River? |
| 4 | A | In Boston. |
| 5 | Q | In Boston?  And what did you do when you were at |
| 6 | | Charles River? |
| 7 | A | I did comparable work to what I'm doing right now. |
| 8 | Q | And what you're doing right now at EconONE, |
| 9 | | obviously, we've talked about the litigation support |
| 10 | | side.  You do some of that, right? |
| 11 | A | Yes. |
| 12 | Q | And tell me what else you do besides litigation |
| 13 | | supporting your current role at EconONE? |
| 14 | A | I'd say the bulk of my work, it -- it -- first of |
| 15 | | all, it -- it varies.  Like both Analysis Group, |
| 16 | | Charles River, and -- and EconONE now are all |
| 17 | | economic consultancies.  The nature of my work is |
| 18 | | pretty similar.  Specific engagements and division |
| 19 | | of -- of those engagements between sort of |
| 20 | | litigation cases, regulatory work, client advisory |
| 21 | | work, which is non-litigation, really varies on |
| 22 | | demand.  Consultants do what they're hired to do. |
| 23 | | So I'm -- I'm just answering sort of, |
| 24 | | generally, I'd say, you know, the bulk of my work is |

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 30

 1            not in litigation settings, the bulk of the work is

 2            on regulatory side, working basically providing

 3            testimony and expert reports to Federal Energy

 4            Regulatory Commission, which is a national regulator

 5            for all -- for wholesale power markets on -- on

 6            issues that vary, but most often than not, relate to

 7            acquisitions of energy markets and -- and similar

 8            things.

 9     Q    Okay.  But you -- in your previous answer, you

10            mentioned wholesale power markets, and we're going

11            to talk about wholesale power markets.  So that's a

12            concept that's in your report that you issued in

13            this case, right?

14                  MR. BLANKINSHIP: Objection.  Vague.

15                  THE WITNESS: Can you please rephrase?

16        BY MR. MEADOWS:

17     Q    Yeah.  I mean, in your report, we'll get into it

18            later.  But you refer numerous times to the

19            wholesale power market in New York, right?

20     A    I -- I -- yeah.  There -- there are certainly words,

21            wholesale power markets or something along those

22            lines, wholesale energy in my report, yes.

23     Q    Sure.  And I want to understand, what is that if you

24            -- in layman's terms, what is the wholesale power

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 31

```
 1            market?
 2    A       Wholesale power markets are organized markets to buy
 3            energy, you know, in -- in different parts of the
 4            country.  In New York, in particular, there's New
 5            York ISO, which facilitates and organizes these
 6            markets, like I discussed in my testimony.  Day-
 7            Ahead, Real-Time, so on and so forth.  That's --
 8            that's sort of an example of that.
 9    Q       All right.  So the New York, if I understand you
10            correctly, the New York ISO organizes the wholesale
11            power market in New York; is that correct?
12    A       I wouldn't say it organizes, but New York ISO --
13            yeah, I guess you -- you could -- you could say it
14            organizes, yeah.
15    Q       Is anything besides power sold on the New York ISO
16            wholesale market?
17                    MR. BLANKINSHIP: Objection.  Vague.
18                    THE WITNESS: Can you please rephrase?
19        BY MR. MEADOWS:
20    Q       Well, yeah, I mean, I think you've testified that
21            one of the things sold on the wholesale power market
22            is, you know, power.
23    A       Yeah.
24    Q       Can I -- on that particular market, is there
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                      Page 32

 1              anything else that's sold besides that?

 2                     MR. BLANKINSHIP: Same object -- same

 3              objection.

 4                     THE WITNESS: What specifically are you

 5              alluding to?  I mean --

 6         BY MR. MEADOWS:

 7         Q    I'm not alluding to anything.

 8         A    Okay.

 9         Q    I'm asking if -- is there anything else in this --

10              whatever wholesale market is kind of organized by

11              the New York ISO, is there anything else that's sold

12              on that market besides power?

13                     MR. BLANKINSHIP: Same objection.

14                     THE WITNESS: I -- predominantly power or

15              mostly power.  The -- the different types of power,

16              there's like, Day-Ahead and Real-Time and all kinds

17              of stuff.  There are capacity markets also.  I mean,

18              it's just, you know, power is -- is a broad term

19              that encompasses a lot of things, so.

20         BY MR. MEADOWS:

21         Q    Okay.  Understood.  Let me switch gears a little

22              bit.  A couple more questions about your background.

23              Your -- both of your -- your undergraduate degree

24              and your graduate degree, both are in electrical

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 33

```
 1              engineering, correct?

 2    A    One is in computer science as well, yeah.  Master's.

 3    Q    Okay.  You don't have a degree in economics, do you?

 4    A    No.

 5    Q    No degree in accounting?

 6    A    No, I don't have degrees.  I've -- I've taken

 7         classes.  And for the 25 years of my career, I've

 8         worked as a practicing energy economist.  I'm going

 9         to add some color to that as well, if I may.

10    Q    Well --

11              MR. BLANKINSHIP: You certainly may.

12              THE WITNESS: So --

13       BY MR. MEADOWS:

14    Q    Wait, hold on.  I didn't ask another question yet.

15              MR. BLANKINSHIP: He -- he's not finished

16         answering his question.  You can go ahead.

17              MR. MEADOWS: No, no, no, no.

18              MR. BLANKINSHIP: No, no.  He didn't finish

19         answering his question.

20              MR. MEADOWS: He said, "I'll add details to

21         that later, if I may," and --

22              THE WITNESS: No, I didn't say later.

23              MR. BLANKINSHIP: No, no, he didn't say

24         later.  You can read it back.  He said -- he said,
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 34

1          "I'm going to add some detail," and he's about to

2          add some detail.

3                    MR. MEADOWS: I didn't ask him for that

4          detail.  We'll get to it.

5                    MR. BLANKINSHIP: He -- he's -- this --

6          he's answering his question.  He's permitted to

7          answer his question in full.  You may -- you may

8          answer the question.

9                    MR. MEADOWS: My -- listen.  The question

10         was whether he has a degree in accounting.

11                   THE WITNESS: I -- I did not -- no.  You --

12                   MR. MEADOWS: We'll get back to it, but you

13         are not in control of this deposition so knock it

14         off.

15                   MR. BLANKINSHIP: Okay.  Use your inside

16         voice.  Be a professional.

17                   Sir, you may answer the question if you

18         weren't finished.

19                   MR. MEADOWS: Stop.  Now, listen.  The

20         question was whether you have a degree in

21         accounting.  I'm not going to cut you off today.

22         You can tell me --

23                   MR. BLANKINSHIP: You just did.

24                   MR. MEADOWS: -- all the reasons why you're

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 35

1          an expert in economics.  That's not the question

2          that's pending, and you know that.

3                    MR. BLANKINSHIP: I don't know that.  I

4          think you interrupted, like you just said you

5          wouldn't --

6                    MR. MEADOWS: Stop arguing.  No, you are

7          now wasting time.  Can you stop?  Will you stop?

8                    MR. BLANKINSHIP: You can answer the

9          question if you want.

10                   THE WITNESS: I -- I did not finish --

11                   MR. MEADOWS: Mr. Macan, I need you to stop

12         talking.  I'm not going to allow this.  This is not

13         the question.  And if we --

14                   MR. BLANKINSHIP: This is horribly

15         inappropriate.

16                   MR. MEADOWS: What you're doing is horribly

17         inappropriate.  You know the question, what you want

18         to say now is not responsive to this question.

19         We'll get to it.  I'm going to move on.

20                   THE WITNESS: Sir, can I just say

21         something?

22                   MR. MEADOWS: No, you cannot right now.

23                   MR. BLANKINSHIP: Unbelievable.

24                   MR. MEADOWS: Are you trying to goad me

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                          Page 36

1          into something with these -- with these comments,

2          Greg?

3                    MR. BLANKINSHIP: I am not.

4                    MR. MEADOWS: On the one hand, you say I'm

5          being unprofessional, and on the other, you can't

6          control yourself, apparently, to keep your thoughts

7          to yourself; is that what's going on here?

8                    MR. BLANKINSHIP: No.  I think your

9          behavior is unbelievable.  It's appropriate to note

10         that for the record.  You can go ahead.  Stop

11         wasting our time.

12      BY MR. MEADOWS:

13      Q    You don't have a degree in business, finance, or

14         management, do you?

15                   MR. BLANKINSHIP: Objection.  Vague.

16                   THE WITNESS: I -- I don't have a degree in

17         business, management or whatnot.  For the 25 years,

18         I've been a practicing energy economist.  Straight

19         out of school, I joined a company, one of the top

20         economic consultancies at the time, solely focused

21         on consulting in the energy space.

22                   And among 20 or so of my peers at the time

23         who were all PhD economists, I was the only one that

24         made the bar or made the generation without having

Edo Macan                            December 17, 2025
Brous v. Eligo Energy, LLC

Page 37

1        that formal degree.  The reason for that has been

2        that my graduate research has focused on the

3        regulation of energy markets and specifically, nodal

4        pricing on power, which was a novelty at the time.

5        This is 1997, when economists had very little idea

6        of how to price power specifically.  This is the

7        time when the markets are deregulating and this is

8        the reason why I ended up choosing this career.

9        This is what I have done at MIT in -- as a part of

10        my graduate research.

11                Needless to say, upon joining the company,

12        I've had a lot of PhD economists supporting me on

13        roles strictly because energy business is so

14        industry-specific that for someone straight out of

15        PhD or straight out of MBA, it was impossible for

16        these guys to perform this type of work.  It just

17        simply requires a lot of technical expertise about

18        the markets.

19    BY MR. MEADOWS:

20    Q    So you hold yourself out as a professional

21        economist.  Is that what I understand from your

22        answer?

23    A    Yes.

24    Q    Even though you have no degree in economics at all?

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 38

```
 1              MR. BLANKINSHIP: Objection.  Vague.
 2         Mischaracterizes his testimony.
 3      BY MR. MEADOWS:
 4    Q    Question is, you hold yourself as an economist even
 5         though you don't have any degree in that discipline,
 6         right?
 7              MR. BLANKINSHIP: Same objections.
 8              THE WITNESS: I don't.  It's not -- I did
 9         not say that I'm holding myself as an economist.
10         I'm -- for 25 years of my career, I'm -- I'm a
11         practicing economist.  I don't have economics PhD,
12         but I have submitted numerous reports, worked for it
13         for 25 years for some of the leading energy
14         companies, testified and submitted reports in front
15         of Federal Energy Regulatory Commissions on dozens
16         of occasions.  I -- in -- in -- by any stretch of
17         the imagination, that is operating as an energy
18         economist.
19      BY MR. MEADOWS:
20    Q    You're testifying in this case as an energy, as a --
21         an expert on energy economics; is that right?
22              MR. BLANKINSHIP: Objection.  Vague.  Lack
23         of foundation.
24              THE WITNESS: I have in my test -- in my
```

Page 39

```
 1          expert report, there is a -- there is a paragraph

 2          where I specify specifically what's the scope of my

 3          engagement in this matter and what am I -- what am I

 4          testifying on.  Paragraph 10.

 5       BY MR. MEADOWS:

 6    Q     Are you an expert in energy economics?

 7                 MR. BLANKINSHIP: Objection.  Asked and

 8          answered.

 9                 THE WITNESS: Yes.

10       BY MR. MEADOWS:

11    Q     And you hold -- you're going to hold yourself out to

12          the court as a qualified expert in economics,

13          correct?

14    A     Yes.

15                 MR. BLANKINSHIP: Objection.  Calls for

16          legal conclusion and vague.

17       BY MR. MEADOWS:

18    Q     Has any court ever held that you are qualified to

19          testify as an expert in economics?

20                 MR. BLANKINSHIP: Objection.  Vague.  Calls

21          for a legal conclusion.

22                 THE WITNESS: I believe that's a legal

23          question, and I can't opine on it.

24                 MR. BLANKINSHIP: You can answer.  Just you
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 40

```
 1              --

 2                      THE WITNESS: If I'm a legal --

 3      BY MR. MEADOWS:

 4      Q    Well, I'm not asking to give your opinion.  I'm

 5           asking literally, in a case in which you've been

 6           involved as an expert, has a -- has a court ever

 7           issued a ruling saying that you're qualified to

 8           testify as an economist?

 9                      MR. BLANKINSHIP: Same objection but you

10           can answer if you know.

11                      THE WITNESS: No.

12        BY MR. MEADOWS:

13      Q    Have -- has any court ever ruled that you are not

14           qualified to testify as an economist?

15      A    No.

16                      MR. BLANKINSHIP: Same objections.

17        BY MR. MEADOWS:

18      Q    You've just never been involved in a -- in a civil

19           litigation matter that's gotten to the point where

20           the court has ruled on your qualifications one way

21           or the other.

22                      MR. BLANKINSHIP: Same objections.

23                      THE WITNESS: Yes.

24        BY MR. MEADOWS:
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 41

1    Q    You don't possess a CPA license, correct?

2    A    No.

3    Q    And when I say, "CPA," I think you understand,

4         you're not a certified public accountant.

5    A    No, I don't have that certification.

6    Q    You don't hold yourself out as an expert on

7         Generally Accepted Accounting Principles, do you?

8    A    I don't have a CPA.

9    Q    Do you regard yourself as an expert on GAAP,

10        Generally Accepted Accounting Principles?

11              MR. BLANKINSHIP: Asked and answered.

12              THE WITNESS: I don't have a CPA.

13     BY MR. MEADOWS:

14   Q    But I'm asking if you regard yourself as an expert,

15        not whether you have a CPA.  Do you regard yourself

16        as an expert on Generally Accepted Accounting

17        Principles?

18              MR. BLANKINSHIP: Same objection.

19              THE WITNESS: I -- I would not testify in a

20        -- in a capacity of an expert on that matter.  So if

21        that meets the threshold of expertise, then the

22        answer is no.

23     BY MR. MEADOWS:

24   Q    All right.  And you don't have a law degree, right?

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 42

```
 1    A    No.

 2    Q    You're not licensed to practice law in any state,

 3         are you?

 4    A    No.

 5    Q    And I take it that you don't claim to have any

 6         expertise in legal matters, do you?

 7    A    Other than being an expert witness and working in

 8         this industry for over 20 years.

 9    Q    Certainly, you're not claiming in this case to be an

10         expert on the law of contracts, are you?

11    A    No, I'm not -- I'm -- I'm not an attorney.  I don't

12         pretend to be one.  I'm here merely to opine on

13         economic matters in -- in this case.

14    Q    Are you offering any opinion -- we'll get to this in

15         more detail, but I want to follow up on that answer.

16         Are you offering any opinion in this case about how

17         the Eligo's customer contract should be interpreted?

18    A    No.

19    Q    Have you ever heard of something called the "implied

20         duty of good faith and fair dealing"?

21    A    I've -- I've heard of it, yes.

22    Q    Do you know what it -- what it is?

23    A    It's -- it's a -- it's a legal term and I'm going to

24         not try to conjecture on interpretation of legal
```

Edo Macan                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 43

```
 1              terms.
 2     Q     And I'm not going to ask you for your conjecture, I
 3           just -- do you have any understanding of what the
 4           implied duty of good faith and fair dealing is?
 5     A     I -- I do, but I mean, I can -- I can give you a
 6           layman's response, or -- because I'm not an
 7           attorney.
 8     Q     Whatever your understanding is as a non-attorney,
 9           that's all I'm looking for.
10     A     Yeah.  So, I mean, there -- there's -- there there's
11           -- there's a body of law that basically governs
12           conduct and -- and things like this.  And -- and in
13           -- in this particular case, I think I mentioned it
14           in my -- one of my -- in -- in the -- in the report
15           at some point.  It's like universal business
16           practices.  Outside of the contractual language,
17           outside of the regulatory constraints, there's sort
18           of common law that applies to -- to the sort of
19           situation at hand.  And -- and I'm not an attorney.
20           I can't tell you more than that.  If you want to
21           rephrase it, I'm happy to discuss.  But that's --
22     Q     Well, my question was what is your understanding of
23           the implied duty of good faith and fair dealing?
24           And other than the answer you just gave, do you have
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 44

```
 1              anything to add to that question?
 2     A   I -- I mean, I -- the -- the counterparties in a
 3          transaction have -- have a, you know, duty to -- to,
 4          you know, behave.  You know, in a -- in -- in a --
 5          in a -- in -- in this particular case, ESCOs have a
 6          duty to, and again, my understanding, not legal -- a
 7          legal interpretation, have a duty to treat their
 8          customers in a -- in a fair and just way --
 9     Q   So --
10     A   -- and charge rates that are fair and just.
11     Q   So that's your understanding -- understanding of the
12          duty of good faith -- fair -- treat your customers
13          in a fair and just way; is that right?
14              MR. BLANKINSHIP: Objection.  Asked and
15          answered.  Mischaracterizes testimony.
16              THE WITNESS: No.  I -- I've -- I've -- my
17          answer was that they had a -- they have a duty to
18          charge rates that are fair and just, not treat --
19          treat this overly vague.  And, you know, in this
20          particular case, they have a -- they have a duty to
21          charge rates that are fair and just.
22     BY MR. MEADOWS:
23     Q   What's the source of that duty that you just
24          testified to?
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 45

```
 1              MR. BLANKINSHIP: Objection.  Asked and
 2         answered.
 3              THE WITNESS: I believe it's the -- it's
 4         the -- it's the common law.  I'm not -- I'm not an
 5         attorney.  I don't know nor I'm pretending to know
 6         the nuances of where things come from.  That is my
 7         non-legal understanding of how to -- how the law
 8         works.
 9      BY MR. MEADOWS:
10   Q    Okay.  A couple more background questions in this
11        morning session, and by the way, I'm sure you
12        understand, if you'd like to break at any point, as
13        long as a question's not pending, you're -- I'm
14        welcome -- sorry --
15   A    Yeah, but --
16   Q    -- you're welcome to have one, is what I was trying
17        to say.  So just let me know if you need to break at
18        any point.
19   A    But if I can -- can I say something?
20   Q    Sure.
21   A    Just in the spirit of keeping this amicable, I
22        really was trying to elaborate on my first couple
23        of, you know, I -- I did -- I didn't -- that -- that
24        interchange was completely unnecessary, I was trying
```

Edo Macan                                     December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 46

1              to elaborate, as you can see, there's -- I -- I'm

2              not an attorney.  I was trying to elaborate on my

3              response before that, and you did cut me off in the

4              middle of answering that question.

5         Q    Okay.

6         A    I just want to state it for the record.

7         Q    Okay.  Okay.  Why did you want to bring that up in

8              response to me offering you the opportunity to have

9              a break whenever you'd like one?  What was it about

10             that that wanted -- that made you want to say that?

11                      MR. BLANKINSHIP: Objection.  Vague.

12             Outside the scope of his expert testimony.

13                      THE WITNESS: I wanted to do that in the

14             spirit of, you know, continuing an amicable

15             conversation.  That -- that -- that's all.  That was

16             the only purpose.  Because your suggestion that I

17             can take a break whenever I want is in my mind, in

18             the same spirit.  I know that I can request a break

19             at any point.  You're being kind by offering me

20             that, thinking that maybe I'm not aware of that.

21             I'm fully aware of that.

22           BY MR. MEADOWS:

23         Q    Okay.

24         A    In the same way, I wanted to tell you that what

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 47

```
1                Counsel said was actually absolutely right.  I -- I
2                really did -- wanted to elaborate on that question,
3                but that's completely fine.  So that's all.
4       Q        Okay.  Now, you're being compensated for your work
5                on this case at the rate of $750 an hour, correct?
6       A        Correct.
7       Q        And please forgive me, your colleague, who's on the
8                phone, who -- whose last name I've already
9                forgotten, is --
10      A        Sure.  Vojvodic.
11      Q        Yes.  Vojvodic.  Does he have an hourly rate that
12               he's charging on this matter as well?
13      A        He does.
14      Q        And what is that?
15      A        I believe it's 5 -- 500 or 525 -- 525.
16      Q        All right.  Now, the $750 an hour rate that you're
17               charging the plaintiffs on this case, is that the
18               same rate that you charge other clients for your
19               work in -- during this calendar year?
20      A        No.  No, it's not.
21      Q        How does the rate that you're charging in this case
22               differ from other rates that you charge for your
23               work?  And I'm isolating this to the year 2025.
24      A        Yeah, it doesn't, it just sort of gets updated.  I -
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 48

```
 1              - I joined the company fairly recently, in 2024.  I

 2              believe my rate at Charles River was comparable.

 3              And so initial rate was sort of set 750 and then I

 4              believe when I was -- and -- and then later -- and

 5              then later in the year, I was retained on multiple

 6              other cases where I've, you know, charged a

 7              different rate.

 8        Q     When you say, "you were retained on other cases,"

 9              are you talking about litigation matters?

10        A     No.

11        Q     Regulatory matters.

12        A     Regulatory matters.

13        Q     And the rates that you're charging, the regulatory

14              matters, are they higher or lower than the 750 that

15              you're charging here?

16        A     In this particular case, there were -- there were

17              higher rates.

18        Q     All right.  Why is -- why are you charging a higher

19              rate on those regulatory matters?

20                    MR. BLANKINSHIP: Objection.  Asked and

21              answered.

22                    THE WITNESS: It -- all the prices go up.

23              Our labor costs go up as well.  And I -- it became

24              apparent to me that I did not realize that, you
```

Edo Macan                                     December 17, 2025
Brous v. Eligo Energy, LLC

Page 49

```
 1            know, market has moved, and I adjusted my rates

 2            accordingly.

 3       BY MR. MEADOWS:

 4    Q    I see.  But you haven't adjusted your rate on the

 5            Eligo matter since the engagement came in the door;

 6            is that right?

 7    A    No, I haven't.

 8    Q    Do you intend to adjust the rate going forward into

 9            the year 2026?

10    A    I haven't made the decision.  Usually, rates are

11            updated on a calendar basis.  The reason why I

12            haven't adjusted it here is because when I was

13            initially contacted by counsel on this matter, they

14            asked me to disclose my rate, and the rate that I

15            told them was the prevailing rate that I was

16            charging at the time.  And I thought it would be

17            fair -- unfair to change the rate in the middle of

18            the year, so.

19    Q    How did -- are you the one who determined that your

20            rate on this matter would be $750 an hour?

21    A    Yes.

22    Q    How did you come up with that number?

23    A    I didn't come up with the number.  That's the --

24            that was my understanding at the time of -- of --
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 50

```
 1              well, that was -- that was the rate that I set,

 2              billing rate to six months after joining the

 3              company.

 4     Q        Right.  But my question, I think, is a little bit

 5              more broad of how did you arrive at 750 versus some

 6              other number, what goes into that?

 7     A        Budgeting.  I -- I run a -- I have support staff

 8              working for me.  You know, my -- my time is

 9              valuable.  I -- there's not a tremendous amount of

10              calculation that goes in it.  Economic consultants

11              have rates that they charge.  I believe my rate at

12              Charles River has been and JS Held, was quite

13              comparable to that.  And I just -- as a -- you know,

14              until -- until I sort of, you know, I just set it, I

15              just set it at the time.  I didn't -- it's not

16              something that I put too much thought into it.  It

17              was a default rate.  Whatever I was charging before,

18              I had that rate.

19     Q        Is -- are you at least trying to keep your billable

20              rate in line with what you perceive to be the market

21              for other people who are in your line of business?

22                      MR. BLANKINSHIP: Objection.  Vague.

23                      THE WITNESS: I don't really know what

24              other people charge.  I -- I have no information
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 51

```
 1            other than anecdotal evidence of what other people
 2            charge in terms of my competitors.  You know, I know
 3            a few colleagues in my company what they charge,
 4            and, you know, that -- that's roughly what it is.
 5            Yeah.
 6       BY MR. MEADOWS:
 7    Q     All right.  How much has your firm charged the
 8            plaintiffs to date for your firm's work on this
 9            case?  Not just yours personally, but EconONE.
10    A     I really don't know the figure.
11    Q     I mean, do you have a -- even a ballpark of what the
12            total charges have been?
13                     MR. BLANKINSHIP: Objection.  Asked and
14            answered.
15                     THE WITNESS: I -- I don't have the -- I
16            don't have the exact figure.  We send invoices
17            monthly, and I just don't have the figure.
18       BY MR. MEADOWS:
19    Q     Are you involved in that monthly invoicing process?
20    A     I am.
21    Q     And do you review the bills before they're sent to
22            whoever it is at the plaintiffs' law firms who
23            receive them?
24    A     I am.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 52

1    Q    So every -- and the bills go out monthly?

2    A    They generally go out monthly.  Correct.

3    Q    Okay.  But you, as we sit here today, you don't have

4         any recollection of what the rough total of those

5         bills that have gone out is?

6                   MR. BLANKINSHIP: Objection.  Asked and

7         answered.

8                   THE WITNESS: I -- I can't give you a total

9         figure.  There are -- there are multiple invoices

10        and -- and which ones were paid, which ones were not

11        paid, you know, what went out, I -- I just don't

12        have the total number.

13     BY MR. MEADOWS:

14   Q    I understand.  I'm not asking for exact total.  I

15        just want to be clear.  You don't even have a rough

16        order of magnitude in mind about how much your firm

17        has charged?

18                  MR. BLANKINSHIP: Objection.  Asked and

19        answered.

20                  THE WITNESS: I don't -- I don't have a

21        total.  I don't have a number.  I mean, if you can

22        ask me, is it higher than -- I, like, I don't want

23        to speculate.  I mean, I just don't -- I don't know

24        exactly.  If you ask me at this point, how much have

Edo Macan                         December 17, 2025
Brous v. Eligo Energy, LLC

Page 53

```
 1          you been compensated for this?  I don't know.  I've
 2          been compensated $750, me, personally, an hour for
 3          the work that I have performed, and my staff has
 4          been compensated at their commensurate rates for the
 5          work that they have performed.  And so I just --
 6       BY MR. MEADOWS:
 7    Q    Okay.  And just to clarify, I think you said you've
 8          personally been compensated at 750 an hour.  Now,
 9          you don't personally receive that 750 --
10    A    Yeah.  No, no, I'm sorry.  Yeah.  I misspoke.
11          Through -- through the invoices that, you know,
12          clients pay invoices and the company receives
13          invoices.
14    Q    Right.  And that's what I want to get.  I just want
15          to clarify that's --
16    A    Yes.  Yes.
17    Q    So the invoices for EconONE's work on this case are
18          issued by EconONE, correct?
19    A    Correct.
20    Q    And they go to plaintiffs' law firms who hired
21          EconONE, correct?
22    A    Yeah.  Approved by me and issued by the company.
23          Correct.
24    Q    Right.  And then when money comes in in payment of
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 54

1              those invoices, that doesn't hit your bank account,

2              does it?

3    A    No.

4    Q    It goes to whatever EconONE bank account.

5    A    It goes to the EconONE bank account.  And I don't --

6              I don't even know.  Like, I don't believe I even get

7              a notification of what was paid, what wasn't paid at

8              some point in time.

9    Q    Okay.

10   A    I looked where we are and -- and that's -- that's

11             why I'm -- I'm just not -- I'm focused on my work

12             less than that most of the time, so.

13   Q    All right.  Now, I don't -- I'm not asking you any

14             questions about how much you're personally being

15             compensated by EconONE.  I just want to --

16   A    No, no, no, I understand.

17   Q    I know.  I just want to clarify because I am going

18             to ask you some process questions about that.

19   A    Okay.

20   Q    Your compensation at EconONE, is it salary-based,

21             commission-based?  Can -- what?

22   A    It's salary plus discretionary bonus.

23   Q    All right.  And is the discretionary bonus annual?

24   A    Discretionary bonus is annual.  Correct.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 55

```
 1    Q      All right.  And are there any inputs that go into

 2           how that discretionary bonus is determined?

 3                  MR. BLANKINSHIP: I'm just going to object.

 4           This is all outside the scope of the expert report

 5           and the required disclosures under Rule 26, but you

 6           can answer.

 7                  THE WITNESS: I'm sorry, can you repeat the

 8           question?

 9      BY MR. MEADOWS:

10    Q      Sure.  What go -- what goes into -- what are the

11           inputs that go into the setting of your annual

12           bonus?  Again, not asking you how much you've been

13           paid or any amounts, just what goes into it.

14                  MR. BLANKINSHIP: Same objections.

15                  THE WITNESS: I -- I -- you know, I don't -

16           - I -- I don't know the exact formula.  It's, I

17           guess, how much work has been performed, thus, you

18           know, how much work has been billed, what are the --

19           what -- what are the costs of performing that work,

20           both in terms of salaries for the support staff,

21           administrative costs, expenditures?  Like, you know,

22           like any other company.  Pretty much that.

23                  And -- and so if -- if, you know, all the

24           costs are covered, and I don't know how the company
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 56

```
 1            does profits and whatnot, you know there's
 2            discretionary money left for bonuses.  I allocated
 3            bonuses for -- for my group.
 4        BY MR. MEADOWS:
 5     Q    Tell me how this engagement, or your engagement on
 6            this case came to EconONE, where -- did you -- did
 7            you get a call from someone, or did the call come
 8            into someone else at EconONE?
 9                    MR. BLANKINSHIP: Same objections.  Outside
10            the scope of the report and the required Rule 26
11            disclosures, but you can answer.
12                    THE WITNESS: I -- I got a call and I
13            honestly don't remember, was it from Burkett, who I,
14            like I said, met once or twice, five years before,
15            or from Greg, one of the two of them?  Had -- that's
16            -- that's how it came about.
17        BY MR. MEADOWS:
18     Q    How long ago was that?
19                    MR. BLANKINSHIP: Same objections.
20                    THE WITNESS: I believe this was the
21            beginning of the year, February or March.
22        BY MR. MEADOWS:
23     Q    Of 2025?
24     A    Of 2025.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 57

```
 1       Q      All right.

 2       A      Speaking on recollection, it could be, yeah.

 3       Q      Sure.

 4       A      Was definitely '25, but months I could be off.

 5                      MR. MEADOWS: Let's give a copy of the

 6              report to mark.

 7                      MR. O'TOOLE: You could use.  Yeah.

 8                      THE WITNESS: What's that?

 9                      MR. O'TOOLE: You could use.  Yeah.

10                      MR. MEADOWS: Yeah, I don't -- yeah.  So I

11              just need to separate those.

12                      MR. O'TOOLE: Yeah.

13                      MR. MEADOWS: Yeah.  Thanks.  Can I mark

14              this -- mark this as Exhibit 1?  Thank you.

15              (Whereupon, Ex. 1 Expert Report of Edo Macan, Sept.

16              12th 2025 is marked for identification.)

17         BY MR. MEADOWS:

18       Q     Mr. Macan, I know you've brought some copies of the

19              report.

20       A      Okay.

21                      MR. MEADOWS: I've gone ahead and mark this

22              one.  Greg, I've got an extra copy if you'd like.

23                      THE WITNESS: Thanks.

24         BY MR. MEADOWS:
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 58

```
 1     Q     That's Exhibit 1 to your deposition.  Obviously,

 2           we're going to talk about this throughout --

 3     A     Sure.

 4     Q     -- the deposition today, but I take it you recognize

 5           Exhibit 1 as a copy of the expert report that you

 6           issued and signed in connection with this case?

 7                    MR. BLANKINSHIP: Yeah.  I'd just like to

 8           note that the exhibits to the report are not

 9           included in this copy.

10        BY MR. MEADOWS:

11     Q     Yeah, that's right.  This is -- just to save volume,

12           we didn't include those.  But other than the

13           exhibits and the schedules, were -- this is the copy

14           of the report that you issued, correct?

15     A     That's --

16                    MR. BLANKINSHIP: Objection.  Vague.

17                    THE WITNESS: That's what it looks like

18           based on the front page.

19        BY MR. MEADOWS:

20     Q     So I want to ask you, Mr. Macan, who wrote this

21           report?

22     A     I wrote this report.

23     Q     Did anyone work with you on actually, you know,

24           putting the words to paper and writing with --
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 59

```
 1          writing this?

 2                      MR. BLANKINSHIP: Objection.  Vague.

 3                      THE WITNESS: What specifically do you

 4          mean?

 5       BY MR. MEADOWS:

 6       Q     I mean, did anybody work on the wordsmithing and the

 7             actual drafting of this besides you?

 8                      MR. BLANKINSHIP: Same objection.

 9                      THE WITNESS: I -- I wrote this report.

10       BY MR. MEADOWS:

11       Q     What about anybody from the plaintiffs' law firms,

12             did any -- did anybody from those firms help you

13             write the report?

14                      MR. BLANKINSHIP: Objection.  Vague.

15                      THE WITNESS: Specifically, what do you

16             mean by helping me write the report?

17       BY MR. MEADOWS:

18       Q     Well, let's take one example.  Did you send drafts

19             of the report to the plaintiffs' law firms before

20             the final version was signed?

21                      MR. BLANKINSHIP: Objection.  Vague.

22                      THE WITNESS: Yes.  I've sent drafts of the

23             report.

24       BY MR. MEADOWS:
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 60

```
 1    Q     And did they make comments or red lines to the

 2          drafts?

 3    A     I believe they've made -- they made comments and

 4          suggestions that we discussed for my consideration,

 5          but ultimately, anything that I have -- ultimately,

 6          the final version was -- was words that I wrote, and

 7          they were done by and improved by me.  Yeah.

 8    Q     But certainly, there were instances in which the

 9          plaintiffs' lawyers made suggestions on the drafting

10          of the report that you -- that you accepted,

11          correct?

12                MR. BLANKINSHIP: Objection.  Asked and

13          answered.

14                THE WITNESS: Do I answer the same --

15                MR. BLANKINSHIP: You can -- you can

16          answer.

17                THE WITNESS: Like -- like I said, I -- I'd

18          -- there were -- there were suggested comments that

19          I took into consideration in -- in finalizing my

20          report.

21       BY MR. MEADOWS:

22    Q     I understand that.  What I want to -- what I'm

23          trying to get to is that certainly, there were

24          instances in which the plaintiffs' lawyers made
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 61

```
 1         specific suggested edits to the language in your

 2         report that you accepted, correct?

 3                    MR. BLANKINSHIP: Objection.  Asked and

 4         answered.  Foundation.  You can answer again.

 5                    THE WITNESS: I just don't know how to

 6         answer it any -- any other way.  I've answered three

 7         different ways.  Can you be more specific?  Are you

 8         saying if there is a word where they said, you know,

 9         they suggested this word should not be this, but

10         like offered, you know, a different word for

11         something, and I ultimately accepted that word as an

12         example?

13      BY MR. MEADOWS:

14   Q    Exactly.

15   A    I'm sure there were -- there were instances like

16        that.

17   Q    Right.  Okay.  How many drafts went back and forth

18        between EconONE and the -- and the plaintiffs'

19        lawyers before the final report was signed?

20   A    A couple of drafts.  I don't recall the exact

21        number.

22   Q    And understanding that you can't recall the exact

23        number but does a couple mean two or three or four

24        or five?
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                    Page 62

```
 1                 MR. BLANKINSHIP: Objection.  Asked and

 2          answered.

 3                 THE WITNESS: I really can't exact --

 4          recall the exact number.  I -- I -- if I had to

 5          guess, it'd be like two, three, four, something like

 6          that.

 7      BY MR. MEADOWS:

 8      Q    All right.  Now, the report obviously has a number

 9           of different sections.  One of the sections of the

10           report, and in particular, I believe it is -- I'm

11           sorry.  Let me get myself oriented here.  Well,

12           really, the first section of the report, which is

13           styled Introduction, and then you've got a

14           subsection A, Parties to the Dispute, there you give

15           your understanding as to certain kind of basic facts

16           of the case, correct?

17      A    I'm sorry.

18                 MR. BLANKINSHIP: Object --

19                 THE WITNESS: Sorry.

20      BY MR. MEADOWS:

21      Q    Oh sure.

22      A    Can you point me to the specific point in the

23           testimony where I could --

24      Q    Yeah, I'm looking on pages 1 and 2.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                                Page 63

 1      A      Okay.

 2      Q      And you've got a section titled "Introduction."  And

 3             then -- and then below that is subsection A, Parties

 4             to the Dispute.  Are you with me?

 5      A      Yeah.  Yes, I am.

 6      Q      All right.  And there, in that section, you're

 7             giving your understanding as to certain kind of

 8             basic facts of the case; is that fair to say?

 9      A      That's fair to say.

10      Q      I want to focus your attention on paragraph 5 and

11             there in paragraph 5, you have some discussion about

12             Ira Brous, who was initially one of the named

13             plaintiffs in the case, correct?

14      A      Yeah.

15      Q      And you say, for example, when Mr. Brous enrolled

16             with Eligo, right?

17      A      Yeah.

18      Q      And then you say, in or around November 2023 and

19             again, this is in paragraph 5, it says, "In or

20             around November 2023, Mr. Brous's Eligo account was

21             canceled."  You see that?

22      A      Yeah.

23      Q      Can you tell me why that's phrased in passive voice?

24                  MR. BLANKINSHIP: Objection.  Vague.

Page 64

1          BY MR. MEADOWS:

2     Q    You know what "passive voice" means?

3     A    Yeah, I know.

4     Q    Yeah.

5     A    I don't really have -- don't have the answer for it.

6     Q    Don't -- you don't know?

7     A    No.

8     Q    And I -- I'm --

9     A    I use passive voice all the time.  I mean --

10    Q    Well, if you look -- I want to compare that to

11         paragraph 6, and you'll see in paragraph 6, you have

12         some discussion there related to the other named

13         plaintiff, Michelle Schuster, right?

14    A    Mm-hmm.

15    Q    And at the end of paragraph 6, you say, "In November

16         2023, Plaintiff Schuster canceled her Eligo

17         account," right?  So there you didn't choose to use

18         passive voice, right?

19    A    Yeah.

20    Q    Do you have any explanation for why, in paragraph 5,

21         you chose to describe Mr. Brous's cancellation with

22         passive voice and in -- and didn't do that in

23         paragraph 6?

24    A    Well, just different way to say the same thing.

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 65

```
 1     Q     Are you aware that Ira Brous himself never canceled

 2           his Eligo account?

 3                   MR. BLANKINSHIP: Objection.  Lack of

 4           foundation.  Misstates the record.  You can answer.

 5                   THE WITNESS: I -- this is a - 90 pages,

 6           just to give you the context.  I've reviewed a lot

 7           of documents.  Everything I relied upon is in one of

 8           my exhibits.  Facts like this, I just really cannot

 9           recall right now, so.

10        BY MR. MEADOWS:

11     Q     Okay.  So are you aware that what in fact happened

12           was that Mr. Brous's son called Eligo and

13           impersonated his father to cancel the account?  Are

14           you aware of that?

15                   MR. BLANKINSHIP: Objection.  Vague.

16           Mischaracterizing the record.  Lack of foundation.

17                   THE WITNESS: I don't believe I'm aware of

18           that.

19        BY MR. MEADOWS:

20     Q     In all your work on the case, no one ever told you

21           that?

22                   MR. BLANKINSHIP: Same objections.

23                   THE WITNESS: They might, I just -- I just

24           don't recall.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 66

```
 1        BY MR. MEADOWS:
 2     Q    Yeah.  Are you familiar with the name Ramsey Brous?
 3     A    Is that the son?
 4     Q    Yeah, it is.
 5     A    Like I said, I had worked with Burkett now for five
 6          months.  I couldn't recall his last name.  I really
 7          could not recall the name of the son of -- of the
 8          plaintiff.  It's just, that's unfortunately how my
 9          mind -- my mind works.  I'm not good with names.
10     Q    Sure, but did you read Ramsey Brous's deposition in
11          this case?
12     A    Is it -- is his deposition listed on -- on the
13          documents?  I -- I can't --
14     Q    I don't believe it is.  And --
15     A    Yeah.  Okay.  If it isn't, if -- if it's not, I have
16          not read his deposition.
17     Q    All right.  So is the -- what I want to get back to
18          you, and maybe you don't remember and that if you
19          don't, you'll tell me, this comparison we're making
20          of the passive voice in paragraph 5 versus the
21          active voice in paragraph 6, is that a change that
22          the plaintiffs' lawyers made to your draft report?
23     A    I -- I really don't recall nor I would -- nor I
24          would think so.  If you're alluding to the fact that
```

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 67

```
 1              that's like a change in the writing style, I -- I
 2              tend to do that quite often.  I mean, I'm not an
 3              attorney.  I -- I don't conscientiously pay
 4              attention to -- to that thing, and so I just really,
 5              I have no idea.
 6     Q        Okay.  And we'll do a few more questions.  I know
 7              we've been going about maybe a little over an hour,
 8              a few more, and then we'll take a break, if that's
 9              agreeable to you.
10     A        Sure.  Yeah.
11     Q        Going back to paragraph 5.  You know, you say here
12              that Mr. Brous enrolled with Eligo and was charged a
13              fixed rate for electricity from August 2017 until
14              January 2018, correct?
15     A        Correct.
16     Q        And then his account was canceled in November 2023,
17              right?
18     A        Correct.
19     Q        So Mr. Brous was a customer of Eligo for something
20              like six years; is that right?
21     A        Yeah.
22     Q        And I think you're aware -- well, let me ask it this
23              way.  Can we agree that based on your review of the
24              facts, Eligo allowed -- Eligo's terms of service
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 68

1            allowed customers to cancel at any time and for any
2            reason?
3                    MR. BLANKINSHIP: Objection.  Outside the
4            scope of his -- of his report.  You can answer.
5                    THE WITNESS: My general understanding of
6            that would be consistent with that.  Yeah.
7         BY MR. MEADOWS:
8      Q    So do you have any understanding as to why Mr. Brous
9            remained an Eligo customer for roughly six years?
10                   MR. BLANKINSHIP: Same objection.
11                   THE WITNESS: I cannot infer to his
12           reasons.  I could speculate, but I'm not here to
13           speculate.
14        BY MR. MEADOWS:
15     Q    Okay.  Is -- but is that something you ever inquired
16           about as to why he decided to remain an Eligo
17           customer for so long?
18                   MR. BLANKINSHIP: Same objection.
19                   THE WITNESS: No, I did not.
20        BY MR. MEADOWS:
21     Q    Do you know what Ira Brous did for a living, before
22           he unfortunately passed away?
23                   MR. BLANKINSHIP: Objection.  Outside the
24           scope of his expert report.

Page 69

```
 1                    THE WITNESS: No, I don't.  And -- and like
 2           these types of questions, I -- I -- for -- for -- in
 3           the context of the assignment that I was given, they
 4           did not seem to me, you know, extremely important.
 5           And -- and no.  So -- so I -- I don't think I have.
 6           I -- I don't recall, but it'd be plausible that I
 7           did not look into that level of detail.  Yeah.
 8      Q    Because you didn't think it was important to your
 9           opinions, right?
10                    MR. BLANKINSHIP: Same objection.
11                    THE WITNESS: I mean, why specifically he
12           decided -- based on some of the testimony.  This is
13           sort of my -- of -- of based on my recollection.  I
14           -- I recall seeing -- seeing evidence that, you
15           know, they realized -- I mean, let me -- let me say
16           it differently.  He's one of the leading plaintiffs.
17           According to the complaint, they were dissatisfied.
18                    They thought there were charged rates that
19           were inconsummerate (sic) and -- and not
20           commercially reasonable and -- and inconsistent with
21           what they thought they would be charged.  And when
22           they realized that they didn't want to take service
23           from Eligo anymore, they quit.  And so specifically,
24           what led to that, I don't know, but to me, it did
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 70

```
 1              not seem that relevant for the scope of the

 2              assignment that I was hired to do.

 3         BY MR. MEADOWS:

 4    Q    And the other one -- of the questions they asked you

 5              was if you knew what Mr. Brous did for a living

 6              before he passed away and --

 7    A    I -- I actually probably.  I probably did at the

 8              time.  I -- I really, I just don't remember.  I -- I

 9              don't.  I tend not to deal with a lot of stuff, and

10              I tend not, you know, not to remember things that

11              are not crucially important, not for -- yeah.

12    Q    All right.  Would it surprise you to learn that Mr.

13              Brous was an economics professor at a college?

14                   MR. BLANKINSHIP: Same objection.  Outside

15              the scope.

16                   THE WITNESS: No, it would not surprise me.

17         BY MR. MEADOWS:

18    Q    And one of the opinions that you express in your

19              report is that there's an information asymmetry

20              between Eligo and its customers, right?

21    A    Yes.

22    Q    And it's your view that Eligo was taking advantage

23              of that information asymmetry to overcharge its

24              customers, right?
```

Edo Macan                                  December 17, 2025
Brous v. Eligo Energy, LLC

Page 71

1    A    Yes.

2    Q    And do you -- do you think it was not relevant to

3         that opinion that one of the customers who happens

4         to be a named plaintiff in this case was actually a

5         professor of economics?

6    A    I don't think that really matters a lot because it -

7         - it's not a -- it's not a question of analytic

8         sophistication.  The -- the issue at hand is that

9         energy pricing is so obscure, even for a very

10        qualified and intelligent individual, like I'm sure

11        Plaintiff was, to figure out exactly what would be

12        the right price of energy.  It's a really hard task.

13   Q    Well, it wouldn't be hard to figure out what Eligo

14        was charging versus what the utility was charging at

15        any given time, would it?

16             MR. BLANKINSHIP: Objection.  Lack of

17        foundation.  Outside the scope of his report.

18             THE WITNESS: If one knew where to look for

19        utility rates and if the -- if the amounts involved

20        were substantive, for somebody probably earning a

21        good living to try to save a few bucks by checking

22        every month how much they're paying with the

23        electricity provider compared to how much they would

24        pay if they switched, yeah, this calculation could

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 72

```
 1              be done.
 2                       Based on everything I've seen in this case
 3              and, you know, based on general intuition and -- and
 4              sort of experience of these matters, I would -- I
 5              would assume that, you know, Dr.  -- Dr. Brous just
 6              like, it did not occur to him that he's being
 7              charged anything, but what he contractually signed
 8              up for.  It would be a logical presumption.  And it
 9              sounds like at some point, he realized that's not
10              the case and he quit.  It's as simple as that.
11         BY MR. MEADOWS:
12         Q    What do you mean, "it sounds like at some point he
13              realized that"?  Where did you hear that?
14                       MR. BLANKINSHIP: Objection.  Asked and --
15              objection.  Asked and answered.
16                       THE WITNESS: I didn't hear it anywhere.
17              But the fact that he was -- the fact that he decided
18              to be a lead plaintiff in a class action case is --
19              logically can mean that, you know, he was very much
20              dissatisfied with presumably the rates that he has
21              been charged by -- by Eligo.
22         BY MR. MEADOWS:
23         Q    Is there any evidence that you're relying on to say
24              that Mr. Brous, Mr. Ira Brous, decided to become a
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 73

```
 1              plaintiff in this case?

 2                   MR. BLANKINSHIP: Objection.  Outside the

 3              scope of his representation of his report.

 4                   THE WITNESS: I -- I -- if it was discussed

 5              at the outset of the case, if I have reviewed

 6              documents that are shedding more light on that, I --

 7              I honestly don't -- don't recall.  And again, the

 8              reason why I -- I tend to have a laser focus on

 9              what's my scope and what I'm here to do.  So I -- I

10              -- things like this, background things like this are

11              useful to me to put things in the context.

12                   Same, like, you know, the legal things are

13              use -- useful to me to understand for the context,

14              but I'm not -- I'm not a historian, I'm not an

15              attorney, and it -- it's context, and that's it.  I

16              think if you look at the scope of my description of

17              what I've been hired to opine on, you know,

18              questions like this seem to be completely unrelevant

19              (sic) in -- in terms of the scope that I've been

20              hired to do.

21         BY MR. MEADOWS:

22    Q     All right.  I want to go back to my question I asked

23              a moment ago about the utility rates.  You're aware

24              that in New York, utility rates, you -- a customer
```

Edo Macan                                 December 17, 2025
Brous v. Eligo Energy, LLC

Page 74

```
 1          can find the applicable utility rates just by going
 2          on the website of utilities where it's -- where it's
 3          disclosed, correct?
 4                    MR. BLANKINSHIP: Objection.  Lack of
 5          foundation.
 6                    THE WITNESS: I think that's the case.  I -
 7          - I don't know when that started.  I know that
 8          program, I think this might have been after the
 9          reset order because it used to be much more
10          difficult before.  I believe, again, based on
11          recollection that the Public Service Commission,
12          among a few other things that came up in the recent
13          order, basically mandated more transparency and that
14          the website that lists, you know, rates charged, you
15          know, are -- are available.
16                    I -- I'm sure, though, that they're still
17          probably not easy for some people to do because one
18          of the other experts in this case, Dr. Aron, was
19          unable to find utility rates for three out of five
20          utilities that she did her analysis on.
21                    And being in the same role as me in a
22          capacity of an expert witness and being unable to
23          find utility rates for three out of five New York
24          utilities gives some credibility to that, that I --
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 75

```
 1              I don't know how -- how easy it is.
 2         BY MR. MEADOWS:
 3         Q    Did you look into at all whether Mr. Brous, Ira
 4              Brous, was able to find the applicable utility rates
 5              from 2019 forward on the -- on the web?
 6                   MR. BLANKINSHIP: Objection.  Outside the
 7              scope of his report.
 8                   THE WITNESS: I don't recall.  I don't
 9              think so.  I don't recall.
10         BY MR. MEADOWS:
11         Q    And that wouldn't -- that issue wouldn't make any
12              difference to the opinions you've expressed here; is
13              that right?
14         A    Tell me the dates again.  Can you please repeat the
15              question?  Oh yeah.
16         Q    Because I think you mentioned the reset order that
17              came about in 2019, right?
18         A    Yeah.  Yeah.  Yeah.
19         Q    So I'm focusing on from the date of the reset order
20              forward, whether you have seen any information, one
21              way or the other, about whether Mr. Brous ever tried
22              to find the applicable utility rates online.
23         A    No, I don't think so.
24                   MR. BLANKINSHIP: Same objections.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                      Page 76

 1                    THE WITNESS: I don't think so.

 2          BY MR. MEADOWS:

 3     Q     And I take it that it wouldn't make any difference

 4           to your opinions one way or the other whether he

 5           looked for the utility rates over that time or not;

 6           is that right?

 7     A     No, I don't think it would make any difference to

 8           the -- to the methodology, to the -- to the work

 9           that I've done to speak in -- in most in -- in to

10           the scope of the work that I've done.  As a

11           practical matter, you know, if -- if he -- if they

12           switched earlier and everything else transpired the

13           way it did, it would certainly affect some of the

14           damage that I'm calculating at the end of the

15           report.  Because the -- the -- for him specifically,

16           the -- the period would be shorter.  But

17           methodologically, it wouldn't change anything.

18     Q     But for all you know, Mr. Brous may have been

19           perfectly aware of the utility rates and how they

20           compared to the Eligo rates over the seven years

21           that he was a customer of Eligo, right?

22                    MR. BLANKINSHIP: Objection.  Outside the

23           scope.

24                    THE WITNESS: But -- I'm sorry, you were

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 77

1          saying?  Can you please refer -- repeat the

2          question?  Yeah.

3     BY MR. MEADOWS:

4     Q    Yeah.  So you're not able to say one way or the

5          other whether Mr. Brous was aware of the utility

6          rate, and how it compared to his Eligo rate over the

7          entire, say, six years he was a customer, right?

8                    MR. BLANKINSHIP: Same objection.

9                    THE WITNESS: It doesn't seem logical

10         because, like, if somebody's ready, and this is just

11         conjecture, but, you know, it -- it stands to

12         economic reason, like if -- if somebody's, you know,

13         frustrated, if I may use the term, or certainly

14         motivated enough to -- to file to become a part of a

15         class action case because he feels that he's being

16         overcharged, then it's -- it's logical to presume

17         that that happened.

18                   Once they realized that they're being

19         overcharged, I could not imagine.  And it's a

20         conjecture that Dr. Brous would know, you know, that

21         he's being, in his view, grossly overcharged for --

22         for, you know, years and then only decided to take

23         action.  And to that degree, so, you know, later on,

24         I mean, it just -- it's -- that that's -- that's

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 78

```
 1              where I'm coming from.  That's the logical reasoning

 2              behind it.

 3         BY MR. MEADOWS:

 4     Q    Okay.  But in that logical reasoning chain, you

 5              don't -- you don't even know that Mr. Brous decided

 6              to become a plaintiff in a lawsuit, do you?

 7                   MR. BLANKINSHIP: Objection.  Asked and

 8              answered.  Lack of foundation.  Outside the scope.

 9         BY MR. MEADOWS:

10     Q    Because I'll represent to you that the record is and

11              the testimony by Mr. Brous's son is that Mr. Brous's

12              -- Ms. -- Ramsey Brous is the one who contacted the

13              plaintiffs' lawyers, not Ira Brous.

14                   MR. BLANKINSHIP: Objection.  Outside --

15              not only it is outside the scope, it lacks

16              foundation and misstates the record.

17                   THE WITNESS: I -- I -- yeah.  I -- I don't

18              recall those details.  Like -- like, I've -- like

19              I've said, the dealings, but that the -- the

20              mechanics of what the son did versus what they did,

21              I -- I just, I -- I don't recall those details.

22         BY MR. MEADOWS:

23     Q    Right.  But in your prior answer, you're the one who

24              brought up that it stands to reason that Mr. Brous
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 79

```
 1              was upset with Eligo because he decided to file the
 2              lawsuit.  But what if he didn't decide to file the
 3              lawsuit?  Then your chain of logical reasoning no
 4              longer applies, right?
 5      A       No.
 6                      MR. BLANKINSHIP: Objection.  Outside the
 7              scope.  Mischaracterizes the record.  Lack of
 8              foundation.
 9                      THE WITNESS: Yeah, I -- I don't think so.
10              I was -- let me -- let me clarify.  I was merely, I
11              was responding to the -- to the question that you
12              asked, which I interpreted as, it's possible that
13              Dr. Brous, you know, could have been checking the
14              utility rates and thus could have been aware that he
15              could save money by switching to utility or whatever
16              it is, and then that he didn't do anything about it.
17                      And I was just merely saying that it seems
18              highly unlikely, given that the individual, without
19              getting into the details, if it's him or his son,
20              but under the presumption that it's him acting,
21              would know that knowingly, overpay for years, and
22              then wake up one day and say, oh, this is
23              unacceptable, and I'm going to -- and I'm going to,
24              you know, become a part of a -- a law -- a class
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 80

```
 1           action suit.

 2                   And so I'm -- I did not opine on any of

 3           the mechanics of, like, how this really came about.

 4           I -- I just don't recall the details of the

 5           circumstantial stuff because, you know, I'm -- I'm

 6           sure I reviewed parts of it sort of initially, but I

 7           just, I -- I just really don't.  I'm sorry, I just

 8           don't - I just don't recall that.  Yeah.

 9      BY MR. MEADOWS:

10      Q    Yeah.  So you -- it's fair to say, you don't know

11           one way or the other why Ira Brous decided to remain

12           a customer of Eligo from 2017 to 2023, right?

13                   MR. BLANKINSHIP: Objection.  Asked and

14           answered.  Outside the scope.

15                   THE WITNESS: Am I -- am I saying this in

16           any shape and form anywhere in my testimony?

17           Because it sounds like you're asking me for

18           something that I have not really addressed, opined

19           on, and I just want to make sure if there's

20           something specifically in my testimony that you're

21           alluding to, I would like you to direct me to it.

22      BY MR. MEADOWS:

23      Q    I'm asking -- sure.  And I'm asking about paragraph

24           5, where you talk about Mr. Brous and the length of
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 81

```
 1            time that he was an Eligo customer.  And I just want
 2            to confirm, you don't know one way or the other why
 3            Mr. Brous decided to be -- to remain an Eligo
 4            customer from August 2017 until November 2023,
 5            correct?
 6      A     For --
 7                      MR. BLANKINSHIP: Same objections.
 8                      THE WITNESS: For a fact, I don't know
 9            either way, correct.
10         BY MR. MEADOWS:
11      Q     Right.  And so you cannot exclude the possibility
12            that Mr. Brous decided to remain a customer over
13            that time because he was perfectly satisfied with
14            Eligo's services, can you?
15                      MR. BLANKINSHIP: Same objections.
16                      THE WITNESS: No, I cannot exclude that
17            possibility.
18         BY MR. MEADOWS:
19      Q     Okay.  All right.  Let's take a brief break.  Since
20            we've been going over an hour.
21                      THE VIDEOGRAPHER: We are now going off the
22            record.  The time is 10:22 a.m.
23            (Whereupon, the parties go off the record.)
24                      THE VIDEOGRAPHER: We are now back on the
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 82

1          record.  The time is 10:34 a.m.

2      BY MR. MEADOWS:

3      Q     Mr. Macan, I want to go back to your report, Exhibit

4            1 to your deposition, and focus on paragraph 6 again

5            for a moment, which relates to Plaintiff Michelle

6            Schuster, right?

7      A     Mm-hmm.

8      Q     And as we talked about earlier, it says there that

9            Ms. Schuster enrolled with Eligo in October of 2016,

10           right?

11     A     Yes.

12     Q     And she terminated her account with Eligo in

13           November 2023, correct?

14     A     Yes.

15     Q     So she was an Eligo customer for right around seven

16           years, right?

17     A     Yes.

18     Q     And do you have any of your -- any understanding as

19           to why Ms. Schuster decided to terminate her Eligo

20           account?

21               MR. BLANKINSHIP: Just going to object.

22           It's outside the scope.

23               THE WITNESS: I -- I don't recall.

24       BY MR. MEADOWS:

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 83

```
 1    Q      Okay.  And are you aware that Ms. Schuster testified

 2            that before signing up with Eligo, she had been a

 3            customer of her local utility?

 4                    MR. BLANKINSHIP: I'm going to object to

 5            the extent that mischaracterizes the record.

 6                    THE WITNESS: I -- I don't recall.

 7                    MR. BLANKINSHIP: And it's outside the

 8            scope.

 9      BY MR. MEADOWS:

10    Q      Can you say your answer just so we have it on the

11            record?

12    A      I don't recall.

13    Q      Okay.  And Ms. Schuster, are you aware that she

14            lives in the Rochester, New York area?

15    A      I -- I believe so.

16    Q      And so she was -- if she were -- had been a customer

17            of the utility, her local utility was Rochester Gas

18            & Energy, RG&E, right?

19    A      I -- yes, I believe so.

20    Q      And over the seven-year period that Ms. Schuster was

21            a customer of Eligo, it certainly was possible for

22            her to have compared her Eligo rate to the

23            applicable RG&E rate at any given time, wasn't it?

24                    MR. BLANKINSHIP: Objection.  Asked and
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 84

 1           answered.  Outside the scope.

 2                    THE WITNESS: Similar reasoning, I guess,

 3           to what I provided for the other plaintiff.  It's

 4           possible, but given, you know, they ended up being

 5           plaintiffs in a class action suit against the

 6           company, I -- I would -- I can only conjecture that

 7           she did not do that because she would have dropped

 8           out sooner.

 9        BY MR. MEADOWS:

10    Q     So your, I think you used the word "conjecture," is

11           that Ms. Schuster didn't do the utility to Eligo

12           comparison.  If she had, she would have terminated

13           earlier than she did.

14                    MR. BLANKINSHIP: Same objections.

15                    THE WITNESS: I'm saying I can only

16           speculate.

17        BY MR. MEADOWS:

18    Q     Yeah.

19    A     I -- I don't know for a fact.  It's possible that

20           she looked at it, that she didn't know it.  I mean,

21           I -- I have -- I don't -- I don't know.  Yeah.  I

22           don't --

23    Q     Certainly, you would agree with me that there's

24           nothing Eligo could have done to hide the applicable

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 85

```
 1            utility rate from its customers, right?
 2                    MR. BLANKINSHIP: Objection.  Outside the
 3            scope.  Lack of foundation.
 4                    THE WITNESS: I -- I cannot opine on what
 5            Eligo -- or Eligo -- you're saying that utility or
 6            the Eligo or can you please repeat?  Sorry.  I --
 7            yeah.
 8        BY MR. MEADOWS:
 9     Q    Sure.  Eligo doesn't have any control over whether
10            the utility -- over whether and how the utilities
11            advertise their rates for electricity, does it?
12                    MR. BLANKINSHIP: Objection.  Lack of
13            foundation and scope.
14        BY MR. MEADOWS:
15     Q    I'm going to need your answer again.  Yeah.
16     A    I understand.  I -- I -- they -- they don't.  I
17            don't think so.
18     Q    All right.  And so there's nothing Eligo can do for,
19            let's say, for example, with RG&E, to stop RG&E from
20            putting in applicable electricity rates on its
21            website, right?
22                    MR. BLANKINSHIP: Same objections.
23                    THE WITNESS: I don't think so.
24        BY MR. MEADOWS:
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 86

```
 1    Q      And there's nothing Eligo can do to stop its

 2           customers from comparing the applicable utility

 3           rates to the rates that Eligo is charging, is there?

 4                   MR. BLANKINSHIP: Same objections.

 5                   THE WITNESS: They cannot stop anyone from

 6           comparing, but, you know, they could certainly make

 7           it -- make it easier for the customers.  I mean, I

 8           could see an ESCO who tries to -- tries to do what,

 9           you know, tries to basically undercut the cost of

10           utility, want to emphasize the fact that their rates

11           are, you know, beating utility rates on -- on some

12           metric.  And -- and I -- I'm -- I don't think Eligo

13           has ever not only attempted to do that from all the

14           evidence that I have seen that it just wasn't even

15           considered at any given point.

16                   So to answer your question succinctly, no,

17           they cannot, Eligo cannot prevent customers from

18           comparing rates.  But they sure did not, based on

19           everything I've seen, made it very clear for

20           customers to do that in the form of, this month,

21           you're saving X.  Last month, you saved Y.  You

22           know, they did get the charge.  Customers had the

23           ability to quit.  But yeah.

24        BY MR. MEADOWS:
```

Edo Macan                         December 17, 2025
Brous v. Eligo Energy, LLC

Page 87

```
 1    Q      Now, the way it works in New York, is even for a
 2           customer who decides to enroll with Eligo, they
 3           still get their monthly electric bill from the
 4           utility, correct?
 5    A      Correct.
 6    Q      So Eligo doesn't send the -- send its customers any
 7           bills directly, right?
 8    A      That's --
 9                  MR. BLANKINSHIP: Objection.  Outside the
10           scope.
11                  THE WITNESS: That's my understanding.
12       BY MR. MEADOWS:
13    Q      Right.  And so Eligo, therefore, doesn't have any
14           control over what those monthly invoices say or
15           don't say, right?
16                  MR. BLANKINSHIP: Same objections.
17                  THE WITNESS: True.  But they could -- they
18           could send -- I'm not saying they need to send that.
19           I'm -- I'm saying, again, this is outside of the
20           scope of what I was hired to do but you're asking me
21           for an opinion, I'm going -- I'm going to offer you
22           one.  If ESCO wanted to serve its, one of its
23           purposes, which is, you know, utilities are clumsy,
24           slow, inefficient, and -- and, you know, it's
```

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

                                                              Page 88

 1              possible to buy power and, you know, achieve costs

 2              for our customers, you know, they surely had freedom

 3              to document that and use it as promotion to acquire

 4              more customers.  And so it doesn't need to be in a

 5              utility bill; it can be in a marketing pamphlet or

 6              something like that.  That's what I meant.

 7        BY MR. MEADOWS:

 8    Q   All right.  I want to direct your attention to

 9        paragraph 86 of your report, which is on page 40.

10    A   Let me just -- do you mind if I just take a quick

11        second to read through it?

12    Q   Yeah, of course.  Go ahead.

13    A   Okay.

14    Q   All right.  So at the beginning of that paragraph

15        86, you write, "Eligo admits that it made no effort

16        to ensure that its variable rates were set according

17        to the variable price term in the New York Terms of

18        Service."  Do you see that?

19    A   Yeah.

20    Q   And then after the following sentence, you cite as

21        support a reference to the deposition of Andy

22        LaPointe; you see that?

23    A   Yeah.

24    Q   Now, in cases like this where you are citing

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 89

1          deposition testimony as, you know, support for an

2          assertion in the opinion, who -- who's the person

3          who kind of found the supporting citations and put

4          them in there?

5     A    I -- I cannot recall in this particular one, but

6          typically, the way the process would work is I -- I

7          would -- let me -- let me just give you a -- just

8          read this for a second.  I -- I -- like, I've read

9          testimonies that -- that -- my counsel provided all

10         the documents I listed that I can rely upon.  They

11         gave me a general overview of -- of who's what and -

12         - and suggestions to -- to, sort of, you know,

13         review the specific testimonies.

14              And so I read through a bunch of stuff.  I

15         flagged what seemed sort of interesting to me in

16         typical -- in -- in some cases, and in some other

17         cases, I would -- yeah.  I -- I just -- on this

18         particular one, I honestly don't remember if this

19         was -- I read it and then I quoted exactly what I

20         read.  Or this was the.  I -- I don't -- I don't

21         really recall.  Yeah.  I -- I don't recall the

22         mechanics of it.

23    Q    Okay.  Well, I mean, you mentioned one possibility.

24         Is it -- it could be that you read this part of Mr.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 90

```
 1            LaPointe's deposition and put that quotation there?
 2   A    Oh, I read it for sure.  I read it for sure.
 3   Q    Oh.  All right.
 4   A    I just don't know -- I just don't know if in the
 5        course of sort of discussion about something,
 6        whether, you know, I'm giving you a loose sort of
 7        interpretation.  I might have said, okay.  You know,
 8        in the complaint, I read in the complaint that, you
 9        know, this, this, and that.  Can you please point me
10        to the documents that, you know, led the counsel to
11        write specific language in the complaint?
12   Q    Right.
13   A    And then they would say, okay.  These pages, this
14        document, read through it.  And then I would read
15        through it, and -- and it would kind of, it would
16        add color.  And -- and so, specific, at the very
17        end, you know, as I was crafting the argument in
18        this particular case or my opinion, that little
19        tidbit seemed relevant, and, you know, I pointed it
20        out and -- and that's there -- that's where the, you
21        know, that's how it ended up there.  So
22        specifically, whether, you know, I asked the counsel
23        at the time for that, or I -- I just don't recall on
24        this particular instance --
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 91

```
 1      Q     All right.

 2      A     -- describing generally how the process works.

 3            Usually, like, if somebody does something for me,

 4            I'm -- I'm giving directions what I'm looking for.

 5            And I'm -- unless I'm convinced, I will not put

 6            anything in my testimony that I'm not a hundred

 7            percent convinced to be the case.

 8      Q     Okay.  So this first sentence in paragraph 86,

 9            "Eligo admits that it made no effort to ensure that

10            its variable rates were set according to the

11            variable price term in the New York Terms of

12            Service."  I take it you were convinced that that's

13            an accurate statement, right?

14                      MR. BLANKINSHIP: Objection.

15            Mischaracterizes testimony.  Lack of foundation.

16                      THE WITNESS: Can you please rephrase the

17            question?  I -- I'm -- I'm --

18        BY MR. MEADOWS:

19      Q     Let me -- is that first sentence of paragraph 86 --

20      A     Yeah.

21      Q     -- that I just read into the record, do you believe

22            that's an accurate statement?

23      A     No, I don't think it's an inaccurate statement.  I

24            don't think.
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 92

1     Q     I'm sorry.  Either I misspoke or you misheard me.

2     A     Okay.

3     Q     Do you believe that that first sentence of paragraph

4           86 is an accurate statement?

5     A     Yes, I believe this is an accurate statement.

6     Q     All right.  I'm glad we got that clarified.  And you

7           further believe that your citation to Mr. LaPointe's

8           deposition, in particular to pages 22 and 23, 33 and

9           34, is supportive of the accuracy of that first

10          sentence in paragraph 86, right.

11    A     Let me -- let me just read it again, and I -- I will

12          tell you what I think and why.  Yeah.  I -- I think,

13          I -- I cannot -- I cannot say definitively -- I --

14          let me -- let me take a step back.  The -- the -- it

15          doesn't -- the way that I wrote this paragraph, the

16          intention is not only whether this particular

17          sentence supports the claim made in the -- in the

18          first sentence.

19                The -- the claim is made, I believe it to

20          be true and the rest of this paragraph are -- is

21          basically anecdotal evidence that had led me to

22          believe why this -- why the statement that I have

23          made is a -- a fair assessment of -- of the

24          situation in -- in a sense that Eligo admitted,

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 93

```
 1              through various things quoted here, that it really
 2              did not made effort -- any effort to ensure that
 3              variable rates were set according to the variable
 4              price term in New York Terms of Service.  And I --
 5              and I say that because it looks like the people that
 6              were key and involved in -- in setting the rates and
 7              creating the rates just did not either have
 8              knowledge of the contractual language, went on
 9              record to say that contractual language was not an
10              input to Groove or the price setting processes, and
11              so on and so forth.
12                   And so it just -- I, you know, one -- I
13              guess what I'm saying is one -- one quotation to
14              what Mr. LaPointe said cannot be, you know, taken
15              out of context in -- in the spirit of the -- the way
16              this whole paragraph has been written.
17      Q       Well, you quote a small portion of his testimony,
18              right?
19      A       Mm-hmm.
20      Q       In the second sentence of paragraph 86, right?
21      A       Mm-hmm.
22      Q       Do you think that that quotation is taken out of
23              context in any way?
24      A       I don't -- I don't think so.  I mean, I -- I don't
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 94

```
 1              think so --

 2      Q      All right.  Aren't --

 3      A      Can you -- can I ask you, like, do you have a --

 4      Q      We'll look at it in a minute.  Yeah.

 5      A      Okay.  Okay.

 6      Q      But aren't you aware, having written and issued this

 7              report, Mr. Macan, that in the paragraph that

 8              follows that quoted portion of his testimony, Mr.

 9              LaPointe testified that changes to the rate setting

10              methodology were run by the legal department to

11              ensure compliance with the contract.

12                      MR. BLANKINSHIP: Objection.

13              Mischaracterizes his testimony.

14                      THE WITNESS: Am I --

15                      MR. BLANKINSHIP: Lack of foundation.

16        BY MR. MEADOWS:

17      Q      Are you aware of that?

18                      MR. BLANKINSHIP: Same objections.

19                      THE WITNESS: I -- I -- yes, and I believe

20              I say that in the -- in the -- in my -- in my

21              report.

22        BY MR. MEADOWS:

23      Q      You do?  I mean, because the first sentence of

24              paragraph 86 says, "Eligo admits that it made no
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                          Page 95

1           effort to ensure that its variable rates were set

2           according to the variable price term in the New York

3           Terms of Service."  That's a pretty blanket

4           statement, right?  No effort means none.

5      A    You -- Counsel, I think you're -- let me -- let me

6           read this again.  I mean, I -- I don't want to, I

7           didn't want to waste time, and I wanted to read it

8           again.  But from -- from my understanding of the

9           process, how the process went, you know, the rates

10          were, and there is a whole section in my report on

11          it coming up with the first draft -- that the --

12          that the rates were -- the rates were sort of set at

13          some level.  They were run by the legal department.

14                 They also had a policy of never lower the

15          rates.  They would, you know, run -- run the -- run

16          Groove, you know, on the -- on the sort of last

17          month's rates to see if they would be profitable.

18          If there was room to increase, they would sort of

19          increase.  People who were actually involved in

20          setting these rates knew nothing about the, you

21          know, contractual language.  And so, you know, this

22          was not, there was no, to put it sort of bluntly, I

23          mean, there wasn't anything in the -- in the Groove

24          program that they basically said, you know, we

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                      Page 96

 1          interpret the contract this way and, you know, cap

 2          the rates here.

 3                  You know, if the price dropped or

 4          something, there wasn't anything the Groove program,

 5          that would say, oh, from the last month to this

 6          month, procurement cost went down 50 percent.  Let's

 7          drop the suggested rate by 50 percent or something

 8          according to that.  It was just -- it -- it seemed

 9          fairly arbitrary.  And so I -- I just, I'm not done.

10          So I -- I want to be very clear, if some, I -- I you

11          know, from what I've seen, like, I did not get an

12          impression that ultimately, you know, this all gets

13          paper-stamped by -- by people in charge, and who

14          deem that that's, you know, consistent with the

15          contract.

16                  If that's what they thought, if they

17          thought that they were consistent with their

18          contractual obligations, and I'm saying the -- Mr.

19          LaPointe and -- and whoever else was serving

20          compliance with that, I'm not an attorney, that's

21          their opinion, but I've been asked to opine on

22          reasonableness on -- on rates under a different

23          legal interpretation, and that's it.

24      Q    And so Mr. Macan, in that very long previous answer,

Edo Macan                         December 17, 2025
Brous v. Eligo Energy, LLC

Page 97

```
 1            I think one of the things you said was you
 2       acknowledged that Eligo ran changes to the rate
 3       setting methodology by its legal department; is that
 4       right?
 5                  MR. BLANKINSHIP: Objection.
 6       Mischaracterizes testimony.
 7                  THE WITNESS: I -- I recall speaking, I --
 8       if -- if you allow me time, I can search through my
 9       -- through my report.  There's an instance in my
10       report where I say I -- I'm speaking based on
11       memory.  I do remember that there -- there's -- that
12       -- that it might be easier than me trying to
13       conjecture, just to spend a couple of minutes to try
14       to find specifically what I'm referring to if you
15       want to, if -- if you want to do that.
16       BY MR. MEADOWS:
17  Q    Right now, I'm just asking, from your recollection,
18       as a person who's written this report --
19  A    Yeah.  Yeah.
20  Q    -- are you aware that Eligo did in fact run its rate
21       setting methodology by the legal department to
22       ensure compliance with the customer contract?
23                  MR. BLANKINSHIP: Objection.  Lack of
24       foundation.  Misrepresents the record.  You can
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 98

```
 1              answer.
 2                      THE WITNESS: I -- in some shape and form,
 3              I -- based on recollection, I think that was the
 4              case, yes.
 5          BY MR. MEADOWS:
 6      Q    So that -- would you agree with me that that act
 7              running the rate setting methodology by the legal
 8              department to ensure compliance with the contract is
 9              an effort to ensure that the variable rates are
10              calculated in accordance with the variable price
11              term.
12                      MR. BLANKINSHIP: Same objections.
13                      THE WITNESS: I -- again, I don't know
14              about the process, but I'm just explaining my
15              reasoning, and I -- I don't think so.  And the
16              reason why, because ultimately, if the people who
17              end up setting the rates are completely unaware of
18              it, it doesn't look like it's being taken into
19              account.  And in the context of everything I've
20              written in this report, that, I mean, I can give you
21              many examples, that doesn't seem to be the case.
22                      So to put it really bluntly, you're
23              saying, am I aware that there is a communication,
24              you know, going from the people setting the rates to
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 99

1          the -- to the, you know, chief legal counsel or

2          somebody else?

3                    Yes, I -- I remember that.  I -- I don't

4          remember the details, but altogether, reading, based

5          on everything I've read, it -- it looked like I was

6          under the impression that, you know, the -- that the

7          -- that that senior staff or -- or compliance people

8          were under the, you know, either under the

9          impression that they were -- that they could charge

10         whatever they want, and that the people coming up

11         and actually the -- you know, calculating the actual

12         rates did not even know about any of it, and

13         therefore they behaved.

14                   If -- if there is no contractual language

15         in the contract clearly stating that the rates will

16         be calculated monthly in response to X, Y and Z,

17         that's where I'm -- that -- that -- that's why I'm -

18         - you know.

19     BY MR. MEADOWS:

20     Q     Okay.  But the first sentence of paragraph 86

21         doesn't make reference to the people who are

22         calculating the rate specifically.  It says, "Eligo

23         admits that it made no effort to ensure that its

24         variable rates were set according to the variable

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 100

1          price term."  But you're aware, despite putting that

2          in the report, as I understand your testimony, you

3          are aware that the variable price calculation

4          methodology was run by the Eligo legal department,

5          correct?

6                    MR. BLANKINSHIP: Objection.

7          Mischaracterizes the testimony.  Asked and answered.

8                    THE WITNESS: Yeah.  I think -- I think

9          this is really mischaracterizing what I'm trying to

10         say.  I -- I can -- I can answer with a joke if you

11         -- if you allow me so.  Yeah.

12     BY MR. MEADOWS:

13     Q    No, no, no.  I would -- I -- you're giving very

14         lengthy answers.  I'm -- I think this is a simple

15         issue as to the accuracy of this first sentence of

16         paragraph 86.  Isn't it true that Eligo, by running

17         its variable price setting methodology by the legal

18         department to ensure compliance with the contract,

19         isn't that what Eligo did?  You're aware of that,

20         right?

21                   MR. BLANKINSHIP: Objection.

22         Mischaracterizes the record.  Asked and answered.

23                   THE WITNESS: I said -- yeah, I mean, I --

24         I don't know how -- I don't know how else to say it.

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 101

```
 1              I said, based on my recollection, I recall reading
 2              about -- in the process of how the variable rates
 3              were set, I believe I discussed details of it.
 4              Maybe I should just waste time and -- and look at it
 5              later in the report.
 6         BY MR. MEADOWS:
 7    Q    No, no, no.  We'll -- I'm not asking you to waste
 8              any time.
 9    A    I mean, yeah, that -- I don't want to waste your
10              time.  That's why I'm giving you the answer.  I -- I
11              recall that the -- the sentence is made for the
12              simple reason.
13                   If -- if first draft rates or whatever
14              rates are run by the legal department, they say, you
15              know, it's fine or whatnot, and the people actually
16              setting the rates, set rates, you know, completely
17              without taking into account any of the contractual
18              language, then I don't really see this, you know,
19              this sort of as an -- as an effort to, according --
20              how can someone say that variable rates were set
21              according to the variable price term if people
22              setting the rates don't even know what the variable
23              price term is, nor variable price term or any
24              elements of it are input to the Groove model that
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 102

 1          they're using to set the rates?  That's -- that's

 2          what I'm saying.

 3      Q    Eligo's legal department knew what the contract

 4          said, didn't it?

 5                    MR. BLANKINSHIP: Objection.  Lack of

 6          foundation.

 7                    THE WITNESS: I -- I don't know what they

 8          knew or what they didn't know.

 9      BY MR. MEADOWS:

10      Q    You don't know one way or the other, but you do know

11          that the -- that the variable price methodology was

12          run by the legal department, right?

13                    MR. BLANKINSHIP: Objection.  Lack of

14          foundation.  Misstates the record.

15                    THE WITNESS: I'm saying, based on

16          recollection of reading a ton of documents in here,

17          I remember there was a -- that there was some

18          communication on initial rates that were set.  You

19          know, let -- let me just look at the -- let me just

20          look at the report later on when I'm discussing the,

21          you know, first rate, how the process is set, I -- I

22          -- you know, I might have mentioned it at that point

23          in the testimony.

24      BY MR. MEADOWS:

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 103

```
 1      Q      Well, let's do it this way.  I wanted to --
 2      A      Yeah.
 3                    MR. MEADOWS: Let's mark this as Exhibit 2
 4             and I'll represent to you that this will -- oh, I'm
 5             sorry.
 6                    THE COURT REPORTER: Sorry.
 7                    MR. MEADOWS: No, my bad.  Okay.  My
 8             apologies.
 9             (Whereupon, Ex. 2 Deposition Excerpt, LaPointe, pgs.
10             20-35, is marked for identification.)
11        BY MR. MEADOWS:
12      Q      So I'll represent to you that Exhibit 2 is a series
13             of excerpts from Mr. LaPointe's deposition
14             transcript.
15                    MR. BLANKINSHIP: Can we just say what
16             those are for the record?
17                    MR. MEADOWS: Pages 21 --
18                    MR. BLANKINSHIP: I think it starts at 20.
19                    MR. MEADOWS: My copy has the page.
20                    THE WITNESS: Yeah.
21                    MR. MEADOWS: Oh, it does?  Okay.  Mine
22             starts at 21.  Where does yours start?
23                    THE WITNESS: Twenty.
24                    MR. MEADOWS: Twenty.  Okay.  So it starts
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 104

```
 1          at 20, and I believe, I -- hopefully, they're all

 2          the same, that it runs through 34?

 3                    MR. BLANKINSHIP: I have 35.

 4                    MR. MEADOWS: Okay.

 5                    MR. BLANKINSHIP: But 35 is in the back

 6          page.

 7                    MR. MEADOWS: Okay.

 8                    THE WITNESS: Yeah.

 9                    MR. MEADOWS: Maybe on my copy they got cut

10          off.  Where does it run on yours?  Did you -- you

11          have the exhibit.

12                    THE WITNESS: Twenty-three -- thirty-five.

13          It's just the back page is 35.

14                    MR. MEADOWS: Not on mine.  But anyway, if

15          that's what yours is --

16                    THE WITNESS: Oh okay.  Yeah.  Yeah.

17                    MR. MEADOWS: -- then that's what the

18          exhibit is.

19                    THE WITNESS: Okay.

20      BY MR. MEADOWS:

21      Q    All right.  Now going back briefly to paragraph 86

22          of the report, we talked about how you cite Mr.

23          LaPointe's testimony, and you see that you make a

24          specific citation to page 22, lines 2 to 23, right?
```

Edo Macan                               December 17, 2025
Brous v. Eligo Energy, LLC

Page 105

| | | |
|---|---|---|
| 1 | A | Yeah. |
| 2 | Q | And then carrying over onto page 23. |
| 3 | A | Yeah.  Let me just read it.  Okay. |
| 4 | Q | All right.  So starting on page 22 of the deposition |
| 5 | | | of Exhibit 2, I should say, you see at the top of |
| 6 | | | that page, the question that Mr. LaPointe is asked |
| 7 | | | by plaintiffs' counsel is, and I quote, "So my |
| 8 | | | question is, when Eligo set variable rates, what did |
| 9 | | | it do to ensure that the variable rates it set |
| 10 | | | complied with those variable rate pricing terms in |
| 11 | | | the contracts," right? |
| 12 | A | Mm-hmm. |
| 13 | Q | And this is -- this is the answer, the question and |
| 14 | | | answer that you are citing in your report, right? |
| 15 | A | Yeah.  Yeah. |
| 16 | Q | And the part of the answer that -- of his answer |
| 17 | | | that you quote is limited to when he said that they |
| 18 | | | met with the software developers whenever there's a |
| 19 | | | change in anything that we're doing, right? |
| 20 | A | Yeah. |
| 21 | Q | But what he said right after that, start -- in lines |
| 22 | | | 15 through 19, I'm going to quote again, and then |
| 23 | | | it's up to the legal department to analyze the |
| 24 | | | change and say, Okay.  This is still compliant with |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 106

```
 1           the contract, or no, this causes us to rewrite the
 2           contract.  You see that, right?
 3      A    Mm-hmm.
 4      Q    Do you have any reason to believe that Mr. LaPointe
 5           wasn't accurately describing the variable rate
 6           setting process when he said that?
 7      A    No, I don't.  Not at all.
 8      Q    And you chose not to quote or -- that part of his
 9           answer in your report, right?
10      A    Yeah.  I -- I certainly did not quote his reply in -
11           - in my report, yes.  Yeah.
12      Q    And you would agree with me that what Mr. LaPointe
13           describes here in his deposition on page 22, lines
14           15 through 19, that it's up to the legal department
15           to analyze the change and say, this is still
16           compliant with the contract or no, this causes us to
17           rewrite the contract, that process is an effort to
18           ensure that the variable rate setting methodology
19           complies with the contract language as Eligo
20           understood it, correct?
21                MR. BLANKINSHIP: Objection.  Asked and
22           answered.
23                THE WITNESS: Again.  Yeah, it's - it's --
24           I -- I don't really know -- I don't really know what
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 107

1          this entails means or encompasses.  I -- I can --
2      BY MR. MEADOWS:
3      Q     What part of it is --
4               MR. BLANKINSHIP: Hold on.  He's not
5          finished with his answer yet.
6      BY MR. MEADOWS:
7      Q     What part of it is confusing to you?
8               MR. BLANKINSHIP: He is not finished with
9          his answer yet.  Go ahead.
10              THE WITNESS: Like the -- the reasoning, I
11         -- as I explained before, is the -- that the -- that
12         the way the process is described, things are run by
13         the legal department, and the legal department
14         ensures compliance.  And so then it goes back to the
15         people who are actually setting the rates and -- and
16         the rates are set, and there's nothing in the rate
17         setting process that, you know, seems to take into
18         account the -- the terms of service and contractual
19         terms specified in the contract.  And so that's one
20         piece of information.
21              The second piece of information, and I
22         would -- I'm going to have to look through my report
23         -- is that, I think if I'm correct, there is only,
24         like, in 2019 or 2020, where Eligo actually changed

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 108

1            the -- the terms of service, they changed the terms

2            of service.  That allowed them now contractually

3            much more discretion to set rates, but the

4            underlying process of -- of setting those rates did

5            not change at all.  And so, you're -- you're

6            pressing me on -- on a single sentence in a

7            paragraph that I wrote, allegedly trying to

8            demonstrate any inconsistency or my impartiality in

9            describing the testimony that I read, which I think

10           it's unfair and certainly not in the spirit that I

11           wrote.

12                   I'm merely stating that if you have a

13           process that ultimately does not lead to anything or

14           leads to a single change, if my facts are correct,

15           to the -- to the terms of service, then, you know, I

16           would not qualify this as a process where, you know,

17           variable rates are, you know, set according to the -

18           - the pricing term, or that indeed, Eligo's legal

19           department believed, truly believed, that they had

20           contractual freedom to charge -- to did what they

21           did and to charge what they wanted.  That is what

22           I'm saying.

23        BY MR. MEADOWS:

24        Q    Is running the variable rate setting methodology by

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 109

```
 1          the legal department an effort to ensure that the

 2          rates comply with the contract?  Yes or no?

 3                   MR. BLANKINSHIP: Objection.  Asked and

 4          answered.

 5                   THE WITNESS: And I -- I still have to

 6          answer, you could -- you could say, on behalf of the

 7          people, the -- the -- that the people setting the

 8          rates or whoever is, I -- I don't know.  I just

 9          don't know about who does what, but whoever is

10          sending those initial rates to the legal department,

11          if that's how the process works, you could say that

12          those particular people are making an effort because

13          they're following their due diligence.

14                   But if -- my point to be was that if

15          ultimately nothing comes out of it, and I -- I

16          believe, again, speaking on recollection, I -- I

17          really would like to take my time and -- and, you

18          know, reread the section, you know, you have other -

19          - other, you know, employees that are sort of

20          testifying to things that are sort of contrary to

21          that.

22                   My -- my general -- my general feeling and

23          comprehension and understanding of the process, once

24          you sum all these anecdotal evidence into -- into
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 110

```
 1            account, is that Eligo really behaved as they had a

 2            contractual freedom to charge what they want.

 3            That's the -- that's the gist of what I'm saying.

 4        BY MR. MEADOWS:

 5    Q    Where does Eligo admit that it made no effort to

 6            ensure that its variable rates were set according to

 7            the variable price term?  You're talking about an

 8            admission and you're citing Mr. LaPointe's

 9            testimony.  Where does he admit that the company

10            made no effort?

11                    MR. BLANKINSHIP: Objection.  Asked and

12            answered.  Argumentative.

13                    THE WITNESS: Yeah.  I -- I really don't.

14            I've tried answering your question like 10 different

15            times, 10 different ways.  I -- I really don't --

16            don't have another way to say this and respond to

17            you other than the last five responses that I've

18            given you on -- on this particular question.

19        BY MR. MEADOWS:

20    Q    And you're going to stand by the accuracy of the

21            first sentence of paragraph 86?

22    A    In the spirit of what they did, yes.

23    Q    What does that mean, "in the spirit of what they

24            did"?  I'm asking you about the accuracy of a
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 111

1        sentence that you wrote in a report that you signed.

2        Is that -- is that sentence accurate or is it not

3        accurate?

4                    MR. BLANKINSHIP: Objection.  Asked and

5        answered.  Argumentative.

6                    THE WITNESS: I believe it's -- I believe

7        it's accurate.

8    BY MR. MEADOWS:

9    Q    And Mr. LaPointe's testimony that it's up to the

10       legal department to analyze the change and say, this

11       is -- okay.  This is still compliant with the

12       contract, or no, this caused us to rewrite the

13       contract.  You don't regard that testimony as at all

14       inconsistent with the first sentence of paragraph

15       86; is that right?

16                   MR. BLANKINSHIP: Objection.  Asked and

17       answered.

18                   THE WITNESS: Like I said, I'm -- I'm not

19       going to conjecture on taking a single sentence out

20       of the context of -- of pages and pages here.  In

21       fact, I would like to take my time and -- and read

22       this.  And if you insist on line of questioning on

23       this particular thing, I -- I really would want to

24       read the whole section and then maybe give you yet,

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 112

1              you know, one more elaborate answer on -- on what

2              you're asking.  You're -- you're taking one

3              sentence, the way it's written, completely out of

4              context.

5          BY MR. MEADOWS:

6      Q    Which sentence am I taking completely out of

7              context?

8      A    The first one.  Eligo admits that there's no -- that

9              it made no effort to ensure that its variable rates

10             were set according to the variable price terms in

11             New York's Terms of Service.  And -- and look, just

12             read through the rest of the paragraph.  I don't

13             even need to waste your time.

14     Q    There's no -- there's no question pending, I think

15             you answered the prior question.  By the way, do you

16             know what position Mr. LaPointe had with Eligo or

17             has with Eligo?

18     A    I did, and I don't recall.

19     Q    He's Chief of Compliance, right?

20     A    Yeah.

21     Q    So to your knowledge, was there anybody at Eligo

22             better positioned to talk about what the process was

23             of setting variable rates and ensuring compliance

24             with the contract?

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 113

```
 1    A     No, it sounds like he's the guy to talk to if he's

 2          the Chief of Compliance.

 3    Q     And you have, again, you have no reason to -- you

 4          don't have any reason to dispute his testimony that

 5          changes to the rate setting methodology were run by

 6          the legal department to ensure compliance with the

 7          contract, do you?

 8                    MR. BLANKINSHIP: Objection.  Asked and

 9          answered.

10                    THE WITNESS: Dispute his testimony in the

11          specific pages you pointed me to?

12      BY MR. MEADOWS:

13    Q     Right.

14    A     I -- I -- I'm taking them as given.

15    Q     Okay.  You also reviewed the testimony of Ken

16          Pedotto, correct?

17    A     Yes.

18                    MR. MEADOWS: We can mark that as 3 please.

19                    THE COURT REPORTER: Mm-hmm.

20          (Whereupon, Ex. 3 Deposition Excerpt, Pedotto, pgs.

21          99-104, is marked for identification.)

22      BY MR. MEADOWS:

23    Q     And you're aware that Mr. Pedotto was for a time,

24          the Chief Executive Officer of Eligo, right?
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 114

```
 1   A     Again, bad with names, bad with titles, but yeah, it
 2         sounds -- sounds right.
 3   Q     All right.  And you've been handed Exhibit 3 to your
 4         deposition, which is an excerpt of pages from Mr.
 5         Pedotto's deposition transcript, which I believe,
 6         correct me if I'm wrong, are 99 through 104.
 7                 MR. BLANKINSHIP: We have 98 to 103.
 8                 MR. MEADOWS: Okay.  Ninety-eight, one-oh -
 9         -
10                 THE COURT REPORTER: No.  He has 99 through
11         104.
12                 MR. MEADOWS: Apologize for the --
13                 THE WITNESS: Ninety-nine through 104.
14                 MR. MEADOWS: All right.  Sorry for the --
15                 THE WITNESS: Okay.
16                 MR. MEADOWS: -- differences there.
17        BY MR. MEADOWS:
18   Q     And if I can call your attention to page 101.
19   A     Let me just -- let me just take a second to read
20         through what it is.
21   Q     Okay.  Mr. Macan, have you had a chance to review
22         this now?
23   A     Yeah, I just did.  I -- I just did.  Yeah.
24   Q     All right.  I want to focus your attention on the
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 115

```
 1              testimony on page 101.  And just for context, you

 2              see in line 12, the question is asked of Mr.

 3              Pedotto, "Is it fair to say that according to the

 4              Slack message exchange, you are contributing to the

 5              process of setting min rates and max rates for

 6              variable rate customers?"  You see that?

 7      A       Mm-hmm.

 8      Q       So the rate setting process is being referred to

 9              there, right?

10      A       Yeah.

11      Q       And the following question, beginning on page 17

12              says -- I'm sorry -- line 17 says, "And after this

13              process, there is one more step where Legal reviews

14              and makes sure the variable rates are in

15              compliance," correct?

16      A       Mm-hmm.

17      Q       And Mr. Pedotto answers yes to that.  Do you see

18              that?

19      A       Yeah.

20      Q       And now Mr. Pedotto's testimony that, yes, there was

21              a step where Legal reviews and make sure the

22              variable rates are in compliance, that's consistent

23              with the testimony we saw that Mr. LaPointe gave on

24              that same issue, isn't it?
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 116

```
 1     A     Yes.

 2     Q     And you don't cite this testimony by Mr. Pedotto

 3           about the legal review of the rate setting process

 4           in paragraph 86, do you?

 5     A     I don't.

 6     Q     Now, having reviewed this testimony by Mr. Pedotto

 7           that Legal reviews the rates and make sure that the

 8           variable rates are in compliance, would you agree

 9           that the first sentence of paragraph 86 is not

10           accurate?

11                 MR. BLANKINSHIP: Objection.

12           Argumentative.  Asked and answered.

13                 THE WITNESS: Are you asking had I reviewed

14           -- what was your -- can you repeat your question?

15           Was it, had I reviewed, would I have done this or?

16       BY MR. MEADOWS:

17     Q     I'm saying as we sit here now that you -- we've just

18           gone over --

19     A     Yeah.

20     Q     -- Mr. Pedotto's testimony in Exhibit 3.  In light

21           of that, plus Mr. LaPointe's testimony, are you

22           still standing by the accuracy of the first sentence

23           of paragraph 86?

24     A     Before I give you -- I -- I -- I'm not sure I can
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 117

```
 1            give you a short answer on this one, but I'll try to

 2            make it as succinct I can.  In the same exhibit you

 3            gave to me, if you read the very end, page 103, it

 4            says, "Did" -- so this is Mr. Pedotto -- "Did -- did

 5            the compliance department frequently override the

 6            rates that I proposed?"  "I don't know.  I mean, you

 7            know, what does frequently mean?"  "Do you recall a

 8            single instance?"  "Oh, yeah, for sure.  So like,

 9            okay.  Once a year.  Again, I think it'd vary

10            depending on the business situations, price,

11            volatility," so on and so forth.

12                     "I know, but I'm trying to understand,

13            like, is it once in a blue moon occurrence?  You

14            know?" so on and so forth.  "I don't know.  I don't

15            think it was.  I think it was -- I -- it wasn't all

16            the time."

17                     "It wasn't all the time?"  "Uh-huh."

18            "Just -- just a reminder to say yes or no," so on

19            and so forth.

20                     So bottom line, you're asking me a

21            question that Mr. Pedotto is, what -- what it -- I'm

22            sorry?  What was his -- what was his position at

23            Legal?

24       Q    You don't remember?
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 118

```
 1     A    I -- I -- CEO.

 2     Q    He's the CEO of the company.  Yeah.

 3     A    CEO.  Yeah.  I thought he was CEO.  I know they

 4          changed and -- and was just wasn't sure.  So if a

 5          person, if the CEO is unclear of details of what

 6          happens with respect to, you know, who approves the

 7          rate, how many times, you know, it gets approved, I

 8          -- I mean, I -- I don't know.  What else do you want

 9          me to tell you?

10     Q    Well, it was a simple yes or no question.

11                MR. BLANKINSHIP: He's not done answering

12          his question.

13                MR. MEADOWS: I mean, you --

14                MR. BLANKINSHIP: He's not done answering

15          your question.

16                MR. MEADOWS: I think you are done

17          answering the question.

18                THE WITNESS: I'm not.

19                MR. BLANKINSHIP: No.  He's not done

20          answering your question.

21                MR. MEADOWS: Greg, stop raising your voice

22          at me now.  Stop it.

23                MR. BLANKINSHIP: Stop interrupting the

24          witness.  Stop it.  You can finish your question.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 119

```
 1                    MR. MEADOWS:  No.

 2                    MR. BLANKINSHIP:  You can finish it.  He

 3           can finish his answer.

 4      BY MR. MEADOWS:

 5      Q    It was a simple yes or no question.  Can you give me

 6           a yes or no answer to, is the -- after having

 7           reviewed this deposition testimony of Mr. Pedotto,

 8           Mr. LaPointe, is the first sentence of paragraph 86

 9           of your report that you signed, is it accurate?

10           Yes, or no?

11      A    I've -- I've answered this question.

12      Q    Is it yes, or no?  Can you give me a yes or no

13           answer?

14      A    No.  I cannot give you a yes or no on that question.

15      Q    Great.  We'll leave it there.

16      A    Because you're taking -- you're taking it out of the

17           context.

18      Q    I want to --

19                    THE WITNESS:  I just have to take a quick

20           bathroom break --

21                    MR. MEADOWS:  Sure.

22                    THE WITNESS:  -- if it's okay.

23                    THE VIDEOGRAPHER:  Sir, your microphone?

24                    MR. MEADOWS:  Oh, Mr. Macan.  Yeah.
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

                                                    Page 120

1                    THE WITNESS: That's all right.

2                    THE VIDEOGRAPHER: We are now going off the

3          record.  The time is 11:25.

4          (Whereupon, the parties go off the record.)

5                    THE VIDEOGRAPHER: We are now back on the

6          record.  The time is 11:31.

7      BY MR. MEADOWS:

8      Q    Mr. Macan, just a couple more questions about

9          Exhibits 2 and 3.  Exhibit 2 being the deposition

10          testimony of Mr. LaPointe.  You would agree with me

11          having now re-reviewed that testimony here today

12          that Mr. LaPointe does not admit that Eligo made no

13          effort to ensure that its variable rates were set

14          according to the contract terms, right?

15                    MR. BLANKINSHIP: Objection.  Asked and

16          answered.  Lacks foundation.

17                    THE WITNESS: I -- I -- the -- this was the

18          one that I just literally reviewed like several

19          lines you pointed me to.  If you want me to give you

20          a blank -- blanket yes or no, I would have to read

21          this.

22                    MR. BLANKINSHIP: I'm also object -- these

23          exhibits are incomplete documents, Exhibit 2 and 3.

24      BY MR. MEADOWS:

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 121

1    Q      I mean, we just went over the testimony at an
2           earlier point in your deposition, and my question
3           again is simply having looked at the testimony that
4           we looked at prior to the break, isn't it true that
5           Mr. LaPointe does not admit that Eligo made an
6           effort -- no effort to ensure that its variable
7           rates were set in accordance with the contract?
8                    MR. BLANKINSHIP: Same objections.
9    THE WITNESS: Like -- like I said, I -- unless I'm missing,
10          no, I -- I've reviewed Pedotto's -- excerpts out of
11          Pedotto's testimony.  I've only reviewed, right now,
12          seven or eight lines from Mr. LaPointe's testimony.
13          So I -- I'd like to, if you want a blanket yes or no
14          answer on this, let me -- let me review this.
15      BY MR. MEADOWS:
16   Q      You want to re-review all the deposition testimony
17          again before you answer the question.
18   A      I -- I did not -- I did not read this probably for
19          three months or -- or longer since the last time I
20          read it.  I -- I don't remember.  You're asking me
21          to give you a blanket answer on something that
22          pertains to his testimony that I've last seen
23          probably three, four months ago.
24   Q      Well, focusing on Mr. LaPointe, I mean, isn't it

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                    Page 122

1              true -- we saw how Mr. LaPointe testified that the

2              changes to the variable rate setting methodology

3              were run by the legal department to ensure

4              compliance with the contract.  You remember that,

5              right?

6     A        Yeah.

7                        MR. BLANKINSHIP: Objection.  You can

8              answer.

9        BY MR. MEADOWS:

10    Q        And you would agree with me -- with me that because

11             he testified to that he did not admit that Eligo

12             made no effort to ensure compliance with the

13             contract in variable rate setting, wouldn't you?

14                       MR. BLANKINSHIP: Objection.  Asked and

15             answered.  Mischaracterizes his testimony.  You can

16             answer.

17                       THE WITNESS: I -- I -- literally what I

18             said last time.  I mean, I -- I -- you're asking me

19             for the, I don't know how many times to say the same

20             thing that I have answered before, I really don't

21             know how to answer it any differently.  I've -- I've

22             gone out of my way to try to explain my position the

23             best I could, and you keep insisting on a simple yes

24             or no answer that I cannot provide because it's

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 123

```
 1              taking things out of context.  Simple as that.
 2         BY MR. MEADOWS:
 3     Q    You can't give me a yes or no answer on whether Mr.
 4          -- on whether Mr. LaPointe made a specific admission
 5          in testimony that you reviewed and rely on in the
 6          report.  That's what you're telling me?
 7                   MR. BLANKINSHIP: Objection.
 8          Mischaracterizes testimony.  Asked and answered.
 9                   THE WITNESS: What I can -- what I can tell
10          you is that I -- sitting here, I stand by the -- the
11          sentence that I wrote, "Eligo admits that it made no
12          effort to ensure that its variable rates were set
13          according to the variable price terms, and in New
14          York's -- in the New York Terms of Service," which
15          is in my report.
16         BY MR. MEADOWS:
17     Q    And nothing about Mr. LaPointe's testimony or Mr.
18          Pedotto's testimony that we're -- that we just
19          reviewed today changes your view on the accuracy of
20          the first sentence of paragraph 86, right?
21                   MR. BLANKINSHIP: Objection.  Asked and
22          answered.
23                   THE WITNESS: Again, restating, I've had
24          the opportunity to read seven lines from Mr.
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 124

```
 1            LaPointe's testimony at this point.  Last time I
 2            read his testimony was one of many documents that
 3            has been reviewed.  It's been months and I really, I
 4            don't remember it, so.
 5       BY MR. MEADOWS:
 6    Q     All right.  Well, let me move on to a different
 7            portion of your report, particular -- particularly
 8            paragraph 65.
 9            (Background conversation.)
10       BY MR. MEADOWS:
11    Q     Page 32.  And paragraph 65 talks about the concept
12            of rate caps that Eligo used in its rate setting,
13            correct?
14    A     Yes.
15    Q     I want to focus your attention about maybe halfway
16            down, maybe a little bit more in paragraph 65,
17            there's a sentence that says, "Eligo's rate cap
18            policy is also a one-way street, allowing the
19            company to gradually increase prices, avoiding
20            attrition from bill shock.  It does not allow for
21            rate cap decreases."  Do you see that?
22    A     Yes.
23    Q     And now you don't cite a specific source for that
24            sentence.  What are -- what are you aware of that
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 125

```
 1            supports the assertion in particular that Eligo's

 2            rate cap policy does not allow for rate cap

 3            decreases?

 4                      MR. BLANKINSHIP: Objection.

 5            Mischaracterizes the very paragraph you're looking

 6            at.

 7                      THE WITNESS: I say, "Eligo's rate cap

 8            policy is also one-way street, allowing company to

 9            gradually increase prices, avoiding attrition from

10            bill shock.  It does not allow for rate cap

11            decreases."

12                      There is, I cannot recall exactly where,

13            but there's -- there's testimony where I've read

14            that Eligo's employees or whoever was deposed,

15            basically says exactly that, that people, when --

16            when customers, when they just got off of the fixed

17            rate -- fixed date rate -- fixed rate onto the

18            variable rates, that either the company policy or

19            the practice in -- in place was not to, you know,

20            increase the -- the rates right away because

21            presumably, you know, customers would sort of notice

22            that given the change.

23                      Instead, the -- the rates were sort of,

24            you know, adjusted -- adjusted gradually.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 126

1          Initially, manually, later on through Groove.

2                   And then secondly, the reason why I wrote

3          that is I believe, and again, I cannot recall the --

4          the name of who said it, but one of the -- one of

5          the people being deposed or -- there was another

6          thing that I've read that basically, I think even

7          the -- there were -- there was clear testimony that

8          I read, and again, this should have been quoted

9          because it'd be easier for me to retain specifically

10         what I'm talking about.  But they basically, you

11         know, that they -- they -- they did not really, you

12         know, they have a policy of not really, you know,

13         trying to avoid, you know, decreasing the rates if

14         possible.

15                  And one example of that, to give some

16         substance to it, would be when they ran

17         profitability on the first rate, you know, even, you

18         know, even though it was profitable in sort of

19         earning returns to the extent that the rate was

20         lower than the cap rate, I believe sometimes the --

21         the rate would be increased if it allowed for

22         additional profitability.

23      BY MR. MEADOWS:

24      Q    Did you look at any documents produced in the case

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 127

```
 1              showing what the rate caps actually were over time?
 2     A    I -- I don't recall.  I don't recall.
 3     Q    Well, let me show you exhibits -- we're up to 4 and
 4          5, right?
 5                    THE COURT REPORTER: Yes.
 6                    MR. MEADOWS: Thank you.  This is 4.  I'll
 7          hand it right back to you.
 8          (Whereupon, Ex. 4 DEF000907 rate_policy_8 sheet, is
 9          marked for identification.)
10                    MR. MEADOWS: And this is going to be 5.
11          (Whereupon, Ex. 5 DEF000908 rate_policy_9 sheet, is
12          marked for identification.)
13       BY MR. MEADOWS:
14     Q    Mr. Macan, does -- let's just start with Exhibit 4.
15          Does this document look at all familiar to you?
16     A    Is it listed on -- I -- I'm -- I'm really sorry, I'm
17          -- I'm trying my best -- but I -- I've seen so many
18          documents, I -- I do not want to, you know, give you
19          a wrong answer on record.  I -- I don't know, if --
20          if it was, if it was listed as one of the documents
21          that I relied upon, it means that I've at least
22          reviewed it to some extent at some point in time.
23                    I -- I cannot give you a definitive yes or
24          no just looking at the print shot -- printout
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 128

1           specific screen.  This looks like different rates,

2           but yeah, I -- I don't know.

3    Q     Well, I'll represent to you, Mr. Macan, these

4           Exhibits 4 and 5 are Eligo documents that actually

5           reflect, I think, it's by utility or our service

6           zone, I should say, what Eligo's rate caps actually

7           were over time.  Do you have any reason to doubt

8           that?

9                    MR. BLANKINSHIP: Objection.  Lack of

10          foundation.

11                   THE WITNESS: I -- I don't know what they

12          are.

13      BY MR. MEADOWS:

14   Q     Well, if you -- on Exhibit 4, if you turn to page

15          14, and starting at the bottom of 14, you'll see

16          there's a -- on the left-hand column, there's a

17          reference to "RG&E_New York."  And you're familiar

18          that "RG&E" stands for Rochester Gas and Energy?

19   A     Yes.

20   Q     And then for, corresponding to the RG&E column,

21          there's an entry to the -- in the column to the

22          right, 1 through 12.  You see that as well, right?

23   A     I'm sorry.  Say that again.

24   Q     Yeah, sure.  The column to the right of RG&E --

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 129

1    A    Yeah.

2    Q    -- is a number 1 through 12.  You see that?

3    A    Yes.

4    Q    And that -- you understand that corresponds --

5    A    Month.

6    Q    -- to each month of the year.

7    A    Yeah.

8    Q    And so the rate listed there for each month

9         corresponding to RG&E is 0.209; you see that?

10   A    0.209, correct.

11   Q    Right.  And then if you go to Exhibit 5, and again,

12        same pages 14 and 15, do you see, again, a variety

13        of entries there also corresponding to RG&E, New

14        York?

15   A    Yeah.

16   Q    And the rate listed there on Exhibit 5 is 0.199,

17        correct?

18   A    Correct.

19   Q    And the number 0.199 is lower than the number 0.209,

20        right?

21   A    Correct.

22   Q    Now, are -- have you been made aware at all that

23        these two documents reflect a decrease in Eligo's

24        rate cap corresponding to the RG&E Service Zone?

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 130

1                    MR. BLANKINSHIP: Objection.  Lack of
2           foundation.
3                    THE WITNESS: I -- I -- made aware by who?
4       BY MR. MEADOWS:
5       Q    Anyone.
6       A    I -- I don't recall.
7       Q    But I take it that when you were in the process of
8            writing the report.
9       A    Yeah.
10      Q    And this sentence in paragraph 65 that Eligo's rate
11           cap policy does not allow for rate cap decreases, no
12           one ever showed you these documents and said, you
13           should consider them in connection with whether that
14           statement is accurate, did they?
15                   MR. BLANKINSHIP: Objection.  Asked and
16           answered.  Lack of foundation.
17                   THE WITNESS: I -- I would -- I would --
18           yeah.  I -- I would -- I would assume so.  Yeah.
19           Correct.
20      BY MR. MEADOWS:
21      Q    So you would agree with me at least that if Exhibits
22           4 and 5 do, in fact, reflect a decrease in the rate
23           cap for the RG&E service zone, that this statement
24           in your -- in paragraph 65 of your report is

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 131

1          something you'd have to reconsider, wouldn't you?

2                    MR. BLANKINSHIP:  Objection.  Lack of

3          foundation.

4                    THE WITNESS:  Which -- which specific

5          statement?

6      BY MR. MEADOWS:

7      Q    That Eligo's rate cap policy does not allow for rate

8          cap decreases.

9      A    So look, under the -- I'm going off of what you told

10         me, that indeed these are the rate caps listed

11         historically by service territory and month.  And

12         just eyeballing the exhibit that you provided to me.

13         Actually, just give me -- give me like, give me just

14         -- just a second.  So, I'm sorry.

15                   These are just clarification questions, to

16         answer your question, so -- so what's the -- what's

17         the Exhibit 5 versus 4?  They're both RG&E, like one

18         is a cap, one is a rate.  I'm just trying to

19         understand.  You're asking me to opine on --

20     BY MR. MEADOWS:

21     Q    Well, I understand that it looks like you haven't

22         seen these before.  My representation to you is that

23         these documents reflect Eligo's rate caps for

24         different service zones over time.  And that rate

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 132

```
 1              policy 9, which is Exhibit 5, postdates rate policy
 2              8, which is Exhibit 4.
 3                     MR. BLANKINSHIP: Objection.  Lack of
 4              foundation.  Mischaracterizes the record.
 5                     THE WITNESS: I don't know that I haven't
 6              seen them before.  I just certainly don't recall any
 7              of the details, if -- if the -- if the Exhibit 5
 8              predates Exhibit 4 or the --
 9         BY MR. MEADOWS:
10    Q    It's the other way around is what I considered.
11         Yeah.
12    A    Okay.
13    Q    Five is later than four.
14    A    Five -- five is later than four -- sorry.  I have
15         them mixed up here.  Five is later than four, and --
16         and these are the rate caps.  Then -- then based on
17         the review of these two documents here, it looks
18         like that their -- if these are rate caps, the rate
19         cap indeed got updated from 0.209 to 0.199.  The
20         way, but to answer your question now, the way that I
21         have stated this in my testimony in my report, it
22         does not allow for rate decreases.
23                     I was -- I was alluding to a policy and
24         this should -- you know, looking at it, I should
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 133

1          have had a footnote specifically what -- which

2          policy I was sort of referring to.  You -- you what

3          -- you indeed have showed me the tables that

4          demonstrate that for this particular month, and

5          zone, and service territory, it looks like there was

6          an update in which the cap has been decreased from

7          0.209 to 0.199.

8     Q    All right.  So as we sit here right now, based on

9          the information you've seen, you would like to kind

10         of append a footnote to that sentence to further

11         clarify what you meant; is that right?

12    A    Correct.

13    Q    Because Exhibits 4 and 5 taken together show that

14         the rate cap, at least for the RG&E service zone,

15         did decrease from one period to another.

16    A    For the month --

17              MR. BLANKINSHIP: Objection.  Objection.

18         Mischaracterizes the testimony.  Lack of foundation.

19         You can answer.

20              THE WITNESS: For one month, which is

21         January, I don't even know which year, for R -- for

22         RG&E service territory, assuming these are the rate

23         caps, they -- they show a decrease from 0.209 to

24         0.199.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 134

```
 1        BY MR. MEADOWS:

 2    Q    Now, having seen Exhibits 4 and 5, is this issue of

 3         whether the rate caps actually went up or down over

 4         time, is that something you feel like you should

 5         look into further after today's deposition?

 6    A    No, I --

 7              MR. BLANKINSHIP: Go ahead.

 8              THE WITNESS: I think I've looked at it

 9         plenty enough.  I -- I would not have stated the

10         opinions that I have stated, you know, unless I was

11         convinced that that's indeed what happened.  I'm

12         just, you know, I -- I offered to take my time to

13         read through it to give you more -- the more

14         examples of it, but that -- that was the gist of --

15         gist of my understanding of the situation.

16        BY MR. MEADOWS:

17    Q    Now, I -- you agree with me that Eligo didn't always

18         charge its customers all the way up to the rate cap,

19         correct?

20    A    I -- I don't recall, I don't recall the details.

21         It's not -- I would -- I would assume not, I -- I

22         just don't recall that as a fact.

23    Q    And from a month -- on a month-to-month basis,

24         sometimes Eligo's rates, and we're talking about
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 135

1          only in New York, sometimes they went up, sometimes

2          they went down, correct?

3     A    I mean, for the two plaintiffs that I've analyzed,

4          because I've mostly looked at those zones, and I'm

5          pointing to, let's say, figures 9 and 10.

6     Q    I'm sorry, what page?

7     A    Pages 84, pages 85.  The red on the chart is the

8          Eligo's variable rate.  In both cases, at least as

9          far as the two plaintiffs are concerned, the

10         trajectory of rates was mostly up.  One of the

11         comparisons that I -- I have performed calculations

12         on later is, you know, price to compare with utility

13         rate.  If you take that as a proxy for underlying

14         costs, you can see that the trajectory of the

15         Eligo's variable rates have been mostly up.

16              So to answer your question succinctly,

17         yes, there were instances where Eligo's variable

18         rates went down, but for majority of the months, you

19         know, altogether they -- they have risen.  In -- in

20         the case of Schuster, I think it's Schuster, yeah.

21              They went up from something like eight or

22         nine bucks in -- in February 2018 to '15 by October

23         '23 so they practically doubled.  And then for --

24         for in the case of Brous -- excuse me -- they went

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 136

```
 1          in -- went up from like 7 to 15, being as high as 24

 2          a few months before, so it's a clear upward

 3          trajectory.

 4     Q    Going back to my prior question about whether the

 5          rate caps, whether Eligo always billed up to the

 6          rate cap, I want to call your attention to paragraph

 7          76.  That might help refresh your recollection on

 8          that question.

 9     A    Page 7 -- yeah.  Seventy-six.

10     Q    Page -- yeah.  Page 36.  And paragraph 76 says,

11          "Variable rates were often set to equal the rate cap

12          set by Eligo Management unless that rate was too

13          much of an increase above the previously billed

14          rate."  You see that?

15     A    Yeah.

16     Q    And does that help refresh your recollection that

17          Eligo did not always charge up to the rate cap?

18     A    That -- that -- yes.  I mean, that -- it's not a

19          question of refreshing, it's -- yeah.  That -- that

20          would be logical, yes.

21     Q    All right.  Now, the named plaintiffs, you know, who

22          are addressed throughout your report, Mr. Brous and

23          Ms. Schuster, they were what we could call "retail

24          electricity customers" of Eligo, right?
```

Edo Macan                                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 137

```
1     A     Yes.
2     Q     Retail customers like Ms. Schuster and Mr. Brous,
3           they buy electricity from suppliers who are
4           available in the market, right?
5     A     Yes.
6     Q     And sometimes that's a utility, right?
7     A     Well, in New York, they always buy from New York
8           ISO.
9     Q     Well, sure their -- but their supplier could either
10          be, for billing purposes, a utility or an ESCO,
11          right?
12    A     Oh, yeah.  For the, you know, residential customers,
13          like that, correct.  Correct.
14    Q     Correct.  Yeah.  Right.  And so -- sorry, just give
15          me a moment.
16    A     Yeah.  Take your time.
17    Q     And so I take it you would agree with me then that
18          there is, within the state of New York, there is a
19          retail market for electricity, correct?
20    A     Yes.
21    Q     And in that retail market, ESCOs compete with
22          utilities for customers, right?
23    A     Yes.
24    Q     The ESCOs also compete amongst themselves for
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 138

```
 1              customers, right?

 2      A       Yes.

 3      Q       And one way the ESCOs compete with one another is to

 4              offer different rate plans at different -- at

 5              varying prices; is that fair?

 6      A       Yes.

 7      Q       Meaning the ESCOs compete with one another on price,

 8              right?

 9      A       Yes.

10      Q       And I guess you could say that the ESCOs are also

11              competing with the utilities on price, correct?

12      A       Yes.

13      Q       There are certainly cases, I'm sure you --

14                      AUTOMATED VOICE: I'm going to have to

15              close this conference because you have exceeded the

16              maximum time limit.  If you need to keep going, you

17              will have to start another call.  Thanks for

18              calling.

19                      MR. BLANKINSHIP: Can we just take --

20                      MR. MEADOWS: A break?  Yeah.

21                      MR. BLANKINSHIP: Can we just take a break

22              and let's do that?

23                      THE COURT REPORTER: Yeah, let's take a

24              break.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

```
 1                    MR. MEADOWS: I have no idea what that --
 2            (Whereupon, the parties go off the record.)
 3                    THE VIDEOGRAPHER: Okay.  We are now back
 4            on the record.  The time is 12:04 p.m.
 5        BY MR. MEADOWS:
 6    Q    All right.  Mr. Macan, before we broke, we were just
 7         talking about the retail market for electricity in
 8         New York.  I take it you -- you're aware that within
 9         that market, sometimes residential customers decide,
10         for example, to leave the utility and go with an
11         ESCO; is that fair to say?
12    A    Yes.
13    Q    And sometimes retail customers who are -- I'm sorry
14         -- residential customers who are using an ESCO
15         decide to leave the ESCO and go to the utility,
16         right?
17    A    Yes.
18    Q    So that kind of movement of customers happens either
19         way?
20    A    Yeah.  Yes.
21    Q    All right.  Have you, in your role as a, you know,
22         an energy markets expert, ever studied the reasons
23         why customers decide to leave the utility and go to
24         an ESCO?
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 140

```
 1                    MR. BLANKINSHIP: Objection.  Outside the
 2            scope of his report.  You can answer.
 3                    THE WITNESS: Yes, I have.
 4       BY MR. MEADOWS:
 5       Q    Is price one of those reasons?
 6       A    Yes.
 7                    MR. BLANKINSHIP: Same objection.
 8       BY MR. MEADOWS:
 9       Q    Have you ever studied why?  I take it you're aware
10            that sometimes customers, again focusing on New York
11            and residential customers, will leave one ESCO and
12            go to another ESCO, right?
13                    MR. BLANKINSHIP: Same objection.
14                    THE WITNESS: Yes.
15       BY MR. MEADOWS:
16       Q    And have you ever studied why that particular market
17            dynamic occurs?
18                    MR. BLANKINSHIP: Same objection.
19                    THE WITNESS: I don't recall that I have.
20       BY MR. MEADOWS:
21       Q    But it's fair to say that the price offered either
22            by the utility or by the various ESCOs is one
23            factor, among others, why customers might decide to
24            move from a utility to an ESCO or from an ESCO to a
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 141

```
 1          utility.
 2                    MR. BLANKINSHIP: Same objection.
 3                    THE WITNESS: One, but probably the most
 4          dominant factor, and I know that based on the
 5          experience that I have working on, there's a whole
 6          field in discrete choice modeling, where you try to
 7          project, you know, based on percentage of savings,
 8          you know, and based on characteristics of
 9          residential customers, how many customers will
10          switch for, you know, what amount of savings.  So I
11          would -- I would categorize by far the most
12          predominant for a typical customer, cost savings,
13          given that electricity is a commodity is by far, the
14          most dominant factor.
15       BY MR. MEADOWS:
16       Q    And do the ESCOs -- again, let's just focus on New
17            York -- sometimes attempt to compete with one
18            another by differentiating their product offerings
19            at all.
20                    MR. BLANKINSHIP: Same objection.  Outside
21            the scope.
22                    THE WITNESS: I mean, I would -- I would
23            think so, yeah.  It's logical to expect.
24       BY MR. MEADOWS:
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 142

1      Q       And in this case, you're aware that under its terms

2              of service, Eligo provided that at least 30 percent

3              of the electricity it supplied to Ms. Schuster and

4              Mr. Brous would be derived from renewable sources,

5              right?

6      A       Yes.

7                      MR. BLANKINSHIP: Objection.

8              Mischaracterizes the record.  Lack of foundation.

9        BY MR. MEADOWS:

10     Q       And that's not something that all of the ESCOs in

11             New York offer, is it?

12                     MR. BLANKINSHIP: Objection.  Outside the

13             scope.

14                     THE WITNESS: It depends on the -- it

15             depends on the time period.  So it depends on the

16             time period, because after the reset order, the --

17             the only way that ESCOs would be allowed to offer

18             variable rates would be if they offer significant

19             amount of energy coming from renewable sources, so

20             it became -- it really became a -- a requirement.

21             Prior to the reset order, fair amount of ESCOs

22             offered, you know, some percentage of energy coming

23             from renewable sources.

24       BY MR. MEADOWS:

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 143

```
 1      Q     And Ms. -- I'm sorry -- Mr. Brous and Ms. Schuster,

 2            they signed up with Eligo before the 2019 reset

 3            order, right?

 4      A     Correct.

 5      Q     So at the time they signed up with Eligo, it

 6            certainly wasn't the case that all ESCOs were

 7            offering energy or electricity derived from

 8            renewable sources, was it?

 9                      MR. BLANKINSHIP: Objection.  Outside the

10            scope.

11                      THE WITNESS: I don't know for a fact

12            because I haven't analyzed that, but I think it's a,

13            you know, reasonable assumption.

14        BY MR. MEADOWS:

15      Q     All right.  And is -- further, it's a reasonable

16            assumption to say back in 2017, the New York

17            utilities were not offering electricity derived from

18            renewable sources, correct?

19                      MR. BLANKINSHIP: Objection.  Lack of

20            foundation and scope.

21                      THE WITNESS: For -- for, you know, some --

22            some -- not above what's legally mandated.

23        BY MR. MEADOWS:

24      Q     Okay.  And in the 2017 time frame, what was legally
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 144

1              mandated in terms of renewable energy offered by

2              utilities to residential customers?

3    A        Whatever the percentage of -- of RECs and ZECs were,

4              I believe there's a table in my -- in my testimony,

5              in my report, where I specify what that is, but it

6              was on the order of a couple of percentage points.

7    Q        Like single digits?

8    A        Single digits.

9    Q        Okay.  You mentioned RECs and ZECs.  We'll talk

10             about those, but since you brought them up, what is

11             a REC?

12   A        Renewable Energy Certificates.

13   Q        What's a ZEC?

14   A        The ZECs are Zero Emission Certificates, I think.

15   Q        Okay.  So those are both acronyms.

16   A        Acronyms.  Correct.

17   Q        Right.  And a REC is something that, as you talk

18             about in the report, Eligo purchased from time to

19             time, correct?

20   A        Correct.

21   Q        Where is a REC -- again, focusing on New York --

22             where and how would one go about purchasing a REC?

23                  MR. BLANKINSHIP: Objection.  Scope.  You

24             can answer.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 145

```
 1                THE WITNESS:  Yeah, I mean, I've never
 2          purchased a REC, but they're -- they're -- I -- I
 3          don't know the mechanics of -- of, you know,
 4          specifically where you go and -- and purchase a REC.
 5          These are financial instruments.  You -- you
 6          purchase them from brokers doing this type of stuff.
 7          It's very much into the operations of things.
 8          They're basically financial instruments.  You know,
 9          that -- that's -- that's pretty much it, you know.
10      BY MR. MEADOWS:
11      Q   Okay.  So -- and I know this seems basic, but I'm
12          just trying to make a record.  A REC is not energy
13          or power, right?
14      A   REC is a certificate that confirms that -- a REC is
15          basically a megawatt hour equivalent.  It's not --
16          it's not energy of power; it's a financial
17          certificate that basically -- I'm trying to think
18          what's the easiest way to explain this.  It's an
19          energy certificate that corresponds to the cost of a
20          single megawatt hour presumed -- produced from
21          renewable energy resources.
22      Q   Okay.
23      A   So you can think about it.  If the energy price is
24          zero on any given day because there is ample supply
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 146

```
 1            and you have to have 5 percent of RECs, then it
 2            would be the cost of -- of, you know, producing that
 3            from renewable energy resources.
 4       Q    All right.  One of the opinions that you've
 5            expressed in this case is that Eligo's rate setting
 6            practices did not conform to what you defined in the
 7            report as the variable price term in the customer
 8            contract, correct?
 9                      MR. BLANKINSHIP: Objection.
10            Mischaracterizes the testimony.
11                      THE WITNESS: Can you please point me to
12            this specific point in my report where I'm saying
13            this?
14         BY MR. MEADOWS:
15       Q    Sure.  I think I'm looking at -- yeah.  Yeah.
16            Thirteen -- paragraph 13B as in Boy.
17       A    Yeah.
18       Q    And you see, in that first sentence of paragraph
19            13B, you've got the capitalized term, variable price
20            term, right?
21       A    Yeah.
22       Q    And in -- throughout your opinion, I think, correct
23            me if you think I'm wrong, you define the variable
24            price term by reference to the three inputs that are
```

Edo Macan                         December 17, 2025
Brous v. Eligo Energy, LLC

Page 147

```
 1            specifically mentioned in a specific section of the

 2            Eligo customer contract, right?

 3    A       Yeah.  Well, I defined the variable price term in my

 4            -- on page 3 in bullet point 8, where I say -- where

 5            is the beginning of the sentence?  Counsel for class

 6            action plaintiffs have informed me that -- that the

 7            class in this matter is made up of only residential

 8            customers in New York who are charged a variable

 9            rate for electricity under this pricing term, which

10            is -- which I now refer to in this report as the

11            variable price term.

12    Q       Right.  And so there -- I take it from that sentence

13            in the report, there are no other inputs or factors

14            identified in the customer contract that you're

15            including within the -- your definition of the

16            variable price term, correct?

17    A       That -- that's what I'm -- that's what I'm -- that's

18            what I'm referring to.

19    Q       All right.  Since you mentioned paragraph 8, it's on

20            page 3, I believe it's the second to the last

21            sentence, you write, "I also understand that the New

22            York Terms of Service contain a statement that the -

23            - that following the fixed rate period, customers'

24            variable rate rates may be periodically adjusted for
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 148

1              market conditions."  You see that?

2      A      Mm-hmm.

3      Q      So that language is actually in Eligo's customer

4              contract, right?

5      A      Yeah.  I -- I think that's right.

6      Q      And just to be a little bit more specific about it,

7              I'm going to show you the contract --

8      A      Okay.

9      Q      -- which I believe we're up to Exhibit 7.

10                     THE COURT REPORTER: Six.

11                     MR. MEADOWS: Six.  This has an Exhibit 1

12             on it.  I'm not sure why.

13                     MR. BLANKINSHIP: It's attached to this

14             report.

15                     MR. MEADOWS: Oh, okay.

16                     MR. BLANKINSHIP: It's Exhibit 1 --

17                     MR. MEADOWS: Oh, there you go.

18                     MR. BLANKINSHIP: -- for Mr. Macan.

19             (Whereupon, Ex. 6, Ex. 1 of Expert Report, M.

20             Schuster T&C, NY ESCO Consumer Bill of Rights, is

21             marked for identification.)

22        BY MR. MEADOWS:

23     Q      All right.  Mr. Macan, so I think this copy of the

24             Eligo customer agreement is attached as Exhibit 1 to

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 149

```
 1              your report; does that sound right?
 2      A     Yes.
 3      Q     And so you're familiar -- I've now marked this as
 4              Exhibit 6 to your deposition.  You're familiar with
 5              this document?
 6      A     I'm familiar with this document.
 7      Q     And if you flip over, the pages aren't numbered
 8              sequentially, but I think it's the third page with
 9              the -- with the chart, the boxes on -- on the top.
10      A     Yeah.
11      Q     There's a box that, on the left-hand column has the
12              title "Variable Prices Determined."  You're familiar
13              with that, right?
14      A     Yes.
15      Q     And that's where the three inputs are identified
16              that you include within your definition of the
17              variable price term.
18      A     Correct.
19      Q     Right.  Now, just above that is a -- is a box that
20              has the label Price, right?
21      A     Yeah.
22      Q     And there, it says, "First three months at a fixed
23              rate of 00.5490 per kilowatt hour."
24      A     Yeah.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 150

```
 1    Q    And then it goes on thereafter, "monthly variable

 2         kilowatt hour rate that may be periodically adjusted

 3         for market conditions," correct?

 4    A    Yeah.

 5              MR. BLANKINSHIP: I'm just going to object.

 6         You read that number wrong.

 7    BY MR. MEADOWS:

 8    Q    Oh -- I'm sorry -- I'd -- but we're on the same page

 9         as to where we are in the contract.

10    A    We are on the same page where we are in the

11         contract.

12    Q    All right.  Now, that language that says, "Monthly

13         variable kilowatt hour rate that may be periodically

14         adjusted for market conditions," you do not include

15         that language within the definition of the variable

16         price term, correct?

17              MR. BLANKINSHIP: Objection.

18         Mischaracterizes his testimony.

19              THE WITNESS: Right.  Please, can -- can

20         you -- can you repeat what you just said?  Just

21         repeat your question as is.  I just didn't --

22    BY MR. MEADOWS:

23    Q    Sure.  The language in that first box labeled Price,

24         which says that "monthly variable kilowatt hour rate
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 151

1          that may be periodically adjusted for market

2          conditions," that particular language is not

3          included in your definition of the variable price

4          term in your report, is it?

5                    MR. BLANKINSHIP: Same objection.

6                    THE WITNESS: Well, I -- I -- I'm -- I'm

7          referring to -- I -- I'm -- I'm referring to the

8          variable price terms.  Let me -- let me just read it

9          out loud again in my report.  Counsel for -- has

10         informed me that class in this matter is made up of

11         only residential customers in New York who are

12         charged available rate of electricity in this term

13         who are charged under the -- under the electricity

14         for this term, which will now refer to this report

15         as variable rate report.  This is, I mean, these are

16         -- this is the contract, right?  These are the terms

17         of the contract.

18                    I -- I did not specifically allude to, you

19         know, one box or -- or the other.  The -- the first

20         box says price.  It pertains to discussion of the

21         price.  And predominantly, you know, the price is

22         going to be fixed for three months at, you know, 5.5

23         cents per kilowatt hour.  Thereafter, monthly rate

24         will maybe periodically adjusted for the market.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 152

```
 1            It's a high-level statement that does not go in the

 2            level of specificity compared to the second box,

 3            which is the variable price is determined.

 4                    Given that I know factually that once you

 5            get off the fixed rate, you're going to get onto the

 6            variable rate, I'm interpreting this as the -- the

 7            second box is providing specific detail as to, you

 8            know, how it's going to be adjusted periodically,

 9            you know, for -- for various markets conditions.

10                    And it means that, you know, market

11            pricing is going to be taken into account,

12            transportation costs, and other market price

13            factors.  And so to me, it's not either/ or, you

14            know, one encompasses the other, but pretty much

15            reading the contract, and I've seen many, many

16            hundreds of contracts in -- in my professional

17            career, it's -- it's the, you know, it doesn't get

18            more explicit in terms of determination of the

19            variable price than when you have a box like this

20            that basically says, this is how it's going to be

21            determined.

22        BY MR. MEADOWS:

23    Q     Okay.  But -- and I'm really just trying to

24            understand what you -- what said I -- is it the case
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 153

```
 1            that for purposes of your report, you interpreted
 2            market conditions as it appears in the price section
 3            of the contract to essentially have the same meaning
 4            as market pricing and other market price factors?
 5     A      I'm -- I'm -- I did not really interpret anything.
 6            I mean, my -- my role here wasn't a legal one to try
 7            to interpret the contract.  I was given alternative
 8            legal interpretations of what this contract means.
 9            And my role was to operationalize the methodology
10            based on the available data under each legal
11            interpretation of -- of the contract, and devise a -
12            - devise a method to estimate, you know, the -- the
13            contractual prices that should have been charged
14            under each of these legal theories.
15                    So in -- in no way do I want to say, nor
16            have I said in my testimony that I'm opining on how
17            this should be interpreted, whether the first box or
18            the second box or this and that, I'm just justifying
19            why I wrote what I wrote, and I'm simply
20            acknowledging here, you know, for the sake of
21            completeness, that my reading of this contains that
22            and, you know, merely stating the fact that this
23            document also, you know, contains the language that,
24            you know, "following the fixed rate period,
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 154

```
 1              customer's variable rate may be periodically
 2              adjusted for market conditions, and that's it."
 3                    And then even following up on that as to
 4              what market conditions are, because that's -- can be
 5              a lot of things.  I've reviewed the testimony.  I'm
 6              sorry.  This is the 30B6.  Where's the foot?  Yeah,
 7              here Sandler's testimony, where -- where, you know,
 8              he elaborates, I -- I -- if I recall correctly, on a
 9              -- on a deposition sort of elaborating on what those
10              market conditions are, so.
11       Q     So you're not offering any interpretation of the
12              agreement as an -- as an expert in this case.
13                         MR. BLANKINSHIP: Objection.
14          BY MR. MEADOWS:
15       Q     Just to be clear; is that right?
16       A     Objection.  Mischaracterizes his testimony.
17                         THE WITNESS: I'm not offering any legal
18              opinion on the contract.
19          BY MR. MEADOWS:
20       Q     But your damages models, you would agree, are based
21              on the interpretation of the agreement that is set
22              forth in your report, right?
23       A     But as I write in my report, it has provided -- been
24              provided to me by counsel.
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 155

```
 1     Q     And that's what I want to get at, the interpretation
 2           of your agreement that kind of underlies your
 3           opinions, that's not something you arrived at
 4           independently, that's something plaintiffs' counsel
 5           gave you and told you to assume; is that right?
 6     A     The -- the -- here -- here is how that came about.
 7           In -- in most cases that I've seen, usually there is
 8           -- let me -- let me take that back.  In the - in the
 9           cases that I have been involved, in -- in my
10           experience so far, it was clear legally what the
11           interpretation of -- of the law is.  It's my
12           understanding, hearing from counsel, that that issue
13           has not really been fully resolved here, that two
14           different parties have a different interpretation
15           what the contractual legal language means.
16                 And because I -- I do not want to take a
17           position on that, I'm not qualified, I'm not a
18           lawyer, I -- I wanted my role and -- and Counsel
19           never suggested anything otherwise, to be specific,
20           that of an economist trying to operationalize a
21           specific interpretation of the language and that's
22           it.  So Counsel --
23     Q     So -- go ahead.
24     A     If -- if you're asking, like Counsel has sort of,
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 156

```
 1            you know, provided, as I say in my testimony, they
 2            have provided alternative legal interpretations of
 3            the contractual language, and according to each
 4            legal interpretation of the language, I have,
 5            basically, you know, operationalized that specific
 6            input parameters, market pricing, transportation
 7            costs, and other -- other market price factors.  And
 8            what do they mean in the context of pricing
 9            electricity under a given formulation?
10      Q     All right.  In that case, I want to ask you
11            specifically about what you write in paragraph 154
12            on page 65.
13      A     Okay.
14                  MR. BLANKINSHIP: I'm sorry.  Which
15            paragraph?
16                  MR. MEADOWS: 154.  Are you with me?
17                  THE WITNESS: Yeah.  Just give me one
18            second.
19                  MR. MEADOWS: Sure.
20                  THE WITNESS: Yeah.
21         BY MR. MEADOWS:
22      Q     All right.  And so you write -- the first sentence
23            of 154 says that "From an economics perspective,
24            method one represents the preferred contract
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 157

```
 1            reading," correct?
 2      A     Mm-hmm.
 3      Q     And so now of course, method one is one of the
 4            damages methods that you include in your report,
 5            right?
 6      A     Mm-hmm.
 7      Q     I mean it seems like you're testify -- you're
 8            opining there that there is a specific contract
 9            interpretation that is preferred.
10      A     No, maybe it's loose --
11      Q     Is that not right?
12      A     No.
13      Q     No.
14      A     No.  Maybe it's loosely said that way.  To me, it
15            made more sense.  It's sort of, I'll explain it --
16            elaborate on in the second sentence.  The idea is,
17            let me -- what's the gist of that?  The gist of that
18            is that -- that under the method one, it's what I
19            would call an "index contract," reading a contract
20            that says specifically shall be calculated on
21            monthly basis in response to market pricing,
22            transportation costs, and other market price
23            factors.
24                      It's an index contract.  It -- it clearly
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 158

```
 1            states that the variable rate will be set to

 2            something that is observable, that is in my

 3            interpretation, you know, a wholesale cost of

 4            energy.  And so, in that sense, that's -- that that

 5            sort of, that's the, it's, you know, the preferred

 6            reading in a sense that it's an index contract.  And

 7            -- and so methods one and two would both sort of

 8            satisfy that criteria.  And I think preferred in a -

 9            - I said preferred because for me, I -- I, you know,

10            I don't even get into the, you know, what's valid,

11            valid what's not, what, you know, I -- I did not

12            have -- I took -- I took Eligo's data as given.  I -

13            - I did not spend time evaluating their costs in

14            method one; I take their cost as given.

15                     And to me it's a preferred method because

16            it's -- it's analytically very clean.  I basically

17            take their dates as given -- I'm sorry -- data is

18            given and then merely instrumentalize and

19            methodology under -- under legal interpretation.

20            There is one last element to it.  I think method

21            three, to be, you know, to be -- is also has the

22            advantage because it uses the data that it's not the

23            actual data that Eligo paid for.

24                     Sorry.  The actual cost that Eligo ended
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 159

1          up sort of incurring instead those were the costs

2          coming from POWWR that they were known at the time.

3          Those -- so strictly speaking, from economic point -

4          - economics point of view, if you're making a

5          decision on an investment, you should take into

6          account the data that's available to you at the

7          time.  And so if they set a rate, let me give you a

8          simple example because I think it's a critical

9          point.  If -- if -- what -- if they -- they get a --

10         a report from POWWR that says, you know, procurement

11         cost estimate is going to be 50 or something like

12         that, they're going to set a rate based on that

13         estimate.  If it turns out that the POWWR was

14         costing much more or much less, they don't have the

15         ability to go back for that month and adjust the

16         rates.

17                  And so to me, it's much more fair to use

18         that as a metric rather than a metric by using the

19         actual -- actual costs, which are not known at the

20         time, they're known two weeks later because they

21         didn't know them at the time, nor did -- nor did the

22         customers know them at the time.  And so in that

23         sense, that's the benefit of method one over method

24         two.

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 160

```
 1    Q      You said "index contract" earlier.  That -- I think

 2           you said that's how you view the Eligo customer

 3           contract, right?

 4                  MR. BLANKINSHIP: Objection.

 5           Mischaracterizes the testimony.

 6                  THE WITNESS: It -- it's a -- I -- I --

 7           again, I think, and I say this somewhere in my

 8           category, there are sort of different types of

 9           contracts just sort of giving labels, the general

10           buckets, there are contracts that are fixed.  Are we

11           going to transact at -- at a fixed agreed price

12           which is specified nominally?  Are we going to

13           transact -- it happens in energy all the time.

14           Energy contracts are tied to an index, whether it's

15           a gas pricing hub or -- or POWWR hub or whatever it

16           is.

17                  So in this case, it's -- it says

18           explicitly in the language, it's tied to the shall

19           be calculated on in response to market.  So it's

20           tied to market pricing, transportation costs, and --

21           and other market price factors.

22      BY MR. MEADOWS:

23    Q      Right.  And that's what causes you to believe that

24           it's what we call an "index contract," right?
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 161

```
 1    A    In -- in spirit, yes.  That's that -- yes.  Correct.
 2    Q    And I'm trying to understand now what you mean by
 3         index contract.  Are you -- are you referring to a
 4         contract that is the price of which is indexed to
 5         the underlying price of a commodity or something
 6         like that?
 7    A    It's indexed to something, it -- it relates to
 8         something.  So I use the term here, "indexed" in a
 9         very -- in a very broad sense.
10    Q    All right.  Is another word for an index contract, a
11         cost-plus contract?
12    A    Cost-plus contracts are index contracts.
13    Q    Do you think that Eligo's customer contract is in
14         the nature of a cost-plus agreement?
15    A    It sounds like a -- sounds like a legal question
16         frankly, I -- I don't -- I -- I can -- I'm -- I can
17         also offer my opinion, but just for clarificates
18         (sic), I'm not offering a legal opinion on this one.
19         You know, it -- it -- when -- when you have the
20         language that states -- states this clearly, all
21         rates, not some, all rates shall be calculated on a
22         monthly basis in response to market pricing,
23         transportation costs, and other market price
24         factors, and I have a whole section explaining, you
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 162

```
 1              know, how I interpreted market pricing.
 2      What does it mean?  Transportation costs don't make a lot
 3              of sense here.  And then other market price factors
 4              in the context of both market pricing and
 5              transportation costs.  I -- I -- playing devil's
 6              advocate to myself, I cannot interpret this as
 7              anything else, but, you know, Eligo promising to
 8              charge its customers variable rates that are -- that
 9              are in some way or another, consummerate with their
10              costs.  And it's -- that's the -- that's the crucial
11              argument in all this.  I -- I cannot see this being,
12              they have a discretion to do anything else because
13              then there's no point in language like this existing
14              in a contract.
15      Q      So you interpret the Eligo customer contract as not
16              giving Eligo any pricing discretion; fair?
17                      MR. BLANKINSHIP: Objection.  Question
18              calls for legal conclusion.
19                      THE WITNESS: I -- I -- like I said, I -- I
20              did not interpret anything here.  Interpretation has
21              been given to me.  You asked me for my opinion on
22              the index, why do I think this is -- this would fall
23              under a category of index contracts, and I have
24              provided my explanation why.
```

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 163

```
 1                    I did not opine whether, you know,
 2            legally, whether this is, you know, one type of
 3            contract or another, or -- or interpret this
 4            legally.  Legally -- legally interpreted the
 5            contract.
 6        BY MR. MEADOWS:
 7    Q    I guess, I'm really, right now, trying to understand
 8            because in a prior answer you referred to, you know,
 9            my interpretation or I can't interpret this contract
10            in any other way.  So I just want to be clear, are
11            you offering as to the meaning of the -- of the
12            variable price term, are you offering your own
13            opinion as to what that means or were you told to
14            assume that?
15    A    I was told to assume that.
16    Q    Okay.  Great.  And I want to be very specific about
17            that.  If you would turn to paragraph 130 of the
18            report.
19    A    Just to clarify, I was told to assume, like I say in
20            my testimony, I was told to assume alternative legal
21            interpretations of the contract.
22    Q    Right.
23    A    Yeah.
24    Q    And -- but I want to --
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 164

```
 1     A     Sure.  Sure.  Point me to --

 2     Q     -- with that -- through that prism, look at

 3           paragraph 130.

 4     A     Yeah.

 5                 MR. BLANKINSHIP: It's on page 55.

 6                 MR. MEADOWS: Yeah, 55.

 7       BY MR. MEADOWS:

 8     Q     Yeah.  And so there in paragraph 130, there -- you

 9           see, you've got market pricing in quotations, right?

10     A     Yes.

11     Q     And that's a reference to the phrase "market

12           pricing" as it appears in the customer contract,

13           right?

14     A     Yes.

15     Q     And then following that, the report says, well,

16           taken as a whole, it says, "market pricing means the

17           wholesale market," right?

18     A     Correct.

19     Q     So just to be crystal clear, that meaning that

20           you're giving there in paragraph 130, that's

21           something you were told to assume by plaintiffs'

22           counsel, right?

23                 MR. BLANKINSHIP: Objection.

24           Mischaracterizes his testimony.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 165

```
 1                    THE WITNESS: No, no, I'm not saying that.
 2             I -- I -- I'm saying that.  The short answer is no.
 3             No, I'm not -- not saying that.
 4         BY MR. MEADOWS:
 5         Q    All right.  Then how did you arrive at the
 6             interpretation of market pricing that it means the
 7             wholesale market?
 8                    MR. BLANKINSHIP: Objection.
 9             Mischaracterizes testimony.
10                    THE WITNESS: I did not arrive at that.  As
11             I explained, I was provided with the legal
12             interpretation of the contract language, three
13             different formulations, methods one through three.
14             And in the context of each legal interpretation, I
15             merely operationalized the, you know, what some of
16             the inputs into the -- into the formula and the
17             legal interpretation meant.  So in the context of,
18             let me refer to my testimony here.  Sorry.  Report.
19             I keep calling it "testimony."
20                    Yeah.  So -- so I explained this in 135.
21             For method one, for example, the method identified
22             the rate Eligo should have charged by calculating
23             rate on a monthly basis, that it varies in response
24             to Eligo's anticipated cost for market pricing,
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 166

```
 1          transportation costs, and other market price

 2          factors.

 3                   As I noted previously, I was asked by

 4          counsel for the class action plaintiffs to outline

 5          the market costs faced by Eligo in serving variable

 6          rate customers.  So, you -- you know, if -- if these

 7          are the inputs and this is the formula, what -- what

 8          does market pricing mean in the context of this

 9          legal interpretation?  And -- and that is what I've

10          done.  And my decision was to, you know, basically,

11          just -- I'm sorry -- my decision for -- that that

12          was for method two.  In method one, it cannot be

13          anything else but the -- the cost that they have

14          disclosed as, you know, being the energy cost in

15          method two from POWWR reports.

16     Q    Well, my question was about the first sentence in

17          paragraph 130 where you give a specific meaning to

18          the phrase "market pricing," and again, you say it

19          means the wholesale market.  I -- I just, I just

20          need to focus on that particular --

21     A    Sentence.

22     Q    Sentence.

23     A    Okay.

24     Q    Is that an assumption you were given to work with by
```

Edo Macan                                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 167

```
 1              the plaintiffs' counsel or is that your opinion,

 2              that sentence?

 3                      MR. BLANKINSHIP: Objection.  Asked and

 4              answered.

 5                      THE WITNESS: That -- I mean, that's --

 6              that's my opinion.  In -- in the context of -- in

 7              the context of the formulation, I cannot see market

 8              pricing being anything else.  But, you know, pricing

 9              of a -- pricing of a commodity, it's a term that,

10              you know, comes up often.  I mean, it -- it's just -

11              - that's -- that's what it is.

12         BY MR. MEADOWS:

13     Q    Okay.  And what -- what's the methodology that you

14              employed to reach the conclusion that market pricing

15              means the wholesale market?

16     A    What do you mean by "method" -- what do you mean by

17              "methodology"?  I mean, if I -- you're an attorney,

18              if I -- if I knew a legal term, and I told you a

19              legal term, you would have a preceived (sic) notion

20              of what that means.  I'm an energy market expert.

21              I've done energy pricing for 25 years.  Somebody

22              tells me market pricing; it means pricing instrument

23              to the market.

24                      It's a derivative, it's a contract,
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 168

```
 1            whatever it is, find the prevailing market prices,
 2            find -- if -- if those aren't available, if the
 3            market is -- is not illiquid enough, find ways to
 4            triangulate and come up with a -- with a fair market
 5            price for something.  That is market pricing.
 6                   So market pricing in the context of
 7            electricity retailer is they're in the business of
 8            buying power wholesale, selling at retail.  Market
 9            pricing is like how -- how much it's going to cost
10            for us to, you know, acquire these good, that we're
11            going to resell later on.  It's just a combination
12            of -- of, you know, basic logic and -- and, you
13            know, understanding what the term means.
14     Q      Okay.  Is there anything else other than what you
15            just described to the methodology by which you
16            concluded market pricing means the wholesale market?
17     A      Everything that I -- that I quote in -- in 131.  If
18            you give me a second, I'm going to read through it
19            to recall but --
20                   MR. BLANKINSHIP: 131?
21                   THE WITNESS: I'm sorry, 130, 130.  I'm
22            looking at 130 and I'm -- yeah, 130.  Yeah.  I think
23            I've -- everything I had to say on that is -- is
24            right here.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 169

```
 1        BY MR. MEADOWS:

 2     Q    All right.  So other than what you told me here

 3          today and appears in paragraph 130 of your report,

 4          there's no other analysis or methodology that you

 5          employed to arrive at the conclusion that market

 6          pricing means the wholesale market, correct?

 7     A    Like I said, it's an -- it's an industry term that

 8          has a very specific meaning in the context of the

 9          problem analyzed.  If we're talking about market

10          pricing for a hedging operation, it would be pricing

11          a derivative, you know, from brokers.  If we're

12          talking about market pricing, you know, for an ESCO,

13          it can mean only one thing.  It can mean, you know,

14          pricing of -- of the goods, of procurement.

15          Basically, they're procurement costs or -- or, you

16          know, pricing of energy, pricing of electricity.

17     Q    Is there a source, an academic source, or some -- or

18          some other source that you're relying on for the

19          proposition that you just told me that within, you

20          know, a retail electricity contract like this one,

21          that market pricing can only refer to the wholesale

22          market?

23     A    I -- I think I've -- I'm trying to remember.  Hold

24          on a second.  I'm trying to remember specifically
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 170

```
 1              the -- the two sources I quoted here.  More examples

 2              that are in this source.  No, I mean, don't want to

 3              waste time on it but pretty much just whatever is in

 4              130 and whatever I said today here is just

 5              sufficient.

 6       Q      All right.  So let me ask you about the sources then

 7              that are cited in 130.  One of them is a -- is an

 8              article or you'll correct, you can describe it, but

 9              it's titled "Customer Response to Day-Ahead Market

10              Hourly Pricing Choices and Performance," right?

11       A      Mm-hmm.

12       Q      And then the date of -- is that an article or a

13              book?

14       A      I really -- it was one of the -- one of the

15              background materials I've consulted and I -- I

16              really don't recall.

17       Q      Okay.

18       A      It's produced as -- sorry.  Like I said, my memory

19              is really not the best and I've -- I've looked at a

20              lot of things.  I -- I -- yeah.  I -- I'm -- I'm

21              trying to -- I'm trying to recall what it was

22              specifically.  Yeah.  I'm just -- I'm not going to

23              speculate.

24       Q      All right.  The date of that -- whatever, whether
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 171

```
 1                it's an article or a book or whatever it is, its

 2                date is 2006, right?

 3      A    Yeah.

 4      Q    So that predates Eligo's existence, right?

 5      A    Yes.

 6      Q    And from your description of this particular source,

 7                you say that it -- "The research examines the

 8                experience of 149 large customers of Niagara Mohawk

 9                Power Corporation, an upstate New York utility,"

10                right?

11      A    Yeah.

12      Q    And so does this source deal at all with ESCOs or

13                the customers of ESCOs?

14      A    I'm -- I'm really having a hard time recalling the

15                details of it, I -- I think so.  I -- I -- I'm

16                sorry.  I'm just blanking on this one.

17      Q    And I mean, to whatever recollection you have of

18                this particular source, is there any part of it that

19                deals with the meaning of the phrase "market

20                pricing" as it relates to an ESCO customer contract?

21      A    I -- I -- like I said, I -- I really, I cannot, in

22                the spirit of it and the gist of it, for sure, I --

23                I just cannot recall.  I just cannot recall.  It's

24                the general topic, but it's not -- it's not a --
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 172

```
 1              that's why it's not a quotation or something

 2              specific.

 3       Q      When -- okay.  When's the last time you read this

 4              source?

 5       A      I -- I read pieces of it, you know, during this

 6              engagement, but I just don't recall -- I just don't

 7              recall the details more than it's here.

 8       Q      All right.  Let me ask you about the second source

 9              listed, which is titled "Customer Strategies for

10              Responding to Day-Ahead Market Hourly Electricity

11              Pricing."

12       A      Yeah.

13       Q      What is that, an article, a book?  What?

14       A      Same thing.  I'm just blanking out.  It -- it's

15              certainly not a physical book I had.  I -- came up

16              in research.  Whether my staff produced it, whether

17              I searched for evidence and found it, I just -- I

18              just don't -- I just don't recall.

19       Q      What is the -- again, what is the source about?

20              What is it -- what is it addressing?

21       A      I'm -- I'm sorry, I'm just not -- I'm -- I'm really

22              blanking out on these.  I -- I just don't recall the

23              details.

24       Q      I understand and --
```

Edo Macan                                   December 17, 2025
Brous v. Eligo Energy, LLC

Page 173

```
 1    A    Other than -- other than sort of said here at the
 2          time, the -- do we -- I -- I don't -- I don't have
 3          this.  I -- I don't.  I -- it's -- it's a valid --
 4          it's a valid question.  This is the one where I just
 5          don't have a ready answer.  But, you know, I'm happy
 6          to follow up on that.
 7    Q    Okay.  Well, let me -- and again, you may not know,
 8          but we're here and I need to make a record.
 9    A    Yeah.
10    Q    Does this second source, the customer strategy
11          source, deal with New York-based ESCOs at all?
12    A    I really, I just don't recall the details of it.
13          I've -- I've -- I -- I deemed at the time that
14          they're valid references, and -- and I -- I have no
15          doubt that they are, but I'm just not recalling the
16          details to be able to elaborate on specifically
17          anything more than what I've summarized here.
18    Q    Okay.
19    A    They're -- they're merely here, you know, they're
20          merely here to, you know, provide context in
21          addition to, you know, in addition to my opinion on
22          the meaning of market pricing.  And -- and I'm going
23          to say one more thing.  It's just, it -- it's a --
24          it's a -- it -- it's almost like an industry term,
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 174

```
 1              you know, I mean, I -- I don't know which --
 2      Q       I'm sorry but what's an industry term?  You lost me
 3              there.
 4      A       I'm saying market pricing has a meaning because it's
 5              sort of an industry term in a -- in a sense, right?
 6              So you know, if you talked, if, you know, we were
 7              dealing with the mortgage-backed securities or
 8              something and somebody said market pricing, everyone
 9              in that industry would have a very different
10              perception of it.  So to me, it's not market pricing
11              per se.  It's really like what -- what this term
12              means to me in the context of an ESCO, you know,
13              pricing its product --
14      Q       Yeah.
15      A       -- in -- in the market.
16      Q       So we talked about earlier, Eligo buys its energy on
17              the wholesale market, right?
18      A       Mm-hmm.
19      Q       But it sells electricity on the retail market,
20              correct?
21      A       Correct.
22      Q       Now your opinion in paragraph 130 appears to exclude
23              any possibility that market pricing might refer to
24              the retail market; is that fair?
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 175

```
 1     A     Yes, yes.  Because I -- I'm, at least, I'm not aware
 2           of an instance where an ESCO buys -- buys power from
 3           another ESCO only to resell it to the customers.  So
 4           market pricing means pricing of the commodity, you
 5           know, depending on where they're getting it from and
 6           they're getting it from the wholesale market.
 7     Q     Right.  You would agree with me though that the
 8           whole purpose of the customer contract that we're
 9           here talking about today is to govern the terms on
10           which Eligo is going to sell electricity to
11           consumers, right?
12                 MR. BLANKINSHIP: I'm just going to object.
13           Question calls for legal conclusion.
14                 THE WITNESS: Yeah.  I mean like -- like
15           I've said before, it's -- I -- I was provided a
16           legal interpretation of the contract and I've done
17           the, I wouldn't call it done the math, done the
18           interpretation, done the operationalization, you
19           know, and under -- under each theory, I mean
20           there's, it's -- it's like, simple way to put it
21           like, you know, this is -- these are the elements,
22           this is the legal interpretation.
23                 You know, what is market pricing in this
24           context?  What does market pricing mean under the
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 176

```
 1          legal interpretation summarized in method one?  And
 2          then I -- I chose what it meant, with all its
 3          components.
 4      BY MR. MEADOWS:
 5    Q    Meaning you chose that it meant wholesale market.
 6    A    I chose that it meant wholesale market.
 7    Q    Right.  And what I -- now what I want to get to is
 8          by what methodology or what methodology did you use
 9          to reach the conclusion that market pricing means
10          only the wholesale market to the complete exclusion
11          of any reference to the retail market?
12                 MR. BLANKINSHIP: Objection.  Asked and
13          answered.
14                 THE WITNESS: Let me -- let me restate what
15          I just said because I wasn't specific.  Not that it
16          just means the wholesale market.  It means the --
17          the wholesale cost of energy.  And -- and that's --
18          that's what I mean by the -- the wholesale market.
19          It means, under the method one, it means the cost of
20          procuring energy in the wholesale market.  Because
21          that's the -- that's just a statement of fact.  Like
22          I said, ESCOs don't buy power from other ESCOs, they
23          buy it from -- from NYISO, and NYISO is a wholesale
24          market.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 177

```
 1        BY MR. MEADOWS:

 2     Q     Yeah.  If it's okay with you, just a few more

 3           questions on this topic --

 4     A     Sure.

 5     Q     -- and then we can break for lunch.

 6     A     Sure.

 7     Q     In rendering this opinion about the meaning of

 8           market pricing, did you consider any legal

 9           authorities that bear on this question at all?  By

10           legal authorities, I mean, decisions by courts.

11     A     No.  Like the -- the interpretation was provided to

12           me.  I did not want to get anywhere near legal

13           interpretation.  I'm not a lawyer, as you can see, I

14           don't try to be one.  I respect what you guys do,

15           but -- in my cup of tea, so no.

16     Q     Right.  But this interpretation that market pricing

17           means the wholesale market, you -- that's your

18           interpretation again with what you've told me,

19           right?

20                    MR. BLANKINSHIP: Objection.  Asked and

21           answered.

22                    THE WITNESS: As -- as an economist's

23           interpretation, what the -- what -- what the -- what

24           -- you know, what market pricing -- which -- what's
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 178

```
 1         market pricing in the context of a legal

 2         interpretation under a specific method that has been

 3         outlined.

 4     BY MR. MEADOWS:

 5     Q   Okay.  And you're aware that there have been other

 6         class actions like this one filed against other

 7         ESCOs over the last several years.

 8     A   Yes.

 9     Q   Are you aware of the class action that had been

10         filed against an ESCO called "Agway"?

11     A   No.

12     Q   Have you ever read -- do you know what the Second

13         Circuit Court of Appeals is?

14     A   I know of Second Circuit Court of Appeals, yeah.

15     Q   Have you ever read the Second Circuit's decision in

16         the Agway ESCO class action?

17             MR. BLANKINSHIP: Objection.  Asked and

18         answered.

19             THE WITNESS: No, I haven't.  I don't know

20         what Agway was.

21     BY MR. MEADOWS:

22     Q   You were involved in the Richards versus Direct

23         Energy case.

24     A   Correct.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 179

```
 1      Q      And you issued an opinion in that case, correct?

 2      A      I -- I was -- I submitted a report, I believe, with

 3             a -- with a colleague, Seabron Adamson, if my

 4             recollection is right.  Yeah.

 5      Q      Okay.

 6      A      And I think the report specifies -- states the scope

 7             of what each one of us has done.  Yeah.

 8      Q      One of the issues in that particular case, the case

 9             against Direct Energy, was what was the meaning of

10             the phrase "business and market conditions" as it

11             appeared in Direct Energy's customer contract,

12             right?

13                    MR. BLANKINSHIP: Objection.  Calls for

14             legal conclusion.

15                    THE WITNESS: I -- I don't know about that.

16        BY MR. MEADOWS:

17      Q      You don't recall that?

18                    MR. BLANKINSHIP: Same objection.

19                    THE WITNESS: I -- like I said, I've -- I -

20             - I think I've explained earlier in this deposition,

21             my role on that case has been what one would call in

22             international arbitration, a quantum expert.  It was

23             I, literally, you know, do the calculation and --

24             and I testified on pretty much what I have done.  It
```

Edo Macan                                  December 17, 2025
Brous v. Eligo Energy, LLC

Page 180

```
 1              wasn't even economic interpretation of -- of, you
 2              know, what the -- was -- was -- case was about.
 3         BY MR. MEADOWS:
 4    Q    Well, the report that you signed addressed the legal
 5              interpretation of business and market conditions,
 6              didn't it?
 7                        MR. BLANKINSHIP: Objection.
 8              Mischaracterizes testimony, lack of foundation.
 9                        THE WITNESS: I -- I'm -- knowing myself,
10              I'm sure I never provided any legal opinions or
11              stated in my report that I'm providing any kind of
12              legal -- legal opinions or legal interpretations.
13         BY MR. MEADOWS:
14    Q    But my question was, the report that you signed, did
15              it contain an interpretation of the phrase "business
16              and market conditions," didn't it?
17                        MR. BLANKINSHIP: Same objections.
18                        THE WITNESS: I -- I -- that I don't even,
19              I don't even recall.  That case was like five or six
20              years ago.  I haven't -- I haven't seen it.  I -- I
21              don't remember what's in it.  I --
22         BY MR. MEADOWS:
23    Q    Do you -- do you recall that in that case the
24              district court expressly refused to rely on the
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 181

```
 1          opinions that you issued in that case?
 2                  MR. BLANKINSHIP: Objection.  Calls for
 3          legal conclusion.
 4                  THE WITNESS: I -- I don't know.
 5      BY MR. MEADOWS:
 6      Q    You don't recall that?
 7      A    No, I -- I -- no, I don't recall that.  I -- I --
 8          no.
 9      Q    Well, let me see if I can refresh your recollection
10          a little bit.  In that case, the district court, in
11          the Direct Energy case, the district court issued an
12          opinion mentioning you by name and then said, "These
13          experts argue that for a middleman like Direct
14          Energy, a rate consistent with business and market
15          conditions would include the cost of procuring power
16          on the wholesale market plus an appropriate margin
17          to cover the legitimate costs and risks of supplying
18          variable rate customers."  Does that sound familiar
19          at all to you?
20      A    What -- so I -- I don't, I -- I certainly like when
21          -- when the case was done, I don't think I've even
22          looked at the case.  I mean, my -- my engagement
23          ended up when -- when we submitted the report.  I --
24          I don't -- this never went to trial and I don't -- I
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 182

```
 1              don't remember any of that.  I -- I don't -- I don't
 2              think I've received --
 3        Q     Okay.
 4        A     -- you know, a legal, whatever the document is
 5              called, from whoever the attorney was at the time.
 6              And if anyone did, maybe my colleague would have.
 7        Q     Let me read -- oh, I'm sorry -- go ahead.
 8        A     No, I'm saying, I -- I definitely sort of did not
 9              receive that.
10        Q     All right.
11        A     But for -- I -- you were -- yeah.  Go ahead.
12        Q     Let me read you a different, one other --
13        A     Yeah.
14        Q     -- brief part of the court's opinion in that case.
15              Again, this opinion mentions you by name, Mr. Macan.
16              It -- it goes on to say, "Mr. Richards," who's a
17              plaintiff, "Mr. Richards' experts further concluded
18              that the phrase 'business and market conditions'
19              should within -- should be interpreted as a rate
20              that is consistent with the cost of procuring power
21              in the wholesale market plus an appropriate margin
22              to cover the legitimate costs and risks of supplying
23              variable rate customers."
24                   Is that an accurate description by the
```

Edo Macan                                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 183

```
 1              court of the opinion that you signed in that case?
 2                      MR. BLANKINSHIP: Objection.  Asked and
 3              answered.
 4                      THE WITNESS: Can you please just -- just
 5              read -- read it to me one more time?  I -- it was a
 6              long, lengthy one.
 7         BY MR. MEADOWS:
 8      Q    Sure.
 9      A    Yeah.
10      Q    Understood.
11      A    Yeah.
12      Q    What the court said is, "Mr. Richards' experts
13              further concluded that the phrase 'business and
14              market conditions' should be interpreted as a rate
15              that is consistent with the cost of procuring power
16              in the wholesale market, plus an appropriate margin
17              to cover the legitimate costs and risks of supplying
18              variable rate customers."  Does that sound like an
19              accurate description of the report that you signed?
20                      MR. BLANKINSHIP: Same objection.
21                      THE WITNESS: I -- I really don't.  I don't
22              recall the -- the legal, like, you know, we -- we
23              spent, my whole report, you know, is -- is very, you
24              know, discusses in detail the specific contractual
```

Edo Macan                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 184

1          language here.  Speaking, I -- for a fact, I -- I

2          don't recall what the contractual language in Direct

3          versus that one was.  Any opinion I would have made

4          would certainly be based on the specific contractual

5          language.

6                    My -- my blanche view on all these things

7          is, this is in essence a contractual dispute.  And

8          so to the extent that the contractual language in

9          Direct were significantly different than this, you

10         know, any -- any legal conclusions or legal

11         opinions, or, you know, the judicial verdicts are --

12         are sort of dependent on that.  I -- yeah.  I -- I'm

13         sorry -- this was like six years ago.

14       BY MR. MEADOWS:

15    Q    Yeah.  So --

16    A    I just really don't remember the detail.

17    Q    Fair to say then, you didn't take the Direct Energy

18         Court's opinion and ruling into consideration at all

19         in rendering your opinions in this case, did you?

20    A    I -- I mean, this sounds like a legal --

21    Q    No, no, no.  I --

22    A    No, no, no?  Yeah.  Okay.

23    Q    To be clear, I'm simply asking, when you wrote your

24         opinions in this case, did you or did you not take

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 185

```
 1            into account any of the rulings issued by the court

 2            in the Direct Energy case?

 3    A       Any of the rulings?

 4    Q       Any of the rulings?

 5    A       No, I did not.

 6    Q       Did you go back and even review the court's ruling

 7            on, that mentioned your name and dealt with your

 8            expert opinion?  Did you go back and review that at

 9            all before issuing your opinion in this case?

10                   MR. BLANKINSHIP: Objection.  Asked and

11            answered.

12                   THE WITNESS: Yeah.  Like -- like -- no, I

13            -- I did not.

14      BY MR. MEADOWS:

15    Q       Just a few more questions and we'll break.

16    A       Sure.

17    Q       What the court -- the district court held in the

18            Direct Energy case is that despite your expert

19            opinion to the contrary that the phrase "business

20            and market conditions" did not limit Direct Energy's

21            variable rates to the cost of procuring power plus

22            an appropriate margin, does that sound -- does that

23            ring a bell for you at all?

24                   MR. BLANKINSHIP: Objection.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

                                                        Page 186

1            Mischaracterizes the record.  Asked and answered.

2            You can answer.

3                    THE WITNESS: Yeah, I mean, it doesn't.

4            "Business and market conditions", that -- that term

5            rings a bell, but any of this other stuff with the

6            court rule, it doesn't.

7       BY MR. MEADOWS:

8       Q    All right.  And would you agree with me that the

9            phrase "business and market conditions" in an ESCO

10           contract is very similar to the phrase "market

11           pricing and market price factors" as they appear in

12           the Eligo contract?

13      A    It should not.  Not at all.

14      Q    No?  Very different?

15      A    Well, I mean, "business and market conditions"

16           sounds like a catch-all term.  I mean, that -- it --

17           again, it depends on the contract and in which way

18           it has been sort of interpreted.  But just -- just

19           comparing the two languages, I would say this is

20           much more precise.  I mean, you're -- you're saying

21           shall be calculated on monthly basis but again, I

22           mean, this is just don't -- don't -- I'm not

23           offering a legal opinion.

24                    I'm just saying, looking at it as a

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 187

1          contractual language, this sounds much more precise
2          than business and market conditions.
3     Q    So do you think that the phrase "market pricing" is
4          a lot more precise than market conditions?
5               MR. BLANKINSHIP: Objection.  Scope.  You
6          can answer.
7               THE WITNESS: I mean, market -- is the
8          market pricing term more -- please just --
9        BY MR. MEADOWS:
10    Q    Yeah.  Direct -- the market conditions was the
11         language, part of the language at issue in Direct
12         Energy.  It sounds like you're telling me you think
13         that's a lot different from what the Eligo contract
14         refers to, which is market pricing; is that fair?
15              MR. BLANKINSHIP: Objection.  Misconstrues
16         and mischaracterizes the record.
17              THE WITNESS: I'm saying that this
18         contractual language sounds much more precise than
19         business and market conditions.  If that was the
20         contractual language in -- in Direct Energy, that's
21         what I'm saying.
22       BY MR. MEADOWS:
23    Q    All right.  Well, my last question about Direct
24         Energy, and then we'll break.  The court also

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 188

```
 1            stated, in its opinion, the district court did, that
 2            no reasonable person would adopt the construction --
 3            the interpretation of business and market conditions
 4            that you and your colleague proffered.  Are you
 5            aware of that?
 6                      MR. BLANKINSHIP: Objection.
 7            Mischaracterizes the record.  Asked and answered.
 8            Outside the scope.  You can answer.
 9                      THE WITNESS: I'm -- I'm not aware of that.
10                      MR. MEADOWS: Okay.  If you all are ready,
11            I think it's a good time.
12                      THE WITNESS: Okay.
13                      MR. BLANKINSHIP: Yeah.  Let's go take
14            lunch.  Maybe shoot for 45 minutes?
15                      MR. MEADOWS: Yeah, please.
16                      THE VIDEOGRAPHER: We are now going off the
17            record.  The time is 12:59.
18            (Whereupon, the parties go off the record.)
19                      THE VIDEOGRAPHER: Okay.  We are now back
20            on the record.  The time is 1:55 p.m.
21         BY MR. MEADOWS:
22    Q     Okay.  Mr. Macan, did you do anything to prepare for
23            your deposition today?
24    A     I did.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 189

1    Q    What did you do?

2    A    I read my report.  I read my rebuttal report.  I

3         skimmed through Aron's report.  That's about it.

4    Q    Did you meet with anybody from plaintiffs' counsel

5         to prepare?

6    A    I -- I did.  I met with plaintiffs' counsel.

7    Q    When did that meeting occur?

8    A    Yesterday.

9    Q    And how long was the meeting?

10   A    Like three --

11             MR. BLANKINSHIP: I'm just going to object

12        that that's vague.

13     BY MR. MEADOWS:

14   Q    Okay.  How long is the meeting?

15   A    For four hours, three to four hours.

16   Q    And besides yourself, who was there?

17   A    Myself, Goran Vojvodic, my analyst, and the two

18        counsels.  I'm sorry, physically.  Physically --

19        physically, right?  It does not --

20   Q    That was my question is physically.  Yeah.

21   A    Physically, it was Greg and I.  And I'm sorry, Greg

22        and I and -- and Goran Vojvodic, and via the phone

23        were two other counsels.

24   Q    All right.  And anything to prepare for your

Edo Macan                               December 17, 2025
Brous v. Eligo Energy, LLC

Page 190

1           deposition other than what you just told me?

2      A    No.  We -- we went over my -- we went over my report

3           and you know, just the general sort of preparation

4           for deposition.  It's been a while since my last

5           deposition, and, you know, just re-jog my memory on

6           how the process worked, procedural things and things

7           like that.

8      Q    Okay.  A few more questions about some of these

9           definitional terms in your report.  In particular,

10          paragraph 131, if you would.  It's page 56.

11     A    131, is that --

12     Q    Yes.

13     A    Okay.

14     Q    And in paragraph 131, you address the meaning of the

15          term in Eligo's customer contract transportation

16          costs, correct?

17     A    Mm-hmm.  Mm-hmm.

18     Q    You say it's a term that rarely comes up in

19          electricity pricing, right?

20     A    Yeah.

21     Q    And I take it that you kind of reach that conclusion

22          by virtue of your experience reviewing and dealing

23          with electricity pricing contracts, right?

24     A    Based on my professional experience, like I said,

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 191

```
 1              many years in it, I can elaborate but yeah,

 2              transportation cost comes up often and out of

 3              commodities, but not --

 4              (Sneezes)

 5     A    Bless you.  But not electricity.

 6     Q    You know, and in that breadth of experience that

 7              you're talking about may be impossible to say, but

 8              your best estimate, how many ESCO retail supply

 9              contracts have you had a chance to look at?

10                   MR. BLANKINSHIP: I'm just going to object

11              that that's vague, but you can answer.

12                   THE WITNESS: I don't think I can even give

13              you an estimate.  It -- it, you know, it would be

14              that the contracts that I've reviewed as a -- as

15              part of all these, you know, litigation cases that

16              dealt with the subject matter.  I've worked in

17              hundreds of cases -- I cannot even -- I cannot even

18              give you an estimate.  Yeah.

19       BY MR. MEADOWS:

20     Q    All right.  In the context, and I think my question,

21              I said retail energy supply, I just mean retail

22              contracts between ESCOs and customers.  That's what

23              --

24     A    And that's -- that's how I interpret it.  Yeah.
```

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

                                                    Page 192

```
 1      Q      Okay.  And has it -- an ESCO ever called on you to
 2             help advise it as to how to phrase or prepare a
 3             retail contract with a customer?
 4      A      No.
 5      Q      In the contract, the retail ESCO contracts that you
 6             have reviewed, have you observed that they use
 7             different language from ESCO to ESCO?
 8                    MR. BLANKINSHIP: Objection.  Vague.
 9                    THE WITNESS: Can you point me specifically
10             to what you mean?
11        BY MR. MEADOWS:
12      Q      Well, yeah, for example, the -- well, have you seen
13             an ESCO retail contract that in terms of setting
14             retail pricing, makes specific reference to the
15             wholesale cost of procuring energy?
16      A      I don't remember.
17      Q      What about an ESCO retail contract that makes a
18             specific reference to a specific margin that will be
19             charged by the ESCO?
20      A      Again, I just don't remember.
21      Q      Can you recall seeing any ESCO retail contracts
22             that, you know, indicated that, you know, very
23             specifically, that the pricing would be on a cost-
24             plus basis?
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 193

1    A    Containing that language you mean?

2    Q    Yeah.  Yes.

3    A    Yeah, I -- I don't remember.  I can -- I can tell

4         you why.  So that I mean that the last, Direct was

5         the last litigation dealing with retail pricing that

6         I've been sort of a part of.  I don't even remember

7         the contractual language in -- in the contracts that

8         were at issue then.  When you said -- you said

9         "business and market conditions," it did ring a

10        bell, but I -- I just, it's not, you know, so far in

11        my career, I've been very sort of quantitatively

12        focused economist, and I've kind of dealt with that

13        and so --

14   Q    But aren't you drawing on your experience with ESCO

15        contracts to help the interpretations of the terms

16        "market pricing and other market price factors" in

17        this case?

18   A    I'm drawing on my industry experience to interpret

19        what these industry terms -- not interpret --

20        quantify what those industry terms mean in the

21        context of -- in the context of a contract.

22   Q    Turning back to transportation costs on page 131 --

23        I'm sorry -- paragraph 131, you say, "Based on my

24        experience" -- this is the second sentence -- "the

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 194

```
 1              only transportation cost for electricity that could
 2              be potentially called the transportation cost is so-
 3              called wheeling cost," correct?
 4    A    Mm-hmm.   Mm-hmm.
 5    Q    And so is it based on -- based on that, is it your
 6              view that the reference to transportation costs in
 7              the customer contract refers to "wheeling costs"?
 8    A    No, no.  The -- the -- what -- what -- the meaning
 9              of this sentence is the following.  I -- I thought
10              deep and hard, what could transportation cost mean
11              in the context of an ESCO, an entity procuring
12              buying power wholesale to sell retail, especially
13              given that the ESCO is within NYISO.  You know, I
14              think calling, you know, classifying wheeling rates
15              and I can explain what those are as transportation
16              costs would I think be technically inaccurate.  But
17              it would be sort of an omission -- omission by a
18              non-professional or not someone versed in the
19              industry that would be understood if we're talking
20              about, you know, an area of the country where
21              there's no organized markets like ISOs, where, you
22              know, utilities have to, if you will, transport --
23              it's not transportation -- but they -- they wheel
24              energy between different service areas.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 195

```
 1                   And so that's kind of what that meant.  I
 2         mean, the -- the -- it -- it sounded like a term
 3         that did not really have, you know, that was -- I --
 4         I did not see anything that would, in my mind be,
 5         that I would consider a transportation cost that
 6         Eligo would have in -- in this context.
 7    Q    Now that phrase that's in the agreement -- well let
 8         me ask it this way.  That phrase "transportation
 9         costs," that appears word for word in the customer
10         contract, right?
11    A    Transportation costs, yes.
12    Q    And isn't it true that that phrase is the only place
13         in the sections of the contract that deal with
14         price, where a cost, where the word "cost" is
15         actually used?
16    A    Could you please repeat?
17    Q    Well, let me ask you it this way.
18    A    No, no, you did it right.
19    Q    Oh.
20    A    I just didn't -- just -- if you could say it one
21         more time exactly what you said.
22    Q    Okay.  Sure.  The phrase "transportation costs,"
23         that's the only place in the contract, in -- in the
24         parts of the contract that deal with, you know, the
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

                                                           Page 196

1              variable price or the price where the term "cost" is

2              actually referenced.  Is that -- or not referenced

3              but actually used.  You see what I'm asking?

4      A       You were saying, is the word "transportation"

5              mentioned anywhere else without having cost next to

6              it?

7      Q       Let me scratch it and start over.

8      A       Okay.

9      Q       Let's just look at the -- remember we looked earlier

10             at the box in the contract --

11     A       Yeah.

12     Q       Labeled variable price, how it's determined.

13     A       Yeah.

14     Q       Right?  The word "cost" appears in that box only in

15             reference to transportation costs, correct?

16                     MR. BLANKINSHIP: I'm objecting.  That

17             statement calls for a legal conclusion.

18                     THE WITNESS: I mean, as a statement of

19             fact.  Yes.  This box where costs only appears next

20             to transportation costs.

21        BY MR. MEADOWS:

22     Q       And I mean, as someone who's worked in the energy

23             industry for a long time, I mean, you would

24             certainly expect that Eligo as a company, you know,

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 197

```
 1              when it wrote this contract, was familiar with the

 2              wholesale market for energy, correct?

 3                      MR. BLANKINSHIP: Objection.  Outside the

 4              scope.

 5                      THE WITNESS: Wholesale market for

 6              electricity or some --

 7         BY MR. MEADOWS:

 8      Q    Electricity -- I'm sorry -- yes.

 9      A    Yeah, I would.

10      Q    And does it give you any pause that despite that,

11              this customer contract, does it make any specific

12              reference to the wholesale market?

13                      MR. BLANKINSHIP: Objection.  Lack of

14              foundation.

15                      THE WITNESS: It -- it did give me pause

16              and -- and I mean, I -- like I said, I -- I -- my

17              role was not to interpret what the, you know, what

18              the contract meant, but as far as transportation

19              costs, I -- I, it's my understanding that Eligo was

20              selling gas as well, but not in the New York, or at

21              least certainly, it's not sort of part of this

22              engagement.

23                      So I haven't looked specifically where

24              that buisness activity was.  And I -- I was under
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 198

1           the assumption that, you know, maybe this is a
2           generic language that I've seen examples where
3           companies would have same catch-all language that,
4           sort of, kind of catches all things.
5                       And that's -- yeah.  So because my role
6           was simply to interpret -- not interpret, my role
7           was to, you know, put a concrete quantification or -
8           - or, you know, what does that mean in the context
9           of the -- of the contract?
10                       Transportation costs just, it really
11           didn't make any sense.  And -- for -- for the
12           reason, I mean, needless to be said, electricity is
13           a non-storable commodity.  It cannot be stored, let
14           alone shipped.  So how can you talk about
15           transportation costs of electricity?
16      BY MR. MEADOWS:
17      Q    Yeah.  Looking at paragraph 132, there you address
18           the meaning of the contractual phrase other market
19           price factors, right?
20      A    Mm-hmm.
21      Q    And you say it's a catch-all that means the pass
22           through of other small miscellaneous fees or charges
23           associated with the wholesale market price that may
24           not be explicit -- explicitly itemized in the market

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 199

1            pricing from the wholesale market, correct?

2    A    Mm-hmm.  Mm-hmm.

3    Q    Now here again, the phrase "other market price

4         factors" doesn't contain the word "wholesale" at

5         all, we can agree on that.

6    A    Yes.

7    Q    And is this another example where the lack of the

8         word "wholesale" in that section of the agreement

9         gave you some pause as to whether this was really

10        the correct interpretation of that phrase?

11                   MR. BLANKINSHIP: Objection.  Sorry.

12        Objection.  Mischaracterizes prior testimony, lacks

13        foundation.

14                   THE WITNESS: Yeah.  I honestly don't

15        recall what the "again" refers to, so I'll answer

16        the question without the "again" because I don't --

17        I don't really know which question you were building

18        this up on.

19     BY MR. MEADOWS:

20    Q    Okay.

21    A    Yeah.  Did you want to rephrase or?

22    Q    Yeah.  Well, so your opinion is that "other market

23        price factors" refers to miscellaneous fees and

24        charges associated with the wholesale market price.

Edo Macan                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 200

```
 1              Did it give you any pause in reaching that
 2              conclusion that the phrase "other market price
 3              factors" doesn't contain the word "wholesale" at
 4              all?
 5      A       No.
 6      Q       Wouldn't you have expected, as an experienced energy
 7              industry expert, that if Eligo intended to, you
 8              know, as you said, index its retail prices to the
 9              wholesale cost of energy, it would have said so
10              explicitly in this customer agreement?
11      A       I -- I have no experience opining what the
12              appropriate legal language to achieve that effect
13              would be, I'm merely going over the fact that there
14              is explicit language saying all rates shall be
15              calculated on a monthly basis in response to this,
16              this, and that.  As an economist looking at this,
17              we're talking about calculation, we're talking about
18              every single rate being calculated, every single
19              rating being calculated monthly in response to three
20              things that are basically industry terms that are
21              not -- you know, that -- that have -- that -- that
22              have a meaning in the context of an ESCO, but are
23              not specified.
24                      You know, it is -- this is not an S -- S&P
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 201

1          500 swap where it's unequivocally clear which

2          specific, you know, commodity index this is sort of

3          tied to, but in the context of an ESCO, in the

4          business of buying wholesale and selling retail, I -

5          - I don't see any other plausible explanation.  But,

6          you know, it's the -- it's the price of commodity

7          they're buying.

8     Q    Now, again, the same language relating to how the

9          variable price is determined in the box to the right

10         of that, there's no reference -- well, scratch that.

11         Let me see.  I'll withdraw that question.  I think

12         you said a couple of times, correct me if I'm wrong,

13         but that, you know, you're looking at and applying

14         the variable price term in your role as an

15         economist; is that fair?

16    A    I'm quantifying the -- the three industry terms that

17         are market pricing, transportation costs, and other

18         market price factors under a legal interpretation,

19         under alternative legal interpretations.

20    Q    I guess what I'm trying to get at is, in your view,

21         is there any difference between how an economist

22         would look at this customer contract and how a

23         lawyer would read it, to your knowledge?

24    A    Sounds like a legal question because I don't know

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 202

```
 1              how a lawyer would read it.  I could only tell you

 2              how economists would read it, or somebody in the

 3              market.

 4        Q     I guess what is it about your expertise as an

 5              economist that leads you to read the phrase "market

 6              pricing" as a reference solely to the wholesale

 7              market?

 8                    MR. BLANKINSHIP: Objection.  Asked and

 9              answered.

10                    THE WITNESS: Yeah.  I -- as I've sort of

11              explained before, it's the context of the situation.

12              We're dealing with a -- with a -- on a -- with a

13              contract dispute, the - the parting question, ESCO

14              in the business of buying wholesale and selling

15              retail.  And so in that context, to me, market

16              pricing can mean only, you know, the cost of

17              purchasing power and -- and like I said, I'm not

18              aware of any ESCOs buying from ESCOs and selling to

19              other ESCOs, therefore, the relevant cost is -- is

20              everyone's buying from NYISO.  Whether the Day-Ahead

21              or the Real-Time Market, it's the -- it's the

22              procurement cost.

23        BY MR. MEADOWS:

24        Q     If you turn to paragraph 13B as in Boy, and in that
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 203

1              paragraph you start off by making reference to the

2              variable price term again, correct?

3       A      Yes.

4       Q      And then proceed to say that, you know, described

5              what you concluded from your review of Eligo's

6              discovery documents and how Eligo went about setting

7              the variable price term, right?

8       A      Yeah.

9       Q      And then you say, in the last sentence of 13B, "This

10             practice is inconsistent with calculating a rate

11             that varies in response to the three inputs listed

12             in the variable price term.  Further, by its own

13             admission, Eligo used factors including undisclosed

14             and subjective considerations such as legislative

15             and regulatory uncertainty that are nowhere

16             mentioned in the variable price term," right?

17      A      Mm-hmm.

18      Q      So is it, I take it then it's your opinion that the

19             use of factors to calculate the variable price that

20             are nowhere mentioned in the variable price term is

21             inappropriate; is that fair?

22      A      The use of what -- the use of factors?  I'm sorry,

23             can -- can you just -- the very last thing that you

24             said, could you just repeat it again?

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 204

```
 1     Q      Yeah.  That it would, that based on that part of

 2            your report, I take it that it's your opinion that

 3            it is inappropriate to calculate a variable rate

 4            under this contract by using factors that are

 5            nowhere mentioned in the variable price term.

 6     A      Let me just read the -- what I said here.  Yeah.  I

 7            mean, a -- as a -- as a non-attorney, if -- if

 8            you're -- you're pricing things outside of the, you

 9            know -- yeah.  Yes.  Short answer would be yes.

10     Q      Now, in doing your damage calculations, isn't it

11            true that you have applied factors that are nowhere

12            mentioned in the variable price term?

13                    MR. BLANKINSHIP: Objection.  Lacks

14            foundation.

15                    THE WITNESS: Which specific factors are --

16            you want?

17       BY MR. MEADOWS:

18     Q      Well, let's start with margin.  You include a margin

19            in your method one and method two damage

20            calculations, don't you?

21     A      Yes, I do.

22     Q      Does the word "margin" appear anywhere in the

23            variable price term?

24     A      No, it doesn't.
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 205

```
 1    Q    So what is the source then by which you conclude
 2         that it's appropriate to include a margin in your
 3         damage calculations?
 4    A    It's -- it's -- as I explained in the testimony,
 5         it's a -- it's a construct of -- of a contractual
 6         price.  Looking at it as an economist, you cannot
 7         run a business unless you, you know, can make some
 8         money doing it.  And I've tried to -- I've -- I've,
 9         you know, I've done it in a way that economically
10         makes sense.  And -- and this means, you know, an
11         ESCO that's purely, you know, buying wholesale and
12         just reselling to retail at a cost that would be
13         unsustainable in the long term because they, you
14         know, they need to pay for overhead, they need to
15         pay for their expenses, they need to make some
16         money.  That's -- that just -- it's common sense,
17         so.
18    Q    So is it the case then that that commonsense
19         consideration overrides the language of the variable
20         price term in the limited case of margin?
21              MR. BLANKINSHIP: I'm going to object.  It
22         calls for legal conclusion.
23              THE WITNESS: Yeah.  I mean, it sounds like
24         a legal question what you're asking me.  I'm -- I'm
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 206

```
 1          -- I can opine a non -- I can give you a non-legal

 2          answer.

 3       BY MR. MEADOWS:

 4    Q    I'm asking about your own analysis, your own

 5          thinking on this question.

 6    A    Yeah.

 7    Q    Because in Paragraph 13B, you criticize Eligo for

 8          using factors in rate setting that are nowhere

 9          mentioned in the variable price term.  But margin

10          isn't mentioned either and --

11    A    Sure.  Sure.

12    Q    -- I'm trying -- I'm trying to figure out how you

13          reconcile that criticism of Eligo on the one hand

14          with your inclusion of margin, which is completely

15          unmentioned on the other.

16    A    Sure.  And then --

17               MR. BLANKINSHIP: There's no question

18          pending.

19       BY MR. MEADOWS:

20    Q    That's the question.  How do you reconcile that?

21               THE WITNESS: What did you say?

22               MR. BLANKINSHIP: No, you can answer that.

23          Now he's asked a question, so you can answer it.

24               THE WITNESS: Okay.  Sorry, I got confused
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 207

```
 1         in that.  You're going to have to repeat the

 2         question for me.

 3      BY MR. MEADOWS:

 4   Q   Okay.

 5   A   Yeah.  I'm sorry.

 6   Q   Fair enough.

 7   A   Yeah.

 8   Q   Like I said, in 13B, you criticize Eligo for

 9         considering factors that, as you say, are nowhere

10         mentioned in the variable price term, but in your

11         own damage calculations, you include a margin, even

12         though margin isn't mentioned in the variable price

13         term either.  So how do you reconcile those two

14         things?

15   A   Yeah.  Just give me one second.

16              MR. BLANKINSHIP: I'm going to object,

17         that's asked and answered.

18              THE WITNESS: Yeah.  I -- I have to give

19         you a little bit lengthier explanation on this

20         because I just -- I'm thinking how to tell it

21         succinctly, and the -- the gist of what I'm saying

22         is the following.

23              There is a contract, and under a specific

24         legal interpretation of what this contract means, it
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 208

```
 1          says, "Company will charge customers, calculate" --
 2          exact language -- "shall calculate on monthly basis
 3          in response to market pricing, transportation costs
 4          and other market price factors."
 5                    This points to a process where an ESCO
 6          performs a calculation in response to what I
 7          perceive as, you know, underlying commodity or -- or
 8          index, and tries to adjust the price.  It's charging
 9          the -- the customers accordingly.
10                    And so by saying in 13B, "Eligo used
11          factors undisclosed and subject to consideration,
12          such as legislative and regulatory uncertainty," and
13          this is only one factor mentioned here.  There were
14          other examples that -- that I cite, I think,
15          throughout my testimony, I'm merely saying that this
16          is not -- this is not something that has been sort
17          of disclosed to a client.  My understanding -- my
18          understanding, and again, this is sort of, a legal
19          issue that ESCOs had an obligation either to get a
20          written confirmation that -- that clients were
21          willing to switch to the variable rate service, or
22          that contractual terms had to be spelled out in
23          writing to them.
24                    It's also my understanding that Eligo
```

Edo Macan                                  December 17, 2025
Brous v. Eligo Energy, LLC

Page 209

```
1        never attempted or has provided a formulaic

2        disclosure to its -- to its customers as to

3        specifically how they're going to be priced.  And so

4        given that they haven't -- I'm sorry -- I -- I --

5        Eligo never obtained, you know, signed -- I should -

6        - I should just consult the part of the testimony

7        where I say that, but because they did not -- they

8        did not get a sort of a formal confirmation on paper

9        that formal acceptance by the customers that they're

10       willing to -- to switch to the variable rate, they

11       had a -- they had an obligation to send in writing

12       specifically how they're going to charge for these

13       things.  And so the only thing that I've seen that

14       was communicated, sort of, in writing is that

15       contractual language that we just looked at, and

16       that contractual language does not point out, you

17       know, to factors like legislative and, you know,

18       regulatory uncertainty.

19                   And so -- so that's that remark.  What

20       you're trying to say is, well, isn't that unfair if

21       then you are sort of allowing them to have, you

22       know, some return on top of that?  And -- and I'm

23       saying that's just economically, what you would

24       expect.  I -- I don't see this as inconsistency at
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 210

```
 1            all because I think it would be ludicrous that I,

 2            you know, assume that an ESCO makes no money, you

 3            know, serving its customers.

 4       Q    So because a profit would be economically expected,

 5            you think it -- it's okay then to include within a

 6            calculation of the variable price term; is that

 7            right?

 8                      MR. BLANKINSHIP: Objection.

 9            Mischaracterizes his testimony.

10                      THE WITNESS: Yeah.  I don't think that's

11            what I said.

12         BY MR. MEADOWS:

13       Q    Well, I -- I'm still trying to understand because

14            here again, 13B, you very specifically criticize

15            Eligo for including factors that are nowhere

16            mentioned in the variable price term, but margin

17            isn't -- I -- margin isn't mentioned either.  What

18            is -- so what is the methodology, the source by

19            which you believe that margin is appropriate to take

20            into consideration in applying the variable price

21            term?

22                      MR. BLANKINSHIP: Objection.  Asked and

23            answered.  Mischaracterizes the report.

24                      THE WITNESS: Basic -- basic economics.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 211

```
 1              Anyone running a sustainable business, you know, it
 2              needs to be profitable.  If it's not profitable or
 3              they don't pay their cost, maybe it's not profitable
 4              for some time, but in the long term -- in the long
 5              term, you know, it must be a profitable operation.
 6              If that's not the case, they're going to cease to
 7              exist.
 8          BY MR. MEADOWS:
 9      Q    And --
10      A    It's a basic principle of economics and competition.
11      Q    Okay.  Is another basic principle of economics
12              pricing a product somewhere in the zone of where
13              your competitors are pricing it?
14                      MR. BLANKINSHIP: Objection.  Vague.
15              Outside the scope.
16                      THE WITNESS: What do you mean by zone, do
17              you mean what they are charging?
18          BY MR. MEADOWS:
19      Q    Or is charging a -- being cognizant of a market
20              price and trying to meet it, is that an issue of
21              basic economics as well?
22                      MR. BLANKINSHIP: Objection.  Vague.
23                      THE WITNESS: Define market price.
24          BY MR. MEADOWS:
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 212

```
 1      Q    You don't know what the phrase "market price" means?

 2      A    In the context of what you just said, I don't

 3           because I think we're --

 4      Q    What about, is there a market -- is there a retail

 5           market price for energy or electricity in New York?

 6      A    There is a retail market price for energy in New

 7           York.  Yeah.

 8      Q    So would it be a basic principle of economics for

 9           somebody selling electricity in New York to take

10           account of the market price of retail electricity?

11      A    If they have a contract that says you can charge

12           whatever you want at your discretion, yes.

13      Q    Well, but you just told me that margin is okay to

14           include because it's the basic principle of

15           economics but now it sounds like you're adding

16           something else, too.  Is it -- so is it -- it -- in

17           your view, is the pricing of Eligo's energy or

18           electricity dependent on the language of the

19           contract, basic principles of economics, or some

20           combination of both?  That's what I'm trying to

21           figure out.

22      A    I -- I think --

23                    MR. BLANKINSHIP: Objection.  Compound and

24           mischaracterizes testimony.  Lack of foundation.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 213

```
 1                THE WITNESS: I -- I think --
 2                MR. BLANKINSHIP: Calls for legal
 3          conclusion.
 4                THE WITNESS: I -- I think the -- however I
 5          shall call this misunderstanding, let's say, is
 6          because you're -- you're taking what I'm saying as
 7          if I'm reading the contract.  The price that should
 8          have been charged is market price plus
 9          transportation costs plus other market price
10          factors, and that's not what I'm saying.
11                I'm saying contract says that the rates
12          shall be calculated on monthly basis in response to
13          these factors.  Okay?  And so the -- the -- that --
14          that -- the -- in the context, like I've said
15          numerous times so far, in the context of an ESCO
16          buying power wholesale, selling retail, the -- the
17          quantification of each of these parameters that I
18          have proposed is -- is the -- is the -- is the only
19          meaningful way to -- to operationalize this
20          interpretation of the law.  And I think what you're
21          saying is, you know, where does the margin come from
22          in all this?
23                And I'm saying that's part of the, you
24          know, it's part of the putting this in economic
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 214

1          reality.  You -- you start with the legal.  The way

2          it works, there is language.  Attorneys, in this

3          case, my attorneys or plaintiffs' attorneys have

4          interpreted legal meaning, provided alternative

5          legal meanings for what this contract can mean or

6          means, because it's my understanding that that issue

7          has not been resolved.

8                    And with -- and -- and typically, there

9          would be one interpretation that has been sort of,

10          you know, adjudicated on or -- or agreed upon.  But

11          here there -- there are multiple, and within each,

12          I'm trying to quantify this and -- and, you know,

13          basically, take these industry terms and quantify

14          them for what they are, and that's all I'm doing.

15    Q    Do any of the industry terms that you see in the

16          variable price term, in your view, include the

17          concept of a margin?

18                    MR. BLANKINSHIP: Objection.  Vague.

19                    THE WITNESS: Do the -- do -- I'm sorry.

20          Do any of the industry -- can you please repeat it?

21      BY MR. MEADOWS:

22    Q    Yeah.  I think what you've told me is that the

23          variable price term contains terms that have a

24          meaning within the industry to an economist, right?

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 215

```
 1    A    I -- the -- the -- I'm sorry, you're going to have
 2          to repeat it again.  The -- the -- can you please
 3          repeat it again?  The variable term.
 4    Q    Let me ask you this way.
 5    A    Yeah.
 6    Q    Which, if any, of the -- of the actual words in the
 7          variable price term, as you read it, are broad
 8          enough to encompass, including a profit margin for
 9          Eligo?
10    A    Okay.  And when you say, "variable price term,"
11          you're -- you're referring to the -- where is -- I'm
12          sorry.  I don't -- I'm going to look at my exhibit -
13          -
14               MR. BLANKINSHIP: The contract?
15               THE WITNESS: Yeah, the contract.  I
16          thought I had it.
17               MR. MEADOWS: Exhibit 6.
18               MR. O'TOOLE: Could it be on the retail
19          report?
20               MR. MEADOWS: No, it might be there,
21          there's a -- it's stapled, so it looks like it.
22               THE WITNESS: Okay.  Oh, I'm sorry.  Yeah.
23          Okay.  Sorry, Dave.  Can you please --
24               MR. MEADOWS: Well, let's just be sure
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 216

```
 1              we're talking about the same thing.
 2                      THE WITNESS: Hopefully, last time.  Yeah.
 3              Yeah.  Yeah.  Yeah.
 4        BY MR. MEADOWS:
 5     Q    When we say, "variable price term," you define that
 6          term in the report, right?
 7     A    Yeah.  Yeah.
 8     Q    And it's basically consistent with what you see in
 9          the contract where it says, "Variable price is
10          determined," right?
11     A    Correct.
12     Q    So my question is within that section which, if any
13          of the terms that you see there, in your view, are
14          broad enough to encompass the concept of Eligo
15          earning a margin.
16     A    I see what you're saying.
17                      MR. BLANKINSHIP: Objection.  Lack of
18              foundation.  Vague.
19                      THE WITNESS: I -- I understand now what
20              you're saying.  The way -- I'll tell the first word
21              and then let me finish the -- the whole thought.
22              None.  Because the -- the way that this is phrased
23              is not that the rates are, you know, and here, you
24              know, here's the formula.  It's -- that merely says
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 217

```
 1          that it's calculated on a monthly basis in response

 2          to market pricing, transportation costs, and other

 3          market price factors.

 4               It does not say, you know, it will not

 5          include any -- or it -- or it will include, you

 6          know, a profit margin.  It doesn't -- it doesn't go

 7          into that level of specificity.  So to same extent

 8          why I interpreted market pricing to mean what I've

 9          done in -- under the method one, I've -- I've

10          basically, you know, done the -- the reasonable, you

11          know, adders on top of that actually, two different

12          reasonable ones.

13      BY MR. MEADOWS:

14   Q    You mean 5 percent and 6 percent is the two

15          different adders?

16   A    Well, one was the -- one was the -- pretty much the

17          -- the markup that has -- that the regulator, which

18          is the New York PSE, has found to be adequate, you

19          know, for fixed rate -- for -- for -- adequate for

20          fixed rate customers.  And the other one was Eligo's

21          own -- sorry -- I need to drink water -- Eligo's own

22          margin, 6 percent was the profit margin that they

23          were seeking on fixed rate customers.

24   Q    Right.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 218

1    A    It's a 6.38 markup.

2    Q    I understand that I -- but --

3    A    Yeah.

4    Q    I just want to be sure I have your full testimony on

5         what it is that allows you to include margin in

6         determining the variable price.  And I think you've

7         told me it's common sense, it's a basic principle of

8         economics, even though you concede it's not

9         mentioned there.  Is there anything else, any other

10        consideration that in your view allows margin to be

11        included in this calculation?

12              MR. BLANKINSHIP: Objection.  Asked and

13        answered.

14              THE WITNESS: Yeah.  No.  No.

15      BY MR. MEADOWS:

16   Q    All right.  Now, are there any other considerations

17        of any kind that in your view can be included in the

18        variable price determination by reference to common

19        sense or basic economic principles?

20              MR. BLANKINSHIP: Objection.  Vague.

21              THE WITNESS: Yeah, you're going to have to

22        be more specific than that.  Sorry.

23      BY MR. MEADOWS:

24   Q    Well, I can't, because I'm asking you if you're --

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 219

```
 1            in your view, there's anything else you think can be

 2            or should be included in the variable price

 3            determination under the rubric of general economic

 4            principle -- basic economic principles, or common

 5            sense?

 6                       MR. BLANKINSHIP: Same objection.

 7                       THE WITNESS: To the best of my ability,

 8            I've -- I've operationalized or made concrete

 9            calculation of the contract rate under each, you

10            know, interpretation, legal interpretation of -- of

11            the contractual language.

12       BY MR. MEADOWS:

13     Q    And well, to be specific about that, if you look at

14            Table 1 on page 62.

15                       MR. BLANKINSHIP: Just give me a second.

16                       MR. MEADOWS: Yeah, sure.

17       BY MR. MEADOWS:

18     Q    In that table, as I understand it, you're giving a

19            kind of a listing of the procurement costs that in -

20            - are included in your damages analysis for the

21            named plaintiffs under at least method one, correct?

22     A    Method one, yeah.  I think this is method one.

23     Q    Okay.

24     A    Yes, that's correct.
```

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 220

| | | |
|---|---|---|
| 1 | Q | All right.  So I want to ask you about, because one |
| 2 | | of those categories is mandatory RECs.  We talked |
| 3 | | about RECs earlier, right? |
| 4 | A | Mm-hmm.  Mm-hmm. |
| 5 | Q | Now, RECs aren't mentioned in the variable price |
| 6 | | term, are they? |
| 7 | A | No, they're not. |
| 8 | Q | So similar question, what is the basis on which you |
| 9 | | conclude that RECs can be accounted for in the |
| 10 | | variable price term if they're not actually |
| 11 | | mentioned there? |
| 12 | A | Yeah.  Context of the situation.  An ESCO that's |
| 13 | | operating in New York must procure minimum amounts |
| 14 | | of RECs and -- and ZECs to -- to basically comply |
| 15 | | with state regulations.  So in my mind, that was |
| 16 | | unnecessary to be explicitly stated in the -- in the |
| 17 | | contractual term because it comes as a given, given |
| 18 | | the situation at hand. |
| 19 | Q | But that -- that regulatory requirement that you're |
| 20 | | referring to came about in 2019 through the reset |
| 21 | | order, correct? |
| 22 | | MR. BLANKINSHIP: Objection.  Lack of |
| 23 | | foundation. |
| 24 | | THE WITNESS: My -- no, I -- I think you're |

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 221

1          referring to the voluntary RECs.  The mandatory RECs
2          were always there, I had a -- I think I have a table
3          in my report that lists what the -- what the RECs
4          percentage is, you know, what -- what were the
5          specific mandatory REC and ZEC requirements over
6          time, yeah.
7     BY MR. MEADOWS:
8   Q      And fair enough.  You do break down, in Table 1, you
9          do break down mandatory RECs versus voluntary RECs.
10  A      Yeah.
11  Q      So voluntary RECs, certainly prior to the reset
12         order were not required by any regulation, correct?
13  A      That's my understanding.
14  Q      Right.  And so -- now -- so as to those, what's the
15         basis on which you conclude that it's appropriate to
16         include them in a determination of the variable
17         price?
18  A      So now you're asking me specifically about voluntary
19         RECs, not RECs, right?
20  Q      Yes, right.
21  A      Because before it was RECs.  Because under the legal
22         interpretation provided to me by counsel, the --
23         it's my understanding that they have -- that Eligo
24         procured, was offering variable rates that had 30

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 222

1          percent REC coverage.  Again, there's -- at some
2          point, after the reset order, it became at least 50
3          percent.  And in -- in the formulation of the -- of
4          the give -- and -- and -- sorry.  I lost my train --
5          train of thought -- and -- and I -- I believe that
6          has been disclosed in some shape or form.
7                    Customers knew either through marketing
8          materials by Eligo, they -- they --, you know, it
9          wasn't a -- this wasn't a freebie that nobody knew
10         about.  They were selling something that is green.
11         And so it's a, you know, it's -- it's a legitimate
12         cost that I took into account, like all the other
13         ones here.  Is this my water?
14                    MR. BLANKINSHIP: Yeah.
15                    THE WITNESS: Sorry.  I'm just running out
16         of fuel.
17      BY MR. MEADOWS:
18   Q    I guess I'm still unclear as to why you think it's
19         okay to include the voluntary RECs in the -- in your
20         calculation of the variable price.  I understand
21         that it's a legitimate cost that Eligo incurred.
22   A    Sure.
23   Q    But there's again, just to level set.  There's no
24         reference whatsoever to voluntary RECs in the

Edo Macan                                     December 17, 2025
Brous v. Eligo Energy, LLC

Page 223

```
 1              variable price term, right?
 2    A    No, it's not, but that's specifically what I did.  I
 3         -- I -- I'm lacking a good word -- word for it, but
 4         I said I -- you know, operationalized or -- or
 5         provided, you know, or implemented the legal
 6         interpretation as a part of that implementation.
 7         I've looked at the facts and one of the facts was,
 8         you know, everyone has to provide mandatory RECs,
 9         including Eligo, and Eligo disclosed and -- and was
10         selling a product that was 30 percent green, and
11         that's it.  So that -- that is not explicitly
12         mentioned in the -- in the contractual terms.  But
13         come to think of it, you know, the -- the RECs would
14         be, you know, part of -- part of could be
15         considered, you know, part of market pricing
16         because, you know, it's a -- it's a financial
17         instrument that -- whose value fluctuates on the
18         market.  That's what they bought and -- and, you
19         know, how much they paid for it varied over time.
20         And so in that sense, RECs were, you know, taken
21         into account, are mentioned under the arch --
22         umbrella of market pricing.
23                   Same with capacity price.  Capacity prices
24         are not explicitly listed.  But, you know, if you're
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 224

```
 1              a load-serving entity in New York, you're going to
 2              get charged capacity, you know, you're going to get
 3              charged capacity prices.  And -- and that's what it
 4              is, it goes under the same umbrella.
 5        Q     But -- okay.  But earlier, and we can go back and
 6              look again if you'd like to, Mr. Macan, but we
 7              talked about how you define market pricing as the
 8              wholesale market.  Are you now adding RECs to the
 9              definition of market pricing?
10                        MR. BLANKINSHIP: Objection.
11              Mischaracterizes prior testimony.
12                        THE WITNESS: Yeah.  I -- can we look at
13              the record specifically what I said?  Because I
14              don't -- I don't believe I said market pricing is
15              only energy and capacity and --
16          BY MR. MEADOWS:
17        Q     Your report on, which we looked at paragraph 130
18              says, "market pricing means the wholesale market,
19              period."
20        A     Yeah.  I -- we've talked about that.  So --
21        Q     Right.  So would you -- are you now appending RECs
22              to that definition?
23        A     No, no, I'm -- I'm not appending anything.  I'm not
24              appending anything.  I think you're just taking the
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 225

```
 1              -- the sentence that is, you know, short and either

 2              misunderstanding or misinterpreting what I said, I -

 3              - means the wholesale market, you know, said in that

 4              form, in the context that this really means market

 5              pricing.  It's not.  In my interpretation, it's not,

 6              you know, retail market pricing because they're

 7              buying in wholesale and they're selling retail.

 8                   It's the wholesale market pricing.  I did

 9              not say in any shape and form that RECs are, you

10              know, not -- not part of that.  And the whole idea

11              of market pricing is a business, you know, has

12              expenses.  Some of these expenses in this case

13              that's got too general.  An ESCO needs to procure

14              energy.  It needs to, you know, set -- it has these

15              other costs.  Some of these other costs are

16              fluctuating with the market, REC is one of them and

17              market pricing would pertain, okay.  What is the

18              price of RECs?  There's a market price for RECs.

19              It's not an administrative fee, it's a market price,

20              same as energy.

21    Q       And there's a retail market price for electricity,

22              too, right?

23    A       Correct.

24    Q       But you're excluding that for market pricing, aren't
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 226

1        you?

2    A   Because ESCO is not buying in retail prices and

3        reselling, they're buying wholesale and reselling.

4    Q   By the way, RECs aren't bought or sold on the

5        wholesale market as you refer to it here, are they?

6                    MR. BLANKINSHIP: Objection.  Lacks

7        foundation.

8                    THE WITNESS: I -- I don't think I've said

9        that.

10    BY MR. MEADOWS:

11   Q   Well, earlier I asked you where RECs are bought and

12       sold, and I think you told me you don't know.  So I

13       mean, or -- it's not your opinion here --

14   A   Yeah.

15   Q   -- sitting here today, that RECs are bought and sold

16       on the same wholesale market that you're referring

17       to on -- in paragraph 130?

18   A   I've said -- I said that they're fluctuating with

19       that these are market instruments, that there --

20       there's -- they're market instruments and -- and

21       there is a market price for RECs.  That's -- that's

22       what I said.

23   Q   Right.  But I also asked you if I wanted to buy a

24       REC, where would I go to do that?  And I think then

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 227

```
 1            you told me you don't know.

 2      A     I -- I don't know operationally how would you go

 3            about doing it.  Correct.

 4      Q     Right.  And given that you cannot tell me, right?

 5            That RECs are sold on the same wholesale market that

 6            you're referring to in the first sentence of

 7            paragraph 130, can you --

 8      A     Objection.  Mischaracterizes his testimony.

 9                  THE WITNESS: Wholesale market is -- is --

10            is a -- is a very general term.  Can you buy RECs in

11            -- in the New York ISO Day-Ahead energy market?  No.

12            Can you buy RECs in the New York -- New York Real-

13            Time Market?  No.  It's just not how it works.  I --

14            I -- yeah.  I just cannot tell you specifically how

15            one does go about buying RECs, and that's -- that's

16            what I've stated.  I'm -- I'm not saying that RECs

17            are retail or wholesale, everyone has -- everyone --

18            everyone is basically constrained by the same

19            environmental obligations and any load-serving

20            entity, you know, needs to satisfy them, whether

21            it's an ESCO or -- or an utility they have to buy

22            mandatory, you know, amount of RECs and ZECs to

23            comply with the regulation.  That's all there is to

24            it.
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 228

1          BY MR. MEADOWS:

2     Q    So over the last few minutes, I think we've talked

3          about three different considerations that are

4          factored into your damage calculations that are not

5          mentioned in the variable price term, which are the

6          voluntary RECs, the mandatory RECs, and margin.  Are

7          there any other considerations that you deem to be

8          appropriate to include in the variable price

9          calculation that aren't mentioned in the variable

10         price term?

11                    MR. BLANKINSHIP: Objection.

12         Mischaracterizes his testimony.

13                    THE WITNESS: Like I said, I -- I -- it's

14         not that they're not mentioned.  I -- I -- they --

15         they fall either in the market pricing bucket or in

16         the other market price factors.

17        BY MR. MEADOWS:

18    Q    Okay.  So can you then give me your full definition

19         of market pricing as you understand it under this

20         agreement?  Because it seems to now be broader than

21         the wholesale market.  So I just want you to tell me

22         everything that you think is included in market

23         pricing.

24                    MR. BLANKINSHIP: Objection.  Asked and

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 229

```
 1          answered and calls for legal conclusion.
 2                    THE WITNESS: Okay.  Give me one second and
 3          can we take a short break after -- after this --
 4                    MR. MEADOWS: Yes.  Yeah.
 5                    THE WITNESS: -- if that's okay?  Okay.
 6          Yeah.  Paragraph 135.  Okay.  I said, fully, "For
 7          the -- for the purposes of this method one, the
 8          inputs to market pricing are power procurement cost
 9          data Eligo used to set monthly variable rates and
10          the voluntary RECs cost that I calculated and added
11          to the procurement cost as discussed in paragraphs
12          138 to 142."  So if at some point, and I -- I don't
13          know what I've said, I basically said it was, I
14          omitted the -- the voluntary RECs, then I would like
15          to correct what I've said because voluntary RECs are
16          certainly, you know, part of the -- part of the
17          procurement cost, and -- and in my mind, fall under
18          the -- fall under the market pricing.
19      BY MR. MEADOWS:
20      Q    Okay.  I understand that.  So just to be sure, other
21          than what you just told me, so the voluntary RECs,
22          is there anything else?  Because wholesale costs and
23          the voluntary RECs that fall under the definition of
24          market pricing in your view.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 230

```
 1      A     I mean --

 2                    MR. BLANKINSHIP: Is there a question

 3            there?

 4        BY MR. MEADOWS:

 5      Q     Yeah.  Is there anything else besides those that

 6            falls under the bucket of market pricing in your

 7            view?

 8      A     Let me just find the list about that.

 9                    MR. BLANKINSHIP: I'm just going to object;

10            it's asked and answered.  You can answer.

11                    THE WITNESS: I -- yeah.  I don't know

12            where it is.  Pretty much all the terms fall under

13            the other market -- excuse me -- market pricing or

14            other market price factors.

15        BY MR. MEADOWS:

16      Q     Okay.  You said pretty much --

17      A     All -- all --

18      Q     Is there anything?

19      A     All -- all the terms.

20      Q     All the terms.  Okay.

21      A     Yeah.

22                    MR. MEADOWS: You asked for a break.  We

23            can go ahead and take one.

24                    THE WITNESS: Yeah.  Sorry, just running
```

Page 231

```
 1              low on fuel.

 2                      MR. MEADOWS: It's okay.

 3                      THE VIDEOGRAPHER: We are now going off the

 4              record.  The time is 2:47 p.m.

 5              (Whereupon, the parties go off the record.)

 6                      THE VIDEOGRAPHER: Okay.  We are now back

 7              on the record.  The time is 3:03 p.m.

 8         BY MR. MEADOWS:

 9     Q    Mr. Macan, if we could look back at the contract,

10          which I think is Exhibit 6.  I hope I have that

11          right.

12     A    Yeah.

13     Q    I just want to talk a little bit more about a few of

14          the terms and how you understood them for purposes

15          of your report.  And in that box, starting at the

16          top we talked earlier, there's a -- in the upper

17          left-hand corner it says, "price," correct?

18     A    Mm-hmm.

19     Q    Now, did you understand the reference to price there

20          to be the price that Eligo would charge at retail

21          for electricity?

22     A    Yes.

23     Q    Now, in the box just beneath that, where it says,

24          "Variable price is determined," the word "price," as
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 232

```
 1             it appears there, did you also understand that to be
 2             a reference to the price that Eligo would charge to
 3             retail customers for electricity?
 4      A      Sorry.  Which the -- the variable price is
 5             determined?
 6      Q      Correct.
 7      A      Yes.
 8      Q      And then going back up, and I'm sorry to bounce
 9             around, but to the first row, to the right of the
10             word "price," in the second sentence, you'll see it
11             says, "thereafter monthly variable kilowatt hour
12             rate that may be periodically adjusted for market
13             conditions."  We talked about that earlier, right?
14      A      Yeah.
15      Q      And the word "rate" as it's referred to there, did
16             you understand that to be a reference to the rate
17             that Eligo would charge its retail customers for
18             electricity?
19      A      Yes.
20      Q      And then the same word "rate" -- well, let me be
21             more specific.  In the second row to the right of
22             variable price is determined, it says, "Other than
23             fixed rates, all rates shall be calculated."  The
24             word "rates," as it appears there, you understood
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 233

```
 1            that as well to be a reference to the rates that
 2            Eligo would charge its retail customers for
 3            electricity, correct?
 4      A     Yes.
 5      Q     And we've talked some about the word -- the word
 6            "costs" as it refers, as it relates to
 7            transportation costs in that same section of the
 8            contract, right?  There you understood the word
 9            "cost" to refer to a cost that Eligo would
10            potentially incur in supplying electricity, right?
11      A     The -- the cost next to transportation costs?
12      Q     Yes.
13      A     Yes.
14      Q     All right.  And you understand as an -- as an expert
15            in the energy markets, there's a difference between
16            a cost and a price, correct?
17      A     Correct.
18      Q     And a cost is something that -- let's say I'm an
19            ESCO.  A cost is something that I incur, money that
20            goes out the door, right?
21      A     Yeah.
22      Q     And a price is something that I would charge for
23            something I'm selling, correct?
24      A     Correct.
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 234

```
 1     Q     In your damage analysis, in particular for method
 2           one, you used something called the "POWWR
 3           spreadsheets" to -- from which you divined costs
 4           that Eligo anticipated it would pay for energy,
 5           correct?
 6     A     Correct.  But could you please point me to whatever
 7           you're --
 8     Q     Yeah, sure.  I'm looking at paragraph 138 on page
 9           58.
10     A     Sure.  Okay.  Yeah.  For method one.
11     Q     Okay.  And it says there, "I was given access to
12           detailed information on the costs Eligo anticipated
13           it would pay for energy, ancillary services, and
14           capacity for its New York sales, right?
15     A     Right.
16     Q     The next sentence says that that data that you
17           referred to came from the POWWR spreadsheets, right?
18     A     Yeah.  POWWR is a third-party vendor.  It's my
19           understanding that Eligo has been getting forecasts
20           from them.  And based on these forecasts, which are
21           pretty much forecast for ultimately the cost that
22           Eligo will occur -- incur procuring power to supply
23           its customers, that -- that's what I'm called "POWWR
24           reports" -- they're called "POWWR reports."  They're
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 235

1              Excel files.

2         Q    Okay.  And we'll look at one of them in a little

3              while but what the POWWR reports contain, as it

4              pertains to, you know, the wholesale price of

5              energy, are not actual costs, but forecasted costs.

6         A    Correct.  Short-term forecasts.

7         Q    And you use those short-term forecasts in developing

8              your damage models, correct?

9         A    Under method one, correct.  Because it's my

10             understanding that that's exactly what Eligo did in

11             setting their rates.  They did not -- in other

12             words, they did not know the -- they -- they -- but

13             -- my -- again, my understanding is that they did

14             not know they had to disclose the rates that they're

15             going to be charged prior to them fully knowing to a

16             cent of how much they're actually going to pay for

17             different energy costs.  And because of that, they

18             went off of the POWWR reports.  POWWR reports, like

19             I said, are reports from a third party that

20             basically forecast some of these costs, how much

21             they're going to be, either the testimony of Eligo,

22             somebody's testimony, I'm -- I'm -- memory fades me

23             as to who it was.

24                  There's, you know, have said that, you

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 236

```
 1              know, generally they have been pretty -- pretty
 2              reliable.  And so, you know, those are not the
 3              costs, but over a six-year period, I would assume,
 4              and based on my calculations, that certainly what
 5              seems to be the case, that, you know, those costs
 6              are -- were pretty fair comparison -- pretty good
 7              forecasts.
 8      Q       Well, did you have data on the costs that Eligo
 9              actually incurred to procure electricity over the
10              relevant period?
11      A       No.  Under the method two, I've objectively
12              determined what those costs that I took for granted
13              from their own financial records being POWWR reports
14              -- what those would be if they have gone into the
15              market, and sort of procured it themselves, right?
16              So it was sort of independent, objective, you know,
17              rather than taking their number for energy costs,
18              sort of on a given day, looked at, you know, what
19              those, what -- what those prices would be.
20      Q       Prior to this engagement on this case against Eligo,
21              had you ever used the POWWR spreadsheets in any
22              capacity?
23      A       No, I haven't.
24      Q       And POWWR is an acronym containing the letters P-O-
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 237

1              W-W-R, right?

2        A     Yes.

3        Q     Do you know what that even stands for?

4        A     I did, and I don't recall.  It's in -- it's in my

5              testimony what it stands for.  Yeah.

6        Q     Okay.  Do you know how POWWR actually generates any

7              of the estimates that it includes in these various

8              spreadsheets?

9        A     No.

10       Q     Were you -- had you been familiar with POWWR, the

11             entity, at all before this engagement on the Eligo

12             case?

13       A     I -- I've -- I've heard of it.  I've heard of it.

14             I've never dealt with them or I've never used their

15             product.

16       Q     All right.  Did you undertake any kind of

17             independent assessment of how reliable or not the

18             POWWR forecasts were?

19       A     No.

20       Q     You didn't do any research on that either?

21       A     Research on how reliable their forecasts are?

22       Q     Right.

23       A     No.  Like I -- like I said, repeating myself but the

24             -- the task with respect to method one has been, you

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 238

```
 1            know, if the -- if the -- if -- if the contract is
 2            interpreted to -- to use their, you know, the cost
 3            that they had at the time when the -- the variables
 4            were set, and -- and those were the POWWR -- POWWR
 5            figures, I just went off of that.  No, yeah.
 6      Q     Yeah.  And so you dealt with these POWWR
 7            spreadsheets, I take it, pretty -- you know,
 8            comprehensively in preparing this report; is that
 9            fair?
10                  MR. BLANKINSHIP: Objection.  Leading.
11                  THE WITNESS: No.  Yeah.  Not, I wouldn't
12            say comprehensively, but I -- I have certainly, for
13            the two plaintiffs, I have reviewed the -- the POWWR
14            reports that were relevant for performing the damage
15            calculations for the two plaintiffs under the
16            methods, under the method one.
17        BY MR. MEADOWS:
18      Q     All right.  And in particular, in paragraph 136.
19            You say Eligo's market pricing was taken from the
20            15th day of the month, POWWR report for the month
21            prior to the monthly rate at issue, or closest to
22            the 15th, with the nearest timestamp after configure
23            -- configuring the parameters on the title page tab
24            of the report.  And then it goes on.  You see that?
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 239

1    A    Mm-hmm.

2    Q    So I take it that from what you wrote in the report

3         there, that there were some occasions on which you

4         had a POWWR report for the 15th day of the month

5         that you could use, right?

6    A    Mm-hmm.

7    Q    And in other cases you didn't?

8    A    Yes.  I think that's -- that -- that's right.  I

9         think, so what that is, is, let's say the delivery

10        month or the month they're pricing is November,

11        among the documents that were produced, there were

12        multiple versions for the November pricing of -- of

13        a, your X, say, 2020.There are multiple versions.

14        And so the version that I ended up using was the one

15        closest to the -- to the 15th of -- of the month for

16        the month before.

17   Q    And did you keep a list somewhere by Bates number or

18        some other identifier of which POWWR spreadsheets

19        you used and which ones you didn't?

20   A    The ones that I ended up using in the end are -- are

21        listed among the -- in -- in my Exhibit 5 or 3 list

22        of documents relied upon.

23   Q    Okay.  Let me ask you, on page 58, you continue to

24        describe this damage calculation.  You have a number

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 240

```
 1              of bullet points that relate to how you configured

 2              the parameters on the title page tab of the POWWR

 3              spreadsheets, correct?

 4      A       Mm-hmm.  Mm-hmm.

 5      Q       And so these spreadsheets came to you containing

 6              various cells that had values in them, right?

 7      A       Correct.

 8      Q       And I take it that some, maybe, or at least some of

 9              these cells had formulas embedded in them; is that

10              right?

11      A       Correct.

12      Q       Did you -- were you able to access all the formulas?

13      A       Can you be specific about accessing all the

14              formulas?

15      Q       Well, to the extent there were formulas kind of

16              embedded in the spreadsheets, were you able to --

17              were you able to determine what those formulas were?

18      A       I -- I -- so that these are humongous files.  Just

19              to set the record straight.  It was humongous files.

20              They were -- the -- the information has been

21              requested from Eligo, and Eligo produced their work

22              papers in that form.  So that's all I could go off

23              of.  As far as, you know, the cost, they forecasted

24              cost based on which they operated the rates.  So I
```

Edo Macan                            December 17, 2025
Brous v. Eligo Energy, LLC

Page 241

```
 1              did not really have any choice but that.

 2                        And -- and so the task at hand was to

 3              basically get the -- get the different cost figures

 4              that I needed for the method one calculation from

 5              the spreadsheets.  So the exercise wasn't like re-

 6              hack their models, but basically, used the data

 7              contained in them, and that's what I spent time on,

 8              and I'm pretty sure I got it correct.

 9      Q     But in your review of the POWWR spreadsheets, you

10              found that some of the information in them was

11              encrypted and password protected, right?

12                        MR. BLANKINSHIP: Objection.  Lacks

13              foundation.

14                        THE WITNESS: I don't recall it being

15              password protected.  They were, they -- they had

16              formatting things that were sort of like redacted.

17              But there's a -- there's a function in Excel how you

18              could, you know, basically see it.  And it certainly

19              did not require password for me to type it in.  That

20              -- the -- the documents have been provided by

21              counsel, so I don't know if counsel had to do any

22              unscripting, but shape and form in which they --

23              they were provided to me, I did not have to type in

24              any secure passwords.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 242

```
 1        BY MR. MEADOWS:

 2    Q    I see.  Looking at the top of page 58 in the report,

 3         you say that one of the configuring --

 4         configurations you made was to set the inflation

 5         rate to zero on the POWWR spreadsheets that you were

 6         working with, correct?

 7    A    Mm-hmm.  Mm-hmm.

 8    Q    And what is -- what is the inflation rate as

 9         reflected in the POWWR spreadsheets intended to

10         reflect?

11    A    Yeah.  Based on my assessment of what the POWWR

12         sheet did, it -- it looked like it was -- it was an

13         input cell that allowed, you know, an input for an

14         inflation rate, and -- and that's -- that's what it

15         was.

16    Q    Right.  Well, let me ask you this way.  Why did

17         POWWR include an inflation rate in its spreadsheets?

18    A    Because the spreadsheet contained pricing for -- for

19         different types of products.  Some of them were, I'm

20         speaking based on recollections, you know, six

21         months out, fixed, or -- or sort of longer than

22         that.  And obviously, inflation starts becoming

23         important, you know, the longer the time horizon.

24    Q    Now, when you say you set the inflation rate to
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 243

1          zero, I take it that that means that the inflation

2          rate was generally a positive number in the POWWR

3          spreadsheets that you reset to zero; is that fair?

4    A     I -- I honestly don't remember.  I -- I actually

5          think it might have been zero in some, or -- or I --

6          I -- if it wasn't, if -- if there's one where it was

7          something else, I would set it to zero based on,

8          again, bad recollection.  I -- I think some of them

9          were actually zero to begin with.

10   Q     Why did you decide to reset the inflation rate to

11         zero, at least in the cases where it was a positive

12         number?

13   A     I understand, because we're talking with the

14         variable rate product.  A variable rate product is

15         pretty much one month out.  You're pricing it two

16         weeks before that.  And so, you know, it didn't make

17         any -- make no sense to apply inflation rates in

18         such a short time horizon.

19   Q     You assume that there wouldn't be any inflation in

20         that, say, two-week period that you --

21   A     Correct.  That was my assumption.

22   Q     All right.  And then, there was a, I guess, a tab or

23         a cell for a general interest rate; is that right?

24   A     Correct.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 244

```
1     Q      And you also set that to zero.

2     A      Correct.

3     Q      Why did POWWR include a general interest rate in its

4            spreadsheets?

5     A      Same, I, you know, conjecture on my end because I

6            don't know for a fact why, but I would assume

7            because obviously, for product that are -- products

8            that are priced further out in time to the extent

9            that interest rates are meaningful, that there's

10           going to be a, you know, cost of capital associated

11           with it.  And -- and again, I've made a simplifying

12           assumption that it's negligible in the short-term

13           horizon of two weeks.

14    Q      What, if anything, did you do to validate that

15           assumption that it would be negligible, at, you

16           know, contextualized to Eligo?

17                  MR. BLANKINSHIP: Objection.  Vague.

18                  THE WITNESS: I -- the -- it's going to be

19           a -- a lengthier answer.  So I -- I don't think I've

20           -- I -- I did not play with that.  And -- and that

21           the -- the general reasoning was -- all right.

22           Sorry, Dave, could you please repeat the -- the --

23           that the question that you just asked me?

24                  MR. MEADOWS: Could you -- could you read
```

Edo Macan                               December 17, 2025
Brous v. Eligo Energy, LLC

Page 245

```
 1          that back please?

 2                  THE WITNESS: The last one?  Yeah.  Can you

 3          read the record?

 4                  THE COURT REPORTER: Yeah.  Give me --

 5          sorry.

 6                  THE WITNESS: It's okay.

 7                  THE COURT REPORTER: All right.  What did

 8          you do to validate that it would be negligible,

 9          contextualized to Eligo?

10                  THE WITNESS: Like I -- like I said before,

11          I -- I -- again, based on the best of my

12          recollection, I -- I think, in -- I -- I don't think

13          that -- I -- I think sort of setting a value to zero

14          from something that's a non-zero was probably more

15          an exception rather than the norm.  I -- I don't

16          know for a fact, but the idea was, like I said, just

17          like an inflation rate.  I set it to zero because I

18          -- I thought it was negligible.  Because without

19          getting too technical about it, we're talking about

20          pricing a product that's going to be delivered two

21          weeks from now, so no -- goods don't exchange hand,

22          if you will, until two weeks from now.  We're

23          pricing something ex ante two weeks before.

24                  And so it's not a -- it's not a -- it's
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 246

```
 1          not the same to a situation where the money
 2          exchanges hands, the customers pay for it, and then
 3          wait for two weeks to get the power delivered.
 4          It's, you know, I wouldn't call it, you know, risk
 5          neutral pricing, but the simplest way I could
 6          explain it, I thought it was appropriate because
 7          like I said, power is going to be delivered two
 8          weeks from then and then at some point, Eligo is
 9          going to get -- get compensated that.
10                  So there's no -- there's no period of
11          time, a meaningful period of time that Eligo has
12          delivered the goods, but it's waiting on a payment,
13          which would economically necessitate accrual of, you
14          know, interest rates adjusted for inflation.
15      BY MR. MEADOWS:
16      Q    The interest rate that's set forth in the POWWR
17           spreadsheets, do you know if it's an annual rate or
18           monthly or some other period?
19      A    I don't recall the detail.
20      Q    It -- did you know that at the time and don't
21           remember now, or you never knew?
22      A    I -- I -- I've made sense of it when I looked at it.
23           I just, I can't -- yeah, I -- I just don't recall
24           that level of detail now.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 247

```
 1      Q     Now, did you observe, when you changed the general

 2            interest rate from a positive number to zero, that

 3            that change had ripple effects and other values in

 4            the spreadsheets, that it would change them?

 5      A     I -- I -- again, I really, I -- I can't answer that

 6            question because there are two extremes of this

 7            position.  One, from X number of spreadsheets I've

 8            looked at, did I change general interest rates from

 9            whatever it was to zero in any of them, on all of

10            them?  I don't have any recollection whether it was

11            this one or this one or sort of anywhere in between,

12            because I -- I looked at a lot of them in trying to

13            ascertain how these things work.  They're extremely

14            messy, by the way.  They had hidden columns, hidden

15            sheets.  It was extremely messy.  And -- and so

16            given the data was provided to me in that shape and

17            form, I would have, by the way, much rather that

18            they provided the data in a usable form.  This was,

19            you know, really, really hard to use.  I've made

20            best of efforts to interpret it as -- as -- in -- in

21            as unbiased and correct way as I could.

22      Q     I guess I want to understand, is it your testimony

23            that you reset the interest rate from a positive

24            number to zero in every case where there was a
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 248

```
 1              positive number or only sometimes?
 2      A       I -- I think in every -- in every case for the --
 3              for the two plaintiffs, for -- for the damages that
 4              I've calculated for them based on what I wrote here,
 5              I -- I would not have done this only for some.  If
 6              I've done for any, I would have done them for all
 7              but I -- they might have been all zero to begin
 8              with.  I just really don't recall that for a fact.
 9      Q       How would we be able to kind of go back and check
10              that if we wanted to see what you actually did?
11      A       You -- you could -- you could go into the files that
12              I have identified as POWWR reports that I relied
13              upon, see which -- confirm which ones were produced
14              for my -- to my counsel, and presumably Eligo would
15              know what -- what the, you know, input settings were
16              there.
17      Q       Well, I'm not -- well, I guess what I'm asking is,
18              is there -- is there a place where you preserved or
19              saved the POWWR spreadsheets as you used them, after
20              you made whatever configurations or changes you
21              decided to make?
22      A       I don't -- I -- I don't -- yeah.  I -- I don't think
23              so.  I mean, the -- this was, this was done by my,
24              you know, analyst who sort of followed the protocol.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 249

```
 1              I've reviewed it, tested, it was quality controlled.
 2              Specifically, I --, you know, that the -- I don't
 3              think it -- so the -- the outcome of that was to,
 4              you know, come up with extract pieces of inputs that
 5              were provided to us in an extremely unfriendly
 6              format.
 7                     And so I saw no relevant -- I certainly
 8              don't have records of any interim versions.  Not --
 9              not the purpose of this to modify.  The purpose of
10              this was to basically get the inputs out that were
11              not readily available.  And I really want to
12              reiterate that I've -- I've seen a lot -- I worked
13              with a lot of discovery documents.  These were
14              probably some of the most non-friendly, complicated,
15              convoluted, hidden files that were provided.
16         Q    We talked some earlier about margins, and your
17              inclusion of margins in your damage calculation.
18              And in that respect, I want to refer you to -- I
19              think it's 13J on page 12.
20         A    Let me just read it for a second.
21         Q    Sure.
22         A    Yeah.
23         Q    All right.  So in paragraph 13J, you say, "I was
24              also instructed that methods one and two should
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 250

```
 1              include a reasonable markup margin input on top of
 2              procurement costs," right?
 3       A      Mm-hmm.
 4       Q      Who instructed you in that manner?
 5       A      Counsel.
 6       Q      And what were you told in connection with being
 7              given that instruction?
 8       A      That -- that was the legal interpretation of -- of
 9              the contractual term.
10       Q      And did you do anything to kind of assure yourself
11              that that instruction, that that assumption was
12              reasonable?
13       A      Like I said, it -- it's reasonable to me.  I don't
14              see how you can run a business unless you have some
15              sort of markup on it, or -- or make money off of
16              something, so.
17       Q      The next sentence is that "5 percent represents the
18              best comparator markup to use for setting a variable
19              rate in accordance with the variable price term."
20       A      Yeah.
21       Q      Describe for me the methodology you used to select 5
22              percent as the best comparator marker.
23       A      There's really no methodology.  I mean, the Public
24              Service Commission, who is probably the regulatory
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 251

```
 1            body most intimately familiar with the market and --

 2            and also a regulator of the same market, after

 3            having, you know, led a detailed stakeholder process

 4            stemming from all the -- all the things that were

 5            going on in New York for years, has as a part of the

 6            reset order determined that 5 percent margin was

 7            ample compensation in terms of the return for, I

 8            believe, fixed rate customers.

 9                     And to me, everything else being equal,

10            and I like to keep things simple, the logic was

11            since variable rate customers are less risky than

12            fixed rate customers, everything -- everything else

13            being equal, you know, this would be, you know, this

14            is -- this is perfectly valid and -- and to me the

15            best, you know, economically meaningful markup to

16            use in this calculation.

17      Q     So the New York Public Service Commission, I think

18            you said, set a 5 percent margin for fixed-rate

19            products, right?

20      A     They -- they said -- I'm trying to remember the

21            details.  I believe so for the fixed-rate customers,

22            and I think it would be applied to the trailing

23            average.  They allowed a return on like 5 -- I'm

24            sorry, the markup on.  It's somewhere in my
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 252

1           testimony if you wanted to look at on like 12-month

2           trailing average of -- I should probably, I -- I

3           don't remember the details.  The short answer is

4           yes, they -- they applied 5 percent, they -- they

5           agreed on 5 percent.  Yeah.

6     Q     Right.  So that 5 percent margin, the New York PSC

7           never applied that to variable rate products, did

8           it?

9     A     No, it did not.

10    Q     But in your opinion, that 5 percent is nonetheless

11          the right margin to apply to Eligo's variable rate

12          products, correct?

13                  MR. BLANKINSHIP: Objection.  Asked and

14          answered.

15                  THE WITNESS: Yes.  I've -- I've determined

16          that I should apply 5 percent, you know, to the

17          variable rate product.

18      BY MR. MEADOWS:

19    Q     And when the New York PSC developed that 5 percent

20          margin, it said that ESCOs could charge that 5

21          percent margin on the trailing 12-month average of

22          prices charged by the utilities; isn't that right?

23    A     Yeah, I think that's right.

24    Q     Right.  So it wasn't a 5 percent markup over --

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 253

1           markup over the ESCO's costs as opposed to what the

2           utilities had been charging, correct?

3    A      Yes, it was 5 percent markup over the 12 -- 12-month

4           rolling average.  Sorry.  Which I'm just trying to

5           save time --

6    Q      I'm not looking at anything in particular, yeah.

7    A      Okay.  Yeah.  I -- that -- it's been a long day.

8           Yes, that -- what you said, I agree with.

9    Q      All right.  You go on in that same paragraph 13J to

10          say, "Nonetheless, it would not be commercially or

11          economically unreasonable for the ultimate fact

12          finder to adopt 6 percent as a reasonable fixed

13          rate" -- I'm sorry -- "fixed margin for inputs

14          method one and two," right?

15   A      Correct.

16   Q      Tell me, what, you know, expertise, methodology did

17          you apply to determine that it wouldn't be

18          economically unreasonable to adopt 6 percent?

19   A      Again, none.  I -- I wanted something simple and

20          that made a lot of sense to me, and I opted for 6

21          percent because this was the -- this was Eligo's

22          target profit target margin on -- on its fixed-rate

23          customers.  And by the same analogy, since variable

24          rate customers are -- are less risky than fixed rate

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 254

1              customers, if company themselves think that's
2              sufficient, you know, to pay for their overhead, and
3              it's a sustainable business strategy for fixed rate
4              customers, well, it should be plenty for the
5              variable rate customers.
6      Q       Your reference to 6 percent margin target by Eligo,
7              that -- that's something that you pulled out of a
8              document called "Eligo's Risk Policy," right?
9      A       I -- I think that's right.
10     Q       Right.  And that 6 percent wasn't a ceiling or a
11             cap, but just a minimum acceptable margin under
12             Eligo's policy, correct?
13                     MR. BLANKINSHIP: Objection.  Lack of
14             foundation.  Mischaracterizes the record.
15                     THE WITNESS: I -- I don't -- I don't
16             recall the details of it.  I just recall that it was
17             -- it was the 6 percent target margin.  I think even
18             in, I -- I've read in some of the -- some of the
19             depositions or sort of testimonies that that has
20             been corroborated that indeed that was the -- that
21             was the target margin rate for fixed rate customers.
22                     Whether in some instances they charged,
23             you know, a little bit more for whatever reason, I
24             mean, I -- I guess it's plausible, I -- I don't

Edo Macan                                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 255

1          know.  But as a matter of business strategy, it's my

2          understanding that they pursued a fixed 6 percent

3          margin target on the fixed-rate customers.

4      BY MR. MEADOWS:

5      Q     And that 6 percent margin target that you're

6            referring to, that Eligo pursue -- pursued, how did

7            you measure that over, what set of costs was it --

8            was it kind of using to generate that 6 percent

9            number?

10                  MR. BLANKINSHIP: I'm sorry, could you read

11          that back for me?

12                  THE COURT REPORTER: Yes.  So --

13                  MR. BLANKINSHIP: Sorry, I just missed it.

14                  THE COURT REPORTER: No, you're fine.  I'm

15          missing a keyword that's on the --

16                  MR. MEADOWS: Do you want me to just ask it

17          again?

18                  THE COURT REPORTER: No worries.

19                  MR. MEADOWS: Okay.

20                  THE COURT REPORTER: How did you measure

21          that over what set of costs to get that 6 percent

22          number?

23                  THE WITNESS: Okay.

24                  MR. BLANKINSHIP: Yeah.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 256

```
 1                    THE WITNESS: So I -- I don't recall the

 2            details, but given that I've adjusted it to a

 3            markup, a 6 percent margin equates to a 6.38 percent

 4            markup.  So that would be 6 percent -- it would be

 5            6.38 percent on top of the costs.

 6        BY MR. MEADOWS:

 7    Q     And we may have gotten our wires crossed there.

 8    A     Okay.

 9    Q     My question to you was not about your calculation

10            here, but about the 6 percent margin that you're

11            referencing in Eligo's documents.

12    A     Yeah.

13    Q     Do you know how Eligo came up with that 6 percent?

14    A     I don't -- I don't recall the details.

15                    MR. MEADOWS: What exhibit are we up to?

16                    THE COURT REPORTER: Seven.

17            (Whereupon, Ex. 7 Eligo Risk Policies and

18            Procedures, Effective Nov. 1st 2016, is marked for

19            identification.)

20        BY MR. MEADOWS:

21    Q     I'm going to show you Exhibit 7.  And I know it's a

22            lengthy document, Mr. Macan, but are you familiar

23            with Exhibit 7?

24    A     I am.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 257

```
 1    Q    And does this look like the document from which you,
 2         you know, kind of glean -- gleaned this 6 percent
 3         margin that you referred to in paragraph 13J?
 4    A    Let me -- let me try to find it.
 5    Q    And just --
 6    A    Looking at the cover page, I -- I -- it does ring a
 7         bell.  I -- I just --
 8    Q    Yeah.  And just to try to help with timing, you
 9         might look at page 13.
10    A    Sure.  Please, please do.  Yeah.  I'm just going to
11         look at my report.
12              MR. BLANKINSHIP: Yeah.  I'm just going to
13         note for the record, this document is not listed on
14         Exhibit 3 of Mr. Macan's report.  Likely a different
15         version of this is included.  That document's not
16         listed.
17      BY MR. MEADOWS:
18    Q    Okay.  Well, let me ask you, since I've got this in
19         front of you, Mr. Macan.  You see in the middle of
20         the page 13, it says, "policy statement number one."
21         And there it says, "The company shall set its
22         minimum acceptable gross margin at 6 percent or 4
23         mils, unless a specific exception is made at the
24         executive level."
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 258

1    A    Yeah.  I see that.

2    Q    Does that look like the same language that you

3         relied on in kind of, you know, reaching the

4         conclusion that a 6 percent margin would not be

5         commercially or economically unreasonable?

6    A    I -- I don't remember the precise language.  If --

7         if it sounds like that, it was not the document that

8         I went off of, but I remember seeing a 6 percent.

9              MR. O'TOOLE: For the record, this document

10        is included in the documents exhibits list.  It's

11        DEX008057, which is about a third of the way down,

12        the page.

13             MR. MEADOWS: Oh thanks, Leo.

14             THE WITNESS: Okay.  And if that's the

15        case, then I mean yes, this -- this is where the

16        number came from.

17    BY MR. MEADOWS:

18   Q    Okay.  Great.  Thank you for that.  Well, in that

19        case, with this document, I mean, we agree that what

20        this document says is that Eligo will set its

21        minimum acceptable gross margin is 6 percent, right?

22   A    Mm-hmm.

23   Q    And now in your opinion though, you're applying that

24        6 percent as a maximum margin, aren't you?

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 259

```
 1    A    As a margin, the only -- the -- the margin that I

 2         apply, there's no minimum -- there's no fluctuating

 3         margins, just a fixed margin of 6 percent under that

 4         formulation.

 5    Q    Right.  But you chose 6 percent versus 6.5 or 7 or a

 6         higher number, right?

 7    A    Yes, I chose 6 percent.

 8    Q    And is it your opinion that 6 -- that no margin

 9         higher than 6 percent would be commercially or

10         economically reasonable?

11    A    No.  My reasoning is that any margin that is

12         sufficient to pay for the overhead and presumably

13         earn some profit for fixed rate customers that are

14         less risky than variable rate customers should be

15         ample and adequate compensation of return for the --

16         for the variable rate customers.

17    Q    But I think I asked you this earlier.  You don't

18         know that Eligo is calculating that 6 percent margin

19         on the same cost basis as you do in your report, do

20         you?

21    A    I -- I don't -- I don't know the -- the details of

22         that, no.

23    Q    All right.

24    A    But -- but if I may add one thing.
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 260

| 1 | Q | Sure. |
| 2 | A | The obvious -- the obvious discrepancy between the |
| 3 | | two.  I mean, there may be others, but just to |
| 4 | | illustrate where I'm coming from.  Hedging costs, |
| 5 | | right?  Hedging costs.  There's really no reason nor |
| 6 | | I've seen any evidence that Eligo has engaged in |
| 7 | | hedging to protect variable rate customers.  For |
| 8 | | why? |
| 9 | | Because they had the ability to adjust the |
| 10 | | rates as underlying procurement costs changed.  It's |
| 11 | | a very different game for -- for fixed rate |
| 12 | | customers because Eligo is obliged and carries the |
| 13 | | price risk by offering fixed rate product.  So |
| 14 | | hedging cost in my mind would be prudent cost to |
| 15 | | account for if I was doing this exercise for the |
| 16 | | class consisting of fixed-rate customers. |
| 17 | | Now, why I'm saying this, I'm saying this |
| 18 | | because it's entirely possible that the cost |
| 19 | | structure of Eligo, based on which Eligo's |
| 20 | | management decided that 6 percent profit margin |
| 21 | | would be sufficient and a business target, it's |
| 22 | | entirely possible that that cost structure is |
| 23 | | slightly different from the cost structure to the -- |
| 24 | | for the variable rate customers. |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 261

1              As I said, the main difference is really
2        sort of the hedging costs, but it doesn't -- that's
3        completely separate from the margin because the
4        margin comes on top of that.  So the margin is the
5        extra, the margin is the gravy.
6              So why would, you know -- if -- if Eligo
7        deems that that's sufficient compensation, if it's
8        applied on top of costs -- sorry -- that would be
9        6.38 just for clarification -- if that's sufficient
10       for these -- why for a completely different segment
11       of customers being variable customers, would it be -
12       - should it be anything else?
13    Q   Well, I want to dig into that a little bit.  And the
14       costs that you include on which you applied the 5
15       and 6 percent margin, those are reflected again in
16       Table 1 on page 62 for method one, correct?
17    A   5 and 6.38 because those are markups.  Yeah.  Okay.
18    Q   Okay.  Yeah, 5 and 6.38.
19    A   Yeah.
20    Q   Thank you.  But I -- but in again, in pinpointing
21       the costs on top of which you applied that margin,
22       those are on Table 1 on page 62 for method one.
23    A   Let me -- let me just check if these include the
24       margin or -- or they're before, include the markup,

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 262

1              or they're before the markup?  Yeah.  This is just
2              the procurement cost.  Yes.  So these are -- these
3              are the costs.  They don't -- they don't account for
4              the markup.
5        Q     Right.  And so these are the costs that you include
6              in your calculation but -- and there are no other
7              costs that you include in your damage calculation
8              for method one, correct?
9        A     Correct.
10       Q     So this 5 or 6.38 percent margin that you're
11             calculating as part of method one doesn't include
12             administrative overhead, does it?
13       A     No.
14       Q     Doesn't include to the extent it's not an
15             administrative overhead, but just salaries for
16             professionals and personnel, does it?
17       A     I get -- I'll give you a lengthy answer.  No,
18             because all these things -- because company, or on
19             one hand, at 6.38 percent or the regulator who know
20             -- have more data about it than me and know the --
21             know the intricacies of -- of everything much more
22             than I do have found that both 5 percent and 6.38
23             percent markups are sufficient and -- and
24             commensurate with the risks involved for the fixed

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 263

1                rate customers.

2                         And so those guys also, you know, the 6

3                percent also needs to pay for the -- for -- for the

4                overhead, for the salaries and all of that.  So I'm

5                just, that's why I'm sort of making it clear.  To me

6                it was, it's just, it -- it's an apples-to-apples

7                comparison.

8                         If -- if on one hand, if the business says

9                this class of customers, we want to make so much

10               money on them because they -- they are this level of

11               riskiness, everything else being equal, and that's

12               the critical term, the other part of customers, that

13               -- the other set of customers, you know, one would

14               expect rationally, at least from the economics point

15               of view, they -- they would get the same kind of

16               treatment.  The only reason why that would not be

17               true if the variable customers are risky and their -

18               - riskier than the -- than the fixed rate customers,

19               which I don't think to be the case.

20       Q       The New -- the New York PSC didn't adopt any of

21               those conclusions or rationales, did it?

22       A       Which specific ones are you referring to?

23       Q       All and any of them because it didn't, the New York

24               PSC did not adopt any sort of rate cap at all for

Edo Macan                                     December 17, 2025
Brous v. Eligo Energy, LLC

Page 264

```
 1            variable rate green energy plans, did it?
 2      A     Well --
 3                  MR. BLANKINSHIP: Objection.
 4            Mischaracterizes the record.  Lacks foundation.
 5                  THE WITNESS: Yeah.  I don't -- I don't --
 6            I -- I don't think that's what I said.  I said the
 7            New York -- the New York regulator adopted 5 percent
 8            cap on -- on the -- on the fixed-rate contracts.
 9        BY MR. MEADOWS:
10      Q     Right.  And my point, and my question to you is they
11            didn't adopt that for the -- for the variable rate
12            contracts?
13      A     They did not adopt -- adopt that for the variable --
14            variable -- for the variable rates but they
15            literally closed the market.  They abolished -- if
16            you were in ESCO operating prior to the reset order
17            and you were just, you know, supplying or procuring,
18            just state mandatory amount of RECs and ZECs and --
19            let -- let me take this back.  No, they didn't but
20            they -- they -- I -- I addressed this in the
21            testimony.  They -- after the reset order, the
22            regulator basically said to the variable rate, that
23            ESCOs offering variable rates that they can -- the
24            only way for them to continue staying in the
```

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 265

1          business would be, one, they have to demonstrate

2          savings over utility rates.

3                  The price to compare, that was the option

4          number one.  Number two, they can offer fixed rates

5          and if they offer fixed rates, they're going to be

6          capped at 5 percent markup; or option number three,

7          they have to -- they have to supply significant

8          amount of energy sourced from renewable resources.

9          However, in the case of three, and I -- it's in my

10         testimony that -- and I'm paraphrasing, but

11         basically the -- that does not absolve them from,

12         you know, charging customers commensurate with --

13         with -- let -- let me find this.

14                 I don't want to paraphrase something

15         important, but if they opt for the -- for the third

16         option, which most ESCOs did, just like ESCOs, just

17         like Eligo, they still had -- sorry, it's going to

18         take me a little while to -- to find this -- they --

19         they still had to it -- at a high level, charge just

20         and reasonable rates, having in mind that they're

21         going to have higher cost procuring RECs.

22     Q   With -- but without a rate cap, correct?

23                 MR. BLANKINSHIP: Objection.

24         Mischaracterizes the record.  Lack of foundation.

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 266

1                    THE WITNESS: Sorry, it was lengthy

2            response and I -- I don't -- without a rate cap on

3            what -- yeah.

4        BY MR. MEADOWS:

5        Q    The New York PSC -- I'm sorry.

6        A    Yeah.  I -- I know it's --

7        Q    The New York PSC never adopted a 6 percent rate cap

8            for green energy variable rate products for ESCOs,

9            did it?

10       A    No, it did not.

11       Q    All right.  And even though -- you agree with me

12           that Eligo over the relevant period to this case,

13           was selling electricity sourced from renewable

14           sources, correct?

15                    MR. BLANKINSHIP: Objection.  Lack of

16           foundation.

17                    THE WITNESS: From what period to what

18           period?

19       BY MR. MEADOWS:

20       Q    Over the entire relevant period to the case it was

21           set -- at least 30 percent of its energy was sourced

22           from renewable sources, correct?

23                    MR. BLANKINSHIP: Same objection.

24                    THE WITNESS: I -- I don't remember at what

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 267

```
 1              point they started selling 30 percent and above, but
 2              yeah, from whatever point they started selling 30
 3              percent, it's my understanding there was 30 percent
 4              and then 50 percent and -- and -- yeah.  Yes,
 5              correct.
 6          BY MR. MEADOWS:
 7      Q   Yeah.  And so despite all that, your opinion remains
 8          that Eligo shouldn't be able to earn a margin over,
 9          I guess, at 6.3 percent on the variable rate plans,
10          correct?
11      A   Because that margin is applied on top of the =-- on
12          the top of the additional cost they're going to have
13          as if they're not procuring RECs and on top of RECs
14          as well.
15      Q   But -- and to go back to costs that are not included
16          in your damage calculation, we talked about
17          administrative overhead and salaries, professional
18          fees are another expense that businesses incur,
19          correct?
20      A   Yeah.  Yeah.
21      Q   Not included in your damage calculation, is it?
22      A   Would be -- would be part of the -- part of the
23          markup, part of the -- part of the margin.
24      Q   So just to give an example, for the last year or so,
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 268

```
 1            Eligo has been locked in this litigation, which has
 2            cost it millions of dollars.  Your -- is it your
 3            opinion that Eligo can only recover that through the
 4            6 percent margin and if it doesn't, tough luck?
 5    A       Give me a -- give me a second.  Let me think about
 6            this for a second.  This exercise is not about
 7            trying to find -- I'm -- I'm not in a position of a
 8            regulator and cases like this happen.  This is not a
 9            situation where a utility is trying to justify costs
10            in sort of a ratemaking proceeding.
11                    This is I'm -- I'm merely defending a
12            choice of a markup figure that I used in my
13            calculations that I thought was both conservative
14            and realistic, and I -- I found, I -- I based my
15            assumption on two -- two -- I based my input or my
16            decision on two -- two inputs.  One, this is what
17            Public Service Commission said is enough for -- for
18            all the ESCOs that may be having legal costs or --
19            or any other costs, that a regulator in my mind, the
20            local regulator in my mind, the body that is more
21            aware of everything that is going on than anyone on
22            the planet has made that determination.
23                    And I had basically said, okay.  If -- if
24            this -- this -- if they find this to be sufficient
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 269

1      for fixed-rate class or fixed-rate customers, it's

2      certainly sensible to what -- to what I'm saying.

3      And on the other hand, Eligo company records,

4      whatever the cost is, whatever they're applying it

5      on, they're saying that they're pursuing a 6 percent

6      target margin on the fixed customers -- fixed-rate

7      customers.

8              So it's not a question of whether they're

9      applying it on, it's a question of how much they're

10     bumping it up by.  And as an alternative measure, I

11     -- I use that.  And -- and that's -- that's all I'm

12     saying with respect to the markups.

13  Q   You also testified, I think more than once today,

14     that it's, you know, a basic principle of economics

15     and I think even fairness, that Eligo should be able

16     to earn a profit, right?

17  A   Correct.

18  Q   And you would agree with me that there are instances

19     in business where Eligo is going to incur costs that

20     aren't mentioned in your categories in Table 1, and

21     which a 6 percent margin on top of those costs

22     wouldn't be sufficient to cover, right?

23             MR. BLANKINSHIP: Objection.  Lack of

24     foundation.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 270

```
 1      BY MR. MEADOWS:

 2      Q    I mean, isn't that true?

 3                  MR. BLANKINSHIP: Same objection.

 4                  THE WITNESS: Sorry.  I got interrupted

 5           with the objection.  Can you please repeat and I

 6           will answer?

 7      BY MR. MEADOWS:

 8      Q    Right.  So there are going to be instances in

 9           business where Eligo faces steep costs that aren't

10           captured by the categories in your Table 1 and which

11           a 6 percent margin on those costs are not -- is not

12           going to be sufficient to cover, correct?

13                  MR. BLANKINSHIP: Same objection.

14                  THE WITNESS: So -- correct.  What is the

15           question?

16      BY MR. MEADOWS:

17      Q    So that was the question which you answered.  I

18           appreciate it, but so in your --

19      A    I -- I --

20                  MR. BLANKINSHIP: No.  He did not answer

21           your question.

22                  MR. MEADOWS: He said correct and --

23                  MR. BLANKINSHIP: That's obviously not what

24           he means.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 271

```
 1              THE WITNESS: I said, what is the question?
 2         The -- the part of the same response that, yes,
 3         acknowledging what you were saying, and saying, what
 4         is the question?
 5       BY MR. MEADOWS:
 6    Q    My question was, I'm going to start over again, you
 7         agree with me as an economics expert that there are
 8         going to be situations where Eligo is going to incur
 9         costs outside the categories that are set forth in
10         your Table 1, and which also are in excess of a 6
11         percent margin of those, on those cost categories,
12         correct?
13              MR. BLANKINSHIP: Objection.  Lack of
14         foundation.
15              THE WITNESS: As a hypothetical, yes, there
16         may be situations such as that litigation or
17         whatever it is, legal -- legal, whatever it is, yes,
18         there may be situations like that.
19       BY MR. MEADOWS:
20    Q    Okay.  And so -- and was, in fact, we know for a
21         fact that right now, Eligo is embroiled in an
22         incredibly expensive, long-running case in which
23         you're a part of, right?
24              MR. BLANKINSHIP: Objection.  Lack of
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 272

```
 1              foundation.  Mischaracterizes the record.
 2         BY MR. MEADOWS:
 3    Q    What about the record -- is there anything about the
 4         record you think is contrary to my question that
 5         says Eligo is embroiled in an incredibly expensive,
 6         long-running piece of litigation?
 7    A    I -- I have no --
 8                   MR. BLANKINSHIP: Objection.  Lack of
 9         foundation.
10                   THE WITNESS: I have no idea about the --
11         the cost of any of this.  I -- I I'm merely, I was
12         hired as an economist to quantify a calculation, to
13         -- to put it as -- as simply as I can.
14         BY MR. MEADOWS:
15    Q    All right.  Well, fair enough but --
16    A    So I have no idea how much you guys are spending on
17         litigation of this.  Yeah.
18    Q    Well, in a case where the costs of defending itself
19         in litigation exceed that 6 percent margin, it's
20         your opinion that Eligo just has to suffer that
21         loss, can't pass any of that onto customers,
22         correct?
23                   MR. BLANKINSHIP: Objection.  Incomplete --
24         lack of foundation.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 273

```
 1                    THE WITNESS: Let -- let me -- let me
 2           rephrase this, see if you agree with the question
 3           and -- and provide an answer.  You're basically
 4           saying in an example where there is a class action
 5           against the company, in this case by variable rate
 6           customers, and the company incurs legal fees as a
 7           result, does company, in my opinion, have the right
 8           to get compensated for the legal costs it incurs in
 9           the process?  Is that the question?
10      BY MR. MEADOWS:
11      Q    That -- no, the question is the way I asked it,
12           which is that because legal fees are not included in
13           the cost categories that you're including in your
14           damages model, and if the legal fees exceed a 6
15           percent margin on those costs, it's your view that
16           the law requires that Eligo just eat that loss; is
17           that right?
18                    MR. BLANKINSHIP: Same objection.
19                    THE WITNESS: I -- I did not opine on the
20           legal view or whether the legal costs, you know,
21           should or should not be accounted for in -- in this
22           methodology.  As -- as I've -- as I've stated
23           probably close to a hundred times right now, my job
24           was to perform, essentially, a mathematics
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 274

1          calculation under the interpretation of -- of the

2          legal language.  And in method one, I have not been

3          provided with any guidance to, you know, account for

4          legal losses in -- in my calculations.  That -- that

5          -- I did not interpret the contract.

6                    I did not come up with the formula the way

7          my testimony has been laid out, and I thought it was

8          quite clear that there are alternative legal

9          interpretations of the contractual language.  And

10         what I've done was merely perform the calculation

11         quantifying the -- the contract -- contract price

12         that should have been charged by Eligo under each

13         given legal interpretation.

14                   And there's absolutely nothing else that I

15         can -- that can -- I can tell you this.  And again,

16         for the record, I -- I think I've been asked this

17         question like 100 times right now.

18      BY MR. MEADOWS:

19      Q    Do you think it's commercially or economically

20           reasonable to construct a damages model that

21           excludes ordinary costs like auditors and lawyers,

22           and professional fees?

23                   MR. BLANKINSHIP: Objection.  Vague.

24                   THE WITNESS: I -- I just don't know what

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 275

```
 1              else to -- it's -- it's basically the -- it's --
 2              it's basically the same question.  I -- I honestly
 3              would -- would -- despite all the effort, I -- I
 4              just don't know how else to answer that question,
 5              but what I've said, so I - I don't know but --
 6         BY MR. MEADOWS:
 7    Q      You -- Mr. Macan, you expressed an opinion about
 8              what's commercially and economically reasonable in a
 9              number of different respects.
10    A      Okay.
11    Q      I'm asking you to apply that to the damages model
12              you constructed.  We both agree, right, that your
13              damages models reflected in Table 1 excludes several
14              categories of costs that are absolutely routine for
15              businesses to incur, doesn't it?
16                   MR. BLANKINSHIP: Objection.  Objection.
17              Lack of foundation.  Mischaracterizes testimony.
18              Argumentative.
19                   THE WITNESS: No, it doesn't.  That's not -
20              - that's not what I said.  I said my task was to
21              calculate the contractual rate and I'm calculating
22              contractual rate based on legal interpretation, and
23              -- and that's what it is.  The legal interpretation
24              did not include accounting for legal costs,
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 276

1           overheads, litigation suits, or whatnot.

2      BY MR. MEADOWS:

3  Q     And I'm asking you whether that legal interpretation

4        that you assume was commercially or economically

5        reasonable.  You're capable of expressing an opinion

6        as to that, aren't you?

7                MR. BLANKINSHIP: Objection.  Compound.

8        The first question you ask calls for a legal

9        conclusion.  The second is argumentative and vague.

10               THE WITNESS: I -- like I said, I -- I

11       don't have a legal opinion, I'm not an attorney, on

12       whether legal fees, litigation fees are -- should be

13       a part of the legal interpretation of -- of this

14       contract.

15     BY MR. MEADOWS:

16  Q    I'm not asking about the legal interpretation.  I'm

17       asking you about whether something is economically

18       reasonable.  You used the word, the phrase

19       "economically reasonable" throughout your opinion.

20       You agree with that, right?

21  A    Yes, I do.

22  Q    Okay.  Is it economically reasonable, in your view,

23       to construct a damages opinion that excludes

24       numerous categories of costs that are routinely

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 277

```
 1              incurred by businesses like Eligo?
 2                      MR. BLANKINSHIP: Objection.  Asked and
 3              answered.  Mischaracterized --
 4                      MR. MEADOWS: He's never answered it.
 5                      MR. BLANKINSHIP: -- mischaracterizes the
 6              record, lack of foundation.
 7                      THE WITNESS: The reason why I haven't
 8              answered it, and I -- I've said this before, I'll
 9              try to say it one more time, regulators seem to
10              think so, regulators seem to think that for fixed
11              rate customers that whatever prudent business-
12              running cost they have that the margin that they
13              allowed fixed rate companies to earn on the fixed
14              rate customers should be sufficient.  Eligo,
15              themselves, set the 6 percent rate, not me.  And --
16              and I'm saying if the company itself and the
17              regulator, who is the policeman of the whole market,
18              think that that's ample, they -- I -- I -- I'm under
19              the assumption that they have taken into
20              consideration, on Eligo's case, the possibility of
21              having, you know, legal costs to incur, in addition
22              to labor costs, overhead, and whatnot, and as well
23              as the -- the regulator that has been conducting
24              this long stakeholder process has also evaluated and
```

Edo Macan                                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 278

1              -- and taken all this into consideration with coming

2              up with the -- with -- with the figure.

3                      The regulator didn't come back and -- and

4              say, well, given what has transpired, you know, we

5              are increasing the rate from 6 percent to 25

6              percent.  And -- and I've seen no evidence why it

7              would be anything else.  I certainly do not pertain

8              to know the insides and out of -- of running an ESCO

9              business to opine on, you know, whether, you know, 7

10             percent is better than 6 percent.

11                     I've -- I've used two benchmarks that are

12             both very unbiased, very fair, economically very

13             sound, and -- and calculated damages and -- and

14             contractual price -- prices stemming from them, who

15             actually come out to be pretty close.  So this has

16             been done two different ways.

17         BY MR. MEADOWS:

18     Q     All right.  Is there anything else other than what

19             you just described to support your conclusion, your

20             opinion, that the costs and margins and damages that

21             you've calculated are economically reasonable, or

22             have you told me everything now?

23     A     I -- I have no -- I -- I don't know, I -- everything

24             that I have to tell you about, in addition to what

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 279

```
 1              I've said, is -- is contained in my expert report.

 2              I cannot, sitting here, say that I've covered

 3              everything that I've brought up in my expert report.

 4              It's a lengthy document with a lot of effort in

 5              writing it down, and -- and I stand by every word

 6              that I wrote in it.

 7      Q       And going back to paragraph 13J, again we've looked

 8              at this.  You say that it's not commercially or

 9              economically unreasonable to adopt 6 percent as the

10              relevant margin?  I'll let you -- if you're not

11              there.

12      A       J, page 12?

13      Q       Yes.

14      A       Yes.  What's the question?

15      Q       You see that where 13J says that, right?

16      A       Says what, sorry?

17      Q       That it would not be commercially or economically --

18      A       Yes.  Yeah.

19      Q       -- reasonable to adopt 6 percent.

20      A       Yeah.

21      Q       And then you say that 6 percent margin can be

22              expressed as 6.38 percent, correct?

23      A       As a 6.38 percent markup.

24      Q       Right.  And my question to you is, would it be
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 280

 1          commercially or economically reasonable to go any

 2          higher than that 6.38 percent?

 3                    MR. BLANKINSHIP: Objection.  Asked and

 4          answered.

 5                    THE WITNESS: As -- as for an unbiased,

 6          robust, conservative estimate of the risks involved

 7          tied to the opinion of the regulator and the company

 8          themselves, the answer is no, not -- not higher than

 9          that.  And again, I'm triangulating here.

10                    You know, if -- if the -- if the regulator

11          found that fixed rate customers, you know, the fixed

12          rate returns were capped at like 20 percent, and

13          Eligo was pursuing a 20 percent fixed rate margin,

14          those are two data points telling me that this line

15          of business, you know, is so costly in terms of

16          overheads and whatnot, there's so much risks

17          involved that here go two data points saying that

18          that would be sort of the adequate compensation.  I

19          -- I would know then, I would -- it would be

20          commercially reasonable to assume and economically

21          sound to say that the, you know, the appropriate

22          margin on variable rate in that case would be

23          something lower than, you know, lower or equal than

24          20 percent, and I merely applied the same logic

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 281

```
 1              here, so --
 2         BY MR. MEADOWS:
 3     Q    So as I understand your answer, based on, you know,
 4          what the -- what you think the regulator said and
 5          your own independent evaluation of the risk of
 6          running Eligo's business, you see 6.38 percent as a
 7          margin cap; is that basically right?
 8     A    No.  Based on -- based on Eligo's internal profit
 9          margin target of 6 percent, I did not make it -- I
10          did not make an assessment that it takes -- 6
11          percent should be sufficient for Eligo to run a
12          fixed rate business.
13     Q    Well, and as we saw earlier, that was a minimum
14          acceptable margin for, within Eligo's internal
15          document, right?
16     A    Well, I would not, I would assume that they wouldn't
17          set a business margin that keeps them underwater so
18          that would be sufficient.  And variable rate
19          customers are lower than lower-risk customers than
20          that.  So if they're above water or making money at
21          6 percent, variable rate customers compared to fixed
22          rate customers are -- are, you know, less risky
23          customers.
24     Q    So you -- well, your view is Eligo's minimum
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 282

```
 1          acceptable margin on fixed rate should be also

 2          adopted as a maximum acceptable margin on variable

 3          rate, right?

 4                  MR. BLANKINSHIP: Objection.  Asked and

 5          answered.

 6      BY MR. MEADOWS:

 7      Q    That's what it boils down to, isn't it?

 8                  MR. BLANKINSHIP: Same objection.

 9          Argumentative.

10                  THE WITNESS: Yeah.  No, I'm -- I'm --

11          that's not what I've said, and I really don't know

12          how to say it any other way.

13      BY MR. MEADOWS:

14      Q    That's what's argumentative, right there is you're

15          not answering the questions, and you keep saying

16          that you've answered them repeatedly.  I want a yes

17          or no to the simple question of you've taken a max,

18          a minimum acceptable rate in an Eligo document and

19          now you want to adopt it as a maximum, as a ceiling;

20          isn't that right?  Yes or no?

21                  MR. BLANKINSHIP: Objection.  Objection.

22          Asked and answered.

23                  THE WITNESS: I'm not adopting it as a

24          ceiling.  I'm using it as -- as a -- as a markup
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 283

```
 1            metric, in -- in my formulation.
 2         BY MR. MEADOWS:
 3      Q     As a markup metric to reach a 6.38 percent margin
 4            that I think you just told me a little while ago is
 5            the highest you think is commercially or
 6            economically reasonable, right?
 7      A     But counsel --
 8                     MR. BLANKINSHIP: Objection.  Asked and
 9            answered.
10                     THE WITNESS: Counsel, you're taking things
11            out of context, I -- I -- let me try one more time.
12            Let me try one more time.
13         BY MR. MEADOWS:
14      Q     Well, there's no question pending if you -- if you
15            did not understand the question.
16                     MR. BLANKINSHIP: No, there was a question
17            --
18                     THE WITNESS: Well, you did -- you did ask
19            me a question.  I'm just, I'm taking a breath so I'm
20            going to answer.
21         BY MR. MEADOWS:
22      Q     I asked you a yes or no -- I asked you a yes or no
23            question but you're not answering.
24      A     You're -- you're not allowing me to answer.
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 284

1    Q    The questions are not an invitation for you to
2         speechify what you're doing, so we're going to take
3         a break, but there's no question pending, and I
4         think you've given me all there is to give on this
5         line of questioning.  So let's take a few minutes.
6    A    I did not --
7                   MR. BLANKINSHIP: No.  That's fine.
8                   THE VIDEOGRAPHER: We are now going off the
9         record.  The time is 4:10 p.m.
10        (Whereupon, the parties go off the record.)
11                  THE VIDEOGRAPHER: Okay.  We are now back
12        on the record.  The time is 4:20 p.m.
13        (Background conversation.)
14     BY MR. MEADOWS:
15   Q    All right.  Mr. Macan, we talked about POWWR
16        spreadsheets earlier, and I want to -- we're going
17        to take a look at one of them going back to Table 1
18        of your report on page 62, Table 1 is where you list
19        your estimate of Eligo's procurement cost for
20        Plaintiff Schuster for November 2023, correct?
21   A    Under method one, yes.  Yes.
22   Q    Under method one, right.  And so these -- to
23        generate these calculations, you would have looked
24        at the POWWR spreadsheet for the month prior, which

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 285

```
 1              would be October 2023, correct?

 2     A    Correct.

 3     Q    And again, you would have tried to find either the

 4          15th of the month or the closest to that that you

 5          could get, right?

 6     A    Correct.

 7     Q    So could we pull that?

 8              MR. O'TOOLE: Sure.

 9      BY MR. MEADOWS:

10     Q    So we've got the screen behind us where we're going

11          to pull up.

12              MR. O'TOOLE: So for the record, that's

13          DEF024595.  I think we'll mark that as an exhibit?

14          Yeah.

15              MR. MEADOWS: We'll just show it.  I mean,

16          we've got the Bates number in the record.

17      BY MR. MEADOWS:

18     Q    So you see this displayed on the screen behind you

19          now, Mr. Macan, correct?

20     A    Yeah.  It's all black.

21     Q    And yeah.  And can you see at the very top?  I know

22          it's a little bit small, but the date next to the

23          Bates number is 10/17/23.

24     A    Correct.
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 286

```
 1    Q    Do you happen to know whether this is one of the
 2         POWWR spreadsheets that or the POWWR spreadsheet
 3         that you used for the November 2023 calculations?
 4    A    I -- I don't know based on the date.  I mean, if
 5         there is a -- if there is a 10/15, I would have used
 6         10/15, if you know for a fact that that's the one.
 7    Q    And I believe this is in the materials considered,
 8         right?  So I believe it is in your materials
 9         considered.  Yeah.
10    A    Okay.  Okay.  Okay.  Sure.
11    Q    So as it's displayed right now, we're on the title
12         page tab, right?
13    A    Mm-hmm.
14    Q    And everything is kind of blacked out.  Is this how
15         it displayed for you as well when you pulled it up?
16    A    When I got the files, that's -- that's in what --
17         yeah.  That's the format in which they opened up.
18    Q    Did you do something to kind of fix this display
19         issue?
20    A    I did.
21    Q    What did you find that you --
22    A    It's not an it's -- for the record, it's not a
23         display issue.  This is -- this is what I meant by
24         saying, in 25 years of being in this business, I've
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 287

```
 1              -- I've never been submitted data in discovery that

 2              were so, in such an unfriendly format.  Whether it's

 3              on purpose or -- or by accident, I just want to

 4              state it for the record.  So I -- I can -- I can

 5              tell you what I've done is -- if that's what you're

 6              asking for, get rid of the black.

 7         Q    Yeah.  What I want to know is on this screen, how

 8              did you get it to not display this way and be, you

 9              know, more usable than you see it now?

10         A    Sure.  You see the tab Conditional Formatting

11              button?  Click on that.  See the clear rules towards

12              the bottom and then do clear rules from entire

13              sheet.  Okay.

14         Q    Okay.

15         A    So that's going to show the content.

16         Q    All right.  And then we talked about the, you know,

17              the configurations you made on the -- on the POWWR

18              spreadsheets, with I -- which I think you said what

19              you did on the title page tab, which we're looking

20              at now, correct?

21         A    Some were on title page.  Some were in the -- some

22              of the other pages.

23         Q    All right.  You're right.  Some were on the title

24              page, which were the inflation rate, the general
```

Edo Macan                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 288

```
 1            interest rate, and I'm looking at page 58 of your
 2            report, and the rest were on the summary page.  So
 3            on the title --
 4       A    Okay.
 5       Q    I'm sorry -- on the title page, we can go ahead and
 6            as you did, set the inflation rate to zero.  Can you
 7            do that?  Well, I -- let me stop right there first,
 8            do you see here on this particular sheet, the
 9            inflation rate is 7.5 percent?
10       A    Yes.
11       Q    And so you would have set this to zero, correct?
12       A    Yes.
13       Q    Now, and I apologize if I asked you this before, but
14            when that change is made, to your knowledge, are
15            other values in the spreadsheet changed
16            automatically?
17                 MR. BLANKINSHIP: Objection.  Asked and
18            answered.
19                 THE WITNESS: Yes.  Some -- some cells
20            change accordingly.
21         BY MR. MEADOWS:
22       Q    And do you -- do you know how those changes are made
23            within, you know, the programming of the
24            spreadsheet?
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 289

| | | |
|---|---|---|
| 1 | A | Like I said before, I -- the -- the -- I was -- I -- |
| 2 | | I did not attempt to recreate and make a |
| 3 | | nonfunctional model, functional. I merely tried to |
| 4 | | take data that was provided in extremely unfriendly |
| 5 | | non-confidence form and tried to use it as inputs |
| 6 | | into my calculation. |
| 7 | Q | Well, do you think that the data on the POWWR |
| 8 | | spreadsheets is reliable? |
| 9 | A | This is the data that Eligo submitted pursuant to |
| 10 | | the discovery request to provide the data -- to |
| 11 | | provide this particular data. So I have to go off |
| 12 | | of the assumption that they have provided the data |
| 13 | | that -- that had been asked upon. |
| 14 | Q | Well, it's your report. You're going to testify |
| 15 | | about damages that you've calculated. Do you think |
| 16 | | that the damages you've calculated, relying on the |
| 17 | | POWWR spreadsheets, are reliable? |
| 18 | A | I can only go off of the assumption the data that |
| 19 | | Eligo produced was indeed the data that they -- they |
| 20 | | said that they produced. So I -- I, you know, I -- |
| 21 | | that's -- that's what it is. If -- if we're looking |
| 22 | | at a cost and they say in their financial records |
| 23 | | that, you know, the cost is X, I -- I'm going off of |
| 24 | | the fact that, you know, they -- they got a POWWR |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 290

```
 1          report that said in that given month the -- that
 2          energy cost was X.
 3     Q    But back to a question I asked a few moments ago.
 4          When you changed the inflation rate to zero, can you
 5          tell me what other values in the spreadsheet changed
 6          automatically?
 7                    MR. BLANKINSHIP: Objection.  Asked and
 8          answered.
 9                    THE WITNESS: Some.  I -- I cannot -- did -
10          - let -- let me show you something.  Let -- let me
11          show you something.  I think you're going to --
12          you're going to understand where I'm coming from.
13          Can -- can you unhide the sheets in this worksheet?
14          Do you know how to do that?  Sorry, who is doing it?
15          You are?  Can you unhide the sheets?
16                    MR. O'TOOLE: Do you want to explain what
17          you -- what you mean by that?
18                    THE WITNESS: All of them.  Unhide all of
19          them.
20                    MR. O'TOOLE: And how do you to that?
21                    THE WITNESS: You scroll to the bottom.
22          No, no.  See where the tabs are?  Title page?  Put
23          the cursor somewhere on it, right click.
24                    MR. O'TOOLE: I think it's --
```

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 291

1              THE WITNESS: It can be anywhere.  Just --

2              MR. O'TOOLE: I'm clicking on it.  There we

3       go.

4              THE WITNESS: Unhide.  Okay.  So you should

5       now unhide all of these sheets.  And you're going to

6       have to do it -- there we go.  Okay.  Can we just

7       scroll through all of the sheets?  And there's more

8       to the right.

9              MR. O'TOOLE: Yeah.

10             THE WITNESS: Okay.  So Counsel, I don't

11      know if you have seen this, but this is what I mean

12      by uncooperative and -- and really unfriendly

13      format.  So I'm saying this not to complain, this

14      has been provided in the way it has been provided,

15      but I'm merely saying this, that to answer your

16      question, you know, whether changing an input on --

17      on an input sheet from -- from a number to a zero,

18      which cells are affected, I think it gives you the

19      illustration.  The short answer is, I cannot give

20      you a definitive answer for every single cell in the

21      worksheet which -- which changed as a result.  And I

22      think just scrolling through the 20 or 30 tabs in

23      this worksheet, most of them are still disabled.

24             Some are -- some are blackened out.  There

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 292

```
 1              are -- there are macros, there are procedures behind

 2              it.  It's a -- it's -- it's just -- it's I think for

 3              the -- for the biggest Excel expert, it would be an

 4              impossible task to -- to do.

 5         BY MR. MEADOWS:

 6    Q    Fair enough.  But you didn't rely on any of those

 7              other -- the only sheets that you used in your

 8              damage calculations were the title page tab and the

 9              summary page, right?

10    A    Sure.

11                   MR. BLANKINSHIP: Objection.  Vague.

12         BY MR. MEADOWS:

13    Q    And so let me limit my question then to those two

14              pages on the spreadsheet.  When you change the

15              inflation rate from 7.5 to zero, what other values

16              on the title page tab automatically change?

17    A    I'm -- I -- I -- the way to answer some of the

18              questions is say, sure, and then I catch a breath

19              and I want to elaborate on it, and in this case.

20              You didn't catch it.  I wanted to say sure, but a

21              lot of these tabs are feeding from other tabs.  To -

22              - to fully understand and recreate or make this

23              operational would have been an endeavor that is

24              completely, you know, above and beyond anything that
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 293

```
 1              -- that I have been sort of hired to do here.

 2                    So I would not -- I -- I would not agree

 3              with an assertion that all that matters is are these

 4              three sheets.  Like I've said, and I'm going to

 5              repeat it again, I've done -- I've -- I've used

 6              Excel for 20 years.  I think I'm pretty proficient.

 7              I've -- I've done this to the best of my ability to

 8              try to literally figure out, you know, what are the

 9              costs in -- in this mess of a model and -- and

10              that's what I meant by the previous statement.

11        Q     My question simply was when you change the inflation

12              rate from 7.5 to zero, do any other values that you

13              see on the title page change?  I'm not asking you

14              anything other than do they change?

15        A     Sure, let's do that.  Let's do that exactly.  So we

16              can -- we can see it.  Can you please scroll to the

17              -- oh, this is the title page.  Can you go to the

18              summary page?  Can we do the same thing?

19              Conditional formatting.  You might kill the enable

20              content or whatever.  Okay.  Can you unhide the

21              columns?  This is the part that I didn't get to.

22              Each of these tabs has, you know, bulk of the file

23              that you don't even see.

24                    So if you do unhide columns, there's
```

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

Page 294

```
 1              basically a whole calculation behind it.  This is
 2              what I meant by saying that it's -- it's, you know,
 3              what you see.  It's not just these three sheets.
 4              There is stuff running in the background.
 5                      Okay.  So let's do the following.  If you
 6              go to the title page, can you revert back to 7.5
 7              percent?  Seven and a half percent?  Fine.  Let's go
 8              to the summary page.  Let's scroll to the right, and
 9              I cannot see from here.  I'd have to get closer.  So
10              let's see -- sorry, I'm going to have to walk with
11              the mic.
12      Q       I can't see it either from where we are so I -- no
13              problem.
14                      THE VIDEOGRAPHER: Counsel, would you like
15              me to remain on the chair?
16                      THE WITNESS: Okay.  So let's do the
17              following.  So let's say the energy price here,
18              32.59.  If you go to -- back to the title page.  So,
19              32.59.
20                      MR. O'TOOLE: Can you give coordinates for
21              that?  The cell number?
22                      THE WITNESS: I'm sorry.  AK -- AK17.
23                      MR. O'TOOLE: AK17.  Okay.
24                      THE WITNESS: Okay?  Go to title page and -
```

Edo Macan                        December 17, 2025
Brous v. Eligo Energy, LLC

Page 295

```
 1              - and switch inflation to zero.  Okay.  Go to -- go
 2              to summary -- go to summary page, 32.59.  So to
 3              answer your question, changing the inflation rate
 4              from 7 to -- to this did not affect it.  And -- and
 5              I'm -- I'm not surprised.  And the reason why is
 6              this is one month out.  And the way you know that is
 7              if you scroll to the left.  Oh.  Too far -- sorry --
 8              go to the right.  See, this is the next -- oops.
 9              Sorry.  Scroll a little bit to the left.
10                   This is the next month and this is the
11              next month.  So I'm -- I'm sure there were files
12              where pricing came out further out but it sounds
13              like based on this isolated change alone that I've
14              just done, just going off of the file as was
15              produced by -- by client, I cannot assume anything
16              else that pretty much the 7 percent, 7.5 percent,
17              whatever it was, inflation rate, like I conjectured
18              from economic basis, in fact, had no implication on
19              -- on the energy cost.
20         BY MR. MEADOWS:
21     Q    And was that energy cost figure that you pointed to,
22              I think it was in cell AK4 -- 17, was that the only
23              one that you used in calculating the damages?
24     A    No, it's not.  Just one of them.  I just used one as
```

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

Page 296

```
 1            an example.

 2    Q       All right.  What about changing the general interest

 3            rate to 0 percent?  Does that roll up to changes in

 4            --

 5    A       We can again try because in order for me -- just to

 6            say one more thing on the record, so in order for me

 7            to get -- to be familiar enough with this, to use

 8            these things in my report, you know, I've played --

 9            tried different things until I sort of convinced

10            myself that, yeah, you know, it -- it's really --

11            it's far from ideal.  But based on my assessment of

12            what's going on, I'm pretty sure that the cells that

13            I took actually correspond to what I think they

14            correspond, so -- to answer your question before.

15            So if we do the same thing, take the inflation back

16            to 7.5, take the general interest rate to -- to zero

17            -- sorry.  I'm giving commands, whoever is doing it.

18            Okay.  Go to summary page and go to AK17, 32.59.

19    Q       So in that case it did change.

20    A       It didn't change.  32.59 in both cases, the cell --

21    Q       Oh, 32.  Oh, you're right.

22    A       Yeah.

23    Q       Okay.

24    A       Okay.  So -- so if I may.
```

Edo Macan                               December 17, 2025
Brous v. Eligo Energy, LLC

Page 297

1    Q    Yeah.

2    A    Like I said, it doesn't surprise me because when you

3         think about it economically, we are -- no money will

4         exchange hands.  Whoever did this model clearly knew

5         how to, you know, price it because there -- there's

6         really no accrual period, if you will.  You're just

7         pricing something where the transaction is going to

8         take place, you know, two weeks from then.  So it

9         didn't really make sense to account for, within a

10        day or it's not even within a day, there's -- there

11        are no interest rates or inflation at that level.

12   Q    So once you made all of these configuration changes

13        to the POWWR spreadsheet, you -- what it yielded is

14        the estimated procurement costs in Table 1 on page

15        62, right?

16   A    Energy cost component, capacity cost component,

17        ancillary services cost component, T&D losses, and

18        mandatory RECs.

19   Q    So you got all of those from the POWWR spreadsheet?

20   A    Correct.

21   Q    All right.  And what calculations -- were you able

22        to pull those figures directly from the POWWR

23        spreadsheet after you did these configuration

24        changes?

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 298

| | | |
|---|---|---|
| 1 | A | Yeah.  I think so.  They're all in there. |
| 2 | Q | Is that the case for all -- each one of them? |
| 3 | A | I'm pretty sure. |
| 4 | Q | I mean, for example, where -- where -- do you |
| 5 | | remember where would I go on the POWWR spreadsheet |
| 6 | | after making these configuration changes to find |
| 7 | | this 2.48 energy procurement cost?  How would I like |
| 8 | | recreate that? |
| 9 | A | Sure.  If it's the right -- if it's the right file. |
| 10 | | I'm -- I'm not sure if that is the right file.  Can |
| 11 | | you go to -- well, never mind.  We haven't made all |
| 12 | | the -- we haven't made all the changes, so. |
| 13 | Q | We haven't made all of them, no.  We can do that. |
| 14 | A | So you -- you -- do you want to do that? |
| 15 | Q | Yeah, let's do that.  Because I-- |
| 16 | A | Okay.  Sure. |
| 17 | Q | It's important for us to understand how you got |
| 18 | | these numbers. |
| 19 | A | I understand.  Go to the title page, please. |
| 20 | Q | Well, let's make sure we make these two changes on |
| 21 | | the -- yeah. |
| 22 | A | Sounds like -- sounds like you -- okay.  Let me see. |
| 23 | | Is it page 17 or the -- |
| 24 | | THE WITNESS: Fifty-eight, page 58? |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 299

BY MR. MEADOWS:

2    Q    Are you looking for these adjustments?

3    A    Adjustments, yeah.

4    Q    Oh yeah, yeah, 58.  Okay.  Yes.

5    A    Yeah.  Okay.  Okay.  All right.  So let's do it like

6         this.  Go to set inflation rate as zero.  Set

7         general interest rate to zero.  Okay.  Go to summary

8         page.  So the start date, right, is November 1st.

9         Sorry, it's kind of hard to see from here.  It

10        sounds like --

11   Q    That's what it says, "11/1/23."

12   A    Right?  Yeah.  Okay.  Then the product type set to

13        variable with cap.  State set to New York.  Utility,

14        who are we talking here?  Schuster or Brous?

15   Q    Schuster is the one displayed in Table 1.

16   A    It's confusing.  Schuster's -- hold on a sec.  I

17        think Schuster was NYSEG.  Let me just confirm.

18        NYSEG service territory.

19            MR. O'TOOLE:  Here.  Is that helping?

20            THE WITNESS:  Is that Schuster?  Yeah.

21        RG&E.  Okay.  Thank you.  Yeah.  RGE.  Rate profile.

22        These are the different -- these are the different

23        residential -- pick SC1.  Okay.  And then profile

24        load zone.  It's not a comment zone.  Can you go to

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 300

1          load zone?  Ah, Zone B.  Yeah.  B.  Okay.

2                    AUTOMATED VOICE: I'm going to have to

3          close this conference because you have exceeded the

4          maximum time limit.  If you need to stay on the

5          line, you'll have to start another conference.

6          Thanks for calling.

7                    MR. BELENKY: We're getting cut off the

8          conference.

9                    THE COURT REPORTER: Yeah, we'll -- I'll

10         restart it.

11                   THE WITNESS: Okay.  Can we zoom out a

12         little bit?

13                   MR. MEADOWS: Hold on.

14                   THE WITNESS: Okay.

15                   MR. BLANKINSHIP: We can -- I just --

16                   THE WITNESS: Yeah.  No, no, I understand.

17                   THE COURT REPORTER: It'll only take me a

18         second.  I don't know why it keeps doing that

19         because we even restarted it during the break, so.

20                   AUTOMATED VOICE: Welcome to the Veritext

21         Conferencing Center powered by (indiscernible).

22         Thanks.  I'm connecting you now.

23                   THE WITNESS: There's like background

24         noise.

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

```
 1                    THE COURT REPORTER: It's --

 2                    THE WITNESS: Okay.

 3                    THE COURT REPORTER: They'll fix it.

 4                    THE WITNESS: Okay.  So we were --

 5          BY MR. MEADOWS:

 6      Q    Okay.  So we can -- yeah, continue on.

 7      A    We were at -- yeah, we were at I think, summary

 8           page, right?

 9      Q    Yes.

10      A    And can you scroll up, please?  Municipality.  All

11           other.  Yeah.  Okay.  Then let's go to -- scroll to

12           the left, please.  You see cell G20, where there is

13           gross margin target?  Set that to zero, because I'm

14           going to be separately adding that on top.  And then

15           -- okay.  And then let's go back to the --

16      Q    Hold on a sec.

17      A    Sorry, it's really hard to see from here.  Can I --

18      Q    Yeah.

19      A    -- unhook this just until I look at the screen?

20           Just zoom it out because then I -- I don't know

21           where it is.  Okay.  Can we go to title page?  Okay.

22           Can we go to summary page again?  And scroll to the

23           right.  What's the figure that we have?  Sorry.

24           Scroll to the right.  Scroll to the right.  Okay.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 302

1              So you see here cell AK17.

2    Q    Yes.

3    A    Whatever it was 39-something before, now it's 24.80,

4         and it's expressed in dollars per megawatt hour, so

5         expressed in cents per kilowatt hour, that's 2.  48,

6         which is what I had in Table 1 for energy cost.

7    Q    I see.  And do you have -- can you identify where

8         the 92-cent capacity figure would be found?

9    A    Sure.  Sure.  Give me a second.  Let me just -- let

10        me just get a coffee on the table.

11                   THE COURT REPORTER: Don't forget to --

12                   THE WITNESS: Oops.  Okay.  Is there a way

13        to unhook myself from the leash so that way I could

14        -- from the mic?

15                   THE COURT REPORTER: There's another piece

16        of tape under the table, so if you undo that --

17                   THE WITNESS: Okay.  Because it --

18                   THE COURT REPORTER: -- you can be a little

19        more --

20                   THE WITNESS: Okay.

21                   THE COURT REPORTER: -- free.  You also

22        have it flipped the wrong way, so you need to turn

23        it because it's in and you need it out.

24                   THE WITNESS: Sure.  I just did it.

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 303

1              THE COURT REPORTER: You're okay, it's--

2              THE WITNESS: Yeah.  Yeah.  It's -- my

3         eyesight is not great and -- yeah, just leave it on

4         the floor.  That's okay.  All right.  So Counsel,

5         you were asking for the capacity figure?

6      BY MR. MEADOWS:

7      Q    Yes.

8      A    Capacity figure is right next to it, $9.19 expressed

9         in kilowatt hours it's 9.  -- 0.92.

10     Q    Did you say 9.92?

11     A    9.9 -- this is 9.2 or 9.92.

12     Q    I see.

13     A    Divided by 10 it's 0.92.

14     Q    Okay.  Thank you.

15              THE WITNESS: It's okay.

16              THE COURT REPORTER: It's a piece of tape,

17         let me just--

18              THE WITNESS: Okay.

19     THE COURT REPORTER: There you go.

20      BY MR. MEADOWS:

21     Q    Thank you for that.  I know the writing was really

22         small.  Let me ask you a couple of additional

23         questions.  We haven't talked about method three of

24         your damages.  And there -- and you talk about that

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 304

```
 1            starting on page 71, paragraph 173 says, "This
 2            method identified the rate Eligo should have charged
 3            by calculating a rate on a monthly basis that varies
 4            in response to prevailing retail market prices,"
 5            correct?
 6       A    Mm-hmm.
 7       Q    And how did -- tell me how you calculated prevailing
 8            retail market prices for purposes of this method?
 9       A    As -- as I outlined in my -- in my report, and --
10            and really at sort of a high level, I looked at --
11            first, I defined the market.  I asked myself a
12            question, who is Eligo competing with?  And the
13            answer is Eligo is competing with other ESCOs and --
14            and an incumbent utility.  And so what would be the
15            most robust way and unbiased way to estimate the
16            market prevailing rate?  That would be to take into
17            account other -- other competitors in the market and
18            also to take into account their market share,
19            because this is -- this is quite crucial.
20                  And so what I've done was at a high level,
21            I figured out the -- I calculated the market share,
22            that incumbent utility.  Let me take a step back.
23            There's also a question of granularity.  So ESCOs
24            compete in different zones and in different utility
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 305

1          service territories.

2                  So to come up with an apples-to-apples

3          comparisons, I had to do this -- do this calculation

4          by NYISO zone by utility service territory, because

5          that way you would compare, you know, everyone's

6          rates for the -- for the same geographic area

7          because you know, Eligo and presumably many other

8          ESCOs were offering different rates in different

9          zones in different areas.  So I defined the term, I

10         think I called it local market.

11                 So the local market which I'm going to

12         discuss is pretty much the combination of, is sort

13         of a territory encompassing a given zone and an

14         NYISO zone and utility service territory, if that

15         makes sense.  So for every local market, I basically

16         calculated the market share that ESCO had.  And

17         actually -- I'm sorry -- there's one more step

18         before that.

19                 In order for this calculation to be a

20         little bit more simple and -- and productive, I

21         basically focused first on finding the top 10 ESCOs,

22         the 10 ESCOs with highest grossing energy sales in

23         every given local zone.  And then looking at now

24         knowing what the top ESCOs are, the top competitors,

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 306

```
 1              and -- and also Eligo -- I'm sorry -- and also the
 2              incumbent utility, I estimated the market share that
 3              each one of these ESCOs had in that given local
 4              zone.  And the calculation of the prevailing market
 5              rate has been basically the following form.  It was
 6              the market share of ESCO number one times the
 7              variable rate offered in the local zone in that
 8              given month, plus the market share of ESCO number
 9              two, times its market share.  Sorry if I said that
10              wrong.  The rate for the ESCO number two times its
11              market share plus -- and I would do that for all the
12              10 top-selling ESCOs, plus the market share that the
13              incumbent utility has, times its rate.  And in
14              essence, that was the -- that was the calculation.
15      Q       All right.  Now, within each one of these, whether
16              we call them "zones or territories," I'm not sure.
17      A       I -- I call them, yeah, local --
18      Q       Or markets, whatever.  You know what I'm talking
19              about, yeah.
20      A       Yeah, I know what you're talking about.  Yeah.
21      Q       Each one of these --
22      A       Local markets.  Let's -- local markets.  Yeah.
23      Q       Fair enough.  Which -- within each one of these
24              local markets, is it fair to say that the utility by
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 307

```
 1              far, had the largest percentage of market share?
 2     A   Yeah.  I think in -- in most of them, at least for
 3              the two plaintiffs, where I looked at, they had
 4              largest share, correct.
 5     Q   All right.  And did you ever do a comparison of
 6              Eligo?  Well did you ever try to calculate a
 7              prevailing market rate just among the ESCOs in each
 8              market zone?
 9     A   I -- not in my -- not in my expert report, I think
10              it -- yeah.
11     Q   Now within these various zones, was the relevant
12              utility sell -- selling the same exact product as
13              the ESCOs?
14     A   They were -- I -- I addressed this explicitly in the
15              testimony.  They were selling -- they were selling
16              that -- that -- they're basically selling -- both of
17              them were selling retail electricity.  The
18              difference was in the case of Eligo and -- and some
19              of the ESCOs, they were -- they were also selling a
20              higher share of -- they were also selling sort of a
21              higher share of renewable generation in the product
22              that they offer.  So yeah.
23     Q   And do you consider the renewable sourced
24              electricity to be in the same market as electricity
```

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

Page 308

1          sourced from, you know, brown sources?

2     A    What do you mean by, "in the same market"?

3     Q    Are they competing -- is an ESCO selling 100 percent

4          electricity generated 100 percent from renewable

5          sources seen as a competitor to a utility that,

6          let's say, for example, is generating none of its

7          electricity from green sources?

8               MR. BLANKINSHIP: Objection.  Lack of

9          foundation.

10              THE WITNESS: I -- I don't know how, you

11         know, a typical customer would -- would sort of

12         perceive that choice of zero green compared to 100

13         percent green.  I mean, looking from -- from

14         structurally, really the only difference is the

15         amount of RECs.  Everything else is pretty much the

16         same.

17              And given that the RECs are sort of a

18         financial product, it's -- it's thinking about it as

19         buying an airline ticket without insurance and

20         buying an airline ticket with insurance.  And I'm --

21         I'm oversimplifying just for the sake of clarity.

22         (Background conversation.)

23    BY MR. MEADOWS:

24    Q    I'm going to show you -- which one are we up to?

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 309

```
 1                    THE COURT REPORTER: Well, you didn't mark
 2           this, so 8.
 3                    MR. MEADOWS: Right.  Eight.  Okay.  Go
 4           ahead and mark that as 8.
 5           (Whereupon, Ex. 8 Four Figures from Expert Report
 6           (5, 6, 9 and 10), is marked for identification.)
 7           (Background conversation.)
 8                    THE WITNESS: Oh, this is.  Sorry.  You
 9           didn't give me that.  There's an extra one.
10                    MR. MEADOWS: Oh, that's what I was looking
11           for.  Thank you.
12                    THE WITNESS: Okay.
13       BY MR. MEADOWS:
14     Q    So Exhibit 8 is a kind of a compilation of some
15           graphs that we pulled from your report and
16           reproduced here for ease of reference.
17                    MR. BLANKINSHIP: I'm just going to object
18           as an incomplete exhibit.
19       BY MR. MEADOWS:
20     Q    And if we look at the -- at the top, I know it's
21           double-sided.  You see the one that says, "Figure 5
22           Schuster Method Three."
23     A    Mm-hmm.
24     Q    And so because this is method three, this graph in
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 310

```
 1              Figure 5 is plotting the rate that Eligo, the

 2              variable rate that Eligo charged Ms. Schuster

 3              against the prevailing market rate for her

 4              particular market zone, correct?

 5      A       Yeah.  RG&E utility in zone B.  Yeah.

 6      Q       Right.  And the RG&E, the weighted average market

 7              price is depicted in the blue line, correct?

 8      A       I believe that -- give me a second.  Yes, that is

 9              correct.

10      Q       All right.  And then we can compare that to Figure

11              9, which pertains to your damages, method four,

12              right?

13      A       Figure 9 is also out of my report, Figure 9?

14      Q       It is.  Yeah.

15      A       Okay.

16      Q       It's on page 84.

17      A       Or Schuster.  Yeah.

18      Q       Okay.  And what we see depicted in Figure 9 is the

19              rate, the variable rate that Eligo charged Ms.

20              Schuster plotted against the actual price that the

21              RG&E utility charged over the same period of time,

22              correct?

23      A       Correct.

24      Q       And if we look at the blue line in Figure 5 against
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 311

1              the gold line in Figure 9, do you agree with me that

2              there are virtually no differences between those

3              two?

4                      MR. BLANKINSHIP: Objection.  Vague.

5                      THE WITNESS: There -- there are definitely

6              differences because the underlying calculation is --

7              is different.  But shape-wise, they -- they look

8              very close.  Yes.

9        BY MR. MEADOWS:

10       Q    Okay.  And the same exercise, if you turn the page

11            over or flip it, I should say, we've got the same

12            charts, but this time pertaining to Ira Brous.  So

13            at the top is the method three chart which compares

14            the rate that Eligo charged Mr. Brous against the

15            weighted average market price, correct?

16       A    Correct.

17       Q    And then in Figure 10, the price that Mr. Brous was

18            charged by Eligo is compared to the actual price

19            charged by Mr. Brous's utility, right?

20       A    The -- the price to compare.  Right.

21       Q    Yes, that's what I mean.  Yes.  Thank you.

22       A    Yes.  Yeah.  Yeah.  Yeah.  Yeah.

23       Q    And here again, if we look at the blue line in

24            Figure 6 and the gold line in Figure 10, would you

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 312

```
 1              agree with me that there are, if any differences at

 2              all, they are very small, almost invisible to the

 3              naked eye?

 4                      MR. BLANKINSHIP: Objection.  Vague.

 5                      THE WITNESS: Like -- like I said,

 6              calculations are completely different, but the --

 7              the shapes look very, very similar, yes.

 8         BY MR. MEADOWS:

 9     Q     And so for purposes of method three, by doing a

10              weighted average calculation that included the

11              utility --

12     A     Yeah.

13     Q     -- you ended up with a prevailing market price that

14              was almost exactly what the utility happened to

15              charge; isn't that right?

16                      MR. BLANKINSHIP: Same objections.

17                      THE WITNESS: Methodologically, they're --

18              they're completely different.  The mere fact, it

19              looks like that in this particular zone over this

20              period, a large percentage of customers, and I think

21              I have a table somewhere in my report, probably

22              nowhere, have chosen to get electricity service from

23              the utility rather than -- rather than the ESCOs.

24                      And if that's the case, then the -- the
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 313

1              relative weight attributed to the -- to the utility

2              rate is going to be much higher than -- than the

3              weights of the -- attributed to the rates charged by

4              the other ESCOs, by the mere facts of the situation

5              in the market definition that -- that, you know,

6              simply utility has 90 percent of the rate and 90

7              percent of the customers go to the utility.

8         BY MR. MEADOWS:

9      Q     I understand the rationale for it.

10     A     Yeah.

11     Q     My question simply is that by choosing that

12           particular way to do a weighted average to arrive at

13           the prevailing market price, you ended up with a

14           price curve that looks almost identical to the

15           utility price itself, correct?

16                  MR. BLANKINSHIP: Objection.  Asked and

17           answered.

18                  THE WITNESS: Again, yes, in that area,

19           because in that area over this period, utility had,

20           it sounds like, you know, like large percentage, 80,

21           90 percent of the customers, you know, pick the

22           utility.

23         BY MR. MEADOWS:

24     Q     Yeah.

Edo Macan                                                  December 17, 2025
Brous v. Eligo Energy, LLC

Page 314

```
 1    A     If -- if this was a different area where, you know,

 2          30 percent of customers opted to procure, buy, get

 3          electricity from -- from the incumbent utility, then

 4          they would look completely different.

 5    Q     Right.  And these graphs would also look completely

 6          different if you plotted the prices that Ms.

 7          Schuster and Mr. Brous paid against the prices

 8          charged by other Eligo -- by other ESCOs that sold

 9          green energy, wouldn't it?

10                  MR. BLANKINSHIP: Objection.  Lack of

11          foundation.

12                  THE WITNESS: Sorry, can you please repeat

13          it?

14       BY MR. MEADOWS:

15    Q     Yeah, sure.  If you replaced the prevailing market

16          rate as you've depicted it with a depiction of the

17          rates charged by other ESCOs in each zone that sold

18          green energy, those graph lines would look

19          completely different than they look now, wouldn't

20          they?

21                  MR. BLANKINSHIP: Same objection.

22                  THE WITNESS: You mean -- you mean if -- if

23          in my calculation formula, I defined the market to

24          exclude the incumbent utility, and define the market
```

Edo Macan                                  December 17, 2025
Brous v. Eligo Energy, LLC

Page 315

1          only as the, let's say, 10 top ESCO competitors --
2      BY MR. MEADOWS:
3    Q    Right.
4    A    And -- and have done this.
5    Q    Right.
6    A    I have not done that calculation, but, you know, I -
7         - I think it's rational to assume that given that
8         these two are quite similar.
9              MR. MEADOWS: Okay.  Why don't we take a
10        few minutes?  I don't think we have very much more,
11        but I want to do a last --
12             THE WITNESS: Okay.
13             THE VIDEOGRAPHER: We are now going off the
14        record.  The time is 5:03.
15        (Whereupon, the parties go off the record.)
16             THE VIDEOGRAPHER: Okay.  We are now back
17        on the record.  The time is 5:14 p.m.
18     BY MR. MEADOWS:
19   Q    Mr. Macan, kind of harkening back to when you showed
20        us how you used the POWWR spreadsheets, I want to
21        ask, do you have any reason to believe that Eligo
22        used the POWWR spreadsheets in the same way that you
23        did?
24   A    I -- I don't know how they -- how they use it.  You

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

Page 316

```
 1              saw they were extremely intricate and complex, so.

 2       Q      Okay.  I want to ask you about the underlying

 3              calculations you made for methods two and three of

 4              your damage calculation.  Let's talk about two.  Do

 5              you, in your work, did you generate, you know,

 6              specific work papers that show the actual

 7              mathematical calculations that led up to your

 8              damages numbers for method two?

 9                   MR. BLANKINSHIP: Objection.  Vague.

10                   THE WITNESS: I'll answer, I think -- I

11              think I know what you mean.  No, because the -- the

12              calculation is so straightforward that I think, you

13              know, I have not produced any work papers because of

14              the description and the -- and the table is pretty

15              much where, you know, it's -- it -- it -- it's done.

16         BY MR. MEADOWS:

17       Q      Well, if I wanted to check your math on method two,

18              look -- is there any source that I could look at to

19              see exactly how you roll -- you know, kind of rolled

20              up to those numbers?

21       A      Yeah, I'm sure there are Excel files that I've used

22              to add numbers up, yes, if -- if that's what you

23              mean by that, yes.

24       Q      I mean, well, Excel or anything that you generated -
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 317

1           -

2      A    Yeah.

3      Q    -- and preserved that show that, those mathematical

4           --

5      A    Yeah.  I did not do the summation on a calculator

6           and -- and wrote it in.  Yeah.

7      Q    Okay.

8      A    So I -- I -- yeah.

9      Q    And you still have possession of those now?

10     A    I -- I believe so.

11     Q    All right.  And I asked you for method two.  I won't

12          ask you the same question for method three.  I take

13          it you've got the same -- whatever sort of documents

14          you have that support your calculations for method

15          two, you've got the same thing for three; is that

16          fair?

17     A    Yes.  Yes, I think that's right.

18              MR. MEADOWS: All right.  All right.  It's

19          been a long day.  Thank you for your time.  I don't

20          have any further questions for you.

21              THE WITNESS: Okay.

22              MR. BLANKINSHIP: I'm going to have a few

23          questions, but I wanted to confer with my colleagues

24          first, so I will be back as soon as possible.  You

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 318

```
 1              just hang tight.

 2                        THE WITNESS: Okay.

 3                        MR. BLANKINSHIP: Don't talk to these guys.

 4                        THE VIDEOGRAPHER: Off the record, Counsel?

 5                        MR. BLANKINSHIP: Yes, please.

 6                        THE VIDEOGRAPHER: We are now going off the

 7              record.  The time is 5:16.

 8         (Whereupon, the parties go off the record.)

 9                        MR. MEADOWS: I'll be right back.

10                        THE VIDEOGRAPHER: All right.

11                        THE VIDEOGRAPHER: Okay.  We are now back

12              on the record.  The time is 5:26 p.m.

13                           CROSS-EXAMINATION

14        BY MR. BLANKINSHIP:

15    Q    Mr. Macan, could you look at paragraph 65 of your

16         report, which is on page 32?

17    A    Yes.

18    Q    And can you read the second to last sentence that

19         starts, "Eligo's rate cap policy is also a one-way

20         street"?

21    A    "Eligo's rate cap policy is also one-way street,

22         allowing the company to gradually increase prices,

23         avoiding attrition from bill shock.  It does not

24         allow for rate cap decreases."
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 319

```
 1      Q    Okay.  And you recall that Mr. Meadows asked you

 2           what support there was for your claim that this was

 3           Eligo's policy?

 4      A    I do.

 5      Q    Okay.  And if you look at the last sentence of this

 6           paragraph, does that refresh your recollection about

 7           the source for that claim?

 8      A    As Eligo concluded in -- in service zones, without

 9           reliable competitor information like New York, the

10           new rate cap should stay the same or increase by

11           more -- no more than 15 percent from the current

12           rate to maintain.  That's where it came from.

13      Q    Okay.  Thank you.  Would you agree that sometimes

14           companies can have a policy, but that there might be

15           exceptions to that policy that are made from time to

16           time?

17      A    Yeah.  I mean, that's reasonable.

18      Q    Okay.  That doesn't mean it's not the company's

19           policy.  It just means there be might be a few

20           exceptions on occasion.

21      A    Correct.

22                    MR. MEADOWS: Objection.  Leading but go

23           ahead.

24                    MR. BLANKINSHIP: Okay.  That's all I have.
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 320

1            MR. MEADOWS: Okay.

2            THE COURT REPORTER: Okay.

3            THE VIDEOGRAPHER: This concludes today's

4    deposition.  We are going off the record at 5:27

5    p.m.

6            Total run time of media used is 6 hours 16

7    minutes, retained by Veritext.

8                 (End Media 1.)

9

10   (Whereupon, the deposition in the above-entitled

11   matter concluded at 5:28 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

Edo Macan                                        December 17, 2025
Brous v. Eligo Energy, LLC

```
                                                        Page 321
 1                    E R R A T A    S H E E T

 2    RE: CASE NO.: 1:24-CV-01260

 3    DEPOSITION OF:   EDO MACAN

 4    PAGE   LINE      PRESENTLY READS              SHOULD READ

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____
```

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

Page 322

1                    C E R T I F I C A T E

2              I, EDO MACAN, hereby certify

3        that I have read the foregoing transcript of my

4        testimony given in the aforementioned matter, and

5        further certify that said transcript is a true,

6        accurate and complete record of said testimony.

7

8                    _____

9                       EDO MACAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

Page 323

```
1                    C E R T I F I C A T E

2    COMMONWEALTH OF MASSACHUSETTS

3    COUNTY OF MIDDLESEX, ss.

4                I, Melissa Lupo, a Professional Court Reporter

5    and Notary Public in and for the Commonwealth of

6    Massachusetts, do hereby certify that the foregoing deposition

7    of EDO MACAN, was taken by me on December 17, 2025.  The said

8    witness was satisfactorily identified and duly sworn by me

9    before the commencement of their testimony; that the said

10   testimony was taken audiographically and then transcribed

11   under my direction.

12                To the best of my knowledge, the within

13   transcript is a complete, true and accurate record of said

14   deposition.

15                I am not connected by blood or marriage with

16   any of the said parties, nor interested directly or indirectly

17   in the matter in controversy.

18                In witness whereof, I have hereunto set my hand

19   and Notary Seal this 5th  day of January, 2026.

20

21

22

                    Melissa Lupo

23                  Melissa Lupo

24
```

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[& - 20]**                                                    Page 1

## &

**&**  2:15 7:10
83:18

## 0

**0**  296:3
**0.199**  129:16,19
**0.199.**  132:19
133:7,24
**0.209**  129:9,10
129:19 132:19
133:7,23
**0.92.**  303:9,13
**00.5490**  149:23
**01260**  1:4 6:17
321:2
**02142**  1:22

## 1

**1**  5:10,15 6:9
6:10 57:14,15
58:1,5 62:24
82:4 128:22
129:2 148:11
148:16,19,24
219:14 221:8
261:16,22
269:20 270:10
271:10 275:13
284:17,18
297:14 299:15
302:6 320:8
**10**  5:20 12:16
12:17 15:1,12

39:4 110:14,15
135:5 303:13
305:21,22
306:12 309:6
311:17,24
315:1
**10/15**  286:5,6
**10/17/23**
285:23
**100**  274:17
308:3,4,12
**10007**  3:8
**101**  114:18
115:1
**103**  5:11 114:7
117:3
**104**  114:6,11,13
**10601**  2:18
**10:22**  81:22
**10:34**  82:1
**11/1/23**  299:11
**113**  5:12
**11:25**  120:3
**11:31**  120:6
**12**  115:2
128:22 129:2
249:19 252:1
252:21 253:3,3
279:12
**127**  5:13,14
**12:04**  139:4
**12:59**  188:17
**12th**  5:10 57:16

**13**  257:9,20
**130**  163:17
164:3,8,20
166:17 168:21
168:21,22,22
169:3 170:4,7
174:22 224:17
226:17 227:7
**131**  168:17,20
190:10,11,14
193:22,23
**132**  198:17
**135**  165:20
229:6
**136**  238:18
**138**  229:12
234:8
**13b**  146:16,19
202:24 203:9
206:7 207:8
208:10 210:14
**13j**  249:19,23
253:9 257:3
279:7,15
**14**  128:15,15
129:12
**142**  229:12
**148**  5:15
**149**  171:8
**14th**  2:6
**15**  105:22
106:14 129:12
135:22 136:1
319:11

**151**  3:17
**154**  156:11,16
156:23
**15th**  238:20,22
239:4,15 285:4
**16**  320:6
**17**  1:24 6:3
115:11,12
295:22 298:23
323:7
**173**  304:1
**19**  105:22
106:14
**1996**  26:3
**1997**  37:5
**1:24**  1:4 6:17
321:2
**1:55**  188:20
**1st**  5:18 256:18
299:8

## 2

**2**  5:11 62:24
103:3,9,12
104:24 105:5
120:9,9,23
302:5
**2.48**  298:7
**20**  12:21 27:16
27:16 36:22
42:8 103:18
104:1 280:12
280:13,24
291:22 293:6

**20-35**  5:11
103:10
**2000**  28:1
**2001**  28:1
**2006**  171:2
**201**  3:17
**2016**  5:18 82:9
256:18
**2017**  67:13
80:12 81:4
143:16,24
**2018**  67:14
135:22
**2019**  75:5,17
107:24 143:2
220:20
**2020**  107:24
**2020.there**
239:13
**2023**  63:18,20
64:16 67:16
80:12 81:4
82:13 284:20
285:1 286:3
**2024**  48:1
**2025**  1:24 5:10
6:3 47:23
56:23,24 57:16
323:7
**2026**  49:9
323:19
**20941**  323:22
**21**  103:17,22

**22**  92:8 104:24
105:4 106:13
**23**  92:8 104:24
105:2 135:23
**24**  27:17,17
136:1
**24.80**  302:3
**25**  26:13 33:7
36:17 38:10,13
57:4 167:21
278:5 286:24
**256**  5:17
**26**  55:5 56:10
**2600**  2:6
**2:47**  231:4

**3**

**3**  5:12 113:18
113:20 114:3
116:20 120:9
120:23 147:4
147:20 239:21
257:14
**30**  142:2
221:24 223:10
266:21 267:1,2
267:3 291:22
314:2
**30309**  2:7
**305**  3:7
**308**  5:19
**30b6**  154:6
**318**  5:5

**32**  124:11
296:21 318:16
**32.59**  296:20
**32.59.**  294:18
294:19 295:2
296:18
**323**  1:1
**33**  92:8
**34**  92:9 104:2
**35**  104:3,5,13
**36**  136:10
**39**  302:3
**3:03**  231:7

**4**

**4**  5:13 127:3,6
127:8,14 128:4
128:14 130:22
131:17 132:2,8
133:13 134:2
257:22
**40**  88:9
**404-602-4371**
2:8
**45**  188:14
**48**  302:5
**4:10**  284:9
**4:20**  284:12

**5**

**5**  5:14,20 47:15
63:10,11,19
64:20 66:20
67:11 80:24
127:4,10,11

**128:4 129:11**
129:16 130:22
131:17 132:1,7
133:13 134:2
146:1 217:14
239:21 250:17
250:21 251:6
251:18,23
252:4,5,6,10,16
252:19,20,24
253:3 261:14
261:17,18
262:10,22
264:7 265:6
309:6,21 310:1
310:24
**5.5**  151:22
**50**  1:20 6:18
96:6,7 159:11
222:2 267:4
**500**  47:15
201:1
**525**  47:15,15
**55**  164:5,6
**56**  190:10
**57**  5:10
**58**  234:9
239:23 242:2
288:1 298:24
299:4
**5:03**  315:14
**5:14**  315:17
**5:16**  318:7

Edo Macan
Brous v. Eligo Energy, LLC

December 17, 2025

**[5:26 - absolutely]**

Page 3

| | | | |
|---|---|---|---|
| **5:26**  318:12 | 262:19,22 | **8** | **914-298-3290** |
| **5:28**  320:11 | 279:22,23 | **8**  1:2 5:4,13,19 | 2:19 |
| **5th**  323:19 | 280:2 281:6 | 127:8 132:2 | **92**  302:8 |
| **6** | 283:3 | 147:4,19 309:2 | **98**  114:7 |
| **6**  5:15,20 64:11 | **6.38.**  261:18 | 309:4,5,14 | **99**  27:22 114:6 |
| 64:11,15,23 | **6.5**  259:5 | **80**  313:20 | 114:10 |
| 66:21 82:4 | **60606**  3:18 | **84**  135:7 | **99-104**  5:12 |
| 148:19 149:4 | **62**  219:14 | 310:16 | 113:21 |
| 215:17 217:14 | 261:16,22 | **85**  135:7 | **9:02**  1:24 6:3 |
| 217:22 231:10 | 284:18 297:15 | **86**  88:9,15 91:8 | **a** |
| 253:12,18,20 | **65**  124:8,11,16 | 91:19 92:4,10 | **a.m.**  1:24 6:3 |
| 254:6,10,17 | 130:10,24 | 93:20 94:24 | 81:22 82:1 |
| 255:2,5,8,21 | 156:12 318:15 | 99:20 100:16 | **abbreviated** |
| 256:3,4,10,13 | **7** | 104:21 110:21 | 26:9 |
| 257:2,22 258:4 | **7**  5:17 136:1,9 | 111:15 116:4,9 | **ability**  9:5 |
| 258:8,21,24 | 148:9 256:17 | 116:23 119:8 | 86:23 159:15 |
| 259:3,5,7,8,9 | 256:21,23 | 123:20 | 219:7 260:9 |
| 259:18 260:20 | 259:5 278:9 | **9** | 293:7 |
| 261:15 263:2 | 295:4,16 | **9**  5:14,20 | **able**  75:4 77:4 |
| 266:7 268:4 | **7.5**  288:9 | 127:11 132:1 | 173:16 240:12 |
| 269:5,21 | 292:15 293:12 | 135:5 303:9 | 240:16,17 |
| 270:11 271:10 | 294:6 295:16 | 309:6 310:11 | 248:9 267:8 |
| 272:19 273:14 | 296:16 | 310:13,13,18 | 269:15 297:21 |
| 277:15 278:5 | **71**  304:1 | 311:1 | **abolished** |
| 278:10 279:9 | **75**  2:6 | **9.19**  303:8 | 264:15 |
| 279:19,21 | **750**  47:5,16 | **9.2**  303:11 | **above**  136:13 |
| 281:9,10,21 | 48:3,14 49:20 | **9.9**  303:11 | 143:22 149:19 |
| 309:6 311:24 | 50:5 53:2,8,9 | **9.92**  303:10 | 267:1 281:20 |
| 320:6 | **76**  136:7,10 | **9.92.**  303:11 | 292:24 320:10 |
| **6.3**  267:9 | **7th**  3:7 | **90**  65:5 313:6,6 | **abroad**  20:10 |
| **6.38**  218:1 | | 313:21 | **absolutely**  47:1 |
| 256:3,5 261:9 | | **910-476-7253** | 274:14 275:14 |
| 261:17 262:10 | | 3:10 | |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[absolve - adjust]**                                    Page 4

| | | | |
|---|---|---|---|
| **absolve**  265:11 | **accountant** | **acronym** | 243:4,9 248:10 |
| **academic** | 41:4 | 236:24 | 278:15 296:13 |
| 169:17 | **accounted** | **acronyms** | 305:17 |
| **acceptable** | 220:9 273:21 | 144:15,16 | **adamson**  179:3 |
| 254:11 257:22 | **accounting** | **act**  98:6 | **add**  33:9,20 |
| 258:21 281:14 | 33:5 34:10,21 | **acting**  79:20 | 34:1,2 44:1 |
| 282:1,2,18 | 41:7,10,16 | **action**  6:23 | 90:16 259:24 |
| **acceptance** | 275:24 | 14:11 72:18 | 316:22 |
| 209:9 | **accrual**  246:13 | 77:15,23 80:1 | **added**  229:10 |
| **accepted**  41:7 | 297:6 | 84:5 147:6 | **adders**  217:11 |
| 41:10,16 60:10 | **accuracy**  92:9 | 166:4 178:9,16 | 217:15 |
| 61:2,11 | 100:15 110:20 | 273:4 | **adding**  212:15 |
| **access**  234:11 | 110:24 116:22 | **actions**  178:6 | 224:8 301:14 |
| 240:12 | 123:19 | **active**  66:21 | **addition**  12:16 |
| **accessing** | **accurate**  91:13 | **activity**  16:19 | 173:21,21 |
| 240:13 | 91:22 92:4,5 | 27:23 197:24 | 277:21 278:24 |
| **accident**  287:3 | 111:2,3,7 | **actual**  59:7 | **additional** |
| **accompanied** | 116:10 119:9 | 99:11 158:23 | 12:17 126:22 |
| 7:6 | 130:14 182:24 | 158:24 159:19 | 267:12 303:22 |
| **accordance** | 183:19 322:6 | 159:19 215:6 | **address**  190:14 |
| 98:10 121:7 | 323:13 | 235:5 310:20 | 198:17 |
| 250:19 | **accurately** | 311:18 316:6 | **addressed** |
| **account**  54:1,4 | 106:5 | **actually**  26:22 | 80:18 136:22 |
| 54:5 63:20 | **achieve**  88:1 | 28:6 47:1 | 180:4 264:20 |
| 64:17 65:2,13 | 200:12 | 58:23 70:7 | 307:14 |
| 67:16 82:12,20 | **acknowledged** | 71:4 95:19 | **addressing** |
| 98:19 101:17 | 97:2 | 99:11 101:15 | 172:20 |
| 107:18 110:1 | **acknowledging** | 107:15,24 | **adequate** |
| 152:11 159:6 | 153:20 271:3 | 127:1 128:4,6 | 217:18,19 |
| 185:1 212:10 | **acquire**  88:3 | 131:13 134:3 | 259:15 280:18 |
| 222:12 223:21 | 168:10 | 148:3 195:15 | **adjudicated** |
| 260:15 262:3 | **acquisitions** | 196:2,3 217:11 | 214:10 |
| 274:3 297:9 | 30:7 | 220:10 235:16 | **adjust**  49:8 |
| 304:17,18 | | 236:9 237:6 | 159:15 208:8 |

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[adjust - amicable]**                                    Page 5

260:9
**adjusted**  49:1,4
  49:12 125:24
  125:24 147:24
  150:2,14 151:1
  151:24 152:8
  154:2 232:12
  246:14 256:2
**adjustments**
  299:2,3
**administer**
  6:22 7:23
**administrative**
  10:18 55:21
  225:19 262:12
  262:15 267:17
**admission**
  110:8 123:4
  203:13
**admit**  110:5,9
  120:12 121:5
  122:11
**admits**  88:15
  91:9 94:24
  99:23 112:8
  123:11
**admitted**  92:24
**adopt**  188:2
  253:12,18
  263:20,24
  264:11,13,13
  279:9,19
  282:19

**adopted**  264:7
  266:7 282:2
**adopting**
  282:23
**advantage**
  70:22 158:22
**advertise**  85:11
**advise**  18:19
  192:2
**advisory**  29:20
**advocate**  162:6
**affect**  76:13
  295:4
**affected**  291:18
**affiliation**  7:4
**aforemention...**
  322:4
**ago**  12:16
  21:17,18 25:4
  27:16,17 56:18
  73:23 121:23
  180:20 184:13
  283:4 290:3
**agree**  6:7 12:8
  67:23 84:23
  98:6 106:12
  116:8 120:10
  122:10 130:21
  134:17 137:17
  154:20 175:7
  186:8 199:5
  253:8 258:19
  266:11 269:18
  271:7 273:2

275:12 276:20
  293:2 311:1
  312:1 319:13
**agreeable**  67:9
**agreed**  160:11
  214:10 252:5
**agreement**
  148:24 154:12
  154:21 155:2
  161:14 195:7
  199:8 200:10
  228:20
**agway**  178:10
  178:16,20
**ah**  300:1
**ahead**  22:24
  31:7 32:16
  33:16 36:10
  57:21 88:12
  107:9 134:7
  155:23 170:9
  172:10 182:7
  182:11 202:20
  227:11 230:23
  288:5 309:4
  319:23
**airline**  308:19
  308:20
**ak**  294:22
**ak17**  294:22,23
  296:18 302:1
**ak4**  295:22
**al**  2:22 3:12

**allegedly**  108:7
**allocated**  56:2
**allow**  9:9 35:12
  97:8 100:11
  124:20 125:2
  125:10 130:11
  131:7 132:22
  318:24
**allowed**  67:24
  68:1 108:2
  126:21 142:17
  242:13 251:23
  277:13
**allowing**
  124:18 125:8
  209:21 283:24
  318:22
**allows**  218:5,10
**allude**  151:18
**alluding**  32:5,7
  66:24 80:21
  132:23
**alternative**
  153:7 156:2
  163:20 201:19
  214:4 269:10
  274:8
**altogether**
  12:21 99:4
  135:19
**american**  16:14
**amicable**  45:21
  46:14

[amount - apparently]                                    Page 6

| | | | |
|---|---|---|---|
| **amount**  50:9 | **annual**  54:23 | 191:11 199:15 | 188:7 202:9 |
| 141:10 142:19 | 54:24 55:11 | 204:9 206:2,22 | 207:17 210:23 |
| 142:21 227:22 | 246:17 | 206:23 230:10 | 218:13 229:1 |
| 264:18 265:8 | **answer**  9:10,11 | 244:19 247:5 | 230:10 252:14 |
| 308:15 | 15:7,9,14,20 | 252:3 262:17 | 270:17 277:3,4 |
| **amounts**  55:13 | 19:2 22:13 | 270:6,20 273:3 | 277:8 280:4 |
| 71:19 220:13 | 24:12 25:7 | 275:4 280:8 | 282:5,16,22 |
| **ample**  145:24 | 27:3 30:9 34:7 | 281:3 283:20 | 283:9 288:18 |
| 251:7 259:15 | 34:8,17 35:8 | 283:24 291:15 | 290:8 313:17 |
| 277:18 | 37:22 39:24 | 291:19,20 | **answering** |
| **analogy**  253:23 | 40:10 41:22 | 292:17 295:3 | 29:23 33:16,19 |
| **analysis**  23:19 | 42:15 43:24 | 296:14 304:13 | 34:6 46:4 |
| 29:15 74:20 | 44:17 55:6 | 316:10 | 110:14 118:11 |
| 169:4 206:4 | 56:11 60:14,16 | **answered**  15:3 | 118:14,17,20 |
| 219:20 234:1 | 61:4,6 64:5 | 15:4,8,14 | 282:15 283:23 |
| **analyst**  189:17 | 65:4 68:4 | 26:24 39:8 | **answers**  19:7 |
| 248:24 | 78:23 83:10 | 41:11 44:15 | 100:14 115:17 |
| **analytic**  23:19 | 85:15 86:16 | 45:2 48:21 | **ante**  245:23 |
| 71:7 | 96:24 98:1 | 51:14 52:7,19 | **anticipated** |
| **analytical**  10:9 | 100:10 101:10 | 60:13 61:4,6 | 165:24 234:4 |
| 10:12,13 | 105:13,14,16 | 62:2 72:15 | 234:12 |
| **analytically** | 105:16 106:9 | 78:8 80:14 | **antitrust**  11:20 |
| 158:16 | 107:5,9 109:6 | 84:1 100:7,22 | 11:22 |
| **analyze**  105:23 | 112:1 117:1 | 106:22 109:4 | **anybody**  59:6 |
| 106:15 111:10 | 119:3,6,13 | 110:12 111:5 | 59:11,12 |
| **analyzed**  135:3 | 121:14,17,21 | 111:17 112:15 | 112:21 189:4 |
| 143:12 169:9 | 122:8,16,21,24 | 113:9 116:12 | **anymore**  69:23 |
| **ancillary** | 123:3 127:19 | 119:11 120:16 | **anyway**  104:14 |
| 234:13 297:17 | 131:16 132:20 | 122:15,20 | **apologies**  103:8 |
| **andrey**  3:5 7:15 | 133:19 135:16 | 123:8,22 | **apologize** |
| **andy**  3:15 7:6 | 140:2 144:24 | 130:16 167:4 | 114:12 288:13 |
| 88:21 | 163:8 165:2 | 176:13 177:21 | **apparent**  48:24 |
| **anecdotal**  51:1 | 173:5 186:2 | 178:18 183:3 | **apparently** |
| 92:21 109:24 | 187:6 188:8 | 185:11 186:1 | 36:6 |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

| | | | |
|---|---|---|---|
| **appeals** 178:13 178:14 | **applying** 201:13 210:20 258:23 269:4,9 | 276:9 282:9,14 | 130:15 162:21 166:3 167:3 |
| **appear** 186:11 204:22 | **appreciate** 270:18 | **arm** 16:20 **aron** 74:18 | 176:12 177:20 178:17 183:2 |
| **appearance** 7:2 7:4 | **appropriate** 7:13 36:9 | **aron's** 189:3 **arrive** 50:5 | 185:10 186:1 188:7 202:8 |
| **appeared** 179:11 | 181:16 182:21 183:16 185:22 | 165:5,10 169:5 313:12 | 206:23 207:17 210:22 218:12 |
| **appears** 153:2 164:12 169:3 174:22 195:9 196:14,19 232:1,24 | 200:12 205:2 210:19 221:15 228:8 246:6 280:21 | **arrived** 155:3 **article** 170:8,12 171:1 172:13 **ascertain** 247:13 | 226:11,23 228:24 230:10 230:22 244:23 252:13 259:17 273:11 274:16 |
| **append** 133:10 **appending** 224:21,23,24 | **approved** 53:22 118:7 **approves** 118:6 | **asia** 26:14 **aside** 25:11 **asked** 15:2,13 | 277:2 280:3 282:4,22 283:8 283:22,22 |
| **apples** 263:6,6 305:2,2 | **arbitrary** 96:9 **arbitration** 179:22 | 20:13 21:6 24:16 26:23 28:12 39:7 | 288:13,17 289:13 290:3,7 304:11 313:16 |
| **applicable** 1:14 74:1 75:4,22 83:23 84:24 85:20 86:2 | **arch** 223:21 **area** 83:14 194:20 305:6 313:18,19 314:1 | 41:11 44:14 45:1 48:20 49:14 51:13 52:6,18 60:12 | 317:11 319:1 **asking** 8:18 25:9 32:9 40:4 40:5 41:14 |
| **applications** 18:1 | **areas** 19:18 20:9 194:24 305:9 | 61:3 62:1 70:4 72:14,15 73:22 78:7 79:12 | 52:14 54:13 55:12 80:17,23 80:23 87:20 |
| **applied** 204:11 251:22 252:4,7 261:8,14,21 267:11 280:24 | **argue** 181:13 **arguing** 35:6 **argument** 90:17 162:11 | 80:13 83:24 90:22 96:21 100:7,22 105:6 106:21 109:3 | 97:17 101:7 110:24 112:2 116:13 117:20 121:20 122:18 |
| **applies** 43:18 79:4 | **argumentative** 110:12 111:5 | 110:11 111:4 111:16 113:8 | 131:19 155:24 184:23 196:3 |
| **apply** 243:17 252:11,16 253:17 259:2 275:11 | 116:12 275:18 | 115:2 116:12 120:15 122:14 123:8,21 | 205:24 206:4 218:24 221:18 |

248:17 275:11
276:3,16,17
287:6 293:13
303:5
**assertion** 89:2
125:1 293:3
**assessment**
92:23 237:17
242:11 281:10
296:11
**assignment**
69:3 70:2
**assistant** 4:5
**associated**
198:23 199:24
244:10
**associates**
23:14 28:24
**assume** 72:5
130:18 134:21
155:5 163:14
163:15,19,20
164:21 210:2
236:3 243:19
244:6 276:4
280:20 281:16
295:15 315:7
**assuming**
133:22
**assumption**
143:13,16
166:24 198:1
243:21 244:12
244:15 250:11

268:15 277:19
289:12,18
**assure** 250:10
**asymmetry**
70:19,23
**atlanta** 2:7
**attached**
148:13,24
**attempt** 141:17
289:2
**attempted**
86:13 209:1
**attention** 63:10
67:4 88:8
114:18,24
124:15 136:6
**attorney** 42:11
43:7,8,19 45:5
46:2 67:3
73:15 96:20
167:17 182:5
204:7 276:11
**attorneys** 21:13
22:3 214:2,3,3
**attributed**
313:1,3
**attrition**
124:20 125:9
318:23
**audio** 6:6
**audiographic...**
323:10
**auditing** 10:24

**auditors**
274:21
**audits** 10:17
**august** 67:13
81:4
**authorities**
177:9,10
**authorized**
6:22
**automated**
138:14 300:2
300:20
**automatically**
288:16 290:6
292:16
**available** 74:15
137:4 151:12
153:10 159:6
168:2 249:11
**average** 251:23
252:2,21 253:4
310:6 311:15
312:10 313:12
**avoid** 126:13
**avoiding**
124:19 125:9
318:23
**aware** 46:20,21
65:1,11,14,17
67:22 73:23
76:19 77:5
79:14 83:1,13
94:6,17 97:20
98:23 100:1,3

100:19 113:23
124:24 129:22
130:3 139:8
140:9 142:1
175:1 178:5,9
188:5,9 202:18
268:21

**b**

**b** 5:8 300:1,1
310:5
**back** 20:11
26:2,3 33:24
34:12 61:17
66:17 67:11
73:22 81:24
82:3 92:14
104:5,13,21
107:14 120:5
127:7 136:4
139:3 143:16
155:8 159:15
185:6,8 188:19
193:22 224:5
231:6,9 232:8
245:1 248:9
255:11 264:19
267:15 278:3
279:7 284:11
284:17 290:3
294:6,18
296:15 301:15
304:22 315:16
315:19 317:24

Edo Macan

December 17, 2025

Brous v. Eligo Energy, LLC

**[back - best]**

Page 9

| | | | |
|---|---|---|---|
| 318:9,11 | 275:22 281:3,8 | 161:22 165:23 | 54:6 56:20 |
| **backed** 174:7 | 281:8 286:4 | 186:21 192:24 | 60:3 62:10 |
| **background** | 295:13 296:11 | 200:15 208:2 | 65:17 66:14 |
| 32:22 45:10 | **basic** 62:15 | 213:12 217:1 | 74:10 83:15,19 |
| 73:10 124:9 | 63:8 145:11 | 220:8 221:15 | 91:21 92:3,5,7 |
| 170:15 284:13 | 168:12 210:24 | 259:19 295:18 | 92:19,22 94:19 |
| 294:4 300:23 | 210:24 211:10 | 304:3 | 101:3 104:1 |
| 308:22 309:7 | 211:11,21 | **bates** 239:17 | 106:4 109:16 |
| **bad** 103:7 | 212:8,14,19 | 285:16,23 | 111:6,6 114:5 |
| 114:1,1 243:8 | 218:7,19 219:4 | **bathroom** | 126:3,20 144:4 |
| **ballpark** 51:11 | 269:14 | 119:20 | 147:20 148:9 |
| **bank** 54:1,4,5 | **basically** 13:10 | **bear** 177:9 | 160:23 179:2 |
| **bar** 36:24 | 23:11,19 30:2 | **beating** 86:11 | 210:19 222:5 |
| **based** 19:16 | 43:11 74:13 | **becoming** | 224:14 251:8 |
| 24:5,10,17 | 86:9 92:21 | 26:17 242:22 | 251:21 286:7,8 |
| 26:5,22 29:2 | 95:24 125:15 | **beginning** | 310:8 315:21 |
| 54:20,21 58:18 | 126:6,10 145:8 | 56:21 88:14 | 317:10 |
| 67:23 69:12,13 | 145:15,17 | 115:11 147:5 | **believed** 108:19 |
| 72:2,3 74:10 | 152:20 156:5 | **behalf** 1:6,12 | 108:19 |
| 86:18 97:10 | 158:16 166:10 | 6:12 14:16,22 | **bell** 185:23 |
| 98:3 99:4 | 169:15 200:20 | 15:18 16:17 | 186:5 193:10 |
| 101:1 102:15 | 214:13 216:8 | 18:1 20:13 | 257:7 |
| 132:16 133:8 | 217:10 220:14 | 109:6 | **benchmarks** |
| 141:4,7,8 | 227:18 229:13 | **behave** 44:4 | 278:11 |
| 153:10 154:20 | 235:20 241:3,6 | **behaved** 99:13 | **beneath** 231:23 |
| 159:12 173:11 | 241:18 249:10 | 110:1 | **benefit** 159:23 |
| 184:4 190:24 | 264:22 265:11 | **behavior** 36:9 | **best** 21:5 |
| 193:23 194:5,5 | 268:23 273:3 | **belenky** 3:5 | 122:23 127:17 |
| 204:1 234:20 | 275:1,2 281:7 | 7:15,15 300:7 | 170:19 191:8 |
| 236:4 240:24 | 294:1 305:15 | **believe** 15:4,8 | 219:7 245:11 |
| 242:11,20 | 305:21 306:5 | 20:2 24:5 | 247:20 250:18 |
| 243:7 245:11 | 307:16 | 27:19 39:22 | 250:22 251:15 |
| 248:4 260:19 | **basis** 49:11 | 45:3 47:15 | 293:7 323:12 |
| 268:14,15 | 134:23 157:21 | 48:2,4 50:11 | |

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[better - blankinship]**                                Page 10

| | | | |
|---|---|---|---|
| **better** 112:22 | **blanking** | 77:8 78:7,14 | 164:5,23 165:8 |
| 278:10 | 171:16 172:14 | 79:6 80:13 | 167:3 168:20 |
| **beyond** 292:24 | 172:22 | 81:7,15 82:21 | 175:12 176:12 |
| **biggest** 292:3 | **blankinship** | 83:4,7,24 | 177:20 178:17 |
| **bill** 5:16 87:3 | 2:14,15 5:5 7:8 | 84:14 85:2,12 | 179:13,18 |
| 88:5 124:20 | 7:9,9 11:3,11 | 85:22 86:4 | 180:7,17 181:2 |
| 125:10 148:20 | 15:2,13,19 | 87:9,16 91:14 | 183:2,20 |
| 318:23 | 18:23 20:18 | 94:12,15,18 | 185:10,24 |
| **billable** 50:19 | 22:1,3,6,12 | 97:5,23 98:12 | 187:5,15 188:6 |
| **billed** 55:18 | 24:11 26:23 | 100:6,21 102:5 | 188:13 189:11 |
| 136:5,13 | 27:3 30:14 | 102:13 103:15 | 191:10 192:8 |
| **billing** 10:22 | 31:17 32:2,13 | 103:18 104:3,5 | 196:16 197:3 |
| 50:2 137:10 | 33:11,15,18,23 | 106:21 107:4,8 | 197:13 199:11 |
| **bills** 51:21 52:1 | 34:5,15,23 | 109:3 110:11 | 202:8 204:13 |
| 52:5 87:7 | 35:3,8,14,23 | 111:4,16 113:8 | 205:21 206:17 |
| **bio** 12:7 26:2,8 | 36:3,8,15 38:1 | 114:7 116:11 | 206:22 207:16 |
| **bit** 21:7 32:22 | 38:7,22 39:7 | 118:11,14,19 | 210:8,22 |
| 50:4 124:16 | 39:15,20,24 | 118:23 119:2 | 211:14,22 |
| 148:6 181:10 | 40:9,16,22 | 120:15,22 | 212:23 213:2 |
| 207:19 231:13 | 41:11,18 44:14 | 121:8 122:7,14 | 214:18 215:14 |
| 254:23 261:13 | 45:1 46:11 | 123:7,21 125:4 | 216:17 218:12 |
| 285:22 295:9 | 48:20 50:22 | 128:9 130:1,15 | 218:20 219:6 |
| 300:12 305:20 | 51:13 52:6,18 | 131:2 132:3 | 219:15 220:22 |
| **black** 285:20 | 55:3,14 56:9 | 133:17 134:7 | 222:14 224:10 |
| 287:6 | 56:19 58:7,16 | 138:19,21 | 226:6 228:11 |
| **blacked** 286:14 | 59:2,8,14,21 | 140:1,7,13,18 | 228:24 230:2,9 |
| **blackened** | 60:12,15 61:3 | 141:2,20 142:7 | 238:10 241:12 |
| 291:24 | 62:1,18 63:24 | 142:12 143:9 | 244:17 252:13 |
| **blanche** 184:6 | 65:3,15,22 | 143:19 144:23 | 254:13 255:10 |
| **blank** 120:20 | 68:3,10,18,23 | 146:9 148:13 | 255:13,24 |
| **blanket** 95:3 | 69:10 70:14 | 148:16,18 | 257:12 264:3 |
| 120:20 121:13 | 71:16 72:14 | 150:5,17 151:5 | 265:23 266:15 |
| 121:21 | 73:2 74:4 75:6 | 154:13 156:14 | 266:23 269:23 |
| | 75:24 76:22 | 160:4 162:17 | 270:3,13,20,23 |

Edo Macan                    December 17, 2025
Brous v. Eligo Energy, LLC

**[blankinship - business]**                    Page 11

271:13,24
272:8,23
273:18 274:23
275:16 276:7
277:2,5 280:3
282:4,8,21
283:8,16 284:7
288:17 290:7
292:11 300:15
308:8 309:17
311:4 312:4,16
313:16 314:10
314:21 316:9
317:22 318:3,5
318:14 319:24
**bless** 191:5
**blood** 323:15
**blue** 117:13
310:7,24
311:23
**bluntly** 95:22
98:22
**bodies** 12:24
**body** 43:11
251:1 268:20
**boils** 282:7
**bonus** 54:22,23
54:24 55:2,12
**bonuses** 56:2,3
**book** 170:13
171:1 172:13
172:15
**boston** 29:4,5

**bottom** 117:20
128:15 287:12
290:21
**bought** 223:18
226:4,11,15
**bounce** 232:8
**box** 149:11,19
150:23 151:19
151:20 152:2,7
152:19 153:17
153:18 196:10
196:14,19
201:9 231:15
231:23
**boxes** 149:9
**boy** 146:16
202:24
**breadth** 191:6
**break** 45:12,17
46:9,17,18
67:8 81:19
119:20 121:4
138:20,21,24
177:5 185:15
187:24 221:8,9
229:3 230:22
284:3 300:19
**breath** 283:19
292:18
**brief** 81:19
182:14
**briefly** 104:21
**bring** 46:7

**broad** 32:18
50:5 161:9
215:7 216:14
**broaden** 24:17
**broader** 228:20
**broadway** 1:22
2:17 3:7 6:18
**broke** 139:6
**brokers** 145:6
169:11
**brought** 57:18
78:24 144:10
279:3
**brous** 1:6 2:21
3:11 6:11
63:12,15 65:1
66:2 67:12,19
68:8,21 70:5
70:13 72:5,24
72:24 75:3,4
75:21 76:18
77:5,20 78:5
78:12,13,24
79:13 80:11,24
81:3,12 135:24
136:22 137:2
142:4 143:1
299:14 311:12
311:14,17
314:7
**brous's** 63:20
64:21 65:12
66:10 78:11,11
311:19

**brown** 308:1
**bucket** 228:15
230:6
**buckets** 160:10
**bucks** 71:21
135:22
**budgeting** 50:7
**building**
199:17
**buisness**
197:24
**bulk** 11:2 29:14
29:24 30:1
293:22
**bullet** 147:4
240:1
**bumping**
269:10
**bunch** 89:14
**burkett** 3:3
7:17 22:16
23:22 56:13
66:5
**business** 11:19
11:24 26:16
36:13,17 37:13
43:15 50:21
117:10 168:7
179:10 180:5
180:15 181:14
182:18 183:13
185:19 186:4,9
186:15 187:2
187:19 188:3

193:9 201:4
202:14 205:7
211:1 225:11
250:14 254:3
255:1 260:21
263:8 265:1
269:19 270:9
277:11 278:9
280:15 281:6
281:12,17
286:24
**businesses** 26:5
267:18 275:15
277:1
**button** 287:11
**buy** 31:2 88:1
137:3,7 176:22
176:23 226:23
227:10,12,21
314:2
**buyers** 19:15
19:23
**buying** 168:8
194:12 201:4,7
202:14,18,20
205:11 213:16
225:7 226:2,3
227:15 308:19
308:20
**buys** 174:16
175:2,2

**c**

**c** 2:1 3:1 4:1 6:1
322:1,1 323:1
323:1
**c.a.** 1:4
**calculate**
203:19 204:3
208:1,2 275:21
307:6
**calculated**
98:10 99:16
157:20 160:19
161:21 186:21
200:15,18,19
213:12 217:1
229:10 232:23
248:4 278:13
278:21 289:15
289:16 304:7
304:21 305:16
**calculating**
76:14 99:11,22
165:22 203:10
259:18 262:11
275:21 295:23
304:3
**calculation**
50:10 71:24
100:3 179:23
200:17 208:6
210:6 218:11
219:9 222:20
228:9 239:24

241:4 249:17
251:16 256:9
262:6,7 267:16
267:21 272:12
274:1,10 289:6
294:1 305:3,19
306:4,14 311:6
312:10 314:23
315:6 316:4,12
**calculations**
10:17 135:11
204:10,20
205:3 207:11
228:4 236:4
238:15 268:13
274:4 284:23
286:3 292:8
297:21 312:6
316:3,7 317:14
**calculator**
317:5
**calendar** 47:19
49:11
**california** 26:6
**call** 7:3 56:7,7
56:12 114:18
136:6,23
138:17 157:19
160:24 175:17
179:21 213:5
246:4 306:16
306:17
**called** 1:12
42:19 65:12

178:10 182:5
192:1 194:2,3
234:2,23,24
254:8 305:10
**calling** 138:18
165:19 194:14
300:6
**calls** 11:24
39:15,20
162:18 175:13
179:13 181:2
196:17 205:22
213:2 229:1
276:8
**cambridge** 1:20
1:22 6:18
**cancel** 65:13
68:1
**canceled** 63:21
64:16 65:1
67:16
**cancellation**
64:21
**cap** 96:1
124:17,21
125:2,2,7,10
126:20 129:24
130:11,11,23
131:7,8,18
132:19 133:6
133:14 134:18
136:6,11,17
254:11 263:24
264:8 265:22

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

[cap - certainly]                                           Page 13

266:2,7 281:7
299:13 318:19
318:21,24
319:10
**capable**  276:5
**capacity**  14:14
   17:5 19:4
   20:21 32:17
   41:20 74:22
   223:23,23
   224:2,3,15
   234:14 236:22
   297:16 302:8
   303:5,8
**capital**  244:10
**capitalized**
   146:19
**capped**  265:6
   280:12
**caps**  124:12
   127:1 128:6
   131:10,23
   132:16,18
   133:23 134:3
   136:5
**captured**
   270:10
**career**  16:4
   33:7 37:8
   38:10 152:17
   193:11
**carries**  260:12
**carrying**  105:2

**carstensen**  6:20
**cartensen**  4:4
**case**  6:15,17
   10:7 11:2 12:4
   14:11,18,19
   17:12 22:4,7
   22:10 23:8,9
   24:22,23 25:10
   25:11,15 30:13
   38:20 40:5
   42:9,13,16
   43:13 44:5,20
   47:5,17,21
   48:16 51:9
   53:17 56:6
   58:6 62:16
   63:8,13 65:20
   66:11 71:4
   72:2,10,18
   73:1,5 74:6,18
   77:15 90:18
   91:7 98:4,21
   126:24 135:20
   135:24 142:1
   143:6 146:5
   152:24 154:12
   156:10 160:17
   178:23 179:1,8
   179:8,21 180:2
   180:19,23
   181:1,10,11,21
   181:22 182:14
   183:1 184:19
   184:24 185:2,9

185:18 193:17
205:18,20
211:6 214:3
225:12 236:5
236:20 237:12
247:24 248:2
258:15,19
263:19 265:9
266:12,20
271:22 272:18
273:5 277:20
280:22 292:19
296:19 298:2
307:18 312:24
321:2
**cases**  12:19
   15:23 16:1,2
   19:16 21:13,14
   21:21 23:1,3,5
   23:5,10 24:2,8
   24:16,18 25:6
   29:20 48:6,8
   88:24 89:16,17
   135:8 138:13
   155:7,9 191:15
   191:17 239:7
   243:11 268:8
   296:20
**catch**  186:16
   198:3,21
   292:18,20
**catches**  198:4
**categories**
   220:2 269:20

270:10 271:9
271:11 273:13
275:14 276:24
**categorize**
   141:11
**category**  160:8
   162:23
**caused**  111:12
**causes**  106:1,16
   160:23
**cease**  211:6
**ceiling**  254:10
   282:19,24
**cell**  242:13
   243:23 291:20
   294:21 295:22
   296:20 301:12
   302:1
**cells**  240:6,9
   288:19 291:18
   296:12
**cent**  235:16
   302:8
**center**  1:20
   300:21
**cents**  151:23
   302:5
**ceo**  118:1,2,3,3
   118:5
**certain**  17:10
   62:15 63:7
**certainly**  9:10
   30:20 33:11
   42:9 60:8,23

Edo Macan
Brous v. Eligo Energy, LLC

December 17, 2025

**[certainly - civil]**

Page 14

| | | | |
|---|---|---|---|
| 76:13 77:13 | 293:11,13,14 | **charged** 48:6 | **chicago** 3:18 |
| 83:21 84:23 | 295:13 296:19 | 51:7 52:17 | **chief** 99:1 |
| 86:6 106:10 | 296:20 | 67:12 69:18,21 | 112:19 113:2 |
| 108:10 132:6 | **changed** | 72:7,21 74:14 | 113:24 |
| 138:13 143:6 | 107:24 108:1 | 147:8 151:12 | **choice** 141:6 |
| 172:15 181:20 | 118:4 247:1 | 151:13 153:13 | 241:1 268:12 |
| 184:4 196:24 | 260:10 288:15 | 165:22 192:19 | 308:12 |
| 197:21 221:11 | 290:4,5 291:21 | 213:8 224:2,3 | **choices** 170:10 |
| 229:16 236:4 | **changes** 94:9 | 235:15 252:22 | **choose** 64:17 |
| 238:12 241:18 | 97:2 113:5 | 254:22 274:12 | **choosing** 37:8 |
| 249:7 269:2 | 122:2 123:19 | 304:2 310:2,19 | 313:11 |
| 278:7 | 248:20 288:22 | 310:21 311:14 | **chose** 64:21 |
| **certificate** | 296:3 297:12 | 311:18,19 | 106:8 176:2,5 |
| 145:14,17,19 | 297:24 298:6 | 313:3 314:8,17 | 176:6 259:5,7 |
| **certificates** | 298:12,20 | **charges** 51:12 | **chosen** 312:22 |
| 144:12,14 | **changing** | 198:22 199:24 | **circuit** 178:13 |
| **certification** | 291:16 295:3 | **charging** 47:12 | 178:14 |
| 41:5 | 296:2 | 47:17,21 48:13 | **circuit's** 178:15 |
| **certified** 41:4 | **characteristics** | 48:15,18 49:16 | **circumstantial** |
| **certify** 322:2,5 | 141:8 | 50:17 71:14,14 | 80:5 |
| 323:6 | **charge** 18:20 | 86:3 208:8 | **citation** 92:7 |
| **chain** 78:4 79:3 | 44:10,18,21 | 211:17,19 | 104:24 |
| **chair** 294:15 | 47:18,22 50:11 | 253:2 265:12 | **citations** 89:3 |
| **chance** 114:21 | 50:24 51:2,3 | **charles** 23:14 | **cite** 88:20 |
| 191:9 | 86:22 96:13 | 28:24 29:3,6 | 104:22 116:2 |
| **change** 49:17 | 99:9 108:20,21 | 29:16 48:2 | 124:23 208:14 |
| 66:21 67:1 | 110:2 134:18 | 50:12 | **cited** 170:7 |
| 76:17 105:19 | 136:17 162:8 | **chart** 135:7 | **citing** 88:24 |
| 105:24 106:15 | 208:1 209:12 | 149:9 311:13 | 105:14 110:8 |
| 108:5,14 | 212:11 231:20 | **charts** 311:12 | **civil** 1:16 13:21 |
| 111:10 125:22 | 232:2,17 233:2 | **check** 248:9 | 13:24 14:4,16 |
| 247:3,4,8 | 233:22 252:20 | 261:23 316:17 | 14:21 15:23 |
| 288:14,20 | 265:19 312:15 | **checking** 10:17 | 40:18 |
| 292:14,16 | | 71:21 79:13 | |

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

**claim**  42:5
  92:17,19 319:2
  319:7
**claiming**  42:9
**clarificates**
  161:17
**clarification**
  131:15 261:9
**clarified**  92:6
**clarify**  53:7,15
  54:17 79:10
  133:11 163:19
**clarity**  308:21
**class**  14:11
  72:18 77:15
  79:24 84:5
  147:5,7 151:10
  166:4 178:6,9
  178:16 260:16
  263:9 269:1
  273:4
**classes**  33:7
**classifying**
  194:14
**clean**  158:16
**clear**  19:7
  25:10 52:15
  86:19 96:10
  126:7 136:2
  154:15 155:10
  163:10 164:19
  184:23 201:1
  263:5 274:8
  287:11,12

**clearly**  99:15
  157:24 161:20
  297:4
**click**  287:11
  290:23
**clicking**  291:2
**client**  29:20
  208:17 295:15
**clients**  17:9
  20:3,5 47:18
  53:12 208:20
**close**  138:15
  273:23 278:15
  300:3 311:8
**closed**  264:15
**closer**  294:9
**closest**  17:11
  238:21 239:15
  285:4
**club**  22:24
**clumsy**  87:23
**coffee**  302:10
**cognizant**
  211:19
**colleague**  23:13
  23:24 47:7
  179:3 182:6
  188:4
**colleagues**  9:17
  51:3 317:23
**college**  70:13
**color**  26:18
  33:9 90:16

**column**  128:16
  128:20,21,24
  149:11
**columns**
  247:14 293:21
  293:24
**combination**
  168:11 212:20
  305:12
**combined**
  12:21
**come**  18:17
  21:23 23:4
  45:6 49:22,23
  56:7 168:4
  213:21 223:13
  249:4 274:6
  278:3,15 305:2
**comes**  17:8,22
  20:5 53:24
  109:15 167:10
  190:18 191:2
  220:17 261:4
**coming**  78:1
  95:11 99:10
  142:19,22
  159:2 260:4
  278:1 290:12
**commands**
  296:17
**commencem...**
  323:9
**commensurate**
  53:4 262:24

  265:12
**comment**
  299:24
**comments**  36:1
  60:1,3,18
**commercial**
  19:15,23
**commercially**
  69:20 253:10
  258:5 259:9
  274:19 275:8
  276:4 279:8,17
  280:1,20 283:5
**commission**
  12:15 13:9
  30:4 54:21
  74:11 250:24
  251:17 268:17
**commissions**
  38:15
**commodities**
  191:3
**commodity**
  141:13 161:5
  167:9 175:4
  198:13 201:2,6
  208:7
**common**  43:18
  45:4 205:16
  218:7,18 219:4
**commonsense**
  205:18
**commonwealth**
  1:18 323:2,5

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

communicated
  209:14
communication
  98:23 102:18
communicati...
  23:23
companies
  38:14 198:3
  277:13 319:14
company  16:16
  16:20,22 26:21
  27:18 28:18
  36:19 37:11
  48:1 50:3 51:3
  53:12,22 55:22
  55:24 84:6
  110:9 118:2
  124:19 125:8
  125:18 196:24
  208:1 254:1
  257:21 262:18
  269:3 273:5,6
  273:7 277:16
  280:7 318:22
company's
  319:18
comparable
  29:7 48:2
  50:13
comparator
  250:18,22
compare  64:10
  135:12 265:3
  305:5 310:10

311:20
compared
  71:23 76:20
  77:6 83:22
  152:2 281:21
  308:12 311:18
compares
  311:13
comparing
  86:2,6,18
  186:19
comparison
  66:19 84:12
  236:6 263:7
  307:5
comparisons
  135:11 305:3
compensated
  47:4 53:1,2,4,8
  54:15 246:9
  273:8
compensation
  54:20 251:7
  259:15 261:7
  280:18
compete  137:21
  137:24 138:3,7
  141:17 304:24
competing
  138:11 304:12
  304:13 308:3
competition
  211:10

competitor
  308:5 319:9
competitors
  51:2 211:13
  304:17 305:24
  315:1
compilation
  309:14
complain
  291:13
complaint
  69:17 90:8,8
  90:11
complete
  176:10 322:6
  323:13
completely
  45:24 47:3
  73:18 98:17
  101:16 112:3,6
  206:14 261:3
  261:10 292:24
  312:6,18 314:4
  314:5,19
completeness
  153:21
complex  316:1
compliance
  94:11 96:20
  97:22 98:8
  99:7 100:18
  107:14 112:19
  112:23 113:2,6
  115:15,22

116:8 117:5
  122:4,12
compliant
  105:24 106:16
  111:11
complicated
  249:14
complied
  105:10
complies
  106:19
comply  109:2
  220:14 227:23
component
  297:16,16,17
components
  176:3
compound
  212:23 276:7
comprehension
  109:23
comprehensi...
  238:8,12
computer  33:2
concede  218:8
concept  30:12
  124:11 214:17
  216:14
concerned
  15:23 135:9
conclude  205:1
  220:9 221:15
concluded
  168:16 182:17

183:13 203:5
319:8 320:11
**concludes**
320:3
**conclusion**
39:16,21
162:18 167:14
169:5 175:13
176:9 179:14
181:3 190:21
196:17 200:2
205:22 213:3
229:1 258:4
276:9 278:19
**conclusions**
184:10 263:21
**concrete**  198:7
219:8
**conditional**
287:10 293:19
**conditions**
148:1 150:3,14
151:2 152:9
153:2 154:2,4
154:10 179:10
180:5,16
181:15 182:18
183:14 185:20
186:4,9,15
187:2,4,10,19
188:3 193:9
232:13
**conduct**  43:12

**conducting**
277:23
**confer**  317:23
**conference**  3:3
3:5 4:5 7:3
138:15 300:3,5
300:8
**conferencing**
300:21
**confidence**
289:5
**confidential**
20:6
**configuration**
297:12,23
298:6
**configurations**
242:4 248:20
287:17
**configure**
238:22
**configured**
240:1
**configuring**
238:23 242:3
**confirm**  81:2
248:13 299:17
**confirmation**
208:20 209:8
**confirms**
145:14
**conform**  146:6
**confused**
206:24

**confusing**
107:7 299:16
**conjecture**
42:24 43:2
77:11,20 84:6
84:10 97:13
111:19 244:5
**conjectured**
295:17
**connected**
323:15
**connecticut**
24:6
**connecting**
300:22
**connection**
58:6 130:13
250:6
**conscientious...**
67:3
**conservative**
268:13 280:6
**consider**
130:13 177:8
195:5 307:23
**consideration**
60:4,19 184:18
205:19 208:11
210:20 218:10
277:20 278:1
**considerations**
203:14 218:16
228:3,7

**considered**
86:15 132:10
223:15 286:7,9
**considering**
207:9
**consistent**
16:20 68:6
96:14,17
115:22 181:14
182:20 183:15
216:8
**consisting**
260:16
**constrained**
227:18
**constraints**
43:17
**construct**  205:5
274:20 276:23
**constructed**
275:12
**construction**
188:2
**consult**  209:6
**consultancies**
29:17 36:20
**consultancy**
11:20
**consultant**
15:21
**consultants**
29:22 50:10
**consulted**
17:10 170:15

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[consulting - control]**                              Page 18

| | | | |
|---|---|---|---|
| **consulting** 4:5 | 162:4 165:14 | 151:16,17 | 161:12,12 |
| 10:19 11:20 | 165:17 166:8 | 152:15 153:3,7 | 162:23 190:23 |
| 17:7 36:21 | 167:6,7 168:6 | 153:8,11 | 191:9,14,22 |
| **consumer** 5:16 | 169:8 173:20 | 154:18 156:24 | 192:5,21 193:7 |
| 148:20 | 174:12 175:24 | 157:8,19,19,24 | 193:15 264:8 |
| **consumers** | 178:1 191:20 | 158:6 160:1,3 | 264:12 |
| 18:20 175:11 | 193:21,21 | 160:24 161:3,4 | **contractual** |
| **consummerate** | 194:11 195:6 | 161:10,11,13 | 43:16 93:8,9 |
| 162:9 | 198:8 200:22 | 162:14,15 | 95:21 96:18 |
| **cont** 3:1 4:1 | 201:3 202:11 | 163:3,5,9,21 | 99:14 101:17 |
| **contacted** | 202:15 212:2 | 164:12 165:12 | 107:18 108:20 |
| 49:13 78:12 | 213:14,15 | 167:24 169:20 | 110:2 153:13 |
| **contain** 147:22 | 220:12 225:4 | 171:20 175:8 | 155:15 156:3 |
| 180:15 199:4 | 283:11 | 175:16 179:11 | 183:24 184:2,4 |
| 200:3 235:3 | **contextualized** | 186:10,12,17 | 184:7,8 187:1 |
| **contained** | 244:16 245:9 | 187:13 190:15 | 187:18,20 |
| 241:7 242:18 | **continue** 6:7 | 192:3,5,13,17 | 193:7 198:18 |
| 279:1 | 239:23 264:24 | 193:21 194:7 | 205:5 208:22 |
| **containing** | 301:6 | 195:10,13,23 | 209:15,16 |
| 193:1 236:24 | **continuing** | 195:24 196:10 | 219:11 220:17 |
| 240:5 | 46:14 | 197:1,11,18 | 223:12 250:9 |
| **contains** | **contract** 42:17 | 198:9 201:22 | 274:9 275:21 |
| 153:21,23 | 94:11 96:1,15 | 202:13 204:4 | 275:22 278:14 |
| 214:23 | 97:22 98:8 | 207:23,24 | **contractually** |
| **content** 287:15 | 99:15 100:18 | 212:11,19 | 72:7 108:2 |
| 293:20 | 102:3 106:1,2 | 213:7,11 214:5 | **contrary** |
| **context** 20:23 | 106:16,17,19 | 215:14,15 | 109:20 185:19 |
| 21:1 23:21 | 107:19 109:2 | 216:9 219:9 | 272:4 |
| 65:6 69:3 | 111:12,13 | 231:9 233:8 | **contributing** |
| 73:11,13,15 | 112:24 113:7 | 238:1 274:5,11 | 115:4 |
| 93:15,23 98:19 | 120:14 121:7 | 274:11 276:14 | **control** 10:24 |
| 111:20 112:4,7 | 122:4,13 146:8 | **contracts** 42:10 | 34:13 36:6 |
| 115:1 119:17 | 147:2,14 148:4 | 105:11 152:16 | 85:9 87:14 |
| 123:1 156:8 | 148:7 150:9,11 | 160:9,10,14 | |

| controlled | 29:1 31:11 | 219:24 220:21 | 129:13,24 |
|---|---|---|---|
| 249:1 | 33:1 39:13 | 221:12 225:23 | **corresponds** |
| **controversy** | 41:1 47:5,6 | 227:3 229:15 | 129:4 145:19 |
| 323:17 | 52:2 53:18,19 | 231:17 232:6 | **corroborated** |
| **conversation** | 53:21,23 54:24 | 233:3,16,17,23 | 254:20 |
| 46:15 124:9 | 58:14 60:11 | 233:24 234:5,6 | **cost** 86:9 96:6 |
| 284:13 308:22 | 61:2 62:16 | 235:6,8,9 | 141:12 145:19 |
| 309:7 | 63:13 67:14,15 | 240:3,7,11 | 146:2 158:3,14 |
| **conversations** | 67:18 74:3 | 241:8 242:6 | 158:24 159:11 |
| 6:5 | 81:5,9 82:13 | 243:21,24 | 161:11,12,14 |
| **convinced** 91:5 | 87:4,5 100:5 | 244:2 247:21 | 165:24 166:13 |
| 91:7,12 134:11 | 106:20 107:23 | 252:12 253:2 | 166:14 168:9 |
| 296:9 | 108:14 113:16 | 253:15 254:12 | 176:17,19 |
| **convoluted** | 114:6 115:15 | 261:16 262:8,9 | 181:15 182:20 |
| 249:15 | 124:13 129:10 | 265:22 266:14 | 183:15 185:21 |
| **cool** 22:21 | 129:17,18,21 | 266:22 267:5 | 191:2 192:15 |
| **coordinates** | 130:19 133:12 | 267:10,19 | 192:23 194:1,2 |
| 294:20 | 134:19 135:2 | 269:17 270:12 | 194:3,10 195:5 |
| **copies** 57:18 | 137:13,13,14 | 270:14,22 | 195:14,14 |
| **copy** 25:1 57:5 | 137:19 138:11 | 271:12 272:22 | 196:1,5,14 |
| 57:22 58:5,9 | 143:4,18 | 279:22 284:20 | 200:9 202:16 |
| 58:13 103:19 | 144:16,19,20 | 285:1,2,6,19,24 | 202:19,22 |
| 104:9 148:23 | 146:8,22 | 287:20 288:11 | 205:12 211:3 |
| **corner** 231:17 | 147:16 149:18 | 297:20 304:5 | 222:12,21 |
| **corporate** | 150:3,16 157:1 | 307:4 310:4,7 | 229:8,10,11,17 |
| 16:18 | 161:1 164:18 | 310:9,22,23 | 233:9,9,11,16 |
| **corporation** | 169:6 170:8 | 311:15,16 | 233:18,19 |
| 171:9 | 174:20,21 | 313:15 319:21 | 234:21 238:2 |
| **correct** 9:17,18 | 178:24 179:1 | **correctly** 31:10 | 240:23,24 |
| 10:9 11:17,18 | 190:16 194:3 | 154:8 | 241:3 244:10 |
| 12:1,5,6,11 | 196:15 197:2 | **correspond** | 259:19 260:14 |
| 13:1 15:1 16:7 | 199:1,10 | 296:13,14 | 260:14,18,22 |
| 16:9 20:17 | 201:12 203:2 | **corresponding** | 260:23 262:2 |
| 22:1,2,5 28:3,3 | 216:11 219:21 | 128:20 129:9 | 265:21 267:12 |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[cost - crucial]**                                            Page 20

268:2 269:4
271:11 272:11
273:13 277:12
284:19 289:22
289:23 290:2
295:19,21
297:16,16,17
298:7 302:6
**costing**  159:14
**costly**  280:15
**costs**  48:23
55:19,21,24
88:1 135:14
152:12 156:7
157:22 158:13
159:1,19
160:20 161:23
162:2,5,10
166:1,5 169:15
181:17 182:22
183:17 190:16
193:22 194:6,7
194:16 195:9
195:11,22
196:15,19,20
197:19 198:10
198:15 201:17
208:3 213:9
217:2 219:19
225:15,15
229:22 233:6,7
233:11 234:3
234:12 235:5,5
235:17,20

236:3,5,8,12,17
250:2 253:1
255:7,21 256:5
260:4,5,10
261:2,8,14,21
262:3,5,7
267:15 268:9
268:18,19
269:19,21
270:9,11 271:9
272:18 273:8
273:15,20
274:21 275:14
275:24 276:24
277:21,22
278:20 293:9
297:14
**counsel**  3:16
7:2,24 22:16
47:1 49:13
89:9 90:10,22
95:5 99:1
105:7 147:5
151:9 154:24
155:4,12,18,22
155:24 164:22
166:4 167:1
189:4,6 221:22
241:21,21
248:14 250:5
283:7,10
291:10 294:14
303:4 318:4

**counsels**  23:24
189:18,23
**count**  28:20,20
**counterparties**
44:2
**country**  31:4
194:20
**county**  323:3
**couple**  13:4,6
14:1 16:1
32:22 45:10,22
61:20,23 97:13
120:8 144:6
201:12 303:22
**course**  13:20
24:24 88:12
90:5 157:3
**court**  1:3,18
6:16 7:22 8:1
8:13 39:12,18
40:6,13,20
103:6 113:19
114:10 127:5
138:23 148:10
178:13,14
180:24 181:10
181:11 183:1
183:12 185:1
185:17,17
186:6 187:24
188:1 245:4,7
255:12,14,18
255:20 256:16
300:9,17 301:1

301:3 302:11
302:15,18,21
303:1,16,19
309:1 320:2
323:4
**court's**  182:14
184:18 185:6
**courts**  177:10
**cover**  181:17
182:22 183:17
257:6 269:22
270:12
**coverage**  222:1
**covered**  55:24
279:2
**cpa**  41:1,3,8,12
41:15
**crafting**  90:17
**creating**  93:7
**credibility**
74:24
**criteria**  158:8
**critical**  159:8
263:12
**criticism**
206:13
**criticize**  206:7
207:8 210:14
**cross**  5:2
318:13
**crossed**  256:7
**crucial**  162:10
304:19

**crucially** 70:11
**crystal** 164:19
**cup** 177:15
**current** 28:23
  29:13 319:11
**currently** 11:16
**cursor** 290:23
**curve** 313:14
**customer** 25:23
  42:17 67:19
  68:9,17 73:24
  76:21 77:7
  80:12 81:1,4
  81:12 82:15
  83:3,16,21
  87:2 97:22
  141:12 146:7
  147:2,14 148:3
  148:24 160:2
  161:13 162:15
  164:12 170:9
  171:20 172:9
  173:10 175:8
  179:11 190:15
  192:3 194:7
  195:9 197:11
  200:10 201:22
  308:11
**customer's**
  154:1
**customers** 44:8
  44:12 68:1
  70:20,24 71:3
  85:1 86:2,7,17

86:20,22 87:6
88:2,4 115:6
125:16,21
134:18 136:24
137:2,12,22
138:1 139:9,13
139:14,18,23
140:10,11,23
141:9,9 144:2
147:8,23
151:11 159:22
162:8 166:6
171:8,13 175:3
181:18 182:23
183:18 191:22
208:1,9 209:2
209:9 210:3
217:20,23
222:7 232:3,17
233:2 234:23
246:2 251:8,11
251:12,21
253:23,24
254:1,4,5,21
255:3 259:13
259:14,16
260:7,12,16,24
261:11,11
263:1,9,12,13
263:17,18
265:12 269:1,6
269:7 272:21
273:6 277:11
277:14 280:11

281:19,19,21
281:22,23
312:20 313:7
313:21 314:2
**cut** 34:21 46:3
  104:9 300:7
**cv** 1:4 6:17
  12:13 25:2,2
  26:7 321:2

**d**

**d** 2:14 5:1 6:1
**d.cartensen** 4:4
**damage** 76:14
  204:10,19
  205:3 207:11
  228:4 234:1
  235:8 238:14
  239:24 249:17
  262:7 267:16
  267:21 292:8
  316:4
**damages**
  154:20 157:4
  219:20 248:3
  273:14 274:20
  275:11,13
  276:23 278:13
  278:20 289:15
  289:16 295:23
  303:24 310:11
  316:8
**data** 153:10
  158:12,17,22

158:23 159:6
229:9 234:16
236:8 241:6
247:16,18
262:20 280:14
280:17 287:1
289:4,7,9,10,11
289:12,18,19
**date** 51:8 75:19
  125:17 170:12
  170:24 171:2
  285:22 286:4
  299:8
**dates** 75:14
  158:17
**dave** 215:23
  244:22
**david** 2:3 7:5
**day** 31:6 32:16
  79:22 145:24
  170:9 172:10
  202:20 227:11
  236:18 238:20
  239:4 253:7
  297:10,10
  317:19 323:19
**deal** 19:17 70:9
  171:12 173:11
  195:13,24
**dealing** 42:20
  43:4,23 174:7
  190:22 193:5
  202:12

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[dealings - depositions]**                              Page 22

| | | | |
|---|---|---|---|
| **dealings** 78:19 | 318:24 | 224:9,22 | 111:10 113:6 |
| **deals** 171:19 | **decreasing** | 228:18 229:23 | 117:5 122:3 |
| **dealt** 20:8 | 126:13 | 313:5 | **dependent** |
| 23:18,24 185:7 | **deem** 96:14 | **definitional** | 184:12 212:18 |
| 191:16 193:12 | 228:7 | 190:9 | **depending** |
| 237:14 238:6 | **deemed** 173:13 | **definitive** 17:12 | 117:10 175:5 |
| **deane** 4:4 6:20 | **deems** 261:7 | 18:8,11 127:23 | **depends** 142:14 |
| **december** 1:24 | **deep** 194:10 | 291:20 | 142:15,15 |
| 6:3 323:7 | **def000907** 5:13 | **definitively** | 186:17 |
| **decide** 79:2 | 127:8 | 92:13 | **depicted** 310:7 |
| 139:9,15,23 | **def000908** 5:14 | **degree** 32:23 | 310:18 314:16 |
| 140:23 243:10 | 127:11 | 32:24 33:3,5 | **depiction** |
| **decided** 68:16 | **def024595** | 34:10,20 36:13 | 314:16 |
| 69:12 72:17,24 | 285:13 | 36:16 37:1,24 | **deposed** 125:14 |
| 77:22 78:5 | **default** 50:17 | 38:5 41:24 | 126:5 |
| 79:1 80:11 | **defend** 13:12 | 77:23 | **deposition** 1:12 |
| 81:3,12 82:19 | **defendant** | **degrees** 33:6 | 5:11,12 6:11 |
| 248:21 260:20 | 14:17,22 15:18 | **delivered** | 6:18 8:22 9:15 |
| **decides** 87:2 | **defendants** 1:9 | 245:20 246:3,7 | 13:21,23 14:15 |
| **decision** 49:10 | 1:14 2:11 3:20 | 246:12 | 34:13 58:1,4 |
| 159:5 166:10 | 7:6 | **delivery** 239:9 | 66:10,12,16 |
| 166:11 178:15 | **defending** | **demand** 29:22 | 82:4 88:21 |
| 268:16 | 268:11 272:18 | **demonstrate** | 89:1 90:1 92:8 |
| **decisions** | **define** 146:23 | 108:8 133:4 | 103:9,13 105:4 |
| 177:10 | 211:23 216:5 | 265:1 | 106:13 113:20 |
| **decrease** | 224:7 314:24 | **department** | 114:4,5 119:7 |
| 129:23 130:22 | **defined** 146:6 | 94:10 95:13 | 120:9 121:2,16 |
| 133:15,23 | 147:3 304:11 | 97:3,21 98:8 | 134:5 149:4 |
| **decreased** | 305:9 314:23 | 100:4,18 | 154:9 179:20 |
| 133:6 | **definitely** 57:4 | 101:14 102:3 | 188:23 190:1,4 |
| **decreases** | 182:8 311:5 | 102:12 105:23 | 190:5 320:4,10 |
| 124:21 125:3 | **definition** | 106:14 107:13 | 321:3 323:6,14 |
| 125:11 130:11 | 147:15 149:16 | 107:13 108:19 | **depositions** |
| 131:8 132:22 | 150:15 151:3 | 109:1,10 | 254:19 |

Edo Macan                                          December 17, 2025
Brous v. Eligo Energy, LLC

**[deregulating - disclosed]**                               Page 23

| | | | |
|---|---|---|---|
| **deregulating** 37:7 | 118:5 132:7 134:20 171:15 172:7,23 173:12,16 251:21 252:3 254:16 256:2 256:14 259:21 | **differ** 47:22 | **differentiating** 141:18 |
| **derivative** 167:24 169:11 | | **difference** 75:12 76:3,7 201:21 233:15 261:1 307:18 308:14 | **differently** 69:16 122:21 |
| **derived** 142:4 143:7,17 | | | **difficult** 74:10 |
| **describe** 10:15 64:21 170:8 239:24 250:21 | | | **dig** 261:13 |
| | **determination** 152:18 218:18 219:3 221:16 268:22 | **differences** 114:16 311:2,6 312:1 | **digits** 144:7,8 |
| **described** 107:12 168:15 203:4 278:19 | | **different** 11:21 31:3 32:15 48:7 61:7,10 62:9 64:24 96:22 110:14 110:15 124:6 128:1 131:24 138:4,4 155:14 155:14 160:8 165:13 174:9 182:12 184:9 186:14 187:13 192:7 194:24 217:11,15 228:3 235:17 241:3 242:19 257:14 260:11 260:23 261:10 275:9 278:16 296:9 299:22 299:22 304:24 304:24 305:8,8 305:9 311:7 312:6,18 314:1 314:4,6,19 | **diligence** 109:13 |
| | **determine** 240:17 253:17 | | **direct** 5:2 8:14 19:4 21:22 23:9 24:3,5,22 25:11 80:21 88:8 178:22 179:9,11 181:11,13 184:2,9,17 185:2,18,20 187:10,11,20 187:23 193:4 |
| **describes** 12:7 106:13 | | | |
| **describing** 91:2 106:5 108:9 | **determined** 49:19 55:2 149:12 152:3 152:21 196:12 201:9 216:10 231:24 232:5 232:22 236:12 251:6 252:15 | | |
| **description** 5:9 73:16 171:6 182:24 183:19 316:14 | | | |
| | | | |
| **despite** 100:1 185:18 197:10 267:7 275:3 | **determining** 218:6 | | **direction** 323:11 |
| | **developed** 252:19 | | **directions** 91:4 |
| **detail** 10:15 34:1,2,4 42:15 69:7 152:7 183:24 184:16 246:19,24 | **developers** 105:18 | | **directly** 87:7 297:22 323:16 |
| | **developing** 16:22 235:7 | | **director** 11:17 |
| | **devil's** 162:5 | | **disabled** 291:23 |
| **detailed** 234:12 251:3 | **devise** 153:11 153:12 | | **discipline** 38:5 |
| **details** 20:7 33:20 78:18,21 79:19 80:4 99:4 101:3 | **dex008057** 258:11 | | **disclose** 49:14 235:14 |
| | | | **disclosed** 74:3 166:14 208:17 222:6 223:9 |

Edo Macan
Brous v. Eligo Energy, LLC

December 17, 2025

**[disclosure - earlier]**

Page 24

| | | | |
|---|---|---|---|
| **disclosure** 209:2 | **dispute** 62:14 63:4 113:4,10 184:7 202:13 | 239:22 241:20 249:13 256:11 258:10 317:13 | **drawing** 193:14,18 |
| **disclosures** 55:5 56:11 | **dissatisfied** 69:17 72:20 | **doing** 29:7,8 35:16 105:19 | **drink** 217:21 **drop** 96:7 |
| **discovery** 203:6 249:13 287:1 289:10 | **district** 1:3,3 6:16,16 180:24 181:10,11 | 145:6 204:10 205:8 214:14 227:3 260:15 | **dropped** 84:7 96:3 **drug** 9:2 |
| **discrepancy** 260:2 | 185:17 188:1 | 284:2 290:14 296:17 300:18 | **due** 109:13 **duke** 16:5,8,10 |
| **discrete** 141:6 | **divided** 303:13 **divined** 234:3 | 312:9 | 16:23 17:1 27:13,14,24 |
| **discretion** 108:3 162:12 162:16 212:12 | **division** 29:18 **dmeadows** 2:9 | **dollars** 268:2 302:4 | 28:4,13,17,22 |
| **discretionary** 54:22,23,24 55:2 56:2 | **document** 88:3 90:14 127:15 149:5,6 153:23 | **dominant** 141:4,14 **door** 49:5 | **duly** 8:11 323:8 **duty** 42:20 43:4 43:23 44:3,6,7 |
| **discuss** 28:7 43:21 305:12 | 182:4 254:8 256:22 257:1 | 233:20 **double** 309:21 | 44:12,17,20,23 **dynamic** 140:17 |
| **discussed** 31:6 60:4 73:4 | 257:13 258:7,9 258:19,20 | **doubled** 135:23 **doubt** 128:7 | **e** |
| 101:3 229:11 | 279:4 281:15 282:18 | 173:15 | **e** 2:1,1 3:1,1 4:1 |
| **discusses** 183:24 | **document's** 257:15 | **dozen** 13:7 14:2,3 16:2 | 4:1 5:1,8 6:1,1 321:1,1,1 |
| **discussing** 102:20 | **documents** 65:7 66:13 | 21:3,5,15 **dozens** 38:15 | 322:1,1 323:1 323:1 |
| **discussion** 63:11 64:12 | 73:6 89:10 90:10 102:16 | **dr** 72:5,5 74:18 77:20 79:13 | **earlier** 16:4 76:12 82:8 |
| 90:5 151:20 | 120:23 124:2 126:24 127:18 | **draft** 66:22 95:11 101:13 | 84:13 121:2 160:1 174:16 |
| **display** 286:18 286:23 287:8 | 127:20 128:4 129:23 130:12 | **drafting** 59:7 60:9 | 179:20 196:9 220:3 224:5 |
| **displayed** 285:18 286:11 286:15 299:15 | 131:23 132:17 203:6 239:11 | **drafts** 59:18,22 60:2 61:17,20 | 226:11 231:16 232:13 249:16 259:17 281:13 |

284:16
**earn** 259:13
267:8 269:16
277:13
**earning** 71:20
126:19 216:15
**ease** 309:16
**easier** 86:7
97:12 126:9
**easiest** 145:18
**easy** 74:17 75:1
**eat** 273:16
**economic** 11:20
29:17 36:20
42:13 50:10
77:12 159:3
180:1 213:24
218:19 219:3,4
295:18
**economically**
205:9 209:23
210:4 246:13
251:15 253:11
253:18 258:5
259:10 274:19
275:8 276:4,17
276:19,22
278:12,21
279:9,17 280:1
280:20 283:6
297:3
**economics** 33:3
35:1 37:24
38:11,21 39:6

39:12,19 70:13
71:5 156:23
159:4 210:24
211:10,11,21
212:8,15,19
218:8 263:14
269:14 271:7
**economist** 33:8
36:18 37:21
38:4,9,11,18
40:8,14 155:20
193:12 200:16
201:15,21
202:5 205:6
214:24 272:12
**economist's**
177:22
**economists**
11:21 36:23
37:5,12 202:2
**econone** 4:5
7:20 9:17 10:4
10:5,21 11:16
11:17,19 12:7
26:8 28:18,23
29:8,13,16
51:9 53:18,21
54:4,5,15,20
56:6,8 61:18
**econone's**
11:24 53:17
**edits** 61:1
**edo** 1:12 5:3,10
6:11 8:10,20

57:15 321:3
322:2,9 323:7
**effect** 200:12
**effective** 5:17
256:18
**effects** 247:3
**effort** 88:15
91:9 93:2,2
95:1,4 98:9
99:23 101:19
106:17 109:1
109:12 110:5
110:10 112:9
120:13 121:6,6
122:12 123:12
275:3 279:4
**efforts** 247:20
**eight** 114:8
121:12 135:21
298:24 309:3
**either** 26:5 81:9
92:1 93:7 99:8
125:18 137:9
139:18 140:21
152:13 206:10
207:13 208:19
210:17 222:7
225:1 228:15
235:21 237:20
285:3 294:12
**elaborate** 45:22
46:1,2 47:2
112:1 157:16
173:16 191:1

292:19
**elaborates**
154:8
**elaborating**
154:9
**electric** 87:3
**electrical** 32:24
**electricity**
17:15,19 18:6
18:21 67:13
71:23 85:11,20
136:24 137:3
137:19 139:7
141:13 142:3
143:7,17 147:9
151:12,13
156:9 168:7
169:16,20
172:10 174:19
175:10 190:19
190:23 191:5
194:1 197:6,8
198:12,15
212:5,9,10,18
225:21 231:21
232:3,18 233:3
233:10 236:9
266:13 307:17
307:24,24
308:4,7 312:22
314:3
**element** 158:20
**elements**
101:24 175:21

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[eligo - ended]**                                                    Page 26

| | | | |
|---|---|---|---|
| **eligo**   1:8,8 2:10 | 158:24 160:2 | 273:16 274:12 | **embarrassing** |
| 2:10 3:19,19 | 162:7,15,16 | 277:1,14 | 22:22 |
| 5:17 6:13,14 | 165:22 166:5 | 280:13 281:11 | **embedded** |
| 7:7 10:7 14:11 | 174:16 175:10 | 282:18 289:9 | 240:9,16 |
| 22:4,7,10 49:5 | 186:12 187:13 | 289:19 304:2 | **embroiled** |
| 63:16,20 64:16 | 195:6 196:24 | 304:12,13 | 271:21 272:5 |
| 65:2,12 67:12 | 197:19 200:7 | 305:7 306:1 | **emission** |
| 67:19,24 68:9 | 203:6,13 206:7 | 307:6,18 310:1 | 144:14 |
| 68:16 69:23 | 206:13 207:8 | 310:2,19 | **emphasize** |
| 70:20,22 71:13 | 208:10,24 | 311:14,18 | 86:10 |
| 72:21 76:20,21 | 209:5 210:15 | 314:8 315:21 | **employed** |
| 77:6 79:1 | 215:9 216:14 | 319:8 | 11:16 16:5,11 |
| 80:12 81:1,3 | 221:23 222:8 | **eligo's**   42:17 | 17:4 28:19 |
| 82:9,12,15,19 | 222:21 223:9,9 | 67:24 81:14 | 167:14 169:5 |
| 83:2,21,22 | 229:9 231:20 | 102:3 108:18 | **employees** |
| 84:11,24 85:5 | 232:2,17 233:2 | 124:17 125:1,7 | 109:19 125:14 |
| 85:5,6,9,18 | 233:9 234:4,12 | 125:14 128:6 | **enable**   293:19 |
| 86:1,3,12,17 | 234:19,22 | 129:23 130:10 | **encompass** |
| 87:2,6,13 | 235:10,21 | 131:7,23 | 215:8 216:14 |
| 88:15 91:9 | 236:8,20 | 134:24 135:8 | **encompasses** |
| 92:24 94:24 | 237:11 240:21 | 135:15,17 | 32:19 107:1 |
| 97:2,20 99:22 | 240:21 244:16 | 146:5 148:3 | 152:14 |
| 100:4,16,19 | 245:9 246:8,11 | 158:12 161:13 | **encompassing** |
| 105:8 106:19 | 248:14 254:6 | 165:24 171:4 | 305:13 |
| 107:24 110:1,5 | 255:6 256:13 | 190:15 203:5 | **encrypted** |
| 112:8,16,17,21 | 256:17 258:20 | 212:17 217:20 | 241:11 |
| 113:24 120:12 | 259:18 260:6 | 217:21 238:19 | **endeavor** |
| 121:5 122:11 | 260:12,19 | 252:11 253:21 | 292:23 |
| 123:11 124:12 | 261:6 265:17 | 254:8,12 | **ended**   37:8 |
| 128:4 134:17 | 266:12 267:8 | 256:11 260:19 | 84:4 90:21 |
| 136:5,12,17,24 | 268:1,3 269:3 | 277:20 281:6,8 | 158:24 181:23 |
| 142:2 143:2,5 | 269:15,19 | 281:14,24 | 239:14,20 |
| 144:18 147:2 | 270:9 271:8,21 | 284:19 318:19 | 312:13 313:13 |
| 148:24 158:23 | 272:5,20 | 318:21 319:3 | |

Edo Macan                                  December 17, 2025
Brous v. Eligo Energy, LLC

**[energy - escos]**                                          Page 27

| | | | |
|---|---|---|---|
| **energy** 1:8,9 | 234:13 235:5 | 109:1 110:6 | 25:11 86:8 |
| 2:10,11 3:19 | 235:17 236:17 | 112:9 113:6 | 87:22 137:10 |
| 3:20 6:13,14 | 264:1 265:8 | 120:13 121:6 | 139:11,14,15 |
| 7:7 13:8 20:9 | 266:8,21 290:2 | 122:3,12 | 139:24 140:11 |
| 21:22,22 24:3 | 294:17 295:19 | 123:12 | 140:12,24,24 |
| 24:5,22 25:11 | 295:21 297:16 | **ensures** 107:14 | 148:20 169:12 |
| 30:3,7,22 31:3 | 298:7 302:6 | **ensuring** 16:17 | 171:20 174:12 |
| 33:8 36:18,21 | 305:22 314:9 | 16:18 112:23 | 175:2,3 178:10 |
| 37:3,13 38:13 | 314:18 | **entails** 107:1 | 178:16 186:9 |
| 38:15,17,20,21 | **energy's** | **entire** 77:7 | 191:8 192:1,5 |
| 39:6 71:9,12 | 179:11 185:20 | 266:20 287:12 | 192:7,7,13,17 |
| 83:18 128:18 | **engaged** 17:24 | **entirely** 260:18 | 192:19,21 |
| 139:22 142:19 | 260:6 | 260:22 | 193:14 194:11 |
| 142:22 143:7 | **engagement** | **entitled** 320:10 | 194:13 200:22 |
| 144:1,12 | 10:6,9 12:3 | **entity** 26:21 | 201:3 202:13 |
| 145:12,16,19 | 20:6 39:3 49:5 | 194:11 224:1 | 205:11 208:5 |
| 145:21,23 | 56:5,5 172:6 | 227:20 237:11 | 210:2 213:15 |
| 146:3 158:4 | 181:22 197:22 | **entries** 129:13 | 220:12 225:13 |
| 160:13,14 | 236:20 237:11 | **entry** 128:21 | 226:2 227:21 |
| 166:14 167:20 | **engagements** | **environmental** | 233:19 264:16 |
| 167:21 169:16 | 17:21 18:3 | 227:19 | 278:8 305:16 |
| 174:16 176:17 | 20:4 29:18,19 | **equal** 136:11 | 306:6,8,10 |
| 176:20 178:23 | **engineering** | 251:9,13 | 308:3 315:1 |
| 179:9 181:11 | 33:1 | 263:11 280:23 | **esco's** 253:1 |
| 181:14 184:17 | **enroll** 87:2 | **equates** 256:3 | **escos** 19:23 |
| 185:2,18 | **enrolled** 63:15 | **equivalent** | 21:20 24:10,16 |
| 187:12,20,24 | 67:12 82:9 | 145:15 | 24:19 44:5 |
| 191:21 192:15 | **enron** 27:19 | **errata** 7:12 | 137:21,24 |
| 194:24 196:22 | **ensure** 88:16 | **esco** 5:16 16:23 | 138:3,7,10 |
| 197:2 200:6,9 | 91:9 93:2 | 16:24 17:4,7 | 140:22 141:16 |
| 212:5,6,17 | 94:11 95:1 | 17:10,14 19:8 | 142:10,17,21 |
| 224:15 225:14 | 97:22 98:8,9 | 19:11,12 20:14 | 143:6 171:12 |
| 225:20 227:11 | 99:23 100:18 | 20:16 21:2,12 | 171:13 173:11 |
| 233:15 234:4 | 105:9 106:18 | 24:1,8,22 | 176:22,22 |

800.808.4958                                              770.343.9696

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[escos - exhibit]**                                         Page 28

|  |  |  |  |
|---|---|---|---|
| 178:7 191:22 | **evaluating** | **example** 31:8 | **exchanges** |
| 202:18,18,19 | 158:13 | 59:18 61:12 | 246:2 |
| 208:19 252:20 | **evaluation** | 63:15 85:19 | **exclude** 81:11 |
| 264:23 265:16 | 281:5 | 126:15 139:10 | 81:16 174:22 |
| 265:16 266:8 | **everyone's** | 159:8 165:21 | 314:24 |
| 268:18 304:13 | 202:20 305:5 | 192:12 199:7 | **excludes** |
| 304:23 305:8 | **evidence** 51:1 | 267:24 273:4 | 274:21 275:13 |
| 305:21,22,24 | 69:14 72:23 | 296:1 298:4 | 276:23 |
| 306:3,12 307:7 | 86:14 92:21 | 308:6 | **excluding** |
| 307:13,19 | 109:24 172:17 | **examples** 98:21 | 225:24 |
| 312:23 313:4 | 260:6 278:6 | 134:14 170:1 | **exclusion** |
| 314:8,17 | **ex** 5:15 57:15 | 198:2 208:14 | 176:10 |
| **especially** | 103:9 113:20 | **exceed** 272:19 | **excuse** 135:24 |
| 194:12 | 127:8,11 | 273:14 | 230:13 |
| **esquire** 2:3,4 | 148:19,19 | **exceeded** | **executive** |
| 2:14 3:3,5,15 | 245:23 256:17 | 138:15 300:3 | 113:24 257:24 |
| **essence** 184:7 | 309:5 | **excel** 235:1 | **exercise** 241:5 |
| 306:14 | **exact** 13:4,16 | 241:17 292:3 | 260:15 268:6 |
| **essentially** | 14:1 51:16 | 293:6 316:21 | 311:10 |
| 153:3 273:24 | 52:14 55:16 | 316:24 | **exhibit** 5:10,11 |
| **estimate** 21:5 | 61:20,22 62:3 | **exception** | 5:12,13,14,15 |
| 153:12 159:11 | 62:4 208:2 | 13:15 245:15 | 5:17,19 57:14 |
| 159:13 191:8 | 307:12 | 257:23 | 58:1,5 82:3 |
| 191:13,18 | **exactly** 52:24 | **exceptions** | 103:3,12 |
| 280:6 284:19 | 61:14 71:11 | 319:15,20 | 104:11,18 |
| 304:15 | 89:19 125:12 | **excerpt** 5:11,12 | 105:5 114:3 |
| **estimated** | 125:15 195:21 | 103:9 113:20 | 116:20 117:2 |
| 297:14 306:2 | 235:10 293:15 | 114:4 | 120:9,23 |
| **estimates** 237:7 | 312:14 316:19 | **excerpts** | 127:14 128:14 |
| **et** 2:22 3:12 | **examination** | 103:13 121:10 | 129:11,16 |
| **europe** 26:14 | 8:14 318:13 | **excess** 271:10 | 131:12,17 |
| **evaluated** | **examined** 8:12 | **exchange** 115:4 | 132:1,2,7,8 |
| 277:24 | **examines** 171:7 | 245:21 297:4 | 148:9,11,16,24 |
|  |  |  | 149:4 215:12 |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[exhibit - factor]**                                          Page 29

215:17 231:10
239:21 256:15
256:21,23
257:14 285:13
309:14,18
**exhibits** 1:2
58:8,13 65:8
120:9,23 127:3
128:4 130:21
133:13 134:2
258:10
**exist** 211:7
**existence** 171:4
**existing** 162:13
**expect** 141:23
196:24 209:24
263:14
**expected** 200:6
210:4
**expenditures**
55:21
**expense** 267:18
**expenses**
205:15 225:12
225:12
**expensive**
271:22 272:5
**experience**
12:21,23 20:12
72:4 141:5
155:10 171:8
190:22,24
191:6 193:14
193:18,24

200:11
**experienced**
200:6
**expert** 5:10,15
5:19 11:9 12:5
12:8,18,18
13:10,24 14:10
14:21,24 15:11
20:22 21:11
23:11,12,17,20
24:9,23 26:17
30:3 35:1
38:21 39:1,6
39:12,19 40:6
41:6,9,14,16,20
42:7,10 46:12
55:4 57:15
58:5 68:24
74:22 139:22
148:19 154:12
167:20 179:22
185:8,18 200:7
233:14 271:7
279:1,3 292:3
307:9 309:5
**expertise** 37:17
41:21 42:6
202:4 253:16
**experts** 74:18
181:13 182:17
183:12
**explain** 10:3
122:22 145:18
157:15 194:15

246:6 290:16
**explained**
107:11 165:11
165:20 179:20
202:11 205:4
**explaining**
98:14 161:24
**explanation**
64:20 162:24
201:5 207:19
**explicit** 152:18
198:24 200:14
**explicitly**
160:18 198:24
200:10 220:16
223:11,24
307:14
**express** 70:18
**expressed**
75:12 146:5
275:7 279:22
302:4,5 303:8
**expressing**
276:5
**expressly**
180:24
**extent** 20:7
83:5 126:19
127:22 184:8
217:7 240:15
244:8 262:14
**extra** 57:22
261:5 309:9

**extract** 249:4
**extremely** 69:4
247:13,15
249:5 289:4
316:1
**extremes** 247:6
**eye** 312:3
**eyeballing**
131:12
**eyesight** 303:3

**f**

**f** 322:1 323:1
**faced** 166:5
**faces** 270:9
**facilitates** 31:5
**fact** 27:22
65:11 66:24
72:17,17 81:8
84:19 86:10
97:20 111:21
130:22 134:22
143:11 153:22
176:21 184:1
196:19 200:13
244:6 245:16
248:8 253:11
271:20,21
286:6 289:24
295:18 312:18
**factor** 140:23
141:4,14
208:13

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[factored - fine]**                                          Page 30

factored   228:4
factors   147:13
  152:13 153:4
  156:7 157:23
  160:21 161:24
  162:3 166:2
  186:11 193:16
  198:19 199:4
  199:23 200:3
  201:18 203:13
  203:19,22
  204:4,11,15
  206:8 207:9
  208:4,11
  209:17 210:15
  213:10,13
  217:3 228:16
  230:14
facts   62:15
  63:8 65:8
  67:24 108:14
  223:7,7 313:4
factually   152:4
fades   235:22
fair   9:12 11:1,7
  13:18 25:19
  42:20 43:4,23
  44:8,10,12,13
  44:18,21 49:17
  63:8,9 80:10
  92:23 115:3
  138:5 139:11
  140:21 142:21
  159:17 162:16

168:4 174:24
184:17 187:14
201:15 203:21
207:6 221:8
236:6 238:9
243:3 272:15
278:12 292:6
306:23,24
317:16
fairly   48:1 96:9
fairness   269:15
faith   42:20
  43:4,23 44:12
fall   162:22
  228:15 229:17
  229:18,23
  230:12
falls   230:6
familiar   66:2
  127:15 128:17
  149:3,4,6,12
  181:18 197:1
  237:10 251:1
  256:22 296:7
family   28:6,9
far   15:23 25:8
  135:9 141:11
  141:13 155:10
  193:10 197:18
  213:15 240:23
  295:7 296:11
  307:1
father   65:13

fbfglaw.com
  2:20
february   56:21
  135:22
federal   1:16
  12:15 13:8
  30:3 38:15
fee   225:19
feeding   292:21
feel   134:4
feeling   109:22
feels   77:15
fees   198:22
  199:23 267:18
  273:6,12,14
  274:22 276:12
  276:12
field   141:6
fifty   298:24
figure   51:10,16
  51:17 52:9
  71:11,13
  206:12 212:21
  268:12 278:2
  293:8 295:21
  301:23 302:8
  303:5,8 309:21
  310:1,10,13,13
  310:18,24
  311:1,17,24,24
figured   304:21
figures   5:19
  135:5 238:5
  241:3 297:22

309:5
file   17:24 77:14
  79:1,2 293:22
  295:14 298:9
  298:10
filed   6:15 24:9
  178:6,10
files   235:1
  240:18,19
  248:11 249:15
  286:16 295:11
  316:21
final   59:20 60:6
  61:19
finalizing   60:19
finance   36:13
financial   145:5
  145:8,16
  223:16 236:13
  289:22 308:18
financially   6:23
find   74:1,19,23
  75:4,22 97:14
  168:1,2,3
  230:8 257:4
  265:13,18
  268:7,24 285:3
  286:21 298:6
finder   253:12
finding   305:21
fine   47:3
  101:15 255:14
  284:7 294:7

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[finish - formula]**                                      Page 31

| | | | |
|---|---|---|---|
| **finish** 9:4,9,10 | **five** 21:18 | **flipped** 302:22 | **forecast** 234:21 |
| 33:18 35:10 | 24:21 25:4 | **floor** 3:7 303:4 | 235:20 |
| 118:24 119:2,3 | 56:14 61:24 | **fluctuates** | **forecasted** |
| 216:21 | 66:5 74:19,23 | 223:17 | 235:5 240:23 |
| **finished** 33:15 | 104:12 110:17 | **fluctuating** | **forecasts** 16:15 |
| 34:18 107:5,8 | 132:13,14,14 | 225:16 226:18 | 234:19,20 |
| **finkelstein** 2:15 | 132:15 180:19 | 259:2 | 235:6,7 236:7 |
| 7:9 | **fix** 286:18 | **focus** 26:16 | 237:18,21 |
| **fire** 19:17 | 301:3 | 63:10 73:8 | **foregoing** |
| **fired** 28:15,16 | **fixed** 67:13 | 82:4 114:24 | 322:3 323:6 |
| **firm** 51:7 52:16 | 125:16,17,17 | 124:15 141:16 | **forget** 7:11 |
| **firm's** 51:8 | 147:23 149:22 | 166:20 | 302:11 |
| **firms** 51:22 | 151:22 152:5 | **focused** 36:20 | **forgive** 47:7 |
| 53:20 59:11,12 | 153:24 160:10 | 37:2 54:11 | **forgotten** 47:9 |
| 59:19 | 160:11 217:19 | 193:12 305:21 | **form** 13:7,9 |
| **first** 8:18 12:14 | 217:20,23 | **focusing** 75:19 | 80:16 86:20 |
| 25:8,9,15 | 232:23 242:21 | 121:24 140:10 | 98:2 222:6 |
| 29:14 45:22 | 251:8,12,18,21 | 144:21 | 225:4,9 240:22 |
| 62:12 91:8,19 | 253:12,13,22 | **folks** 7:13 9:15 | 241:22 247:17 |
| 92:3,9,18 | 253:24 254:3 | **follow** 42:15 | 247:18 289:5 |
| 94:23 95:11 | 254:21 255:2,3 | 173:6 | 306:5 |
| 99:20 100:15 | 259:3,13 | **followed** | **formal** 37:1 |
| 101:13 102:21 | 260:11,13,16 | 248:24 | 209:8,9 |
| 110:21 111:14 | 262:24 263:18 | **following** 88:20 | **format** 12:14 |
| 112:8 116:9,22 | 264:8 265:4,5 | 109:13 115:11 | 249:6 286:17 |
| 119:8 123:20 | 269:1,1,6,6 | 147:23 153:24 | 287:2 291:13 |
| 126:17 146:18 | 277:10,13,13 | 154:3 164:15 | **formatting** |
| 149:22 150:23 | 280:11,11,13 | 194:9 207:22 | 241:16 287:10 |
| 151:19 153:17 | 281:12,21 | 294:5,17 306:5 | 293:19 |
| 156:22 166:16 | 282:1 | **follows** 8:12 | **formula** 55:16 |
| 216:20 227:6 | **flagged** 89:15 | 94:8 | 165:16 166:7 |
| 232:9 276:8 | **flip** 149:7 | **foot** 154:6 | 216:24 274:6 |
| 288:7 304:11 | 311:11 | **footnote** 133:1 | 314:23 |
| 305:21 317:24 | | 133:10 | |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**formulaic**
209:1
**formulas** 240:9
240:12,14,15
240:17
**formulation**
156:9 167:7
222:3 259:4
283:1
**formulations**
165:13
**forth** 31:7
61:17 93:11
117:11,14,19
154:22 246:16
271:9
**forward** 49:8
75:5,20
**found** 89:3
172:17 217:18
241:10 262:22
268:14 280:11
302:8
**foundation**
18:24 38:23
61:4 65:4,16
71:17 74:5
78:8,16 79:8
85:3,13 91:15
94:15 97:24
102:6,14
120:16 128:10
130:2,16 131:3
132:4 133:18

142:8 143:20
180:8 197:14
199:13 204:14
212:24 216:18
220:23 226:7
241:13 254:14
264:4 265:24
266:16 269:24
271:14 272:1,9
272:24 275:17
277:6 308:9
314:11
**four** 5:19 61:23
62:5 121:23
132:13,14,15
189:15,15
309:5 310:11
**frame** 143:24
**frankly** 161:16
**free** 302:21
**freebie** 222:9
**freedom** 88:2
108:20 110:2
**frei** 2:15 7:9
**frequently**
117:5,7
**friendly** 249:14
**front** 13:8
38:14 58:18
257:19
**frustrated**
77:13
**fuel** 222:16
231:1

**full** 8:18 34:7
218:4 228:18
**fully** 46:21
155:13 229:6
235:15 292:22
**function**
241:17
**functional**
289:3
**fundamentals**
16:14
**further** 92:7
133:10 134:5
143:15 182:17
183:13 203:12
244:8 295:12
317:20 322:5

**g**

**g** 6:1
**g20** 301:12
**ga** 2:7
**gaap** 41:9
**game** 14:24
15:11 260:11
**garber** 2:16
7:10
**gas** 83:17
128:18 160:15
197:20
**gblanikinship**
2:20
**gears** 32:21

**general** 21:8
68:5 72:3
89:11 109:22
109:22 160:9
171:24 190:3
219:3 225:13
227:10 243:23
244:3,21 247:1
247:8 287:24
296:2,16 299:7
**generally** 29:24
41:7,10,16
52:2 91:2
236:1 243:2
**generate** 255:8
284:23 316:5
**generated**
308:4 316:24
**generates**
237:6
**generating**
308:6
**generation**
27:20 36:24
307:21
**generic** 198:2
**gentleman**
21:24
**geographic**
26:16,17 305:6
**getting** 79:19
175:5,6 234:19
245:19 300:7

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[gist - going]**                                                      Page 33

| | | | |
|---|---|---|---|
| **gist** 110:3 | 86:15 110:18 | 82:3 88:12 | 150:1 182:16 |
| 134:14,15 | 113:14 125:22 | 107:9 120:4 | 224:4 233:20 |
| 157:17,17 | 141:13 145:24 | 129:11 134:7 | 238:24 |
| 171:22 207:21 | 152:4 153:7 | 139:2,10,15,23 | **going** 7:11 |
| **give** 8:4,22 | 156:9 158:12 | 140:12 144:22 | 16:19,21 17:20 |
| 17:12 18:8,11 | 158:14,17,18 | 145:4 148:17 | 20:11 26:3 |
| 26:18 40:4 | 162:21 166:24 | 152:1 155:23 | 30:10 33:8 |
| 43:5 52:8 57:5 | 194:13 209:4 | 159:15 182:7 | 34:1,21 35:12 |
| 62:14 65:6 | 220:17,17 | 182:11 185:6,8 | 35:19 36:7 |
| 89:7 98:20 | 227:4 234:11 | 188:13,18 | 39:11 42:23 |
| 111:24 116:24 | 236:18 247:16 | 217:6 224:5 | 43:2 49:8 |
| 117:1 119:5,12 | 250:7 256:2 | 226:24 227:2 | 54:17 55:3 |
| 119:14 120:19 | 274:13 278:4 | 227:15 230:23 | 58:2 67:7,11 |
| 121:21 123:3 | 284:4 290:1 | 231:5 240:22 | 74:1 79:23,23 |
| 126:15 127:18 | 305:13,23 | 248:9,11 253:9 | 81:20,21 82:21 |
| 127:23 131:13 | 306:3,8 308:17 | 267:15 280:1 | 83:4 85:15 |
| 131:13,13 | 315:7 322:4 | 280:17 284:10 | 87:21,21 98:24 |
| 134:13 137:14 | **gives** 74:24 | 288:5 289:11 | 104:21 105:22 |
| 156:17 159:7 | 291:18 | 289:18 291:3,6 | 107:22 110:20 |
| 166:17 168:18 | **giving** 18:11,11 | 293:17 294:6,7 | 111:19 120:2 |
| 191:12,18 | 63:7 90:6 91:4 | 294:18,24 | 127:10 131:9 |
| 197:10,15 | 100:13 101:10 | 295:1,1,2,8 | 136:4 138:14 |
| 200:1 206:1 | 160:9 162:16 | 296:18,18 | 138:16 148:7 |
| 207:15,18 | 164:20 219:18 | 298:5,11,19 | 150:5 151:22 |
| 219:15 222:4 | 296:17 | 299:6,7,24 | 152:5,8,11,20 |
| 228:18 229:2 | **glad** 92:6 | 301:11,15,21 | 159:11,12 |
| 245:4 262:17 | **glean** 257:2 | 301:22 303:19 | 160:11,12 |
| 267:24 268:5,5 | **gleaned** 257:2 | 309:3 313:7 | 168:9,11,18 |
| 284:4 291:19 | **go** 6:8 22:24 | 315:15 318:8 | 170:22 173:22 |
| 294:20 302:9 | 26:11 33:16 | 319:22 | 175:10,12 |
| 309:9 310:8 | 36:10 48:22,23 | **goad** 35:24 | 188:16 189:11 |
| **given** 69:3 | 52:1,2 53:20 | **goes** 50:6,10 | 191:10 200:13 |
| 71:15 79:18 | 55:1,10,11 | 54:4,5 55:10 | 205:21 207:1 |
| 83:23 84:4 | 73:22 81:23 | 55:13 107:14 | 207:16 209:3 |

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

**[going - heard]**                                    Page 34

209:12 211:6
215:1,12
218:21 224:1,2
230:9 231:3
232:8 235:15
235:16,21
244:10,18
245:20 246:7,9
251:5 256:21
257:10,12
265:5,17,21
267:12 268:21
269:19 270:8
270:12 271:6,8
271:8 279:7
283:20 284:2,8
284:16,17
285:10 287:15
289:14,23
290:11,12
291:5 293:4
294:10 295:14
296:12 297:7
300:2 301:14
305:11 308:24
309:17 313:2
315:13 317:22
318:6 320:4
**gold** 311:1,24
**good** 6:2 8:1,16
8:17 42:20
43:4,23 44:12
66:9 71:21
168:10 188:11

223:3 236:6
**goods** 169:14
245:21 246:12
**google** 20:5
**goran** 4:5 7:19
9:21 189:17,22
**gotten** 40:19
256:7
**govern** 175:9
**governs** 43:11
**gradually**
124:19 125:9
125:24 318:22
**graduate** 32:24
37:2,10
**granted** 236:12
**granularity**
304:23
**graph** 309:24
314:18
**graphs** 309:15
314:5
**gravy** 261:5
**great** 8:1 9:14
21:19 119:15
163:16 258:18
303:3
**green** 222:10
223:10 264:1
266:8 308:7,12
308:13 314:9
314:18
**greg** 2:14 7:8
22:1 36:2

56:15 57:22
118:21 189:21
189:21
**groove** 93:10
95:16,23 96:4
101:24 126:1
**gross** 257:22
258:21 301:13
**grossing**
305:22
**grossly** 77:21
**group** 29:15
56:3
**guess** 31:13
55:17 62:5
84:2 93:13
138:10 163:7
201:20 202:4
222:18 243:22
247:22 248:17
254:24 267:9
**guidance** 274:3
**guy** 113:1
**guys** 37:16
177:14 263:2
272:16 318:3

**h**

**h** 5:8 321:1
**hack** 241:6
**half** 13:7 16:1
21:3,4,15
294:7

**halfway** 124:15
**hand** 8:5 36:4
43:19 71:8
127:7 128:16
149:11 206:13
220:18 231:17
241:2 245:21
262:19 263:8
269:3 323:18
**handed** 114:3
**hands** 246:2
297:4
**hang** 318:1
**happen** 268:8
286:1
**happened**
65:11 77:17
134:11 312:14
**happens** 13:15
71:3 118:6
139:18 160:13
**happy** 43:21
173:5
**hard** 71:12,13
171:14 194:10
247:19 299:9
301:17
**harkening**
315:19
**head** 27:7
**hear** 72:13,16
**heard** 42:19,21
237:13,13

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

[hearing - impact]                                                    Page 35

**hearing** 14:6
155:12
**hearings** 13:3
**hedging** 169:10
260:4,5,7,14
261:2
**held** 23:23
39:18 50:12
185:17
**help** 17:14,18
18:19 19:8
59:12 136:7,16
192:2 193:15
257:8
**helping** 59:16
299:19
**hereunto**
323:18
**hidden** 247:14
247:14 249:15
**hide** 84:24
**high** 136:1
152:1 265:19
304:10,20
**higher** 48:14,17
48:18 52:22
259:6,9 265:21
280:2,8 307:20
307:21 313:2
**highest** 283:5
305:22
**highly** 79:18
**hire** 18:19

**hired** 15:22
29:22 53:20
70:2 73:17,20
87:20 272:12
293:1
**historian** 73:14
**historically**
131:11
**hit** 54:1
**hmm** 64:14
82:7 93:19,21
105:12 106:3
113:19 115:7
115:16 148:2
157:2,6 170:11
174:18 190:17
190:17 194:4,4
198:20 199:2,2
203:17 220:4,4
231:18 239:1,6
240:4,4 242:7
242:7 250:3
258:22 286:13
304:6 309:23
**hold** 33:14
37:20 38:4
39:11,11 41:6
107:4 169:23
299:16 300:13
301:16
**holding** 38:9
**honestly** 23:7
23:21 24:14
25:17 56:13

73:7 89:18
199:14 243:4
275:2
**hope** 231:10
**hopefully** 104:1
216:2
**horizon** 242:23
243:18 244:13
**horribly** 35:14
35:16
**hour** 47:5,16
49:20 53:2,8
67:7 81:20
145:15,20
149:23 150:2
150:13,24
151:23 232:11
302:4,5
**hourly** 47:11
170:10 172:10
**hours** 189:15
189:15 303:9
320:6
**house** 3:16 7:7
**houston** 16:6
**hub** 160:15,15
**huh** 117:17
**humongous**
240:18,19
**hundred** 91:6
273:23
**hundreds** 17:9
152:16 191:17

**hypothetical**
271:15

**i**

**idea** 37:5 67:5
139:1 157:16
225:10 245:16
272:10,16
**ideal** 296:11
**identical**
313:14
**identification**
57:16 103:10
113:21 127:9
127:12 148:21
256:19 309:6
**identified** 8:11
147:14 149:15
165:21 248:12
304:2 323:8
**identifier**
239:18
**identify** 9:19
302:7
**il** 3:18
**illiquid** 168:3
**illustrate** 260:4
**illustration**
291:19
**imagination**
38:17
**imagine** 77:19
**impact** 9:2,4

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**impartiality**
  108:8
**impersonated**
  65:13
**implementati...**
  223:6
**implemented**
  223:5
**implication**
  295:18
**implied**  42:19
  43:4,23
**important**  9:8
  69:4,8 70:11
  242:23 265:15
  298:17
**impossible**
  37:15 191:7
  292:4
**impression**
  96:12 99:6,9
**improved**  60:7
**inaccurate**
  91:23 194:16
**inappropriate**
  35:15,17
  203:21 204:3
**include**  58:12
  149:16 150:14
  157:4 181:15
  204:18 205:2
  207:11 210:5
  212:14 214:16
  217:5,5 218:5

221:16 222:19
228:8 242:17
244:3 250:1
261:14,23,24
262:5,7,11,14
275:24
**included**  58:9
  151:3 218:11
  218:17 219:2
  219:20 228:22
  257:15 258:10
  267:15,21
  273:12 312:10
**includes**  12:3
  237:7
**including**  7:3
  20:10 147:15
  203:13 210:15
  215:8 223:9
  273:13
**inclusion**
  206:14 249:17
**incomplete**
  120:23 272:23
  309:18
**inconsistency**
  108:8 209:24
**inconsistent**
  69:20 111:14
  203:10
**inconsummer...**
  69:19
**increase**  95:18
  95:19 124:19

125:9,20
136:13 318:22
319:10
**increased**
  126:21
**increasing**
  278:5
**incredibly**
  271:22 272:5
**incumbent**
  304:14,22
  306:2,13 314:3
  314:24
**incur**  233:10,19
  234:22 267:18
  269:19 271:8
  275:15 277:21
**incurred**
  222:21 236:9
  277:1
**incurring**
  159:1
**incurs**  273:6,8
**independent**
  236:16 237:17
  281:5
**independently**
  155:4
**index**  157:19
  157:24 158:6
  160:1,14,24
  161:3,10,12
  162:22,23
  200:8 201:2

208:8
**indexed**  161:4
  161:7,8
**indicated**
  192:22
**indirectly**
  323:16
**indiscernible**
  300:21
**individual**
  71:10 79:18
**industries**
  11:22
**industry**  37:14
  42:8 169:7
  173:24 174:2,5
  174:9 193:18
  193:19,20
  194:19 196:23
  200:7,20
  201:16 214:13
  214:15,20,24
**inefficient**
  87:24
**infer**  68:11
**inflation**  242:4
  242:8,14,17,22
  242:24 243:1
  243:10,17,19
  245:17 246:14
  287:24 288:6,9
  290:4 292:15
  293:11 295:1,3
  295:17 296:15

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[inflation - introduction]**                          Page 37

297:11 299:6
**influence** 9:1
**information**
  50:24 70:19,23
  75:20 107:20
  107:21 133:9
  234:12 240:20
  241:10 319:9
**informed** 147:6
  151:10
**initial** 48:3
  102:18 109:10
**initially** 49:13
  63:12 80:6
  126:1
**input** 93:10
  101:24 156:6
  242:13,13
  248:15 250:1
  268:15 291:16
  291:17
**inputs** 55:1,11
  146:24 147:13
  149:15 165:16
  166:7 203:11
  229:8 249:4,10
  253:13 268:16
  289:5
**inquired** 68:15
**inside** 34:15
**insides** 278:8
**insist** 111:22
**insisting**
  122:23

**instance** 90:24
  97:9 117:8
  175:2
**instances** 60:8
  60:24 61:15
  135:17 254:22
  269:18 270:8
**instructed**
  249:24 250:4
**instruction**
  250:7,11
**instrument**
  167:22 223:17
**instrumentalize**
  158:18
**instruments**
  145:5,8 226:19
  226:20
**insurance**
  308:19,20
**intelligent**
  71:10
**intend** 49:8
**intended** 200:7
  242:9
**intention** 92:16
**interchange**
  45:24
**interest** 243:23
  244:3,9 246:14
  246:16 247:2,8
  247:23 288:1
  296:2,16
  297:11 299:7

**interested** 6:24
  323:16
**interesting**
  89:15
**interim** 249:8
**internal** 16:15
  281:8,14
**international**
  179:22
**interpret** 96:1
  153:5,7 162:6
  162:15,20
  163:3,9 191:24
  193:18,19
  197:17 198:6,6
  247:20 274:5
**interpretation**
  42:24 44:7
  90:7 96:23
  153:11 154:11
  154:21 155:1
  155:11,14,21
  156:4 157:9
  158:3,19
  162:20 163:9
  165:6,12,14,17
  166:9 175:16
  175:18,22
  176:1 177:11
  177:13,16,18
  177:23 178:2
  180:1,5,15
  188:3 199:10
  201:18 207:24

213:20 214:9
219:10,10
221:22 223:6
225:5 250:8
274:1,13
275:22,23
276:3,13,16
**interpretations**
  153:8 156:2
  163:21 180:12
  193:15 201:19
  274:9
**interpreted**
  42:17 79:12
  153:1,17 162:1
  163:4 182:19
  183:14 186:18
  214:4 217:8
  238:2
**interpreting**
  152:6
**interrupted**
  35:4 270:4
**interrupting**
  118:23
**intimately**
  251:1
**intricacies**
  262:21
**intricate** 316:1
**introduce** 7:14
  7:23
**introduction**
  62:13 63:2

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[intuition - know]**                                    Page 38

| | | | |
|---|---|---|---|
| **intuition** 72:3 | **isos** 194:21 | **jog** 190:5 | **kind** 32:10 |
| **investment** | **issue** 71:8 | **join** 22:24 | 46:19 62:15 |
| 159:5 | 75:11 100:15 | **joined** 36:19 | 63:7 89:3 |
| **invisible** 312:2 | 115:24 134:2 | 48:1 | 90:15 133:9 |
| **invitation** | 155:12 187:11 | **joining** 37:11 | 139:18 155:2 |
| 284:1 | 193:8 208:19 | 50:2 | 180:11 190:21 |
| **invoices** 51:16 | 211:20 214:6 | **joke** 100:10 | 193:12 195:1 |
| 52:9 53:11,12 | 238:21 286:19 | **js** 50:12 | 198:4 218:17 |
| 53:13,17 54:1 | 286:23 | **judge** 14:6 | 219:19 237:16 |
| 87:14 | **issued** 14:21 | **judicial** 184:11 | 240:15 248:9 |
| **invoicing** 51:19 | 15:18 30:12 | **junior** 10:23 | 250:10 255:8 |
| **involve** 24:18 | 40:7 53:18,22 | **justify** 268:9 | 257:2 258:3 |
| **involved** 18:3 | 58:6,14 94:6 | **justifying** | 263:15 286:14 |
| 21:21 23:5 | 179:1 181:1,11 | 153:18 | 286:18 299:9 |
| 24:2,9,16,23 | 185:1 | | 309:14 315:19 |
| 25:12 40:6,18 | **issues** 30:6 | **k** | 316:19 |
| 51:19 71:19 | 179:8 | | **kinds** 32:16 |
| 93:6 95:19 | **issuing** 185:9 | **keep** 27:11 36:6 | **knew** 70:5 |
| 155:9 178:22 | **it'd** 10:23 62:5 | 50:19 122:23 | 71:18 95:20 |
| 262:24 280:6 | 69:6 117:9 | 138:16 165:19 | 102:3,8 167:18 |
| 280:17 | 126:9 | 239:17 251:10 | 222:7,9 246:21 |
| **ira** 1:6 2:21 | **it'll** 13:7 300:17 | 282:15 | 297:4 |
| 3:11 6:11 | **itemized** | **keeping** 45:21 | **knock** 34:13 |
| 63:12 65:1 | 198:24 | **keeps** 281:17 | **know** 10:23 |
| 68:21 72:24 | | 300:18 | 17:24 18:1,2 |
| 75:3 78:13 | **j** | **ken** 113:15 | 20:3 23:14 |
| 80:11 311:12 | | **key** 19:18,18 | 25:1,7,10 28:5 |
| **iso** 31:5,10,12 | **j** 3:3 279:12 | 93:6 | 29:24 31:3,22 |
| 31:15 32:11 | **january** 67:14 | **keyword** | 32:18 35:2,3 |
| 137:8 227:11 | 133:21 323:19 | 255:15 | 35:17 40:10 |
| **isolate** 19:20 | **jbm** 3:9 | **kill** 293:19 | 42:22 44:3,4,4 |
| **isolated** 295:13 | **job** 28:23 | **kilowatt** 149:23 | 44:19 45:5,5 |
| **isolating** 47:23 | 273:23 | 150:2,13,24 | 45:17,23 46:14 |
| | **jobs** 26:4 | 151:23 232:11 | 46:18 48:6 |
| | | 302:5 303:9 | |

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

**[know - know]**                                              Page 39

| | | | |
|---|---|---|---|
| 49:1 50:8,13 | 101:22 102:7,8 | 158:21 159:10 | 205:10,11,14 |
| 50:14,23 51:2 | 102:10,10,19 | 159:21,22 | 208:7 209:5,17 |
| 51:2,4,10 | 102:21,22 | 161:19 162:1,7 | 209:17,22 |
| 52:11,23 53:1 | 106:24,24 | 163:1,2,8 | 210:2,3 211:1 |
| 53:11 54:6,17 | 107:17 108:15 | 165:15 166:6 | 211:5 212:1 |
| 55:15,16,18,21 | 108:16,17 | 166:10,14 | 213:21,24 |
| 55:23,24 56:1 | 109:8,9,18,18 | 167:8,10 | 214:10,12 |
| 57:18 58:23 | 109:19 112:1 | 168:10,12,13 | 216:23,24 |
| 61:5,8,10 64:2 | 112:16 117:6,7 | 169:11,12,13 | 217:4,6,10,11 |
| 64:3,6 67:6,11 | 117:12,14,14 | 169:16,20 | 217:19 219:10 |
| 68:21 69:4,15 | 118:3,6,7,8 | 172:5 173:5,7 | 221:4 222:8,11 |
| 69:24 70:10 | 122:19,21 | 173:19,20,21 | 223:4,5,8,13,14 |
| 72:3,5,19 | 125:19,21,24 | 174:1,1,6,6,12 | 223:15,16,19 |
| 73:12,17 74:7 | 126:11,12,12 | 175:5,19,21,23 | 223:20,24 |
| 74:7,14,15 | 126:13,17,18 | 177:24 178:12 | 224:2 225:1,3 |
| 75:1 76:11,18 | 127:18,19 | 178:14,19 | 225:6,10,11,14 |
| 77:11,12,20,20 | 128:2,11 132:5 | 179:15,23 | 226:12 227:1,2 |
| 77:22,23 78:5 | 132:24 133:21 | 180:2 181:4 | 227:20,22 |
| 79:13,21,24 | 134:10,12 | 182:4 183:22 | 229:13,16 |
| 80:5,10 81:2,8 | 135:12,19 | 183:23,24 | 230:11 235:4 |
| 84:4,19,20,21 | 136:21 137:12 | 184:10,11 | 235:12,14,24 |
| 86:6,9,11,22 | 139:21 141:4,7 | 190:3,5 191:6 | 236:1,2,5,16,18 |
| 87:23,24 88:1 | 141:8,10 | 191:13,15 | 237:3,6 238:1 |
| 88:2 89:1,12 | 142:22 143:11 | 192:22,22 | 238:2,7 240:23 |
| 90:4,4,6,7,9,10 | 143:13,21 | 193:10 194:13 | 241:18,21 |
| 90:17,19,21,22 | 145:3,3,8,9,11 | 194:14,20,22 | 242:13,20,23 |
| 93:12,14 95:9 | 146:2 151:19 | 195:3,24 | 243:16 244:5,6 |
| 95:15,16,21,21 | 151:21,22 | 196:24 197:17 | 244:10,16 |
| 95:24 96:1,3 | 152:4,8,9,10,14 | 198:1,7,8 | 245:16 246:4,4 |
| 96:11,12,14 | 152:17 153:12 | 199:17 200:8 | 246:14,17,20 |
| 98:13,24 99:1 | 153:20,22,23 | 200:21,24 | 247:19 248:15 |
| 99:6,8,11,12,18 | 153:24 154:7 | 201:2,6,13,24 | 248:15,24 |
| 100:24,24 | 156:1,5 158:3 | 202:16 203:4 | 249:2,4 251:3 |
| 101:15,16,18 | 158:5,9,10,11 | 204:9 205:7,9 | 251:13,13,15 |

Edo Macan                                  December 17, 2025
Brous v. Eligo Energy, LLC

**[know - lawsuit]**                                        Page 40

252:16 253:16
254:2,23 255:1
256:13,21
257:2 258:3
259:18,21
261:6 262:19
262:20,21
263:2,13
264:17 265:12
266:6 269:14
271:20 273:20
274:3,24 275:4
275:5 277:21
278:4,8,9,9,23
280:10,11,15
280:19,21,23
281:3,22
282:11 285:21
286:1,4,6
287:7,9,16
288:22,23
289:20,23,24
290:14 291:11
291:16 292:24
293:8,22 294:2
295:6 296:8,10
297:5,8 300:18
301:20 303:21
305:5,7 306:18
306:20 308:1
308:10,11
309:20 313:5
313:20,21
314:1 315:6,24

316:5,11,13,15
316:19
**knowing** 180:9
235:15 305:24
**knowingly**
79:21
**knowledge**
93:8 112:21
201:23 288:14
323:12
**known** 159:2
159:19,20

**l**

**label** 149:20
**labeled** 150:23
196:12
**labels** 160:9
**labor** 48:23
277:22
**lack** 18:23
38:22 65:3,16
71:16 74:4
78:8 79:7 85:3
85:12 91:15
94:15 97:23
102:5,13 128:9
130:1,16 131:2
132:3 133:18
142:8 143:19
180:8 197:13
199:7 212:24
216:17 220:22
254:13 265:24

266:15 269:23
271:13,24
272:8,24
275:17 277:6
308:8 314:10
**lacking** 223:3
**lacks** 78:15
120:16 199:12
204:13 226:6
241:12 264:4
**laid** 274:7
**lake** 3:17
**language** 43:16
61:1 90:11
93:8,9 95:21
99:14 101:18
106:19 148:3
150:12,15,23
151:2 153:23
155:15,21
156:3,4 160:18
161:20 162:13
165:12 184:1,2
184:5,8 187:1
187:11,11,18
187:20 192:7
193:1,7 198:2
198:3 200:12
200:14 201:8
205:19 208:2
209:15,16
212:18 214:2
219:11 258:2,6
274:2,9

**languages**
186:19
**lapointe** 3:15
5:11 7:7 88:22
93:14 94:9
96:19 103:9
105:6 106:4,12
112:16 115:23
119:8 120:10
120:12 121:5
121:24 122:1
123:4
**lapointe's** 90:1
92:7 103:13
104:23 110:8
111:9 116:21
121:12 123:17
124:1
**large** 19:15
171:8 312:20
313:20
**largest** 27:18
307:1,4
**laser** 73:8
**law** 41:24 42:2
42:10 43:11,18
45:4,7 51:22
53:20 59:11,19
79:24 155:11
213:20 273:16
**lawsuit** 21:2
24:2 78:6 79:2
79:3

**lawyer** 155:18
177:13 201:23
202:1
**lawyers** 22:9
60:9,24 61:19
66:22 78:13
274:21
**layman's** 30:24
43:6
**lead** 72:18
108:13
**leading** 11:3
38:13 69:16
238:10 319:22
**leads** 108:14
202:5
**learn** 70:12
**leash** 302:13
**leave** 28:13
119:15 139:10
139:15,23
140:11 303:3
**led** 11:8 69:24
90:10 92:21
251:3 316:7
**left** 28:17 56:2
128:16 149:11
231:17 295:7,9
301:12
**legal** 39:16,21
39:22 40:2
42:6,23,24
44:6,7 45:7
73:12 94:10

95:13 96:23
97:3,21 98:7
99:1 100:4,17
101:14 102:3
102:12 105:23
106:14 107:13
107:13 108:18
109:1,10
111:10 113:6
115:13,21
116:3,7 117:23
122:3 153:6,8
153:10,14
154:17 155:15
156:2,4 158:19
161:15,18
162:18 163:20
165:11,14,17
166:9 167:18
167:19 175:13
175:16,22
176:1 177:8,10
177:12 178:1
179:14 180:4
180:10,12,12
180:12 181:3
182:4 183:22
184:10,10,20
186:23 196:17
200:12 201:18
201:19,24
205:22,24
206:1 207:24
208:18 213:2

214:1,4,5
219:10 221:21
223:5 229:1
250:8 268:18
271:17,17
273:6,8,12,14
273:20,20
274:2,4,8,13
275:22,23,24
276:3,8,11,12
276:13,16
277:21
**legally** 143:22
143:24 155:10
163:2,4,4,4
**legislative**
203:14 208:12
209:17
**legitimate**
181:17 182:22
183:17 222:11
222:21
**length** 80:24
**lengthier**
207:19 244:19
**lengthy** 100:14
183:6 256:22
262:17 266:1
279:4
**leo** 2:4 7:5
258:13
**letters** 236:24
**level** 69:7 95:13
152:1,2 217:7

222:23 246:24
257:24 263:10
265:19 297:11
304:10,20
**license** 41:1
**licensed** 42:2
**light** 73:6
116:20
**likely** 27:10
257:14
**limit** 138:16
185:20 292:13
300:4
**limited** 105:17
205:20
**line** 50:20,21
111:22 115:2
115:12 117:20
280:14 284:5
300:5 310:7,24
311:1,23,24
321:4
**lines** 11:24
30:22 60:1
104:24 105:21
106:13 120:19
121:12 123:24
314:18
**list** 230:8
239:17,21
258:10 284:18
**listed** 66:12
89:10 127:16
127:20 129:8

129:16 131:10
172:9 203:11
223:24 239:21
257:13,16
**listen** 34:9,19
**listening** 9:15
**listing** 219:19
**lists** 74:14
221:3
**literally** 40:5
120:18 122:17
179:23 264:15
293:8
**litigation** 11:22
12:1,3,19,22
13:21,24 14:4
14:16,22 20:14
20:16 21:11
29:9,12,20,21
30:1 40:19
48:9 191:15
193:5 268:1
271:16 272:6
272:17,19
276:1,12
**little** 21:7 32:21
37:5 50:4 67:7
90:18 124:16
148:6 181:10
207:19 231:13
235:2 254:23
261:13 265:18
283:4 285:22
295:9 300:12

302:18 305:20
**lived** 25:19,22
**lives** 83:14
**living** 68:21
70:5 71:21
**llc** 1:8,9 2:10
3:19 6:14,14
**llp** 2:5,16
**load** 224:1
227:19 299:24
300:1
**local** 83:3,17
268:20 305:10
305:11,15,23
306:3,7,17,22
306:22,24
**location** 6:17
**locked** 268:1
**logic** 168:12
251:10 280:24
**logical** 72:8
77:9,16 78:1,4
79:3 136:20
141:23
**logically** 72:19
**long** 45:13
56:18 68:17
96:24 183:6
189:9,14
196:23 205:13
211:4,4 253:7
271:22 272:6
277:24 317:19

**longer** 79:4
121:19 242:21
242:23
**look** 10:22
12:13 18:7
26:7 64:10
69:7 71:18
73:16 75:3
94:4 98:18
101:4 102:19
102:20 107:22
112:11 126:24
127:15 131:9
134:5 164:2
191:9 196:9
201:22 215:12
219:13 224:6
224:12 231:9
235:2 252:1
257:1,9,11
258:2 284:17
301:19 309:20
310:24 311:7
311:23 312:7
314:4,5,18,19
316:18,18
318:15 319:5
**looked** 26:2
54:10 76:5
84:20 99:5
121:3,4 134:8
135:4 170:19
181:22 196:9
197:23 209:15

223:7 224:17
236:18 242:12
246:22 247:8
247:12 279:7
284:23 304:10
307:3
**looking** 43:9
62:24 91:4
125:5 127:24
132:24 146:15
168:22 186:24
198:17 200:16
201:13 205:6
234:8 242:2
253:6 257:6
287:19 288:1
289:21 299:2
305:23 308:13
309:10
**looks** 26:3
58:17 93:5
128:1 131:21
132:17 133:5
215:21 312:19
313:14
**loose** 90:6
157:10
**loosely** 157:14
**loss** 272:21
273:16
**losses** 274:4
297:17
**lost** 174:2
222:4

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**lot** 17:21 18:2
25:21 27:23
32:19 37:12,17
65:6 70:9 71:6
154:5 162:2
170:20 187:4
187:13 247:12
249:12,13
253:20 279:4
292:21
**loud** 151:9
**low** 231:1
**lower** 48:14
95:14 126:20
129:19 280:23
280:23 281:19
281:19
**luck** 268:4
**ludicrous** 210:1
**lunch** 177:5
188:14
**lupo** 1:16 8:2
323:4,23

**m**

**m** 5:15 148:19
**macan** 1:12 5:3
5:10 6:11 8:9
8:10,16,20
26:2 35:11
57:15,18 58:20
82:3 94:7
96:24 114:21
119:24 120:8

127:14 128:3
139:6 148:18
148:23 182:15
188:22 224:6
231:9 256:22
257:19 275:7
284:15 285:19
315:19 318:15
321:3 322:2,9
323:7
**macan's** 257:14
**macros** 292:1
**made** 36:24,24
46:10 49:10
60:3,3,9,24
66:22 86:19
88:15 91:9
92:17,19,23
93:2 94:24
99:23 101:11
110:5,10 112:9
120:12 121:5
122:12 123:4
123:11 129:22
130:3 147:7
151:10 157:15
184:3 219:8
242:4 244:11
246:22 247:19
248:20 253:20
257:23 268:22
287:17 288:14
288:22 297:12
298:11,12,13

316:3 319:15
**magnitude**
52:16
**main** 16:12,13
261:1
**maintain**
319:12
**majority** 11:8
11:12 135:18
**make** 60:1
75:11 76:3,7
80:19 86:6,7
99:21 104:23
115:21 116:7
117:2 145:12
162:2 173:8
197:11 198:11
205:7,15
243:16,17
248:21 250:15
263:9 281:9,10
289:2 292:22
297:9 298:20
298:20
**makes** 115:14
192:14,17
205:10 210:2
305:15
**making** 66:19
109:12 159:4
203:1 263:5
281:20 298:6
**management**
16:18 36:14,17

136:12 260:20
**managing**
11:17
**mandated**
74:13 143:22
144:1
**mandatory**
220:2 221:1,5
221:9 223:8
227:22 228:6
264:18 297:18
**manner** 250:4
**manually** 126:1
**march** 56:21
**margin** 181:16
182:21 183:16
185:22 192:18
204:18,18,22
205:2,20 206:9
206:14 207:11
207:12 210:16
210:17,19
212:13 213:21
214:17 215:8
216:15 217:6
217:22,22
218:5,10 228:6
250:1 251:6,18
252:6,11,20,21
253:13,22
254:6,11,17,21
255:3,5 256:3
256:10 257:3
257:22 258:4

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[margin - markups]**                                    Page 44

| | | | |
|---|---|---|---|
| 258:21,24 | 49:1 50:20 | 182:18,21 | 264:15 277:17 |
| 259:1,1,3,8,11 | 137:4,19,21 | 183:14,16 | 304:4,8,11,16 |
| 259:18 260:20 | 139:7,9 140:16 | 185:20 186:4,9 | 304:17,18,21 |
| 261:3,4,4,5,15 | 148:1 150:3,14 | 186:10,11,15 | 305:10,11,15 |
| 261:21,24 | 151:1,24 | 187:2,3,4,7,8 | 305:16 306:2,4 |
| 262:10 267:8 | 152:10,12 | 187:10,14,19 | 306:6,8,9,11,12 |
| 267:11,23 | 153:2,4,4 | 188:3 193:9,16 | 307:1,7,8,24 |
| 268:4 269:6,21 | 154:2,4,10 | 193:16 197:2,5 | 308:2 310:3,4 |
| 270:11 271:11 | 156:6,7 157:21 | 197:12 198:18 | 310:6 311:15 |
| 272:19 273:15 | 157:22 160:19 | 198:23,24 | 312:13 313:5 |
| 277:12 279:10 | 160:20,21 | 199:1,3,22,24 | 313:13 314:15 |
| 279:21 280:13 | 161:22,23 | 200:2 201:17 | 314:23,24 |
| 280:22 281:7,9 | 162:1,3,4 | 201:18 202:3,5 | **marketing**  88:5 |
| 281:14,17 | 164:9,11,16,17 | 202:7,15,21 | 222:7 |
| 282:1,2 283:3 | 165:6,7,24 | 208:3,4 211:19 | **markets**  27:21 |
| 301:13 | 166:1,5,8,18,19 | 211:23 212:1,4 | 30:5,7,10,11,21 |
| **margins**  249:16 | 167:7,14,15,20 | 212:5,6,10 | 31:2,2,6 32:17 |
| 249:17 259:3 | 167:22,23 | 213:8,9 217:2 | 37:3,7,18 |
| 278:20 | 168:1,3,4,5,6,8 | 217:3,8 223:15 | 139:22 152:9 |
| **mark**  57:6,13 | 168:16,16 | 223:18,22 | 194:21 233:15 |
| 57:14,21 103:3 | 169:5,6,9,12,21 | 224:7,8,9,14,18 | 306:18,22,22 |
| 113:18 285:13 | 169:22 170:9 | 224:18 225:3,4 | 306:24 |
| 309:1,4 | 171:19 172:10 | 225:6,8,11,16 | **markup**  217:17 |
| **marked**  57:16 | 173:22 174:4,8 | 225:17,18,19 | 218:1 250:1,15 |
| 103:10 113:21 | 174:10,15,17 | 225:21,24 | 250:18 251:15 |
| 127:9,12 | 174:19,23,24 | 226:5,16,19,20 | 251:24 252:24 |
| 148:21 149:3 | 175:4,6,23,24 | 226:21 227:5,9 | 253:1,3 256:3 |
| 256:18 309:6 | 176:5,6,9,10,11 | 227:11,13 | 256:4 261:24 |
| **marker**  250:22 | 176:16,18,20 | 228:15,16,19 | 262:1,4 265:6 |
| **market**  19:9,12 | 176:24 177:8 | 228:21,22 | 267:23 268:12 |
| 19:14 20:1 | 177:16,17,24 | 229:8,18,24 | 279:23 282:24 |
| 26:18 30:19 | 178:1 179:10 | 230:6,13,13,14 | 283:3 |
| 31:1,11,16,21 | 180:5,16 | 232:12 236:15 | **markups** |
| 31:24 32:10,12 | 181:14,16 | 238:19 251:1,2 | 261:17 262:23 |

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

**[markups - meadows]**                                        Page 45

| | | | |
|---|---|---|---|
| 269:12 | **maximum** | 68:7,14,20 | 131:20 132:9 |
| **marriage** | 138:16 258:24 | 70:3,17 72:11 | 134:1,16 |
| 323:15 | 282:2,19 300:4 | 72:22 73:21 | 138:20 139:1,5 |
| **marriott**  1:20 | **mba**  37:15 | 75:2,10 76:2 | 140:4,8,15,20 |
| **massachusetts** | **mcinturff**  3:3,6 | 77:3 78:3,9,22 | 141:15,24 |
| 1:20,22 6:19 | 7:16,17,17,18 | 80:9,22 81:10 | 142:9,24 |
| 26:5 323:2,6 | 22:19,20 23:4 | 81:18 82:2,24 | 143:14,23 |
| **master's**  33:2 | **meadows**  2:3 | 83:9 84:9,17 | 145:10 146:14 |
| **materials** | 5:4 7:5,5 8:15 | 85:8,14,24 | 148:11,15,17 |
| 170:15 222:8 | 11:6,14 15:6 | 86:24 87:12 | 148:22 150:7 |
| 286:7,8 | 15:16 16:3 | 88:7 91:18 | 150:22 152:22 |
| **math**  175:17 | 19:1 20:24 | 94:16,22 97:16 | 154:14,19 |
| 316:17 | 22:18 24:13,15 | 98:5 99:19 | 156:16,19,21 |
| **mathematical** | 27:8 30:16 | 100:12 101:6 | 160:22 163:6 |
| 316:7 317:3 | 31:19 32:6,20 | 102:9,24 103:3 | 164:6,7 165:4 |
| **mathematics** | 33:13,17,20 | 103:7,11,17,19 | 167:12 169:1 |
| 273:24 | 34:3,9,12,19,24 | 103:21,24 | 176:4 177:1 |
| **matter**  6:11 | 35:6,11,16,22 | 104:4,7,9,14,17 | 178:4,21 |
| 20:8,22 39:3 | 35:24 36:4,12 | 104:20 107:2,6 | 179:16 180:3 |
| 40:19 41:20 | 37:19 38:3,19 | 108:23 110:4 | 180:13,22 |
| 47:12 49:5,13 | 39:5,10,17 | 110:19 111:8 | 181:5 183:7 |
| 49:20 76:11 | 40:3,12,17,24 | 112:5 113:12 | 184:14 185:14 |
| 147:7 151:10 | 41:13,23 44:22 | 113:18,22 | 186:7 187:9,22 |
| 191:16 255:1 | 45:9 46:22 | 114:8,12,14,16 | 188:10,15,21 |
| 320:11 322:4 | 49:3 51:6,18 | 114:17 116:16 | 189:13 191:19 |
| 323:17 | 52:13 53:6 | 118:13,16,21 | 192:11 196:21 |
| **matters**  11:22 | 55:9 56:4,17 | 119:1,4,21,24 | 197:7 198:16 |
| 42:6,13 48:9 | 56:22 57:5,10 | 120:7,24 | 199:19 202:23 |
| 48:11,12,14,19 | 57:13,17,21,24 | 121:15 122:9 | 204:17 206:3 |
| 71:6 72:4 | 58:10,19 59:5 | 123:2,16 124:5 | 206:19 207:3 |
| 293:3 | 59:10,17,24 | 124:10 126:23 | 210:12 211:8 |
| **max**  115:5 | 60:21 61:13 | 127:6,10,13 | 211:18,24 |
| 282:17 | 62:7,20 64:1 | 128:13 130:4 | 214:21 215:17 |
| | 65:10,19 66:1 | 130:20 131:6 | 215:20,24 |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[meadows - mechanics]**                                    Page 46

| | | | |
|---|---|---|---|
| 216:4 217:13 | 314:14 315:2,9 | 186:3,15,16,20 | **meaningful** |
| 218:15,23 | 315:18 316:16 | 186:22 187:7 | 213:19 244:9 |
| 219:12,16,17 | 317:18 318:9 | 191:21 192:10 | 246:11 251:15 |
| 221:7 222:17 | 319:1,22 320:1 | 193:1,4,20 | **meanings** |
| 224:16 226:10 | **mean** 18:9 25:7 | 194:10 195:2 | 214:5 |
| 228:1,17 229:4 | 26:11 30:17 | 196:18,22,23 | **means** 64:2 |
| 229:19 230:4 | 31:20 32:5,17 | 197:16 198:8 | 95:4 107:1 |
| 230:15,22 | 43:5,10 44:2 | 198:12 202:16 | 127:21 152:10 |
| 231:2,8 238:17 | 51:11 52:21,23 | 204:7 205:23 | 153:8 155:15 |
| 242:1 244:24 | 59:4,6,16 | 211:16,17 | 163:13 164:16 |
| 246:15 252:18 | 61:23 64:9 | 214:5 217:8,14 | 165:6 166:19 |
| 255:4,16,19 | 67:2 69:11,15 | 226:13 230:1 | 167:15,20,22 |
| 256:6,15,20 | 72:12,19 77:24 | 248:23 250:23 | 168:13,16 |
| 257:17 258:13 | 84:20 86:7 | 254:24 258:15 | 169:6 174:12 |
| 258:17 264:9 | 89:23 93:24 | 258:19 260:3 | 175:4 176:9,16 |
| 266:4,19 267:6 | 94:23 95:6,23 | 270:2 285:15 | 176:16,19,19 |
| 270:1,7,16,22 | 98:20 100:23 | 286:4 290:17 | 177:17 198:21 |
| 271:5,19 272:2 | 101:9 110:23 | 291:11 298:4 | 205:10 207:24 |
| 272:14 273:10 | 117:6,7 118:8 | 308:2,13 | 212:1 214:6 |
| 274:18 275:6 | 118:13 121:1 | 311:21 314:22 | 224:18 225:3,4 |
| 276:2,15 277:4 | 121:24 122:18 | 314:22 316:11 | 243:1 270:24 |
| 278:17 281:2 | 135:3 136:18 | 316:23,24 | 319:19 |
| 282:6,13 283:2 | 141:22 145:1 | 319:17,18 | **meant** 88:6 |
| 283:13,21 | 151:15 153:6 | **meaning** 13:6 | 133:11 165:17 |
| 284:14 285:9 | 156:8 157:7 | 16:14 138:7 | 176:2,5,6 |
| 285:15,17 | 161:2 162:2 | 153:3 163:11 | 195:1 197:18 |
| 288:21 292:5 | 166:8 167:5,10 | 164:19 166:17 | 286:23 293:10 |
| 292:12 295:20 | 167:16,16,17 | 169:8 171:19 | 294:2 |
| 299:1 300:13 | 169:13,13 | 173:22 174:4 | **measure** 255:7 |
| 301:5 303:6,20 | 170:2 171:17 | 176:5 177:7 | 255:20 269:10 |
| 308:23 309:3 | 174:1 175:14 | 179:9 190:14 | **mechanics** |
| 309:10,13,19 | 175:19,24 | 194:8 198:18 | 78:20 80:3 |
| 311:9 312:8 | 176:18 177:10 | 200:22 214:4 | 89:22 145:3 |
| 313:8,23 | 181:22 184:20 | 214:24 | |

Edo Macan                                      December 17, 2025
Brous v. Eligo Energy, LLC

**[media - minimum]**                                            Page 47

| | | | |
|---|---|---|---|
| **media** 6:9,10 320:6,8 | **mentions** 182:15 | 235:9 236:11 237:24 238:16 | **mic** 294:11 302:14 |
| **meet** 23:4 189:4 211:20 | **mere** 312:18 313:4 | 241:4 253:14 261:16,22 | **michelle** 1:6 2:21 3:11 6:12 |
| **meeting** 189:7 189:9,14 | **merely** 42:12 79:10,17 | 262:8,11 274:2 284:21,22 | 64:13 82:5 |
| **meets** 41:21 | 108:12 153:22 | 303:23 304:2,8 | **microphone** 119:23 |
| **megawatt** 145:15,20 302:4 | 158:18 165:15 173:19,20 | 309:22,24 310:11 311:13 | **microphones** 6:4 |
| **melissa** 1:16 8:2 323:4,23 | 200:13 208:15 216:24 268:11 | 312:9 316:8,17 317:11,12,14 | **middle** 46:4 49:17 257:19 |
| **memory** 97:11 170:18 190:5 235:22 | 272:11 274:10 280:24 289:3 291:15 | **methodologi...** 76:17 312:17 | **middleman** 181:13 |
| **mentioned** 11:15 23:10 | **mess** 293:9 | **methodology** 76:8 94:10 | **middlesex** 323:3 |
| 24:1 30:10 | **message** 115:4 | 97:3,21 98:7 | **millions** 268:2 |
| 43:13 75:16 | **messy** 247:14 247:15 | 100:4,17 102:11 106:18 | **mils** 257:23 |
| 89:23 102:22 | **met** 22:15 23:1 | 108:24 113:5 | **min** 115:5 |
| 144:9 147:1,19 | 23:2,21 56:14 | 122:2 153:9 | **mind** 17:8 20:5 |
| 185:7 196:5 | 105:18 189:6 | 158:19 167:13 | 21:23 46:17 |
| 203:16,20 | **method** 153:12 | 167:17 168:15 | 52:16 66:9,9 |
| 204:5,12 206:9 | 156:24 157:3 | 169:4 176:8,8 | 88:10 195:4 |
| 206:10 207:10 | 157:18 158:14 | 210:18 250:21 | 220:15 229:17 |
| 207:12 208:13 | 158:15,20 | 250:23 253:16 | 260:14 265:20 |
| 210:16,17 | 159:23,23 | 273:22 | 268:19,20 |
| 218:9 220:5,11 | 165:21,21 | **methods** 157:4 | 298:11 |
| 223:12,21 | 166:12,12,15 | 158:7 165:13 | **mine** 28:7 |
| 228:5,9,14 | 167:16 176:1 | 238:16 249:24 | 103:21 104:14 |
| 269:20 | 176:19 178:2 | 316:3 | **minimum** |
| **mentioning** 181:12 | 204:19,19 | **metric** 86:12 | 220:13 254:11 |
| | 217:9 219:21 | 159:18,18 | 257:22 258:21 |
| | 219:22,22 | 283:1,3 | 259:2 281:13 |
| | 229:7 234:1,10 | | 281:24 282:18 |

**minute** 94:4
**minutes** 97:13
  188:14 228:2
  284:5 315:10
  320:7
**miscellaneous**
  198:22 199:23
**mischaracteri...**
  277:3
**mischaracteri...**
  38:2 44:15
  79:7 83:5
  91:15 94:13
  97:6 100:7,22
  122:15 123:8
  125:5 132:4
  133:18 142:8
  146:10 150:18
  154:16 160:5
  164:24 165:9
  180:8 186:1
  187:16 188:7
  199:12 210:9
  210:23 212:24
  224:11 227:8
  228:12 254:14
  264:4 265:24
  272:1 275:17
  277:5
**mischaracteri...**
  65:16 100:9
**misconstrues**
  187:15

**misheard** 92:1
**misinterpreting**
  225:2
**mispronounce**
  22:16
**misrepresents**
  97:24
**missed** 255:13
**missing** 121:9
  255:15
**misspoke** 53:10
  92:1
**misstates** 65:4
  78:16 102:14
**misunderstan...**
  213:5 225:2
**mit** 37:9
**mixed** 132:15
**mm** 64:14 82:7
  93:19,21
  105:12 106:3
  113:19 115:7
  115:16 148:2
  157:2,6 170:11
  174:18 190:17
  190:17 194:4,4
  198:20 199:2,2
  203:17 220:4,4
  231:18 239:1,6
  240:4,4 242:7
  242:7 250:3
  258:22 286:13
  304:6 309:23

**model** 101:24
  273:14 274:20
  275:11 289:3
  293:9 297:4
**modeling** 141:6
**models** 154:20
  235:8 241:6
  275:13
**modify** 249:9
**mohawk** 171:8
**moment** 8:4
  73:23 82:5
  137:15
**moments** 290:3
**money** 53:24
  56:2 79:15
  205:8,16 210:2
  233:19 246:1
  250:15 263:10
  281:20 297:3
**month** 71:22
  86:20,21 96:5
  96:6 129:5,6,8
  131:11 133:4
  133:16,20
  134:23,23,23
  159:15 238:20
  238:20 239:4
  239:10,10,15
  239:16 243:15
  252:1,21 253:3
  284:24 285:4
  290:1 295:6,10
  295:11 306:8

**month's** 95:17
**monthly** 51:17
  51:19 52:1,2
  87:3,14 99:16
  150:1,12,24
  151:23 157:21
  161:22 165:23
  186:21 200:15
  200:19 208:2
  213:12 217:1
  229:9 232:11
  238:21 246:18
  304:3
**months** 50:2
  57:4 66:6
  121:19,23
  124:3 135:18
  136:2 149:22
  151:22 242:21
**moon** 117:13
**morning** 6:2
  8:1,16,17
  45:11
**mortgage**
  174:7
**motivated**
  77:14
**move** 35:19
  124:6 140:24
**moved** 49:1
**movement**
  139:18
**multiple** 48:5
  52:9 214:11

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

[multiple - number]                                      Page 49

239:12,13
**mundane** 10:24
**municipality**
  301:10
**mute** 6:5

**n**

**n** 2:1 3:1 4:1
  5:1 6:1
**naked** 312:3
**name** 6:20 7:8
  8:2,19 9:19,22
  22:16 47:8
  66:2,6,7 126:4
  181:12 182:15
  185:7
**name's** 22:1
**named** 63:12
  64:12 71:4
  136:21 219:21
**names** 21:20
  22:23 66:9
  114:1
**national** 30:4
**nature** 29:17
  161:14
**ne** 2:6
**near** 177:12
**nearest** 238:22
**necessitate**
  246:13
**need** 8:3 35:11
  45:17 57:11
  85:15 87:18

88:4 112:13
138:16 166:20
173:8 205:14
205:14,15
217:21 300:4
302:22,23
**needed** 241:4
**needless** 37:11
  198:12
**needs** 211:2
  225:13,14
  227:20 263:3
**negligible**
  244:12,15
  245:8,18
**neutral** 246:5
**never** 15:18
  20:12,13 40:18
  65:1 95:14
  145:1 155:19
  180:10 181:24
  209:1,5 237:14
  237:14 246:21
  252:7 266:7
  277:4 287:1
  298:11
**new** 1:3 3:8
  6:16 17:11
  19:20 20:1,10
  24:10,17,19
  25:20,21,22,23
  26:22 27:14,23
  30:19 31:4,4,9
  31:10,11,12,15

32:11 73:24
74:23 83:14
87:1 88:17
91:11 93:4
95:2 112:11
123:13,14
128:17 129:13
135:1 137:7,7
137:18 139:8
140:10 141:16
142:11 143:16
144:21 147:8
147:21 151:11
171:9 173:11
197:20 212:5,6
212:9 217:18
220:13 224:1
227:11,12,12
234:14 251:5
251:17 252:6
252:19 263:20
263:20,23
264:7,7 266:5
266:7 299:13
319:9,10
**niagara** 171:8
**nine** 28:23
  114:13 135:22
**ninety** 114:8,13
**nodal** 37:3
**noise** 300:24
**nominally**
  160:12

**non** 29:21 43:8
  45:7 194:18
  198:13 204:7
  206:1,1 245:14
  249:14 289:5
**nonfunctional**
  289:3
**norm** 13:16
  245:15
**north** 2:17
  16:14
**notary** 1:18
  8:11 323:5,19
**note** 6:3 36:9
  58:8 257:13
**noted** 166:3
**notice** 125:21
**notification**
  54:7
**notion** 167:19
**nov** 5:18
  256:18
**novelty** 37:4
**november**
  63:18,20 64:15
  67:16 81:4
  82:13 239:10
  239:12 284:20
  286:3 299:8
**nuances** 45:6
**number** 6:17
  9:15 13:5,17
  14:1 49:22,23
  50:6 52:12,21

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[number - objections]**                          Page 50

| 61:21,23 62:4 | **o** | 69:10 70:14 | 192:8 197:3,13 |
|---|---|---|---|
| 62:8 129:2,19 | **o** 6:1 236:24 | 71:16 72:14,15 | 199:11,12 |
| 129:19 150:6 | **o'toole** 2:4 7:5 | 73:2 74:4 75:6 | 202:8 204:13 |
| 236:17 239:17 | 258:9 285:12 | 76:22 77:8 | 210:8,22 |
| 239:24 243:2 | **oath** 6:22 7:23 | 78:7,14 79:6 | 211:14,22 |
| 243:12 247:2,7 | **object** 32:2 | 80:13 83:24 | 212:23 214:18 |
| 247:24 248:1 | 55:3 62:18 | 85:2,12 87:9 | 216:17 218:12 |
| 255:9,22 | 82:21 83:4 | 91:14 94:12 | 218:20 219:6 |
| 257:20 258:16 | 120:22 150:5 | 97:5,23 100:6 | 220:22 224:10 |
| 259:6 265:4,4 | 175:12 189:11 | 100:21 102:5 | 226:6 227:8 |
| 265:6 275:9 | 191:10 205:21 | 102:13 106:21 | 228:11,24 |
| 285:16,23 | 207:16 230:9 | 109:3 110:11 | 238:10 241:12 |
| 291:17 294:21 | 309:17 | 111:4,16 113:8 | 244:17 252:13 |
| 306:6,8,10 | **objecting** | 116:11 120:15 | 254:13 264:3 |
| **numbered** | 196:16 | 122:7,14 123:7 | 265:23 266:15 |
| 149:7 | **objection** 11:3 | 123:21 125:4 | 266:23 269:23 |
| **numbers** 10:18 | 11:11 15:2,13 | 128:9 130:1,15 | 270:3,5,13 |
| 298:18 316:8 | 15:19 18:23 | 131:2 132:3 | 271:13,24 |
| 316:20,22 | 20:18 22:12 | 133:17,17 | 272:8,23 |
| **numerous** | 24:11,11 26:23 | 140:1,7,13,18 | 273:18 274:23 |
| 17:22 30:18 | 30:14 31:17 | 141:2,20 142:7 | 275:16,16 |
| 38:12 213:15 | 32:3,13 36:15 | 142:12 143:9 | 276:7 277:2 |
| 276:24 | 38:1,22 39:7 | 143:19 144:23 | 280:3 282:4,8 |
| **ny** 1:9 2:11,18 | 39:15,20 40:9 | 146:9 150:17 | 282:21,21 |
| 3:8,20 5:16 | 41:18 44:14 | 151:5 154:13 | 283:8 288:17 |
| 6:14 148:20 | 45:1 46:11 | 154:16 160:4 | 290:7 292:11 |
| **nyiso** 176:23,23 | 48:20 50:22 | 162:17 164:23 | 308:8 311:4 |
| 194:13 202:20 | 51:13 52:6,18 | 165:8 167:3 | 312:4 313:16 |
| 305:4,14 | 58:16 59:2,8 | 176:12 177:20 | 314:10,21 |
| **nyseg** 299:17 | 59:14,21 60:12 | 178:17 179:13 | 316:9 319:22 |
| 299:18 | 61:3 62:1 | 179:18 180:7 | **objections** 7:1 |
| | 63:24 65:3,15 | 181:2 183:2,20 | 38:7 40:16,22 |
| | 68:3,10,18,23 | 185:10,24 | 55:14 56:9,19 |
| | | 187:5,15 188:6 | 65:22 75:24 |

**[objections - okay]**                                              Page 51

81:7,15 84:14
85:22 86:4
87:16 94:18
98:12 121:8
180:17 312:16
**objective**
236:16
**objectively**
236:11
**obligation**
208:19 209:11
**obligations**
96:18 227:19
**obliged** 260:12
**obscure** 71:9
**observable**
158:2
**observe** 247:1
**observed** 192:6
**obtained** 209:5
**obvious** 260:2
260:2
**obviously** 29:9
58:1 62:8
242:22 244:7
270:23
**occasion**
319:20
**occasions** 17:23
38:16 239:3
**occur** 72:6
189:7 234:22
**occurrence**
117:13

**occurs** 140:17
**october** 82:9
135:22 285:1
**offer** 7:12
87:21 138:4
142:11,17,18
161:17 265:4,5
307:22
**offered** 61:10
134:12 140:21
142:22 144:1
306:7
**offering** 42:14
42:16 46:8,19
143:7,17
154:11,17
161:18 163:11
163:12 186:23
221:24 260:13
264:23 305:8
**offerings**
141:18
**officer** 113:24
**oh** 25:14 62:21
75:15 79:22
90:2,3 96:5
103:4,21
104:16 114:8
117:8 119:24
137:12 148:15
148:17 150:8
182:7 195:19
215:22 258:13
293:17 295:7

296:21,21
299:4 309:8,10
**okay** 6:2 8:16
9:7,14 10:1,13
15:10,17 17:14
18:13 19:6
21:6,9,16,24
22:14,21 25:14
27:9 30:9 32:8
32:21 33:3
34:15 45:10
46:5,7,7,23
47:4 52:3 53:7
54:9,19 57:20
61:17 63:1
65:11 66:15
67:6 68:15
78:4 81:19
83:1,13 88:13
89:23 90:7,13
91:8 92:2 94:5
94:5 99:20
103:7,21,24
104:4,7,16,19
105:3,24
111:11 113:15
114:8,15,21
117:9 119:22
132:12 139:3
143:24 144:9
144:15 145:11
145:22 148:8
148:15 152:23
156:13 163:16

166:23 167:13
168:14 170:17
172:3 173:7,18
177:2 178:5
179:5 182:3
184:22 188:10
188:12,19,22
189:14 190:8
190:13 192:1
195:22 196:8
199:20 206:24
207:4 210:5
211:11 212:13
213:13 215:10
215:22,23
219:23 222:19
224:5 225:17
228:18 229:2,5
229:5,6,20
230:16,20
231:2,6 234:10
234:11 235:2
237:6 239:23
245:6 253:7
255:19,23
256:8 257:18
258:14,18
261:17,18
268:23 271:20
275:10 276:22
284:11 286:10
286:10,10
287:13,14
288:4 291:4,6

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[okay - outside]**                                    Page 52

| | | | |
|---|---|---|---|
| 291:10 293:20 | **opened** 286:17 | **opinion** 40:4 | **opted** 253:20 |
| 294:5,16,23,24 | **operated** | 42:14,16 71:3 | 314:2 |
| 295:1 296:18 | 240:24 | 87:21 89:2 | **option** 265:3,6 |
| 296:23,24 | **operating** | 90:18 96:21 | 265:16 |
| 298:16,22 | 38:17 220:13 | 146:22 154:18 | **order** 52:16 |
| 299:4,5,5,7,12 | 264:16 | 161:17,18 | 74:9,13 75:16 |
| 299:21,23 | **operation** | 162:21 163:13 | 75:19 142:16 |
| 300:1,11,14 | 169:10 211:5 | 167:1,6 173:21 | 142:21 143:3 |
| 301:2,4,6,11,15 | **operational** | 174:22 177:7 | 144:6 220:21 |
| 301:21,21,24 | 292:23 | 179:1 181:12 | 221:12 222:2 |
| 302:12,17,20 | **operationaliz...** | 182:14,15 | 251:6 264:16 |
| 303:1,4,14,15 | 175:18 | 183:1 184:3,18 | 264:21 296:5,6 |
| 303:18 309:3 | **operationalize** | 185:8,9,19 | 305:19 |
| 309:12 310:15 | 153:9 155:20 | 186:23 188:1 | **ordinary** |
| 310:18 311:10 | 213:19 | 199:22 203:18 | 274:21 |
| 315:9,12,16 | **operationalized** | 204:2 226:13 | **organized** 31:2 |
| 316:2 317:7,21 | 156:5 165:15 | 252:10 258:23 | 32:10 194:21 |
| 318:2,11 319:1 | 219:8 223:4 | 259:8 267:7 | **organizes** 31:5 |
| 319:5,13,18,24 | **operationally** | 268:3 272:20 | 31:10,12,14 |
| 320:1,2 | 227:2 | 273:7 275:7 | **oriented** 62:11 |
| **omission** | **operations** | 276:5,11,19,23 | **outcome** 6:24 |
| 194:17,17 | 24:18 27:14 | 278:20 280:7 | 249:3 |
| **omitted** 229:14 | 145:7 | **opinions** 69:9 | **outline** 166:4 |
| **once** 56:14 | **opine** 20:22 | 70:18 75:12 | **outlined** 178:3 |
| 77:18 109:23 | 39:23 42:12 | 76:4 134:10 | 304:9 |
| 117:9,13 152:4 | 73:17 80:2 | 146:4 155:3 | **outset** 73:5 |
| 269:13 297:12 | 85:4 96:21 | 180:10,12 | **outside** 15:19 |
| **ones** 52:10,10 | 131:19 163:1 | 181:1 184:11 | 43:16,17 46:12 |
| 217:12 222:13 | 206:1 273:19 | 184:19,24 | 55:4 56:9 68:3 |
| 239:19,20 | 278:9 | **opportunity** | 68:23 70:14 |
| 248:13 263:22 | **opined** 80:18 | 46:8 123:24 | 71:17 73:2 |
| **online** 75:22 | **opining** 153:16 | **opposed** 253:1 | 75:6 76:22 |
| **oops** 295:8 | 157:8 200:11 | **opt** 265:15 | 78:8,14,15 |
| 302:12 | | | 79:6 80:14 |

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

[outside - paragraph]                                    Page 53

82:22 83:7
84:1 85:2 87:9
87:19 140:1
141:20 142:12
143:9 188:8
197:3 204:8
211:15 271:9
**overcharge**
70:23
**overcharged**
77:16,19,21
**overhead**
205:14 254:2
259:12 262:12
262:15 263:4
267:17 277:22
**overheads**
276:1 280:16
**overly** 44:19
**overpay** 79:21
**override** 117:5
**overrides**
205:19
**oversimplifyi...**
308:21
**overview** 89:11
**own** 163:12
203:12 206:4,4
207:11 217:21
217:21 236:13
281:5
**o'toole** 57:7,9
57:12 215:18
285:8 290:16

290:20,24
291:2,9 294:20
294:23 299:19

**p**

**p** 2:1,1 3:1,1
4:1,1 6:1
236:24
**p.m.** 139:4
188:20 231:4,7
284:9,12
315:17 318:12
320:5,11
**page** 5:9 58:18
88:9 103:19
104:6,13,24
105:2,4,6
106:13 114:18
115:1,11 117:3
124:11 128:14
135:6 136:9,10
136:10 147:4
147:20 149:8
150:8,10
156:12 164:5
190:10 193:22
219:14 234:8
238:23 239:23
240:2 242:2
249:19 257:6,9
257:20 258:12
261:16,22
279:12 284:18
286:12 287:19

287:21,24
288:1,2,5
290:22 292:8,9
292:16 293:13
293:17,18
294:6,8,18,24
295:2 296:18
297:14 298:19
298:23,24
299:8 301:8,21
301:22 304:1
310:16 311:10
318:16 321:4
**pages** 1:1 62:24
65:5 90:13
92:8 103:17
111:20,20
113:11 114:4
129:12 135:7,7
149:7 287:22
292:14
**paid** 52:10,11
54:7,7 55:13
158:23 223:19
314:7
**palikovic** 3:6
7:16,18
**pamphlet** 88:5
**paper** 58:24
96:13 209:8
**papers** 240:22
316:6,13
**paragraph**
39:1,4 63:10

63:11,19 64:11
64:11,15,20,23
66:20,21 67:11
80:23 82:4
88:9,14 91:8
91:19 92:3,10
92:15,20 93:16
93:20 94:7,24
99:20 100:16
104:21 108:7
110:21 111:14
112:12 116:4,9
116:23 119:8
123:20 124:8
124:11,16
125:5 130:10
130:24 136:6
136:10 146:16
146:18 147:19
156:11,15
163:17 164:3,8
164:20 166:17
169:3 174:22
190:10,14
193:23 198:17
202:24 203:1
206:7 224:17
226:17 227:7
229:6 234:8
238:18 249:23
253:9 257:3
279:7 304:1
318:15 319:6

Edo Macan                                 December 17, 2025
Brous v. Eligo Energy, LLC

[paragraphs - percent]                                    Page 54

| | | | |
|---|---|---|---|
| **paragraphs** | 109:12 110:18 | **passwords** | 96:13 98:16,24 |
| 229:11 | 111:23 124:7 | 241:24 | 99:7,10,21 |
| **parameters** | 125:1 133:4 | **pause** 197:10 | 101:15,21 |
| 156:6 213:17 | 140:16 151:2 | 197:15 199:9 | 107:15 109:7,7 |
| 238:23 240:2 | 166:20 171:6 | 200:1 | 109:12 125:15 |
| **paraphrase** | 171:18 179:8 | **pay** 53:12 67:3 | 126:5 |
| 265:14 | 190:9 234:1 | 71:24 205:14 | **perceive** 50:20 |
| **paraphrasing** | 238:18 253:6 | 205:15 211:3 | 208:7 308:12 |
| 265:10 | 288:8 289:11 | 234:4,13 | **percent** 27:22 |
| **part** 16:18 37:9 | 310:4 312:19 | 235:16 246:2 | 91:7 96:6,7 |
| 77:14 79:24 | 313:12 | 254:2 259:12 | 142:2 146:1 |
| 89:24 105:16 | **particularly** | 263:3 | 217:14,14,22 |
| 106:8 107:3,7 | 10:16 124:7 | **paying** 71:22 | 222:1,3 223:10 |
| 171:18 182:14 | **parties** 6:7 | **payment** 53:24 | 250:17,22 |
| 187:11 191:15 | 62:14 63:3 | 246:12 | 251:6,18 252:4 |
| 193:6 197:21 | 81:23 120:4 | **pearson** 2:15 | 252:5,6,10,16 |
| 204:1 209:6 | 139:2 155:14 | 7:10 | 252:19,21,24 |
| 213:23,24 | 188:18 231:5 | **pedotto** 5:12 | 253:3,12,18,21 |
| 223:6,14,14,15 | 284:10 315:15 | 113:16,20,23 | 254:6,10,17 |
| 225:10 229:16 | 318:8 323:16 | 115:3,17 116:2 | 255:2,5,8,21 |
| 229:16 251:5 | **parting** 202:13 | 116:6 117:4,21 | 256:3,3,4,5,10 |
| 262:11 263:12 | **parts** 31:3 80:6 | 119:7 | 256:13 257:2 |
| 267:22,22,23 | 195:24 | **pedotto's** 114:5 | 257:22 258:4,8 |
| 267:23 271:2 | **party** 6:23 | 115:20 116:20 | 258:21,24 |
| 271:23 276:13 | 234:18 235:19 | 121:10,11 | 259:3,5,7,9,18 |
| 293:21 | **pass** 198:21 | 123:18 | 260:20 261:15 |
| **participants** | 272:21 | **peers** 36:22 | 262:10,19,22 |
| 19:13,14 | **passed** 68:22 | **pending** 35:2 | 262:23 263:3 |
| **particular** 11:2 | 70:6 | 45:13 112:14 | 264:7 265:6 |
| 17:11 31:4,24 | **passive** 63:23 | 206:18 283:14 | 266:7,21 267:1 |
| 43:13 44:5,20 | 64:2,9,18,22 | 284:3 | 267:3,3,4,9 |
| 48:16 62:10 | 66:20 | **people** 50:21,24 | 268:4 269:5,21 |
| 89:5,18 90:18 | **password** | 51:1 74:17 | 270:11 271:11 |
| 90:24 92:8,16 | 241:11,15,19 | 93:5 95:19 | 272:19 273:15 |

800.808.4958                                              770.343.9696

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[percent - planet]**                                    Page 55

277:15 278:5,6
278:10,10
279:9,19,21,22
279:23 280:2
280:12,13,24
281:6,9,11,21
283:3 288:9
294:7,7 295:16
295:16 296:3
308:3,4,13
313:6,7,21
314:2 319:11
**percentage**
141:7 142:22
144:3,6 221:4
307:1 312:20
313:20
**perception**
174:10
**perfectly** 76:19
81:13 251:14
**perform** 37:16
273:24 274:10
**performance**
170:10
**performed** 53:3
53:5 55:17
135:11
**performing**
55:19 238:14
**performs** 208:6
**period** 76:16
83:20 133:15
142:15,16

147:23 153:24
224:19 236:3
236:10 243:20
246:10,11,18
266:12,17,18
266:20 297:6
310:21 312:20
313:19
**periodically**
147:24 150:2
150:13 151:1
151:24 152:8
154:1 232:12
**permanently**
25:21
**permitted** 34:6
**person** 10:23
13:2,13 89:2
97:18 118:5
188:2
**person's** 9:19
**personal** 28:6
**personally** 51:9
53:2,8,9 54:14
**personnel**
262:16
**perspective**
156:23
**pertain** 225:17
278:7
**pertaining**
311:12
**pertains** 121:22
151:20 235:4

310:11
**pgs** 5:11,12
103:9 113:20
**phd** 36:23
37:12,15 38:11
**phone** 3:4,5 4:6
6:6 7:14 9:16
47:8 189:22
**phrase** 164:11
166:18 171:19
179:10 180:15
182:18 183:13
185:19 186:9
186:10 187:3
192:2 195:7,8
195:12,22
198:18 199:3
199:10 200:2
202:5 212:1
276:18
**phrased** 63:23
216:22
**physical** 172:15
**physically** 29:2
189:18,18,19
189:20,21
**pick** 6:4 299:23
313:21
**piece** 107:20,21
272:6 302:15
303:16
**pieces** 172:5
249:4

**pinpointing**
261:20
**place** 6:7 26:11
26:15 125:19
195:12,23
248:18 297:8
**plains** 2:18
**plaintiff** 7:15
7:20 15:24
20:20,21 21:11
64:13,16 66:8
71:4,11 72:18
73:1 78:6 82:5
84:3 182:17
284:20
**plaintiffs** 1:7
2:22 3:12 7:10
7:18 14:11
22:4,10 47:17
51:8,22 53:20
59:11,19 60:9
60:24 61:18
63:13 66:22
69:16 78:13
84:5 105:7
135:3,9 136:21
147:6 155:4
164:21 166:4
167:1 189:4,6
214:3 219:21
238:13,15
248:3 307:3
**planet** 268:22

Edo Macan
Brous v. Eligo Energy, LLC

December 17, 2025

[plans - powwr]

Page 56

**plans** 138:4
264:1 267:9
**plants** 27:20
**plausible** 69:6
201:5 254:24
**play** 244:20
**played** 296:8
**playing** 162:5
**please** 6:3,5 7:1
7:3,22 8:5,19
30:15 31:18
47:7 75:14
77:1 85:6 90:9
91:16 113:18
146:11 150:19
183:4 187:8
188:15 195:16
214:20 215:2
215:23 234:6
244:22 245:1
257:10,10
270:5 293:16
298:19 301:10
301:12 314:12
318:5
**plenty** 134:9
254:4
**plotted** 310:20
314:6
**plotting** 310:1
**plus** 27:16
54:22 116:21
161:11,12,14
181:16 182:21

183:16 185:21
192:24 213:8,9
306:8,11,12
**point** 16:4
40:19 43:15
45:12,18 46:19
52:24 54:8
62:22,22 72:9
72:12 86:15
90:9 102:22
109:14 121:2
124:1 127:22
146:11,12
147:4 159:3,4
159:9 162:13
164:1 192:9
209:16 222:2
229:12 234:6
246:8 263:14
264:10 267:1,2
**pointed** 90:19
113:11 120:19
295:21
**pointing** 135:5
**points** 144:6
208:5 240:1
280:14,17
**policeman**
277:17
**policies** 5:17
256:17
**policy** 5:13,14
95:14 124:18
125:2,8,18

126:12 127:8
127:11 130:11
131:7 132:1,1
132:23 133:2
254:8,12
257:20 318:19
318:21 319:3
319:14,15,19
**portion** 93:17
94:8 124:7
**portions** 23:17
**position** 112:16
117:22 122:22
155:17 247:7
268:7
**positioned**
112:22
**positions** 13:13
16:19
**positive** 243:2
243:11 247:2
247:23 248:1
**possess** 41:1
**possession**
317:9
**possibility**
81:11,17 89:23
174:23 277:20
**possible** 79:12
83:21 84:4,19
88:1 126:14
260:18,22
317:24

**postdates** 132:1
**potentially**
194:2 233:10
**power** 16:5,8
16:10,14,15,23
17:2 19:9,24
27:13,18 30:5
30:10,11,19,21
30:24 31:2,11
31:15,21,22
32:12,14,15,15
32:18 37:4,6
88:1 145:13,16
168:8 171:9
175:2 176:22
181:15 182:20
183:15 185:21
194:12 202:17
213:16 229:8
234:22 246:3,7
**powered**
300:21
**powwr** 159:2
159:10,13
160:15 166:15
234:2,17,18,23
234:24 235:3
235:18,18
236:13,21,24
237:6,10,18
238:4,4,6,13,20
239:4,18 240:2
241:9 242:5,9
242:11,17

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[powwr - price]**                                Page 57

243:2 244:3
246:16 248:12
248:19 284:15
284:24 286:2,2
287:17 289:7
289:17,24
297:13,19,22
298:5 315:20
315:22
**practical**  76:11
**practically**
135:23
**practice**  42:2
125:19 203:10
**practices**  43:16
146:6
**practicing**
11:21 33:8
36:18 38:11
**preceived**
167:19
**precise**  186:20
187:1,4,18
258:6
**predates**  132:8
171:4
**predominant**
141:12
**predominantly**
26:14 32:14
151:21
**preferred**
156:24 157:9
158:5,8,9,15

**preparation**
190:3
**prepare**  188:22
189:5,24 192:2
**preparing**
238:8
**prescription**
9:1
**present**  4:3 7:2
**presently**  321:4
**preserved**
248:18 317:3
**pressing**  108:6
**presumably**
72:20 125:21
248:14 259:12
305:7
**presume**  77:16
**presumed**
145:20
**presumption**
72:8 79:20
**pretend**  42:12
**pretending**
45:5
**pretty**  17:9
26:19 29:18
55:22 95:3
145:9 152:14
170:3 179:24
217:16 230:12
230:16 234:21
236:1,1,6,6
238:7 241:8

243:15 278:15
293:6 295:16
296:12 298:3
305:12 308:15
316:14
**prevailing**
49:15 168:1
304:4,7,16
306:4 307:7
310:3 312:13
313:13 314:15
**prevent**  86:17
**previous**  23:1,3
23:5 30:9
96:24 293:10
**previously**
136:13 166:3
**price**  16:14,15
37:6 71:12
88:17 91:11
93:4,10 95:2
96:3 98:10
100:1,3,17
101:21,23,23
102:11 110:7
112:10 117:10
123:13 135:12
138:7,11 140:5
140:21 145:23
146:7,19,24
147:3,11,16
149:17,20
150:16,23
151:3,8,20,21

151:21 152:3
152:12,19
153:2,4 156:7
157:22 160:11
160:21 161:4,5
161:23 162:3
163:12 166:1
168:5 186:11
193:16 195:14
196:1,1,12
198:19,23
199:3,23,24
200:2 201:6,9
201:14,18
203:2,7,12,16
203:19,20
204:5,12,23
205:6,20 206:9
207:10,12
208:4,8 210:6
210:16,20
211:20,23
212:1,5,6,10
213:7,8,9
214:16,23
215:7,10 216:5
216:9 217:3
218:6,18 219:2
220:5,10
221:17 222:20
223:1,23
225:18,18,19
225:21 226:21
228:5,8,10,16

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

**[price - procurement]**                                Page 58

230:14 231:17
231:19,20,24
231:24 232:2,4
232:10,22
233:16,22
235:4 250:19
260:13 265:3
274:11 278:14
294:17 297:5
310:7,20
311:15,17,18
311:20 312:13
313:13,14,15
**priced**  209:3
244:8
**prices**  17:15,18
48:22 124:19
125:9 138:5
149:12 153:13
168:1 200:8
223:23 224:3
226:2 236:19
252:22 278:14
304:4,8 314:6
314:7 318:22
**pricing**  37:4
71:9 105:10
108:18 147:9
152:11 153:4
156:6,8 157:21
160:15,20
161:22 162:1,4
162:16 164:9
164:12,16

165:6,24 166:8
166:18 167:8,8
167:9,14,21,22
167:22 168:5,6
168:9,16 169:6
169:10,10,12
169:14,16,16
169:21 170:10
171:20 172:11
173:22 174:4,8
174:10,13,23
175:4,4,23,24
176:9 177:8,16
177:24 178:1
186:11 187:3,8
187:14 190:19
190:23 192:14
192:23 193:5
193:16 199:1
201:17 202:6
202:16 204:8
208:3 211:12
211:13 212:17
217:2,8 223:15
223:22 224:7,9
224:14,18
225:5,6,8,11,17
225:24 228:15
228:19,23
229:8,18,24
230:6,13
238:19 239:10
239:12 242:18
243:15 245:20

245:23 246:5
295:12 297:7
**principle**
211:10,11
212:8,14 218:7
219:4 269:14
**principles**  41:7
41:10,17
212:19 218:19
219:4
**print**  127:24
**printout**
127:24
**prior**  19:7 24:1
78:23 112:15
121:4 136:4
142:21 163:8
199:12 221:11
224:11 235:15
236:20 238:21
264:16 284:24
**prism**  164:2
**private**  6:5
**probably**  12:13
12:17 26:12
70:7,7 71:20
74:17 121:18
121:23 141:3
245:14 249:14
250:24 252:2
273:23 312:21
**problem**  169:9
294:13

**procedural**
190:6
**procedure**  1:16
**procedures**
5:17 256:18
292:1
**proceed**  7:24
203:4
**proceeding**  7:1
8:3 14:16
268:10
**process**  18:4,5
51:19 54:18
89:6 91:2 95:9
95:9 98:14
101:2 102:21
106:6,17
107:12,17
108:4,13,16
109:11,23
112:22 115:5,8
115:13 116:3
130:7 190:6
208:5 251:3
273:9 277:24
**processes**  93:10
**procure**  220:13
225:13 236:9
314:2
**procured**
221:24 236:15
**procurement**
19:18 20:9
96:6 159:10

Edo Macan                    December 17, 2025
Brous v. Eligo Energy, LLC

169:14,15
202:22 219:19
229:8,11,17
250:2 260:10
262:2 284:19
297:14 298:7
**procuring**
176:20 181:15
182:20 183:15
185:21 192:15
194:11 234:22
264:17 265:21
267:13
**produced**
126:24 145:20
170:18 172:16
239:11 240:21
248:13 289:19
289:20 295:15
316:13
**producing**
146:2
**product** 141:18
174:13 211:12
223:10 237:15
243:14,14
244:7 245:20
252:17 260:13
299:12 307:12
307:21 308:18
**productive**
305:20
**products**
242:19 244:7

251:19 252:7
252:12 266:8
**professional**
34:16 37:20
152:16 190:24
194:18 267:17
274:22 323:4
**professionals**
262:16
**professor** 70:13
71:5
**proffered**
188:4
**proficient**
293:6
**profile** 299:21
299:23
**profit** 210:4
215:8 217:6,22
253:22 259:13
260:20 269:16
281:8
**profitability**
126:17,22
**profitable**
95:17 126:18
211:2,2,3,5
**profits** 56:1
**program** 74:8
95:24 96:4
**programming**
288:23
**project** 141:7

**promising**
162:7
**promotion** 88:3
**proposed** 117:6
213:18
**proposition**
169:19
**protect** 260:7
**protected**
241:11,15
**protocol**
248:24
**provide** 122:24
173:20 223:8
273:3 289:10
289:11
**provided** 10:17
84:3 89:9
131:12 142:2
154:23,24
156:1,2 162:24
165:11 175:15
177:11 180:10
209:1 214:4
221:22 223:5
241:20,23
247:16,18
249:5,15 274:3
289:4,12
291:14,14
**provider** 71:23
**providing** 30:2
152:7 180:11

**provisions** 1:14
**proxy** 135:13
**prudent** 260:14
277:11
**pry** 28:9
**psc** 252:6,19
263:20,24
266:5,7
**pse** 217:18
**public** 1:18
8:11 41:4
74:11 250:23
251:17 268:17
323:5
**pull** 285:7,11
297:22
**pulled** 254:7
286:15 309:15
**purchase** 19:9
145:4,6
**purchased**
144:18 145:2
**purchasing**
19:24 144:22
202:17
**purely** 205:11
**purpose** 46:16
175:8 249:9,9
287:3
**purposes** 87:23
137:10 153:1
229:7 231:14
304:8 312:9

Edo Macan                    December 17, 2025
Brous v. Eligo Energy, LLC

**[pursuant - ran]**                              Page 60

| | | | |
|---|---|---|---|
| **pursuant** 1:14 289:9 | **quantum** 23:11 179:22 | 201:11,24 202:13 205:24 | 292:18 303:23 317:20,23 |
| **pursue** 255:6 | **question** 9:11 | 206:5,17,20,23 | **quick** 88:10 |
| **pursued** 255:2 255:6 | 11:5 15:5,8,10 18:14 19:2 | 207:2 216:12 220:8 230:2 | 119:19 |
| **pursuing** 269:5 280:13 | 21:7 33:14,16 33:19 34:6,7,8 | 244:23 247:6 256:9 264:10 | **quit** 69:23 72:10 86:23 |
| **put** 50:16 73:11 89:3 90:1 91:5 | 34:9,17,20 35:1,9,13,17,18 | 269:8,9 270:15 270:17,21 | **quite** 12:10 21:17 50:12 |
| 95:22 98:22 175:20 198:7 | 38:4 39:23 43:22 44:1 | 271:1,4,6 272:4 273:2,9 | 67:2 274:8 304:19 315:8 |
| 272:13 290:22 | 46:4 47:2 50:4 55:8 71:7 | 273:11 274:17 275:2,4 276:8 | **quotation** 90:1 93:13,22 172:1 |
| **putting** 58:24 85:20 100:1 | 73:22 75:15 77:2 79:11 | 279:14,24 282:17 283:14 | **quotations** 164:9 |
| 213:24 | 86:16 91:17 105:6,8,13 | 283:15,16,19 283:23 284:3 | **quote** 93:17 105:7,17,22 |
| **q** | 110:14,18 112:14,15 | 290:3 291:16 292:13 293:11 | 106:8,10 168:17 |
| **qualifications** 40:20 | 115:2,11 116:14 117:21 | 295:3 296:14 304:12,23 | **quoted** 89:19 93:1 94:8 |
| **qualified** 39:12 39:18 40:7,14 | 118:10,12,15 118:17,20,24 | 313:11 317:12 | 126:8 170:1 |
| 71:10 155:17 | 119:5,11,14 121:2,17 | **question's** 45:13 | **r** |
| **qualify** 108:16 | 131:16 132:20 | **questioning** | **r** 2:1 3:1 4:1 6:1 |
| **quality** 10:24 249:1 | 135:16 136:4,8 136:19 150:21 | 111:22 284:5 | 133:21 237:1 321:1,1 322:1 |
| **quantification** 198:7 213:17 | 161:15 162:17 166:16 173:4 | **questions** 9:9 32:22 45:10 | 323:1 |
| **quantify** 193:20 214:12 | 175:13 177:9 180:14 187:23 | 54:14,18 67:6 69:2 70:4 | **raise** 8:5 |
| 214:13 272:12 | 189:20 191:20 199:16,17 | 73:18 120:8 131:15 177:3 | **raising** 118:21 |
| **quantifying** 201:16 274:11 | | 185:15 190:8 282:15 284:1 | **ramsey** 66:2,10 78:12 |
| **quantitatively** 193:11 | | | **ran** 97:2 126:16 |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[rarely - rates]**                                              Page 61

| | | | |
|---|---|---|---|
| **rarely**  190:18 | 135:13 136:5,6 | 255:3 259:13 | **rates**   18:5,6 |
| **rate**   5:13,14 | 136:11,12,14 | 259:14,16 | 44:10,18,21 |
| 17:22 18:1 | 136:17 138:4 | 260:7,11,13,16 | 47:22 48:13,17 |
| 47:5,11,16,18 | 146:5 147:9,23 | 260:24 263:1 | 49:1,10 50:11 |
| 47:21 48:2,3,7 | 147:24 149:23 | 263:18,24 | 53:4 69:18 |
| 48:19 49:4,8 | 150:2,13,24 | 264:1,8,11,22 | 71:19 72:20 |
| 49:14,14,15,17 | 151:12,15,23 | 265:22 266:2,7 | 73:23,24 74:1 |
| 49:20 50:1,2 | 152:5,6 153:24 | 266:8 267:9 | 74:14,19,23 |
| 50:11,17,18,20 | 154:1 158:1 | 269:1,1,6 | 75:4,22 76:5 |
| 67:13 77:6,6 | 159:7,12 | 273:5 275:21 | 76:19,20 79:14 |
| 83:22,23 85:1 | 165:22,23 | 275:22 277:11 | 85:11,20 86:3 |
| 94:9 96:7 97:2 | 166:6 181:14 | 277:13,14,15 | 86:3,10,11,18 |
| 97:20 98:7 | 181:18 182:19 | 278:5 280:11 | 88:16 91:10 |
| 99:22 102:21 | 182:23 183:14 | 280:12,13,22 | 93:3,6,7 95:1,9 |
| 105:10 106:5 | 183:18 200:18 | 281:12,18,21 | 95:12,12,15,17 |
| 106:18 107:16 | 203:10 204:3 | 281:22 282:1,3 | 95:20 96:2,22 |
| 108:24 113:5 | 206:8 208:21 | 282:18 287:24 | 98:9,17,24 |
| 115:6,8 116:3 | 209:10 217:19 | 288:1,6,9 | 99:12,15,24 |
| 118:7 122:2,13 | 217:20,23 | 290:4 292:15 | 101:2,13,14,16 |
| 124:12,12,17 | 219:9 232:12 | 293:12 295:3 | 101:16,20,22 |
| 124:21 125:2,2 | 232:15,16,20 | 295:17 296:3 | 102:1,18 105:8 |
| 125:7,10,17,17 | 238:21 242:5,8 | 296:16 299:6,7 | 105:9 107:15 |
| 125:17 126:17 | 242:14,17,24 | 299:21 304:2,3 | 107:16 108:3,4 |
| 126:19,20,21 | 243:2,10,14,14 | 304:16 306:5,7 | 108:17 109:2,8 |
| 127:1,8,11 | 243:23 244:3 | 306:10,13 | 109:10 110:6 |
| 128:6 129:8,16 | 245:17 246:16 | 307:7 310:1,2 | 112:9,23 115:5 |
| 129:24 130:10 | 246:17 247:2 | 310:3,19,19 | 115:5,14,22 |
| 130:11,22 | 247:23 250:19 | 311:14 313:2,6 | 116:7,8 117:6 |
| 131:7,7,10,18 | 251:8,11,12,18 | 314:16 318:19 | 120:13 121:7 |
| 131:23,24 | 251:21 252:7 | 318:21,24 | 123:12 125:18 |
| 132:1,16,18,18 | 252:11,17 | 319:10,12 | 125:20,23 |
| 132:22 133:14 | 253:13,22,24 | **ratemaking** | 126:13 128:1 |
| 133:22 134:3 | 253:24 254:3,5 | 268:10 | 134:24 135:10 |
| 134:18 135:8 | 254:21,21 | | 135:15,18 |

| | | | |
|---|---|---|---|
| 136:11 142:18 | **read** 33:24 | **ready** 77:10 | 172:21 173:12 |
| 147:24 159:16 | 66:10,16 88:11 | 173:5 188:10 | 174:11 183:21 |
| 161:21,21 | 89:8,8,14,19,20 | **real** 31:7 32:16 | 184:16 195:3 |
| 162:8 185:21 | 89:24 90:2,2,8 | 202:21 227:12 | 198:10 199:9 |
| 194:14 200:14 | 90:14,14 91:21 | **realistic** 268:14 | 199:17 225:4 |
| 213:11 216:23 | 92:11 95:6,7 | **reality** 214:1 | 241:1 247:5,19 |
| 221:24 229:9 | 99:5 105:3 | **realize** 48:24 | 247:19 248:8 |
| 232:23,23,24 | 108:9 111:21 | **realized** 69:15 | 249:11 250:23 |
| 233:1 235:11 | 111:24 112:12 | 69:22 72:9,13 | 260:5 261:1 |
| 235:14 240:24 | 114:19 117:3 | 77:18 | 282:11 291:12 |
| 243:17 244:9 | 120:20 121:18 | **really** 18:8,10 | 296:10 297:6,9 |
| 246:14 247:8 | 121:20 123:24 | 21:4 24:21,21 | 301:17 303:21 |
| 260:10 264:14 | 124:2 125:13 | 25:5 26:10 | 304:10 308:14 |
| 264:23 265:2,4 | 126:6,8 134:13 | 27:5 28:7 | **reason** 8:21 |
| 265:5,20 | 150:6 151:8 | 29:21 45:22 | 37:1,8 49:11 |
| 297:11 305:6,8 | 168:18 172:3,5 | 47:2 50:23 | 68:2 73:8 |
| 313:3 314:17 | 178:12,15 | 51:10 62:3,12 | 77:12 78:24 |
| **rather** 159:18 | 182:7,12 183:5 | 64:5 65:8 66:6 | 98:16 101:12 |
| 236:17 245:15 | 183:5 189:2,2 | 66:23 67:4 | 106:4 113:3,4 |
| 247:17 312:23 | 201:23 202:1,2 | 70:8 71:6,12 | 126:2 128:7 |
| 312:23 | 202:5 204:6 | 80:3,7,18 | 198:12 254:23 |
| **rating** 200:19 | 215:7 244:24 | 89:21 93:1 | 260:5 263:16 |
| **rational** 315:7 | 245:3 249:20 | 98:22 100:9 | 277:7 295:5 |
| **rationale** 313:9 | 254:18 255:10 | 101:18 106:24 | 315:21 |
| **rationales** | 318:18 321:4 | 106:24 109:17 | **reasonable** |
| 263:21 | 322:3 | 110:1,13,15 | 69:20 143:13 |
| **rationally** | **readily** 249:11 | 111:23 122:20 | 143:15 188:2 |
| 263:14 | **reading** 99:4 | 124:3 126:11 | 217:10,12 |
| **reach** 167:14 | 101:1 102:16 | 126:12 127:16 | 250:1,12,13 |
| 176:9 190:21 | 152:15 153:21 | 142:20 152:23 | 253:12 259:10 |
| 283:3 | 157:1,19 158:6 | 153:5 155:13 | 265:20 274:20 |
| **reaching** 200:1 | 213:7 | 163:7 170:14 | 275:8 276:5,18 |
| 258:3 | **reads** 321:4 | 170:16,19 | 276:19,22 |
| | | 171:14,21 | 278:21 279:19 |

Edo Macan                    December 17, 2025
Brous v. Eligo Energy, LLC

280:1,20 283:6
319:17
**reasonableness**
96:22
**reasoning**  78:1
78:4 79:3 84:2
98:15 107:10
244:21 259:11
**reasons**  28:6,6
28:9 34:24
68:12 139:22
140:5
**rebuttal**  189:2
**rec**  144:11,17
144:21,22
145:2,4,12,14
145:14 221:5
222:1 225:16
226:24
**recall**  13:4 14:1
17:23 18:10
20:3 23:7,21
24:14,21 25:8
25:18 27:7,21
61:20,22 62:4
65:9,24 66:6,7
66:23 69:6,14
73:7 75:8,9
78:18,21 80:4
80:8 82:23
83:6,12 89:5
89:21,21 90:23
97:7 101:1,11
112:18 117:7

125:12 126:3
127:2,2 130:6
132:6 134:20
134:20,22
140:19 154:8
168:19 170:16
170:21 171:23
171:23 172:6,7
172:18,22
173:12 179:17
180:19,23
181:6,7 183:22
184:2 192:21
199:15 237:4
241:14 246:19
246:23 248:8
254:16,16
256:1,14 319:1
**recalling**
171:14 173:15
**receive**  51:23
53:9 182:9
**received**  182:2
**receives**  53:12
**recent**  74:12
**recently**  48:1
**recognize**  58:4
**recollect**  21:20
**recollection**
19:16 21:19
52:4 57:2
69:13 74:11
97:17 98:3
101:1 102:16

109:16 136:7
136:16 171:17
179:4 181:9
243:8 245:12
247:10 319:6
**recollections**
242:20
**reconcile**
206:13,20
207:13
**reconsider**
131:1
**record**  6:8 7:4
8:19 9:20 19:8
26:12 36:10
46:6 65:4,16
78:10,16 79:7
81:22,23 82:1
83:5,11 91:21
93:9 97:24
100:22 102:14
103:16 120:3,4
120:6 127:19
132:4 139:2,4
142:8 145:12
173:8 186:1
187:16 188:7
188:17,18,20
224:13 231:4,5
231:7 240:19
245:3 254:14
257:13 258:9
264:4 265:24
272:1,3,4

274:16 277:6
284:9,10,12
285:12,16
286:22 287:4
296:6 315:14
315:15,17
318:4,7,8,12
320:4 322:6
323:13
**recorded**  6:10
**recording**  6:6
**records**  236:13
249:8 269:3
289:22
**recover**  268:3
**recreate**  289:2
292:22 298:8
**recross**  5:2
**recs**  144:3,9
146:1 220:2,3
220:5,9,14
221:1,1,3,9,9
221:11,19,19
221:21 222:19
222:24 223:8
223:13,20
224:8,21 225:9
225:18,18
226:4,11,15,21
227:5,10,12,15
227:16,22
228:6,6 229:10
229:14,15,21
229:23 264:18

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[recs - remember]**                                              Page 64

265:21 267:13
267:13 297:18
308:15,17
**red** 60:1 135:7
**redacted**
241:16
**redirect** 5:2
**refer** 30:18
77:1 147:10
151:14 165:18
169:21 174:23
226:5 233:9
249:18
**reference** 88:21
99:21 128:17
146:24 164:11
176:11 192:14
192:18 194:6
196:15 197:12
201:10 202:6
203:1 218:18
222:24 231:19
232:2,16 233:1
254:6 309:16
**referenced**
196:2,2
**references**
173:14
**referencing**
256:11
**referred** 115:8
163:8 232:15
234:17 257:3

**referring** 97:14
133:2 147:18
151:7,7 161:3
215:11 220:20
221:1 226:16
227:6 255:6
263:22
**refers** 187:14
194:7 199:15
199:23 233:6
**reflect** 128:5
129:23 130:22
131:23 242:10
**reflected** 242:9
261:15 275:13
**refresh** 136:7
136:16 181:9
319:6
**refreshing**
136:19
**refused** 180:24
**refusing** 15:7
**regard** 19:24
41:9,14,15
111:13
**regulation** 37:3
221:12 227:23
**regulations**
220:15
**regulator** 30:4
217:17 251:2
262:19 264:7
264:22 268:8
268:19,20

277:17,23
278:3 280:7,10
281:4
**regulators**
277:9,10
**regulatory**
12:15,24 13:3
13:9 17:24
29:20 30:2,4
38:15 43:17
48:11,12,13,19
203:15 208:12
209:18 220:19
250:24
**reiterate**
249:12
**relate** 30:6
240:1
**related** 6:22
10:7 18:4,5,9
19:17 64:12
**relates** 82:5
161:7 171:20
233:6
**relating** 201:8
**relative** 313:1
**relatively** 28:5
**relevant** 70:1
71:2 90:19
202:19 236:10
238:14 249:7
266:12,20
279:10 307:11

**reliable** 236:2
237:17,21
289:8,17 319:9
**relied** 65:7
127:21 239:22
248:12 258:3
**rely** 89:10
123:5 180:24
292:6
**relying** 72:23
169:18 289:16
**remain** 68:16
80:11 81:3,12
294:15
**remained** 68:9
**remains** 267:7
**remark** 209:19
**remember**
13:16 16:12
23:8 25:5
56:13 66:18
70:8,10 89:18
97:11 99:3,4
102:17 117:24
121:20 122:4
124:4 169:23
169:24 180:21
182:1 184:16
192:16,20
193:3,6 196:9
243:4 246:21
251:20 252:3
258:6,8 266:24
298:5

Edo Macan                    December 17, 2025
Brous v. Eligo Energy, LLC

**[reminder - requirement]**                    Page 65

**reminder** 9:8
117:18
**rendering**
177:7 184:19
**renewable**
142:4,19,23
143:8,18 144:1
144:12 145:21
146:3 265:8
266:13,22
307:21,23
308:4
**repeat** 55:7
75:14 77:1
85:6 116:14
150:20,21
195:16 203:24
207:1 214:20
215:2,3 244:22
270:5 293:5
314:12
**repeatedly**
282:16
**repeating**
237:23
**rephrase** 11:4
18:14 30:15
31:18 43:21
91:16 199:21
273:2
**replaced**
314:15
**reply** 106:10

**report** 5:10,15
5:19 10:21
11:9 12:14,14
13:10 14:21
15:18,20 23:13
23:18,20 30:12
30:17,22 39:1
43:14 55:4
56:10 57:6,15
57:19 58:5,8
58:14,21,22
59:9,13,16,19
59:23 60:10,20
61:2,19 62:8
62:10,12 66:22
68:4,24 70:19
71:17 73:3
75:7 76:15
82:3 88:9 94:7
94:21 95:10
97:9,10,18
98:20 100:2
101:5 102:20
104:22 105:14
106:9,11
107:22 111:1
119:9 123:6,15
124:7 130:8,24
132:21 136:22
140:2 144:5,18
146:7,12
147:10,13
148:14,19
149:1 151:4,9

151:14,15
153:1 154:22
154:23 157:4
159:10 163:18
164:15 165:18
169:3 179:2,6
180:4,11,14
181:23 183:19
183:23 189:2,2
189:3 190:2,9
204:2 210:23
215:19 216:6
221:3 224:17
231:15 238:8
238:20,24
239:2,4 242:2
257:11,14
259:19 279:1,3
284:18 288:2
289:14 290:1
296:8 304:9
307:9 309:5,15
310:13 312:21
318:16
**reporter** 1:18
7:22 8:1,13
103:6 113:19
114:10 127:5
138:23 148:10
245:4,7 255:12
255:14,18,20
256:16 300:9
300:17 301:1,3
302:11,15,18

302:21 303:1
303:16,19
309:1 320:2
323:4
**reports** 30:3
38:12,14
166:15 234:24
234:24 235:3
235:18,18,19
236:13 238:14
248:12
**represent**
78:10 103:4,12
128:3
**representation**
73:3 131:22
**representing**
2:10,21 3:11
3:19 6:20 7:10
22:9
**represents**
156:24 250:17
**reproduced**
309:16
**request** 46:18
289:10
**requested**
240:21
**require** 241:19
**required** 55:5
56:10 221:12
**requirement**
142:20 220:19

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[requirements - richards]**                           Page 66

| | | | |
|---|---|---|---|
| **requirements** 221:5 | **respect** 118:6 177:14 237:24 249:18 269:12 | **retail** 17:15,18 18:5,20 136:23 137:2,19,21 139:7,13 168:8 169:20 174:19 174:24 176:11 191:8,21,21 192:3,5,13,14 192:17,21 193:5 194:12 200:8 201:4 202:15 205:12 212:4,6,10 213:16 215:18 225:6,7,21 226:2 227:17 231:20 232:3 232:17 233:2 304:4,8 307:17 | 116:3 121:14 121:16 132:17 185:6,8 203:5 241:9 |
| **requires** 37:17 273:16 | **respects** 275:9 | | **reviewed** 65:6 73:5 80:6 113:15 116:6 116:13,15 119:7 120:11 120:18 121:10 121:11 123:5 123:19 124:3 127:22 154:5 191:14 192:6 238:13 249:1 |
| **reread** 109:18 | **respond** 27:1 110:16 | | |
| **research** 11:17 11:19 37:2,10 171:7 172:16 237:20,21 | **responding** 79:11 172:10 | | |
| **resell** 168:11 175:3 | **response** 43:6 46:3,8 99:16 157:21 160:19 161:22 165:23 170:9 200:15 200:19 203:11 208:3,6 213:12 217:1 266:2 271:2 304:4 | | |
| **reselling** 205:12 226:3,3 | | | **reviewing** 190:22 |
| **reserve** 7:11 | | | **reviews** 115:13 115:21 116:7 |
| **reset** 74:9 75:16,19 142:16,21 143:2 220:20 221:11 222:2 243:3,10 247:23 251:6 264:16,21 | | **retailer** 168:7 | **rewrite** 106:1 106:17 111:12 |
| | **responses** 110:17 | **retain** 22:23 126:9 | **rg&e** 83:18,23 85:19,19 128:17,18,20 128:24 129:9 129:13,24 130:23 131:17 133:14,22 299:21 310:5,6 310:21 |
| **residential** 137:12 139:9 139:14 140:11 141:9 144:2 147:7 151:11 299:23 | **responsible** 16:13,15 | **retained** 15:24 20:21 21:10 48:5,8 320:7 | |
| | **responsive** 35:18 | **return** 209:22 251:7,23 259:15 | |
| | **rest** 92:20 112:12 288:2 | | |
| **resolved** 155:13 214:7 | **restart** 300:10 | **returns** 126:19 280:12 | **rge** 299:21 |
| **resources** 145:21 146:3 265:8 | **restarted** 300:19 | **revert** 294:6 | **richards** 178:22 182:16 182:17 183:12 |
| | **restate** 176:14 | **review** 7:12 51:21 67:23 89:13 114:21 | |
| | **restating** 123:23 | | |
| | **result** 273:7 291:21 | | |

Veritext Legal Solutions

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[rid - right]**                                              Page 67

| | | | |
|---|---|---|---|
| **rid**   287:6 | 85:21 87:7,13 | 156:10,22 | 238:18 239:5,8 |
| **right**   7:11 8:5 | 87:15 88:8,14 | 157:5,11 160:3 | 240:6,10 |
| 10:6 11:15 | 90:3,12 91:1 | 160:23,24 | 241:11 242:16 |
| 12:24 14:3 | 91:13 92:6,10 | 161:10 163:7 | 243:22,23 |
| 15:12 16:4,6,8 | 93:18,20 94:2 | 163:22 164:9 | 244:21 245:7 |
| 16:23 19:3,20 | 95:4 97:4,17 | 164:13,17,22 | 249:23 250:2 |
| 20:11,14 22:4 | 100:20 102:12 | 165:5 168:24 | 251:19 252:6 |
| 23:4,15 24:3,6 | 104:21,24 | 169:2 170:6,10 | 252:11,22,23 |
| 24:7,22 25:6 | 105:4,11,14,19 | 170:24 171:2,4 | 252:24 253:9 |
| 25:23 26:6 | 105:21 106:2,9 | 171:10 172:8 | 253:14 254:8,9 |
| 27:19,24 28:4 | 111:15 112:19 | 174:5,17 175:7 | 254:10 258:21 |
| 28:17,19,21,22 | 113:13,24 | 175:11 176:7 | 259:5,6,23 |
| 28:24 29:7,8 | 114:2,3,14,24 | 177:16,19 | 260:5 262:5 |
| 29:10 30:13,19 | 115:9 120:1,14 | 179:4,12 | 264:10 266:11 |
| 31:9 35:22 | 121:11 122:5 | 182:10 186:8 | 269:16,22 |
| 38:6,21 41:24 | 123:20 124:6 | 187:23 189:19 | 270:8 271:21 |
| 41:24 44:13 | 125:20 127:4,7 | 189:24 190:19 | 271:23 272:15 |
| 47:1,16 48:18 | 128:22,22,24 | 190:23 191:20 | 273:7,17,23 |
| 49:6 50:4 51:7 | 129:11,20 | 195:10,18 | 274:17 275:12 |
| 53:14,24 54:13 | 133:8,8,11 | 196:14 198:19 | 276:20 278:18 |
| 54:23 55:1 | 136:21,24 | 201:9 203:7,16 | 279:15,24 |
| 57:1 58:11 | 137:4,6,11,14 | 210:7 214:24 | 281:7,15 282:3 |
| 61:17 62:8 | 137:22 138:1,8 | 216:6,10 | 282:14,20 |
| 63:6,16 64:13 | 139:6,16,21 | 217:24 218:16 | 283:6 284:15 |
| 64:17,18 65:9 | 140:12 142:5 | 220:1,3 221:14 | 284:22 285:5 |
| 66:17 67:17,20 | 143:3,15 | 221:19,20 | 286:8,11,12 |
| 69:9 70:12,20 | 144:17 145:13 | 223:1 224:21 | 287:16,23,23 |
| 70:24 71:12 | 146:4,20 147:2 | 225:22 226:23 | 288:7 290:23 |
| 73:22 75:13,17 | 147:12,19 | 227:4,4 231:11 | 291:8 292:9 |
| 76:6,21 77:7 | 148:4,5,23 | 232:9,13,21 | 294:8 295:8 |
| 78:23 79:4 | 149:1,13,19,20 | 233:8,10,14,20 | 296:2,21 |
| 80:12 81:11,19 | 150:12,19 | 234:14,15,17 | 297:15,21 |
| 82:6,10,15,16 | 151:16 154:15 | 236:15 237:1 | 298:9,9,10 |
| 83:18 85:1,18 | 154:22 155:5 | 237:16,22 | 299:5,8,12 |

301:8,23,24,24
303:4,8 306:15
307:5 309:3
310:6,10,12
311:19,20
312:15 314:5
315:3,5 317:11
317:17,18,18
318:9,10
**rights** 5:16
148:20
**ring** 185:23
193:9 257:6
**rings** 186:5
**ripple** 247:3
**risen** 135:19
**risk** 5:17 16:18
246:4 254:8
256:17 260:13
281:5,19
**riskier** 263:18
**riskiness**
263:11
**risks** 181:17
182:22 183:17
262:24 280:6
280:16
**risky** 251:11
253:24 259:14
263:17 281:22
**river** 23:14
28:24 29:3,6
29:16 48:2
50:12

**robust** 280:6
304:15
**rochester** 83:14
83:17 128:18
**role** 9:22 10:3
16:12,13,16
18:2 23:8,11
23:15,16 29:13
74:21 139:21
153:6,9 155:18
179:21 197:17
198:5,6 201:14
**roles** 37:13
**roll** 296:3
316:19
**rolled** 316:19
**rolling** 253:4
**room** 95:18
**rough** 52:4,15
**roughly** 51:4
68:9
**routine** 9:7
275:14
**routinely**
276:24
**row** 232:9,21
**rubric** 219:3
**rule** 55:5 56:10
186:6
**ruled** 40:13,20
**rules** 1:16
287:11,12
**ruling** 40:7
184:18 185:6

**rulings** 185:1,3
185:4
**run** 50:7 94:10
95:13,15,15,15
97:20 100:4
101:14 102:12
104:10 107:12
113:5 122:3
205:7 250:14
281:11 320:6
**running** 98:7
100:16 108:24
211:1 222:15
230:24 271:22
272:6 277:12
278:8 281:6
294:4
**runs** 104:2

**s**

**s** 2:1 3:1 4:1 5:8
6:1 200:24
321:1
**s&p** 200:24
**sake** 153:20
308:21
**salaries** 55:20
262:15 263:4
267:17
**salary** 54:20,22
**sales** 234:14
305:22
**sandler's** 154:7

**satisfactorily**
8:10 323:8
**satisfied** 81:13
**satisfy** 158:8
227:20
**save** 58:11
71:21 79:15
253:5
**saved** 86:21
248:19
**saving** 86:21
**savings** 141:7
141:10,12
265:2
**saw** 115:23
122:1 249:7
281:13 316:1
**saying** 25:15
26:12 40:7
61:8 77:1
79:17 80:15
84:15 85:5
87:18,19 93:13
96:18 98:23
102:2,15
108:22 110:3
116:17 146:12
165:1,2,3
174:4 182:8
186:20,24
187:17,21
196:4 200:14
207:21 208:10
208:15 209:23

Edo Macan                          December 17, 2025
Brous v. Eligo Energy, LLC

**[saying - see]**                                    Page 69

| | | | |
|---|---|---|---|
| 213:6,10,11,21 | **schedules** | 188:8 197:4 | 193:24 207:15 |
| 213:23 216:16 | 58:13 | 211:15 | 219:15 229:2 |
| 216:20 227:16 | **school** 36:19 | **scratch** 196:7 | 232:10,21 |
| 260:17,17 | **schuster** 1:6 | 201:10 | 249:20 268:5,6 |
| 269:2,5,12 | 2:22 3:12 5:15 | **screen** 128:1 | 276:9 300:18 |
| 271:3,3 273:4 | 6:12 64:13,16 | 285:10,18 | 302:9 310:8 |
| 277:16 280:17 | 82:6,9,19 83:1 | 287:7 301:19 | 318:18 |
| 282:15 286:24 | 83:13,20 84:11 | **scroll** 290:21 | **secondly** 126:2 |
| 291:13,15 | 135:20,20 | 291:7 293:16 | **section** 62:12 |
| 294:2 | 136:23 137:2 | 294:8 295:7,9 | 63:2,6 95:10 |
| **says** 25:2 63:19 | 142:3 143:1 | 301:10,11,22 | 109:18 111:24 |
| 82:8 94:24 | 148:20 284:20 | 301:24,24 | 147:1 153:2 |
| 99:22 115:12 | 299:14,15,17 | **scrolling** | 161:24 199:8 |
| 115:12 117:4 | 299:20 309:22 | 291:22 | 216:12 233:7 |
| 124:17 125:15 | 310:2,17,20 | **se** 174:11 | **sections** 62:9,9 |
| 136:10 149:22 | 314:7 | **seabron** 179:3 | 195:13 |
| 150:12,24 | **schuster's** | **seal** 323:19 | **secure** 241:24 |
| 151:20 152:20 | 299:16 | **search** 97:8 | **securities** 174:7 |
| 156:23 157:20 | **science** 33:2 | **searched** | **see** 10:20 12:23 |
| 159:10 160:17 | **scope** 15:20 | 172:17 | 13:11,14 21:20 |
| 164:15,16 | 39:2 46:12 | **seasoned** 12:8 | 24:1 46:1 49:4 |
| 208:1 212:11 | 55:4 56:10 | **seated** 21:24 | 63:21 64:11 |
| 213:11 216:9 | 68:4,24 70:1 | **sec** 299:16 | 86:8 88:18,22 |
| 216:24 224:18 | 70:15 71:17 | 301:16 | 95:17 101:18 |
| 231:17,23 | 73:3,9,16,19 | **second** 16:16 | 104:23 105:5 |
| 232:11,22 | 75:7 76:10,23 | 27:18 88:11 | 106:2 115:2,6 |
| 234:11,16 | 78:8,15 79:7 | 89:8 93:20 | 115:17 124:21 |
| 257:20,21 | 80:14 82:22 | 107:21 114:19 | 128:15,22 |
| 258:20 263:8 | 83:8 84:1 85:3 | 131:14 147:20 | 129:2,9,12 |
| 272:5 279:15 | 85:13 87:10,20 | 152:2,7 153:18 | 135:14 136:14 |
| 279:16 299:11 | 140:2 141:21 | 156:18 157:16 | 146:18 148:1 |
| 304:1 309:21 | 142:13 143:10 | 168:18 169:24 | 162:11 164:9 |
| **sc1** 299:23 | 143:20 144:23 | 172:8 173:10 | 167:7 177:13 |
| | 179:6 187:5 | 178:12,14,15 | 181:9 195:4 |

Veritext Legal Solutions

Edo Macan                    December 17, 2025
Brous v. Eligo Energy, LLC

196:3 201:5,11
209:24 214:15
216:8,13,16
232:10 238:24
241:18 242:2
248:10,13
250:14 257:19
258:1 273:2
279:15 281:6
285:18,21
287:9,10,11
288:8 290:22
293:13,16,23
294:3,9,10,12
295:8 298:22
299:9 301:12
301:17 302:1,7
303:12 309:21
310:18 316:19
**seeing** 69:14,14
192:21 258:8
**seeking** 217:23
**seem** 69:4 70:1
73:18 77:9
98:21 277:9,10
**seemed** 89:15
90:19 96:8
**seems** 79:17
107:17 145:11
157:7 228:20
236:5
**seen** 72:2 75:20
86:14,19 96:11
121:22 127:17

131:22 132:6
133:9 134:2
152:15 155:7
180:20 192:12
198:2 209:13
249:12 260:6
278:6 291:11
308:5
**segment** 261:10
**select** 250:21
**sell** 175:10
194:12 307:12
**selling** 168:8
197:20 201:4
202:14,18
212:9 213:16
222:10 223:10
225:7 233:23
266:13 267:1,2
306:12 307:12
307:15,15,16
307:17,19,20
308:3
**sells** 174:19
**send** 51:16
59:18 87:6,6
87:18,18
209:11
**sending** 109:10
**senior** 99:7
**sense** 92:24
157:15 158:4,6
159:23 161:9
162:3 174:5

198:11 205:10
205:16 218:7
218:19 219:5
223:20 243:17
246:22 253:20
297:9 305:15
**sensible** 269:2
**sensitive** 6:4
**sent** 51:21
59:22
**sentence** 88:20
91:8,19 92:3
92:10,17,18
93:20 94:23
99:20 100:15
101:11 108:6
110:21 111:1,2
111:14,19
112:3,6 116:9
116:22 119:8
123:11,20
124:17,24
130:10 133:10
146:18 147:5
147:12,21
156:22 157:16
166:16,21,22
167:2 193:24
194:9 203:9
225:1 227:6
232:10 234:16
250:17 318:18
319:5

**separate** 57:11
261:3
**separately**
301:14
**sept** 5:10 57:15
**sequence** 25:5
**sequentially**
149:8
**series** 103:12
**serve** 87:22
**service** 67:24
69:22 74:11
88:18 91:12
93:4 95:3
107:18 108:1,2
108:15 112:11
123:14 128:5
129:24 130:23
131:11,24
133:5,14,22
142:2 147:22
194:24 208:21
250:24 251:17
268:17 299:18
305:1,4,14
312:22 319:8
**services** 81:14
234:13 297:17
**serving** 96:19
166:5 210:3
224:1 227:19
**session** 45:11
**set** 17:15,18
48:3 50:1,14

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[set - simply]**                                        Page 71

| | | | |
|---|---|---|---|
| 50:15 88:16 | 106:18 107:15 | **sheets** 10:22 | **signature** |
| 91:10 93:3 | 107:17 108:4 | 247:15 290:13 | 323:22 |
| 95:1,12 99:24 | 108:24 109:7 | 290:15 291:5,7 | **signed** 58:6 |
| 101:3,16,20 | 112:23 113:5 | 292:7 293:4 | 59:20 61:19 |
| 102:1,18,21 | 115:5,8 116:3 | 294:3 | 72:7 111:1 |
| 105:8,9 107:16 | 122:2,13 | **shipped** 198:14 | 119:9 143:2,5 |
| 108:3,17 110:6 | 124:12 146:5 | **shock** 124:20 | 180:4,14 183:1 |
| 112:10 120:13 | 192:13 203:6 | 125:10 318:23 | 183:19 209:5 |
| 121:7 123:12 | 206:8 235:11 | **shoot** 188:14 | **significant** |
| 136:11,12 | 245:13 250:18 | **short** 28:5 | 142:18 265:7 |
| 154:21 158:1 | **settings** 30:1 | 117:1 165:2 | **significantly** |
| 159:7,12 | 248:15 | 204:9 225:1 | 184:9 |
| 222:23 225:14 | **seven** 76:20 | 229:3 235:6,7 | **signing** 83:2 |
| 229:9 238:4 | 82:15 83:20 | 243:18 244:12 | **similar** 29:18 |
| 240:19 242:4 | 121:12 123:24 | 252:3 291:19 | 30:7 84:2 |
| 242:24 243:7 | 256:16 294:7 | **shorter** 76:16 | 186:10 220:8 |
| 244:1 245:17 | **seventy** 136:9 | **shot** 127:24 | 312:7 315:8 |
| 246:16 251:18 | **several** 120:18 | **show** 127:3 | **similarly** 1:7 |
| 255:7,21 | 178:7 275:13 | 133:13,23 | 6:13 |
| 257:21 258:20 | **shape** 80:16 | 148:7 256:21 | **simple** 72:10 |
| 263:13 266:21 | 98:2 222:6 | 285:15 287:15 | 100:14 101:12 |
| 271:9 277:15 | 225:9 241:22 | 290:10,11 | 118:10 119:5 |
| 281:17 288:6 | 247:16 311:7 | 308:24 316:6 | 122:23 123:1 |
| 288:11 299:6,6 | **shapes** 312:7 | 317:3 | 159:8 175:20 |
| 299:12,13 | **share** 304:18 | **showed** 130:12 | 251:10 253:19 |
| 301:13 323:18 | 304:21 305:16 | 133:3 315:19 | 282:17 305:20 |
| **setting** 17:22 | 306:2,6,8,9,11 | **showing** 127:1 | **simplest** 246:5 |
| 18:5 25:10 | 306:12 307:1,4 | **sic** 69:19 73:19 | **simplifying** |
| 55:11 93:6,10 | 307:20,21 | 161:18 167:19 | 244:11 |
| 94:9 95:20 | **shedding** 73:6 | **side** 15:24 | **simply** 37:17 |
| 97:3,21 98:7 | **sheet** 5:13,14 | 16:22 20:20 | 121:3 153:19 |
| 98:17,24 | 127:8,11 | 29:10 30:2 | 184:23 198:6 |
| 100:17 101:16 | 242:12 287:13 | **sided** 309:21 | 272:13 293:11 |
| 101:22 106:6 | 288:8 291:17 | | 313:6,11 |

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

**single** 26:13
  108:6,14
  111:19 117:8
  144:7,8 145:20
  200:18,18
  291:20
**sir** 34:17 35:20
  119:23
**sit** 52:3 116:17
  133:8
**sitting** 123:10
  226:15 279:2
**situated** 1:7
  6:13
**situation** 43:19
  92:24 134:15
  202:11 220:12
  220:18 246:1
  268:9 313:4
**situations**
  117:10 271:8
  271:16,18
**six** 21:18 50:2
  67:20 68:9
  77:7 136:9
  148:10,11
  180:19 184:13
  236:3 242:20
**sixth** 28:18
**skimmed** 189:3
**slack** 115:4
**slightly** 260:23
**slow** 87:24

**small** 93:17
  198:22 285:22
  303:22 312:2
**sneezes** 191:4
**software**
  105:18
**sold** 31:15,21
  32:1,11 226:4
  226:12,15
  227:5 314:8,17
**sole** 18:2
**solely** 36:20
  202:6
**solemnly** 8:7
**somebody**
  71:20 91:3
  99:2 167:21
  174:8 202:2
  212:9
**somebody's**
  77:10,12
  235:22
**son** 65:12 66:3
  66:7 78:11,20
  79:19
**soon** 317:24
**sooner** 84:8
**sophistication**
  71:8
**sorry** 9:4,22
  10:10 11:4
  22:22 45:14
  53:10 55:7
  62:11,17,19

76:24 80:7
85:6 92:1
103:5,6 114:14
115:12 117:22
127:16 128:23
131:14 132:14
135:6 137:14
139:13 143:1
150:8 154:6
156:14 158:17
158:24 165:18
166:11 168:21
170:18 171:16
172:21 174:2
182:7 184:13
189:18,21
193:23 197:8
199:11 203:22
206:24 207:5
209:4 214:19
215:1,12,22,23
217:21 218:22
222:4,15
230:24 232:4,8
244:22 245:5
251:24 253:4
253:13 255:10
255:13 261:8
265:17 266:1,5
270:4 279:16
288:5 290:14
294:10,22
295:7,9 296:17
299:9 301:17

301:23 305:17
306:1,9 309:8
314:12
**sort** 11:23
  23:14 29:19,23
  31:8 43:17,18
  47:24 48:3
  50:14 69:13
  72:4 80:6
  89:12,15 90:5
  90:6 95:12,16
  95:18,22
  101:19 109:19
  109:20 125:21
  125:23 126:18
  133:2 154:9
  155:24 157:15
  158:5,7 159:1
  160:8,9 173:1
  174:5 182:8
  184:12 186:18
  190:3 193:6,11
  194:17 197:21
  198:4 201:2
  202:10 208:16
  208:18 209:8
  209:14,21
  214:9 236:15
  236:16,18
  241:16 242:21
  245:13 247:11
  248:24 250:15
  254:19 261:2
  263:5,24

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

[sort - spreadsheets]                                      Page 73

| | | | |
|---|---|---|---|
| 268:10 280:18 | **sourced** 265:8 | 197:11 201:2 | **speechify** 284:2 |
| 293:1 296:9 | 266:13,21 | 204:15 207:23 | **spelled** 208:22 |
| 304:10 305:12 | 307:23 308:1 | 218:22 219:13 | **spelling** 8:3 |
| 307:20 308:11 | **sources** 142:4 | 221:5 232:21 | **spend** 97:13 |
| 308:17 317:13 | 142:19,23 | 240:13 257:23 | 158:13 |
| **sound** 26:6 | 143:8,18 170:1 | 263:22 316:6 | **spending** |
| 28:2,19 149:1 | 170:6 266:14 | **specifically** | 272:16 |
| 181:18 183:18 | 266:22 308:1,5 | 32:4 37:3,6 | **spent** 12:17 |
| 185:22 278:13 | 308:7 | 39:2 59:3,15 | 25:21 28:23 |
| 280:21 | **southern** 1:3 | 69:11,23 76:15 | 183:23 241:7 |
| **sounded** 9:16 | 6:16 | 80:20 90:22 | **spirit** 45:21 |
| 195:2 | **space** 36:21 | 97:14 99:22 | 46:14,18 93:15 |
| **sounds** 24:7 | **speak** 76:9 | 126:9 133:1 | 108:10 110:22 |
| 25:6 72:9,12 | **speaking** 19:16 | 145:4 147:1 | 110:23 161:1 |
| 80:17 113:1 | 27:16 57:2 | 151:18 156:11 | 171:22 |
| 114:2,2 161:15 | 97:7,10 109:16 | 157:20 169:24 | **spreadsheet** |
| 161:15 184:20 | 159:3 184:1 | 170:22 173:16 | 242:18 284:24 |
| 186:16 187:1 | 242:20 | 192:9,23 | 286:2 288:15 |
| 187:12,18 | **specific** 18:15 | 197:23 209:3 | 288:24 290:5 |
| 201:24 205:23 | 29:18 37:14 | 209:12 210:14 | 292:14 297:13 |
| 212:15 258:7 | 61:1,7 62:22 | 221:18 223:2 | 297:19,23 |
| 295:12 298:22 | 89:13 90:11,16 | 224:13 227:14 | 298:5 |
| 298:22 299:10 | 104:24 113:11 | 249:2 | **spreadsheets** |
| 313:20 | 123:4 124:23 | **specificity** | 234:3,17 |
| **source** 44:23 | 128:1 131:4 | 152:2 217:7 | 236:21 237:8 |
| 124:23 169:17 | 146:12 147:1 | **specified** | 238:7 239:18 |
| 169:17,18 | 148:6 152:7 | 107:19 160:12 | 240:3,5,16 |
| 170:2 171:6,12 | 155:19,21 | 200:23 | 241:5,9 242:5 |
| 171:18 172:4,8 | 156:5 157:8 | **specifies** 179:6 | 242:9,17 243:3 |
| 172:19 173:10 | 163:16 166:17 | **specify** 39:2 | 244:4 246:17 |
| 173:11 205:1 | 169:8 172:2 | 144:5 | 247:4,7 248:19 |
| 210:18 316:18 | 176:15 178:2 | **speculate** 52:23 | 284:16 286:2 |
| 319:7 | 183:24 184:4 | 68:12,13 84:16 | 287:18 289:8 |
| | 192:14,18,18 | 170:23 | 289:17 315:20 |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

[spreadsheets - suggested]                                    Page 74

315:22
ss  323:3
staff  10:5,18,19
  50:7 53:3
  55:20 99:7
  172:16
stakeholder
  251:3 277:24
stamped  96:13
stand  110:20
  123:10 279:5
standing
  116:22
stands  77:11
  78:24 128:18
  237:3,5
stapled  215:21
start  8:18
  103:22 105:21
  127:14 138:17
  196:7 203:1
  204:18 214:1
  271:6 299:8
  300:5
started  74:7
  267:1,2
starting  105:4
  128:15 231:15
  304:1
starts  103:18
  103:22,24
  242:22 318:19
state  7:1,4 8:18
  19:9 24:19

25:20 26:13,22
27:14 42:2
46:6 137:18
220:15 264:18
287:4 299:13
stated  132:21
  134:9,10
  180:11 188:1
  220:16 227:16
  273:22
statement
  91:13,22,23
  92:4,5,22 95:4
  130:14,23
  131:5 147:22
  152:1 176:21
  196:17,18
  257:20 293:10
states  1:3 6:15
  20:10 158:1
  161:20,20
  179:6
stating  99:15
  108:12 153:22
stay  300:4
  319:10
staying  264:24
steep  270:9
stemming
  251:4 278:14
step  92:14
  115:13,21
  304:22 305:17

stop  34:19 35:6
  35:7,7,11
  36:10 85:19
  86:1,5 118:21
  118:22,23,24
  288:7
storable  198:13
stored  198:13
straight  36:18
  37:14,15
  240:19
straightforward
  316:12
strategies
  172:9
strategy  26:17
  173:10 254:3
  255:1
street  2:6 3:17
  124:18 125:8
  318:20,21
stretch  38:16
strictly  37:13
  159:3
structurally
  308:14
structure
  260:19,22,23
studied  139:22
  140:9,16
stuff  27:11
  32:17 70:9
  80:5 89:14
  145:6 186:5

294:4
style  67:1
styled  62:13
subject  20:8,22
  191:16 208:11
subjective
  203:14
submitted
  12:15 13:10
  23:12,20 38:12
  38:14 179:2
  181:23 287:1
  289:9
subsection
  62:14 63:3
substance
  126:16
substantive
  71:20
succinct  117:2
succinctly
  86:16 135:16
  207:21
suffer  272:20
sufficient  170:5
  254:2 259:12
  260:21 261:7,9
  262:23 268:24
  269:22 270:12
  277:14 281:11
  281:18
suggested
  60:18 61:1,9
  96:7 155:19

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

| | | | t |
|---|---|---|---|
| **suggestion** | **supported** 10:8 | 219:16 222:22 | **t** 5:8 321:1,1 |
| 46:16 | 10:8,10 | 229:20 234:8 | 322:1,1 323:1 |
| **suggestions** | **supporting** | 234:10 241:8 | 323:1 |
| 60:4,9 89:12 | 12:18 29:13 | 249:21 257:10 | **t&c** 5:15 |
| **suing** 21:12 | 37:12 89:3 | 260:1 285:8 | 148:20 |
| **suit** 80:1 84:5 | **supportive** | 286:10 287:10 | **t&d** 297:17 |
| **suite** 3:17 | 10:18,19 23:17 | 292:10,18,20 | **tab** 238:23 |
| **suits** 276:1 | 92:9 | 293:15 295:11 | 240:2 243:22 |
| **sum** 109:24 | **supports** 92:17 | 296:12 298:3,9 | 286:12 287:10 |
| **summarized** | 125:1 | 298:10,16,20 | 287:19 292:8 |
| 173:17 176:1 | **sure** 9:7 18:16 | 302:9,9,24 | 292:16 |
| **summary** 288:2 | 19:7,13 20:6 | 306:16 314:15 | **table** 144:4 |
| 292:9 293:18 | 22:24 27:22 | 316:21 | 219:14,18 |
| 294:8 295:2,2 | 28:20 30:23 | **surely** 88:2 | 221:2,8 261:16 |
| 296:18 299:7 | 45:11,20 47:10 | **surprise** 70:12 | 261:22 269:20 |
| 301:7,22 | 55:10 57:3 | 70:16 297:2 | 270:10 271:10 |
| **summation** | 58:3 61:15 | **surprised** | 275:13 284:17 |
| 317:5 | 62:21 66:10 | 295:5 | 284:18 297:14 |
| **supplied** 142:3 | 67:10 71:10 | **sustainable** | 299:15 302:6 |
| **supplier** 137:9 | 74:16 80:6,19 | 211:1 254:3 | 302:10,16 |
| **suppliers** 137:3 | 80:23 85:9 | **swap** 201:1 | 312:21 316:14 |
| **supply** 145:24 | 86:18 90:2,2 | **swear** 8:7 | **tables** 133:3 |
| 191:8,21 | 115:14,21 | **switch** 32:21 | **tabs** 290:22 |
| 234:22 265:7 | 116:7,24 117:8 | 141:10 208:21 | 291:22 292:21 |
| **supplying** | 118:4 119:21 | 209:10 295:1 | 292:21 293:22 |
| 181:17 182:22 | 128:24 137:9 | **switched** 71:24 | **take** 6:7 19:6 |
| 183:17 233:10 | 138:13 146:15 | 76:12 | 20:12 42:5 |
| 264:17 | 148:12 150:23 | **switching** | 46:17 58:4 |
| **support** 10:5 | 156:19 164:1,1 | 79:15 | 59:18 67:8 |
| 12:1,3 29:9 | 171:22 177:4,6 | **sworn** 8:6,11 | 69:22 76:3 |
| 50:7 55:20 | 180:10 183:8 | 323:8 | 77:22 81:19 |
| 88:21 89:1 | 185:16 195:22 | **synopsis** 26:9 | 88:10 91:12 |
| 278:19 317:14 | 206:11,11,16 | | |
| 319:2 | 215:24 218:4 | | |

Veritext Legal Solutions

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[take - term]**                                              Page 76

| | | | |
|---|---|---|---|
| 92:14 107:17 | **takes** 13:8 | 255:3,5 260:21 | 88:17 91:11 |
| 109:17 111:21 | 281:10 | 269:6 281:9 | 93:4 95:2 |
| 114:19 119:19 | **talk** 11:9 30:11 | 301:13 | 98:11 100:1 |
| 130:7 134:12 | 58:2 80:24 | **task** 71:12 | 101:21,23,23 |
| 135:13 137:16 | 112:22 113:1 | 237:24 241:2 | 108:18 110:7 |
| 137:17 138:19 | 144:9,17 | 275:20 292:4 | 146:7,19,20,24 |
| 138:21,23 | 198:14 231:13 | **tasks** 10:24 | 147:3,9,11,16 |
| 139:8 140:9 | 303:24 316:4 | **tea** 177:15 | 149:17 150:16 |
| 147:12 155:8 | 318:3 | **technical** 37:17 | 151:4,12,14 |
| 155:16 158:14 | **talked** 11:15 | 245:19 | 161:8 163:12 |
| 158:17 159:5 | 29:9 82:8 | **technically** | 167:9,18,19 |
| 184:17,24 | 104:22 174:6 | 194:16 | 168:13 169:7 |
| 188:13 190:21 | 174:16 220:2 | **tell** 8:7 29:12 | 173:24 174:2,5 |
| 203:18 204:2 | 224:7,20 228:2 | 34:22 43:20 | 174:11 186:4 |
| 210:19 212:9 | 231:16 232:13 | 46:24 56:5 | 186:16 187:8 |
| 214:13 229:3 | 233:5 249:16 | 63:23 66:19 | 190:15,18 |
| 230:23 238:7 | 267:16 284:15 | 75:14 92:12 | 195:2 196:1 |
| 239:2 240:8 | 287:16 303:23 | 118:9 123:9 | 201:14 203:2,7 |
| 243:1 264:19 | **talking** 35:12 | 193:3 202:1 | 203:12,16,20 |
| 265:18 284:2,5 | 48:9 110:7 | 207:20 216:20 | 204:5,12,23 |
| 284:17 289:4 | 126:10 134:24 | 227:4,14 | 205:13,20 |
| 296:15,16 | 139:7 169:9,12 | 228:21 253:16 | 206:9 207:10 |
| 297:8 300:17 | 175:9 191:7 | 274:15 278:24 | 207:13 210:6 |
| 304:16,18,22 | 194:19 200:17 | 287:5 290:5 | 210:16,21 |
| 315:9 317:12 | 200:17 216:1 | 304:7 | 211:4,5 214:16 |
| **taken** 1:14 | 243:13 245:19 | **telling** 123:6 | 214:23 215:3,7 |
| 13:24 33:6 | 299:14 306:18 | 187:12 280:14 | 215:10 216:5,6 |
| 93:14,22 98:18 | 306:20 | **tells** 167:22 | 220:6,10,17 |
| 133:13 152:11 | **talks** 124:11 | **tend** 67:2 70:9 | 223:1 227:10 |
| 164:16 223:20 | **tape** 302:16 | 70:10 73:8 | 228:5,10 235:6 |
| 238:19 277:19 | 303:16 | **tenure** 28:4 | 235:7 244:12 |
| 278:1 282:17 | **target** 253:22 | **terepka** 2:5 | 250:9,19 |
| 323:7,10 | 253:22 254:6 | **term** 32:18 | 263:12 305:9 |
| | 254:17,21 | 42:23 77:13 | |

Edo Macan                                           December 17, 2025
Brous v. Eligo Energy, LLC

**[terminate - things]**                                    Page 77

| | | | |
|---|---|---|---|
| **terminate** | **test** 38:24 | 113:10,15 | 261:20 299:21 |
| 82:19 | **tested** 249:1 | 115:1,20,23 | 303:14,21 |
| **terminated** | **testified** 8:12 | 116:2,6,20,21 | 309:11 311:21 |
| 82:12 84:12 | 13:2 14:3,14 | 119:7 120:10 | 317:19 319:13 |
| **terms** 30:24 | 20:13,16,19,20 | 120:11 121:1,3 | **thanks** 57:13 |
| 43:1 51:2 | 20:23 21:1,21 | 121:11,12,16 | 57:23 138:17 |
| 55:20 67:24 | 23:18 31:20 | 121:22 122:15 | 258:13 300:6 |
| 73:19 88:17 | 38:14 44:24 | 123:5,8,17,18 | 300:22 |
| 91:11 93:4 | 83:1 94:9 | 124:1,2 125:13 | **theories** 153:14 |
| 95:3 105:10 | 122:1,11 | 126:7 132:21 | **theory** 175:19 |
| 107:18,19 | 179:24 269:13 | 133:18 144:4 | **thing** 64:24 |
| 108:1,1,15 | **testify** 9:5 | 146:10 150:18 | 67:4 111:23 |
| 112:10,11 | 13:12 39:19 | 153:16 154:5,7 | 122:20 126:6 |
| 120:14 123:13 | 40:8,14 41:19 | 154:16 156:1 | 169:13 172:14 |
| 123:14 142:1 | 157:7 289:14 | 160:5 163:20 | 173:23 203:23 |
| 144:1 147:22 | **testifying** 12:4 | 164:24 165:9 | 209:13 216:1 |
| 151:8,16 | 12:8,10 20:11 | 165:18,19 | 259:24 293:18 |
| 152:18 175:9 | 38:20 39:4 | 180:8 199:12 | 296:6,15 |
| 190:9 192:13 | 109:20 | 205:4 208:15 | 317:15 |
| 193:15,19,20 | **testimonies** | 209:6 210:9 | **things** 11:23 |
| 200:20 201:16 | 89:9,13 254:19 | 212:24 218:4 | 20:8 30:8 |
| 208:22 214:13 | **testimony** 8:22 | 224:11 227:8 | 31:21 32:19 |
| 214:15,23 | 12:14,23 13:8 | 228:12 235:21 | 43:12 45:6 |
| 216:13 223:12 | 21:7 23:12,12 | 235:22 237:5 | 70:10 73:10,10 |
| 230:12,19,20 | 30:3 31:6 38:2 | 247:22 252:1 | 73:11,12 74:12 |
| 231:14 251:7 | 44:15 46:12 | 264:21 265:10 | 93:1 97:1 |
| 280:15 | 62:23 69:12 | 274:7 275:17 | 107:12 109:20 |
| **territories** | 78:11 80:16,20 | 307:15 322:4,6 | 123:1 145:7 |
| 305:1 306:16 | 89:1 91:6,15 | 323:9,10 | 154:5 170:20 |
| **territory** | 93:17 94:8,13 | **texas** 26:6 | 184:6 190:6,6 |
| 131:11 133:5 | 97:6 100:2,7 | **thank** 7:22 8:13 | 198:4 200:20 |
| 133:22 299:18 | 102:23 104:23 | 8:16,21 9:14 | 204:8 207:14 |
| 305:4,13,14 | 108:9 110:9 | 21:14 57:14 | 209:13 241:16 |
| | 111:9,13 113:4 | 127:6 258:18 | 247:13 251:4 |

Edo Macan                                December 17, 2025
Brous v. Eligo Energy, LLC

**[things - time]**                                                Page 78

| | | | |
|---|---|---|---|
| 251:10 262:18 | 179:6,20 | 291:22 292:2 | 200:19 201:16 |
| 283:10 296:8,9 | 181:21 182:2 | 293:6 295:22 | 203:11 228:3 |
| **think**  12:2 | 187:3,12 | 296:13 297:3 | 265:6,9 293:4 |
| 17:13,20 20:12 | 188:11 191:12 | 298:1 299:17 | 294:3 303:23 |
| 21:3,6 28:10 | 191:20 194:14 | 301:7 305:10 | 309:22,24 |
| 28:17,23 31:20 | 194:16 201:11 | 307:2,9 312:20 | 311:13 312:9 |
| 35:4 36:8 41:3 | 208:14 210:1,5 | 315:7,10 | 316:3 317:12 |
| 43:13 50:4 | 210:10 212:3 | 316:10,11,12 | 317:15 |
| 53:7 66:24 | 212:22 213:1,4 | 317:17 | **threshold** |
| 67:22 69:5,8 | 213:20 214:22 | **thinking**  46:20 | 41:21 |
| 71:2,6 73:16 | 218:6 219:1,22 | 206:5 207:20 | **ticket**  308:19 |
| 74:6,8 75:9,16 | 220:24 221:2 | 308:18 | 308:20 |
| 75:23 76:1,7 | 222:18 223:13 | **third**  149:8 | **tidbit**  90:19 |
| 79:9 84:10 | 224:24 226:8 | 234:18 235:19 | **tied**  160:14,18 |
| 85:17,23 86:12 | 226:12,24 | 258:11 265:15 | 160:20 201:3 |
| 91:23,24 92:12 | 228:2,22 | **thirteen**  146:16 | 280:7 |
| 92:12 93:22,24 | 231:10 239:8,9 | **thirty**  104:12 | **tight**  318:1 |
| 94:1 95:5 97:1 | 243:5,8 244:19 | **thought**  49:16 | **time**  6:6 7:2 |
| 98:3,15 100:8 | 245:12,12,13 | 50:16 69:18,21 | 9:23 12:20 |
| 100:8,14 | 248:2,22 249:3 | 96:16,17 118:3 | 15:17 23:13,22 |
| 103:18 107:23 | 249:19 251:17 | 194:9 215:16 | 25:21 27:19,23 |
| 108:9 112:14 | 251:22 252:23 | 216:21 222:5 | 31:7 32:16 |
| 117:9,15,15 | 254:1,9,17 | 245:18 246:6 | 35:7 36:11,20 |
| 118:16 126:6 | 259:17 263:19 | 268:13 274:7 | 36:22 37:4,7 |
| 128:5 134:8 | 264:6 268:5 | **thoughts**  36:6 | 49:16,24 50:8 |
| 135:20 141:23 | 269:13,15 | **three**  13:6 | 50:15 54:8,12 |
| 143:12 144:14 | 272:4 274:16 | 21:23 61:6,23 | 64:9 68:1 70:8 |
| 145:17,23 | 274:19 277:10 | 62:5 74:19,23 | 71:15 76:5 |
| 146:15,22,23 | 277:10,18 | 104:12 121:19 | 81:1,13,22 |
| 148:5,23 149:8 | 281:4 283:4,5 | 121:23 146:24 | 82:1 83:23 |
| 158:8,20 159:8 | 284:4 285:13 | 149:15,22 | 90:23 95:7 |
| 160:1,7 161:13 | 287:18 289:7 | 151:22 158:21 | 97:8 101:4,8 |
| 162:22 168:22 | 289:15 290:11 | 165:12,13 | 101:10 109:17 |
| 169:23 171:15 | 290:24 291:18 | 189:10,15 | 111:21 112:13 |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[time - transport]**                                        Page 79

| | | | |
|---|---|---|---|
| 113:23 117:16 | **times** 13:2,4,7 | **today's** 134:5 | **topic** 171:24 |
| 117:17 120:3,6 | 13:12,23 14:2 | 320:3 | 177:3 |
| 121:19 122:18 | 14:2 21:1,4,4,5 | **together** 11:1 | **total** 16:2 51:12 |
| 124:1 127:1,22 | 21:10 30:18 | 133:13 | 52:4,8,12,14,21 |
| 128:7 131:24 | 110:15 118:7 | **told** 49:15 | 320:6 |
| 134:4,12 | 122:19 201:12 | 65:20 131:9 | **tough** 268:4 |
| 137:16 138:16 | 213:15 273:23 | 155:5 163:13 | **towards** 287:11 |
| 139:4 142:15 | 274:17 306:6,9 | 163:15,19,20 | **track** 27:11 |
| 142:16 143:5 | 306:10,13 | 164:21 167:18 | **traded** 27:21 |
| 143:24 144:18 | **timestamp** | 169:2,19 | **traders** 16:17 |
| 144:19 158:13 | 238:22 | 177:18 190:1 | **trading** 16:19 |
| 159:2,7,20,21 | **timing** 257:8 | 212:13 214:22 | 16:20 |
| 159:22 160:13 | **title** 149:12 | 218:7 226:12 | **trailing** 251:22 |
| 170:3 171:14 | 238:23 240:2 | 227:1 229:21 | 252:2,21 |
| 172:3 173:2,13 | 286:11 287:19 | 250:6 278:22 | **train** 222:4,5 |
| 182:5 183:5 | 287:21,23 | 283:4 | **trajectory** |
| 188:11,17,20 | 288:3,5 290:22 | **ton** 102:16 | 135:10,14 |
| 195:21 196:23 | 292:8,16 | **took** 60:19 | 136:3 |
| 202:21 211:4 | 293:13,17 | 158:12,12 | **transact** 160:11 |
| 216:2 221:6 | 294:6,18,24 | 222:12 236:12 | 160:13 |
| 223:19 227:13 | 298:19 301:21 | 296:13 | **transaction** |
| 231:4,7 238:3 | **titled** 63:2 | **top** 27:7,20 | 44:3 297:7 |
| 241:7 242:23 | 170:9 172:9 | 36:19 105:5 | **transcribed** |
| 243:18 244:8 | **titles** 114:1 | 149:9 209:22 | 323:10 |
| 246:11,11,20 | **today** 6:21 8:23 | 217:11 231:16 | **transcript** 7:12 |
| 253:5 277:9 | 11:10 13:20 | 242:2 250:1 | 103:14 114:5 |
| 283:11,12 | 14:10 22:1 | 256:5 261:4,8 | 322:3,5 323:13 |
| 284:9,12 300:4 | 34:21 52:3 | 261:21 267:11 | **transparency** |
| 310:21 311:12 | 58:4 120:11 | 267:12,13 | 74:13 |
| 315:14,17 | 123:19 169:3 | 269:21 285:21 | **transpired** |
| 317:19 318:7 | 170:4 175:9 | 301:14 305:21 | 76:12 278:4 |
| 318:12 319:15 | 188:23 226:15 | 305:24,24 | **transport** |
| 319:16 320:6 | 269:13 | 306:12 309:20 | 194:22 |
| | | 311:13 315:1 | |

Edo Macan
Brous v. Eligo Energy, LLC

December 17, 2025

**[transportation - unaware]**

Page 80

**transportation**
152:12 156:6
157:22 160:20
161:23 162:2,5
166:1 190:15
191:2 193:22
194:1,2,6,10,15
194:23 195:5,8
195:11,22
196:4,15,20
197:18 198:10
198:15 201:17
208:3 213:9
217:2 233:7,11
**treat** 44:7,12
44:18,19
**treatment**
263:16
**tremendous**
50:9
**trial** 14:4,7
181:24
**triangulate**
168:4
**triangulating**
280:9
**tried** 75:21
110:14 205:8
285:3 289:3,5
296:9
**tries** 86:8,8,9
208:8
**true** 19:6 87:17
92:20 100:16

121:4 122:1
195:12 204:11
263:17 270:2
322:5 323:13
**truly** 108:19
**truth** 8:7,8,8
**truthful** 8:22
**try** 9:10 18:15
42:24 71:21
97:13 117:1
122:22 141:6
153:6 177:14
257:4,8 277:9
283:11,12
293:8 296:5
307:6
**trying** 26:20
35:24 45:16,22
45:24 46:2
50:19 60:23
97:12 100:9
108:7 117:12
126:13 127:17
131:18 145:12
145:17 152:23
155:20 161:2
163:7 169:23
169:24 170:21
170:21 201:20
206:12,12
209:20 210:13
211:20 212:20
214:12 247:12
251:20 253:4

268:7,9
**turn** 128:14
163:17 202:24
302:22 311:10
**turned** 15:22
**turning** 193:22
**turns** 159:13
**twenty** 103:23
103:24 104:12
**twice** 56:14
**two** 13:6 56:15
61:23 62:5
129:23 132:17
135:3,9 155:13
158:7 159:20
159:24 166:12
166:15 170:1
186:19 189:17
189:23 204:19
207:13 217:11
217:14 236:11
238:13,15
243:15,20
244:13 245:20
245:22,23
246:3,7 247:6
248:3 249:24
253:14 260:3
265:4 268:15
268:15,16,16
278:11,16
280:14,17
292:13 297:8
298:20 306:9

306:10 307:3
311:3 315:8
316:3,4,8,17
317:11,15
**type** 10:24
19:19 25:15
37:16 145:6
163:2 241:19
241:23 299:12
**types** 32:15
69:2 160:8
242:19
**typical** 89:16
141:12 308:11
**typically** 89:6
214:8

**u**

**uh** 117:17
**ultimate**
253:11
**ultimately** 60:5
60:5 61:11
96:12 98:16
108:13 109:15
234:21
**umbrella**
223:22 224:4
**unable** 74:19
74:22
**unacceptable**
79:23
**unaware** 98:17

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**unbelievable**
  35:23 36:9
**unbiased**
  247:21 278:12
  280:5 304:15
**uncertainty**
  203:15 208:12
  209:18
**unclear**  118:5
  222:18
**uncooperative**
  291:12
**under**  9:1 13:7
  14:2,2,3 16:1
  21:3 55:5
  79:20 96:22
  99:6,8,8 131:9
  142:1 147:9
  151:13,13
  153:10,14
  156:9 157:18
  158:19,19
  162:23 175:19
  175:19,24
  176:19 178:2
  197:24 201:18
  201:19 204:4
  207:23 217:9
  219:3,9,21
  221:21 223:21
  224:4 228:19
  229:17,18,23
  230:6,12 235:9
  236:11 238:15

238:16 254:11
259:3 274:1,12
277:18 284:21
284:22 302:16
323:11
**undercut**  86:9
**undergraduate**
  32:23
**underlies**  155:2
**underlying**
  108:4 135:13
  161:5 208:7
  260:10 311:6
  316:2
**understand**
  13:21,22 14:12
  16:5 25:13,19
  30:23 31:9
  37:21 41:3
  45:12 52:14
  54:16 60:22
  73:13 85:16
  100:2 117:12
  129:4 131:19
  131:21 147:21
  152:24 161:2
  163:7 172:24
  210:13 216:19
  218:2 219:18
  222:20 228:19
  229:20 231:19
  232:1,16
  233:14 243:13
  247:22 281:3

283:15 290:12
292:22 298:17
298:19 300:16
313:9
**understanding**
  43:3,8,22 44:6
  44:11,11 45:7
  49:24 61:22
  62:15 63:7
  68:5,8 82:18
  87:11 95:8
  109:23 134:15
  155:12 168:13
  197:19 208:17
  208:18,24
  214:6 221:13
  221:23 234:19
  235:10,13
  255:2 267:3
**understood**
  9:13 26:20
  27:13 32:21
  106:20 183:10
  194:19 231:14
  232:24 233:8
**undertake**
  237:16
**underwater**
  281:17
**undisclosed**
  203:13 208:11
**undo**  302:16
**unequivocally**
  201:1

**unfair**  49:17
  108:10 209:20
**unfortunately**
  66:8 68:22
**unfriendly**
  249:5 287:2
  289:4 291:12
**unhide**  290:13
  290:15,18
  291:4,5 293:20
  293:24
**unhook**  301:19
  302:13
**unit**  6:10
**united**  1:3 6:15
  20:9
**universal**  43:15
**unmentioned**
  206:15
**unnecessary**
  45:24 220:16
**unprofessional**
  36:5
**unreasonable**
  253:11,18
  258:5 279:9
**unrelevant**
  73:18
**unscripting**
  241:22
**unsustainable**
  205:13
**update**  133:6

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[updated - variable]**                                    Page 82

| | | | |
|---|---|---|---|
| **updated** 47:24 | **useful** 73:11,13 | 227:21 265:2 | 251:14 |
| 49:11 132:19 | **uses** 158:22 | 268:9 299:13 | **validate** 244:14 |
| **upper** 231:16 | **using** 102:1 | 304:14,22,24 | 245:8 |
| **upset** 79:1 | 139:14 159:18 | 305:4,14 306:2 | **valuable** 50:9 |
| **upstate** 171:9 | 204:4 206:8 | 306:13,24 | **value** 223:17 |
| **upward** 136:2 | 239:14,20 | 307:12 308:5 | 245:13 |
| **usable** 247:18 | 255:8 282:24 | 310:5,21 | **values** 240:6 |
| 287:9 | **usually** 49:10 | 311:19 312:11 | 247:3 288:15 |
| **use** 34:15 57:7 | 91:3 155:7 | 312:14,23 | 290:5 292:15 |
| 57:9 64:9,17 | **utilities** 18:1 | 313:1,6,7,15,19 | 293:12 |
| 73:13 77:13 | 19:15 74:2,20 | 313:22 314:3 | **variable** 88:16 |
| 88:3 159:17 | 74:24 85:10 | 314:24 | 88:17 91:10,11 |
| 161:8 176:8 | 87:23 137:22 | | 93:3,3 95:1,2 |
| 192:6 203:19 | 138:11 143:17 | **v** | 98:9,10 99:24 |
| 203:22,22 | 144:2 194:22 | | 99:24 100:3,17 |
| 235:7 238:2 | 252:22 253:2 | **v** 1:8 | 101:2,20,21,22 |
| 239:5 247:19 | **utility** 16:8 | **vague** 22:12 | 101:23 102:11 |
| 250:18 251:16 | 17:1,17,18,22 | 24:12 25:7 | 105:8,9,10 |
| 269:11 289:5 | 18:17 19:10 | 26:23 30:14 | 106:5,18 |
| 296:7 315:24 | 25:24 71:14,19 | 31:17 36:15 | 108:17,24 |
| **used** 74:9 84:10 | 73:23,24 74:1 | 38:1,22 39:16 | 110:6,7 112:9 |
| 124:12 195:15 | 74:19,23 75:4 | 39:20 44:19 | 112:10,23 |
| 196:3 203:13 | 75:22 76:5,19 | 46:11 50:22 | 115:6,14,22 |
| 208:10 229:9 | 77:5 79:14,15 | 58:16 59:2,14 | 116:8 120:13 |
| 234:2 236:21 | 83:3,17,17 | 59:21 63:24 | 121:6 122:2,13 |
| 237:14 239:19 | 84:11 85:1,5 | 65:15 189:12 | 123:12,13 |
| 241:6 248:19 | 85:10 86:2,10 | 191:11 192:8 | 125:18 135:8 |
| 250:21 268:12 | 86:11 87:4 | 211:14,22 | 135:15,17 |
| 276:18 278:11 | 88:5 128:5 | 214:18 216:18 | 136:11 142:18 |
| 286:3,5 292:7 | 135:12 137:6 | 218:20 244:17 | 146:7,19,23 |
| 293:5 295:23 | 137:10 139:10 | 274:23 276:9 | 147:3,8,11,16 |
| 295:24 315:20 | 139:15,23 | 292:11 311:4 | 147:24 149:12 |
| 315:22 316:21 | 140:22,24 | 312:4 316:9 | 149:17 150:1 |
| 320:6 | 141:1 171:9 | **valid** 158:10,11 | 150:13,15,24 |
| | | 173:3,4,14 | |

**[variable - want]**                                              Page 83

151:3,8,15
152:3,6,19
154:1 158:1
162:8 163:12
166:5 181:18
182:23 183:18
185:21 196:1
196:12 201:9
201:14 203:2,7
203:12,16,19
203:20 204:3,5
204:12,23
205:19 206:9
207:10,12
208:21 209:10
210:6,16,20
214:16,23
215:3,7,10
216:5,9 218:6
218:18 219:2
220:5,10
221:16,24
222:20 223:1
228:5,8,9
229:9 231:24
232:4,11,22
243:14,14
250:18,19
251:11 252:7
252:11,17
253:23 254:5
259:14,16
260:7,24
261:11 263:17

264:1,11,13,14
264:14,22,23
266:8 267:9
273:5 280:22
281:18,21
282:2 299:13
306:7 310:2,19
**variables** 238:3
**varied** 223:19
**varies** 29:15,21
165:23 203:11
304:3
**variety** 129:12
**various** 20:9
93:1 140:22
152:9 237:7
240:6 307:11
**vary** 30:6 117:9
**varying** 138:5
**vdidepo.com**
4:4
**vendor** 234:18
**verde** 21:22
**verdicts** 184:11
**veritext** 6:21
300:20 320:7
**versed** 194:18
**version** 59:20
60:6 239:14
257:15
**versions** 239:12
239:13 249:8
**versus** 6:13
50:5 66:20

71:14 78:20
131:17 178:22
184:3 221:9
259:5
**video** 6:6,10
**videographer**
4:4 6:2,21 7:21
81:21,24
119:23 120:2,5
139:3 188:16
188:19 231:3,6
284:8,11
294:14 315:13
315:16 318:4,6
318:10,11
320:3
**view** 70:22
77:21 123:19
159:4 160:2
184:6 194:6
201:20 212:17
214:16 216:13
218:10,17
219:1 229:24
230:7 263:15
273:15,20
276:22 281:24
**viridian** 21:22
**virtually** 311:2
**virtue** 190:22
**voice** 34:16
63:23 64:2,9
64:18,22 66:20
66:21 118:21

138:14 300:2
300:20
**vojvodic** 4:5
7:19,19 9:21
9:24 10:1,20
11:1,8 47:10
47:11 189:17
189:22
**vojvodic's** 10:3
**volatility**
117:11
**volume** 1:1
58:11
**voluntary**
221:1,9,11,18
222:19,24
228:6 229:10
229:14,15,21
229:23
**volunteer** 28:7

| w |
|---|

**w** 237:1,1
**wait** 33:14
246:3
**waiting** 246:12
**wake** 79:22
**walk** 294:10
**want** 24:17
25:10 26:11,20
27:1 28:8,9
30:23 35:9,17
42:15 43:20
46:6,7,10,17

Edo Macan
Brous v. Eligo Energy, LLC

December 17, 2025

**[want - wheeling]**

Page 84

| | | | |
|---|---|---|---|
| 52:15,22 53:14 | **wanted** 46:10 | 157:14 162:9 | **wednesday** |
| 53:14 54:15,17 | 46:13,24 47:2 | 163:10 175:20 | 1:22 |
| 58:20 60:22 | 87:22 95:7 | 186:17 195:8 | **week** 243:20 |
| 63:10 64:10 | 103:1 108:21 | 195:17 205:9 | **weeks** 159:20 |
| 66:17 69:22 | 155:18 226:23 | 213:19 214:1 | 243:16 244:13 |
| 73:22 80:19 | 248:10 252:1 | 215:4 216:20 | 245:21,22,23 |
| 81:1 82:3 | 253:19 292:20 | 216:22 226:4 | 246:3,8 297:8 |
| 86:10 88:8 | 316:17 317:23 | 242:16 246:5 | **weight** 313:1 |
| 95:6,7 96:10 | **waste** 95:7 | 247:14,17,21 | **weighted** 310:6 |
| 97:15,15 99:10 | 101:4,7,9 | 258:11 264:24 | 311:15 312:10 |
| 101:9 110:2 | 112:13 170:3 | 273:11 274:6 | 313:12 |
| 111:23 114:24 | **wasting** 35:7 | 282:12 287:8 | **weights** 313:3 |
| 118:8 119:18 | 36:11 | 291:14 292:17 | **welcome** 45:14 |
| 120:19 121:13 | **water** 217:21 | 295:6 302:12 | 45:16 300:20 |
| 121:16 124:15 | 222:13 281:20 | 302:13,22 | **went** 52:11 |
| 127:18 136:6 | **watstein** 2:5 | 304:15,15 | 61:17 93:8 |
| 153:15 155:1 | **way** 23:6 26:3 | 305:5 313:12 | 95:9 96:6 |
| 155:16 156:10 | 40:20 44:8,13 | 315:22 318:19 | 121:1 134:3 |
| 163:10,16,24 | 45:11 46:24 | 318:21 | 135:1,2,18,21 |
| 170:2 176:7 | 61:6 64:24 | **ways** 61:7 | 135:24 136:1 |
| 177:12 199:21 | 67:23 75:21 | 110:15 168:3 | 181:24 190:2,2 |
| 204:16 212:12 | 76:4,13 77:4 | 278:16 | 203:6 235:18 |
| 218:4 220:1 | 80:11 81:2,9 | **we've** 11:15 | 238:5 258:8 |
| 228:21 231:13 | 87:1 89:6 | 29:9 67:7 | **west** 3:17 |
| 247:22 249:11 | 92:15 93:15,23 | 81:20 116:17 | **whatnot** 36:17 |
| 249:18 255:16 | 96:1 102:10 | 224:20 228:2 | 56:1 101:15 |
| 261:13 263:9 | 103:1 107:12 | 233:5 279:7 | 276:1 277:22 |
| 265:14 282:16 | 110:16 112:3 | 285:10,16 | 280:16 |
| 282:19 284:16 | 112:15 122:22 | 311:11 | **whatsoever** |
| 287:3,7 290:16 | 124:18 125:8 | **web** 75:5 | 222:24 |
| 292:19 298:14 | 132:10,20,20 | **website** 12:7 | **wheel** 194:23 |
| 315:11,20 | 134:18 138:3 | 26:2,8,8 74:2 | **wheeling** 194:3 |
| 316:2 | 139:19 142:17 | 74:14 85:21 | 194:7,14 |
| | 145:18 153:15 | | |

Edo Macan                           December 17, 2025
Brous v. Eligo Energy, LLC

| | | | |
|---|---|---|---|
| **when's**  172:3 | **wires**  256:7 | 77:9 78:17 | 165:10 167:5 |
| **whereof**  323:18 | **wise**  311:7 | 79:9 80:15 | 168:21 175:14 |
| **whispers**  6:5 | **withdraw** | 81:8,16 82:23 | 176:14 177:22 |
| **white**  2:18 | 201:11 | 83:6 84:2,15 | 178:19 179:15 |
| **wholesale**  19:9 | **witness**  1:12 | 85:4,23 86:5 | 179:19 180:9 |
| 20:1 30:5,10 | 5:2 7:24 11:4 | 87:11,17 91:16 | 180:18 181:4 |
| 30:11,19,21,22 | 11:12 12:20 | 94:14,19 97:7 | 183:4,21 |
| 30:24 31:2,10 | 14:10,24 15:4 | 98:2,13 100:8 | 185:12 186:3 |
| 31:16,21 32:10 | 15:11,15,21 | 100:23 102:7 | 187:7,17 188:9 |
| 158:3 164:17 | 20:19,22 21:11 | 102:15 103:20 | 188:12 191:12 |
| 165:7 166:19 | 22:14 24:9,14 | 103:23 104:8 | 192:9 196:18 |
| 167:15 168:8 | 27:1,5 30:15 | 104:12,16,19 | 197:5,15 |
| 168:16 169:6 | 31:18 32:4,14 | 106:23 107:10 | 199:14 202:10 |
| 169:21 174:17 | 33:12,22 34:11 | 109:5 110:13 | 204:15 205:23 |
| 175:6 176:5,6 | 35:10,20 36:16 | 111:6,18 | 206:21,24 |
| 176:10,16,17 | 38:8,24 39:9 | 113:10 114:13 | 207:18 210:10 |
| 176:18,20,23 | 39:22 40:2,11 | 114:15 116:13 | 210:24 211:16 |
| 177:17 181:16 | 40:23 41:12,19 | 118:18,24 | 211:23 213:1,4 |
| 182:21 183:16 | 42:7 44:16 | 119:19,22 | 214:19 215:15 |
| 192:15 194:12 | 45:3 46:13 | 120:1,17 121:9 | 215:22 216:2 |
| 197:2,5,12 | 48:22 50:23 | 122:17 123:9 | 216:19 218:14 |
| 198:23 199:1,4 | 51:15 52:8,20 | 123:23 125:7 | 218:21 219:7 |
| 199:8,24 200:3 | 55:7,15 56:12 | 128:11 130:3 | 220:24 222:15 |
| 200:9 201:4 | 56:20 57:8,23 | 130:17 131:4 | 224:12 226:8 |
| 202:6,14 | 58:17 59:3,9 | 132:5 133:20 | 227:9 228:13 |
| 205:11 213:16 | 59:15,22 60:14 | 134:8 140:3,14 | 229:2,5 230:11 |
| 224:8,18 225:3 | 60:17 61:5 | 140:19 141:3 | 230:24 238:11 |
| 225:7,8 226:3 | 62:3,19 65:5 | 141:22 142:14 | 241:14 244:18 |
| 226:5,16 227:5 | 65:17,23 68:5 | 143:11,21 | 245:2,6,10 |
| 227:9,17 | 68:11,19 69:1 | 145:1 146:11 | 252:15 254:15 |
| 228:21 229:22 | 69:11 70:16 | 150:19 151:6 | 255:23 256:1 |
| 235:4 | 71:18 72:16 | 154:17 156:17 | 258:14 264:5 |
| **willing**  208:21 | 73:4 74:6,22 | 156:20 160:6 | 266:1,17,24 |
| 209:10 | 75:8 76:1,24 | 162:19 165:1 | 270:4,14 271:1 |

Edo Macan                              December 17, 2025
Brous v. Eligo Energy, LLC

**[witness - yeah]**                                    Page 86

| | | | |
|---|---|---|---|
| 271:15 272:10 | 200:3 204:22 | 29:3 33:8 | 302:22 306:10 |
| 273:1,19 | 216:20 223:3,3 | 38:12 66:5 | **wrote** 58:20,22 |
| 274:24 275:19 | 231:24 232:10 | 190:6 191:16 | 59:9 60:6 |
| 276:10 277:7 | 232:15,20,24 | 196:22 249:12 | 92:15 108:7,11 |
| 280:5 282:10 | 233:5,5,8 | **working** 12:17 | 111:1 123:11 |
| 282:23 283:10 | 276:18 279:5 | 16:16 28:22 | 126:2 153:19 |
| 283:18 288:19 | **words** 30:20 | 30:2 42:7 50:8 | 153:19 184:23 |
| 290:9,18,21 | 58:24 60:6 | 141:5 242:6 | 197:1 239:2 |
| 291:1,4,10 | 215:6 235:12 | **works** 45:8 | 248:4 279:6 |
| 294:16,22,24 | **wordsmithing** | 66:9 87:1 91:2 | 317:6 |
| 298:24 299:20 | 59:6 | 109:11 214:2 | **wtlaw.com** 2:9 |
| 300:11,14,16 | **work** 10:6,9,11 | 227:13 | **x** |
| 300:23 301:2,4 | 10:12,13,17 | **worksheet** | **x** 5:1,8 86:21 |
| 302:12,17,20 | 11:2,8,13 | 290:13 291:21 | 99:16 239:13 |
| 302:24 303:2 | 15:21 17:7 | 291:23 | 247:7 289:23 |
| 303:15,18 | 19:19 26:10,12 | **worries** 255:18 | 290:2 |
| 308:10 309:8 | 26:13 29:7,14 | **wrap** 8:4 | **y** |
| 309:12 311:5 | 29:17,20,21,24 | **write** 59:13,16 | **y** 86:21 99:16 |
| 312:5,17 | 30:1 37:16 | 88:15 90:11 | **yeah** 10:2,14 |
| 313:18 314:12 | 47:4,19,23 | 147:21 154:23 | 11:7 13:19 |
| 314:22 315:12 | 51:8 53:3,5,17 | 156:11,22 | 14:2 15:9 |
| 316:10 317:21 | 54:11 55:17,18 | **writing** 58:24 | 17:13 18:7,7 |
| 318:2 323:8,18 | 55:19 58:23 | 59:1 67:1 | 18:14,15,18 |
| **witnesses** 12:18 | 59:6 65:20 | 130:8 208:23 | 19:5,22 21:14 |
| 12:18 | 76:8,10 89:6 | 209:11,14 | 22:21 25:8 |
| **wittels** 3:6 7:16 | 166:24 240:21 | 279:5 303:21 | 26:9,14,18 |
| 7:18 | 247:13 316:5,6 | **written** 12:14 | 27:3,4,5,11,17 |
| **wittelslaw.com** | 316:13 | 13:9 93:16 | 28:11,21 30:17 |
| 3:9 | **worked** 10:21 | 94:6 97:18 | 30:20 31:13,14 |
| **word** 61:8,9,10 | 17:1,14,17 | 98:20 112:3 | 31:20,23 33:2 |
| 61:11 84:10 | 19:8,21,24 | 208:20 | 43:10 45:15 |
| 161:10 195:9,9 | 22:6,11,15 | **wrong** 114:6 | 47:24 51:5 |
| 195:14 196:4 | 23:2,3 25:16 | 127:19 146:23 | 53:10,10,22 |
| 196:14 199:4,8 | 26:21 27:13 | 150:6 201:12 | |

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[yeah - years]**                                         Page 87

| | | | |
|---|---|---|---|
| 57:2,7,9,10,10 | 137:12,14,16 | 210:10 212:7 | 298:1,15,21 |
| 57:12,13 58:7 | 138:20,23 | 214:22 215:5 | 299:3,4,4,5,12 |
| 58:11 60:7 | 139:20 141:23 | 215:15,22 | 299:20,21 |
| 62:24 63:5,14 | 145:1 146:15 | 216:2,3,3,3,7,7 | 300:1,9,16 |
| 63:17,22 64:3 | 146:15,17,21 | 218:3,14,21 | 301:6,7,11,18 |
| 64:4,19 66:2,4 | 147:3 148:5 | 219:16,22 | 303:2,2,3 |
| 66:15 67:10,21 | 149:10,21,24 | 220:12 221:6 | 306:17,19,20 |
| 68:6 69:7 | 150:4 154:6 | 221:10 222:14 | 306:20,22 |
| 70:11 71:24 | 156:17,20 | 224:12,20 | 307:2,10,22 |
| 75:15,18,18,18 | 163:23 164:4,6 | 226:14 227:14 | 310:5,5,14,17 |
| 77:2,4 78:17 | 164:8 165:20 | 229:4,6 230:5 | 311:22,22,22 |
| 79:9 80:8,10 | 168:22,22 | 230:11,21,24 | 311:22 312:12 |
| 84:18,21 85:7 | 170:20,22 | 231:12 232:14 | 313:10,24 |
| 85:15 86:23 | 171:3,11 | 233:21 234:8 | 314:15 316:21 |
| 88:12,19,23 | 172:12 173:9 | 234:10,18 | 317:2,5,6,8 |
| 89:17,21 91:20 | 174:14 175:14 | 237:5 238:5,6 | 319:17 |
| 92:12 94:4 | 177:2 178:14 | 238:11 242:11 | **year** 28:1,1 |
| 97:19,19 100:8 | 179:4,7 182:11 | 245:2,4 246:23 | 47:19,23 48:5 |
| 100:11,23 | 182:13 183:9 | 248:22 249:22 | 49:9,18 56:21 |
| 101:9 103:2,20 | 183:11 184:12 | 250:20 252:5 | 83:20 117:9 |
| 104:8,16,16 | 184:15,22 | 252:23 253:6,7 | 129:6 133:21 |
| 105:1,3,15,15 | 185:12 186:3 | 255:24 256:12 | 236:3 267:24 |
| 105:20 106:10 | 187:10 188:13 | 257:8,10,12 | **years** 12:10,12 |
| 106:11,23 | 188:15 189:20 | 258:1 261:17 | 12:16,17,21 |
| 110:13 112:20 | 190:20 191:1 | 261:18,19 | 15:1,12 17:9 |
| 114:1,23,23 | 191:18,24 | 262:1 264:5 | 21:18 24:21 |
| 115:10,19 | 192:12 193:2,3 | 266:3,6 267:2 | 25:4 26:13 |
| 116:19 117:8 | 196:11,13 | 267:4,7,20,20 | 27:16,17 28:24 |
| 118:2,3 119:24 | 197:9 198:5,17 | 272:17 279:18 | 33:7 36:17 |
| 122:6 128:2,24 | 199:14,21,22 | 279:20 282:10 | 38:10,13 42:8 |
| 129:1,7,15 | 202:10 203:8 | 285:14,20,21 | 56:14 67:20 |
| 130:9,18,18 | 204:1,6,9 | 286:9,17 287:7 | 68:9 76:20 |
| 132:11 135:20 | 205:23 206:6 | 291:9 296:10 | 77:7,22 79:21 |
| 136:9,10,15,19 | 207:5,7,15,18 | 296:22 297:1 | 82:16 167:21 |

Veritext Legal Solutions

Edo Macan                                    December 17, 2025
Brous v. Eligo Energy, LLC

**[years - zoom]**                                        Page 88

| | | |
|---|---|---|
| 178:7 180:20 | 252:19 263:20 | 310:4,5 312:19 |
| 184:13 191:1 | 263:23 264:7,7 | 314:17 |
| 251:5 286:24 | 266:5,7 299:13 | **zones** 131:24 |
| 293:6 | 319:9 | 135:4 304:24 |
| **yesterday** | **york's** 112:11 | 305:9 306:16 |
| 189:8 | 123:14 | 307:11 319:8 |
| **yielded** 297:13 | | **zoom** 300:11 |

**z**

| | | |
|---|---|---|
| **york** 1:3 3:8 | **z** 99:16 | 301:20 |
| 6:17 17:11 | **zec** 144:13 | |
| 19:20 20:1,10 | 221:5 | |
| 24:10,17,19 | **zecs** 144:3,9,14 | |
| 25:20,22,22,24 | 220:14 227:22 | |
| 26:22 27:15,23 | 264:18 | |
| 30:19 31:4,5,9 | **zero** 144:14 | |
| 31:10,11,12,15 | 145:24 242:5 | |
| 32:11 73:24 | 243:1,3,5,7,9 | |
| 74:23 83:14 | 243:11 244:1 | |
| 87:1 88:17 | 245:13,14,17 | |
| 91:11 93:4 | 247:2,9,24 | |
| 95:2 123:14 | 248:7 288:6,11 | |
| 128:17 129:14 | 290:4 291:17 | |
| 135:1 137:7,7 | 292:15 293:12 | |
| 137:18 139:8 | 295:1 296:16 | |
| 140:10 141:17 | 299:6,7 301:13 | |
| 142:11 143:16 | 308:12 | |
| 144:21 147:8 | **zone** 128:6 | |
| 147:22 151:11 | 129:24 130:23 | |
| 171:9 173:11 | 133:5,14 | |
| 197:20 212:5,7 | 211:12,16 | |
| 212:9 217:18 | 299:24,24 | |
| 220:13 224:1 | 300:1,1 305:4 | |
| 227:11,12,12 | 305:13,14,23 | |
| 234:14 251:5 | 306:4,7 307:8 | |
| 251:17 252:6 | | |

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.