UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANNE BROUS, AS THE EXECUTOR OF THE ESTATE OF IRA BROUS** and **MICHELLE SCHUSTER,** on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>**ELIGO ENERGY, LLC** and<br>**ELIGO ENERGY NY, LLC**,<br><br>　　　　　　　　　　　　　　Defendants. | Civil Case No.: 1:24-cv-01260-ER |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT OF DR. DEBRA ARON AND ANY TESTIMONY SHE MIGHT OFFER AT TRIAL**

| | |
|---|---|
| **FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**<br>D. Greg Blankinship<br>Daniel J. Martin<br>One North Broadway, Suite 900<br>White Plains, New York 10601<br>Telephone: (914) 298-3281<br>gblankinship@fbfglaw.com<br>dmartin@fbfglaw.com | **WITTELS MCINTURFF PALIKOVIC**<br>J. Burkett McInturff<br>Tiasha Palikovic<br>Jessica L. Hunter<br>305 Broadway, 7th Floor<br>New York, New York 10007<br>Telephone: (914) 775-8862<br>jbm@wittelslaw.com<br>tpalikovic@wittelslaw.com<br>jlh@wittelslaw.com |

Dated: March 13, 2026

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    Dr. Aron's Opinions Regarding "Pricing Strategies" Should Be Excluded. ................................................................................................................ 2

    II.   Dr. Aron's Opinions On Pricing Term Meaning Should Be Excluded. ............................ 3

    III.  Dr. Aron's Opinion That Eligo's Excessive Rates Are Justified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ............................ 5

    IV.  Dr. Aron's Opinions Regarding Competitor Retail Rates Should Be Excluded. ................................................................................................................ 7

    V.   This Case Is Not A Reprise Of *Martinez v. Agway*. .......................................... 10

CONCLUSION ..................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**CASES**

*Alan L. Frank Law Associates, P.C. v. OOO Rm Invest*,
   No. 17-CV-1338, 2021 WL 1906468 (E.D.N.Y. May 12, 2021) .............................................. 4

*Claridge v. N. Am. Power & Gas, LLC*,
   No. 15-CV-1261, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016) ............................................. 5

*Ergon-W. Va., Inc. v. Dynegy Mktg. & Trade*,
   No. 03-CV-714, 2011 WL 765555 (S.D. Miss. Feb. 25, 2011) ................................................ 3

*GPF Waikiki Galleria, LLC v. DFS Grp., L.P.*,
   No. 07-CV-00293, 2007 WL 3195089 (D. Haw. Oct. 30, 2007) ............................................. 4

*In re Lipitor Atorvastatin Calcium Mktg., Sales Practices, & Prods. Liab. Litig.*,
   185 F. Supp. 3d 761 (D.S.C. 2016) .......................................................................................... 8

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*,
   No. 04-CV-7369, 2006 WL 2128785 (S.D.N.Y. July 28, 2006) .............................................. 4

*Martinez v. Agway Energy Services*,
   88 F.4th 401 (2d Cir. 2023) ........................................................................................... 1, 5, 10

*Martinez v. Agway Energy Servs. LLC*,
   18-CV-235, 2022 WL 306437 (N.D.N.Y. Feb. 2, 2022) ........................................................ 10

*Mirkin v. XOOM Energy, LLC*,
   18-CV-2949, 2023 WL 5200294 (E.D.N.Y. Aug. 14, 2023) .................................................... 1

*Pipefitters Local 636 Insurance Fund v. Blue Cross & Blue Shield of Michigan*,
   722 F.3d 861 (6th Cir. 2013) .................................................................................................... 5

*Red Hawk, LLC v. Colorforms Brand LLC*,
   638 F. Supp. 3d 375 (S.D.N.Y. 2022) ...................................................................................... 3

*Richards v. Direct Energy Servs. LLC*,
   915 F.3d 88 (2d Cir. 2019) ........................................................................................... 3, 5, 6, 10

*Sommer v. CleanChoice Energy*,
   800 F. Supp. 3d 239 (D. Mass. 2025) ...................................................................................... 4

*Stanley v. Direct Energy Servs.*,
   466 F. Supp. 3d 41 (S.D.N.Y. 2020) ........................................................................................ 8

*TC Systems Inc. v. Town of Colonie*,
   213 F. Supp. 2d 171 (N.D.N.Y. 2002) ..................................................................................... 4

*Weinberg v. CleanChoice Energy, Inc.*,
   2024 WL 3446515 (S.D.N.Y. July 17, 2024) .......................................................................... 5

**INTRODUCTION**

Eligo concedes that Dr. Aron has no expertise regarding New York's electricity markets, instead relying on her generic academic expertise as an economist. Defs.' Resp. to Pls.' Mot. to Exclude ("Def. Br.") at 8, 15. But courts exclude experts whose core competencies are misaligned with the litigation's subject matter. Pls.' Br. in Supp. Mot to Exclude ("Pl. Br.") at 9. This case proves the wisdom of this rule. Dr. Aron's report is littered with faulty assumptions and flatly incorrect statements that an expert in New York's regulated electricity markets would never make. Allowing the jury to hear these irrelevant and unreliable opinions will only cause confusion.

To salvage the mismatch, Eligo had Dr. Aron assume that the pricing term in its customer contract "inherently" gave it unfettered rate-setting discretion such that only "competition disciplines pricing." Def. Br. at 15. Eligo also told Dr. Aron that the pricing term contains the phrase "pricing strategies." *Id.* at 10. Both directives were incorrect. The pricing term does not mention "discretion" or "pricing strategies" and instead states that "all" variable rates "shall be calculated on a monthly basis in response to" three identifiable electricity market inputs. Eligo's efforts to distort its contract are meant to put this case on par with Dr. Aron's work in *Martinez v. Agway Energy Services*, 88 F.4th 401 (2d Cir. 2023). However, as explained in Plaintiffs' opening brief, *Agway*, other Second Circuit precedent, and a body of in-Circuit ESCO case law foreclose Eligo's discretion argument. Pl. Br. at 3–6, 12–16. Instead, Eligo's "contract required the variation in the variable rates to be determined solely" by the contract's three named inputs. *Mirkin v. XOOM Energy, LLC*, 18-CV-2949, 2023 WL 5200294, at *7 (E.D.N.Y. Aug. 14, 2023). Yet "Dr. Aron's report explains how economists understand the inherently economic pricing principles in the agreement[.]" Def. Br. at 13. That is not the issue at hand, and the Court should not permit expert testimony regarding a scenario that does not apply to Plaintiffs' claims.

1

## ARGUMENT

### I. Dr. Aron's Opinions Regarding "Pricing Strategies" Should Be Excluded.

Eligo's defense rests on the premise that it had unfettered rate-setting discretion because its contract allowed rates based on "pricing strategies."[1]  But "pricing strategies" is not a contract term; it is a phrase from a third-party phone call made as part of the enrollment process. As Plaintiffs' opening brief (at 11) explained, under New York regulation (and common law), such third-party oral statements are not contractual because all ESCO contract terms must be reduced to writing.[2]

Unable to defend Dr. Aron's reliance on language that is not part of the contract, Eligo tries to minimize the importance of her "pricing strategies" opinions. Def. Br. at 9–11. In doing so, Eligo concedes that it was improper for Dr. Aron to opine that the contract includes the term "pricing strategies" and that Eligo did not violate the contract because its rates were based on "pricing strategies." This taints both Section IX ███████████████████████████████ ███████████████████████████████████████████████████████████████ ████████ (emphasis added)), and Section XI that relies on the discussion in Section IX.

---

[1] *See, e.g.*, Def. Mem. ISO Mot. to Dismiss at 6, ECF No. 28 ("Plaintiffs also ignore the 'pricing strategies' and 'weather patterns' language referenced in the third-party verification call that forms part of their contract[.]"); Def. Let. Mot. to Bifurcate, ECF No. 108, at 1 ("[P]laintiffs entered into contracts with Eligo providing that Eligo would set variable electricity rates according to . . . their 'pricing strategies.'").

[2] Eligo stresses that the contract lacks an integration clause. Def. Br. at 10, n.2. None was needed. Under applicable regulation, all ESCO written contracts must contain the full and complete pricing term. Eligo also points out that the third-party scripts must be submitted to the NYPSC. *Id.* at 3. That does not mean the NYPSC policed the scripts and Eligo's written contracts and somehow ratified Eligo's claim that an oral statement amended the written contract.

**II.     Dr. Aron's Opinions On The Pricing Term's Meaning Should Be Excluded.**

The pricing term states that "all" variable rates "shall be calculated on a monthly basis in response to market pricing, transportation costs, and other market price factors." Dr. Aron interpret this term's meaning. *See* Def. Br. at 5 ("Dr. Aron explains, from an economic standpoint, how terms like 'market pricing' and 'other market price factors'" are understood); *see also id.* at 7, 13, 15–16. Expert testimony on contract meaning is inadmissible as a matter of law—"the construction of unambiguous contract terms is strictly a judicial function," and unless contractual terms are ambiguous or technical, expert testimony regarding their meaning is "irrelevant and hence inadmissible." *Red Hawk, LLC v. Colorforms Brand LLC*, 638 F. Supp. 3d 375, 381 (S.D.N.Y. 2022) (quoting *Richards v. Direct Energy Servs. LLC*, 915 F.3d 88, 98 (2d Cir. 2019))).

If the Court determines that Eligo's pricing term is ambiguous, expert testimony must be limited to the customary usage of that term in the specific industry in question. *See Red Hawk*, 638 F. Supp. 3d at 381 ("[T]estimony regarding standard industry practice is admissible to enable the jury to evaluate the conduct of the parties against the standards of the ordinary practice in the industry." (quotation omitted)). Dr. Aron offers no such opinions. She does not address how the terms "market pricing" or "transportation costs" or "market price factors" are used in the energy industry. Instead, she opines on how those terms are understood in a generic economic sense. Aron Rep. ¶ 26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* ¶ 82; *see generally* § IX. This is precisely the kind of untethered analysis that courts exclude where, as here, the expert lacks relevant industry expertise. *See Ergon-W. Va., Inc. v. Dynegy Mktg. & Trade*, No. 03-CV-714, 2011 WL 765555, at *5 (S.D. Miss. Feb. 25, 2011) (excluding expert opinion on industry usage where expert was not "qualified to opine about industry custom and practices" even though "he

3

attempted to couch this opinion in terms of economics"); *see also GPF Waikiki Galleria, LLC v. DFS Grp., L.P.*, No. 07-CV-00293, 2007 WL 3195089, at *4 (D. Haw. Oct. 30, 2007) (excluding expert opinion where his "declaration d[id] not touch on industry customs and practices.").

Eligo's cited cases do not counsel otherwise. For example, in *TC Systems Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 174 (N.D.N.Y. 2002), the expert's academic background in the specific field was sufficient because a "formal education in a particular field is sufficient to qualify a witness as an expert." Dr. Aron has no academic background in energy markets. *Id.* at 175. *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04-CV-7369, 2006 WL 2128785 (S.D.N.Y. July 28, 2006), is the same. There, the expert opined about the marketplace impact of false advertising claims regarding contact lenses. He had extensive experience regarding product pricing and the effects of false advertising, and, unsurprisingly, the court was not concerned that he lacked contact lens pricing experience. *Id.* at *6. And in *Alan L. Frank Law Associates, P.C. v. OOO Rm Invest*, No. 17-CV-1338, 2021 WL 1906468, at *5 (E.D.N.Y. May 12, 2021), the expert had extensive experience appraising businesses, and it did not matter that he only had limited practical experience in telecommunications. Notably, the *Rm Invest* court observed that "'district courts in this circuit have' sometimes 'found experts unqualified when they did not have direct experience with the particular product or field pertinent to the litigation.'" *Id*.

Eligo's brief also focuses on what its contract means as a matter of law, including its contention that Eligo has unfettered rate-setting discretion. Def. Br. at 4, 11–14. These arguments all but concede that a main focus of Dr. Aron's report is the meaning of contract terms, which is inadmissible. Almost all of Eligo's arguments and cases are addressed in Plaintiffs' opening brief (at 12–16) and Plaintiffs' recent letter to the Court regarding Eligo's proposed summary judgment motion (ECF No. 351). Eligo additionally cites to *Sommer v. CleanChoice Energy*, 800 F. Supp.

4

3d 239 (D. Mass. 2025), for the proposition that Eligo had rate-setting discretion by implication even though that term is not in the contact. But Judge Halpern, applying New York and Second Circuit law to an identical pricing term, reached the opposite conclusion: "The variable rate pricing terms in both *Richards* and *Agway* provided that the rate would be set at the ESCO's discretion. No such language is present in the instant term." *Weinberg v. CleanChoice Energy, Inc.*, 2024 WL 3446515, at *10 (S.D.N.Y. July 17, 2024). It is the Second Circuit's framework that governs here, and that framework forecloses Eligo's discretion argument.[3]

### III. Dr. Aron's Opinion That Eligo's Excessive Rates Are Justified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

One of Dr. Aron's biggest errors owing to her lack of energy market expertise is her assumption that Eligo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Aron Rep. ¶¶ 55, 61, 67–70. NYPSC regulations are clear that rate increases owing to an ESCO's REC purchases must be "commensurate" with the REC's costs; no additional markup is allowed. Ex. 15,[4] NYPSC Cases 15-M-0127, et al., Ord. Adopting Changes to the Retail Access Energy Mkt. and Estab. Further Process (Dec. 12, 2019), ECF No. 318-15 ("NYPSC

---

[3] Eligo's other "discretion-by-implication" cases are likewise inapposite. For example, *Pipefitters Local 636 Insurance Fund v. Blue Cross & Blue Shield of Michigan*, 722 F.3d 861 (6th Cir. 2013), is an ERISA case where the Sixth Circuit applied the rule that a plan service provider becomes an ERISA fiduciary when it exercises "authority or control" over plan assets. *Id.* at 867. Because the service provider's administrative services contract with the plan did not "set forth the dollar amount for the [challenged] fee or even the method by which the [challenged] fee is to be calculated," the service provider was held to have authority over plan assets. *Id.* Notably, the Sixth Circuit then found that the provider's decision whether to collect the fee and the rate at which it would do so, "despite the fact that the [agreement] did not authorize the exercise of such discretion[.]" *Id.* at 868. *Pipefitters* involves a completely different standard. Eligo also complains about Plaintiffs' citation to *Claridge v. N. Am. Power & Gas, LLC*, No. 15-CV-1261, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016), which they cited as context for why their experts calculated the rate Eligo should have charged. Eligo's criticism is also wrong. In *Claridge*, Judge Castel certified the class because, *inter alia*, a common question was "whether damages should instead reflect the difference between [the ECSO's] actual charged rate and a hypothetical rate calculated pursuant to the factors described in the Sales Agreement." *Id.* at *3.

[4] All citations in this memorandum to "Ex." refer to exhibits to the filed Declaration of D. Greg Blankinship, dated January 16, 2026, ECF No. 318 ("Blankinship Decl.").

Order"), at 81. Eligo's response is to claim that the NYPSC's unambiguous directive that the "premium charged by the ESCO for a renewable product must be commensurate with the incremental costs it incurs to provide the product" is just "dicta." Def. Br. at 17. Eligo is flat wrong. The regulation's ordering clause expressly incorporates Section III, where the "commensurate" language appears. *See id.* at 108 ("The commission orders: 1. Consistent with the body of this Order (Section III) and subject to any exceptions identified therein . . . ." ).[5]

Eligo argues that the NYPSC did not impose pricing restrictions on "green" products like it did for ESCOs' fixed and "brown" variable rates. Def. Br. at 16. Eligo is incorrect. The NYPSC mandated that an ESCO's "green" premium "must be commensurate with the incremental costs it incurs to provide the product." NYPSC Order at 81. The NYPSC of course cannot predict what REC costs will be in the future, so it pegged the "green" premium to the ESCO's actual REC costs. *See id.* at 82 (after surveying REC costs of "half of one cent to 2.5 cents per kWh" to "10% to 15% more than traditional utility service" for a "100% renewable product" the NYPSC found it "difficult to identify with any certainty a reasonable premium for the renewable product."). Owing to that difficulty, the NYPSC settled on mandating that the "premium charged by the ESCO for a renewable product must be commensurate with the incremental costs it incurs to provide the product." NYPSC Order at 81. That standard required Dr. Aron to quantify Eligo's actual REC costs and assess whether Eligo's premium was commensurate. ███████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████

---

[5] Eligo claims without citation that the NYPSC actively regulates both Eligo's contracts and rates and argues that if the NYPSC thought Eligo's variable rates were not compliant, the NYPSC would have "acted." Def. Br. at 17. While Eligo may have submitted sample contracts, the NYPSC does not regulate whether Eligo breaches its customer contracts. *See Richards*, 915 F.3d at 93 (noting that the NYPSC does not directly regulate ESCO rates).

6

IV. **Dr. Aron's Opinions Regarding Competitor Retail Rates Should Be Excluded.**

Plaintiffs' opening brief highlighted the numerous fatal methodological flaws in Dr. Aron's analysis regarding the relationship between Eligo's rates and those of other New York electricity suppliers. Pl. Br. at 20–24. Eligo's attempt to paint those errors as inconsequential falls short. For example, Plaintiffs pointed out that Dr. Aron's analysis fails to account for the vast majority of the market. *Id.* at 20. █████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ And of course it is: 90% of New Yorkers get their electricity supply from the local utility, not ESCOs. Ex. 11, Macan Rebuttal, ECF No. 318-11, at ¶ 35. No expert would average prevailing retail rates while ignoring 90% of the market.[6]

Eligo concedes that "weighting may be potentially useful if the opinion is based on the average price," but claims that Dr. Aron's report sought to show "the range of prices available at the market." Def. Br. at 22. This is incorrect. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

---

[6] Eligo now claims that Dr. Aron ████████████████████████ only because the Plaintiffs reside there. Def. Br. at 23. This after-the-fact excuse is belied by Dr. Aron's report, where the reason given for

████████████████████████████████████████
████████████████████████████████████████
████████████████████████

7

Next, Eligo claims that as a matter of law, utility rates can never be used as a "benchmark." Def. Br. at 18–19. Plaintiffs are not trying to use utility rates to "impose liability on ESCOs for exceeding regulated utility prices." *Id.* at 18. Here, Eligo was required to charge a rate based on "market pricing, transportation costs, and other market price factors." While Plaintiffs contend that this term refers to the market prices Eligo pays at wholesale, Defendants contend that "market pricing" includes a consideration of retail market pricing. If so, then utility rates must be factored into the prevailing retail rate analysis, as utilities, like ESCOs, sell electricity supply in the same market ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ That is a disqualifying methodological flaw.

*Richards* does not control this case. As Judge Karas noted, the *Richards* court held that "it would be illogical to measure Defendant's pricing against local utility rates where the plaintiff had contracted for a 'variable rate set at [Defendant's] discretion.'" *Stanley v. Direct Energy Servs.*, 466 F. Supp. 3d 415, 425 (S.D.N.Y. 2020). Unlike in *Richards*, the contract here does not grant Eligo discretion. *See* Pl. Br. at 12 (Second Circuit law precludes Eligo's claim of unfettered discretion). Here, the issue is whether it is a fatal methodological flaw for an analysis of "market prices" to omit 90% of the "market." Even errors that would ordinarily go to the weight of an expert's opinions can be egregious enough to justify exclusion. *In re Lipitor Atorvastatin Calcium Mktg., Sales Practices, & Prods. Liab. Litig.*, 185 F. Supp. 3d 761, 782 (D.S.C. 2016) ("Basing an opinion on such cherry-picked data is unreliable and does not satisfy *Daubert*.").

8

Eligo also tries to justify Dr. Aron's exclusion of 90% of the market from her "market price" calculation by contending that utilities are not in the same market because Eligo offers renewable energy. Def. Br. at 19. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ And as Plaintiffs' expert explains, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 9, Felder Rebuttal, ECF No. 318-9, ¶ 39.

Eligo defends Dr. Aron's omission of utility rates from her analyses of "market prices" by pointing to her claim that utility supply rates are set ▇▇▇▇▇▇ Def. Br. at 20. This is not a "basic economic point;" it is just wrong. *Id.* Eligo has no answer for the fact that New York utilities are required to purchase supply on the same wholesale market that ESCOs can and do buy from, Ex. 13, O'Brien Rep., ECF No. 318-13, at 20; that the utility supply rate is, as a matter of regulation, a passthrough of wholesale market pricing, plus supply-related overhead, Ex. 6, Macan Rep., ECF No. 381-6, ¶ 30; and therefore utility supply rates are not ▇▇▇▇▇▇▇ Dr. Aron could have supported her ▇▇▇▇▇▇ claim with an empirical analysis rather than relying on unsubstantiated hearsay statements from interested parties, *see* Pl. Br. at 21–24, but she did not.[8]

In opposition, for the first time, and without explanation, Eligo contends that an email from a DPS assistant counsel supports Dr. Aron's opinions that Eligo ▇▇▇▇▇▇▇▇▇▇▇▇ Def. Br. at 21 (citing Watstein Decl. Ex. 20). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It cannot be bootstrapped

---

[8] Dr. Aron tries to support her ▇▇▇▇▇▇ claim by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This is not the type of support upon which an expert in this or any other field relies.

9

into support for her opinions now. Nor does it establish that Eligo ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ To the contrary, this email is just an unofficial statement regarding whether an ESCO ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ And of course, Plaintiffs' expert ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, and he still found Eligo's rates to be excessive. Ex. 9, Felder Rebuttal, ECF No. 318-9, ¶ 39.

**V.        This Case Is Not A Reprise Of *Martinez v. Agway*.**

Eligo makes much of the fact that Dr. Aron's opinions in *Martinez v. Agway* were not excluded. Def. Br. at 4–5, 7–9, 20. But the plaintiff there did not move to exclude her. The absence of a *Daubert* challenge in prior litigation is not validation of an expert's methodology—it is simply the absence of a challenge. The litigation decisions made in another case between different parties in a different court are of no moment. And the only opinion cited by the district court or the Second Circuit concerned Dr. Aron's analysis of competing ESCO rates. *Martinez*, 18-CV-235, 2022 WL 306437, at *11 (N.D.N.Y. Feb. 2, 2022); *Martinez*, 88 F.4th at 416. Neither court made any mention of Dr. Aron's opinions regarding the meaning of contract terms nor whether an ESCO can charge excessive margins just because it buys cheap RECs to offset customer usage, as that was not an issue in *Agway*. Indeed, both the district court and the Second Circuit were deciding summary judgment—not whether Dr. Aron's methodology would survive *Daubert*. Neither court was asked to evaluate whether her analysis met Rule 702. Eligo's invocation of *Agway* as *Daubert* validation is therefore misplaced. And *Agway* is inapposite for the same reason as *Richards*; unlike the contract here, Agway's contract explicitly afforded it rate setting "discretion." *Id.* at 405.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court exclude Dr. Aron's expert report and any related testimony she might offer at trial.

Dated: March 13, 2026                    Respectfully submitted,

By: */s/ J. Burkett McInturff*
    J. Burkett McInturff
    Tiasha Palikovic
    Jessica L. Hunter
    **WITTELS MCINTURFF PALIKOVIC**
    305 Broadway, 7th Floor
    New York, New York 10007
    Telephone: (914) 775-8862
    Fax: (914) 775-8862
    jbm@wittelslaw.com
    tpalikovic@wittelslaw.com
    jlh@wittelslaw.com

    D. Greg Blankinship
    Daniel J. Martin
    **FINKELSTEIN, BLANKINSHIP,**
    **FREI-PEARSON & GARBER, LLP**
    One North Broadway, Suite 900
    White Plains, New York 10601
    Tel: (914) 298-3281
    Fax: (914) 824-1561
    gblankinship@fbfglaw.com
    dmartin@fbfglaw.com

    *Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 13, 2026, the foregoing was served via ECF on all counsel of record.

              By: /s/ *J. Burkett McInturff*
                  J. Burkett McInturff